David Simantob, SBN 155790
Email: David.Simantob@wilsonelser.com
Shannon L. Santos, SBN 260112
Email: Shannon.Santos@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: 213.443.5100
Facsimile: 213.443.5101

*Attorneys for Plaintiff Navigators Specialty Insurance Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SVO BUILDING ONE, LLC,<br><br>Defendant. | Case No. 3:22-cv-07102-AMO<br>Hon. Araceli Martínez-Olguín<br>Courtroom 10<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Navigators Specialty Insurance Company ("Navigators") hereby makes its First Amended Complaint for Declaratory Relief against Defendant SVO Building One, LLC ("SVO") and alleges as follows:

## INTRODUCTION

1. Navigators brings this action for declarations that it is entitled to reimbursement of all defense fees and costs incurred in the action entitled *Liebert Corporation v. SVO Building One, LLC*, American Arbitration Association, Case No. 01-18-0003-1318 ("Underlying Action") after March 24, 2021 and for any and all other amounts paid in defense of uncovered claims under Navigators Policy No. LA17CGL219162IC, issued to SVO, effective from July 12, 2017 to August 12, 2019 ("Policy"). Navigators does not contend it has a right to reimbursement of attorneys' fees and costs incurred in SVO's defense of claims that were potentially covered under the Policy.

## PARTIES

2. Navigators is now and was at all relevant times a corporation formed under the laws of the State of New York with its principal place of business in Connecticut. At all times mentioned in this First Amended Complaint, Navigators has been authorized to do business in the State of California.

3. SVO is a limited liability company, registered in Delaware, with its principal place of business in McClellan, California. Nicholas Laag is the only member or manager of SVO identified with the Secretary of State of California. Navigators believes and on that basis alleges that Mr. Laag resides in San Francisco, California.

## JURISDICTION AND VENUE

4. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure, Rule 57 to resolve an actual controversy between the parties as set forth herein. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332, because there is complete diversity of citizenship between Navigators and SVO and there is more than $75,000 in controversy.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because this is a civil action in which subject matter jurisdiction is founded only on diversity of citizenship and the action is brought in a judicial district where SVO's solely identified member resides.

## THE POLICY

6. The Policy was issued to "SVO Building One, LLC", effective from July 12, 2017 to August 12, 2019, with "Each Occurrence" limits of $2 million, "Personal Injury/Advertising" limits of $1 million, and "General Aggregate" limits of $2 million. The "bodily injury" and "property damage" coverages are subject to a $5,000 deductible for each "occurrence." A true and correct copy of the Policy is attached as **Exhibit "A"** hereto.

7. The Policy lists the business description for SVO as an "8 Month OCP Data Center Construction Project" for the McClellan Park Building 637 located at 2407 AK Street, McClellan California 95652 ("Property"). The Policy's "Limitation of Coverage to Designated Premises or

Project" endorsement [Form CG 21 44 07 98] limits coverage to the designated premises of the Property. (Exh. A, Policy, pp. A-17, 51.)

8. The Policy contains Commercial General Liability Coverage Form [Form CG 00 01 04 13], which provides in pertinent part as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

* * *

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. ...

* * *

**j. Damage To Property**

"Property damage" to:

* * *

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured … .

* * *

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

* * *

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement

* * *

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

**Continuous or Progressive Injury and Damage** *(as added by "Continuous of Progressive Injury and Damage Exclusion" Endorsement [Form NPC-670 06 09] ("Continuous Injury Endorsement"))*

"Bodily injury" or "property damage"

**(1)** which first existed, or is alleged to have first existed, prior to the inception date of this Policy; or

**(2)** which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or

**(3)** which were caused, or are alleged to have been caused, by a condition that first existed prior to the inception date of this Policy.

* * *

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. …

* * *

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

* * *

**i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas** *(as amended by "Intellectual Property Amendment" Endorsement [Form NPC 642 11 08] ("IP Endorsement"))*

"Personal and Advertising Injury" arising out of:

**(a)** Infringement, disparagement, dilution, diminishment of or damage to:

**i.** Copyright, slogan or title;

**ii.** Patent;

**iii.** Trademark, service mark, collective mark, or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;

**iv.** Trade secret;

**v.** Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service;

**vi.** Advertising ideas, concepts, campaigns, or style of doing business; or

**vii.** Any other intellectual property rights recognized or implied by law.

**(b)** False designation of the origin of a good, product or service.

* * *

**Continuous or Progressive Injury and Damage** *(as added by the Continuous Injury Endorsement)*

"Personal and advertising injury"

**(1)** which first existed, or is alleged to have first existed, prior to the inception date of this Policy; or

**(2)** which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "personal and advertising injury" continues during this policy period; or

**(3)** which were caused, or are alleged to have been caused, by a condition that first existed prior to the inception date of this Policy.

* * *

**SECTION V – DEFINITIONS**

* * *

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses *(as amended by IP Endorsement)*:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or

lesser;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy.

* * *

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

* * *

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

(Exh. A, Policy, pp. A-18, 19, 21-23, 30, 32, 33, 37, 38, 66.)

9. The Policy contains the "Punitive and Exemplary Damages, Fines, Penalties and Multiplication of Damages Exclusion" [Form NPC-635 05 14] ("Punitive Damages Exclusion"), which provides:

> The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability** and Paragraph **2. Exclusions** of **Section I, Coverage B Personal and Advertising Injury Liability**:
>
> This insurance does not apply to:
>
> > Punitive damages, exemplary damages, fines, penalties, treble damages or other increase in damages resulting from the multiplication of compensatory damages, in whatever form assessed. If a "suit" is brought against the insured seeking damages to which this insurance applies and punitive or exemplary damages, we will provide a defense to such "suit". However, we will have no obligation to pay for any costs, interest, or judgment attributable to punitive or exemplary damages. Provisions of this exclusion do not apply in any state where such exclusion is expressly prohibited by state law or insurance department regulation.

(Exh. A, Policy, p. A-61.)

/ / /

**THE UNDERLYING ACTION**

10. The underlying plaintiff, Liebert Corporation ("Claimant"), filed the Underlying Action with the American Arbitration Association.

11. On July 11, 2019, the Claimant filed the Fourth Amended Complaint ("FAC"), asserting eighteen causes of action against SVO as follows: (a) breach of contract; (b) open book account; (c) reasonable value; (d) declaratory relief; (e) violation of unfair competition law; (f) misappropriation of trade secrets (asserted as two causes of action under separate statutes); (g) patent infringement (asserted as six causes of action under separate patents); (h) intentional interference with contractual relations; (i) defamation; (j) fraud; (k) negligent misrepresentation; and (l) civil conspiracy. A true and correct copy of the FAC, without exhibits, is attached as **Exhibit "B"** hereto.

12. The FAC alleged that the Claimant entered into agreements with SVO regarding the design and construction for a data center that SVO was building at the Property ("Project"). The agreements included:

a. A "Consultant Agreement," dated December 2016, whereby the Claimant was "to perform certain design services on the Project"; and

b. A "Lump Sum Turnkey Agreement," dated May 2017, whereby the Claimant was "to provide certain design, engineering, procurement, installation, construction, testing, commissioning and start up services on the Project."

(Exh. B, FAC, ¶¶ 5-7, pp. B-2, 3.)

13. Under these agreements, the FAC alleged the Claimant would retain ownership of all intellectual property and work product used in the Project and the Claimant granted SVO "a limited, non-exclusive, non-transferable revocable license" to use the Claimant's intellectual property and work product solely in connection with the Project. (Exh. B, FAC, ¶¶ 8, 11, pp. B-3, 4.)

14. The FAC further alleged that, prior to entering into the agreements with the Claimant, SVO entered into a construction agreement with DPR Construction ("DPR") in February 2016 and did not terminate it prior to the Claimant's agreements. (Exh. B, FAC, ¶¶ 13,

16, p. B-4.) The FAC alleged that, in December 2017, a supplement/change to the building permit was completed, changing the general contractor from DPR to the Claimant. (Exh. B, FAC, ¶ 15, p. B-4.) SVO allegedly agreed without the Claimant's knowledge to provide DPR a concession amount if the Claimant did not hire DPR to work on the Property, purportedly hindering the Claimant's "ability to negotiate fair and equitable terms with DPR and ultimately resulted in [the Claimant] incurring increased costs on the Project." (Exh. B, FAC, ¶¶ 16-18, pp. B-4, 5.)

15. The FAC alleged that, in July 2018, after the Claimant "substantially completed Phase 1 of the Project," SVO terminated the "Turnkey Agreement" with the Claimant. (Exh. B, FAC, ¶ 28, p. B-8.) The Claimant thereafter revoked SVO's license in writing on August 9, 2018. (Exh. B, FAC, ¶ 29, p. B-8.)

16. SVO allegedly "continued to wrongfully disclose and use [the Claimant's] trade secret information and patented technology." (Exh. B, FAC, ¶ 30, p. B-8.) SVO purportedly gave drawings, shared information, the Claimant's trade secrets, and patented technology with other designers and builders of data centers or the Claimant's competitors. (Exh. B, FAC, ¶¶ 30 31, pp. B-8, 9.)

17. Through the fifteenth cause of action for defamation, the Claimant alleged that, during the Claimant's performance of work at the Project and following its termination, SVO "disparaged" the Claimant's work and reputation through conduct including "making numerous false statements to third parties on the jobsite and within the industry, including but not limited [to], falsely stating that commencement of equipment commissioning at the Project was delayed as a result of [the Claimant's] inability to manage the Project." (Exh. B, FAC, ¶ 151, pp. B-29, 30.) The Claimant alleged that statements were made to competitors "for purposes of harming [the Claimant's] reputation." (Exh. B, FAC, ¶ 152, p. B-30.)

18. The FAC sought recovery of compensatory damages, attorneys' fees, interest, and punitive damages as well as declaratory and injunctive relief. (Exh. B, FAC, p. B-33-36.)

19. On March 24, 2021, the Claimant dismissed the defamation cause of action from the FAC. A true and correct copy of the dismissal is attached as **Exhibit "C"** hereto.

20. The Underlying Action proceeded to arbitration on the Phase I trial from August 3-11, 2021 and on the Phase II trial from November 16, 2021 through December 10, 2021.

21. There was no mention of defamation at the arbitration of the Underlying Action.

22. After conclusion of the arbitration, Navigators was informed by SVO that the parties to the Underlying Action agreed to a settlement in resolution of the dispute without payment from Navigators. Navigators was told the settlement would result in a dismissal of all claims with prejudice. While Navigators inquired as to the terms of the settlement from SVO, the information was not provided. Navigators has no information as to whether the settlement includes a payment by SVO to the Claimant.

23. On January 5, 2022, the parties to the Underlying Action filed a Joint Notice of Dismissal with Prejudice of all claims. A true and correct copy of the joint notice is attached as **Exhibit "D"** hereto.

## THE CLAIM

24. Upon SVO's tender of the claim, Navigators agreed to defend SVO in the Underlying Action on October 28, 2019 pursuant to a reservation of rights, including the right to withdraw from the defense. Navigators advised SVO that it was defending the action, subject to the Policy's terms and conditions and only because the FAC included an allegation of defamation, which potentially qualified as an enumerated offense for "personal or advertising injury". A true and correct copy of the reservation of rights letter is attached as **Exhibit "E"** hereto.

25. Navigators agreed to pay for SVO's independent counsel to handle the defense of the Underlying Action pursuant to California Civil Code section 2860. (Ex. E, p. E-11.)

26. After the Claimant's dismissal of the defamation cause of action from the FAC on March 24, 2021, eliminating any potential for coverage for SVO's defense of the Underlying Action under the Policy, Navigators advised SVO on March 31, 2021 that there was no coverage for the Underlying Action and that Navigators would be withdrawing from the defense. A true and correct copy of the March 31, 2021 letter is attached as **Exhibit "F"** hereto.

27. On May 3, 2021, SVO objected to Navigators' withdrawal from the defense. A true and correct copy of the May 3, 2021 letter is attached as **Exhibit "G"** hereto.

28. In light of SVO's objection, Navigators agreed to continue defending the Underlying Action pending adjudication by a court as to any coverages owed under the Policy. A true and correct copy of the May 18, 2021 letter is attached as **Exhibit "H"** hereto.

## FIRST CAUSE OF ACTION

**(For Declaratory Relief Re: Right to Reimbursement from March 24, 2021)**

29. Navigators hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

30. Navigators' initial acceptance of SVO's defense of the Underlying Action was pursuant to a reservation of rights, including the right to seek reimbursement of amounts spent in defense of uncovered claims.

31. Navigators advised SVO that it was withdrawing from the defense of the Underlying Action seven days after the defamation cause of action was dismissed. When SVO objected to the withdrawal, Navigators agreed to continue defending the Underlying Action pursuant to a reservation of rights, including the right to seek reimbursement of defense fees paid as to uncovered claims.

32. Since that time, Navigators has incurred attorneys' fees and costs associated with SVO's defense of the Underlying Action. The amount Navigators has incurred in defense of SVO since March 24, 2021 exceeds the jurisdictional limit of this Court under diversity jurisdiction.

33. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Navigators and SVO regarding whether Navigators had a continuing duty to defend SVO in connection with the Underlying Action after March 24, 2021 when the defamation cause of action was dismissed and, thus, a right to reimbursement of attorneys' fees and costs incurred since that time.

34. Navigators contends it had no continuing duty to defend SVO in the Underlying Action after March 24, 2021 under the Policy and has the right to reimbursement of attorneys' fees and costs incurred since that time pursuant to *Buss v. Super. Ct.*, 16 Cal. 4th 35 (1997) and *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643 (2005). Upon information and belief, SVO

disputes this contention.

35. In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policy, Navigators had no duty to defend SVO in the Underlying Action after March 24, 2021 under the Policy or applicable law, in whole or in part, for the following reasons:

a. The Underlying Action did not allege "damages" to trigger coverage under the Policy;

b. The Underlying Action did not allege injuries caused by an enumerated offense for "personal and advertising injury" to trigger Coverage B under the Policy;

c. If the Underlying Action alleged injuries for the enumerated offense of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" to trigger Coverage B under the Policy, such a trigger of coverage ended when the defamation cause of action was dismissed on March 24, 2021;

d. If the Underlying Action alleged "personal and advertising injury" to trigger Coverage B under the Policy, the "Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas" exclusion applies to bar coverage;

e. If the Underlying Action alleged "personal and advertising injury" to trigger Coverage B under the Policy, the "Breach Of Contract" exclusion applies to bar coverage;

f. If the Underlying Action alleged "personal and advertising injury" to trigger Coverage B under the Policy, the "Contractual Liability" exclusion applies to bar coverage;

g. If the Underlying Action alleged "personal and advertising injury" to trigger Coverage B under the Policy, the "Knowing Violation Of Rights Of

Another" exclusion applies to bar coverage;

h. If the Underlying Action alleged "personal and advertising injury" to trigger Coverage B under the Policy, the "Material Published With Knowledge Of Falsity" exclusion applies to bar coverage;

i. If the Underlying Action alleged "personal and advertising injury" to trigger Coverage B under the Policy, the "Material Published Prior To Policy Period" exclusion applies to bar coverage;

j. If the Underlying Action alleged "personal and advertising injury" to trigger Coverage B under the Policy, the "Criminal Acts" exclusion applies to bar coverage;

k. The Underlying Action did not allege "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the Policy to trigger Coverage A under the Policy;

l. If the Underlying Action alleged "bodily injury" or "property damage" to trigger Coverage A under the Policy, the "Expected Or Intended Injury" exclusion applies to bar coverage;

m. If the Underlying Action alleged "bodily injury" or "property damage" to trigger Coverage A under the Policy, the "Contractual Liability" exclusion applies to bar coverage;

n. If the Underlying Action alleged "property damage" to trigger Coverage A under the Policy, the "Damage To Property" exclusion applies for "[p]roperty loaned to you";

o. If the Underlying Action alleged "property damage" to trigger Coverage A under the Policy, the "Damage To Property" exclusion applies for "[p]ersonal property in the care, custody or control of the insured";

p. If the Underlying Action alleged "property damage" to trigger Coverage A under the Policy, the "Damage To Your Product" exclusion applies to bar coverage;

q. If the Underlying Action alleged "property damage" to trigger Coverage A under the Policy, the "Damage To Your Work" exclusion applies to bar coverage;

r. If the Underlying Action alleged "property damage" to trigger Coverage A under the Policy, the "Damage To Impaired Property Or Property Not Physically Injured" exclusion applies to bar coverage;

s. If the Underlying Action alleged "personal and advertising injury," "bodily injury," or "property damage" to trigger coverage under the Policy, the Continuous Injury Exclusion applies to bar coverage; and

t. If the Underlying Action alleged "personal and advertising injury," "bodily injury," or "property damage" to trigger coverage under the Policy, the Punitive Damages Exclusion applies to that claim for damage.

36. Navigators also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policy not specifically identified herein that potentially limit or preclude its duty to defend SVO in the Underlying Action as of March 24, 2021.

37. Navigators seeks a declaration from this Court that Navigators has the right to reimbursement of all attorneys' fees and costs incurred in defense of the Underlying Action as of March 24, 2021 as it had no duty to defend SVO under the Policy as of that time.

**SECOND CAUSE OF ACTION**

**(For Declaratory Relief Re: Right of Reimbursement for Uncovered Claims)**

38. Navigators hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

39. Navigators' initial acceptance of SVO's defense of the Underlying Action was pursuant to a reservation of rights, including the right to seek reimbursement of amounts spent in defense of uncovered claims pursuant to *Buss*, 16 Cal. 4th 35 and *Scottsdale Ins. Co.*, 36 Cal. 4th 643.

40. Navigators has incurred attorneys' fees and costs associated with SVO's defense of the Underlying Action, including in defense of uncovered claims as shown through the

arbitration transcripts, which evidence that a covered claim was not brought to trial. The amount Navigators has incurred in defense of SVO on uncovered claims exceeds the jurisdictional limit of this Court under diversity jurisdiction.

41. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Navigators and SVO regarding whether Navigators has a right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of SVO in the Underlying Action under the Policy.

42. Navigators contends it has a right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of SVO in the Underlying Action under the Policy. Upon information and belief, SVO disputes this contention. Navigators does not contend it has a right to reimbursement of attorneys' fees and costs incurred in defense of claims in the Underlying Action that were potentially covered under the Policy.

43. In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policy, certain attorneys' fees and costs were incurred in defense of uncovered claims on behalf of SVO in the Underlying Action under the Policy or applicable law, in whole or in part, based upon the coverage defenses set forth in paragraph 35 of the First Cause of Action herein.

44. Navigators also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policy not specifically identified therein that potentially limit or preclude its duty to defend SVO in the Underlying Action.

45. Navigators seeks a declaration from this Court that Navigators has the right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of SVO in the Underlying Action under the Policy.

**PRAYER FOR RELIEF**

WHEREFORE, Navigators prays for judgment against SVO as follows:

1. That the Court determine, decree, and adjudge that Navigators has the right to reimbursement of all attorneys' fees and costs incurred in defense of the Underlying Action as of March 24, 2021 as it had no duty to defend SVO under

the Policy as of that time;

2. That the Court determine, decree, and adjudge that Navigators has the right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of SVO in the Underlying Action under the Policy;

3. For attorneys' fees and costs;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems fit and proper under the circumstances and evidence.

Dated: February 15, 2024

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: *<u>/s/ Shannon L. Santos</u>*
David Simantob
Shannon L. Santos
*Attorneys for Plaintiff Navigators Specialty Insurance Company*