# EXHIBIT "A"

# COMMERCIAL LINES POLICY

A STOCK COMPANY

**Navigators Specialty Insurance Company**

1 Penn Plaza, New York, New York 10119

THIS POLICY CONSISTS OF:

- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
  - ONE OR MORE COVERAGE FORMS
  - APPLICABLE FORMS AND ENDORSEMENTS

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured-s last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy-s terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obliged to:

1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful: or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums, and
2. Will be payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Emily B. Miner, Secretary

Stanley A. Galanski, President

 Includes copyrighted material of Insurance Services Office, Inc., with its premission.

# COMMON POLICY DECLARATIONS

POLICY NUMBER: LA17CGL219162IC | Renewal of Policy No:

COVERAGE IS PROVIDED BY

## Navigators Specialty Insurance Company

**One Penn Plaza, New York, NY 10119**

| | |
|---|---|
| Named Insured and Mailing Address | SVO BUILDING ONE, LLC<br><br>5170 GOLDEN FOOTHILL PARKWAY<br>EL DORADO HILLS , CA 95762 |
| Policy Period | From: 12 July 2017 To: 12 March 2018<br>**at 12:01 A.M., Standard Time at your mailing address shown above.** |
| Agent or Broker | Brown and Riding Insurance Services, Inc.<br>777 S Figueroa St Ste 2550<br>Los Angeles, CA 90017-5805 |

In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. WHERE NO PREMIUM IS SHOWN, THERE IS NO COVERAGE. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | **PREMIUM** |
|---|---|
| Commercial General Liability Coverage Part | |
| Products/Completed Operations Liability Coverage Part | |
| Liquor Liability Coverage Part | |
| Employee Benefits Liability Coverage Part | |
| Terrorism Risk Insurance Act - Certified Acts Coverage | **REDACTED** |
| **TOTAL PREMIUM** | |
| State Surcharge | |
| Policy Fee | |
| Engineering Fee | |
| Policy Total shown is payable at inception — **POLICY TOTAL** | |

Forms and Endorsements:

**See Schedule of Forms and Endorsements NPC-903 08/07**

POLICY NUMBER: LA17CGL219162IC

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following are the forms attached to and forming a part of the policy at inception:

| | |
|---|---|
| OPUS Cover Sheet (02/17) | OPUS Cover Sheet |
| NIC GL PJ 01 07 | Policy Jacket and Common Policy Conditions with Validation Signatures |
| NPC-901 03 09 | Common Policy Declarations - Navigators Specialty Insurance Company |
| NPC-903 08 07 | Schedule of Forms and Endorsements |
| NPC-400 05 06 | Schedule of Named Insured(s) |
| IL 00 21 05 04 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| NPC-909 11 08 | Service of Suit |
| NAV-PHN-200 10 13 | Claim Reporting Procedures |
| NAV-ML-002 11 12 | OFAC ENDORSEMENT |
| NAV-ML-TERRA 02 15 | Disclosure Pursuant to TRIA |
| CG 21 70 01 15 | CAP On Losses from Certified Acts of Terrorism |
| NPC-905 03 09 | Commercial General Liability Coverage Part Declarations |
| CG 00 01 04 13 | Commercial General Liability Coverage Form |
| NPC-611 11 08 | Cross Suits Exclusion |
| NPC-605 11 08 | Asbestos Exclusion |
| NPC-827 04 13 | Exclusion - Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program |
| NPC-642 11 08 | Intellectual Property Amendment |
| NPC-900 07 10 | Minimum Earned Premium and Premium Audit Endorsement |
| NPC-624 11 08 | Lead Exclusion |
| NPC-713 11 08 | Definition of Employee Amendment |
| CG 21 86 12 04 | Exclusion - Exterior Insulation & Finish Systems |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 96 03 05 | Silica or Silica Related Dust Exclusion |
| CG 21 35 10 01 | Exclusion - Coverage C - Medical Payments |
| CG 21 55 09 99 | Total Pollution Exclusion With A Hostile Fire Exception |
| CG 21 67 12 04 | Fungi Or Bacteria (Mold) Exclusion |
| CG 20 38 04 13 | Additional Insured - Owners, Lessees or Contractors - Automatic Status For Other Parties When Required in Written Construction Agreement |
| CG 21 44 07 98 | Limitation Of Coverage To Designated Premises Or Projects |
| NPC-660 06 09 | Residential Construction Exclusion With an Apartment Exception |
| CG 22 34 04 13 | Exclusion - Construction Management Errors And Omissions |
| CG 23 01 04 13 | Exclusion - Real Estate Agents or Brokers Errors Or Omissions |
| CG 20 18 04 13 | Additional Insured - Mortgagee, Assignee Or Receiver |
| CG 20 12 04 13 | Additional Insured - Political Subdivisions Permits or Authorizations |
| CG 20 34 04 13 | Additional Insured - Lessor Of Leased Equipment - Automatic Status When Required In Lease Agreement With You |
| CG 20 18 04 13 | Additional Insured - Mortgagee, Assignee Or Receiver |

| | |
|---|---|
| CG 21 53 01 96 | Exclusion - Designated Ongoing Operations |
| CG 21 34 01 87 | Exclusion - Designated Work |
| NPC-635 05 14 | Punitive And Exemplary Damages, Fines, Penalties And Multiplication Of Damages Exclusion |
| NPC-834 12 14 | Exclusion - Cyber Injury |
| NPC-806 01 13 | Non-Pyramiding of Limits Endorsement |
| CG 22 79 04 13 | Exclusion - Contractors Professional Liability |
| CG 24 04 05 09 | Waiver of Transfer of Rights of Recovery Against Others to Us |
| NPC-670 06 09 | Continuous or Progressive Injury and Damage Exclusion |
| NPC-847 05 15 | Hazardous Materials Exclusion |
| NPC-700 11 08 | Aggregate Limits Apply to Policy Term |
| NPC-717 04 14 | General Contractor Conditional Coverage - Deductible Amount Applies If Conditions Not Met |
| CG 21 04 11 85 | Exclusion - Products-Completed Operations Hazard |
| CG 21 45 07 98 | Exclusion - Fire Damage Legal Liability |
| NPC-500 03 15 | Deductible Liability Insurance |
| NSIC CA NOTICE 09 16 | CALIFORNIA COMPLAINT NOTICE |

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

# NAMED INSURED

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
BUSINESS AUTO COVERAGE PART

The Named Insured is completed to read as follows:

SVO BUILDING ONE, LLC & SVO BUILDING TWO, LLC
SACRAMENTO VENTURE ONE, LLC
XTREAM DATA CENTER CORPORATION

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear

 © ISO Properties, Inc., 2001 

facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material"; "Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001 

# SERVICE OF SUIT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

It is understood and agreed that in the event of a failure by us to pay any amount claimed to be due hereunder, we, at the request of the first named insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. The foregoing shall not constitute a waiver of any of our rights to remove, remand, or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the United States of America or any state therein. In any suit instituted against us upon this contract by said court, we will abide by the final decision of the court or of any appellate court in the event of an appeal.

It is further agreed that service of process upon us in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the applicable statute governing service of process in the state or jurisdiction in which a cause of action arises under this contract of insurance, or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.

We hereby designate the President of Navigators Specialty Insurance Company, One Penn Plaza, 32nd Floor, New York, NY 10119, as the person to who the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

**Policyholder Notice**

Navigators®

## CLAIM REPORTING PROCEDURES

Conditions of the policy require that in the event of a claim, you notify us as soon as practicable. All claim notifications are to be reported to the Schaumburg Claims Office by electronic mail to RBClaims@navg.com.

In the alternative, claim notices may also be:

- Mailed to the Schaumburg Claims Office at:

  Navigators Management Co., Inc.
  Claims Division
  1375 E. Woodfield Road, Suite 720
  Schaumburg, IL 60173

- Or faxed to 203-658-1824

- Or telephone 855-444-4796

All claims notifications must be accompanied by an ACORD loss form and should contain current contact information for the insured and claimant(s) as well as a detailed description of the loss.

If the insured files a claim with the agent, it is the agent's responsibility to forward the claim to the Schaumburg Claims Office.

# OFAC ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury— in consultation with the Secretary of Homeland Security, and the Attorney General of the United States— to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is REDACTED and does not include any charges for the portion of losses covered by the United States government under the Act.

YOU SHOULD ALSO KNOW THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE. THE PORTION OF YOUR PREMIUM ATTRIBUTABLE TO SUCH COVERAGE IS SHOWN ABOVE.

If you have any questions about this notice, please contact your agent or Broker.



Contains copyrighted material of the National Association of Insurance Commissioners

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.


© Insurance Services Office, Inc., 2015

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**Policy Number:** LA17CGL219162IC

**Effective Date:** July 12, 2017
12:01 A.M., Standard Time

**LIMITS OF INSURANCE**

| | |
|---|---|
| Each Occurrence | $2,000,000 |
| General Aggregate | $2,000,000 |
| Products / Completed Operations Aggregate | $0 Excluded |
| Personal Injury / Advertising | $1,000,000 |
| Fire Legal Liability | $0 Excluded |
| Medical Payments | Excluded Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**

Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: None

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

Form of Business:

☐ Individual ☐ Partnership ☐ Joint Venture ☒ Limited Liability Company ☐ Other ☐ Trust

Business Description: 8 Month OCP Data Center Construction Project
McClellan Park Building 637 2407 AK Street McClellan CA 95652

**PREMIUM**

| Classification | Code No. | Rate | Premium Basis | Exposure | Premium |
|---|---|---|---|---|---|
| | | | REDACTED | | |

Total Advance Premium **REDACTED**

**Forms and Endorsements:**

**See Schedule of Forms and Endorsements NPC-903 08/07**

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © Insurance Services Office, Inc., 2012 

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".


© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".


© Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of


© Insurance Services Office, Inc., 2012

those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;


© Insurance Services Office, Inc., 2012

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".


© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.


© Insurance Services Office, Inc., 2012

**COVERAGE C - MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.


© Insurance Services Office, Inc., 2012

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you

 © Insurance Services Office, Inc., 2012 

are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**


© Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.


© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;


© Insurance Services Office, Inc., 2012

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or


© Insurance Services Office, Inc., 2012

agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building


© Insurance Services Office, Inc., 2012

cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or


© Insurance Services Office, Inc., 2012

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.


© Insurance Services Office, Inc., 2012

# CROSS SUITS EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A Bodily Injury And Property Damage Liability:**

**2. Exclusions**
This insurance does not apply to:
**Cross Suits**
"Bodily injury" or "property damage" arising from claims or "suits" brought by any insured identified in the declarations or policy as a Named Insured against any other Named Insured.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**
This insurance does not apply to:
**Cross Suits**
"Personal and advertising injury" arising from claims or "suits" brought by any insured identified in the declarations or policy as a Named Insured against any other Named Insured.

# ASBESTOS EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**
This insurance does not apply to:
**Asbestos**
"Bodily injury" or "property damage" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "asbestos".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**
This insurance does not apply to:
**Asbestos**
"Personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "asbestos".

**C.** The following definition is added to the **Definitions** Section:
"Asbestos" means the mineral in any form.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Description and Location of Operation(s):**

**ALL OPERATIONS AT LOCATIONS AT WHICH THE INSURED WAS AT ANY TIME:**

1. **COVERED, OFFERED COVERAGE, OR DENIED COVERAGE; OR**
2. **ENROLLED, OFFERED ENROLLMENT, OR NOT ALLOWED TO ENROLL UNDER A WRAP-UP PROGRAM.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as the construction project in which you are involved is or was subject to a consolidated (wrap-up) insurance program obtained by the prime contractor/project manager or owner of the construction project.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;

(2) Has limits adequate to cover all claims;

(3) Remains in effect; or

(4) Enrolled you in the program.

This Exclusion does not apply to "bodily injury" or "property damage" not included in the "products-completed operations hazard" that is related to but does not take place at the location of a project covered by a Wrap-up Program.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INTELLECTUAL PROPERTY AMENDMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**I.** Item **14.** of **SECTION V - DEFINITIONS.** is deleted in its entirety and replaced with the following:

**14.** "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lesser;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy.

**II.** Under **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions,** exclusion i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret,** is deleted in its entirety and replaced with the following:

**i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas**

"Personal and Advertising Injury" arising out of:

**(a)** Infringement, disparagement, dilution, diminishment of or damage to:

**i.** Copyright, slogan or title;

**ii.** Patent;

**iii.** Trademark, service mark, collective mark, or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;

**iv.** Trade secret;

**v.** Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service;

vi. Advertising ideas, concepts, campaigns, or style of doing business; or

vii. Any other intellectual property rights recognized or implied by law.

(b) False designation of the origin of a good, product or service;

# MINIMUM EARNED PREMIUM AND AUDIT PREMIUM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Item **5.** of section **A. CANCELLATION** of the **Common Policy Conditions** is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**a.** If we cancel, the refund will be pro rata.

**b.** Cancellation at the request of the first Named Insured:
This policy is subject to a Minimum Earned Premium which is 25% of the premium for this policy as shown in the applicable Coverage Part(s) Declarations unless scheduled here otherwise: NA%
This Minimum Earned Premium is the least amount of premium we shall retain as earned premium, regardless of the term. If the first Named Insured cancels, the refund will be determined as follows:

**(1)** If at the time of cancellation the earned premium is greater than the Minimum Earned Premium, the refund will be 90% of the pro rata return.

**(2)** If at the time of cancellation the earned premium is equal to or less than the Minimum Earned Premium, the refund will be the premium paid in excess of the Minimum Earned Premium.

**(3)** If the policy is a project specific policy with a policy term in excess of one year, the pro rata return premium will be calculated based on the number of days for which the policy was in force, divided against the date when the policy becomes fully earned.

Cancellation for non-payment of premium will be considered cancellation at the request of the first Named Insured.

**B.** If this policy is subject to premium audit, paragraph **b.** of item **5. Premium Audit** in **SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** is replaced by the following:

b. Premium shown in the **Commercial General** Liability **Coverage Part Supplemental Declarations** as Advance Premium is a deposit premium only which will be credited toward the amount of earned premium. The Advance Premium is the minimum premium for the policy period, is payable in full at the inception of coverage and is not refundable. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured.

This policy has a minimum amount of premium that applies to the term of insurance as listed on the policy. The Minimum Term Premium is 100% of the advanced and deposit premium as stated in the policy declarations and in subsequent endorsements. In the event that audit premiums are greater than the advance and deposit premium, the additional premium is due and payable upon notice to the insured. If audit premiums are less than the Minimum Term Premium, then no return premium is owed to the Insured.

C. If this policy is written with a designated construction project endorsement, the policy will be fully earned and no premium will be returned at the time of "substantial completion" or 8 months after inception of policy, whichever occurs earlier.

D. As used in this endorsement the term "substantial completion" means whichever of the following occurs first:

1) The date of the final inspection of the construction project by the applicable public agency.
2) The date of recordation of a valid notice of completion
3) The date of use or occupancy of the construction project or improvement.
4) One year after termination or cessation of work on the construction project.

# LEAD EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**
This insurance does not apply to:
**Lead**
"Bodily injury" or "property damage" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "lead".

B. The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**
This insurance does not apply to:
**Lead**
"Personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "lead".

C. The following definition is added to the Definitions Section:

"Lead" means the element in any form.

# DEFINITION OF EMPLOYEE AMENDMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section V - Definitions, 5. "Employee" is deleted and replaced by the following:

5. "Employee" includes "leased worker" and "temporary worker".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

 © ISO Properties, Inc., 2003 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

C. The following definitions are added to the **Definitions** Section:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.
2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| |
|---|
| **Description And Location Of Premises Or Classification:**<br>Any location or job site. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage C – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

 © ISO Properties, Inc., 2000 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

2. Exclusions

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS FOR OTHER PARTIES WHEN REQUIRED IN WRITTEN CONSTRUCTION AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured:

1. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and
2. Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph **1.** above.

Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**a.** Your acts or omissions; or

**b.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured described above:

**a.** Only applies to the extent permitted by law; and

**b.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for the person or organization described in Paragraph **1.** above are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **b.** Supervisory, inspection, architectural or engineering activities.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services.

2. "Bodily injury" or "property damage" occurring after:

   **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or


© Insurance Services Office, Inc., 2012

b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement described in Paragraph **A.1.**; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: LA17CGL219162IC

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:**<br>MCCLELLAN PARK BUILDIND 637, 2407 AK STREET, MCCLELLAN, CA 95652 |
| **Project:**<br>. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.


Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RESIDENTIAL CONSTRUCTION EXCLUSION WITH AN APARTMENT EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Residential Construction**

"Bodily injury" or "property damage" arising out of your ongoing operations or "your work" performed upon any "residential property".

**B.** The following exclusion is added to Paragraph **2.** Exclusions of **Section I - Coverage B - Personal And Advertising Injury Liability:**

2. Exclusions

This insurance does not apply to:

**Residential construction**

"Personal and advertising injury" arising out of your ongoing operations or "your work" performed upon any "residential property;"

**C.** The following definition is added to the **Definitions** Section:

"Residential property" means single-family dwellings, townhomes, condominiums, timeshares or multifamily dwellings in which each unit is individually titled. "Residential property" does not include a multi-unit structure of units held for rental in which all units are owned by the same person or organization and the units are not individually titled

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2. **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

**2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1.** or **2.**

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – REAL ESTATE AGENTS OR BROKERS ERRORS OR OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. | . |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION - PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:**<br>Any State Or Governmental Agency Or Subdivision Or Political Subdivision for whom during the policy period you and such State Or Governmental Agency Or Subdivision Or Political Subdivision have agreed in writing in a contract or agreement that such State Or Governmental Agency Or Subdivision Or Political Subdivision be added as an additional insured on your policy. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II - Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

1. This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

   However:

   a. The insurance afforded to such additional insured only applies to the extent permitted by law; and

   b. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

2. This insurance does not apply to:

   a. "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

   b. "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT - AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person (s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and
2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement you have entered into with the additional insured; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Specialty Credit Holding, LLC, ISAOA/ATIMA<br>Two Greenwich Plaza, 1st Floor<br>Greenwich, CT 06830 | . |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: LA17CGL219162IC

COMMERCIAL GENERAL LIABILITY
CG 21 53 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

1. All work insured elsewhere under project specific policies.

2. Any and all construction operations in the state of New York.

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.


Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

1. All work insured elsewhere under project specific policies.

2. Any and all construction operations in the state of New York.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

 Copyright, Insurance Services Office, Inc., 1986 

# PUNITIVE AND EXEMPLARY DAMAGES, FINES, PENALTIES AND MULTIPLICATION OF DAMAGES EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverages, Coverage A Bodily Injury and Property Damage Liability** and Paragraph **2. Exclusions** of **Section I, Coverage B Personal and Advertising Injury Liability:**

This insurance does not apply to:

Punitive damages, exemplary damages, fines, penalties, treble damages or other increase in damages resulting from the multiplication of compensatory damages, in whatever form assessed. If a "suit" is brought against the insured seeking damages to which this insurance applies and punitive or exemplary damages, we will provide a defense to such "suit". However, we will have no obligation to pay for any costs, interest, or judgment attributable to punitive or exemplary damages. Provisions of this exclusion do not apply in any state where such exclusion is expressly prohibited by state law or insurance department regulation.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following is added to **SECTION I – COVERAGES, COVERAGE A, BODILY INJURY AND PROPERTY DAMAGE** and **COVERAGE B, PERSONAL AND ADVERTISING INJURY, 2. Exclusions:**

This insurance does not apply to:

1. "bodily injury", "personal and advertising injury" or "property damage" arising out of "cyber injury;" or
2. any loss cost or expense arising out of any:
   a. request, demand, order or statutory or regulatory requirement that any insured or others monitor, notify or in any way respond to an actual or alleged "cyber injury;"
   b. claim or suit by or on behalf of a governmental authority for damages because of monitoring, notifying or in any way responding to a "cyber injury;"

   incurred by you or others.

B. The following are added to **SECTION V – DEFINITIONS:**

1. "Cyber injury" means any actual or suspected, intentional or unintentional breach of any data, software or hardware, wherever located, that results in:
   a. loss; destruction; disclosure; disruption; inspection; modification; recording; release; review; or use of "personal information;"
   b. inability to access any website or any electronic system;
   c. release, introduction or facilitation of any "malicious code;"
   d. forensic or investigative expenses;
   e. extortion or terrorism threats;
   f. monitoring or notification costs or expenses ;
   g. crisis management and public relations expenses;
   h. data or system recovery, repair, replacement or restoration expenses; or
   i. business interruption expenses.

2. "Malicious code" includes, but is not limited to any virus, Trojan horse, worm, spyware, logic bomb, adware, malware or other similar software program;

3. "Personal information" means any personal, or personally, identifiable, or identifying, information, as defined by federal, state or local laws, statutes or regulations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

# NON-PYRAMIDING OF LIMITS ENDORSMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

A. Notwithstanding any provision of this policy to the contrary, if this policy and any other policy issued to you by us or any company affiliated with us, apply to the same occurrence, offense or accident, the maximum Limit of Insurance under all such policies shall not exceed the highest applicable Limit of Insurance under any one policy. However, this provision does not apply to any other insurance issued to you by us or any company affiliated with us, which is specifically intended to be excess of the policy to which this endorsement is attached.

B. Furthermore, in no event will coverage be provided after:

1. The applicable aggregate Limit of Insurance under any one policy has been exhausted due to such occurrence (s) or offense (s); or

2. The applicable Limit of Insurance under any one policy would have been exhausted had all covered claims due to such occurrence (s) or offense (s) been submitted under that one policy rather than under two or more policies.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

**a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

**b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: LA17CGL219162IC



# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

| |
|---|
| **Name Of Person Or Organization:**<br>Any person or organization when you and such person or organization have agreed in writing in a contract or agreement that you will waive any right of recovery against such person or organization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV - Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

 © Insurance Services Office, Inc., 2008 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Section I - Coverages, - Coverage A - Bodily Injury And Property Damage Liability, 1. Insuring Agreement, B.(3)**, is deleted.

B. **Section I - Coverages, - Coverage A - Bodily Injury And Property Damage Liability, 1. Insuring Agreement, c.** is deleted and replaced by the following:

c. "bodily injury" or "property damage" which occurs during the policy period includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

C. **Section I - Coverages, Coverage A. Bodily Injury And Property Damage Liability, 1. Insuring Agreement, d.** is deleted.

D. The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Continuous or Progressive Injury and Damage**

"Bodily injury" or "property damage"

**(1)** which first existed, or is alleged to have first existed, prior to the inception date of this Policy; or

**(2)** which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or

(3) which were caused, or are alleged to have been caused, by a condition that first existed prior to the inception date of this Policy.

E. The following exclusion is added to Paragraph **2.** Exclusions of **Section I -Coverage B - Personal** And Advertising **Injury Liability:**

2. **Exclusions**

This insurance does not apply to:

Continuous **or Progressive Injury and Damage**

"Personal and advertising injury"

(1) which first existed, or is alleged to have first existed, prior to the inception date of this Policy; or

(2) which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "personal and advertising injury" continues during this policy period; or

(3) which were caused, or are alleged to have been caused, by a condition that first existed prior to the inception date of this Policy.

# HAZARDOUS MATERIALS EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Hazardous Materials**

(1) "Bodily injury," "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, ingestion, inhalation, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

(2) Any loss, cost or expense arising out of any:

a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials."

(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials."

(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), or (3) above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B. **SECTION V – DEFINTITONS** is amended to include the following:

"Hazardous materials" means "pollutants," and materials that are radioactive, corrosive, oxidizers, asphyxiants, biohazardous, toxic, pathogen or allergen substances and organisms. "Hazardous materials" include but are not limited to sulfates, arsenic, formaldehyde, and any material(s) containing those materials. It also includes any "hazardous materials" as shown on the OSHA List of Highly Hazardous Chemicals, Toxics and Reactives.

C. This endorsement shall supplement any other exclusion contained within the Policy, including but not limited to any "Pollution" exclusion. Nothing contained within this endorsement shall be deemed to be a waiver of the coverage limitations imposed by any other applicable exclusion.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

# AGGREGATE LIMITS APPLY TO POLICY TERM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The Final paragraph of **Section III - Limits Of** Insurance is deleted and replaced by the following:

The Limits of Insurance of this Coverage Form apply to the entire policy period and will not reinstate.

POLICY NUMBER: LA17CGL219162IC

COMMERCIAL GENERAL LIABILITY
NPC 717 04 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CONTRACTOR CONDITIONAL COVERAGE - DEDUCTIBLE AMOUNT APPLIES IF CONDITIONS NOT MET

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** of this policy is amended to include:

**Additional Conditions - Certificates of Insurance and Hold Harmless Agreements - Deductible Amount Applies If Conditions Not Met**

**a.** You must obtain from your general contractor or any contractor with whom you sign a contract with directly, prior to commencement of any work performed on your behalf by that contractor; certificates of insurance evidencing:
   **(1)** Commercial General Liability limits of insurance of $10,000,000.00 for Each Occurrence, $10,000,000.00 for the General Aggregate and $10,000,000.00 for the Products- Completed Operations Aggregate, inclusive of applicable Excess Liability or Umbrella policies; and
   **(2)** Workers compensation insurance in compliance with the statutes of the applicable state.

**b.** You must obtain written hold harmless agreements from your contractor indemnifying you against all losses for the work performed for you by any and all subcontractors or independent contractors, prior to the commencement of any work performed on your behalf by that contractor; and

**c.** You must be endorsed as an Additional Insured for both premises-operations and products-completed operations on the contractor's General Liability policies, prior to the commencement of any work performed on your behalf by that contractor.

At the time of an "occurrence" involving the general contractor or any contractor with whom you sign a contract with directly, if any of the above conditions are not met with regard to such contractor,then, any deductible endorsement to the contrary notwithstanding, a deductible of $25,000.00 per "occurrence" is applicable to all damages, defense costs and/or claims expenses for "bodily injury", "property damage", and "personal and advertising injury" arising out of any covered acts of such contractor working for you or on your behalf.

**Designated contractor for the above mentioned conditions:** Liebart Corporation

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

 Copyright, Insurance Services Office, Inc., 1984 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO PREMISES RENTED TO YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The last paragraph ("Exclusions **c.** through **n.** do not apply . . . ") of Paragraph **2., Exclusions** under Section **I – Coverage A – Bodily Injury And Property Damage Liability** is deleted.

**B.** The first exception ("Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply . . . ") to Exclusion **j., Damage To Property** of Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is deleted.

**C.** Paragraph **6.** of **Section III – Limits Of Insurance** is deleted.

**D.** Any reference in the Declarations to "Damage To Premises Rented To You" is deleted.

 Copyright, Insurance Services Office, Inc., 1997 

# DEDUCTIBLE LIABILITY INSURANCE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SCHEDULE OF DEDUCTIBLES

| Coverage | Amount and Basis of Deductible |
|---|---|
| Bodily Injury Liability | $. |
| Property Damage Liability | $. |
| Bodily Injury and Property Damage Liability Combined | $5,000 each occurrence |
| Coverage B Personal and Advertising Injury Liability | $. |
| Bodily Injury, Property Damage and Personal and Advertising Injury Liability Combined | $. |
| Liquor Liability – Each Common Cause | $. |

*If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.*

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage" and/or "personal and advertising injury", however caused):

I. Our obligation under the Bodily Injury Liability, Property Damage Liability and Personal and Advertising Injury Liability coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to Each Occurrence for such coverages will be reduced by the amount of such deductible. The applicable Aggregate limit for such coverages shall not be reduced by the application of such deductible amount.

II. The deductible amounts stated in the Schedule apply as follows:

A. **PER CLAIM BASIS** - if the deductible is on a "per claim" basis, the deductible amount applies:

1. Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively:

a. To all damages because of "bodily injury" sustained by one person, or

b. To all damages because of "property damage" sustained by one person or organization, as a result of any one "occurrence".

2. Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one "occurrence".

3. Under Coverage B, to all damages sustained by any one person because of "personal injury and or advertising injury" as a result of any one claim or "occurrence".

4. Under Bodily Injury Liability, Property Damage Liability and "Personal and Advertising Injury" combined, to all damages because of "bodily injury", "property damage" and "personal and advertising injury" and sustained by one person or organization as the result of any one claim or "occurrence".

5. Under Liquor Liability Coverage, to all damages sustained by any one person or organization. because of "injury" as a result of the selling, serving or furnishing of any alcoholic beverage.

B. **PER OCCURRENCE BASIS** - if the deductible is on "per occurrence" basis, the deductible amount applies:

1. Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively:

   a. To all damages because of "bodily injury" as the result of any one "occurrence", or

   b. regardless of the number of persons or organizations who sustain damages because of that "occurrence".

2. Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages because of "bodily injury" and "property damage" as the result of any one "Occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. Under Coverage B, to all damages sustained by any one person because of "personal injury and or advertising injury" as a result of any one claim or "occurrence".

4. Under Bodily Injury Liability, Property Damage Liability and "Personal and Advertising Injury" combined, to all damages because of "bodily injury", "property damage" and "personal and advertising injury" and sustained by one person or organization as the result of any one claim or "occurrence".

5. Under Liquor Liability Coverage, to all damages sustained by any one person or organization. because of "injury" as a result of the selling, serving or furnishing of any alcoholic beverage.

C. **LEGAL AND LOSS ADJUSTMENT EXPENSES**
The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all legal and loss adjustment expenses.

D. **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**
The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all payments made under SUPPLEMENTARY PAYMENTS - COVERAGES A and B.

III. The terms of this insurance, including those with respect to:

A. Our right and duty to defend any "suits" seeking those damages; and

B. Your duties in the event of an "occurrence", claim, or suit
apply irrespective of the application of the deductible amount.

IV. We may pay any part or all of the deducible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as have been paid by us.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

# CALIFORNIA COMPLAINT NOTICE

In the event you need to contact someone regarding a dispute about your policy, premium or a claim that you have filed, please contact your broker or agent. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

**Navigators Specialty Insurance Company**
**One Penn Plaza, 32nd Floor**
**New York, NY 10119**

**Telephone Number:** 1 (888) 222-2642

If you have been unable to contact or obtain satisfaction from the broker, agent, or company, you may contact the Consumer Services Division at:

**Consumer Services Division**
**California Department of Insurance**
**300 South Spring Street, South Tower**
**Los Angeles, CA 90013**
**www.insurance.ca.gov**

**Toll Free Number: (800) 927-4357 or (213) 897-8921**

Please be informed that written correspondence is preferred so that a record of your inquiry is maintained. In addition, have your policy number available when contacting your broker, agent, company, or the Consumer Services Division.

This notice is for information only and does not become a part or condition of this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

Effective 2/6/2018, the mailing address has been changed to:

c/o Prime Data Centers, Corp
3140 Peacekeeper Way, Suite 101A
McClellan Park, CA 95652

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: . **Premium:** REDACTED

ENDORSEMENT NO : 001 Effective: 2/6/2018 12:00:00 AM
is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 02/06/2018 Authorized Representative:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

In consideration of the additional premium shown below effective 3/12/2018 the expiration date of the policy is amended to show: 5/12/2018

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

---

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: **Additional Premium: REDACTED**

---

ENDORSEMENT NO : 002 Effective: 3/12/2018 12:00:00 AM

is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 03/06/2018 Authorized Representative:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

In consideration of the additional premium shown below effective 5/12/2018 the expiration date of the policy is amended to show: 7/12/2018

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: **Additional Premium:** REDACTED

ENDORSEMENT NO : 003 Effective: 5/12/2018 12:00:00 AM

is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 05/08/2018 Authorized Representative:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

Effective 7/12/2018, in consideration of the additional premium shown, it is hereby understood and agreed that the policy has been extended to 1/12/2019.

Construction Costs from 7/12/2018 - 1/12/2019: $6,800,000

The following forms have been added:

| | |
|---|---|
| CG 20 18 04 13 | ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER (specific) |
| CG 24 04 05 09 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (specific) |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: **Additional Premium: REDACTED**

ENDORSEMENT NO : 004 Effective: 7/12/2018 12:00:00 AM
is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 07/17/2018 Authorized Representative:

POLICY NUMBER:LA17CGL219162IC

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Sequoia Investment Management Co., Ltd<br>Its Successors and/or Assigns, as their interest may appear<br>11-13 Market Place<br>London W1W 8AH | . |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: LA17CGL219162IC

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>Sequoia Investment Management Co., Ltd<br>Its Successors and/or Assigns, as their interest may appear<br>11-13 Market Place<br>London W1W 8AH |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV - Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.


© Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

Effective 7/24/2018, the following forms have been added:

| | |
|---|---|
| CG 20 18 04 13 | ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER (specific) |
| NPC 801 11 08 | PRIMARY AND NON-CONTRIBUTORY |
| CG 24 04 05 09 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (specific) |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: . **Premium: REDACTED**

ENDORSEMENT NO : 005 Effective: 7/24/2018 12:00:00 AM

is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 08/06/2018 Authorized Representative:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| The Bank of New York Mellon, As Administrative Agent, Its Successors and/or Assigns And Sequoia Investment Management Co., Ltd., Its Successors and/or Assigns, as their interest may appear<br>500 Ross Street, 12th Floor<br>Pittsburgh, PA 15262 | . |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

**ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIMARY AND NON-CONTRIBUTORY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Name of Person or Organization:
The Bank of New York Mellon, As Administrative Agent, Its Successors and/or Assigns And Sequoia Investment Management Co., Ltd., Its Successors and/or Assigns, as their interest may appear
500 Ross Street, 12th Floor
Pittsburgh, PA 15262

A. The following is added to **4. c. Method of Sharing, Section IV - Commercial General Liability Conditions**:

However, we will not seek contribution from other insurance available to the person or organization shown above, when you have agreed in a written contract prior to the loss, to provide such person or organization primary and non-contributing insurance.

POLICY NUMBER: LA17CGL219162IC

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>The Bank of New York Mellon, As Administrative Agent, Its Successors and/or Assigns And Sequoia Investment Management Co., Ltd., Its Successors and/or Assigns, as their interest may appear<br>500 Ross Street, 12th Floor<br>Pittsburgh, PA 15262 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV - Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

 © Insurance Services Office, Inc., 2008 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

Per the insured's request, the policy term has been amended to reflect the following:

07/12/2017 - 07/12/2019

AND

Form NPC 700 11 08 - Aggregate Limits Apply to Policy Term still applies

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: **Additonal Premium: REDACTED**

ENDORSEMENT NO : 006 Effective: 01/12/2019 12:00:00 AM
is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 01/10/2019 Authorized Representative:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

Per the Insured's request, the policy term has been amended to reflect the following:

07/12/2017 - 08/11/2019

AND

Form NPC 700 11 08 - Aggregate Limits Apply to Policy Term is still applicable

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: **Additional Premium: REDACTED**

ENDORSEMENT NO : 007 Effective: 07/12/2019 12:00:00 AM

is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 07/11/2019 Authorized Representative:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

It is hereby amended and agreed that the following changes have been made to the policy:

Per the Insured's request, the policy's expiration date has been amended to reflect the following:

08/12/2019

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

The premium for this endorsement is included in the premium shown on the declarations unless a specific amount is shown here: . **Premium: REDACTED**

ENDORSEMENT NO : 008 Effective: 7/12/2019 12:00:00 AM

is attached to and forms part of your evidence of insurance no.: LA17CGL219162IC

Issued by: Navigators Specialty Insurance Company

Executive Offices: 230 W Monroe Street, Suite 1575, Chicago, IL 60606

Insured: SVO BUILDING ONE, LLC

Date Issued 07/26/2019 Authorized Representative:

# EXHIBIT "B"

Robert H. Sloss (Bar No. 87757)
Mark G. Budwig (Bar No. 126045)
Victor M. Felix (Bar No. 179622)
Mike Nolan (Bar No. 265658)
Procopio, Cory, Hargreaves & Savitch LLP
12544 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone: 858.720.6300
Facsimile: 619.235.0398
E-mail: robert.sloss@procopio.com
E-mail: mark.budwig@procopio.com
E-mail: victor.felix@procopio.com
E-mail: mike.nolan@procopio.com

Attorneys for Claimant Vertiv Corporation, (formerly Liebert Corporation)

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LIEBERT CORPORATION, an Ohio corporation,<br><br>Claimant,<br><br>v.<br><br>SVO BUILDING ONE, LLC, a Delaware limited liability company<br><br>Respondent. | Case No. 01-18-0003-1318<br><br>**FOURTH AMENDED COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT**<br>**2. OPEN BOOK ACCOUNT**<br>**3. REASONABLE VALUE**<br>**4. DECLARATORY RELIEF**<br>**5. VIOLATION OF UNFAIR COMPETITION LAW**<br>**6. MISAPPROPRIATION OF TRADE SECRETS**<br>**7. PATENT INFRINGEMENT**<br>**8. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>**9. DEFAMATION**<br>**10. FRAUD**<br>**11. NEGLIGENT MISREPRESENTATION**<br>**12. CIVIL CONSPIRACY** |

Claimant Liebert Corporation alleges as follows:

1. Claimant Liebert Corporation (which changed its name to Vertiv Corporation on August 30, 2018 and shall hereinafter be referred to as "Vertiv") is, and at all times mentioned herein was, a corporation organized and existing under and by virtue of the laws of the State of Ohio, authorized to do business in California, and a duly licensed contractor in substantial compliance with the licensure laws of the State of California.

2. Vertiv is informed and believes, and based thereon alleges, that Respondent SVO Building One, LLC ("SVO") is, and at all times mentioned herein was, a limited liability company organized and existing under and by virtue of the laws of the State of Delaware.

**BACKGROUND FACTS**

*Vertiv's history as a data center supplier*

3. Data centers power the modern world as they house the equipment that is essential to the Internet and all other forms of advanced communications. For more than 50 years, Vertiv has been the leading supplier of power and thermal equipment, services and solutions for data centers, and more recently Vertiv has also designed and erected the buildings that make up a data center.

4. Vertiv has been at the forefront in developing products and technologies that make a data center function, including uninterruptable power supplies and the components of thermal management systems that keep the atmosphere inside data centers at appropriate levels of temperature and humidity. As a result of its development work, Vertiv has created thousands of proprietary designs, methods and devices for which it has obtained hundreds of patents. For designs, methods and devices that are not protected by patents, Vertiv has treated such designs, methods and devices, as well as the know-how regarding how to design and outfit data centers it has acquired through its many years of supplying (and now building) those structures, as trade secrets.

*SVO's McClellan Park data center project*

5. In late 2016, SVO reached out to Vertiv, then known as Liebert, to lead the design and construction efforts for a data center SVO was building at 2407 AK Street, Sacramento, California (the "Project"). The Project was to consist of three two-megawatt data halls for a total capacity of six megawatts. The data center industry measures size in terms of the amount of power a data center consumes as measured in megawatts. A six-megawatt data center is considered a fairly large data center.

*Agreements between SVO and Vertiv*

6. In connection with the Project, Vertiv and SVO entered into several agreements.

Initially, in or about December 2016, the parties entered into a "Consultant Agreement" and purchase order whereby Vertiv agreed to perform certain design services on the Project. A true and correct copy of the Consultant Agreement, excluding appendices, is attached hereto as Exhibit A and incorporated herein by reference.

7. In or about May 2017, Vertiv and SVO executed a "Lump Sum Turnkey Agreement" (the "Turnkey Agreement") pursuant to which Vertiv agreed, once certain condition precedents were satisfied, to provide certain design, engineering, procurement, installation, construction, testing, commissioning and start up services on the Project. A true and correct copy of the Turnkey Agreement, excluding appendices and subsequently issued purchase orders and amendments, is attached hereto as Exhibit B and incorporated herein by this reference.

8. The Project was to be developed in three phases with each phase completing one of the three data halls. In recognition of the fact that this work would involve substantial numbers of Vertiv's patents, trade secrets and other intellectual property, Vertiv requested terms in both the Consultant Agreement and the Turnkey Agreement that specified (a) Vertiv would retain ownership of all Intellectual Property and Work Product (which the Agreement broadly defined) used in the Project; and (b) Vertiv would grant SVO "a limited, non-exclusive, not-transferable, *revocable* license" to use Vertiv's Intellectual Property and Work Product solely in connection with the Project.

9. Because of the importance it gives its Intellectual Property, Vertiv took pains in negotiating both the Consultant Agreement and the Turnkey Agreement to ensure the inclusion of provisions that make it abundantly clear that Vertiv would own the Intellectual Property used in the work performed by Vertiv regarding the Project.

10. Vertiv's ownership rights extended beyond what the above-mentioned Agreements defined as Intellectual Property, as Vertiv also retained ownership of its "Work Product," which Section 1.2 of the Turnkey Agreement defines to include: (1) all business and technical information and know-how resulting from Vertiv's performance under the Agreement; and (2) all designs, inventions, discoveries, techniques, technologies, copyright works – including computer programs and drawings – trade secrets and other intellectual property of any kind embodied in

Vertiv's work. The definition of Vertiv's ownership rights to include Work Product was not happenstance, but a deliberate effort by Vertiv to keep ownership of all that it created to the fullest extent possible.

11. At the same time, recognizing SVO's need to use Vertiv's Intellectual Property and Work Product, in Section 8.7 of the Turnkey Agreement Vertiv granted SVO a limited, non-exclusive, revocable license to use its Intellectual Property and Work Product in connection with the development and operation of the Project.

12. To ensure that there could be no possible ambiguity regarding the scope of the license, Section 8.8 of the Turnkey Agreement explicitly prohibits SVO from using the Work Product and Intellectual Property in any way outside the scope of the Turnkey Agreement. Vertiv and SVO negotiated these terms extensively.

*Agreement between SVO and DPR Construction*

13. Prior to contacting Vertiv to provide services on the Project, Vertiv understood that SVO had retained DPR Construction ("DPR") in or about February 2016 to design and build the Project.

14. In performing its obligations, DPR submitted a building permit application, obtained the building permit for the Project, and was listed as the contractor on the building permit for the Project.

15. Ultimately, SVO decided to retain Vertiv to complete the Project rather than proceed with DPR. To that end, in December 2017, a supplement/change to the building permit was made changing the general contractor from DPR to Vertiv.

16. Unbeknownst to Vertiv at the time, SVO did not terminate its agreement with DPR upon retaining Vertiv to provide services on the Project. Instead, SVO and DPR agreed upon an amendment to their agreement, effective on or about January 11, 2017, under which some of the scope of DPR's work was reduced but other portions remained DPR's obligation to perform. Additionally, a term of the amendment provided that, if DPR was not subsequently engaged to continue work at the Project (i.e., as a subcontractor to Vertiv), that SVO would be obligated pay DPR a "Concession Amount," the amount of which at this time SVO has refused to disclose to

Vertiv.

17. At the time of its engagement and negotiation with DPR to perform work at the Project, Vertiv was unaware of the terms of DPR's amended agreement; in particular that DPR would receive a "Concession Amount" payment from SVO if DPR did not obtain the subcontract from Vertiv.

18. Vertiv is informed and believes, and based thereon alleges, that DPR's undisclosed "Concession Amount" agreement with SVO hindered Vertiv's ability to negotiate fair and equitable terms with DPR and ultimately resulted in Vertiv incurring increased costs on the Project that it otherwise would not have incurred had SVO disclosed to Vertiv this secret arrangement with DPR.

*Vertiv's patents*

19. The designs, products, systems, configurations and techniques used by Vertiv to design, construct and outfit the Project contain Vertiv's Intellectual Property, which Vertiv has protected with patents and trade secrets.

20. Throughout its history, Vertiv has created innovative products and systems for use in the construction, operation and management of data centers. As evidence of its role as a leader in the development of new technologies, Vertiv has received over 1,000 patents, many of which disclose inventions in the fields of power supply, thermal control and uninterruptible power sources.

21. Any number of Vertiv's patents relate to the cutting-edge products and systems provided to SVO for the Project, including the following patents which cover products and systems that are essential to SVO's data center:

a. U.S. Patent No. 7,352,082 entitled "Transfer Switch Device and Method" and issued on April 1, 2008 (the "'082 Patent");

b. U.S. Patent No. 7,459,804 entitled "Static Transfer Switch Device and Method" and issued on December 2, 2008 (the "'804 Patent");

c. U.S. Patent No. 9,038,404 entitled "High Efficiency Cooling System" and issued on May 26, 2015 (the "'404 Patent");

d. U.S. Patent No. 9,316,424 entitled "Multi-Stage Cooling System with Tandem Compressors and Optimized Control of Sensible Cooling and Dehumidification" and issued on April 19, 2016 (the "'424 Patent");

e. U.S. Patent No. 6,917,124 entitled "Uninterruptible Power Supply" and issued on July 12, 2005 (the "'124 Patent"); and

f. U.S. Patent No. 6,563,048 entitled "Ancillary Cabinet System for an Uninterruptible Power Supply" and issued on May 13, 2003 (the "'048 Patent").

*Vertiv's trade secrets*

22. Although data centers share many of the same features – e.g., racks for servers, power supplies, cooling systems, fire suppressant systems, cabling, control systems and structural systems – the way in which these various features are equipped and configured differs greatly from data center to data center, depending on environmental factors such as the size of the data halls, the shape and condition of the building that houses the data center, the weather conditions throughout the year in the data center's location and the way in which the data center will be used. No two data centers are the same.

23. As the designer of and supplier of equipment for Phase 1 of the data center, Vertiv's engineers had to make thousands of decisions regarding what equipment to specify (both in terms of each piece of equipment's function and size), where to place each piece of equipment, how to calibrate and connect each piece of equipment so that all the equipment working together would function as desired, how to control the equipment, both individually and as a whole, and how to monitor and maintain the equipment – all of which (the decision on what equipment to specify and the use of the specific equipment chosen) constitute the proprietary means and methods developed by Vertiv for designing and equipping a data center. These design decisions and selection processes manifested themselves in several ways: (a) in the hundreds of drawings, specifications and other design documents prepared by Vertiv; (b) in the specific components chosen and requisitioned by Vertiv; (c) in the placement and manner of connection of each component; (d) in the countless engineering calculations performed; and (e) in the numerous manuals and operating instructions created by Vertiv for the Project. These design decisions were unique to Phase 1 of the

SVO Project, were maintained as confidential information by Vertiv and would be of tremendous value to someone else designing or building a data center, such as the designers and builders of Phases 2 and 3 of the SVO Project.

24. Vertiv produced three sets of drawings for Phase 1 of the Project that varied in detail and completeness – schematic drawings, design drawings and construction drawings – as well as an entirely different kind of drawings that Vertiv submitted to equipment suppliers (including itself) as part of the requisition process. In all, Vertiv generated well over 500 drawings. The drawings are stamped as Vertiv confidential information. Vertiv's drawings were created for, and are unique to, Phase 1 of the SVO Project, were maintained as confidential information by Vertiv and would be of tremendous value to someone else designing or building a data center, such as the designers and builders of Phases 2 and 3 of the SVO Project.

25. Data centers are extraordinarily complex facilities that require the integration of many systems (power, thermal, control, etc.) in a coordinated manner so that the combined systems operate precisely, reliably and predictably. To accomplish these goals, Vertiv employees performed thousands of engineering calculations that ensured they were specifying the right components connected in the optimal configuration. Vertiv's engineering calculations, which were the results of years of experience designing data centers, created for and are unique to Phase 1 of the SVO Project, were maintained as confidential information by Vertiv and would be of tremendous value to someone else designing or building a data center, such as the designers and builders of Phases 2 and 3 of the SVO Project.

26. Although Vertiv designed and constructed much of Phase 1 (and was under contract to design and construct Phases 2 and 3), its primary function was to supply the equipment that goes into a data center to make it operate – components such as modular infrastructure, power supplies, thermal management and the control systems that allow the data center to operate efficiently. Vertiv has thousands of products that perform various data center functions and to the extent those products are not covered by patents, the features or operations of the products are Vertiv trade secrets. In addition, the products typically come with manuals that explain the workings of the products and what a user needs to know in order ensure the proper operation of the products.

Vertiv's manuals are also protected as trade secrets. Many aspects of the products and manuals provided for Phase 1 of the project (such as the way in which each component was calibrated and integrated into the data center) were unique to Phase 1 of the SVO Project, were maintained as confidential information by Vertiv and would be of tremendous value to someone else designing or building a data center, such as the designers and builders of Phases 2 and 3 of the SVO Project.

27. The information and inventions Vertiv protected as trade secrets are different than the information and inventions disclosed in the patents obtained by Vertiv. Vertiv's patents do not disclose its trade secrets or confidential information.

*SVO's termination of the Agreement and Vertiv's revocation of the license*

28. Over the course of Vertiv's work on the Project, numerous disputes arose between Vertiv and SVO regarding such things as scope of work and payment. Ultimately, SVO wrongfully terminated the Turnkey Agreement in July 2018 after Vertiv had substantially completed Phase 1 of the Project.

29. Following SVO's termination of the Turnkey Agreement, Vertiv properly revoked SVO's license in writing on August 9, 2018 pursuant to the terms of the Turnkey Agreement.

*SVO's continued improper disclosure and use of Vertiv's patented and trade secret information*

30. Notwithstanding Vertiv's revocation of the license to SVO, it has continued to wrongfully disclose and use Vertiv's trade secret information and patented technology. For example, Vertiv has learned that SVO has given drawings and calculations prepared by Vertiv to designers and builders of data centers, including designers and builders retained by SVO to develop Phases 2 and 3 of the Project. Upon information and belief, SVO has also shared information with designers and builders of data centers regarding the products specified and installed in Phase 1, how the various data center components have been configured and how to operate, monitor and maintain those components and the data center systems. Vertiv's allegations regarding the disclosure of its trade secrets and the use SVO has made of Vertiv's trade secrets and patented technology as alleged herein is not to be considered comprehensive or limiting in any way; discovery in this case will likely reveal other unauthorized and illegal disclosures and uses of Vertiv's intellectual property by SVO and those working on its behalf.

31. The companies to whom SVO provided Vertiv's highly valuable intellectual property are competitors of Vertiv in the business of designing, building and/or outfitting data centers, and the delivery of such trade secret information and patented technology to those competitors has caused and will continue to cause irreparable injury to Vertiv.

**FIRST CAUSE OF ACTION**

**(Breach of Contract as Against SVO)**

32. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 31, as though set forth fully herein.

33. The Turnkey Agreement sets forth separate and distinct obligations to be performed by Vertiv, including engineering and design services, procurement of equipment and supplies, and construction of the Project.

34. The Project was to proceed in three (3) phases and performance was not to commence until SVO issued a written Purchase Order authorizing the work for a particular phase. SVO issued a Purchase Order with respect to Phase 1 ("Purchase Order"). SVO thereafter, and without proper cause, wrongfully terminated the Turnkey Agreement prior to the issuance of the Purchase Orders for the remaining two phases.

35. Vertiv has fully performed all terms, conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement and Purchase Order, except as prevented and/or excused by SVO.

36. SVO breached the Turnkey Agreement and subsequently issued Purchase Order, including the implied covenant of good faith and fair dealing, by, among other things: (1) improperly administering the Agreement, the Purchase Orders and the Project, resulting in, among other things, delays to the Project, out of sequence work, and associated extra work and costs; (2) failing to pay for all work Vertiv performed under the Agreement and Purchase Order, including the engineering and design work, equipment and supplies procured for the Project, and construction services provided pursuant to the separate and distinct obligations set forth in the Agreement and schedule of values; (3) violating Vertiv's rights to intellectual property, trade secrets and work product; (4) intentionally attempting to delay the approval of Change Order

Requests and to delay the completion of the Project in order to, among other things, improperly assess liquidated damages against Vertiv; and (5) wrongfully terminating the Turnkey Agreement and Purchase Order.

37. As a direct and proximate cause of the breach of Turnkey Agreement by SVO, Vertiv has been damaged in a sum in excess of $9,000,000, plus interest thereon at the maximum legally permissible rate, according to proof at trial. Said damage amount is comprised of unpaid amounts owed for separate and distinct categories of work including but not limited to unpaid design services, material and equipment supply, and construction services and performance.

38. Pursuant to California Civil Code sections 8800 and 8818, Vertiv is further entitled to two percent (2%) interest per month on any amounts which were not paid by SVO to Vertiv within the statutory time periods.

39. Further, Vertiv has retained the law firm of Procopio, Cory, Hargreaves & Savitch, LLP to enforce the terms of the Agreement and prosecute this action. Pursuant to the Agreement and the above identified code provisions, Vertiv is entitled to recover its reasonable attorneys' fees and costs incurred in connection with this action.

## SECOND CAUSE OF ACTION

### (Open Book Account as Against SVO)

40. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 39, as though set forth fully herein.

41. SVO became indebted on an open book account for a sum in excess of $9,000,000 for engineering and design services, the procurement and provision of certain equipment and supplies, and the furnishing of certain materials, labor, supplies, and/or services Vertiv furnished to SVO pursuant to the Agreement.

42. No part of said sum has been paid, despite demand, and there is now due, owing and unpaid to Vertiv a sum in excess of $9,000,000, plus interest thereon at the maximum legally permissible rate according to proof at trial.

43. Vertiv alleges that this cause of action is based on an Open Book Account entered into on or after January 1, 1987, as defined in California Civil Code § 1717.5. On this additional

basis, Vertiv is entitled to its reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**

**(Reasonable Value as Against SVO)**

44. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 43, as though set forth fully herein.

45. Vertiv furnished design services, equipment, materials, labor, supplies, and/or services to SVO at their special request, and for which they promised to pay Vertiv the reasonable value therefor.

46. At all times mentioned herein, the total reasonable value of the above mentioned materials, labor, supplies, and/or services furnished by Vertiv to the Project was, and is, the sum in excess of $9,000,000.

47. No part of said sum has been paid, despite demand, and there is now due, owing and unpaid to Vertiv the sum in excess of $9,000,000, plus interest thereon at the maximum legally permissible rate according to proof at trial.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief as Against SVO)**

48. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 47, as though set forth fully herein.

49. Vertiv is informed and believes, and thereon alleges, that an actual controversy has arisen and now exists between Vertiv and SVO concerning their respective rights and duties under the Agreement, specifically regarding the parties' rights with respect to Vertiv's intellectual property and work product, and Vertiv's right to revoke the limited use license granted to SVO relating to certain intellectual property and work product in connection with the Project.

50. Vertiv contends that the Turnkey Agreement expressly provides that the limited use license granted to SVO is revocable and Vertiv is permitted to revoke said license at any time, with or without cause. Accordingly, on or about August 9, 2018, Vertiv served notice to SVO revoking the license, and Vertiv contends that SVO must cease using the intellectual property and work product that is the subject of the license. Vertiv is informed and believes, and thereon alleges, that

SVO contends the license may not be revoked and that it may continue to utilize Vertiv's intellectual property and work product in connection with the completion of all Phases of the Project and in connection with the operation of the completed Project.

51. Vertiv desires a judicial determination of the parties' respective rights and duties, and a declaration that Vertiv may revoke, and has properly revoked, the license and SVO must cease using the intellectual property and work product.

**FIFTH CAUSE OF ACTION**

**(Violation of Unfair Competition Law as Against SVO)**

52. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 51, as though set forth fully herein.

53. The acts of SVO as described herein, and otherwise, constitute unlawful, unfair and fraudulent business practices as defined by California Business & Professions Code § 17200, et seq.

54. Without limitation, at least the following acts by SVO were unlawful business acts: the use of Vertiv's intellectual property and work product without Vertiv's permission, on information and belief, both to finish Phase 1 of the Project and to design and construct Phases 2 and 3 of the Project; and requesting that Vertiv assist them in defrauding SVO's lender by changing or withholding Change Order Requests.

55. Without limitation, at least the following acts by SVO were unfair business acts: the use of Vertiv's intellectual property and work product without Vertiv's permission, on information and belief, both to finish Phase 1 of the Project and to design and construct Phases 2 and 3 of the Project; requesting that Vertiv assist them in defrauding SVO's lender by changing or withholding Change Order Requests; seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project; intentionally inducing Vertiv to retain DPR as a subcontractor to perform work at the Project for the purpose of avoiding an obligation to pay DPR a "Concession Amount" pursuant to a deal between SVO and DPR that was hidden from Vertiv, and, as a result, limiting Vertiv's ability to negotiate with DPR causing Vertiv to incur excessive construction costs; and intentionally attempting to delay the approval of Change Order

Requests and to delay the completion of the Project in order to, among other things, be able to charge Vertiv with delay penalties.

56. Without limitation, at least the following acts by SVO were fraudulent business acts: requesting that Vertiv assist them in defrauding SVO's lender by changing or withholding Change Order Requests; seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project; seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project; intentionally attempting to delay the approval of Change Order Requests and to delay the completion of the Project in order to, among other things, be able to charge Vertiv with delay penalties.

57. As a direct and proximate cause of the wrongful conduct of SVO , Vertiv has been injured in fact. For example, as a direct consequence of the acts of SVO , SVO are using Vertiv's intellectual property and work product to complete Phase 1 of the Project and to design and construct Phases 2 and 3 of the Project, which erodes Vertiv's reputation as a designer and builder of data centers and provides an unjustified cost savings to SVO . Such harm will continue unless the acts of SVO are enjoined by the Court. Vertiv has no adequate remedy at law for the continued acts of unlawful, unfair and fraudulent business practices by SVO .

## SIXTH CAUSE OF ACTION

**(Claim for Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836 Against SVO)**

58. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 57, as though set forth fully herein.

59. Vertiv is the owner of certain valuable trade secrets, as alleged above, relating to the design, construction and outfitting of data centers, including but not limited to drawings, technical products, manuals, engineering calculations, knowhow, and techniques. Examples of trade secrets used in the Project and disclosed to SVO include but are not limited to drawings showing the layout of the components contained in the data center; engineering calculations used to determine the size and optimal function of the components specified for the data center; and the sequence of operations of the control systems that monitor, operate and calibrate the equipment so that the data

center as a whole functions as intended.

60. The trade secrets owned by Vertiv and were not disclosed in any Vertiv patents, patent applications or other publications available to the public. Likewise, Vertiv did not share the trade secrets with anyone outside of the company without the existence of a non-disclosure agreement.

61. Vertiv's trade secrets are related to Vertiv's products and services that are used or sold in interstate and foreign commerce.

62. Vertiv has at all times taken reasonable measures to keep its trade secret information secret and confidential, such as limiting who has access to its trade secrets and requiring any non-Vertiv employee who is shown such information to sign a non-disclosure agreement.

63. Vertiv's trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure of the information.

64. In violation of Vertiv's rights, SVO misappropriated Vertiv's trade secret information in the improper and unlawful manner as alleged herein. For example, SVO have shared drawings and engineering calculations prepared by Vertiv with other data center designers and builders.

65. As a proximate result of SVO 's misappropriation of Vertiv's trade secrets, Vertiv has suffered damages in an amount to be proven at trial pursuant to 18 U.S.C § 1836(b)(3)(B).

66. SVO's trade secret misappropriation has caused and continues to cause Vertiv irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv operates in a competitive market and will continue to suffer irreparable harm absent injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

67. In misappropriating Vertiv's trade secrets, SVO acted willfully and maliciously as Vertiv gave SVO written notice in August 2018 that Vertiv was revoking SVO's license to use Vertiv's intellectual property and that any further disclosure or use of that intellectual property by SVO would be unlawful. Vertiv is thus entitled to exemplary damages pursuant to 18 U.S.C. §

1836(b)(3)(C) and an award of reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

## SEVENTH CAUSE OF ACTION

**(Claim for Misappropriation of Trade Secrets under in Violation of California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426-3426.11, Against)**

68. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 67, as though set forth fully herein.

69. Vertiv is the owner of certain valuable trade secrets, as alleged above, relating to the design, construction and outfitting of data centers, including but not limited to drawings, technical products, manuals, engineering calculations, knowhow, and techniques. Examples of trade secrets used in the Project and disclosed to SVO include but are not limited to drawings showing the layout of the components contained in the data center; engineering calculations used to determine the size and optimal function of the components specified for the data center; and the sequence of operations of the control systems that monitor, operate and calibrate the equipment so that the data center as a whole functions as intended.

70. The trade secrets are owned by Vertiv and were not disclosed in any Vertiv patents, patent applications or other publications available to the public. Likewise, Vertiv did not share the trade secrets with anyone outside of company without the existence of a non-disclosure agreement.

71. Vertiv has at all times taken reasonable measures to keep its trade secret information secret and confidential, such as limiting who has access to its trade secrets and requiring any non-Vertiv employee who is shown such information to sign a non-disclosure agreement.

72. Vertiv's trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure of the information.

73. In violation of Vertiv's rights, SVO misappropriated Vertiv's trade secret information in the improper and unlawful manner as alleged herein. For example, SVO has shared drawings and engineering calculations prepared by Vertiv with other competing data center designers and builders.

74. As a proximate result of SVO 's misappropriation of Vertiv's trade secrets, Vertiv

has suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 3426.3(a)-(b).

75. SVO 's trade secret misappropriation has caused and continues to cause Vertiv irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv operates in a competitive market and will continue to suffer irreparable harm absent injunctive relief pursuant to Cal. Civ. Code § 3426.2.

76. In misappropriating Vertiv's trade secrets, SVO acted willfully and maliciously as Vertiv gave SVO written notice in August 2018 that Vertiv was revoking SVO's license to use Vertiv's intellectual property and that any further disclosure or use of that intellectual property by SVO would be unlawful. Vertiv is thus entitled to exemplary damages pursuant to Cal. Civ. Code § 3426.3(c) and an award of reasonable attorneys' fees pursuant to Cal. Civ. Code § 3426.4.

## EIGHTH CAUSE OF ACTION

### (Claim for Infringement of Patent No. 7,352,082 Against SVO )

77. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 76, as though set forth fully herein.

78. The '082 Patent entitled "Transfer Switch Device and Method" was duly and lawfully issued on April 1, 2008. A true and correct copy of the '082 Patent is attached hereto as Exhibit C and incorporated herein by reference.

79. Vertiv is the owner of all rights, title and interest in the '082 Patent, including the right to bring this suit for injunctive relief and damages.

80. The '082 Patent is valid and enforceable.

81. SVO have infringed and continue to infringe, literally or through the doctrine of equivalents, the '082 Patent by using in the United States without authority certain transfer switch devices.

82. Under the license granted to SVO under the Agreement, Vertiv provided SVO with a Liebert-designed, manufactured and branded STS2 Static Transfer Switch 2 for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the STS2 Static Transfer Switch 2, but, upon information and belief, continues to do so.

83. SVO infringe at least claim 4 of the '082 Patent because that claim was drafted to incorporate the features of the STS2 Static Transfer Switch. Thus, the STS2 Static Transfer Switch being used by SVO has:

a. A first switch connectable to a voltage source;

b. A second switch connectable to a second voltage source;

c. A controller connected to the first and second switches to activate and deactivate the first and second switches to selectively connect the first or second switch to a load via a transformer;

d. The controller having inputs for receiving signals representing voltage levels of the first and second voltage sources and the voltage applied to the load transformer, wherein upon a predetermined condition, the controller:

i. Deactivates the first switch to disconnect the first voltage source from the load;

ii. Computes in substantially real time the volt-second areas under voltage waveforms of the first and second voltage sources;

iii. Assigns a polarity to each voltage-second area based on the polarity of the corresponding voltage;

iv. Determines a switching time to minimize downstream saturation current based on the sum of the absolute values of the areas under the waveforms of the first and second voltage sources being approximately equal to the absolute value of the area under the waveform of a complete half cycle of the second voltage, and their polarities being the same; and

v. Connects the second voltage source to the load at the determined switching time.

84. As a proximate result of SVO 's infringement of the '082 Patent, Vertiv has suffered damages in an amount to be proven at trial.

85. SVO 's infringement of the '082 Patent has caused and continues to cause Vertiv

irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv will continue to suffer irreparable harm absent injunctive relief pursuant to 35 U.S.C. § 283.

86. In infringing the '082 Patent, SVO acted willfully and maliciously as Vertiv gave SVO written notice at least as early as the date of SVO's receipt of the Complaint in the United States District Court for the District of Delaware in the case tilted *Vertiv Corporation v. SVO Building One, LLC*, Case No. 1:18-cv-01776 (the "Delaware Complaint"), that it was infringing the '082 Patent. Notwithstanding such written notice, SVO have continued to use in the United States without authority devices covered by the '082 Patent and, therefore, to infringe that patent in violation of Vertiv's rights. SVO have thus acted reckless and/or egregiously, entitling Vertiv to enhanced damages as determined by the Court, pursuant to 35 U.S.C. § 284.

87. The conduct of SVO makes this an exceptional case, entitling Vertiv to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

**NINTH CAUSE OF ACTION**

**(Claim for Infringement of Patent No. 7,459,804 Against SVO )**

88. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 87, as though set forth fully herein.

89. The '804 Patent entitled "Static Transfer Switch Device and Method" was duly and lawfully issued on December 2, 2008. A true and correct copy of the '804 Patent is attached hereto as Exhibit D and incorporated herein by reference.

90. Vertiv is the owner of all rights, title and interest in the '804 Patent, including the right to bring this suit for injunctive relief and damages.

91. The '804 Patent is valid and enforceable.

92. SVO have infringed and continue to infringe, literally or through the doctrine of equivalents, the '804 Patent by using in the United States without authority certain static transfer switch devices.

93. Under the license granted to SVO under the Agreement, Vertiv provided SVO with a Liebert-designed, manufactured and branded STS2 Static Transfer Switch 2 for use in the Project.

When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the STS2 Static Transfer Switch 2, but, upon information and belief, continues to do so.

94. SVO infringe at least claims 1, 7 and 8 of the '804 Patent because those claims were drafted to incorporate the features of the STS2 Static Transfer Switch. Thus, the STS2 Static Transfer Switch being used by SVO has, as recited in claim 7, for example:

a. A first silicon controlled rectifier connected to a voltage source;

b. A second silicon controlled rectifier connected a second voltage source; and

c. A controller connected to the first and second silicon controlled rectifiers to activate and deactivate the first and second silicon controlled rectifiers to selectively connect the first or the second silicon controlled rectifiers to a load;

d. the controller having inputs for receiving signals representing the voltage levels of the first and second voltage sources and the voltage applied to the load, wherein upon a predetermined condition, the controller temporarily pulses on the second silicon controlled rectifier and thereafter, indefinitely turns on the second silicon controlled rectifier to maintain power to the load.

95. As a proximate result of SVO 's infringement of the '804 Patent, Vertiv has suffered damages in an amount to be proven at trial.

96. SVO 's infringement of the '804 Patent has caused and continues to cause Vertiv irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv will continue to suffer irreparable harm absent injunctive relief pursuant to 35 U.S.C. § 283.

97. In infringing the '804 Patent, SVO acted willfully and maliciously as Vertiv gave SVO written notice at least as early as the date of SVO's receipt of the Delaware Complaint that it was infringing the '804 Patent. Notwithstanding such written notice, SVO have continued to use in the United States without authority devices covered by the '804 Patent and, therefore, to infringe that patent in violation of Vertiv's rights. SVO have thus acted reckless and/or egregiously, entitling Vertiv to enhanced damages as determined by the Court, pursuant to 35 U.S.C. § 284.

98. The conduct of SVO makes this an exceptional case, entitling Vertiv to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

**TENTH CAUSE OF ACTION**

**(Claim for Infringement of Patent No. 9,038,404 Against SVO )**

99. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 98, as though set forth fully herein.

100. The '404 Patent entitled "High Efficiency Cooling System" was duly and lawfully issued on May 26, 2015. A true and correct copy of the '404 Patent is attached hereto as Exhibit E and incorporated herein by reference.

101. Vertiv is the owner of all rights, title and interest in the '404 Patent, including the right to bring this suit for injunctive relief and damages.

102. The '404 Patent is valid and enforceable.

103. SVO have infringed and continue to infringe, literally or through the doctrine of equivalents, the '404 Patent by using in the United States without authority certain thermal devices.

104. Under the license granted to SVO under the Agreement, Vertiv provided SVO with a Liebert-designed, manufactured and branded DSE cooling system (e.g., DA150 and DA125) for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the DSE cooling system, but, upon information and belief, continues to do so.

105. SVO infringe at least claim 1 of the '404 Patent because that claim was drafted to incorporate the features of the DSE cooling system. Thus, the DSE cooling system being used by SVO has:

a. A cabinet having an air inlet and an air outlet;

b. An air moving unit disposed in the cabinet;

c. A plurality of separate cooling stages including an upstream cooling stage and a downstream cooling stage, at least the upstream cooling stage having a variable capacity cooling circuit;

d. Each cooling stage including a cooling circuit having an evaporator, a condenser, a compressor and an expansion device;

e. At least the cooling circuit of the upstream cooling stage having a pumped refrigerant economizer mode and a direct expansion mode wherein each cooling circuit that has both the pumped refrigerant economizer mode and the direct expansion mode also has a liquid pump wherein when that cooling circuit is operated in the direct expansion mode a compressor of that cooling circuit is on and compresses a refrigerant in a vapor phase to raise the refrigerant pressure and thus the refrigerant condensing temperature and the refrigerant is circulated around the cooling circuit by the compressor of that cooling circuit and wherein when that cooling circuit is operated in the pumped refrigerant economizer mode the compressor of that cooling circuit is off and the liquid pump of that cooling circuit is on and pumps the refrigerant in a liquid phase and refrigerant is circulated around that cooling circuit by the liquid pump of that cooling circuit and without compressing the refrigerant in its vapor phase;

f. The evaporator of the cooling circuit of the upstream cooling stage and the evaporator of the cooling circuit of the downstream cooling stage arranged in the cabinet so that air to be cooled passes over the evaporator of the cooling circuit of the upstream cooling stage and the evaporator of the cooling circuit of the downstream cooling stage in serial fashion, first over the evaporator of the cooling circuit of the upstream cooling stage and then over the evaporator of the cooling circuit of the downstream cooling stage;

g. A controller that determines which of the cooling circuits to operate to provide cooling and for each of the cooling circuits to be operated to provide cooling that has both the pumped refrigerant economizer mode and direct expansion mode, determining whether to operate each such cooling circuit in the pumped refrigerant economizer mode or the direct expansion mode;

h. The controller operating each cooling circuit having both the pumped refrigerant economizer mode and the direct expansion mode in the pumped

refrigerant economizer mode when an outside air temperature is low enough to provide sufficient heat rejection from the refrigerant flowing through the condenser to the outside air without compressing the refrigerant and when the outside air temperature is not low enough to provide such sufficient heat rejection operating that cooling circuit in the direct expansion mode;

i. The controller when a Call for Cooling first reaches a point where cooling is needed, operating the upstream cooling circuit to provide cooling and not operating the downstream cooling circuit to provide cooling and when the Call for Cooling has increased to a second point, additionally operating the downstream cooling circuit to provide cooling, wherein the cooling capacity at which the upstream cooling circuit is being operated to provide is less than the full cooling capacity of the upstream cooling circuit when the Call for Cooling reaches the second point;

j. Wherein the compressor of each cooling circuit is a tandem compressor including a fixed capacity compressor and variable capacity digital scroll compressor, the controller controlling the fixed capacity compressor and variable capacity digital scroll compressor of each of the tandem compressors based on the Call for Cooling, which of a plurality of ranges that the Call for Cooling falls within and whether the Call for Cooling is ramping up or ramping down; and

k. Wherein when there is an unmet Call for Dehumidification, the controller controls the tandem compressors based on the Call for Cooling and which of a plurality of dehumidification ranges that the Call for Cooling falls within including determining which of the variable capacity digital scroll compressors to ramp and controls the ramping of each variable capacity digital scroll compressor being ramped based on a the Call for Dehumidification and wherein control based on which of the plurality of dehumidification control ranges the Call for Cooling falls within and on the

Call for Dehumidification takes precedence when there is an unmet Call for Dehumidification.

106. As a proximate result of SVO 's infringement of the '404 Patent, Vertiv has suffered damages in an amount to be proven at trial

107. SVO 's infringement of the '404 Patent has caused and continues to cause Vertiv irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv will continue to suffer irreparable harm absent injunctive relief pursuant to 35 U.S.C. § 283.

108. In infringing the '404 Patent, SVO acted willfully and maliciously as Vertiv gave SVO written notice at least as early as the date of SVO's receipt of the Delaware Complaint that it was infringing the '404 Patent. Notwithstanding such written notice, SVO have continued to use in the United States without authority devices covered by the '404 Patent and, therefore, to infringe that patent in violation of Vertiv's rights. SVO have thus acted reckless and/or egregiously, entitling Vertiv to enhanced damages as determined by the Court, pursuant to 35 U.S.C. § 284.

109. The conduct of SVO makes this an exceptional case, entitling Vertiv to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## ELEVENTH CAUSE OF ACTION

**(Claim for Infringement of Patent No. 9,316,424 Against SVO )**

110. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 109 as though set forth fully herein.

111. The '424 Patent entitled "Multi-Stage Cooling System with Tandem Compressors and Optimized Control of Sensible Cooling and Dehumidification" was duly and lawfully issued on April 19, 2016. A true and correct copy of the '424 Patent is attached hereto as Exhibit F and incorporated herein by reference.

112. Vertiv is the owner of all rights, title and interest in the '424 Patent, including the right to bring this suit for injunctive relief and damages.

113. The '424 Patent is valid and enforceable.

114. SVO have infringed and continue to infringe, literally or through the doctrine of

equivalents, the '424 Patent by using in the United States without authority a certain thermal system.

115. Under the license granted to SVO under the Agreement, Vertiv provided SVO with a Liebert-designed, manufactured and branded DSE cooling system (e.g., DA150 and DA125) for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the DSE cooling system, but, upon information and belief, continues to do so.

116. SVO infringe at least claim 1 of the '424 Patent because that claim was drafted to incorporate the features of the DSE cooling system. Thus, the DSE cooling system used by SVO has:

a. A cabinet having an air inlet and an air outlet;

b. An air moving unit disposed in the cabinet;

c. A plurality of separate cooling stages including an upstream cooling stage and a downstream cooling stage, the upstream cooling stage having an upstream cooling circuit and the downstream cooling stage having a downstream cooling circuit;

d. The upstream and downstream cooling circuits are each a direct expansion refrigeration cooling circuit including an evaporator, a condenser, a tandem compressor and an expansion device, the evaporator having an inlet coupled to an outlet of the expansion device and an outlet coupled to an inlet of the tandem compressor, the tandem compressor having an outlet coupled to an inlet of the condenser and the condenser having an outlet coupled to an inlet of the expansion device;

e. Each tandem compressor including a fixed capacity compressor and a variable capacity compressor;

f. The evaporator of the upstream cooling circuit and the evaporator of the downstream cooling circuit arranged in the cabinet so that air to be cooled passes over them in serial fashion, first over the evaporator of the upstream cooling circuit and then over the evaporator of the downstream cooling

circuit; and

g. A controller coupled to the tandem compressors that in a sensible cooling control controls the fixed capacity compressor and variable capacity compressor of each of the tandem compressors based on a Call for Cooling, also based on which of a plurality of sensible cooling control ranges that the Call for Cooling falls within and also based on whether the Call for Cooling is ramping up or ramping down, wherein when there is an unmet Call for Dehumidification, the controller switching from the sensible cooling control to a dehumidification control and controls the fixed capacity compressor and variable capacity compressor of each of the tandem compressors based on the Call for Dehumidification and also based on which of a plurality of dehumidification control ranges that the Call for Cooling falls within until the Call for Dehumidification has been met and then switching back to the sensible cooling control.

117. As a proximate result of SVO 's infringement of the '424 Patent, Vertiv has suffered damages in an amount to be proven at trial.

118. SVO 's infringement of the '424 Patent has caused and continues to cause Vertiv irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv will continue to suffer irreparable harm absent injunctive relief pursuant to 35 U.S.C. § 283.

119. In infringing the '424 Patent, SVO acted willfully and maliciously as Vertiv gave SVO written notice at least as early as the date of SVO's receipt of the Delaware Complaint that it was infringing the '424 Patent. Notwithstanding such written notice, SVO have continued to use in the United States without authority devices covered by the '424 Patent and, therefore, to infringe that patent in violation of Vertiv's rights. SVO have thus acted reckless and/or egregiously, entitling Vertiv to enhanced damages as determined by the Court, pursuant to 35 U.S.C. § 284.

120. The conduct of SVO makes this an exceptional case, entitling Vertiv to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## TWELFTH CAUSE OF ACTION

**(Claim for Infringement of Patent No. 6,917,124 Against SVO )**

121. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 120, as though set forth fully herein.

122. The '124 Patent entitled "Uninterruptible Power Supply" was duly and lawfully issued on July 12, 2005. A true and correct copy of the '124 Patent is attached hereto as Exhibit G and incorporated herein by reference.

123. Vertiv is the owner of all rights, title and interest in the '124 Patent, including the right to bring this suit for injunctive relief and damages.

124. The '124 Patent is valid and enforceable.

125. SVO have infringed and continue to infringe, literally or through the doctrine of equivalents, the '124 Patent by using in the United States without authority certain uninterruptible power supplies.

126. Under the license granted to SVO under the Agreement, Vertiv provided SVO with a Liebert-designed, manufactured and branded EXL S1 UPS for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the EXL S1 UPS, but, upon information and belief, continues to do so.

127. SVO infringe at least claim 1 of the '124 Patent because that claim was drafted to incorporate the features of the EXL S1 UPS. Thus, the EXL S1 UPS used by SVO has:

a. A controlled rectifier having an input coupled to receive AC power and an output coupled to a DC bus;

b. A battery coupled to the DC bus;

c. An inverter having an input coupled to the DC bus and an output coupled to a load; and

d. A control system coupled to the controlled rectifier and the inverter the control system comprising three microprocessors, wherein a first microprocessor functions as an overall controller, a second microprocessor controls the rectifier, and a third microprocessor controls the inverter;

e. Wherein the three microprocessors communicate via a common global memory.

128. As a proximate result of SVO's infringement of the '124 Patent, Vertiv has suffered damages in an amount to be proven at trial.

129. SVO 's infringement of the '124 Patent has caused and continues to cause Vertiv irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv will continue to suffer irreparable harm absent injunctive relief pursuant to 35 U.S.C. § 283.

130. In infringing the '124 Patent, SVO acted willfully and maliciously as Vertiv gave SVO written notice at least as early as the date of SVO's receipt of the Delaware Complaint that it was infringing the '124 Patent. Notwithstanding such written notice, SVO have continued to use in the United States without authority devices covered by the '124 Patent and, therefore, to infringe that patent in violation of Vertiv's rights. SVO have thus acted reckless and/or egregiously, entitling Vertiv to enhanced damages as determined by the Court, pursuant to 35 U.S.C. § 284.

131. The conduct of SVO makes this an exceptional case, entitling Vertiv to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## THIRTEENTH CAUSE OF ACTION

**(Claim for Infringement of Patent No. 6,563,048 Against)**

132. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 131, as though set forth fully herein.

133. The '048 Patent entitled "Ancillary Cabinet System for an Uninterruptible Power Supply" was duly and lawfully issued on May 13, 2003. A true and correct copy of the '048 Patent is attached hereto as Exhibit H and incorporated herein by reference.

134. Vertiv is the owner of all rights, title and interest in the '048 Patent, including the right to bring this suit for injunctive relief and damages.

135. The '048 Patent is valid and enforceable.

136. SVO have infringed and continue to infringe, literally or through the doctrine of equivalents, the '048 Patent by using in the United States without authority certain ancillary

cabinet systems for use with an uninterruptible power source.

137. Under the license granted to SVO under the Agreement, Vertiv provided SVO with a Liebert-designed, manufactured and branded PPC Second Generation Power Distribution Cabinet for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the PPC Second Generation Power Distribution Cabinet, but, upon information and belief, continues to do so.

138. SVO infringed at least claims 7 and 18 of the '048 Patent because that claim was drafted to incorporate the features of the PPC Second Generation Power Distribution Cabinet. Thus, the PPC Second Generation Power Distribution Cabinet being used by SVO has:

a. At least one bay in the battery cabinet;

b. At least one guide attached to the bay;

c. A tray supported on the at least one guide; and

d. An adjustable service shelf attachable to the battery cabinet and supporting the tray when removed from the bay.

139. As a proximate result of SVO 's infringement of the '048 Patent, Vertiv has suffered damages in an amount to be proven at trial.

140. SVO's infringement of the '048 Patent has caused and continues to cause Vertiv irreparable harm that cannot be fully redressed through damages alone. Preliminary and permanent injunctive relief are necessary to protect Vertiv's legitimate business interests. Vertiv will continue to suffer irreparable harm absent injunctive relief pursuant to 35 U.S.C. § 283.

141. In infringing the '048 Patent, SVO acted willfully and maliciously as Vertiv gave SVO written notice at least as early as the date of SVO's receipt of the Delaware Complaint that it was infringing the '048 Patent. Notwithstanding such written notice, SVO have continued to use in the United States without authority devices covered by the '048 Patent and, therefore, to infringe that patent in violation of Vertiv's rights. SVO have thus acted reckless and/or egregiously, entitling Vertiv to enhanced damages as determined by the Court, pursuant to 35 U.S.C. § 284.

142. The conduct of SVO makes this an exceptional case, entitling Vertiv to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

**FOURTEENTH CAUSE OF ACTION**

**(Intentional Interference with Contractual Relationship Against SVO)**

143. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 142, as though set forth fully herein.

144. In or about January 2018, Vertiv executed a subcontract agreement with DPR whereby DPR was to perform certain services in connection with the Project.

145. SVO knew Vertiv contracted with DPR in connection with the Project as SVO had previously contracted with DPR to perform services at the Project and recommended DPR to Vertiv.

146. SVO improperly and intentionally interfered with Vertiv's contract with DPR in various manners, including but not limited to routinely engaging in secretive and unauthorized direct communications with DPR personnel regarding the work and services DPR was performing for Vertiv on the jobsite and disparaging Vertiv's work.

147. SVO engaged in such conduct for the purpose and with the intent of interfering with Vertiv's performance at the Project and disrupting Vertiv and DPR's contractual relationship. SVO's conduct actually did result in Vertiv's performance being disrupted.

148. As a direct and proximate result of SVO's conducted and interference alleged herein, Vertiv's performance was delayed, obstructed, and rendered more difficult causing Vertiv to incur additional costs, expenses and damages in an amount to be proven at the arbitration of this matter.

149. In intentionally interfering with Vertiv's contract with DPR, SVO acted, willfully, maliciously and fraudulently, entitling Vertiv to an award of exemplary or punitive damages.

**FIFTEENTH CAUSE OF ACTION**

**(Defamation Against SVO)**

150. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through149, as though set forth fully herein.

151. During Vertiv's performance at the Project and following its termination, SVO engaged in conduct aimed at disparaging Vertiv's work and reputation. Such conduct includes

making numerous false statements to third parties on the jobsite and within the industry, including but not limited, falsely stating that commencement of equipment commissioning at the Project was delayed as the result of Vertiv's inability to manage the Project. At the time such statements were made, SVO was aware that commissioning of equipment on the Project had already commenced.

152. SVO knew the foregoing statements and representations were false and/or failed to use reasonable care to determine the truth or falsity of such statements. SVO made these statements to, among others, representatives of DPR, Critical Project Services, LLC, and BCSFM, LLC, for the purpose of harming Vertiv's reputation.

153. As a direct and proximate result of SVO publishing false and defamatory statements, Vertiv has been damaged in an amount to be proven at the arbitration of this matter.

154. Moreover, in making the above false statements with the intention of harming Vertiv, SVO acted with malice, oppression, and/or fraud and Vertiv is entitled to the recovery of punitive damages.

**SIXTEEN CAUSE OF ACTION**

**(Fraud Against SVO)**

155. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 154, as though set forth fully herein.

156. Section 4.2 of the Turkey Agreement sets forth the procedures for Vertiv to accomplish Facility Substantial Completion. One of the procedures called for the successful achievement of facility mechanical completion and startup, testing and commissioning.

157. In or about May 2018, Vertiv reported to SVO that it understood that it had successfully performed facility mechanical completion and startup, testing and commissioning as approved by SVO's retained commissioning consultant. However, SVO and its agents, Nicholas Laag, Ulrich Pelz, and others, represented to Vertiv that such facility mechanical completion and startup, testing and commissioning had not successfully passed and that Vertiv needed to do additional work and run new tests to achieve facility mechanical completion and startup, testing and commissioning.

158. These representations were false. Vertiv had, in fact, attained facility mechanical

completion and startup, testing and commissioning that met the requirements of the Turnkey Agreement as determined by SVO's retained commissioning consultant. As David Keith, a former employee of one of SVO's commissioning consultants for the Project, testified in a deposition, the facility mechanical completion and startup, testing and commissioning had been successfully completed in or about May 2017, and SVO and its agents were aware of the successful completion of such work.

159. At the time SVO and its agents made these representations to Vertiv, they knew the representations were false, yet they made the representations with the intent that Vertiv rely on them.

160. At the time SVO and its agents made these representations to Vertiv, Vertiv relied on the representations made by SVO and its agents, Mr. Laag, Mr. Pelz and others, by, among other things, performing additional work demanded by SVO to allegedly meet the requirement in Section 4.2 of the Turnkey Agreement to achieve facility mechanical completion and startup, testing and commissioning.

161. As a proximate result of SVO's fraud, Vertiv has suffered damages in an amount to be proven at trial.

162. In committing the fraud based on the false representation that in or about May 2017 Vertiv had not achieved facility mechanical completion and startup, testing and commissioning, SVO acted, willfully, maliciously and fraudulently, entitling Vertiv to an award of exemplary or punitive damages.

**SEVENTEENTH CAUSE OF ACTION**

**(Negligent Misrepresentation Against SVO)**

163. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 162, as though set forth fully herein.

164. As alleged herein, Section 4.2 of the Turkey Agreement set forth the procedures for Vertiv to accomplish Facility Substantial Completion. One of the procedures called for the successful achievement of facility mechanical completion and startup, testing and commissioning.

165. In or about May 2018, Vertiv reported to SVO that it had successfully performed

facility mechanical completion and startup, testing and commissioning. SVO and its agents, Nicholas Laag, Ulrich Pelz, and others, represented to Vertiv that such facility mechanical completion and startup, testing and commissioning had not successfully passed and that Vertiv needed to do additional work and run new tests to achieve facility mechanical completion and startup, testing and commissioning.

166. These representations were false. Vertiv had, in fact, attained facility mechanical completion and startup, testing and commissioning that met the requirements of the Turnkey Agreement. As David Keith, a former employee of one of SVO's commissioning consultants for the Project, testified in a deposition, the facility mechanical completion and startup, testing and commissioning had been successfully completed in or about May 2017, and SVO and its agents were aware of the successful completion of such work.

167. At the time SVO and its agents made these representations to Vertiv, they had no reasonable basis for believing them to be true, yet they made the representations with the intent that Vertiv rely on them.

168. At the time SVO and its agents made these representations to Vertiv, Vertiv reasonably relied on the representations made by SVO and its agents, Mr. Laag, Mr. Pelz and others, by, among other things, performing additional work demanded by SVO to allegedly meet the requirement in Section 4.2 of the Turnkey Agreement to achieve facility mechanical completion and startup, testing and commissioning.

169. As a proximate result of SVO's negligent misrepresentation, Vertiv has suffered damages in an amount to be proven at trial.

## EIGHTEENTH CAUSE OF ACTION

**(Civil Conspiracy Against SVO)**

170. Vertiv hereby incorporates by reference each and every allegation contained in paragraphs 1 through 169, as though set forth fully herein.

171. In or about May 2018, Defendant SVO and its agents, Nicholas Laag, Ulrich Pelz, and others, knowingly and intentionally engaged in a civil conspiracy to defraud Vertiv by falsely representing to Vertiv that the data center facility mechanical completion and startup, testing and

commissioning had not been completed and that Vertiv needed to do additional work and run new tests to achieve facility mechanical completion and startup, testing and commissioning.

172. As a proximate result of SVO's civil conspiracy to defraud Vertiv, Vertiv has suffered damages in an amount to be proven at trial.

173. In engaging in this civil conspiracy to defraud Vertiv, SVO acted, willfully, maliciously and fraudulently, entitling Vertiv to an award of exemplary or punitive damages.

## PRAYER

WHEREFORE, Vertiv prays for judgment as follows:

**On the First, Second and Third Causes of Action**

1. For a principal sum in excess of $9,000,000, according to proof at trial;

2. For two percent (2%) interest per month of the amount found to be due to Liebert pursuant to California Civil Code Sections 8800 and 8818.

3. For interest thereon at the maximum legally permissible rate;

4. For reasonable attorneys' fees incurred in prosecuting this action;

5. For costs of suit incurred herein;

6. For such other and further relief as the Court deems just and proper.

**On the Fourth Cause of Action**

1. For a declaration of Liebert's rights, specifically a declaration that Liebert may revoke, and has properly revoked, the license it issued to SVO and that SVO must cease using the intellectual property and work product that is the subject of the license;

2. For reasonable attorneys' fees;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems just and proper.

**On the Fifth Cause of Action**

1. For preliminary and permanent injunctive relief requiring SVO , and their agents, servants and employees, all persons acting under, in concert with or for them, to refrain from engaging in unlawful, unfair and fraudulent business practices;

2. For disgorgement of the unjust enrichment realized by SVO from their unlawful,

unfair and fraudulent business practices, according to proof;

3. For costs of suit incurred herein;

4. For such other and further relief as the Court deems just and proper.

**<u>On the Sixth and Seventh Causes of Action</u>**

1. For judgement that SVO misappropriated Vertiv's trade secrets in violation of Defend Trade Secrets Act, 18 U.S.C. § 1836;

2. For judgement that SVO misappropriated Vertiv's trade secret in violation of California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426-3426.11;

3. For damages according to proof;

4. For preliminary and permanent injunctive relief requiring SVO , and their agents, servants and employees, all persons acting under, in concert with or for them, to refrain, from using or disclosing any of Vertiv's trade secrets, confidential know-how or proprietary information regarding Vertiv's design, construction or outfitting of the SVO data center at McClellan Park pursuant to 18 U.S.C. § 1836(b)(3)(A) Cal. Civ. Code § 3426.2;

5. For exemplary damages as may be provided by law pursuant to 18 U.S.C. § 1836(b)(3)(C) Cal. Civ. Code § 3426.3(c);

6. For reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) Cal. Civ. Code § 3426.4;

7. For prejudgment and post-judgment interest;

8. For costs of suit incurred herein; and

9. For such other and further relief as the Court deems just and proper.

**<u>On the Eighth through Thirteenth Causes of Action</u>**

1. For judgement that SVO have infringed and are infringing the '082, '804, '404, '424, '124 and '048 Patents;

2. For damages according to proof;

3. For the entry of a preliminary injunction and a permanent injunction to prevent SVO , and their agents, servants and employees, all persons acting under, in concert with or for them, to

refrain from making, using, selling or offering to make, use or sell devices covered by the '082, '804, '404, '424, '124 or '048 Patents pursuant to 35 U.S.C. § 283;

4. For a finding that the infringement by SVO is and has been willful entitling Vertiv to enhanced damages pursuant to 35 U.S.C. § 284;

5. For a finding that this case represents an exceptional case entitling Vertiv to its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

6. For prejudgment and post-judgment interest;

7. For costs of suit incurred herein; and

8. For such other relief as the Court may deem just and proper.

**On the Fourteenth Cause of Action**

1. For a principal sum according to proof at trial;
2. For interest thereon at the maximum legally permissible rate;
3. For exemplary damages as may be provided by law;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

**On the Fifteenth Cause of Action**

1. For a principal sum according to proof at trial;
2. For interest thereon at the maximum legally permissible rate;
3. For exemplary damages as may be provided by law;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

**On the Sixteenth Cause of Action**

1. For a principal sum according to proof at trial;
2. For interest thereon at the maximum legally permissible rate;
3. For exemplary damages as may be provided by law;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.
6.

**On the Seventeenth Cause of Action**

1. For a principal sum according to proof at trial;
2. For interest thereon at the maximum legally permissible rate;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court deems just and proper.

**On the Eighteenth Cause of Action**

1. For a principal sum according to proof at trial;
2. For interest thereon at the maximum legally permissible rate;
3. For exemplary damages as may be provided by law;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

Dated: July 11, 2019

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: ______________________
Robert H. Sloss
Mark G. Budwig
Victor M. Felix
Mike Nolan

Attorneys for Claimant
Vertiv Corporation (formerly Liebert Corporation)

# EXHIBIT “C”

WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

October 28, 2019

David Simantob
Direct (213) 330-8819
David.Simantob@wilsonelser.com

***Via Email (upelz@PRIMEDATACENTERS.COM) and***
***U.S. Mail, Return Receipt Requested***

Mr. Ulrich Pelz
SVO Building One, LLC
3140 Peacekeeper Way, Suite 101A
McClellan Park, CA 95652

Re: *Liebert Corporation v. SVO Building One, LLC*
American Arbitration Association Fourth Amended Complaint
Case No. 01-18-0003-1318
Named Insured: SVO Building One, LLC
Policy No.: LA17CGL219162IC
(effective 07/12/17 to 03/12/18, extended to 8/12/19)
WEMED No: 18753-318

Dear Mr. Pelz:

Please be advised that we are coverage counsel for Navigators Specialty Insurance Company ("Navigators") with regard to the above-referenced action ("Litigation"). Navigators is in receipt of your tender on behalf of the named insured, SVO Building One, LLC ("SVO") of the Litigation submitted to the American Arbitration Association ("AAA") under the above-referenced policy ("Policy") issued to SVO.

Navigators will agree to defend the SVO in the Litigation under the Policy under a full reservation of rights, as further discussed below. It is important that SVO understand that Navigators' defense of SVO in the Litigation is subject to the full and complete reservation of rights under the Policy as described below. The purpose of this letter is to confirm, set forth in detail, and explain the nature of the reservation.

Please be advised that Navigators' position is based on the allegations contained in the Litigation as they are currently pled and the facts and circumstances presently known to it. Navigators recognizes that the allegations in the Litigation may be unsubstantiated and nothing in this letter is intended to suggest that the allegations have any legal or factual merit. Again, if you have any facts, legal arguments or other information that you believe may impact Navigators' coverage position for the Litigation, Navigators requests that you immediately bring it to Navigators' attention. Similarly, if you learn of any information that may impact Navigators' coverage position as matters proceed, Navigators requests that you immediately notify Navigators so that

it may evaluate the new information. Navigators reserves its right to supplement, amend, or change its coverage position at any time, including, but not limited to in circumstances where additional information and/or amended pleadings are submitted to it.

## I. The Policy.

Navigators issued Policy Number LA17CGL219162IC effective July 12, 2017 to March 12, 2018 to SVO Building One, LLC ("Policy"). The effective date of the Policy was extended by endorsements to August 12, 2019. The Policy contains a $2 million per "occurrence" limit and a $2 million aggregate limit. Please note, however, that the discussion in this letter is only a partial recitation of the terms, conditions, exclusions, and definitions contained in the Policy. It is not intended to supplement, amend, supersede or otherwise alter the Policy. Navigators does not intend to waive any of the provisions of the Policy by virtue of its synopsis. Please consult SVO's copies of the Policy for a complete listing of all of the terms, conditions, exclusions, and definitions contained therein.

The Policy lists the business description for SVO as an "8 Month OCP Data Center Construction Project" McClellan Park Building 637 at 2407 AK Street in McClellan CA 95652. The Policy includes a limitation of coverage to designated premises or project endorsement for the McClellan Park Building 637, 2407 AK Street in McClellan, CA 95652.

The Policy contains the following relevant provisions, in pertinent part:

> **SECTION I COVERAGES**
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

***

**2. Exclusions**

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

***

o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

***

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

c. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

***

**2. Exclusions**

This insurance does not apply to:

a. Knowing Violation Of Rights Of Another
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. Material Published With Knowledge Of Falsity
"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior To Policy Period
"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. Contractual Liability
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

The Policy contains an IP Amendment Endorsement Form Number, NPC 642 11 08, which provides in relevant part, as follows:

I. Item 14. of SECTION V - DEFINITIONS. Is deleted in its entirety and replaced with the following:

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment:

b. Malicious prosecution:
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lesser:
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:
e. Oral or written publication of material that violates a person's right of privacy.

II. Under SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, exclusion i. Infringement Of Copyright, Patent, Trademark Or Trade Secret, is deleted in its entirety and replaced with the following:

i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas "Personal and Advertising Injury" arising out of:
(a) Infringement, disparagement, dilution, diminishment of or damage to:
  i. Copyright, slogan or title:
  ii. Patent:
  iii. Trademark, service mark, collective mark, or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service:
  iv. Trade secret;
  v. Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service:
  vi. Advertising ideas, concepts, campaigns, or style of doing business; or
  vii. Any other intellectual property rights recognized or implied by law.
(b) False designation of the origin of a good, product or service;

## II. Litigation.

The Plaintiff, Liebert Corporation ("Plaintiff") filed a Fourth Amended Complaint with the American Arbitration Association ("AAA") against the named insured, SVO Building One, LLC. The Fourth Amended Complaint alleges the following twelve causes of action:

1. Breach of Contract
2. Open Book Account
3. Reasonable Value
4. Declaratory Relief

5. Violation of Unfair Competition
6. Misappropriation of Trade Secrets
7. Patent Infringement
8. Intentional interference with contractual relations
9. Defamation
10. Fraud
11. Negligent Misrepresentation
12. Civil Conspiracy

Plaintiff alleges it entered into several agreements with SVO regarding the design and construction for a data center that SVO was building at 2407 AK Street, Sacramento, California ("Project"). The first contract was allegedly a Consultant Agreement dated December 2016 where Plaintiff was to perform certain design services for the Project. Plaintiff and SVO also allegedly entered into a Lump Sum Turnkey Agreement in May 2017 to provide certain design, engineering, procurement, installation, construction, testing, commissioning and start up services at the Project. The Project was allegedly developed in three phases with each phase completing one of the three data halls.

Plaintiff allegedly granted SVO a limited, non-exclusive, not transferable revocable license to use Plaintiff's Intellectual property and work product solely in connection with the Project.

SVO also allegedly entered into a separate construction agreement with DPR Construction in February 2016. Plaintiff alleges that, unbeknownst to Plaintiff, SVO did not terminate its agreement with DPR. In December 2017, Plaintiff alleges a supplement/change to the building permit was completed changing the general contractor from DPR to the Plaintiff. Plaintiff alleges that SVO agreed to provide DPR a concession amount if Plaintiff did not hire DPR as a subcontractor. Plaintiff alleges this this hindered its ability to negotiate fair and equitable terms with DPR and increased costs on the Project.

SVO allegedly terminated the Turnkey Agreement in July 2018 after Plaintiff substantially completed Phase 1 of the Project. Thereafter, Plaintiff allegedly revoked SVO's license in writing on August 9, 2018. Plaintiff alleges that SVO gave drawings, shared information, Plaintiff's trade secrets and patented technology with other designers and builders of data centers or Plaintiff's competitors.

## III. <u>Coverage Position</u>.

Navigators will agree to defend the SVO in the Litigation under the Policy under a reservation of rights, as further discussed below.

The Insuring Agreement in the Policy for "bodily injury" and "property damage" provides, in relevant part that Navigators "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

The Insuring Agreement of the Policy also provides that the insurance only applies if "[t]he 'bodily injury' or 'property damage'" takes place "during the policy period . . . ." The Policy defines "bodily injury" in part as "bodily injury, sickness or disease sustained by a person. . ." The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or . . . [l]oss of use of tangible property that is not physically injured." The Policy defines "occurrence" to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Litigation does not allege "bodily injury" or "property damage" caused by an "occurrence", as those terms are defined in the Policy. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Litigation does not allege covered "bodily injury" or "property damage" caused by an "occurrence" which takes place during the policy period.

The Policy is subject to a "Contractual Liability" exclusion which provides in part that the policy does not apply to "[b]odily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," among certain exceptions. The Litigation alleges Breach of Contract. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Contractual Liability Exclusion applies to preclude or limit coverage under each of the Policy.

The Policy is subject a "Personal and Advertising Injury" exclusion which provides in part that the Policy does not apply to "'[b]odily injury' arising out of 'personal and advertising injury'." Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Personal and Advertising Injury Exclusion applies to preclude or limit coverage under each of the Policy.

The Policy also contains an "expected or intended" exclusion which provides in part that the policy does not apply to "bodily injury" or "property damage" "expected or intended from the standpoint of the insured." The Litigation alleges various intentional conduct against SVO including, but not limited to, intentional interference with contractual relations, fraud, negligent misrepresentation and civil conspiracy, among others. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the "expected or intended" exclusion applies to preclude or limit coverage under each of the Policy.

The Insuring Agreement for the "personal and advertising injury" coverage part of the Policy provides, in part, that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The Policy further provides that "[t]his insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

The Policy defines "personal and advertising injury" in part, as follows:

> "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment:
> b. Malicious prosecution:
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lesser:
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:
> e. Oral or written publication of material that violates a person's right of privacy.

The Litigation alleges defamation against SVO, which is the only allegation contained in the Litigation which potentially qualifies as an enumerated "personal or advertising injury" offense. Under the defamation cause of action, Plaintiff alleges during Plaintiff's performance of work at the Project and following its termination, SVO "disparaged" Plaintiff's work and reputation by "making numerous false statements to third parties on the jobsite and within the industry, including but not limited, falsely stating that commencement of equipment commissioning at the Project was delayed as a result of Veritiv's inability to manage the Project." Plaintiff alleges that statements were made to competitors including "DPR, Critical Project Services, LLC and BCSFM, LLC for purposes of harming Veritiv's reputation." Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the defamation claim does not fall within the "personal and advertising injury" offense of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" committed during the Policy period. Navigators also reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Litigation does not allege an enumerated "personal and advertising injury" offense, a "personal injury" offense or an "advertising injury" offense arising out of SVO's business and committed during the policy period, as required by the Policy.

The Policy contains a Knowledge of Falsity Exclusion under the "personal and advertising injury" coverage part, which provides that the insurance does not apply to:

> **b. Material Published With Knowledge Of Falsity**
> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

To the extent SVO published defamatory statements with knowledge that those statements are false, this exclusion may apply to preclude coverage. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy also contains an Intellectual Property Exclusion, as modified by endorsement, under the "personal and advertising injury" coverage part, which provides that the insurance does not apply to:

> **i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas "Personal and Advertising Injury" arising out of:**
>
> (a) Infringement, disparagement, dilution, diminishment of or damage to:
>
> i. Copyright, slogan or title:
>
> ii. Patent:
>
> iii. Trademark, service mark, collective mark, or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service:
>
> iv. Trade secret;
>
> v. Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service:
>
> vi. Advertising ideas, concepts, campaigns, or style of doing business; or
>
> vii. Any other intellectual property rights recognized or implied by law.
>
> (b) False designation of the origin of a good, product or service;

The Litigation alleges patent infringement and misappropriation of trade secrets, which are excluded by the Intellectual Property Exclusion. Navigators has no duty to indemnify SVO for any damages because of patent infringement or misappropriation of trade secrets. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy contains contractual liability and breach of contract exclusions under the "personal and advertising injury" coverage part, which provides in pertinent part, as follows:

> **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> ***
>
> **2. Exclusions**
>
> **This insurance does not apply to:**
>
> ***

e. Contractual Liability
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

The Litigation alleges breach of contract. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the above exclusions apply to preclude or limit coverage under the Policy.

The Policy also excludes coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy also excludes coverage for "personal and advertising injury" "[a]rising out of a criminal act committed by or at the direction of the insured." The Litigation alleges fraud and civil conspiracy against SVO. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy also contains a punitive damages exclusion, by endorsement NPC-635 05 14, which provides in relevant part:

> This insurance does not apply to:
>
> Punitive damages, exemplary damages, fines, penalties, treble damages or other increase in damages resulting from the multiplication of compensatory damages, in whatever form assessed. If a "suit" is brought against the insured seeking damages to which this insurance applies and punitive or exemplary damages, we will provide a defense to such "suit". However, we will have no obligation to pay for any costs, interest, or judgment attributable to punitive or exemplary damages. Provisions of this exclusion do not apply in any state where such exclusion is expressly prohibited by state law or insurance department regulation.

To the extent the Litigation seeks punitive damages and those damages are not insurable, Navigators has no duty to indemnify SVO for any award of punitive damages.

Navigators also reserves its rights to deny indemnity for any equitable relief such as injunctive relief as they do not qualify as covered damages under the Policy. In addition, Navigators reserves its rights to deny indemnity for any causes of action that do not fall within a covered enumerated "personal or advertising injury" offense or qualify as a covered "property damage" or "bodily injury" caused by an "occurrence", including the causes of action for breach of contract, open book account, reasonable value, violation of unfair competition, misappropriation of trade secrets, patent infringement, intentional interference with contractual relations, fraud, negligent misrepresentation or civil conspiracy.

The Policy contains a limit of liability. Navigators will not pay any claim or judgment under the Policy to the extent that it exceeds the limits of the Policy. Any damage award in excess of the limit of liability, even for a loss that would be covered otherwise, will not be paid by Navigators.

## IV. <u>Defense Counsel.</u>

Navigators agrees to provide independent defense counsel selected by SVO in the Litigation from the date of tender of the Amended Complaint pursuant to California Civil Code §2860 which addresses the duties for independent counsel. As outlined in Civil Code Section 2860, the defense attorney selected by SVO to represent them must meet certain minimum qualifications. Pursuant to that statute, the defense attorney selected must have five (5) years of tort litigation practice, including substantial defense experience in the subjects and issues involved in the claim. They must also carry errors and omissions coverage.

Under California Civil Code §2860, Navigators' obligation to pay the reasonable fees incurred by defense counsel chosen by SVO is limited to rates which are actually paid by Navigators to its attorneys that it retains in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. California Civil Code §2860(c). Accordingly, Navigators will only agree to reimburse at hourly rates which are actually paid by Navigators in accord with California Civil Code §2860(c). Should counsel selected by SVO charge hourly rates in excess of these rates, SVO bears the full responsibility to pay the difference in rates.

Please note that SVO may choose to agree to waive its right to independent counsel pursuant to California Civil Code Section 2860, in which case Navigators will select and pay for defense counsel to defend SVO in this Litigation. ***Should SVO agree to waive its right to independent counsel, Navigators requests that it acknowledge its agreement to do so by signing the statement (which is required under California Civil Code Section 2860(e)) set forth at the end of this letter and returning it to my attention.***

Please be advised that Navigators will not pay any defense fees or costs relating to any insurance coverage action or advice, any non-legal fees and costs incurred for items such as crisis management or public relations, or any fees or costs incurred relative to any cross-claim SVO may file in this matter. To the extent that Navigators pays for the defense of claims that do not

fall within the scope of coverage, it reserves all rights under applicable law to seek reimbursement of those amounts from SVO.

Consistent with the provisions of the Policy and Civil Code § 2860, Navigators requests that SVO and defense counsel selected by SVO provide Navigators with all updates, pleadings, reports and analyses prepared detailing the evaluation of the Litigation, including an evaluation of the damages exposure, costs of defense through trial, and the amounts recommended for settlement of the Litigation. ***Please send all defense invoices and reports via email to the undersigned for review.*** Navigators reserves the right to review fees and costs billed by defense counsel chosen by SVO and to determine whether they are reasonable and reasonably incurred.

Please advise if another insurance carrier is providing coverage and/or a defense to SVO in the Litigation. Navigators will share the defense fees and costs of SVO in the Litigation with any other participating carrier defending SVO. If any other valid and collectible insurance is available to SVO for the defense of the Litigation, Navigators' obligations may be further limited under the Policy. Pursuant to the "other insurance" provision in the Policy, Navigators reserves the right to seek contribution for any defense and indemnity payments from all other valid and collectible insurance, whether issued to SVO or to others. Navigators also expressly reserves the right to assert its subrogation rights. Navigators requests that SVO immediately notify, if it has not already, any other insurance carriers whose coverage might apply to the claims asserted in this action and ask that the other carriers participate in the defense and indemnity of these claims. Please provide a copy of any such notification letters, any responses and their policies.

## V. Additional Reservation Of Rights.

Navigators also reserves the right to deny coverage for any uncovered damages alleged in the Litigation and/or where any damages are prohibited by applicable law, including, but not limited to Plaintiff's claim for punitive damages. The Policy also contains limits of insurance. Navigators will not pay any damages under the Policy to the extent any damages exceed the policy limit. Any damage award in excess of the limit of insurance, even for a loss that would be covered otherwise, will not be paid by Navigators.

Navigators wants SVO to know that by continuing with its investigation, by paying for lawyers to defend SVO in the Litigation, and by doing anything which Navigators feels is necessary to keep any loss to a minimum, Navigators is not necessarily agreeing to pay any judgment if one is obtained against SVO. Navigators will assert any and all of its applicable coverage defenses. Indeed, Navigators is not waiving its right to deny coverage, to further supplement or modify its reservation of rights, to raise any additional coverage defenses as they arise, or to refuse to defend SVO further at any future time. Navigators further reserves its right to seek reimbursement from SVO, independent counsel chosen by SVO, or from other persons not insured, and/or from other insurers, for all or a portion of all sums paid or advanced by Navigators towards attorneys' fees, costs, investigation, or any other sums paid by Navigators in

connection with the Litigation (including any indemnity payments) based on allocation between potentially covered claims and other claims, or based on any other reason.

Navigators agrees to defend SVO in the Litigation subject to a full reservation of rights, but will indemnify SVO only for those claims that come within the insuring agreements of, and are not excluded by, the Policy. Navigators will not indemnify SVO for any claims that are not so covered under the Policy. Any other damages awarded against SVO, or for which SVO assumes responsibility, would be the responsibility of SVO. Similarly, as noted above, should there be any award of punitive and/or exemplary damages, those would likewise be the responsibility of SVO.

Navigators expressly reserves its right to allocate between any covered and non-covered items of damages and payments (if any) of settlements and/or judgments and to seek reimbursement from SVO or others for any such non-covered indemnity payments. Navigators has no duty to indemnify SVO for any damages to the extent that those damages exceed the limits of insurance.

No payment by Navigators of any settlements and/or judgments shall constitute a waiver by Navigators of its rights under the Policy to later seek allocation and reimbursement of sums paid for any such settlements and/or judgments on the ground that there is no duty to indemnify SVO against all or a portion of this claim.

There may be additional terms, conditions, provisions and/or exclusions that bar or limit coverage under the Policy. Navigators reserves its rights to deny any duty to defend or indemnify and/or raise any and all coverage defenses.

## VI. Conclusion.

This letter is not intended as a comprehensive statement of each and every potentially applicable term, condition, exclusion, limitation, defense or right that Navigators may have under the Policy or in law. Navigators reserves the right to cite other provisions of the Policy not already cited in this letter. Navigators also reserves the right to raise and rely on all potentially applicable coverage defenses to disclaim coverage, whether or not stated in this letter. Navigators may rely on additional or different exclusionary terms or provisions in the Policy if, in the course of subsequent investigation, Navigators discovers facts which would make other terms of the Policy applicable. Navigators reserves the right to amend the coverage position set forth in this letter and to advise you of the grounds upon which any modifications are made.

Please note that nothing set forth in this letter should be deemed to amount to a waiver on the part of Navigators to assert the applicability of any of the provisions, terms, definitions, or exclusions of the Policy. Navigators expressly reserves the right to raise any additional coverage defenses, including the right to disclaim coverage on any other basis that may become apparent as this matter progresses and to file a declaratory judgment action to obtain a ruling on any disputed coverage issue.

Nothing contained herein should be construed as an estoppel or waiver of any rights or defenses, whether or not stated herein, which Navigators may possess under the Policy and/or applicable law. It should be understood further that any actions, including investigations, taken to date by Navigators and/or its agents and representatives do not constitute and are not intended as an estoppel or waiver of any rights or defenses available to Navigators, whether or not stated herein, that may be available now or at any point in time. Navigators specifically reserves its right to rely on the language of the Policy, and to deny coverage for any valid reason that may subsequently appear. Navigators shall not waive any of its rights unless expressly so stated in writing by Navigators.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Fair Lawsuits Settlement Practices Regulations, if insureds believe all or part of this claim has been wrongfully denied or rejected, they may have this matter reviewed by the following entity:

California Department of Insurance
Consumer Services Division
300 S. Spring Street
Los Angeles, CA 90013
1-800-927-4357-HELP

Should you have any questions, please do not hesitate to contact the undersigned.

Sincerely,

Wilson Elser Moskowitz Edelman & Dicker, LLP

David Simantob

cc: Mary Ann Vorndran ***(Via email only MVorndran@navg.com)***

Lisa D. Nicolls (***Via email only lnicolls@murphyaustin.com***)
Murphy Austin Adams Schoenfeld LLP
555 Capitol Mall, Suite 850, Sacramento, CA 95814

Marianne Evans (***Via email only mevans@hoffmanbrown.com***)
Hoffman Brown Company

**WAIVER PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2860**

This waiver is in connection with the matter entitled *Liebert Corporation v. SVO Building One, LLC,* American Arbitration Association, Case No. 01-18-0003-1318. The Insurer herein is Navigators Specialty Insurance Company.

SVO BUILDING ONE, LLC ("SVO") HAS BEEN ADVISED AND INFORMED OF ITS RIGHT TO SELECT INDEPENDENT COUNSEL TO REPRESENT IT IN THIS MATTER. IT HAS CONSIDERED THIS MATTER FULLY AND FREELY WAIVE ITS RIGHTS TO SELECT INDEPENDENT COUNSEL AT THIS TIME. SVO AUTHORIZES THE INSURER TO SELECT A DEFENSE ATTORNEY TO REPRESENT IT IN THIS MATTER.

DATED: _______________, 2019

SVO Building One, LLC

By: ________________________________

Its: ________________________________

# EXHIBIT "D"

STEVEN W. MURRAY
a law corporation

SUITE 205
14930 VENTURA BOULEVARD
SHERMAN OAKS, CALIFORNIA 91403

(818) 501-2277
fax (818) 501-6441
info@psilaw.com

May 3, 2021

David Simantob, Esq.
WILSON ELSER
555 S. Flower St., Ste. 2900
Los Angeles, CA 90071

Re: *Liebert Corporation vs. SVO Building One*
Navigators' Cl. No. 01-18-0003-1318

Dear Mr. Simantob:

SVO disagrees with Navigators' denial of coverage set forth in its March 31, 2021, letter stating it was withdrawing its defense in fifteen days.

> "the allegation of defamation against SVO is the *only* allegation contained in the Litigation that potentially qualifies as an enumerated 'personal or advertising injury' offense . . . ¶ We are in receipt of Liebert Corporation's . . . Dismissal . . . of . . . its defamation claim. *Navigators has determined there is no coverage under the Policy for the remaining claims asserted against SVO in the Lawsuit.* As Navigators has no duty to defend SVO . . . , **Navigators is withdrawing its defense of SVO in the Lawsuit on April 15, 2021, fifteen (15) days from the date of this letter.**" (Italics added.)

This determination is factually and legally unsupportable.

**1. Vertiv's 4th Amended Complaint Alleges Covered Claims.**

**A. Disparagement.** The policy provides coverage for the "personal injury" offenses of slander, libel and disparagement. Vertiv alleges this:

> "causing third parties to issue false reports regarding the commissioning of equipment on the Project;" (¶55, p. 12:23-24; ¶56, p.13:5-7.)

> SVO's conduct "erodes Vertiv's reputation as a designer and builder . . . ." (¶57, p. 13:13.)

> Communications "disparaging Vertiv's work" were made by SVO to DPR. (¶146, p. 29:13.)

**B. Property Damage.** The policy provides coverage for property damage which includes loss of use of tangible property which has not been physically injured. Vertiv alleges this:

> "SVO has given drawings and calculations prepared by Vertiv to designers and builders of data centers . . . ."(¶30, p. 8:19-20.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded STS2 Static Transfer Switch 2 for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the STS2 Static Transfer Switch 2, but . . . continues to do so." (¶82, p. 16:25-28.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '082 Patent . . . ." (¶86, p. 18:8-9.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded STS2 Static Transfer Switch 2 for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the STS2 Static Transfer Switch 2, but . . . continues to do so." (¶93, p. 18:27-28 to p. 19:1-2.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '804 Patent . . . ." (¶97, p. 19:25-26.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded DSE cooling system (e.g., DA150 and DA125) for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the DSE cooling system, but . . . continues to do so." (¶104, p. 20:15-18.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '404 Patent . . . ." (¶108, p. 23:11-12.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded DSE cooling system (e.g., DA150 and DA125) for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the DSE cooling system, but . . . continues to do so." (¶115, p. 24:3-6.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '424 Patent . . . ." (¶119, p. 25:23-24.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded EXL S1 UPS for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the EXL S1 UPS, but . . . continues to do so." (¶126, p. 26:14-17.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '124 Patent . . . ." (¶130, p. 27:11-12.)

**2. Navigators' Duty To Defend Continues.**

The dismissal of the Defamation Cause has no effect on Navigators' defense obligations because the other covered claims asserted against SVO remain in full force and effect. The continued pendency of the action triggers Navigators' duty to defend.

> "The duty commences upon tender of the defense, and continues until the underlying lawsuit is concluded." (*Lambert vs. Commonwealth Land Title* (1991) 53 Cal.3d 1072, 1077.)

**3. Summary.**

SVO is entitled to the policy benefits it bought and which California law protects. It continues to be entitled to a defense in the *Liebert* action. Navigators should revisit its coverage denial and withdrawal, and agree to protect SVO and make it whole. A written favorable response is requested within ten (10) days.

Very truly yours,

STEVEN W. MURRAY

SWM:dr
cc: SVO

# EXHIBIT "E"

WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

May 18, 2021

David Simantob
Direct (213) 330-8819
David.Simantob@wilsonelser.com

***Via Email (swm@psilaw.com)***

Steven W. Murray, Esq.
14930 Ventura Blvd.
Suite 205
Sherman Oaks, California 91403

Re: *Liebert Corporation v. SVO Building One, LLC*
American Arbitration Association Fourth Amended Complaint
Case No. 01-18-0003-1318
Named Insured: SVO Building One, LLC
Policy No.: LA17CGL219162IC
(effective 07/12/17 to 03/12/18, extended to 8/12/19)
WEMED No: 18753-318

Dear Mr. Murray:

As you know, we are coverage counsel for Navigators Specialty Insurance Company ("Navigators") with regard to your tender on behalf of the named insured, SVO Building One, LLC ("SVO") of the above-referenced arbitration ("Litigation") before the American Arbitration Association ("AAA") under the above-referenced policy ("Policy") issued to SVO.

By our letter of October 28, 2019, Navigators agreed to defend SVO in the Litigation subject to a full and complete reservation of rights including, among other things, the right to withdraw from the defense. On March 24, 2021, however, the claimant Vertiv Corporation fka Liebert Corporation ("Vertiv") dismissed without prejudice, among other things, the Fifteenth Cause of Action for Defamation in its Fourth Amended Complaint ("Complaint"). On March 31, 2021, Navigators wrote to SVO and advised that, in light of the dismissal of defamation cause of action, Navigators no longer had a duty to defend SVO and was withdrawing its defense of SVO in the Litigation on April 15, 2021. We are in receipt of your letter of May 3, 2021, wherein you state that "SVO disagrees with Navigators' denial of coverage set forth in its March 31, 2021, letter" and assert that SVO "continues to be entitled to a defense in the [Litigation]."

While Navigators continues to believe it no longer has a duty to defend SVO in the Litigation, in light of your May 3, 2021 letter, Navigators will not withdraw from the defense of SVO in the Litigation at this time. Navigators' continued defense of SVO is subject to its full and complete reservation of rights as set forth in its October 28, 2019 letter and other correspondence with SVO. Specifically, as set forth in its October 28, 2019 letter, Navigators reserved its right "to

seek reimbursement of any defense" to the extent that it was for a non-covered claim and "[t]o the extent that Navigators pays for the defense of claims that do not fall within the scope of coverage, it reserves all rights under applicable law to seek reimbursement of those amounts from SVO." Navigators continues to reserve all such rights pursuant to *Buss v. Superior Court*, 16 Cal.4th 35 (1997), *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005), *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489 (2001), and *Hartford Cas. Ins. Co. v. J.R. Marketing, Inc*., 61 Cal.4th 988, (2015). Navigators also specifically reserves the right to file an action seeking declaratory and/or other relief on any issue raised herein, or which has been previously communicated to SVO, or which may be raised in the future, including, but not limited to, a declaratory relief action seeking a judicial determination that Navigators has no duty to defend or indemnify SVO and or is entitled to reimbursement.

In the meantime, nothing contained herein should be construed as an estoppel or waiver of any rights or defenses, whether or not stated herein, which Navigators may possess under the Policy and/or applicable law. It should be understood further that any actions by Navigators and/or its agents and representatives do not constitute and are not intended as an estoppel or waiver of any rights or defenses available to Navigators, whether or not stated herein, that may be available now or at any point in time. Navigators specifically reserves its right to rely on the language of the Policy, and to deny coverage for any valid reason that may subsequently appear. Navigators shall not waive any of its rights unless expressly so stated in writing by Navigators.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Fair Lawsuits Settlement Practices Regulations, if insureds believe all or part of this claim has been wrongfully denied or rejected, they may have this matter reviewed by the following entity:

California Department of Insurance
Consumer Services Division
300 S. Spring Street
Los Angeles, CA 90013
1-800-927-4357-HELP

Should you have any questions, please do not hesitate to contact the undersigned.

Sincerely,

Wilson Elser Moskowitz Edelman & Dicker, LLP

/s/

David Simantob

# EXHIBIT "F"

STEVEN W. MURRAY
a law corporation

SUITE 205
14930 VENTURA BOULEVARD
SHERMAN OAKS, CALIFORNIA 91403

(818) 501-2277
fax (818) 501-6441
info@psilaw.com

May 18, 2021

**Via Email and U.S. Mail**

David Simantob, Esq.
WILSON ELSER
555 S. Flower St., Ste. 2900
Los Angeles, CA 90071

Re: *Liebert Corporation vs. SVO Building One*
Navigators' Cl. No. 01-18-0003-1318

Dear Mr. Simantob:

Thank you for your May 18, 2021, letter, confirming Navigator's acceptance of SVO's re-tender of the *Liebert/Vertif* action. SVO has elected to be represented by *Cumis* counsel; its present counsel —David Frishman and Tyson & Mendes — will be acting in that capacity. The firm is also one of Navigators' approved panel firms.

Please note the Insureds expressly object to and disagree with all of Navigators' claimed reserved "rights" set forth in such May 18th letter, including the October 28, 2019, letter and "other correspondence" referred to therein. This includes, but is not limited to, unilateral withdrawal from the defense, seeking any form of reimbursement from the Insureds for any sums, or suing them for any reason whatsoever. An insurer cannot create "rights" solely by its correspondence. The Insureds do not agree to, acquiesce in or otherwise permit Navigators to assert "rights" not authorized by California law, while also reserving all of their lawful rights.

I appreciate your assistance in this matter, and look forward to a successful conclusion of the litigation. Thank you.

Very truly yours,

STEVEN W. MURRAY

SWM/dr
cc: SVO
David M. Frishman, Esq.