Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Araceli Martinez-Olguin, Judge

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>VS.<br><br>SVO BUILDING ONE, LLC,<br><br>Defendant. | NO. 22-CV-07102-AMO |

San Francisco, California
Thursday, October 16, 2025

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
WILSON ELSER MOSKOWITZ EDELMAN DICKER LLP
555 S. Flower Street, Suite 2900
Los Angeles, CA 90071
**BY: SHANNON L. SANTOS, ATTORNEY AT LAW**

For Defendant:
PARKER SHAFFIE LLP
800 West 6th Street, Suite 500
Los Angeles, CA 90017
**BY: BRUCE T. SMYTH, ATTORNEY AT LAW**

REPORTED REMOTELY BY: Kendra A. Steppler, RPR, CRR
Official United States Reporter

Thursday - October 16, 2025 2:00 p.m.

P R O C E E D I N G S

---o0o---

**THE COURTROOM DEPUTY:** This Court is now in session, the Honorable Araceli Martínez-Olguín presiding.

Calling Civil Matter 22-7102, Navigators Specialty Insurance Company v. SVO Building One, LLC.

Counsel, please state your appearances for the record, starting with the plaintiff.

**MS. SANTOS:** Shannon Santos for Navigators Specialty Insurance Company.

**MR. SMYTH:** Bruce Smyth for SVO Building One, LLC.

**THE COURT:** Good afternoon, Counsel. And apologies for my mild distraction. I left my reading glasses over there, and I will be useless to you without them.

So -- all right. Folks, we're here on SVO's motion for a continuance -- that's Docket Number 65 -- as well as motion for leave to file a third-party complaint against Tyson -- and I can't read my own handwriting -- but -- is it Mendes -- Tyson & --

**MR. SMYTH:** Mendes, Your Honor.

**THE COURT:** Thank you. All right. That's Number 66. So we're going to -- we're going to take care of both of those today.

I also want to flag for you that I -- we're also going to

do a little -- talk a little bit about the discovery disputes that you all have pending. I know I referred them to Judge Illman. But once I got into -- once I started looking at the motions -- the pending motions -- in the end, they all seemed sufficiently intertwined that I called Judge Illman and said, "I got them." I apologize for maybe what felt like a too-quick referral to him. But it is normally what I do. I do usually defer all of the discovery. But once I got into this, I thought it was worth keeping it together.

So let's start with the motion for a continuance. So, you know, I looked over the motion. I looked over the papers and -- right -- I understand that essentially SVO is seeking a seven-month continuance. And the three grounds that I understand to be asserted are -- right -- the volume of documents, the pending discovery disputes, and the complexity of matters -- right -- and also the request for this third-party claim against Tyson.

So here's my question -- so let me -- let me just show my cards here. I'm exceedingly disinclined to grant this. And that's, in part, because you all asked for more time as recently as June and were given five months, at that point, in terms of pushing out jury selection; right? You all have asked for time. You've been given time. And, at this juncture, none of the things that are being raised to me as grounds for the continuance are anything that you didn't know at the time you

asked for more time last time. None of this is newly discovered or developed.

So, Mr. Smyth, I want to give you a chance here, but --

**MR. SMYTH:** Sure.

**THE COURT:** Go ahead.

**MR. SMYTH:** Well, the problem -- the more recent continuance, which was longer on trial but two and a half months on discovery, was for a mediation. We've had a mediation. I understand there's a degree -- a disagreement for the other counsel as whether discussions are ongoing. I spoke to the mediator yesterday. So he understands they're ongoing. But that was the main reason for it.

The problem that we have is there are 10 million documents that are -- we have obtained in discovery in the Tyson matter. And there has been -- it has been a very long process in terms of getting those documents put onto a Relativity database, which is not done, but will be done in two months or so. And those documents are relevant to the document requests that -- that Navigators has asked us for.

We don't have control of those documents yet. We haven't gone through them. And if we have more time, we're prepared, once we do get control, to produce the ones that are relevant to the document requests that were propounded by Navigators. If we don't have more time, we are going to take the position that we don't have control of those documents. We were not

required to produce them at the time of the document request -- at the time the --

**THE COURT:** But, Mr. Smyth, I'm going to pause you for one moment.

**MR. SMYTH:** Sure.

**THE COURT:** I can't tell -- there's a degree to which it sounds like you're getting maybe into the discovery dispute, and I don't want to go there yet. Here's the part that I do -- that I want to stick -- I just want to stay, as best we can, on the motion for the seven-month continuance.

**MR. SMYTH:** Yeah.

**THE COURT:** Because the part that I'll note for you is that you're raising to me all of these documents and your need to possibly produce them to Navigators. But Navigators didn't join you in this motion; right? This wasn't a stipulation. You're asking for this time on your own. So...

**MR. SMYTH:** That is right, Your Honor. We did ask for it on your own. And I'm kind of surprised that they did not join us in this. Because if we don't have control over them, we're not obligated to produce them now. And then if Navigators, at trial, says, oh, jeez, we haven't seen these documents before, well, you know, they -- we didn't have control over them at the time discovery was concluded. And, you know, they shouldn't be heard to then say, well, we didn't get them in discovery.

**THE COURT:** All right. So, Mr. Smyth, I'm going to stop you one more time.

**MR. SMYTH:** Sure.

**THE COURT:** The touchstone here is your diligence for requesting additional time. And best as I can tell -- and this is why I started by letting you know that I was not inclined to grant this motion -- is because, at this point, looking at what's in front of me, I don't see diligence.

**MR. SMYTH:** Well, if I could respond to that. But let me -- you know -- the reason why I was talking about these documents is there's no way we could have gotten control of those documents and made them available to produce in the time we've gotten them from Tyson Mendes. It's just not possible. We've got other attorneys working on it. We've got a database company. It's six terabytes of materials. It could not be done. So that is --

**THE COURT:** But when did you get those documents?

**MR. SMYTH:** Pardon?

**THE COURT:** When did you get those documents?

**MR. SMYTH:** We still haven't gotten them completely. We've gotten them over a period of time, over the last six months, but we do not have all of them yet.

**THE COURT:** All right. Mr. Smyth --

**MR. SMYTH:** It's been ongoing productions from Tyson & Mendes. And it has taken a very long time. And it takes -- I

mean, we have a Relativity database provider. People have been working full-time, because they want those documents for the arbitration. And there's been ongoing fights with Tyson.

We don't have -- for example, we don't have the underlying doc -- underlying pleadings. And the only way we get those pleadings is essentially through Tyson & Mendes. And we're proceeding to get those in that case. And -- but we still don't have all of them. We've got -- I think I'm told we have maybe two-thirds, and they're confident that in the next two months we will have all of them. But we don't have all of them.

And what -- I think a lot of what -- the complaint is about lack of diligence -- is -- it is part of the -- this thing -- this case -- is -- part of the complexity of it is the issue is the reimbursement of fees. And under the *Buss* case, the burden --

**THE COURT:** I'm going to stop you. I'm going to stop you there.

**MR. SMYTH:** Okay.

**THE COURT:** All right. Because -- so, Ms. Santos, can I hear from you?

**MS. SANTOS:** Yes. Not only does Navigators not join in the motion, but we strongly oppose the motion, given that this action has been pending for over three years and we still haven't gotten to a determination of the coverage issues and

the amount of reimbursement owed.

The 10 million documents can't be related to the coverage dispute. I don't know what they are. But if they are being produced by Tyson & Mendes in the malpractice action, and you're talking about that size, they are presumably documents in the underlying dispute, the underlying arbitration.

The arbitration documents are not going to go to the pleadings. We already have the pleadings from the underlying action. We already have the time records. We already have the evidence of payment. And we have the dismissal of the defamation cause of action from the underlying action. Those are the documents that are going to be relied on in determining whether or not there was coverage for the different portions of the underlying action and for what period.

So to the extent he's saying it's our burden to allocate, we agree that *Buss* puts the burden on the insurer to allocate, which we have done through the invoices from defense counsel.

We don't want any -- 10 million documents from the underlying action. We asked --

**THE COURT REPORTER:** Sorry, excuse me. "We don't want" and then it kind of cut out.

**MS. SANTOS:** We don't want 10 million documents from the underlying action. In discovery, we had asked for the pleadings and discovery. SVO said they would not produce them because they were within our panel counsel's possession. We

opted not to move to compel on that issue because, again, we didn't necessarily need them to pursue the reimbursement.

So whatever the 10 million documents are that Tyson & Mendes is producing to SVO does not relate to the coverage dispute with Navigators and, for that reason, doesn't relate to any of the discovery requests that were at issue. I'm going to try to refrain from going into the discovery disputes.

**THE COURT:** We'll get there.

**MS. SANTOS:** Yeah. But, you know, to the extent SVO had documents it wanted to rely on in its defense, then it had an obligation to produce those within the last three years. If they have not done so to date, regardless of the discovery dispute, we intend to move to exclude them at trial. We are prepared to go based on the documents Navigators already produced.

**MR. SMYTH:** If I may respond to that, Your Honor?

**THE COURT:** You can. And I'm going to -- well, as you do that, respond to that and I -- here's what I need you to address for me. What I'm not hearing is how any of this is something that you learned over -- right -- your bases for this motion are the volume of these documents, the pending discovery disputes, and the complexity of this matter. But none of that seems to me -- well, we're going to take care of the discovery disputes. But the volume of the documents and the complexity of this matter -- none of these seem newly learned things.

So -- and that, to me, goes straight to the heart of diligence.

So, Mr. Smyth, please feel free to respond to Ms. Santos, but I need you to touch on that, as well, if you would.

**MR. SMYTH:** Yeah. With respect to diligence, we did not learn the volume of these documents until the last month or two. It just -- the documents keep coming. They're on the Relativity database. We had no -- we did not understand the volume of them.

And one of the things that Ms. Santos mentioned was they asked for the pleadings and discovery. We don't have the pleadings and discovery. Those documents are in the Tyson documents. And we don't -- we haven't produced them, because we don't have them. And we like to look at them. We think they're important.

I think the discussion about the case being three years old is a little bit misleading. It's only been at issue since about August of last year. We immediately sent out document requests. We got responses. We had meet-and-confers. And we still don't have the documents that we've requested, because Navigators said we needed a protective order.

**THE COURT:** No. No, no. Mr. Smyth, we are not talking about the documents you're trying to get from Navigators. You're trying to tell me that you need more time because of documents you need from Tyson & Mendes. But as far as I can tell from your papers, you've been in arbitration

proceedings against them for some time now. I'm trying to find it, because I know that you have -- right -- that isn't -- it isn't set for -- you've been in the arbitration a year before. You filed the arbitration a year before this case started.

So don't talk to me about the papers you do or don't have from Navigators. I'm -- you're trying to base this motion on the papers you don't have from Tyson. So that's the only part I want to hear about.

**MR. SMYTH:** Okay. Well, as far as that goes, that has been a very long process. I'm not directly involved in that case. But there have been lengthy productions of documents. There have been discovery back-and-forth. And it is a mess -- an immense volume of documents.

And we're not talking about once -- once we do get control of it, we would then do searches and produce some documents. We certainly wouldn't produce 10 million, although we could, if we have consent. And if we have a protective order, we can produce all of them to Navigators, if they want. But we do need -- we need consent in the underlying case, because there's an operative protective order in that -- in the original Vertiv case -- that we need consent on. And we need a protective order in this case before we can produce them. So that's also another issue that is completely beyond our control.

We only learned about these -- the volume of documents -- over the last few months. And we've only had really discovery

since about August. So it's not a three-year process. It's more like a year, which I don't think -- we submit is not unreasonable with the volume we're talking about.

**THE COURT:** All right. So can you address the fact that seemingly no discovery was conducted for the seven months between December 5th, 2024, and July 18th of 2025?

**MR. SMYTH:** Well, for one, we've spent an immense amount of time going through the fee bills. And we've had people review them in order to respond to the position of Navigators that they are solely allocable and non-covered claims. And we have done that. We have been going through the Tyson documents. We have had -- you know -- we've spent hundreds of thousands of dollars in reviewing the Tyson documents, in terms of paying for Relativity, having searches be performed, having paralegals do work, having attorneys do work. So there's been a lot of discovery; it just hasn't been visible.

We don't need that much from Navigators. We just need to be able to finish up the documents that we have and get control of them. And -- and, you know, then if we have time, produce them, and then be prepared to -- you know -- be prepared to try the case.

We exchanged -- yesterday, we exchanged expert witness reports. We provided four expert witnesses. Navigators provided one. We're prepared on that. We just need more time

to get control of these documents and also on -- you know -- get some responses on the discovery that we've got outstanding.

And if the seven months bothers the Court, you know, if we can get just two or three months on the discovery, then we can probably get what we need done. We just need a bit more time. And I -- and we submit it's -- given the volume of materials, it's not an unreasonable case -- unreasonable claim. And --

**THE COURT:** Hold on, Mr. Smyth. I think we may have lost Ms. Santos.

**MR. SMYTH:** Okay.

**THE COURT:** Ms. Solorzano Rodriguez, did we lose Ms. Santos?

**THE COURTROOM DEPUTY:** I do not see her on.

**THE COURT:** All right. Let's hold tight one moment. The joy of Zoom.

(Pause in proceedings.)

**THE COURTROOM DEPUTY:** I've got Ms. Santos rejoining as a panelist now.

**THE COURT:** Thank you.

**THE COURTROOM DEPUTY:** Ms. Santos, if your Wi-Fi is unstable, you can also call in or keep your camera off.

**MS. SANTOS:** My sincerest apologies. I'm in a hotel in London and I'm stuck on hotel Wi-Fi right now.

**THE COURT:** Mr. Smyth, go ahead. You were in the middle of a --

**MR. SMYTH:** Yeah. I was going to say, we just need more time to get control of these documents. We can -- you know -- you know, if the Court wants to -- you know, we could keep the current trial date. We have dates that are already in place on the experts. But if -- we just need some more time on that.

Now, we believe that it would be advantageous to continue the trial date until after the arbitration, because I think it would narrow some of the issues. But if that's not something the Court's inclined to do, if we can just have a few months to finish up the document review and production, you know, we can certainly live with that and would, you know, be prepared. And also that would give us time to resolve any of these discovery issues, unless they're resolved today.

**THE COURT:** All right. So, folks, you all submitted your papers. You both pointed me to the good cause standard required by Rule 16. And as -- 16(b) -- and as you know, the primary consideration is about diligence. So we're going to get into the discovery disputes, but, frankly, at this point, Mr. Smyth, I don't see diligence on your part. I do think that -- in fact, this is why Navigators is opposing, because they're arguing that they will be prejudiced. And I tend to agree.

So your motion for additional time is denied. You can talk with Ms. Santos further about whether or not she'll give

you the couple -- the extra month or so -- or the couple of months, but I will not.

Let's move on, quickly, to motion -- to Docket Number 66, which was your third-party -- your motion for leave to file a third-party complaint against Tyson & Mendes. I'll give you a chance to be heard on it, but I'll add that -- right -- you highlight -- you note in your motion papers that -- right -- it's after 14 days you're required to ask for leave.

Again, you've been in arbitration with Tyson & Mendes for a year before you started this lawsuit. So why on earth I would let you add them now, I'm having a really hard time with. So, Mr. Smyth, if you want to take a minute to try and convince me, but --

**MR. SMYTH:** Sure.

**THE COURT:** Go ahead.

**MR. SMYTH:** I will, Your Honor.

The issue on the reason why we didn't name Tyson at the start was, first, we thought the arbitration would be completed ahead of this. We were wrong in that regard. But even if we have named them, and even if they're added in now, the dispute is governed by an arbitration clause.

So what their response would be is, you know, you have to wait until our arbitration is completed, which I think actually makes a fair amount of sense, because a lot of the issues in the arbitration will resolve a number of our defenses and our

claim against Tyson. So it's just a matter of wanting to get that teed up so it could be resolved.

It could be a separate -- you know -- it could be tried after the current complaint. But we would like to have the opportunity to argue that if we're found liable -- and we don't believe we will be -- that a fair share of that belongs to Tyson. For one, they fail to -- as counsel, one of their principal responsibilities is to make sure that they've tendered the complaint to every other insurer.

They didn't do that. And a period of about a year passed until the -- until SVO retained coverage counsel -- who tendered it to Hallmark Insurance Company, who immediately began sharing in the cost of defense. And if Tyson had done that earlier, their -- Navigators' claim would be a half million dollars less, because they would have shared with Hallmark.

And those -- that insurance coverage was lost because Tyson didn't timely tender to the other insurer. And I know Navigators has argued, well, the panel counsel can't get involved in coverage matters. And that is true only as to the insurer who is providing the defense. It is not true in terms of the responsibility of defense counsel to tender it to other insurers.

As a matter of fact, an insurer who's paying the defense is delighted to have defense counsel tender it to another

insurer, because they can pay the freight. In this case, they would have -- Hallmark, which did ultimately defend, would have reduced Navigators' claim by about a half million dollars.

So we would like that issue tried. And, again, it could be tried after this. It could be tried -- you know -- it could be separated out. It could be tried after the arbitration, which I think would resolve a lot of those claims, because they would already be determined. But we think it properly should be part of this case.

**THE COURT:** So, Mr. Smyth, you strategically chose -- you -- you or your client chose not to make it part of this case. If you'd made it part of this case, and it was subject to arbitration, then you could have figured out whether this case should have been stayed and we could have had that conversation.

But, at this point, from your own motion, what I can see in the facts -- the issues that I'm supposed to consider are prejudice to plaintiff. They have opposed your motion. And I think they're right, that they will be prejudiced because it will ostensibly forestall this case.

The likelihood of trial delay -- the only thing that's in your paper is the trial won't be delayed because you had moved to extend the trial schedule. But I've denied that at this point. And the timeliness of your motion to implead. You've moved for this two weeks before discovery closed. That is not

a timely -- that is not a timely motion to seek to bring in a third party. So that motion is also denied.

You can proceed with your arbitration. You've made strategic choices, and now you've got to live with them and proceed.

Now, let's talk about these discovery disputes because -- I have to tell you all -- well, let me start by asking just a fundamental question; right? Here's what I saw on the docket: There's Number 66 -- there's Number 76 -- which claims that it complies with my standing order, but, best as I can tell, it doesn't, because I saw nothing in that document about lead counsel having met and conferred.

So let's just -- so I saw 76. Then I saw what I think is the corresponding statement from the other counsel at 77. And I think I've confirmed now that 78 is actually -- is distinct from 76. So let me just start with a very basic question of can you all confirm for me whether 78 is -- so 76 is entitled "SVO statement regarding discovery dispute under court standing order." 77 is what I take sort of as an opposition. And then there's 78, which is a joint statement regarding discovery dispute under standing order.

Best as I can tell, 78 is about documents not produced because there was no protective order. 79 is about deficient responses. Again, supposedly -- right -- now, supposedly deficient responses to Navigators' requests for production. 80

is about Navigators' notice of deposition. And 70 -- so can you all just confirm for me whether -- I couldn't tell if 78 was you all just stitching together -- I think it isn't -- but I thought it might be you all stitching together 76 and 77 to make one dispute with both sides. But -- let me ask you, Mr. Smyth, because it's SVO's -- 76 was SVO's statement.

**MR. SMYTH:** Yes. Your Honor --

**THE COURT:** So -- yeah.

**MR. SMYTH:** The reason there was no joint statement is because Navigators refused to participate.

**THE COURT:** So I have -- I have a declaration -- that's what's at 77 -- which says no. So -- all right. Here's what I --

**MR. SMYTH:** Well, you can --

**THE COURT:** Go ahead.

**MR. SMYTH:** I was going to say, if you look at -- if you look at the correspondence, it shows what happened. And basically what the position of Navigators was that it was too late -- because I think they thought they were in state court -- to do this, and so they refused to participate.

And the only reason -- and then once we filed it, then they submitted a statement that -- you know -- in opposition. If we get to -- I don't know whether we're going to get to -- if you wanted to speak about the merits of it --

**THE COURT:** I don't. Because you all need to talk

more.

Here's the part that I think you all have missed. And this is where I'm -- I'm going to deny it. I don't know if it's deny it or strike -- I won't strike it. But I'm going to deny it, because what you all have missed is that you -- I didn't see anything in there about you all talking about that one. There's lots of email. I saw, Mr. Smyth, that you gave me the emails. But you need to talk about these things with Ms. Santos. So you don't get to just submit things on the docket and expect me to jump in for you.

So you all are going to talk about that further. You're going to talk about whatever the issue is at 76 after -- and now you have the benefit of all of the rulings on these other motions. So you're going to meet and confer further about whatever was at dispute with 76.

Let me -- you know -- can I tell you all, it's the same problem with -- 79 has the same problem. There's insufficient information there about you all meeting and conferring. So I'm -- for both of those instances -- for 76 and 79, you all go talk some more. And if you can't resolve it between you, then you can resubmit it a week -- no sooner than a week from today.

For 80, there's an issue here about the notice of deposition; right? There's an issue here about Navigators' notice of deposition. This is cut and dry. That doesn't comply with my standing order. And it also doesn't look like

it complies with Federal Rule of Civil Procedure 30(b)(6), which requires that you all confer before serving the notice or shortly thereafter about the matters of examination.

I got none of that from you all. So that is also -- I'm denying -- like, that -- I'm also denying that. It just doesn't -- if for no other reason, that it doesn't comply with my standing order. When you amended the notice of deposition, that was not more than 30 days before the close of discovery. So that was an invalid notice of deposition.

And as far as 78 goes, let's talk about the proposed -- let's talk about the protective order. Because, as I understand that, that dispute you all are having -- here's what we've got, folks: You all submitted a protective order that had some amendments to it. I denied it because it didn't comply with my standing order that says you tell me what's different between the model and what you've done. And that's, in part, just so that it's easy for me to look at what you all are trying to change.

That was never resubmitted. What I got was a standalone declaration that's filed separately on the docket. So there was no stipulation for a protective order ever submitted again. So I can't remember which of you is saying there's no protective order, but that party is correct. Because no request was ever submitted again. The one request submitted was denied, subject to resubmission. There was no

resubmission.

If you all want to resubmit with the needed declaration, you are welcome to do so. And then you all can talk some more about whether -- what you want to do with those documents. But that's how I'm resolving all of these disputes. The depo notice doesn't comply with my standing order.

There is no protective order at this point, because, in the end, one was never -- one was requested and that request was denied. No further request was submitted. So that's where that lives and dies.

And as far as 76 and 79 are concerned, you all need to talk more about this. And I'm telling you that you're not getting anything different from me than you would from Judge Illman and, frankly, just about any other magistrate judge in this district who's going to tell you that you all don't just get to send these angry emails back-and-forth at each other.

And I do know that you did one -- it looks like you did a video deposition -- excuse me, not deposition -- but rather one videoconference. But what I got from the papers is that -- and I -- again, I apologize, because, at some point, I lost track of who's arguing what because the disputes are on both sides. But what I got is that at least one of you is pointing out that on the video -- in the video conversation -- in the videoconference -- not all of these issues were discussed.

So it behooves you all to talk about these things more. Because, otherwise, all you're going to do is resubmit them. And Judge Illman is going to also probably -- if you don't actually talk about these things more before trying to run to court with these, you're just going to be told to go talk some more. So for --

**MS. SANTOS:** May I --

**THE COURT:** Yes. Go ahead, Ms. Santos.

**MS. SANTOS:** May I just address a timing issue that I would hope would circumvent some of this?

We did tell SVO that it was too late to proceed with discovery motions. Navigators hadn't filed any because we had decided to move forward with the discovery produced. We weren't relying on state court rules; it's federal court rules that the fact discovery time had closed. SVO said that the Northern District rules allowed a discovery motion to be filed one week after close of discovery.

**THE COURT:** That's right.

**MS. SANTOS:** However, in your courtroom, you have to first do this joint statement. So, from our point of view, the discovery motions were not filed one week after the fact discovery cutoff. Because the parties had not done a joint submission in advance of filing discovery motions.

So SVO filed theirs first without our input as to 76. Then filed 79 -- forgive me, I don't have my full court file in

front of me. So the only reason Navigators filed 80 was to preserve our rights. We are fully prepared to withdraw that if the discovery --

**THE COURT:** So I'm going to stop you all right now. I've literally -- I've ruled on all of these. The notice is deficient. The depo notice that's at issue in 80 -- it's deficient. So I'm so sorry. I'm just stopping you because if you're talking about withdrawing it, I'm telling you that it's already -- it's already gone.

**MS. SANTOS:** I guess I meant withdraw the dispute. Navigators is prepared to --

**THE COURT:** Oh, no, no.

**MS. SANTOS:** -- move forward with no discovery.

**THE COURT:** But hold on. Hold on. I'm so sorry. I've ruled on the disputes that I'm going to rule on. The other disputes you two need to talk between yourselves, and that doesn't include taking my time.

So, Ms. Santos, if you're trying to clarify something or are unclear about my rulings about the disputes you've put in front of me so far, I'm happy to hear that. To the extent you're still giving me argument about what you're willing to do or not do, that's a conversation to have with Mr. Smyth.

**MS. SANTOS:** No. I guess my question to you is, aren't all the parties now time-barred from seeking any further discovery?

**THE COURT:** No. Oh, I'm sorry. Aren't you all still in the middle of expert -- I have your schedule in front of me.

**MS. SANTOS:** We have expert discovery open. The parties have done initial expert disclosures. But as far as the underlying depositions, requests for production, and interrogatories, it's Navigators' position everything is too late.

**MR. SMYTH:** Well --

**THE COURT:** I disagree with you with regard to 76 and 79. My whole point to you all about that is that you all needed to talk more. That's not sufficiently -- the meet-and-confer isn't sufficient for what you've put in front of me. But you have -- but you have seven days to resubmit that. The disputes raised at 76 and 79 I'm not -- are not time-barred.

**MS. SANTOS:** Okay.

**THE COURT:** The failure to meet-and-confer can be cured.

**MS. SANTOS:** Okay. Then just as one follow-up, you previously said "not to be submitted no sooner than one week," and you just said "to be submitted within one week."

**THE COURT:** Yes.

**MS. SANTOS:** So within one week --

**THE COURT:** Well, how's this: Do it within -- here's the point: I want you all -- I said "not sooner than one

week," in part, to ensure that you all talk; right? And maybe that's more than one conversation. So I'm hesitant to say "no later than seven days," but I do appreciate that, in the end, it is helpful for you all to have a deadline. So take the time to talk about it.

I mean, let me ask -- so who has -- 76 was filed by SVO. Is that right, Mr. Smyth?

**MR. SMYTH:** Yes. That's correct, Your Honor.

**THE COURT:** All right. And 79 was filed by Navigators; is that right -- no. Are both -- are both 76 and 79 filed by SVO?

**MR. SMYTH:** Let me see --

**MS. SANTOS:** You know what?

**MR. SMYTH:** No.

**MS. SANTOS:** It might be 76 and 78 are SVO. And I might have filed 79 and 80 as to SVO's production and SVO's deposition.

**THE COURT:** So -- okay. Let me look. My notes say that 79 is about deficient responses. That would be --

**MS. SANTOS:** Yes.

**THE COURT:** Deficient responses to Navigators' RFP. So that one's yours. Yes. So essentially what I'm telling you is you all -- each of you still have one that is live.

**MR. SMYTH:** Okay.

**THE COURT:** Right? I didn't -- 79 -- inadequate

meeting-and-conferring, but you all can keep talking about that one. That's about Navigators' responses to -- I'm sorry -- no -- that's right. SVO's responses to Navs' RFPs. And -- I'm sorry, "Navs" is -- that's my shorthand for "Navigators." And then -- is that not right? Deficient --

**MS. SANTOS:** I might have gotten a little lost. I thought you said all four of them needed further meet-and-confer.

**THE COURT:** No.

**MR. SMYTH:** No.

**THE COURT:** Because -- so -- because here's the point: Of the four of them, two of them, I'm telling you, they're just gone. 80 -- that notice of deposition was filed -- was sent too late. So that's -- and I believe that is yours, Ms. Santos. That's the 30(b)(6). That's too late.

78, there's just -- right -- the thing with 78 is that there's -- right -- the dispute, at this point, is about whether or not there's a sufficient protective order for the production of the documents. So, at this moment, you all don't have a protective order in place.

Here's the thing -- here's the way to think about the discovery. And you all know this. But it's just something that I -- it's literally coming to mind as we're talking, so I'm going to say it. You all can reach whatever agreements you would like. What you can't do -- about the discovery. You all

can keep exchanging documents. You all can keep doing these things. What you cannot do is ask the Court to enforce any of the agreements you now make between you.

So the protective order may be one of those exceptions, as well. If you all submit -- if you all submit a stipulation for a protective order, I'll grant that, as long as you provide the declaration that shows what you've changed. And then that might resolve some of the disputes you're having about some of these document productions. That's a conversation for you all to have.

The depo notice: No. It's deficient and it -- well, it -- I think it's probably deficient and it's certainly untimely. So that's out.

76, 79: You all need to talk more. And then here's the question: I'm trying to figure out which party each one belongs to so that you all -- to ask the right party how long do you want -- how long do you want to keep talking to each other and then to submit; right?

I don't -- I picked seven days sort of -- well, I picked it a little bit out of the local rules that say after discovery closes, you can have seven more days. I'm trying to give you all enough time to talk and then to prepare any discovery dispute that might be left for Judge Illman. Judge Illman will then pick them up with you thereafter.

**MS. SANTOS:** Given my trial schedule, it would be

beneficial to me if it was more like two weeks so that I can get back in the States and then schedule a call with Mr. Smyth.

**THE COURT:** Mr. Smyth, how are you --

So am I right, Ms. Santos? What you're proposing is that you all have two weeks to meet and confer, and any dispute -- any dispute you still want to lodge is due no sooner than 14 -- is due no later than 14 days from today; is that right?

**MS. SANTOS:** Yes.

**THE COURT:** Mr. Smyth, how does that sound to you?

**MR. SMYTH:** That's fine with me, Your Honor.

**THE COURT:** All right. So that's what we'll do.

**MS. SANTOS:** I have one other question.

**THE COURT:** Go ahead.

**MS. SANTOS:** I understand what you said about the amended depo notice in 80. 80 was also moving on the original depo notice, which was served in October, I believe, 2024. And that the -- the defendant never produced a person. Are we permitted to continue to meet and confer on that deposition notice?

**MR. SMYTH:** Your Honor --

**THE COURT:** No, no, no. No, no. I got a really easy answer here, Mr. Smyth. When you amend the notice, you reset the clock. You've changed the terms of it. So, no, that --

**MS. SANTOS:** Okay.

**THE COURT:** That's why it's off the table.

All right. Counsel, that is everything that I had on my checklist of things we needed to do today. I always ask this, and I always regret it a little, but I'm going to ask it: Do you need anything else from me today, Counsel?

**MS. SANTOS:** No.

**MR. SMYTH:** I don't think so, Your Honor. Thank you.

**THE COURT:** All right. Thank you, all. Have a good rest of your day.

And, Ms. Santos, safe travels home.

**MS. SANTOS:** Thank you.

**MR. SMYTH:** Thank you.

**THE COURT:** Of course. Goodbye.

(Proceedings adjourned at 2:40 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Wednesday, October 22, 2025

Kendra A. Steppler, RPR, CRR

Official Reporter, U.S. District Court