UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Robert M. Illman, Magistrate Judge

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SVO BUILDING ONE, LLC,<br><br>Defendant. | No. C 22-07102-AMO |

San Francisco, California
Wednesday, November 5, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 3:03 - 3:26 = 23 MINUTES

APPEARANCES:

For Plaintiff:

Wilson Elser Moskowitz Edelman Dicker LLP
555 S. Flower Street
Suite 2900
Los Angeles, California 90071
BY: SHANNON L. SANTOS, ESQ.

For Defendant:

Charlston, Revich and Wollitz LLP
1925 Century Park East
Suite 320
Los Angeles, California 91367
BY: BRUCE T. SMYTH, ESQ.

Transcribed by:

Echo Reporting, Inc.
Contracted Court Reporter/ Transcriber
echoreporting@yahoo.com

Wednesday, November 5, 2025 3:03 p.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: The court calls Navigator Specialty Insurance Company versus SVO Building One, LLC, case number 322CV7102AMO.

Parties, please state their appearances for the record, beginning with Plaintiff.

MS. SANTOS (via Zoom): Shannon Santos for Navigator Specialty.

MR. SMYTH (via Zoom): Bruce Smyth for Defendant and Counter-claimant SVO Building One, LLC.

THE COURT: All right. Good afternoon, everyone.

So let me ask for some clarification on this letter. With regard to the expert report that was Navigator's expert report, that's been turned over to SVO. Is that correct?

MS. SANTOS: Yes.

THE COURT: All right. And did that include the line by line allocations in it?

MS. SANTOS: No, it included the general opinion based on the expert's review of the line by line.

THE COURT: But it didn't show the basis for that math.

MS. SANTOS: Actually, I think it did. It said, like, this number of entries or this amount of time out of

this total time reflected defamation. That accounts to one-percent. Thus, we've attributed at least one-percent might have gone to the defamation claim. At most, you know, out of an abundances of caution, I think he gave three-percent.

THE COURT: Why -- as to the line by line allocation, when do you contend that they're entitled to that? If they're not entitled to it in fact discovery, when are they entitled to it?

MS. SANTOS: Well, if they're -- so we say we did give it post-dismissal, 100-percent, every single line item. But if you're talking about pre-dismissal, that he can -- he -- SVO can seek through expert discovery, which we're setting up the expert depositions. I imagine he's going to ask our expert, where did you come up with that one-percent of time that went to defamation?

THE COURT: So -- and their contention is that you're going to be using that information in forthcoming dispositive motions that I think are coming up at the end of expert discovery. Is that right?

MS. SANTOS: About two weeks later. The summary judgment motion has to be filed December 1st, and the fact -- expert discovery cutoff is November 20.

THE COURT: So from SVO's perspective, why can't you just get this through the expert discovery and asking the expert to identify the billing entries that were relied

on for making that determination?

MR. SMYTH: Yes, I think there's been a number of, I think, inaccurate statements. First, the expert report does not go line by line. It has a number of summaries based upon some kind of arbitrary determinations, but it does not do that. And that's what under Buss the Plaintiff's burden is. You know, these interrogatories were served at, you know, the closing of discovery. The case has been going for three years. They should be able to basically set forth the line by line entries of the billing amounts, of the expert fees, and of the expenses. That's what their burden is under the Buss case. And they didn't do it in responses to interrogatories. And, additionally, they haven't done it in the expert report.

But I think -- also, I think the expert report is a little bit of a red herring on their part because these are not determinations that really require expert testimony. You know, maybe it's admissible, but, you know, the issue is, what are the particular entries that are solely allocable to potentially non-covered claims? That's what the Buss standard is. And we're entitled to that information. They haven't done it. That is basically what the case is about. You know, in order to get reimbursement, you have to show that the fees and expenses are solely allocable to non-covered claims, and the burden is on the

insurer to do that. And we really can't respond until we see what the particular entries are in order to deal with them. What they -- what they've done in their -- what they've done in the interrogatory response is they say, "Well, it's 97-percent on the period prior to the dismissal of the defamation claim." Well, 97-percent of what? They -- if they've done a calculation and they -- you know, if they say they've done, they haven't identified. We can't really respond. On the period after the dismissal, they argue that it is a -- that it is 100-percent. And they have a legal argument on that, and they basically argue that there's no duty to defend after the defamation cause of action was dismissed. We disagree with that, but I asked the Plaintiff's counsel, look, if you don't win on your legal argument that it's 100-percent, do you agree that you're not going to introduce any evidence that it's allocable to non-covered claims? And the answer was no. So if they're going to make that argument in the alternative, they ought to disclose the fees and expenses that they contend now. So, you know, we submit that they should really -- you know, if they've got these calculations -- list -- you know, set forth the expenses, set forth the fee amounts, and set forth the expert fees, which are very substantial, which they contend make up their supposed calculations.

THE COURT: Why can't you get those coming up in the expert discovery that's going to be taking place in the next couple of weeks?

MR. SMYTH: Well, we can't do it because we have seven hours to do it, and there's 8,000 entries and 500 expense reports. So it's not in -- it's not in the expert report. What they have -- what has been done in the expert report is they've sort of categorized some of these expenses we think incorrectly, and it's -- you know, it's teed up, we think, for a Daubert motion. And it doesn't relate. It doesn't show the fees line by line and which ones are -- they contend are solely allocable. So it's not a -- it's not a -- it's not a possible task. And it's also -- you know, it -- the Buss case says it's a very difficult task. I mean, that's what Buss says. And it is a very difficult task, but the burden is on the insurer to satisfy that burden, and it hasn't done that.

MS. SANTOS: I pulled up the expert report. It does say that the expert determined 63.6 hours of the 5,242.9 hours potentially related to the defamation claim.

THE COURT: So -- but you're not pointing to where those specific allocations --

MS. SANTOS: The -- correct. The expert report did not put the line items on how the 63.6 was added up. Again, I imagine that's what he will be questioned about at

his deposition.

THE COURT: And let me ask you about the second portion, the time after that date, the 100-percent, and Mr. Smyth's argument in that regard. what is your response to that?

MS. SANTOS: Well, we did give the line by line allocation. Every -- after defamation was dismissed, no time was spent on the defamation allegations --

THE COURT: So then you're stuck with that if the determination by the district judge is that it's not 100-percent, right?

MS. SANTOS: I think what Defense counsel was speaking about is whether there was a continuing defense obligation, if there was a opportunity that defamation could be brought back in.

THE COURT: Right.

MS. SANTOS: And that doesn't change the fact that the time that was done in the underlying action was not on defamation, because defamation was never brought back in. So our expert in the report -- and he will testify and opine at trial that nothing after the defamation dismissal ever went to a potentially covered claim. All those time entries are reflected as working towards other non-covered claims.

MR. SMYTH: Well, that would be -- it is -- ultimately, it's a legal determination. You know, we

disagree -- we'll disagree the legal determination, because we think there were allegations that continued, and there are cases that say if something is dismissed without prejudice, that there's still an ongoing duty to defend, and we'll be able to argue some examples of that. But what I haven't heard is a commitment that they'll stick with that. If they want to make the legal argument on the 100-percent and live or die by that, that's fine. But if they're going to make the legal argument and then fail on that, and then want to make an allocation argument, I -- we submit that they should be required to do that now.

THE COURT: Ms. Santos?

MS. SANTOS: I don't think I understand the argument. The expert is prepared to testify that every time entry incurred after March 24th, 2021, was incurred in defense of uncovered claims. So --

THE COURT: So if that's his testimony, then that'll be his testimony, Mr. Smyth. That'll be locked in.

MR. SMYTH: Well, if that's what they're -- you know, they're committing that they're not going to make an allocation argument if that -- if, for example, the expert is excluded or they make a legal argument on a motion for, say, summary judgment or some kind of a motion in limine. That's fine if they would be bound by that. But I haven't heard that they're willing to stick to that if, for example,

you know, as I mentioned, the expert is excluded or something else happens. If they're going to make it in the alternative, we submit they should be able -- they should make that argument now and list the expenses.

MS. SANTOS: Okay. I think --

MR. SMYTH: And also, with respect, it says 100-percent of the expenses. They haven't listed the expenses, and we don't think the totals, in fact, total up, but they should set forth the expenses, the billing entries, and the expert fees.

THE COURT: It would be all of them? But they haven't turned over all of them is what you're saying? If you're saying 100-percent, then I don't understand what you mean.

MR. SMYTH: Well, there -- there's an element of what the calculation is on some of these things. And they have not -- they -- they've turned over documents, but the calculations that we've seen don't match up to what has been produced. And we think if they've done this calculation -- and they're going to have to prove it to the Court or the jury -- they should list the particular fee entries and the --

THE COURT: I see.

MR. SMYTH: -- expert expenses.

MS. SANTOS: I think -- so I want to first address

the expenses because I think we're wasting too much time on it.

All of the expert invoices were produced, and a spreadsheet that lists the amount, the invoice date, the invoice number, and thus the total that Navigators is seeking in reimbursement has been produced. So all of that calculation has already been given, and that's how Navigators is going to prove its reimbursement with respect to the experts.

THE COURT: Okay.

MS. SANTOS: The two issues that I think are being conflated with respect to an allocation and a defense obligation are what SVO is saying that a district court could find in response to a summary judgment motion. Summary judgment is going to say that from the date the defamation cause of action was dismissed, there was no duty to defend from that point forward, and thus everything is subject to reimbursement. If the summary judgment is denied and it says that there was an ongoing duty to defend, which we do not think is supported by law, then anything incurred after the dismissal is going to be subject to an expert allocation. And at that point, our expert comes in and says, "There is not one time entry after March 24th that went to defamation." So the result might be the same, but we're talking about two different argument -- two different

legal theories, and he's saying that I need to be bound by one in order to not -- in order to not be ordered to produce additional discovery now. And what I'm saying is, it's different ways of proving the same thing.

MR. SMYTH: Well, we would submit that, first, they haven't indicated which particular fees or expenses, and the spreadsheet that she's talked about does nothing of the sort. I don't know if it's even been -- we discussed it in mediation. I don't know whether it's even been formally produced. I don't think it has. And we don't -- if -- they say 100-percent, but they ought to list what those are, so we can at least run a total and see whether we agree with that. I don't think we do, because I've heard a number of numbers that are different from the ones we've calculated. So, in the first place, they ought to, you know, provide a listing of those particular entries or billing sheets or expert reports. And I should note that the -- two of the interrogatories here, numbers four and five specifically, ask them to list the expert and consulting fees and the costs. And they haven't responded to that. They've just given us a total. And if they've done these calculations, then it shouldn't be that difficult to come up with totals, you know, with particular billing entries listing expert expenses and listing costs. That's what they will be required to do at trial, and we should be -- we should be

entitled to that information now. And, you know, like I said, I still don't have -- you know, if they say they're going to live or die by the 100-percent, I still haven't heard that. They ought to -- they ought to commit to that a little bit more unequivocally (audio glitch).

THE COURT: Let's see here. All right. So I'm going to grant the request for the responses to the interrogatories. To the extent that Navigators has turned over things like the expert invoices already, then they simply need to point to that production -- that previous production. They do have a responsibility to turn over even those line items in response to these interrogatories based on the claims at present. In other cases that I've reviewed in advance of this hearing, the only times the court didn't do that was when there was an expert report coming out that was going to have that detailed information in it. The expert report here doesn't. It doesn't meet the factual information and documents underlying the report, so I'm going to order Navigators to respond to those interrogatories. By when can that be done?

MS. SANTOS: That's going to require our expert to prepare that, which can be done as a rebuttal expert report with the line by line. I would like it to be identifying the 63.6 hours --

THE COURT: Right.

MS. SANTOS: -- as opposed to the inverse, which would be something close to 5,200 hours.

THE COURT: Oh, it can be the 63. That's fine.

MS. SANTOS: Okay. So I can ask my expert if he can have it done. I can't remember the date we have picked for his deposition, but I can see if he can have it done in the next two weeks, so it's done in time for the deposition.

THE COURT: I believe that's sufficient.

MR. SMYTH: Okay. Can we get a listing of the particular fee bills that is the universe -- fee bills and expert reports and costs and expenses that is the universe for these two time periods? Because that's -- if we can look at that, then we can respond. So if there, for example, are fee bills up to a certain period, we can calculate the totals, and if we know what the source is of those, we can then be in a -- be in a position to respond.

And I should mention, just for background, there were fee bills initially, and then there were reduced fee bills that were done after the report, you know, by their bill reviewer was done. So we would like to know what particular documents and fee bills they're doing and identify which expert reports and which expenses within each of the periods prior to the dismissal and --

MS. SANTOS: So that's going to be far outside the scope of this motion. As a courtesy, I'll let Counsel know

that the spreadsheet was produced at N09905 to 09908. And that includes the line by line of each invoice, the amount, and the amount paid, and the calculations.

MR. SMYTH: It does not. It absolutely says nothing of the sort. It doesn't list the invoices, it doesn't list the numbers. It certainly does not list the expert reports or the consulting fees. They're not in there.

MS. SANTOS: Okay.

MR. SMYTH: I mean, I've gone through this fairly closely. They don't include the consulting fees. They don't include the expert fees. And -- and the totals don't match up.

MS. SANTOS: Again, it's outside the scope of interrogatories one through five. To the extent you're asking for a line by line of the 63.6 hours on the attorney's fees invoices, we can. The -- and I will point to where in the production the spreadsheet is, which includes each vendor and each payment made, and it totals the amount that Navigators has advised it is seeking in reimbursement.

MR. SMYTH: Well, I -- I'm not --

MS. SANTOS: That's pursuant to the --

MR. SMYTH: I've not seen --

MS. SANTOS: -- court order.

MR. SMYTH: -- that document.

MS. SANTOS: It's 9905 to 9908. Now my Google thinks I'm talking to it.

So, pursuant to the Court order, I will direct SVO to that portion of the production.

THE COURT: All right. And you said that production will occur prior to the deposition of the expert?

MS. SANTOS: It was already made.

THE COURT: I'm sorry, with regard to the entirety of my order today.

MS. SANTOS: Oh, the line by line allocation of the 63.6 hours of where defamation is potentially worked on, yes. I will ask my witness to have that done within 14 days.

THE COURT: Okay.

MR. SMYTH: And will we get a verified amended response?

THE COURT: What was the question, I'm sorry?

MR. SMYTH: Oh, I was going -- whether we'll get a verified amended response to the -- binding the party with this information.

THE COURT: I mean, that would be the normal course, yeah.

MR. SMYTH: Yeah. Okay.

MS. SANTOS: Within 14 days.

THE COURT: Yeah, within the 14 days.

All right. That's my ruling for you guys. Thank you, everyone. Have a good afternoon.

MR. SMYTH: Thank you.

THE COURT: All right.

(Proceedings adjourned at 3:26 p.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Monday, November 17, 2025