David Simantob, SBN 155790
Email: David.Simantob@wilsonelser.com
Shannon L. Santos, SBN 260112
Email: Shannon.Santos@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: 213.443.5100
Facsimile: 213.443.5101

*Attorneys for Plaintiff/Counter-Defendant Navigators Specialty Insurance Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Plaintiff,

vs.

SVO BUILDING ONE, LLC,

Defendant.

SVO BUILDING ONE, LLC,

Counterclaimant,

vs.

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Counter-Defendant.

Case No. 3:22-cv-07102-AMO
Hon. Araceli Martínez-Olguín
Courtroom 10

**NAVIGATORS SPECIALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed concurrently with Declaration of Angel Muth, Declaration of David Simantob, and Proposed Judgment]

| | |
|---|---|
| Hearing Date: | March 5, 2026 |
| Time: | 2:00 p.m. |
| Courtroom: | 10, 19th Floor |
| Action Filed: | November 14, 2022 |
| Trial Date: | July 14, 2026 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on March 5, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 10 of the above-entitled Court, Plaintiff/Counter-Defendant Navigators Specialty Insurance Company ("Navigators") will and hereby does move the Court for partial summary judgment on Navigators' First Amended Complaint for Declaratory Relief [Doc. 43]

and for summary judgment on the Counterclaim [Doc. 53] filed by Defendant/Counterclaimant SVO Building One, LLC ("SVO") pursuant to Federal Rules of Civil Procedure, Rule 56 ("Motion").

Through the first cause of action in Navigators' First Amended Complaint, Navigators is entitled to a declaration that it may seek reimbursement for all expenses incurred after the dismissal of the only potentially covered allegations from the action entitled *Liebert Corp. v. SVO Building One, LLC*, American Arbitration Association, Case No. 01-18-0003-1318 ("Underlying Action"). While Navigators continued to defend SVO in the Underlying Action even after the only potentially covered claim was dismissed – at SVO's express request – the defense was subject to a reservation of the right to reimbursement of all fees and costs incurred from that point, totaling **$2,998,457.50**, as there was no potential for coverage under the applicable policy. For the same reasons, SVO cannot meet its burden to establish any of the causes of action in the Counterclaim as Navigators fully defended the Underlying Action from tender through trial, which resulted in a $6 million recovery for SVO. [Doc. 65, SVO's Motion to Continue Trial, 3:25-27.] Thus, Navigators is entitled to summary judgment on the entire Counterclaim or partial summary judgment on the individual causes of action and the claim for punitive damages therein.

In accordance with L.R. 7-2(b), this notice is included in the single brief submitted to the Court in connection with the Motion. This Motion is based on this notice of Motion, the Memorandum of Points and Authorities attached hereto, the Declarations of Angel Muth and David Simantob and exhibits thereto, the pleadings, records, other documents on file in this action, and on such further oral or written evidence and argument as may be presented at or prior to the hearing on this Motion. In accordance with L.R. 56-2(a) and the Court's Standing Order, no Separate Statement is filed in support of the Motion.

Dated: December 1, 2025

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: */s/ Shannon L. Santos*
David Simantob
Shannon L. Santos
*Attorneys for Plaintiff/Counter-Defendant Navigators Specialty Insurance Company*

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 10

II. BACKGROUND ..... 11

A. The Claim ..... 11

B. The Coverage Litigation ..... 12

III. ARGUMENT ..... 13

A. Interpretation of the Policy Is a Question of Law to Be Decided by the Court without Consideration of Expert Opinion. ..... 13

B. The Only Potentially Covered Claim Was Dismissed on March 24, 2021, Entitling Navigators to Judgment on Its First Cause of Action. ..... 14

1. Only the Defamation Claim Potentially Triggered Coverage under the Policy, Permitting Navigators to Withdraw When It Was Dismissed. ..... 14

2. The Claimant Never Reasserted the Defamation Allegations after Dismissal, Making the "Without Prejudice" Designation Immaterial. ..... 16

3. The Claimant Disavowed Any Potentially Triggering Allegations through Dismissal of the Defamation Cause of Action. ..... 20

4. There Was No Other Potentially Covered Claim Alleged by the Claimant. ..... 22

C. Navigators Is Entitled to Summary Judgment on SVO's Counterclaim. ..... 25

1. SVO Cannot Establish that Navigators Breached the Policy. ..... 25

a) Navigators continued to defend the case through trial. ..... 25

b) Any "malpractice" of defense counsel is not imputed to Navigators. ..... 26

c) The Policy does not afford coverage for SVO's affirmative claims. ..... 28

2. Absent a Showing of a Breach of Contract, the Bad Faith Claim Fails. ..... 29

3. Navigators' Retention of Panel Counsel Does Not Create a Conflict to Establish an Unfair Competition Claim. ..... 30

4. SVO Cannot Make the Requisite Showing to Obtain Punitive Damages. 31

IV. CONCLUSION ..... 32

# TABLE OF AUTHORITIES


**Page**

**Cases**

*Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346 (9th Cir. 1988) .......... 24

*AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807 (1990) .......... 13, 22

*Albert v. Truck Ins. Exch.*, 23 Cal. App. 5th 367 (2018) .......... 14

*Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268 (N.D. Cal. 1991) .......... 24

*Aloha Pac., Inc. v. California Ins. Guar. Assn.*, 79 Cal. App. 4th 297 (2000) .......... 23

*Amex Assur. Co. v. Allstate Ins. Co.*, 112 Cal. App. 4th 1246 (2003) .......... 19

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1 (1996) .......... 21

*Assurance Co. of Am. v. Haven*, 32 Cal. App. 4th 78 (1995) .......... 27, 30

*Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114 (9th Cir. 2002) .......... 23

*Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254 (1992) .......... 13-14, 22

*Bararsani v. HDI Global Ins. Co.*, 2021 U.S. Dist. LEXIS 215951 (C.D. Cal. Nov. 5, 2021) .......... 26

*Barlin v. Barlin*, 156 Cal. App. 2d 143 (1957) .......... 27

*Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966 (1986) .......... 28

*Basalite Concrete Prods., LLC v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2013 U.S. Dist. LEXIS 70597 (E.D. Cal. May 17, 2013) .......... 24

*Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443 (2011) .......... 29

*Bentley v. United of Omaha Life Ins. Co.*,
2016 U.S. Dist. LEXIS 195183 (C.D. Cal. June 22, 2016) .... 30

*Blue Ridge Ins. Co. v. Jacobsen*,
25 Cal. 4th 489 (2001) .... 16

*Burlington Ins. Co. v. Devdhara*,
2010 U.S. Dist. LEXIS 99955 (N.D. Cal. Sept. 23, 2010) .... 22

*Buss v. Super. Ct.*,
16 Cal. 4th 35 (1997) .... 14-16, 25, 27

*C. H. Kershaw v. Maryland Cas. Co*.,
172 Cal. App. 2d 248 (1959) .... 27

*CalFarm Ins. Co. v. Krusiewicz*,
131 Cal. App. 4th 273 (2005) .... 29

*California Union Ins. Co. v. Club Aquarius, Inc.*,
113 Cal. App. 3d 243 (1980) .... 15

*Chateau Chamberay Homeowners Assn. v. Associated Inter. Ins. Co.*,
90 Cal. App. 4th 335 (2001) .... 29

*Chatton v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
10 Cal. App. 4th 846 (1992) .... 24

*In re Cisneros*,
2012 Bankr. LEXIS 4561 (Bankr. N.D. Cal. Oct. 1, 2012) .... 28

*Crab Boat Owners Assn. v. Hartford Ins. Co. of the Midwest*,
2004 U.S. Dist. LEXIS 23615 (N.D. Cal. Nov. 15, 2004) .... 19, 22

*Culligan v. State Comp. Ins. Fund*,
81 Cal. App. 4th 429 (2000) .... 14

*Del Real, LLC v. Harris*,
966 F. Supp. 2d 1047 (E.D. Cal. 2013) .... 13

*Delgado v. Interinsurance Exch. of The Auto. Club of S. Cal.*,
47 Cal. 4th 302 (2009) .... 24

*Dynamic Concepts, Inc. v. Truck Ins. Exch*.,
61 Cal. App. 4th 999 (1998) .... 26

*Fire Ins. Exch. v. Jiminez*,
184 Cal. App. 3d 437 (1986) .... 21

*Fraley v. Allstate Ins. Co.*,
81 Cal. App. 4th 1282 (2000) .... 29

*Gers, Inc. v. Atlantic Mut. Ins. Co.*, 2005 U.S. Dist. LEXIS 62937 (S.D. Cal. Oct. 19, 2005) ........ 15, 17

*Ghiglione v. Discover Prop. & Cas. Co.*, 2007 U.S. Dist. LEXIS 22901 (N.D. Cal. Mar. 29, 2007) ........ 27

*Golden Eagle Ins. Corp. v. CEN-FED, Ltd.*, 148 Cal. App. 4th 976 (2007) ........ 23

*Gonzalez v. Fire Ins. Exch.*, 234 Cal. App. 4th 1220 (2015) ........ 13

*Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966) ........ 21

*Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc.*, 357 F. Supp. 3d 953 (N.D. Cal. 2019) ........ 18, 20

*Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc.*, 799 Fed. Appx. 539 (9th Cir. Apr. 1, 2020) ........ 18, 20

*Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106 (1995) ........ 19

*Hartford Cas. Ins. Co. v. J.R. Marketing, Inc.*, 61 Cal. 4th 988 (2015) ........ 16

*Haskins v. Employers Ins. of Wausau*, 126 F. Supp. 3d 1117 (N.D. Cal. Aug. 26, 2015) ........ 26

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533 (1992) ........ 19, 21

*Industrial Indem. Co. v. Apple Comp., Inc.*, 79 Cal. App. 4th 817 (1999) ........ 23

*Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930 (1985) ........ 20

*James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093 (2001) ........ 28

*Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871 (2001) ........ 14, 23

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136 (1990) ........ 29

*Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109 (2002) ........ 22

*Lumbermens Mut. Cas. Co. v. Corning, Inc.*,
2008 U.S. Dist. LEXIS 126717 (C.D. Cal. Dec. 24, 2008) .......... 15, 18

*Mai v. HKT Cal, Inc.*,
66 Cal. App. 5th 504 (2021) .......... 27

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 29

*McHugh v. United Serv. Auto. Assn.*,
164 F.3d 451 (9th Cir. 1999) .......... 13

*Medill v. Westport Ins. Corp.*,
143 Cal. App. 4th 819 (2006) .......... 23

*Medina v. GEICO Indem. Co.*,
8 Cal. App. 5th 251 (2017) .......... 13

*Merritt v. Reserve Ins. Co.*,
34 Cal. App. 3d 858 (1973) .......... 27, 30

*Millennium Lab., Inc. v. Darwin Select Ins. Co.*,
676 Fed. Appx. 734 (9th Cir. Jan. 27, 2017) .......... 17-18

*Mock v. Michigan Millers Mut. Ins. Co.*,
4 Cal. App. 4th 306 (1992) .......... 31

*Montrose Chem. Corp. of Cal. v. Super. Ct.*,
6 Cal. 4th 287 (1993) .......... 13

*Murphy v. Federal Ins. Co.*,
2001 U.S. Dist. LEXIS 11578 (N.D. Cal. Aug. 1, 2001) .......... 23

*Nationwide Ins. Co. v. King*,
673 F. Supp. 384 (S.D. Cal. 1987) .......... 22

*Otworth v. Southern Pac. Transp. Co.*,
166 Cal. App. 3d 452 (1985) .......... 25

*Oxnard Manor LP v. Hallmark Spec. Ins. Co.*,
709 F. Supp. 3d 971 (C.D. Cal. Dec. 21, 2023) .......... 30-31

*Pacific Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*,
2019 U.S. Dist. LEXIS 169897 (C.D. Cal. June 25, 2019) .......... 15

*Palmer v. Truck Ins. Exch.*,
21 Cal. 4th 1109 (1999) .......... 14, 23

*Premier Pools Mgmt. Corp. v. Colony Ins. Co.*,
815 Fed. Appx. 168 (9th Cir. July 20, 2020) .......... 18

*Razuki v. Amguard Ins. Co.*, 2025 U.S. App. LEXIS 13922 (9th Cir. June 6, 2025) ........ 13

*Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822 (1968) ........ 25

*Rosen v. Nations Title Ins. Co*., 56 Cal. App. 4th 1489 (1997) ........ 26

*Safeco Ins. Co. of Am. v. Fireman's Fund Ins. Co.*, 148 Cal. App. 4th 620 (2007) ........ 15

*San Miguel Comm. Assn. v. State Farm Gen. Ins. Co.*, 220 Cal. App. 4th 798 (2013) ........ 20

*Scottsdale Ins. Co. v. MV Transp*., 36 Cal. 4th 643 (2005) ........ 16

*Silva & Hill Constr. Co., Inc. v. Employers Mut. Liab. Ins. Co*., 19 Cal. App. 3d 914 (1971) ........ 28

*Smith Kandal Real Estate v. Continental Cas. Co.*, 67 Cal. App. 4th 406 (1998) ........ 14

*St. Paul Mercury Ins. Co. v. McMillin Homes Constr. Inc.*, 2016 U.S. Dist. LEXIS 134972 (S.D. Cal. Sept. 29, 2016) ........ 26

*State Farm Fire & Cas. Co. v. Plutsky*, 1988 U.S. App. LEXIS 22048 (9th Cir. May 23, 1988) ........ 15

*Stevens v. Chisholm*, 179 Cal. 557 (1919) ........ 27

*Stewart v. Truck Ins. Exch.*, 17 Cal. App. 4th 468 (1993) ........ 31

*Stockton Mariposa, LLC v. West Am. Ins. Co*., 585 F. Supp. 3d 1241 (C.D. Cal. 2022) ........ 13

*Storek v. Fidelity & Guar. Ins. Underwriters, Inc*., 504 F. Supp. 2d 803 (N.D. Cal. 2007) ........ 17

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (1994) ........ 31

*Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*, 130 Cal. App. 4th 99 (2005) ........ 18

*The Travelers Indem. Co. of Conn. v. Walking U Ranch, LLC*, 2022 U.S. Dist. LEXIS 44058 (C.D. Cal. Mar. 10, 2022) ........ 18

*Travelers Ins. Co. v. Lesher*,
187 Cal. App. 3d 169 (1986) ....... 26

*Travelers Prop. Cas. Co. of Am. v. Kaufman & Broad Monterey Bay, Inc.*,
2015 U.S. Dist. LEXIS 16952 (N.D. Cal. Feb. 11, 2015) ....... 26

*The Upper Deck Co., LLC v. Federal Ins. Co*.,
358 F.3d 608 (9th Cir. 2004) ....... 18-19

*Waller v. Truck Ins. Exch., Inc*.,
11 Cal. 4th 1 (1995) ....... 13-14, 29

*Webcor Constr., LP v. Zurich Am. Ins. Co.*,
372 F. Supp. 3d 1061 (N.D. Cal. 2019) ....... 21

*Westfield Ins. Co. v. TWT, Inc*.,
723 F. Supp. 492 (N.D. Cal. 1989) ....... 19-20

*Wilson v. 21st Century Ins. Co.*,
42 Cal. 4th 713 (2007) ....... 29

*Zox LLC v. West Am. Ins. Co.*,
2024 U.S. App. LEXIS 3095 (9th Cir. Feb. 9, 2024) ....... 20-21

**Statutes**

Cal. Bus. & Prof. Code § 17200 ....... 30

Cal. Civ. Code § 1636 ....... 13

Cal. Civ. Code § 1638 ....... 14

Cal. Civ. Code § 3294 ....... 31

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I. INTRODUCTION

Unlike a traditional insurance coverage dispute where the insured sues over a denial of coverage, this case involves a claim by the insurer for reimbursement of **$5.5 million** (before accrued interest) paid in defense of claims that were never even potentially covered under the applicable insurance policy. While SVO Building One, LLC ("SVO") filed a Counterclaim for breach of contract and bad faith, the fact remains that Navigators Specialty Insurance Company ("Navigators") defended SVO from tender through trial in the action entitled *Liebert Corp. v. SVO Building One, LLC*, American Arbitration Association, Case No. 01-18-0003-1318 ("Underlying Action"), negating any argument that Navigators breached the insurance contract or acted in bad faith.

When SVO tendered the Underlying Action for defense under the Commercial General Liability policy ("Policy"), the only potentially covered claim involved allegations of defamation through the 15th cause of action. The 15th cause of action was dismissed from the Underlying Action on March 24, 2021. From that point, any duty to defend the Underlying Action under the Policy ceased. Navigators advised SVO that it would be withdrawing from the defense for that reason, but SVO requested that Navigators continue to provide a defense. In an effort to provide SVO with what it asked for, Navigators agreed to continue defending but informed SVO that **all** fees and costs paid by Navigators post-dating the dismissal of the defamation claim would be subject to reimbursement. **From March 24, 2021 through trial, Navigators paid approximately $2,998,457.50 in defense of SVO.** Navigators is entitled to reimbursement of this amount in full.

Recognizing that certain amounts of the claim for reimbursement will be subject to an allocation by the trier of fact, namely the defense fees and costs incurred before March 24, 2021, which total approximately **$2,497,187.09**, this Motion for Summary Judgment ("Motion") seeks (1) partial summary judgment on Navigators' First Amended Complaint [Doc. 43] for fees incurred after the only potentially covered claim in the Underlying Action was dismissed; and (2) summary judgment on SVO's Counterclaim [Doc. 53]. The Counterclaim is premised on alleged breaches of Navigators' duty to defend, but the undisputed facts establish that Navigators did not, as a matter of law, breach its duty. Therefore, all causes of action in SVO's Counterclaim fail.

## II. BACKGROUND

### A. The Claim

Navigators issued Policy No. LA17CGL219162IC to SVO for the period of July 12, 2017 to August 12, 2019. (Declaration of Angel Muth ("Muth Dec."), ¶ 2, Ex. A, Policy, EX. A-5, 76.) As relevant to the Underlying Action, Coverage B of the Policy provides coverage for "damages" because of "personal and advertising injury" arising out of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The Policy contains exclusions for violations of intellectual property, breach of contract, and the knowing violations of another's rights. (Muth Dec., ¶ 2, Ex. A, Policy, EX. A-23, 32, 37-38.)

Navigators was not notified of the Underlying Action until the Fourth Amended Complaint ("FAC") was filed, which was the operative pleading that proceeded to trial. (Muth Dec., ¶¶ 3, 12.) The FAC asserted 18 causes of action against SVO, nine of which were for intellectual property violations, four were for contractual claims, three were for fraudulent behavior, and one was for declaratory relief, all of which either do not fall within the Insuring Agreement or are otherwise excluded by the Policy. (Muth Dec., ¶ 3, Ex. B, FAC, EX. B-9-13, 15-16, 18, 20, 23, 26-27, 29-32.) The remaining cause of action and the crux of the issue in dispute is the 15th cause of action for defamation, including allegations that SVO had defamed Vertiv Corporation ("Claimant") by making false statements about the Claimant's work and reputation. (Muth Dec., ¶ 3, Ex. B, FAC, ¶¶ 151-152, EX. B-29, 30.) No other cause of action in the FAC sought damages for such misconduct.

On October 28, 2019, Navigators accepted SVO's defense of the Underlying Action subject to a reservation of rights, because of the potential that Coverage B was triggered for "personal and advertising injury" based on the allegations contained within the 15th cause of action for defamation. Navigators expressly reserved the right to seek reimbursement of any defense fees or costs incurred in defense of the uncovered claims. The coverage position letter informed SVO that the FAC did not allege "bodily injury" or "property damage" to trigger coverage under Coverage A of the Policy. (Muth Dec., ¶ 4, Ex. C, October 28, 2019 Letter, EX. C-1, 7-8, 12-13; Declaration of David Simantob ("Simantob Dec."), ¶ 2.) Navigators shared in SVO's defense with another insurer, Hallmark

Insurance Company ("Hallmark"). (Muth Dec., ¶ 5.)

On March 24, 2021, the Claimant dismissed the defamation cause of action from the Underlying Action without prejudice. (Muth Dec., ¶ 6, Ex. D, Dismissal, EX. D-2.) After dismissal, Navigators was never informed of a subsequent pleading filed by the Claimant in the Underlying Action. (Muth Dec., ¶ 12.) Given the dismissal of the defamation allegations from the FAC, which was the only potentially covered claim, on March 31, 2021, Navigators advised SVO that it would withdraw from the defense of the Underlying Action. (Muth Dec., ¶ 7, Ex. E, March 31, 2021 Letter, EX. E-1, 2.) On May 3, 2021, SVO disputed Navigators' decision to withdraw from the defense in the Underlying Action and asked Navigators to "revisit its coverage denial." (Muth Dec., ¶ 8, Ex. F, May 3, 2021 Letter, EX. F-1, 3; Simantob Dec., ¶ 3.) On May 18, 2021, Navigators responded that, "[w]hile Navigators continues to believe it no longer has a duty to defend SVO in the [Underlying Action], in light of your May 3, 2021 letter, Navigators will not withdraw from the defense of SVO" and that "Navigators' continued defense of SVO is subject to its full reservation of rights." The reservation of rights included the "right 'to seek reimbursement of any defense' to the extent that it was for a non-covered claim and '[t]o the extent that Navigators pays for the defense of claims that do not fall within the scope of coverage, it reserves all rights under appliable law to seek reimbursement of those amounts from SVO.'" (Muth Dec., ¶ 9, Ex. G, May 18, 2021 Letter, EX. G-1, 2; Simantob Dec., ¶ 4.)

Navigators paid approximately $2,998,457.50 to defend SVO between March 31, 2021 through conclusion of the Underlying Action. This is in addition to the approximately $2,497,187.09 Navigators paid for SVO's defense from tender through March 31, 2021. (Muth Dec., ¶ 13.)

**B. <u>The Coverage Litigation</u>**

Navigators filed this action, asserting declaratory relief claims as follows: the first cause of action seeks a declaration about Navigators' right to reimbursement of fees and costs incurred after dismissal of the defamation claim on March 24, 2021, and the second cause of action seeks a declaration about Navigators' right to reimbursement of all fees and costs incurred in defense of uncovered claims in the Underlying Action, including those incurred to defend SVO from the other 17 causes of action in the FAC not covered under the Policy regardless of when such fees were

incurred. [Doc. 43.] This Motion moves for summary judgment on Navigators' first cause of action only and on SVO's Counterclaim in full, including the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of Business & Professions Code section 17200, and declaratory relief. [Doc. 53.]

## III. ARGUMENT

### A. Interpretation of the Policy Is a Question of Law to Be Decided by the Court without Consideration of Expert Opinion.

The Court will be the adjudicator of any coverages afforded by the Policy. "[I]nterpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc*., 11 Cal. 4th 1, 18 (1995). Expert opinion cannot be used to interpret insurance policies. *Razuki v. Amguard Ins. Co.*, 2025 U.S. App. LEXIS 13922 (9th Cir. June 6, 2025), quoting *McHugh v. United Serv. Auto. Assn.*, 164 F.3d 451, 454 (9th Cir. 1999) ("[T]he district court did not abuse its discretion in disregarding Razuki's expert's opinion that the policy is ambiguous because expert opinions 'cannot be used to provide legal meaning or interpret the polic[y] as written.'"). "Where the issues before the Court are questions of law, the case is particularly 'well suited' for summary judgment." *Stockton Mariposa, LLC v. West Am. Ins. Co*., 585 F. Supp. 3d 1241, 1247 (C.D. Cal. 2022), quoting *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1051 (E.D. Cal. 2013).

"[A]n insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment." *Medina v. GEICO Indem. Co*., 8 Cal. App. 5th 251, 259 (2017), quoting *Gonzalez v. Fire Ins. Exch.*, 234 Cal. App. 4th 1220, 1230 (2015); *see also*, *Montrose Chem. Corp. of Cal. v. Super. Ct.*, 6 Cal. 4th 287, 300 (1993) (holding "the insured must prove the existence of a *potential for coverage*," such that "the underlying claim *may* fall within policy coverage" (emphasis in original)). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Id*. at 1264; *see also*, Cal. Civ. Code § 1636; *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 821 (1990). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co.*, 51 Cal.

3d at 822; *Culligan v. State Comp. Ins. Fund*, 81 Cal. App. 4th 429, 434 (2000). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264; *see also*, Cal. Civ. Code § 1638. "Courts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19.

The "duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Id.* at 19. "If a claim does not fall within the terms of the [insuring] clauses, then no coverage exists." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115-1116 (1999). "An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected." *Smith Kandal Real Estate v. Continental Cas. Co.*, 67 Cal. App. 4th 406, 414 (1998).

An insurer's duty defend ceases once "there is no potential for coverage." *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879 (2001); *see also*, *Buss v. Super. Ct.*, 16 Cal. 4th 35, 46 (1997) (holding the duty to defend "may be extinguished earlier [than conclusion of the action], if it is shown that no claim can in fact be covered. [Citation.] If it is so extinguished, however, it is extinguished only prospectively and not retroactively: before, the insurer had a duty to defend; after, it does not have a duty to defend further.").

Applying these principles of policy interpretation to the coverage dispute, Navigators is entitled to summary judgment on its first cause of action and on SVO's Counterclaim.

**B. <u>The Only Potentially Covered Claim Was Dismissed on March 24, 2021, Entitling Navigators to Judgment on Its First Cause of Action.</u>**

The allegations asserted in support of the defamation claim, contained within the 15th cause of action in the FAC, were the only allegations in the Underlying Action that ever potentially triggered coverage under the Policy. Once that defamation claim was dismissed, there was no potential for coverage of the Underlying Action. It is immaterial that the claim was dismissed without prejudice as the allegations were never realleged in the Underlying Action. (Muth Dec., ¶ 12.)

**1. Only the Defamation Claim Potentially Triggered Coverage under the Policy, Permitting Navigators to Withdraw When It Was Dismissed.**

"[P]ersonal injury coverage 'is triggered by one of the offenses listed in the policy,' not the injury or damages that a plaintiff suffers." *Albert v. Truck Ins. Exch.*, 23 Cal. App. 5th 367, 377

(2018); *see also*, *Safeco Ins. Co. of Am. v. Fireman's Fund Ins. Co.*, 148 Cal. App. 4th 620, 636 (2007). It is undisputed that the only relevant offense within the definition of "personal and advertising injury" asserted in the instant coverage dispute is for "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Muth Dec., ¶ 2, Ex. A, Policy, EX. A-32.) Based on the allegations that "SVO engaged in conduct aimed at disparaging [the Claimant's] work and reputation," Navigators agreed to defend SVO subject to the right to withdraw from the defense and seek reimbursement of all amounts incurred in defense of uncovered claims. (Muth Dec., ¶¶ 3-4, Ex. B, FAC, ¶ 151, EX. B-29; Ex. C, October 28, 2019 Letter, EX. C-1, 8.) In strict accordance with *Buss*, Navigators provided a full defense to SVO in the Underlying Action. *Buss*, 16 Cal. 4th at 48.

Once the only potentially covered defamation claim was dismissed, the duty to defend was "extinguished." *Id.* at 46; *see also*, *Gers, Inc. v. Atlantic Mut. Ins. Co*., 2005 U.S. Dist. LEXIS 62937, *8 (S.D. Cal. Oct. 19, 2005) (holding the duty to defend "did not cover the arbitration proceedings, because the defamation claim was withdrawn from arbitration and therefore no potential for coverage applied."). From that point, Navigators no longer had a duty to defend and could withdraw from SVO's defense. *California Union Ins. Co. v. Club Aquarius, Inc.*, 113 Cal. App. 3d 243, 247-248 (1980) (holding the insurer "had a right to withdraw from the defense once the federal court, by its findings, had made it clear that the case, in fact, did not involve the limited risk set forth in that policy. … [The insurer] need not defend against the remaining portion of the action, as to which it has no obligation to pay."); *State Farm Fire & Cas. Co. v. Plutsky*, 1988 U.S. App. LEXIS 22048, *5 (9th Cir. May 23, 1988) ("[I]f it is clearly established by a court's findings that a case does not involve the risk set out in a policy, the insurer may withdraw"); *Pacific Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co*., 2019 U.S. Dist. LEXIS 169897, *22 (C.D. Cal. June 25, 2019) ("[W]hile an insurer must initially provide a defense if coverage is in doubt, it is entitled to reject a tender of defense or withdraw from defending a claim if it is able to demonstrate, by reference to undisputed facts, that there is 'no potential for coverage.'"); *Lumbermens Mut. Cas. Co. v. Corning, Inc.*, 2008 U.S. Dist. LEXIS 126717, *23 (C.D. Cal. Dec. 24, 2008).

California law is clear that Navigators can seek reimbursement for fees and cost paid to

defend claims that were never even potentially covered under the Policy. *Buss*, 16 Cal. 4th at 50 ("As to the claims that are not even potentially covered, … the insurer may indeed seek reimbursement for defense costs."); *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 656 (2005) ("[T]he insurer may unilaterally condition its proffer of a defense upon its reservation of a right later to seek reimbursement of costs advanced to defend claims that are not, and never were, potentially covered by the relevant policy."); *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 504 (2001) ("[S]uch a reimbursement right is implicit in the policy terms which provide indemnification only for *covered* claims.") (emphasis in original); *Hartford Cas. Ins. Co. v. J.R. Marketing, Inc.*, 61 Cal. 4th 988, 992 (2015) ("[T]he insurer may seek reimbursement from the insured of defense fees and expenses solely attributable to the claims that were clearly outside policy coverage.").

After Navigators gave notice to SVO of its intention to withdraw from the defense, SVO objected and requested that Navigators continue to defend. (Muth Dec., ¶¶ 7-8, Ex. E, March 31, 2021 Letter, EX. E-1, 2; Ex. F, May 3, 2021 Letter, EX. F-1, 3; Simantob Dec., ¶ 3.) In an act of good faith towards SVO, Navigators agreed to continue to defend SVO in the Underlying Action subject to its continued right to seek reimbursement even though there was no potential for coverage. Importantly, Navigators expressly reiterated its right to seek reimbursement so SVO understood that it would have to reimburse Navigators, at a minimum, for ***all*** fees and costs incurred in defending the Underlying Action from that point forward. (Muth Dec., ¶ 9, Ex. G, May 18, 2021 Letter, EX. G-1, 2; Simantob Dec., ¶ 4.) With that understanding, SVO maintained its request that Navigators continue to provide a defense of the Underlying Action, recognizing it would have to reimburse Navigators for all fees and costs. *Buss*, 16 Cal. 4th at 61, n.27 ("Not only did Transamerica reserve all its rights, contractual and otherwise. But, receiving consideration, Buss agreed thereto."). Navigators is now entitled to a declaration that SVO must reimburse all fees and costs incurred after dismissal of the defamation claim in the Underlying Action.

**2. The Claimant Never Reasserted the Defamation Allegations after Dismissal, Making the "Without Prejudice" Designation Immaterial.**

Dismissal of the 15th cause of action "without prejudice" does not mean there was a continuing duty to defend just in case the Claimant reasserted the claim later in the Underlying

Action.[1] Indeed, "California law does not require [the insurer] absolutely to prove that no claim could *ever* be asserted by a third party that might fall within the terms of the Policy. Instead, the law requires [the insurer] to demonstrate that the claims **actually advanced** fall outside of the Policy." *Storek v. Fidelity & Guar. Ins. Underwriters, Inc*., 504 F. Supp. 2d 803, 813 (N.D. Cal. 2007) (italics emphasis in original; bold emphasis added). Once the Claimant dismissed its defamation claim, Navigators' duty to defend ceased. For example, in *Gers, Inc.*, 2005 U.S. Dist. LEXIS 62937 at *7-8, a case nearly identical to the instant coverage dispute, the Court held that the insurer could cease its duty to defend an arbitration once the only covered claim – a defamation cause of action – was voluntarily withdrawn:

> The defamation claim was the only claim potentially covered by Atlantic's policy. Atlantic had a duty to defend [GERS'] defamation claim throughout the Apex litigation. ... **This duty, however, did not cover the arbitration proceedings, because the defamation claim was withdrawn from arbitration and therefore no potential for coverage applied.** … Atlantic is entitled to summary judgment as to lack of its breach of duty to defend GERS' defamation claim after the arbitration in the Apex litigation.

(Emphasis added.) The *Gers* Court also expressly rejected the insured's argument that the claimant's "withdrawal of the defamation Claim for the arbitration was purely nominal" such that the arbitrator "could have easily decided the defamation claim as part of the arbitration proceedings." *Id*. at *12.

The *Gers* court is not the only one to find that, once the covered claim is dismissed, the carrier's duty to defend ceases. *See Millennium Lab., Inc. v. Darwin Select Ins. Co*., 676 Fed. Appx. 734, 737 (9th Cir. Jan. 27, 2017) ("[B]y the time Millennium appealed and moved for a new trial, it was plain that the case contained no potentially covered claims. Ameritox did not press a disparagement claim, the jury never awarded damages for disparagement, and Ameritox did not appeal or move for a new trial. There was no evidence that an amendment to add a disparagement claim was likely. … Darwin's duty to defend therefore terminated with the June 16, 2014 judgment

[1] For consideration of the full context of the Underlying Action, the dismissal was filed on March 24, 2021 before the first phase of trial started on August 3, 2021. (Muth Dec., ¶¶ 6, 12, Ex. D, Dismissal, EX. D-2.)

in *Ameritox*."); *The Travelers Indem. Co. of Conn. v. Walking U Ranch, LLC*, 2022 U.S. Dist. LEXIS 44058, *52-53 (C.D. Cal. Mar. 10, 2022), quoting *Lumbermens Mut. Cas. Co.*, 2008 U.S. Dist. LEXIS 126717 at *53-54 ("The only claim by the Louderbacks that could have potentially been covered by the policy would have been a defamation claim. But the Louderbacks never amended their complaint to include a defamation claim, nor sought damages on account of defamation. Therefore, there is no potential that this appeal can include a defamation claim, because 'any appeal by the underlying plaintiffs cannot involve a defamation claim which they never brought.' … Accordingly, Travelers 'should not have to remain in the case and provide a defense where the facts make clear that the litigation [] only involves non-covered claims.'"); *Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc*., 357 F. Supp. 3d 953, 968 (N.D. Cal. 2019), *aff'd*, 799 Fed. Appx. 539 (9th Cir. Apr. 1, 2020).

Here, once the defamation claim was dismissed, Navigators' duty to defend the Underlying Action ended. If the operative FAC in the Underlying Action was ever amended to bring back the defamation claim or assert another covered claim, then SVO was required to re-tender the claim for coverage. *Millennium Lab., Inc.*, 676 Fed. Appx. at 737 ("If the *Ameritox* litigation is ever reinitiated and Millennium again faces a potentially covered claim, it could then request a defense"); *Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*, 130 Cal. App. 4th 99, 110 (2005) ("Even if the additional allegations would have triggered Wausau's duty to defend, Mydrin never tendered the later complaint to Wausau. An insurer has no duty to continue to investigate the potential for coverage after it makes an informed decision on coverage at the time of tender."); *The Upper Deck Co., LLC v. Federal Ins. Co*., 358 F.3d 608, 613 (9th Cir. 2004); *Premier Pools Mgmt. Corp. v. Colony Ins. Co*., 815 Fed. Appx. 168, 169 (9th Cir. July 20, 2020) ("PPMC failed to tender the amended complaint containing the relevant, new disparagement allegations, so Colony owed no duty to investigate those allegations or to defend PPMC against them, as a matter of law."). Regardless, it is undisputed that the Claimant never reasserted a defamation claim in the Underlying Action. Having already amended the operative pleading four times, the Claimant never again amended the FAC, and the defamation cause of action was never realleged. (Muth Dec., ¶¶ 3, 12.) It is beyond speculation to suggest the Claimant could have pursued the dismissed defamation claim through the remaining

causes of action. *Crab Boat Owners Assn. v. Hartford Ins. Co. of the Midwest*, 2004 U.S. Dist. LEXIS 23615, *19-20 (N.D. Cal. Nov. 15, 2004).

Unable to show a triggering claim in the FAC after dismissal of the defamation cause of action, SVO has relied on *Westfield Ins. Co. v. TWT, Inc*., 723 F. Supp. 492 (N.D. Cal. 1989) to argue that, despite the fact that the only potentially covered claim was dismissed, Navigators had a continuing duty to defend, because the dismissal was "without prejudice." In that decision, the district court relied on the fact that a crossclaim could be reasserted as it had been dismissed without prejudice, thereby holding the dismissal did not eliminate the carrier's duty to defend. **The 1989 *Westfield Ins. Co.* decision has never been cited or followed for this proposition by any court in any subsequent decision**, thus explaining why this is the only case SVO has offered in support of its strained policy interpretation. Rather, since this 1989 decision was issued, as shown through the plethora of subsequent decisions cited above, California and federal appellate courts have repeatedly and consistently held that an insured cannot "manufacture" a duty to defend by speculating what a claimant might assert in the future when the operative complaint does not contain such claim. *See also*, *Amex Assur. Co. v. Allstate Ins. Co*., 112 Cal. App. 4th 1246, 1252 (2003) (holding an insured "cannot manufacture a duty to defend by speculating about facts that might be found or ways in which the underlying complaint might be amended at some future date."); *Gunderson v. Fire Ins. Exch*., 37 Cal. App. 4th 1106, 1117 (1995) (holding insureds "may not manufacture coverage by speculating about unpled third party claims."); *Hurley Constr. Co. v. State Farm Fire & Cas. Co*., 10 Cal. App. 4th 533, 538 (1992) (same); *The Upper Deck Co., LLC*, 358 F.3d at 616 ("The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage."); *Crab Boat Owners Assn.*, 2004 U.S. Dist. LEXIS 23615 at *17 ("[P]laintiffs' assertion that the carrier always has an obligation to defend when the third-party plaintiff remains free to amend his complaint is misplaced.").

The stray *Westfield Ins. Co.* decision that has been intentionally excluded from all subsequent case law decisions does not provide this Court with any basis to find a continuing duty to defend after the defamation claim was voluntarily dismissed from the Underlying Action.

**3. The Claimant Disavowed Any Potentially Triggering Allegations through Dismissal of the Defamation Cause of Action.**

As the *Westfield Ins. Co.* decision does not hold up when weighed against all subsequent case law, SVO has pivoted to arguing that the 14th cause of action for intentional interference with contractual relationship triggered coverage by the allegation SVO "routinely engaging in secretive and unauthorized direct communications with DPR personnel regarding the work and services DPR was performing for Vertiv on the jobsite and disparaging Vertiv's work." (Muth Dec., ¶ 3, Ex. B, FAC, ¶ 146, EX. B-29.) It is not enough for a version of the word "disparage" to be included in the FAC to trigger coverage for material that "disparages a person's or organization's goods, products or services." (Muth Dec., ¶ 2, Ex. A, Policy, EX. A-32.) The Policy requires that the Claimant seek "***damages***" for the alleged injury for there to be a defense obligation. (Muth Dec., ¶ 2, Ex. A, Policy, EX. A-23.) *San Miguel Comm. Assn. v. State Farm Gen. Ins. Co.*, 220 Cal. App. 4th 798, 800-801 (2013) ("The third party's failure to seek compensatory damages against the insured means the dispute is not a claim for damages under the policy."); *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985). The FAC's contractual 14th cause of action did not seek such "damages" for "personal and advertising injury."

Regardless, even if the 14th cause of action was seeking recovery of "damages," the allegation in paragraph 146 does not. When the Claimant dismissed the 15th cause of action for defamation, it disavowed its efforts to seek "damages" for defamation or disparagement claims. *Great Am. E&S Ins. Co.*, 357 F. Supp. 3d at 968 ("Under California law, [the claimant's] concession that it was not seeking damages for disparagement confirms there is no[] duty for Great American to defend."), *aff'd*, 799 Fed. Appx. 539. The allegation that SVO "disparaged" the Claimant's work was merely a conclusory contention that is insufficient to trigger coverage under the Policy for the same reasons addressed in the Ninth Circuit's decision in *Zox LLC v. West Am. Ins. Co.*, 2024 U.S. App. LEXIS 3095, *3-4 (9th Cir. Feb. 9, 2024), which held:

> Zox cites eleven different paragraphs in the Pleadings as "facts" that allegedly "satisfy all the elements for a claim of disparagement." One of these paragraphs explicitly states that Zox "disparaged the goods, services, or business of another by false or

> misleading representations of fact." Though crediting factual assertions made in the pleadings, we are "not required to credit legal conclusions." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). We must look past labels and at the facts alleged. *See Swain*, 120 Cal. Rptr. 2d at 811-12. Here, Zox is unable to cite a single factual pleading in support of a disparagement claim. The quoted paragraph is merely a conclusory allegation that neither describes whose goods, services, or business were disparaged, nor does it describe what Zox said that was allegedly false or misleading. None of the remaining sections cited by Zox contain facts that would raise the potential for liability under a disparagement theory. The Zox Brothers never alleged that Zox had called their products inferior or defective. To the contrary, the Pleadings only offer descriptions of Zox allegedly imitating and profiting from the Zox Brothers' brand. This Court has long held that imitating a product or service mark does not trigger coverage for a disparagement offense.

The allegations in the FAC are exactly the same as the pleading discussed by the Ninth Circuit. The Claimant made the decision not to pursue defamation when the dismissal was filed; at that point, the Claimant was no longer seeking "damages" for any purported disparaging conduct. A stray conclusory allegation in another cause of action in the pleading does not bring coverage for the dismissed defamation claim back in. *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 110 (1996) ("[A]s a general rule conclusory allegations are not enough to give rise to a duty to defend."); *Fire Ins. Exch. v. Jiminez*, 184 Cal. App. 3d 437, 443, n.2 (1986), citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966) ("Our Supreme Court, however, anticipating imaginative counsel and the likelihood of artful drafting, has plainly indicated that '… we should hardly designate the third party [counsel for plaintiff in the underlying lawsuit] as the arbiter of the policy's coverage.' [Citation.] Were we to credit Jiminez' theory, mere allegations of 'general negligence' would erase exclusions in any policy."); *Hurley Constr. Co.*, 10 Cal. App. 4th at 538 (same); *Webcor Constr., LP v. Zurich Am. Ins. Co.*, 372 F. Supp. 3d 1061, 1074 (N.D. Cal. 2019) ("The underlying complaint did not include factual allegations of damage to property other than the curtainwall system itself. It is the *factual* allegations of the underlying complaint, and not boilerplate allegations of 'costs to repair

property damaged by deficient work' that are the basis for the Court's analysis.") (emphasis in original). SVO cannot now impermissibly speculate that the Claimant might have substituted the intentional interference cause of action for the very defamation cause of action it had voluntarily dismissed. *Crab Boat Owners Assn.*, 2004 U.S. Dist. LEXIS 23615 at *19-20 (citing *Low v. Golden Eagle Ins. Co*., 99 Cal. App. 4th 109, 114 (2002) as "holding that plaintiff impermissibly speculates when surmising an amendment to the third-party plaintiffs pleading that would 'in effect substitute one cause of action for another'").

SVO's expert also pointed to allegations within the FAC's fifth cause of action for violations of unfair competition law with reference to "false reports" as a potentially triggering claim. (Muth Dec., ¶ 3, Ex. B, FAC, ¶¶ 55-56, EX. B-12, 13.) That cause of action under California Business & Professions Code section 17200 does not seek "damages" to trigger the Insuring Agreement of the Policy as the claim is limited to equitable relief. (Muth Dec., ¶ 3, Ex. B, FAC, Prayer, EX. B-33, 34.) *Bank of the West*, 2 Cal. 4th at 1258, 1272 ("[W]e hold that the CGL policy does not cover claims for advertising injury that arose under the Unfair Business Practices Act. … [T]he Unfair Business Practices Act does not authorize an award of damages"). Injunctive relief or other specific performance is not a form of compensable "damages." *Burlington Ins. Co. v. Devdhara*, 2010 U.S. Dist. LEXIS 99955, *29 (N.D. Cal. Sept. 23, 2010) ("A cause of action that seeks these types of equitable relief does not seek 'damages' that can be covered by a liability policy."); *Nationwide Ins. Co. v. King*, 673 F. Supp. 384, 387 (S.D. Cal. 1987); *AIU Ins. Co.*, 51 Cal. 3d at 842 (holding that the costs of injunctive relief do not satisfy the definition of "damages"). Without an allegation seeking "damages" for disparagement, there is no trigger of Coverage B for "personal and advertising injury."

**4. There Was No Other Potentially Covered Claim Alleged by the Claimant.**

Having shown that there was no potential for coverage for "personal and advertising injury" after the dismissal of the defamation claim, Navigators will address how there was no other potential trigger of coverage in the Underlying Action for the remaining claims. Of the 18 causes of action asserted in the FAC, only the 15th cause of action had the potential for coverage under the Policy. As discussed below, the other 17 claims either did not come within the Insuring Agreement or were barred by application of several exclusions.

For a claim to be covered under Coverage A of the Policy, it must allege "bodily injury" or "property damage" caused by an "occurrence". (Muth Dec., ¶ 2, Ex. A, Policy, A-18.) The FAC does not contain an allegation of "bodily injury" or "property damage" as those terms are defined in the Policy. Rather, the Underlying Action involved a contractual business dispute premised on SVO's alleged violations of the Claimant's intellectual property rights. Violations of intellectual property rights are not claims for "property damage." *Avery Dennison Corp. v. Allendale Mut. Ins. Co*., 310 F.3d 1114, 1116 (9th Cir. 2002); *Murphy v. Federal Ins. Co*., 2001 U.S. Dist. LEXIS 11578, *8 (N.D. Cal. Aug. 1, 2001). Moreover, the FAC only sought recovery for economic losses, which do not qualify as "property damage." *Kazi*, 24 Cal. 4th at 879; *Waller*, 11 Cal. 4th at 17; *Golden Eagle Ins. Corp. v. CEN-FED, Ltd.*, 148 Cal. App. 4th 976, 987 (2007). There was never a trigger of Coverage A through the FAC.

Even if the other allegations triggered coverage, the Policy contains a number of exclusions that apply to the claim. First, the Policy's intellectual property exclusion bars coverage for any "personal and advertising injury" arising out of "[i]nfringement, disparagement, dilution, diminishment of or damage to:" patent, trademark, trade secret, and "[a]ny other intellectual property rights recognized or implied by law." (Muth Dec., ¶ 2, Ex. A, Policy, EX. A-37, 38.) It is evident that all of the Claimant's claims for misappropriation of trade secrets, patent infringement, violations of the Lanham Act, and false designation of origin, which encompass the fifth through 14th causes of action, fall squarely within the language of this exclusion. (Muth Dec., ¶ 3, Ex. B, FAC, EX. B-12-29.) *Industrial Indem. Co. v. Apple Comp., Inc*., 79 Cal. App. 4th 817, 833 (1999) ("ICSOP was justified in relying on its trademark infringement exclusion to deny Apple a defense on Apple Corps's potential tort claims, because all the facts indicated that any such claims arose solely from conduct by Apple amounting to trademark infringement."); *Palmer v. Truck Ins. Exch*., 21 Cal. 4th 1109, 1117 (1999); *Aloha Pac., Inc. v. California Ins. Guar. Assn.*, 79 Cal. App. 4th 297, 322 (2000).

The Policy further excludes "personal and advertising injury" "arising out of a breach of contract." (Muth Dec., ¶ 2, Ex. A, Policy, EX. A-23.) Such exclusions are routinely upheld to bar contractual disputes. *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 831 (2006) ("Here, the tort claims against the directors and officers are not independent of the breach of contract claims. No

aspect of the underlying bond litigation would exist without the alleged breaches of the loan agreements"); *Basalite Concrete Prods., LLC v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2013 U.S. Dist. LEXIS 70597, *10 (E.D. Cal. May 17, 2013) (finding breach of contract exclusion precluded coverage for claim for breach of licensing agreement). The FAC in the Underlying Action includes causes of action for breach of contract, open-book account, reasonable value, and declaratory relief through the first through fourth causes of action. (Muth Dec., ¶ 3, Ex. B, FAC, EX. B-9-11.) It is undisputable that these causes of action arose exclusively from SVO's contractual obligations with the Claimant such that they are not covered by the Policy.

Finally, there are multiple exclusions in the Policy to bar coverage for SVO's intentional acts, including for "personal and advertising injury" "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another" and "arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity." (Muth Dec., ¶ 2, Ex. A, Policy, EX. A-23.) Courts routinely uphold exclusions for acts allegedly committed intentionally as these acts do not constitute the type of accidental harm intended to be covered by insurance policies. *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 352 (9th Cir. 1988); *Delgado v. Interinsurance Exch. of The Auto. Club of S. Cal.*, 47 Cal. 4th 302, 313-314 (2009); *Chatton v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 10 Cal. App. 4th 846, 861 (1992) ("[I]t is well settled that intentional or fraudulent acts are deemed purposeful rather than accidental and, therefore, are not covered under a CGL policy"); *Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268, 271 (N.D. Cal. 1991). The allegations in the FAC allege such intentional conduct, including that SVO continued to use the Claimant's designs after license revocation, passed them to competitors, and engaged in intentional interference with contractual relations. (Muth Dec., ¶ 3, Ex. B, FAC, ¶¶ 30, 146-147, 151-152, EX. B-8, 29-30.) As such, the 14th cause of action discussed in connection with the disparagement contention and the 16th through 18th causes of action for fraud, misrepresentation, and civil conspiracy do not trigger coverage under the Policy. (Muth Dec., ¶ 3, Ex. B, FAC, EX. B-29-32.)

The only potentially triggering claim in the FAC was the defamation cause of action. The allegations in all other causes of action were barred from coverage.

For the reasons discussed, Navigators requests that this Court grant summary judgment in its favor on the first cause of action in its First Amended Complaint. [Doc. 43.] This is a straightforward *Buss* reimbursement claim where Navigators is entitled to reimbursement of all fees and costs incurred for the defense of uncovered claims. There can be no dispute that all fees and costs incurred after dismissal of the only potentially covered claim – the defamation claim – were incurred in the defense of the remaining 17 uncovered causes of action. The underpinning of the *Buss* decision was to resolve the very inequity that Navigators was faced with here, specifically the unfairness in requiring an insurer to provide the insured with a complete defense to a suit containing both potentially covered and uncovered claims and the express terms of an insurance policy, which only requires an insurer to defend covered claims. *Buss*, 16 Cal. 4th at 48-49.

### C. <u>Navigators Is Entitled to Summary Judgment on SVO's Counterclaim.</u>

Navigators is also entitled to summary judgment on SVO's Counterclaim as SVO cannot meet its burden to establish the requisite elements of any of the causes of action.

#### 1. SVO Cannot Establish that Navigators Breached the Policy.

To succeed on this claim, SVO would have to prove the following elements: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968); *see also*, *Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458 (1985). SVO cannot show a breach of the Policy given the continuous defense of the Underlying Action through trial, totaling payments in excess of $5,495,644.59. (Muth Dec., ¶¶ 10, 13.) In seeking summary judgment, Navigators will address all purported breaches of the Policy set forth in SVO's Counterclaim.

##### a) Navigators continued to defend the case through trial.

SVO's contention that Navigators withdrew from its defense after the dismissal of the defamation claim is categorically false. [Doc. 53, Counterclaim, ¶ 36.] While Navigators expressed an intent to withdraw from defense as there was no covered claim, Navigators continued to pay all defense fees without interruption, and the assigned defense counsel continued throughout that period. (Muth Dec., ¶ 10.) Navigators agreed to continue with the defense through trial at SVO's request despite the reminder to SVO that it would be responsible for all fees and costs incurred from that

point through resolution. (Muth Dec., ¶ 9, Ex. G, May 18, 2021 Letter, EX. G-1; Simantob Dec., ¶ 4.) For this reason, SVO cannot show the elements of breach of the Policy nor "resulting damages."

Even if Navigators had withdrawn from the defense, which it did not, SVO still would not be able to establish breach of contract. Once the only covered claim was dismissed, Navigators no longer had any duty to defend. *Rosen v. Nations Title Ins. Co*., 56 Cal. App. 4th 1489, 1496 (1997) ("It is axiomatic that if Nations had no duty to defend, there was no breach of contract."); *Bararsani v. HDI Global Ins. Co*., 2021 U.S. Dist. LEXIS 215951, *2 (C.D. Cal. Nov. 5, 2021) ("Defendant's refusal to provide a defense or indemnify in the underlying action is not a breach of contract where there is no duty to defend."). As shown above, the undisputed material facts establish there was not a defense obligation under the Policy after the defamation cause of action was dismissed. Therefore, even an undisputed withdrawal would not have breached the Policy.

There was further no issue with the 15 days Navigators took to consider SVO's request for reconsideration of the intent to withdraw. Between SVO's May 3, 2021 pushback and Navigators' May 18, 2021 agreement to continue to defend, Navigators was "entitled to a reasonable period of time to analyze a situation requiring a coverage decision." *Dynamic Concepts, Inc. v. Truck Ins. Exch*., 61 Cal. App. 4th 999, 1010 (1998); *see also*, *St. Paul Mercury Ins. Co. v. McMillin Homes Constr. Inc.*, 2016 U.S. Dist. LEXIS 134972, *9-10 (S.D. Cal. Sept. 29, 2016) ("Black letter law provides that insurers are entitled to a reasonable period of time to investigate claims to determine coverage issues."); *Haskins v. Employers Ins. of Wausau*, 126 F. Supp. 3d 1117, 1125 (N.D. Cal. Aug. 26, 2015) (finding a four-month period between tender and defense constituted "immediate" defense); *Travelers Prop. Cas. Co. of Am. v. Kaufman & Broad Monterey Bay, Inc.*, 2015 U.S. Dist. LEXIS 16952, *9-10 (N.D. Cal. Feb. 11, 2015) (holding 3.5-month period acceptable). Any delay caused by assessing coverage does not result in a breach of the duty to defend.

SVO simply cannot establish the elements of a breach of contract claim.

**b) Any "malpractice" of defense counsel is not imputed to Navigators.**

Any assertion of malpractice SVO has against the assigned panel counsel does not establish a liability claim against Navigators. It is well settled under California law that an "attorney hired by the insurer to represent the insured is an independent contractor." *Travelers Ins. Co. v. Lesher*, 187

Cal. App. 3d 169, 191 (1986), disapproved on other grounds in *Buss*, 16 Cal. 4th at 50, n.12; *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 880 (1973) ("In our view independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance."). California law does not impose liability on an insurer for the negligence of an independent contractor acting as panel counsel. *Ghiglione v. Discover Prop. & Cas. Co.*, 2007 U.S. Dist. LEXIS 22901, *10 (N.D. Cal. Mar. 29, 2007) ("California courts have stated that insurance companies are not liable for the potential missteps of retained counsel. … Thus, even assuming that defense counsel was negligent, [the insurer] would not be liable for the conduct of" panel counsel).

The duty to defend only obligates an insurer to "employ competent counsel to represent the assured." *Merritt*, 34 Cal. App. 3d at 882; *see also*, *Assurance Co. of Am. v. Haven*, 32 Cal. App. 4th 78, 84 (1995). Despite SVO's claims to the contrary, Navigators is not responsible for any torts committed by panel counsel during SVO's defense. *Merritt*, 34 Cal. App. 3d at 881-882 ("Having chosen competent independent counsel to represent the insured in litigation, … the carrier does not become liable for trial counsel's legal malpractice. If trial counsel negligently conducts the litigation, the remedy for this negligence is found in an action against counsel for malpractice and not in a suit against counsel's employer to impose vicarious liability."). SVO cannot establish a breach of the Policy by relying on actions taken by the attorneys Navigators retained for the defense.

SVO's contention that panel counsel engaged in "gross overbilling of fees and expenses" does not further the breach of contract claim. [Doc. 53, Counterclaim, ¶ 36.] Navigators' payment of the fees is *prima facie* evidence that they were reasonable. *C. H. Kershaw v. Maryland Cas. Co.*, 172 Cal. App. 2d 248, 258 (1959), quoting *Stevens v. Chisholm*, 179 Cal. 557, 564 (1919) ("When it does not appear that the attorneys' fees and other expenses are obviously excessive, testimony of the amounts paid will constitute a *prima facie* case; and it will be assumed in such case that the attorneys' fees so paid were reasonable, unless the contrary appears."); *Mai v. HKT Cal, Inc.*, 66 Cal. App. 5th 504, 519-520 (2021) ("A prima facie case as to the costs incurred and their reasonableness can be established by the plaintiff's testimony that bills for the services were paid."); *Barlin v. Barlin*,

156 Cal. App. 2d 143, 149-150 (1957).[2] It was in Navigators' best interests to guard against inflated or overbilled invoices, since Navigators had no guarantee at the time they were paid that SVO would be in a financial position to reimburse such fees. SVO cannot establish that the billings by panel counsel constituted a breach of contract by Navigators as a matter of law.

**c) The Policy does not afford coverage for SVO's affirmative claims.**

It cannot be disputed that a defending insurer does not have an obligation to fund the insured's affirmative claims.[3] *James 3 Corp. v. Truck Ins. Exch*., 91 Cal. App. 4th 1093, 1104 (2001) ("Under the policy, Truck is contractually obligated to provide the insureds with a defense. However, there is nothing in the policy that contractually obligates Truck to fund and prosecute an insured's affirmative relief counterclaims or cross-complaints."); *Barney v. Aetna Cas. & Sur. Co*., 185 Cal. App. 3d 966, 975 (1986) ("Aetna had no duty under the policy to file a cross-complaint on [the insured's] behalf, for nothing in the policy provisions imposes upon the insurer the duty to prosecute claims of the insured against third parties."); *Silva & Hill Constr. Co., Inc. v. Employers Mut. Liab. Ins. Co*., 19 Cal. App. 3d 914, 927 (1971) ("The duty to defend could not extend to requiring the insurer to take affirmative action to recover money"). Consistent with this established legal principle, the Policy only provided coverage "to defend the insured," which Navigators provided, together with Hallmark. (Muth Dec., ¶¶ 2, 5, Ex. A, Policy, A-23.) While Navigators understands SVO retained the same firm to prosecute SVO's affirmative counterclaims in the Underlying Action and was billed for such fees directly, Navigators was never provided copies of those bills. (Muth Dec., ¶ 11.) Rather, Navigators' defense of the Underlying Action was limited to just that – the defense.

For these reasons, SVO cannot establish the elements of its breach of contract cause of action. Similarly, any declaration as to available coverages through SVO's fourth cause of action will be made in Navigators' favor, entitling Navigators to summary judgment on both claims.

[2] Federal courts apply the same principle for *prima facie* evidence of reasonableness based on actual payments made as California state courts do. *In re Cisneros*, 2012 Bankr. LEXIS 4561, *7, n.4 (Bankr. N.D. Cal. Oct. 1, 2012).

[3] SVO's Counterclaim contends that Navigators failed "to pay for SVO's defense expenses." [Doc. 53, Counterclaim, ¶ 36.] Through discovery, SVO has asserted such fees were those that were billed to SVO directly by panel counsel in connection with SVO's prosecution of affirmative claims in the Underlying Action, which SVO purports to have included defense time. (Simantob Dec., ¶ 5, Ex. H, SVO's Interrogatory Responses, EX. H-13.)

**2. Absent a Showing of a Breach of Contract, the Bad Faith Claim Fails.**

Claims for breach of the implied covenant of good faith and fair dealing requires SVO to plead "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). As SVO cannot maintain the breach of contract claim, it also cannot maintain the bad faith claim. *Waller*, 11 Cal. 4th at 36 ("It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.") (emphasis in original); *Love*, 221 Cal. App. 3d at 1153 ("[A] bad faith claim cannot be maintained unless policy benefits are due"); *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1034 (9th Cir. 2008) ("California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing.").

Even if a continuing duty to defend existed under the Policy after dismissal of the defamation claim in the Underlying Action, "[i]t is now settled law in California that an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Assn. v. Associated Inter. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001); *see also*, *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000); *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007); *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1470 (2011); *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 286 (2005) ("[W]hen there is a *genuine issue* as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of the dispute.") (emphasis in original). "[A]n honest mistake, bad judgment or negligence" is not sufficient to establish tort liability as bad faith requires "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Chateau Chamberay Homeowners Assn.*, 90 Cal. App. 4th at 346.

Thus, even if Navigators somehow breached the contract, which it did not, SVO cannot establish that Navigators breached the implied covenant. To the contrary, Navigators went above and beyond its obligations; it responded to SVO's challenge of the coverage position by agreeing to defend the Underlying Action through trial subject to the continued reservation of rights.

**3. Navigators' Retention of Panel Counsel Does Not Create a Conflict to Establish an Unfair Competition Claim.**

For the same reasons, SVO cannot prevail on its unfair competition law ("UCL") claim under Business & Professions Code section 17200.[4] "In the insurance context, allegations that are essential to plead a claim for violation of the UCL are: (1) plaintiff's status as an insured or intended beneficiary of the insurance policy, (2) the existence of the policy, (3) the insurer's conduct and that such conduct was an unfair, unlawful or fraudulent business practice in violation of Bus. & Prof. Code § 17200, (4) plaintiff has no adequate remedy at law, (5) a request for injunctive relief and or restitution (monetary damages are not recoverable under the UCL), and (6) a request for attorney's fees." *Oxnard Manor LP v. Hallmark Spec. Ins. Co.*, 709 F. Supp. 3d 971, 990-991 (C.D. Cal. Dec. 21, 2023), citing *Bentley v. United of Omaha Life Ins. Co.*, 2016 U.S. Dist. LEXIS 195183 (C.D. Cal. June 22, 2016). SVO's theory for the UCL claim is that defense counsel had a conflict in the representation because of "an existing financial and legal relationship with Navigators" through its role as panel counsel. [Doc. 53, Counterclaim, ¶ 47.] SVO's position challenges the entire liability insurance industry, through which it is common practice for an insurer to have a panel of law firms available to handle an insured's defense.

The fact that the panel counsel Navigators retained for defense of the Underlying Action had a prior existing relationship with Navigators does not create a conflict let alone lead to tort liability for Navigators' assignment of the firm. As noted, the duty to defend only obligates an insurer to "employ competent counsel to represent the assured." *Merritt*, 34 Cal. App. 3d at 882; *see also*, *Assurance Co. of Am.*, 32 Cal. App. 4th at 84. Navigators complied with this requirement through the appointment of seasoned panel counsel to defend the Underlying Action, which SVO agreed to.

[4] While SVO's Counterclaim expresses an intent to pursue an alleged violation of section 17500 [Doc. 53, Counterclaim, ¶ 45], there is no authority for the proposition that the statute applies to an insurance case, which is neither about property nor a service.

SVO's allegation is especially speculative since it is undisputed that **SVO separately retained the same firm** to represent SVO in connection with its affirmative claims through trial. (Muth Dec., ¶ 11; Simantob Dec., ¶ 5, Ex. H, SVO's Interrogatory Responses, EX. H-13.) As a matter of law, SVO cannot establish that Navigators' conduct through the use of panel counsel was an unfair, unlawful, or fraudulent business practice to establish a violation of the UCL.

Separately, the UCL claim fails as SVO has an adequate remedy at law through its other causes of action, precluding it from seeking equitable relief under the UCL statute. *Oxnard Manor LP*, 709 F. Supp. 3d 971, 991 (C.D. Cal. Dec. 2023) (holding that, because the UCL claims were duplicative of the breach of contract claim, the plaintiff had a separate adequate remedy at law and awarding summary judgment on the UCL claim).

**4. SVO Cannot Make the Requisite Showing to Obtain Punitive Damages.**

SVO cannot establish liability for any of its causes of action, let alone for the heightened standard to establish a claim for punitive damages. Such a claim requires SVO to prove by clear and convincing evidence that Navigators was guilty of malice, fraud, or oppression. Cal. Civ. Code § 3294. In the insurance context, even evidence of bad faith without more is insufficient to support a claim for punitive damages. *Stewart v. Truck Ins. Exch.*, 17 Cal. App. 4th 468, 483 (1993), quoting *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992) ("Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice ... to justify an award of punitive damages. … In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by *clear and convincing evidence* that the insurer has acted maliciously") (emphasis in original). The evidence needed to prove a claim for punitive damages must not merely be consistent with the existence of oppression, fraud, or malice; it must be inconsistent with any other explanation. *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288, n.14 (1994) (citation omitted). Here, the evidence shows that Navigators defended the Underlying Action from tender through trial. There is literally nothing more SVO could have asked for in Navigators' handling of the claim.

For all the reasons discussed herein, SVO's Counterclaim is meritless, principally because Navigators and Hallmark collectively funded SVO's entire defense of the Underlying Action from

tender through resolution, with Navigators incurring approximately $5.5 million in SVO's defense. (Muth Dec., ¶ 13.) Indeed, not only did Navigators continue to defend SVO after dismissal of the defamation claim subject to the right of reimbursement, but the panel counsel Navigators retained for SVO's defense successfully pursued claims against the Claimant, resulting in a $6 million judgment in SVO's favor in culmination of the Underlying Action. [Doc. 65, SVO's Motion to Continue Trial, 3:25-27.] These are hardly the kind of facts that support a breach of contract claim let alone tort liability. To find liability on Navigators' part in this case would fly in the face of well settled case law about how to handle defense of insureds in mixed actions. Navigators requests the Court grant it summary judgment on SVO's Counterclaim.

## IV. CONCLUSION

For the foregoing reasons, Navigators is entitled to a declaration that all defense expenses incurred from the dismissal of the defamation claim are subject to reimbursement as sought through the first cause of action in the First Amended Complaint. Navigators is also entitled to summary judgment on SVO's Counterclaim as SVO cannot succeed on any of its claims.

Dated: December 1, 2025

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: */s/ Shannon L. Santos*
David Simantob
Shannon L. Santos
*Attorneys for Plaintiff/Counter-Defendant Navigators Specialty Insurance Company*