Shawn Shaffie (SBN 262002)
shaffie@parkershaffiellp.com
Bruce T. Smyth (SBN 89171)
smyth@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 W. 6th Street, Suite 500
Los Angeles, California 90017
Telephone: (213) 622-4441
Facsimile: (213) 622-1444

Steven W. Murray (SBN 41493)
swm@psilaw.com
**STEVEN W. MURRAY, APC**
14930 Ventura Boulevard #205
Sherman Oaks, CA 91403
Telephone: (818) 501-2277
Facsimile: (818) 501-8441

Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Plaintiff,

v.

SVO BUILDING ONE, LLC,

Defendant.

SVO BUILDING ONE, LLC

Counterclaimant,

v.

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Counter-defendant.

Case No. 3:22-CV-07102-AMO
[Assigned to Hon. Araceli Martínez-Olguín]

**SVO BUILDING ONE, LLC'S MOTION TO EXCLUDE TESTIMONY OF NAVIGATORS SPECIALTY INSURANCE COMPANY'S EXPERT WITNESS ANDRÉ E. JARDINI; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed concurrently with Declaration of Bruce T. Smyth in Support of Motion Filed Concurrently; [Proposed] Order]*

Date: March 5, 2026
Time: 2:00 p.m.
Dept.: Courtroom 10, 19th Floor

/ / /

/ / /

## MOTION

This Court should exclude the testimony of the proffered expert named by Navigators Specialty Insurance Company (Navigators"), André Jardini, under the standard set by the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) because his testimony is unreliable. Mr. Jardini ignores the applicable standard for determining whether attorneys' fees and expenses may be reimbursed to an insurer set forth by the California Supreme Court in *Buss v. Superior Ct.*, 16 Cal. 4th 35, 39 (1997) ("*Buss*"). The standard requires that to recover reimbursement for attorneys' fees and expenses, the insurer bears the burden of establishing that each such fee or expense is solely allocable to claims which are not even potentially covered and Mr. Jardini has not done that. Instead of examining each fee or expense, he had his staff arbitrarily amalgamate them into categories and then he made his own arbitrary determinations as to covered and uncovered claims, including which should predominate.

Mr. Jardini's arbitrary and unreliable testimony does not satisfy the requirements of *Daubert* or Federal Rule of Evidence 702 and should be excluded.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. LEGAL STANDARD

The district court must act as a "gatekeeper" and closely examine proffered expert testimony under the standards set by the Federal Rules of Evidence and *Daubert*. *See* FRE 702. The trial court "must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014) (quoting *Daubert*, at 597). Testimony rests on a "reliable foundation" if it is rooted "in the knowledge and experience of the relevant discipline." *Id.* at 1044. In turn, testimony is "relevant" if the knowledge underlying it has a "valid connection to the pertinent inquiry." *Id.* The Ninth Circuit recognizes the inquiry under *Daubert* as the "reliability" and "fit" test. *See Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017). Expert testimony is admissible, therefore, "only if it is both relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Finally, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the

expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that the expert may not unjustifiably extrapolate from an accepted premise to an unfounded conclusion, and the district court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered.") The *Daubert* factors on reliability are exemplary and not exhaustive. *See Kumho Tire Co*, 526 U.S at 150. Applicability of the *Daubert* reliability factors "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* The district court may decide not to examine the factors that are not "reasonable measures of reliability in a particular case." *Id.* at 153. Thus, this Court is endowed with "broad latitude" in "deciding *how* to test an expert's reliability" and "*whether or not* [the] expert's relevant testimony is reliable." *Id.* at 152.

## II. **<u>ARGUMENT</u>**

As detailed in SVO's Motion for Summary Judgment and supporting Memorandum and Declaration filed concurrently herewith, an inquiry at the heart of this case is Navigators' noncompliance with the standard for reimbursement of attorneys' fees and expenses forth set in *Buss*, 16 Cal. 4th at 57.

As an initial matter, to arrive at the opinion that Navigators is owed reimbursement for a stunning 97% of the fees and costs incurred before March 24, 2021, Mr. Jardini relies on an unsound methodology of *creating* line items of services i.e., outlines using a method he calls "batching" performed by his staff, rather than listing the time entries verbatim as they had been submitted on defense invoices. Mr. Jardini further believes that a line-by-line analysis is "not helpful" and that doing so "just [multiplies] the work for no reason." *See* Declaration of Bruce T. Smyth ("Smyth Decl.") ¶ 3, Ex. 1; Deposition of André Jardini ("Jardini Dep.") at 58:18–60:5.Nor does Mr. Jardini check his staff's work. *See Id.* at 60:6–61:1. In fact, out of the total 173.70 hours billed by Mr. Jardini's firm, only 23.60 hours was spent by Mr. Jardini himself, amounting to just 13.58% of the expert work billed. *See Id.* at 12:4–19; Smyth Decl. ¶ 5; Ex. 3.

After batching, Mr. Jardini reviews the outlines in order to perform a so-called *Buss* allocation. *See* Smyth Decl. ¶ 3, Ex. 1; Jardini Dep. at 58:1–17. He would then run a search for the word "defamation," and classify each matching reconstructed entry with the letter "D" to indicate

that such costs were incurred in the defense of a covered claim. *See Id.* at ¶ 4; Ex. 2; Jardini Report ("Jardini Rep.") at ¶¶ 48, 56; Exs. 5-9. Thereafter, for the line items of services that do not contain the word "defamation" but are somehow deemed "potentially covered," Mr. Jardini designates the letter "P" while offering no insight as to how and in reliance upon what applicable methodology, if any, he has determined a potential for coverage. *Id.* At his deposition, Mr. Jardini testified that his purported methodology was essentially "more likely than not," attempting to explain that he used the preponderance-of-the-evidence standard to make judgement calls on whether the reconstructed entries were to be classified as non-covered i.e., not deserving a "P" or "D", when he believed that it was more likely that the reconstructed item was unrelated to the defamation claim. *See Id.* at ¶ 3, Ex. 1; Jardini Dep. at 64:15–65:23. Mr. Jardini reasons that he has employed such a methodology primarily due to the fact that only one out of 18 causes of action assertedly involved a covered claim. *See Id.* at ¶ 4, Ex. 2; Jardini Rep. at ¶ 45. Aside from Mr. Jardini's flawed reasoning that a claim needs to be actively litigated to warrant coverage (¶ 53), or that settlement money has to be paid towards the specific claim in order to justify coverage (¶ 54), if we were to consider his own reasoning regarding one out of 18 claims (¶ 45), we would arrive at 5.5% which is 2.5% more than his proffered, fallacious allocation. Moreover, Mr. Jardini conflates "claims" with "causes of action," believing, incorrectly, that potentiality for coverage is predicated on the existence of a standalone cause of action. *See Id.* at ¶ 45. As discussed at length in SVO's Motion for Summary Judgment, case law clearly holds to the contrary.

Mr. Jardini's approach does not come close to complying with the standard under *Buss*. Reimbursement as to each item of billing or cost must be proven independently, not by "batching." In order to meet the applicable standard, Mr. Jardini should have performed the allocation on each and every actual billing entry or item of cost as it had been incurred; he should have shown that for each item, the billing/cost was allocable solely to the defense of a claim not even potentially covered. He has clearly not done so.

Mr. Jardini employs an arbitrary scheme of assigning "P" to some line items, signifying a potentiality for coverage, and not to others that are either very similar or even the same. For example, Mr. Jardini assigns the letter "P" to "[p]repare for and attend call with Arbitrator Fisher"

billed on May 6, 2020, but forgoes the same assignment to "[c]onference call with arbitrator Fisher" on May 20, 2020, despite having assigned a "P" for the very same task billed on July 8, 2020 . *See* Smyth Decl. ¶ 4, Ex. 2; Jardini Rep. ¶48, Ex. 8 at 2-3. Markedly, Mr. Jardini admitted to having made a mistake in his allocation scheme. *See Id.* at ¶ 3, Ex. 1; Jardini Dep. at 64:4–14. In arriving at his conclusions, Mr. Jardini has employed subjective impressions rather than documented, repeatable standards. He offers no explanation as to why, for example, the entry "[a]ttend conference call with opposing counsel re arbitrator ordered conference" billed on July 14, 2020 did not receive a "P" designation or why the entry "[c]onference with arbitrator Fisher re depositions and scheduling" billed on the same day did not receive the same assignment, even though the latter are substantially similar to those Mr. Jardini has already designated as potentially covered in his expert report. *See* Smyth Decl. ¶ 4, Ex. 2; Jardini Rep. ¶48, Ex. 8 at 3. Additionally, Mr. Jardini's calculations are riddled with numerical inconsistencies. His report presents discrepancies between numbers listed in Paragraph 42 and those shown in his schedules, a point he acknowledges but cannot systematically reconcile. *See* Smyth Decl. ¶ 3, Ex. 1; Jardini Dep. at 50:22–51:18. While he claims that Navigators paid approximately $2,497,187.09 for fees and costs incurred before March 24, 2021, the addition of the numbers listed on Exhibit 10 reveals $1,981,947.57. More alarmingly, the total amount of fees and costs incurred are also calculated at $4,396,824.12 not $5,495,644.59 as he lists in Paragraph 42. *See* Smyth Decl. ¶ 4, Ex. 2; Jardini Rep. at ¶ 42, ¶ 52; Ex. 10.

Furthermore, Mr. Jardini duly acknowledges that the Fourth Amended Complaint was filed on July 11, 2019, giving rise to SVO's tender of defense to Navigators on July 29, 2019 and Navigators' acceptance thereof. *Id.* at ¶¶ 22-25. Nevertheless, in his reimbursement analysis, Mr. Jardini incomprehensibly includes billing entries and statements pre-dating July 11, 2019, <u>which Navigators did not even pay in the first place</u> to be able to claim reimbursement now. *Id.* at ¶ 48; Exs. 5-7; ¶ 52 Ex. 10. Considering just Exhibit 7 attached to his report, Mr. Jardini designates the letter "P" to two entries billed on November 12, 2018 and November 20, 2018 respectively. That is, he makes the inexplicable determination that these entries, pre-dating the filing of the Fourth Amended Complaint and SVO's subsequent tender of defense to Navigators, <u>were potentially</u>

covered under the Subject Policy. Mr. Jardini duly admitted to this inexcusable error, calling it "bank error in [SVO's] favor." *See* Smyth Decl. ¶ 3, Ex. 1; Jardini Dep. at 76:2–78:8. Further, while Mr. Jardini, erroneously, attempts to show compliance with *Buss* by way of presenting an allocation scheme on the attorneys' fees billed, his testimony lacks any attempt to do a *Buss* allocation for costs incurred. Instead, he admits that he did not perform a separate allocation on costs and that, quite simplistically, the same allocation of 97% to non-covered claims should equally apply to costs. *See Id.*; Jardini Dep. 116:25–117:6.

Finally, Jardini's opinion that Navigators had no duty to after March 24, 2021 (*see e.g.,* Jardini Rep. ¶¶ 53, 63), fails the "fit" test and must, therefore, be excluded because an expert cannot give opinions as to legal conclusions i.e., opinions on an ultimate legal issue. *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).

This Court should exclude Jardini's testimony and expert report because his allocation of fees and expenses falls grievously short of the standard dictated in *Buss*, his methodology is highly prone to error, the application is inconsistent throughout, and there exists a large gap between the underlying data in the case i.e., the *actual* billing entries and the opinion Mr. Jardini attempts to offer regarding potential for coverage. Mr. Jardini's report is replete with arbitrary determinations that do not pass legal muster under *Daubert* and *Buss* and his proffered testimony is plainly unreliable.

## III. CONCLUSION

For the foregoing reasons, SVO respectfully requests that this Court exclude the testimony Navigators' retained expert.

DATED: December 1, 2025

**PARKER SHAFFIE LLP**

By: [signature]

Bruce T. Smyth
Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 800 W. 6th Street, Suite 500, Los Angeles, CA 90017.

On December 1, 2025, I served true copies of the following document(s) described as **SVO BUILDING ONE, LLC'S MOTION TO EXCLUDE TESTIMONY OF JARDINI** on the interested parties in this action as follows:

David Simantob, Esq.
Shannon L. Santos, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
555 South Flower Street, Suite 2900
Los Angeles, CA 90071

Attorneys for Plaintiff **NAVIGATORS SPECIALTY INSURANCE COMPANY**
Telephone: (213) 443-5100
Facsimile: (213) 443-5101
E-mail: David.Simantob@wilsonelser.com
Shannon.Santos@wilsonelder.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 1, 2025, at Los Angeles, California.

Ben Barragan

**MOTION**

This Court should exclude the testimony of the proffered expert named by Navigators Specialty Insurance Company (Navigators"), André Jardini, under the standard set by the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) because his testimony is unreliable. Mr. Jardini ignores the applicable standard for determining whether attorneys' fees and expenses may be reimbursed to an insurer set forth by the California Supreme Court in *Buss v. Superior Ct.*, 16 Cal. 4th 35, 39 (1997) ("*Buss*"). The standard requires that to recover reimbursement for attorneys' fees and expenses, the insurer bears the burden of establishing that each such fee or expense is solely allocable to claims which are not even potentially covered and Mr. Jardini has not done that. Instead of examining each fee or expense, he had his staff arbitrarily amalgamate them into categories and then he made his own arbitrary determinations as to covered and uncovered claims, including which should predominate.

Mr. Jardini's arbitrary and unreliable testimony does not satisfy the requirements of *Daubert* or Federal Rule of Evidence 702 and should be excluded.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. LEGAL STANDARD**

The district court must act as a "gatekeeper" and closely examine proffered expert testimony under the standards set by the Federal Rules of Evidence and *Daubert*. *See* FRE 702. The trial court "must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *City of Pomona v. SQM N. Am. Corp*., 750 F.3d 1036, 1043–44 (9th Cir. 2014) (quoting *Daubert*, at 597). Testimony rests on a "reliable foundation" if it is rooted "in the knowledge and experience of the relevant discipline." *Id*. at 1044. In turn, testimony is "relevant" if the knowledge underlying it has a "valid connection to the pertinent inquiry." *Id*. The Ninth Circuit recognizes the inquiry under *Daubert* as the "reliability" and "fit" test. *See Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017). Expert testimony is admissible, therefore, "only if it is both relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Finally, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the

expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that the expert may not unjustifiably extrapolate from an accepted premise to an unfounded conclusion, and the district court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered.") The *Daubert* factors on reliability are exemplary and not exhaustive. *See Kumho Tire Co*, 526 U.S at 150. Applicability of the *Daubert* reliability factors "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* The district court may decide not to examine the factors that are not "reasonable measures of reliability in a particular case." *Id.* at 153. Thus, this Court is endowed with "broad latitude" in "deciding *how* to test an expert's reliability" and "*whether or not* [the] expert's relevant testimony is reliable." *Id.* at 152.

## II. ARGUMENT

As detailed in SVO's Motion for Summary Judgment and supporting Memorandum and Declaration filed concurrently herewith, an inquiry at the heart of this case is Navigators' noncompliance with the standard for reimbursement of attorneys' fees and expenses forth set in *Buss*, 16 Cal. 4th at 57.

As an initial matter, to arrive at the opinion that Navigators is owed reimbursement for a stunning 97% of the fees and costs incurred before March 24, 2021, Mr. Jardini relies on an unsound methodology of *creating* line items of services i.e., outlines using a method he calls "batching" performed by his staff, rather than listing the time entries verbatim as they had been submitted on defense invoices. Mr. Jardini further believes that a line-by-line analysis is "not helpful" and that doing so "just [multiplies] the work for no reason." *See* Declaration of Bruce T. Smyth ("Smyth Decl.") ¶ 3, Ex. 1; Deposition of André Jardini ("Jardini Dep.") at 58:18–60:5.Nor does Mr. Jardini check his staff's work. *See Id.* at 60:6–61:1. In fact, out of the total 173.70 hours billed by Mr. Jardini's firm, only 23.60 hours was spent by Mr. Jardini himself, amounting to just 13.58% of the expert work billed. *See Id.* at 12:4–19; Smyth Decl. ¶ 5; Ex. 3.

After batching, Mr. Jardini reviews the outlines in order to perform a so-called *Buss* allocation. *See* Smyth Decl. ¶ 3, Ex. 1; Jardini Dep. at 58:1–17. He would then run a search for the word "defamation," and classify each matching reconstructed entry with the letter "D" to indicate

that such costs were incurred in the defense of a covered claim. *See Id.* at ¶ 4; Ex. 2; Jardini Report ("Jardini Rep.") at ¶¶ 48, 56; Exs. 5-9. Thereafter, for the line items of services that do not contain the word "defamation" but are somehow deemed "potentially covered," Mr. Jardini designates the letter "P" while offering no insight as to how and in reliance upon what applicable methodology, if any, he has determined a potential for coverage. *Id.* At his deposition, Mr. Jardini testified that his purported methodology was essentially "more likely than not," attempting to explain that he used the preponderance-of-the-evidence standard to make judgement calls on whether the reconstructed entries were to be classified as non-covered i.e., not deserving a "P" or "D", when he believed that it was more likely that the reconstructed item was unrelated to the defamation claim. *See Id.* at ¶ 3, Ex. 1; Jardini Dep. at 64:15–65:23. Mr. Jardini reasons that he has employed such a methodology primarily due to the fact that only one out of 18 causes of action assertedly involved a covered claim. *See Id.* at ¶ 4, Ex. 2; Jardini Rep. at ¶ 45. Aside from Mr. Jardini's flawed reasoning that a claim needs to be actively litigated to warrant coverage (¶ 53), or that settlement money has to be paid towards the specific claim in order to justify coverage (¶ 54), if we were to consider his own reasoning regarding one out of 18 claims (¶ 45), we would arrive at 5.5% which is 2.5% more than his proffered, fallacious allocation. Moreover, Mr. Jardini conflates "claims" with "causes of action," believing, incorrectly, that potentiality for coverage is predicated on the existence of a standalone cause of action. *See Id.* at ¶ 45. As discussed at length in SVO's Motion for Summary Judgment, case law clearly holds to the contrary.

Mr. Jardini's approach does not come close to complying with the standard under *Buss*. Reimbursement as to each item of billing or cost must be proven independently, not by "batching." In order to meet the applicable standard, Mr. Jardini should have performed the allocation on each and every actual billing entry or item of cost as it had been incurred; he should have shown that for each item, the billing/cost was allocable solely to the defense of a claim not even potentially covered. He has clearly not done so.

Mr. Jardini employs an arbitrary scheme of assigning "P" to some line items, signifying a potentiality for coverage, and not to others that are either very similar or even the same. For example, Mr. Jardini assigns the letter "P" to "[p]repare for and attend call with Arbitrator Fisher"

billed on May 6, 2020, but forgoes the same assignment to "[c]onference call with arbitrator Fisher" on May 20, 2020, despite having assigned a "P" for the very same task billed on July 8, 2020 . *See* Smyth Decl. ¶ 4, Ex. 2; Jardini Rep. ¶48, Ex. 8 at 2-3. Markedly, Mr. Jardini admitted to having made a mistake in his allocation scheme. *See Id.* at ¶ 3, Ex. 1; Jardini Dep. at 64:4–14. In arriving at his conclusions, Mr. Jardini has employed subjective impressions rather than documented, repeatable standards. He offers no explanation as to why, for example, the entry "[a]ttend conference call with opposing counsel re arbitrator ordered conference" billed on July 14, 2020 did not receive a "P" designation or why the entry "[c]onference with arbitrator Fisher re depositions and scheduling" billed on the same day did not receive the same assignment, even though the latter are substantially similar to those Mr. Jardini has already designated as potentially covered in his expert report. *See* Smyth Decl. ¶ 4, Ex. 2; Jardini Rep. ¶48, Ex. 8 at 3. Additionally, Mr. Jardini's calculations are riddled with numerical inconsistencies. His report presents discrepancies between numbers listed in Paragraph 42 and those shown in his schedules, a point he acknowledges but cannot systematically reconcile. *See* Smyth Decl. ¶ 3, Ex. 1; Jardini Dep. at 50:22–51:18. While he claims that Navigators paid approximately $2,497,187.09 for fees and costs incurred before March 24, 2021, the addition of the numbers listed on Exhibit 10 reveals $1,981,947.57. More alarmingly, the total amount of fees and costs incurred are also calculated at $4,396,824.12 not $5,495,644.59 as he lists in Paragraph 42. *See* Smyth Decl. ¶ 4, Ex. 2; Jardini Rep. at ¶ 42, ¶ 52; Ex. 10.

Furthermore, Mr. Jardini duly acknowledges that the Fourth Amended Complaint was filed on July 11, 2019, giving rise to SVO's tender of defense to Navigators on July 29, 2019 and Navigators' acceptance thereof. *Id.* at ¶¶ 22-25. Nevertheless, in his reimbursement analysis, Mr. Jardini incomprehensibly includes billing entries and statements pre-dating July 11, 2019, <u>which Navigators did not even pay in the first place</u> to be able to claim reimbursement now. *Id.* at ¶ 48; Exs. 5-7; ¶ 52 Ex. 10. Considering just Exhibit 7 attached to his report, Mr. Jardini designates the letter "P" to two entries billed on November 12, 2018 and November 20, 2018 respectively. That is, he makes the inexplicable determination that these entries, pre-dating the filing of the Fourth Amended Complaint and SVO's subsequent tender of defense to Navigators, <u>were potentially</u>

covered under the Subject Policy. Mr. Jardini duly admitted to this inexcusable error, calling it "bank error in [SVO's] favor." *See* Smyth Decl. ¶ 3, Ex. 1; Jardini Dep. at 76:2–78:8. Further, while Mr. Jardini, erroneously, attempts to show compliance with *Buss* by way of presenting an allocation scheme on the attorneys' fees billed, his testimony lacks any attempt to do a *Buss* allocation for costs incurred. Instead, he admits that he did not perform a separate allocation on costs and that, quite simplistically, the same allocation of 97% to non-covered claims should equally apply to costs. *See Id.*; Jardini Dep. 116:25–117:6.

Finally, Jardini's opinion that Navigators had no duty to after March 24, 2021 (*see e.g.,* Jardini Rep. ¶¶ 53, 63), fails the "fit" test and must, therefore, be excluded because an expert cannot give opinions as to legal conclusions i.e., opinions on an ultimate legal issue. *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).

This Court should exclude Jardini's testimony and expert report because his allocation of fees and expenses falls grievously short of the standard dictated in *Buss*, his methodology is highly prone to error, the application is inconsistent throughout, and there exists a large gap between the underlying data in the case i.e., the *actual* billing entries and the opinion Mr. Jardini attempts to offer regarding potential for coverage. Mr. Jardini's report is replete with arbitrary determinations that do not pass legal muster under *Daubert* and *Buss* and his proffered testimony is plainly unreliable.

## III. CONCLUSION

For the foregoing reasons, SVO respectfully requests that this Court exclude the testimony Navigators' retained expert.

DATED: December 1, 2025

**PARKER SHAFFIE LLP**

By: *[signature]*

Bruce T. Smyth
Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 800 W. 6th Street, Suite 500, Los Angeles, CA 90017.

On December 1, 2025, I served true copies of the following document(s) described as **SVO BUILDING ONE, LLC'S MOTION TO EXCLUDE TESTIMONY OF JARDINI** on the interested parties in this action as follows:

| | |
|---|---|
| David Simantob, Esq.<br>Shannon L. Santos, Esq.<br>Wilson Elser Moskowitz Edelman & Dicker LLP<br>555 South Flower Street, Suite 2900<br>Los Angeles, CA 90071 | Attorneys for Plaintiff **NAVIGATORS SPECIALTY INSURANCE COMPANY**<br>Telephone: (213) 443-5100<br>Facsimile: (213) 443-5101<br>E-mail: David.Simantob@wilsonelser.com<br>Shannon.Santos@wilsonelder.com |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 1, 2025, at Los Angeles, California.

Ben Barragan