Shawn Shaffie (SBN 262002)
shaffie@parkershaffiellp.com
Bruce T. Smyth (SBN 89171)
smyth@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 W. 6th Street, Suite 500
Los Angeles, California 90017
Telephone: (213) 622-4441
Facsimile: (213) 622-1444

Steven W. Murray (SBN 41493)
swm@psilaw.com
**STEVEN W. MURRAY, APC**
14930 Ventura Boulevard #205
Sherman Oaks, CA 91403
Telephone: (818) 501-2277
Facsimile: (818) 501-8441

Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Plaintiff,

v.

SVO BUILDING ONE, LLC,

Defendant.

SVO BUILDING ONE, LLC

Counterclaimant,

v.

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Counter-defendant.

Case No. 3:22-CV-07102-AMO
[Assigned to Hon. Aracelí Martínez-Olguín]

**SVO BUILDING ONE, LLC'S OPPOSITION TO NAVIGATORS SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Date: March 5, 2026
Time: 2:00 p.m.
Dept.: Courtroom 10, 19th Floor

/ / /

/ / /

## TABLE OF CONTENTS

**Page**


MEMORANDUM OF POINTS AND AUTHORITIES .....1

I. INTRODUCTION .....1

II. FACTUAL AND PROCEDURAL BACKGROUND .....2

III. NAVIGATORS' BRIEF APPLIES THE WRONG STANDARD FOR THE REIMBURSEMENT OF FEES AND COSTS. .....4

IV. NAVIGATORS' CONTENTION THAT THE DISMISSAL WITHOUT PREJUDICE OF THE DEFAMATION CAUSE OF ACTION ELIMINATED THE DUTY TO DEFEND IS REFUTED BY THE FACTS. .....5

  A. Navigators Had A Continued Duty To Defend Because Of Allegations Of Disparagement Remaining In The Complaint. .....6

  B. The Exclusions Navigators Cites Provide No Grounds For Summary Judgment. .....9

V. NAVIGATORS' CLAIM FOR REIMBURSEMENT IS BARRED BY ITS BAD FAITH. .....11

VI. NAVIGATORS HAS FAILED TO MEET ITS BURDEN TO OBTAIN REIMBURSEMENT FOR FEES AND EXPENSES INCURRED AFTER THE DISMISSAL WITHOUT PREJUDICE OF THE DEFAMATION CAUSE OF ACTION. .....12

  A. Navigators Had A Continuing Duty To Defend Because the Defamation Cause Of Action Was Dismissed Without Prejudice. .....12

  B. None Of The Cases Cited By Navigators Establish That Dismissal Without Prejudice Eliminates The Duty To Defend .....13

  C. Navigators' Contention That SVO Did Not Retender The Potentially Covered Claim Is Irrelevant. .....15

  D. The Only Case On Point Establishes That Navigators Had A Continued Duty To Defend. .....16

  E. There Is No Issue Of "Manufactured" Coverage. .....16

  F. Navigators' Contention That It Had No Duty To Defend The Disparagement Allegations Because There Were No Allegations Of Damages Is Unfounded. .....17

VII. NAVIGATORS' MOTION MUST BE DENIED BECAUSE SVO'S AFFIRMATIVE DEFENSES ESTABLISH TRIABLE ISSUES .....18

VIII. NAVIGATORS HAS NOT PROVEN THE ABSENCE OF TRIABLE ISSUES OF FACT ON ITS CLAIM OF DAMAGES .....19

IX. NAVIGATORS' MOTION FOR SUMMARY JUDGMENT ON SVO'S AFFIRMATIVE CLAIMS MUST BE DENIED. ....19

A. Navigators Has Failed To Establish The Absence Of Triable Issues Of Fact On Its Breaches Of The Insurance Contract ....20

B. Navigators Breached the Implied Covenant Of Good Faith and Fair Dealing ....24

C. Triable Issues Remain On Business & Professions Code Section 17200 Claims ....24

D. Triable Issues Of Fact Remain On Punitive Damages ....25

X. CONCLUSION ....25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*American Master Lease LLC v. Idanta Partners, Ltd.*,
225 Cal. App. 4th 1451 (2014) ..... 19

*Amex Assur. Co. v. Allstate Ins. Co.*,
112 Cal. App. 4th 1246 (2003) ..... 17

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*
100 Cal.App.4th 1017 (2002) ..... 9

*Barnett v. Fireman's Fund Ins. Co.*
90 Cal.App.4th 500 (2001) ..... 8

*Borg v. Transamerica Corp.*
47 Cal. App. 4th 448 (1996) ..... 8

*Buss v. Superior Court*,
16 Cal. 4th 35 (1997) ..... 1

*C. H. Kershaw v. Maryland Cas. Co.*,
172 Cal.App.2d 248 (1958) ..... 22

*CNA Cas. of Cal. v. Seaboard Sur. Co.*
176 Cal.App.3d 598 (1986) ..... 8

*Egan v. Mutual of Omaha Ins. Co.*,
24 Cal.3d 809 (1979) ..... 25

*Federal Deposit Ins. Co. v. Dintino*,
167 Cal. App. 4th 333 (2008) ..... 19

*Gray v. Zurich Ins. Co.*,
65 Cal. 2d 263 (1966) ..... 6, 10

*Gunderson v. Fire Ins. Exch.*,
37 Cal. App. 4th 1106 (1995) ..... 17

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*
59 Cal. 4th 277 (2014) ..... 9, 13

*Hogan v. Midland Nat'l Ins. Co.*
3 Cal.3d 553 (1970) ..... 6

*Horace Mann*
4 Cal. 4th at 1081 ..... 8

*Hurley Construction Co. v. State Farm Fire & Cas. Co.*,
10 Cal. App. 4th 533 (1992) ..... 17

*Jaffe v. Cranford Ins. Co.*,
168 Cal. App. 3d 930 (1985) .......... 18

*Kardly v. State Farm Mut. Auto. Ins. Co.*,
207 Cal. App. 3d 479 (1989) .......... 12

*Kazi v. State Farm Fire & Cas. Co.*,
24 Cal. 4th 871 (2001) .......... 5

*Mai v. HKT Cal, Inc.*,
66 Cal. App. 5th 504 (2021) .......... 22

*Merritt v. Reserve Ins. Co.*,
34 Cal. App. 858 (1973) .......... 21

*Montrose Chem. Corp. v. Superior Ct.*,
6 Cal. 4th 287 (1993) .......... 5

*Mutual Ins. Co. v. Mendez*
213 Cal.App.3d 41 (1989) .......... 9

*Reg'l Steel Corp. v. Liberty Surplus Ins. Corp.*
226 Cal. App. 4th 1377 (2014) .......... 8

*Royal Globe Ins. Co. v. Whitaker*
181 Cal.App.3d 532 (1986) .......... 9

*Safine v. Sinnott*,
15 Cal. App. 4th 614 (1993) .......... 19, 21

*San Miguel Comm. Assn. v. State Farm Gen. Ins. Co.*,
220 Cal. App. 4th 798 (2013) .......... 18

*Scottsdale Ins. Co. v. MV Transp.*
36 Cal. 4th 643, (2005) .......... 12

*Thee Sombrero, Inc. v. Scottsdale Ins. Co.*
28 Cal. App. 5th 729 (2018) .......... 8

*Travelers Cas. & Sur. Co. v. Employers Ins. Of Wausau*,
130 Cal. App. 4th 99, 110 (2005) .......... 15

*Travelers Ins. Co. v. Lesher*,
187 Cal. App. 3d 169 (1986) .......... 21

*Vann v. Travelers Companies*
39 Cal.App.4th 1610 (1995) .......... 6

*Waller v. Truck Ins. Exch.*
11 Cal.4th 1 (1995) .......... 9

**FEDERAL CASES**

*Ambrosetti v. Oregon Catholic Press*,
151 F.4th 1211 (2025) ........ 20

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (2018) ........ 20

*Century Surety Co. v. Robin Dingh Educational Services, Inc.*,
208 WL 11336770 (C.D. Cal. 2008) ........ 19, 21

*Crab Boat Owners Assn. v. Hartford Ins. Co. of the Midwest*,
2004 WL 2600455 (N.D. Cal. Nov. 15, 2004) ........ 16

*Daschke v. Hartenstein*,
420 F.Supp.3d 919 (2019) ........ 24

*Dobrin v. Allstate Ins. Co.*
897 F.Supp. 442 (C.D.Cal.1995) ........ 8

*Electronics for Imaging Inc. v. Atlantic Mut. Ins. Co.*,
2007 WL 1430032 (N.D.Cal. May 14, 2007) ........ 11

*First One Lending Corp. v. Hartford Cas. Ins. Co.*,
664 Fed. Appx. 619 (9th Cir. 2016) ........ 18

*Gers, Inc. v. Atlantic Mut. Ins. Co*.,
2005 WL 8166038 (S.D. Cal. Mar. 29, 2005) ........ 13

*Gers, Inc. v. Atlantic Mut. Ins. Co*.,
2005 WL 8166040 (S.D. Cal. Oct. 19, 2005) ........ 13

*Ghiglione v. Discover Prop. & Cas. Co.*
2007 WL 963250 (N.D. Cal. Mar. 29, 2007) ........ 22

*Great Am. E & S Ins. Co. v. Theos Ed. Sys., Inc.*,
357 F. Supp. 3d 953, 968 (N.D. 2019) ........ 15

*Haas v. Travelex Ins. Servs. Inc.*,
555 F. Supp. 3d 970 (C.D. Cal. 2021) ........ 24

*Hanover Ins. Co. v. Paul M. Zagaris, Inc*.
714 Fed. App'x 735 (9th Cir. 2018) ........ 8

*Hudson Ins. Co. v. Colony Ins. Co*
624 F3d 1264 (9th Cir. 2010) ........ 13, 17

*KM Strategic Management, LLC v. American Cas. Co. of Reading*,
2016 W.L. 4059187 at *4 (C.D. Cal. July 25, 2016) ........ 11

*Lemus v. Rite Aid Corp.*,
613 F. Supp. 3d 1269 (C.D. Cal. 2022) ........ 24

*Lumbermens Mut. Cas. Co. v. Corning, Inc.*,
2008 WL 11337841 (C.D. Cal. 2008) ........ 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 20

*Millenium Lab., Inc. v. Darwin Select Ins. Co.*, 676 Fed. Appx. 734, 737 (9th Cir. Jan. 27, 2017) .......... 14, 15

*Oxnard Manor LP v. Hallmark Specialty Ins. Co.*, 709 F. Supp. 3d 971 (C.D. Cal. 2023) .......... 24

*Pacific Coast Surgical Ctr, LP .v. Scottsdale Ins. Co.*, 2019 WL 4390565 (C.D. Cal. June 25, 2019) .......... 13

*Pension Trust Fund for Operating Engineers v. Federal Ins. Co.* 307 F.3d 944 (9th Cir. 2002) .......... 8

*Premier Pools Mgmt. Corp. v. Colony Ins. Co.*, 815 Fed. Appx. 168 (9th Cir. July 20, 2020) .......... 16

*State Farm Fire & Cas. Co. v. Plutsky*, *848 F. 2d 199, 1998 WL 53926 (9th Cir. May 23, 1988)* .......... 13

*Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F. Supp. 2d 803, 813 (N.D. Cal. 2007) .......... 14

*The Upper Deck Co. , LLC v. Federal Ins. Co.*, 358 F. 3d 608 (9th Cir. 2004) .......... 15

*Travelers Indem. Co. of Conn. v. Walking U Ranch, LLC*, 2022 WL 762303 (March 10, 2022) .......... 14

*Travelers Prop. Cas. Co. of Am. v. Kaufman & Broad Monterey Bay, Inc.*, 2015 U.S. Dist. LEXIS 16952, *9-10 (N.D. Cal. Feb. 11, 2015) .......... 21

*Westfield Ins. Co. v. TWT, Inc.* 723 F. Supp. 492 (N.D. Cal. 1989) .......... 12

*Westfield Ins. Co. v. TWT, Inc.*, 723 F. Supp. 492 (N.D. Cal. 1989) .......... 16

*Zox LLC v. West Am. Ins. Co.*, 2024 WL 512561 (9th Cir. Feb. 9, 2024) .......... 18

**STATUTES**

California Business & Professions Code §§17200 .......... 20

**RULES**

Business & Professions Code sections 17200 .......... 24

FRCP 56(c) .......... 20

FRCP Rule 56(a) .......... 20

**TREATISES**

*Cal. Practice Guide: Insurance Litigation* (Rutter Group 2025) at ¶ 7:1066.2 .......... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The motion of Navigators Specialty Insurance Company ("Navigators") for summary judgment on its claim for reimbursement of defense costs incurred after the dismissal without prejudice of the defamation cause of action in the underlying action and on the counterclaim of SVO Building One, LLP ("SVO") should be denied. Navigators is nowhere near establishing the absence of a triable issue of fact required for such a motion.

Under *Buss v. Superior Court*, 16 Cal. 4th 35, 53 (1997) ("*Buss*"), Navigators bears the burden of establishing that the fees and expenses for which it seeks reimbursement from its insured are solely allocable to causes of action which are not even potentially covered under its policy. Navigators has not met and cannot meet that burden. First, even after the dismissal of the defamation cause of action, there still were claims in the complaint for disparagement and other allegations for which there was a potential of coverage requiring Navigators to defend SVO. Indeed, there are numerous billing entries for work on the defense of disparagement claims *after* the dismissal without prejudice of the cause of action for defamation. Second, the duty to defend under California law continues until the action is finally resolved and the defamation cause of action dismissed without prejudice could have been reasserted. Defense counsel were required to continue to defend against that possibility as well as the allegations of disparagement.

Third, there are numerous affirmative defenses and claims against Navigators which create multiple issues of fact and law barring summary judgment. Contrary to Navigators' allegations, the determination of whether it is entitled to reimbursement is not based solely on the contractual provisions of the policy, but under *Buss* is based on the equitable theory of restitution. It is a defense to restitution that there was little or no benefit conferred by Navigators on SVO. The legal malpractice of the defense counsel resulted in the loss of a multi-million dollar counterclaim in the lawsuit. Navigators also is barred from seeking reimbursement by its own bad faith in withdrawing its defense of SVO. Both Navigators and Tyson negligently failed to timely tender the complaint to another insurer, Hallmark Insurance Company ("Hallmark"), which ultimately agreed to provide a defense. Had it been timely notified, Navigators' claim against SVO would have been reduced by

$500,000. Knowing that it would be seeking reimbursement of the fees and expenses from SVO, Navigators allowed the defense counsel, Tyson, to grossly overbill the case.

Fourth, Navigators' motion must be denied because it has not proved the requisite element of damages. The conclusory allegation without supporting documentation or any admissible evidence that Navigators spent over $2.4 million in fees and expenses after the dismissal of the defamation cause of action without prejudice does not constitute admissible evidence and is the subject of a concurrently filed objection and motion to strike.

Navigators cannot establish the absence of triable issues of fact on its motion for summary judgment on SVO's counterclaims either. Navigators breached its duty to defend SVO when it denied coverage and withdrew its defense in breach of the insurance contract and the implied covenant of good faith and fair dealing. This required SVO to enter into a contract for continued defense by Tyson and pay it a $325,000 retainer. Navigators' apparent contention that it did not really mean it when it said it was denying coverage and pulling the defense is no defense to its bad faith actions. Navigators further utilized its control over Tyson, counsel who it also retained as its insurance coverage counsel, to allow it to improperly allocate several hundreds of thousands of dollars of costs of defense to affirmative claims on SVO's counterclaim against Vertiv that were paid by SVO, and not Navigators.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

In 2017, SVO entered into an agreement with Liebert Corporation, a large equipment manufacturing company, to design and construct a data center in Sacramento, California. In 2018, Liebert brought an action against SVO alleging breach of contract, *Liebert Corporation v. SVO Building One, LLC*, AAA Case No. 01-18-0003-1318 (the "Underlying Action"). Liebert Corporation shortly thereafter changed its name to Vertiv Corporation and is referred to herein as the "Company." *See* accompanying Declaration of Ulrich Pelz ("Pelz Decl."). On July 11, 2019, the Company filed a Fourth Amended Complaint with eighteen causes of action, including one for defamation. A copy of the Fourth Amended Complaint is attached to Navigators' moving papers. On July 29, 2019, SVO tendered the Fourth Amended Complaint to Navigators. On October 28, 2019, coverage counsel for Navigators wrote to SVO agreeing to provide a defense to the Fourth


PS PARKER SHAFFIE LLP

Amended Complaint pursuant to an insurance policy effective June 12, 2017 through August 12, 2019 (the "Navigators Policy"), conditioned on a reservation of rights to deny coverage. Pelz Decl. Exhibit 1. The Navigators Policy is attached to Navigators' moving papers. Navigators paid some of the fees and expenses of the firms defending SVO, Murphy Austin and the Law Offices of Sean DeBruine, from the date of tender until panel counsel was appointed, Gordon Rees Scully & Mansukhani ("GRSM"). After GRSM reported that it had a conflict, Navigators appointed Tyson & Mendes, LLP ("Tyson") to replace it and SVO entered into an agreement with it to prosecute SVO's affirmative claims against the Company. Pelz Decl. Exhibit 2.

On March 24, 2021, Vertiv dismissed a number of causes of action without prejudice, including the defamation cause of action. Pelz Decl. Ex. 3. On March 31, 2021, Navigators' claims representative, Angel Muth, wrote to SVO advising it was denying all coverage, would be withdrawing its defense of SVO as of April 15, 2021, and would no longer pay for any legal fees or costs incurred on behalf of SVO in the Underlying Action after that date. Navigators asserted that the dismissal of the defamation cause of action eliminated the potential of coverage under its Policy. Declaration of Steven Murray ("Murray Decl.") Ex. 1. Murray was subsequently retained as coverage counsel for SVO. On April 19, 2021, he tendered the Fourth Amended Complaint to to Hallmark. Murray Decl. Ex. 2. Neither Navigators, nor its panel counsel Tyson, had thought to tender the complaint to Hallmark, which had a similar commercial general liability policy to that of Navigators and covered the period prior to the Navigators' Policy.

Faced with the immediate loss of its defense, on or around April 28, 2021, SVO negotiated and signed a retention agreement to pay the current defense counsel, Tyson, to continue to defend it and paid the $325,000 retainer that Tyson required. See Pelz Decl. Exs. 4 and 5, respectively.

On May 3, 2021, Murray retendered SVO's defense to Navigators by letter, stating that its denial of coverage was "factually and legally unsupported." Murray Decl. Ex. 3. Murray cited allegations of "false reports" and "disparagement" in two other causes of action in the Fourth Amended Complaint:

> "causing third parties to issue false reports regarding the commissioning of equipment on the Project;" (¶55, p. 12:23-24; ¶56, p.13:5-7.)

> SVO's conduct "erodes Vertiv's reputation as a designer and builder .... " (¶57. p.13:10-16.)
>
> Communications "disparaging Vertiv's work" were made by SVO to DPR. (¶146, p. 29:13.)

Murray Decl., Ex. 3. Murray additionally cited allegations of potentially covered property damage from the deprivation of tangible property not physically injured. *Id*.

By letter dated May 13, 2021, Hallmark accepted the defense of SVO. Murray Decl. Ex. 4. On May 18, 2021, after receiving Murray's letter, Navigators' coverage counsel, David Simantob, apparently was rehired to pull back Muth's letter, writing that Navigators would "continue" providing a defense under a reservation of rights. Murray Decl., Ex. 5. By letter of the same date, Murray wrote back to Simantob stating that SVO did not accept any of the conditions or reservations in Simantob's letter. Murray Decl. Ex. 6. On January 5, 2022, the Underlying Action settled and was subsequently dismissed with prejudice in its entirety. Navigators paid nothing under that settlement. Pelz Decl.

On November 14, 2022, Navigators filed this action against SVO seeking declaratory relief under three purported causes of action. ECF 1. Hallmark, which paid half of the fees and cost of defense from May, 2021, has not sued its own insured for reimbursement of the costs of defense. After SVO's motion to dismiss the Complaint was granted in part, on February 15, 2024, Navigators filed the First Amended Complaint (ECF 43), seeking declaratory relief on two causes of action, one of which is now before this Court by its motion.

SVO filed an answer to Navigators' amended complaint and counterclaim alleging breach of contract and of the implied covenant of good faith and fair dealing as a result of Navigators' withdrawing the defense and denying coverage and refusing to pay costs of defense. (ECF 53). SVO additionally alleged violation of Business & Professions Code Sections 17200, *et seq.,* and sought declaratory relief on the policy provisions in dispute. *Id.*

## III. <u>NAVIGATORS' BRIEF APPLIES THE WRONG STANDARD FOR THE REIMBURSEMENT OF FEES AND COSTS.</u>

In the introductory paragraph of its legal argument, Navigators sets forth the wrong standard for the reimbursement of fees and costs from an insured. It asserts that the interpretation of an

insurance policy is a matter of law and discusses the burden of the insured in proving insurance coverage. However, there is no issue of insurance coverage for indemnity in this action. Navigators did not pay anything under the indemnity provisions of the Navigators' Policy. Pelz Decl. The issue here is Navigators' claim for reimbursement of defense costs. In a "mixed" action such as the Underlying Action with both potentially covered and uncovered claims, the standard for recovery of fees and expenses is set forth in *Buss.* Under *Buss*, Navigators has the burden of establishing attorneys' fees and costs *solely allocable to claims which are not even potentially covered.*

Navigators further misstates the obligations of the insured on the duty to defend in its selective citation of the burden of the insured in *Montrose Chem. Corp. v. Superior Ct.,* 6 Cal. 4th 287, 300 (1993) ("*Montrose*") at page 13, line 22-23 of its Brief. The full citation is as follows:

> To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

*Montrose, supra,* 6 Cal. 4th at 300. *See, also, Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879 (2001) ("[a]ny doubt as to whether the facts establish that the duty to defend exists must be resolved in the insured's favor.") SVO has established that Navigators had a duty to defend it *until* the underlying case was resolved by a dismissal *with prejudice* because of the potential of coverage prior to that time.

## IV. NAVIGATORS' CONTENTION THAT THE DISMISSAL WITHOUT PREJUDICE OF THE DEFAMATION CAUSE OF ACTION ELIMINATED THE DUTY TO DEFEND IS REFUTED BY THE FACTS.

Navigators' contention that the dismissal of the defamation cause of action eliminated the duty to defend is erroneous on the facts and law. Navigators reiterates multiple times that it is "undisputed" that the defamation cause of action is the only potentially covered claim in the Fourth Amended Complaint. *See, e.g.,* Navigators Memorandum in support of its motion ("Nav. Brief") at

page 15, line 2. That contention is vigorously disputed. The Fourth Amended Complaint contains numerous allegations of a claim for disparagement outside of the defamation cause of action. Repeating an erroneous assertion multiple times does not make it so. None of the score of cases Navigators cites supports its erroneous assertion that a dismissal without prejudice of the covered cause of action for defamation terminates the duty to defend either.

**A. <u>Navigators Had A Continued Duty To Defend Because Of Allegations Of Disparagement Remaining In The Complaint.</u>**

Navigators had a continuing duty to defend after the dismissal of the defamation cause of action without prejudice. *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal.3d 553, 563–64 (1970) (holding that "[t]he rule is settled that an insurer is under a duty to defend a claim whenever the allegations of a complaint would support a recovery upon a risk covered by the policy.") "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises" upon tender. *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). Once such duty arises, it "lasts until the underlying lawsuit is concluded, or until it has been shown that there is *no potential for coverage*." *Id*. (Emphasis added). To meet its burden, the insurer must conclusively prove that there was no potential for coverage. *See Id.*; S*ee, also, Vann v. Travelers Companies* 39 Cal.App.4th 1610, 1614 (1995); *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966).

At the time of the subject dismissal on March 24, 2021, the operative Fourth Amended Complaint in the Underlying Action irrefutably included other allegations that were virtually akin to defamation and expressly asserted the covered tort of *disparagement*. Thus the Fifth Cause of Action of the Fourth Amended Complaint asserted the following against SVO:

> Without limitation, at least the following acts by SVO were unfair business acts: … **<u>seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project</u>**… Without limitation, at least the following acts by SVO were fraudulent business acts: … **<u>seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project</u>**… As a direct and proximate cause of the wrongful conduct of SVO, Vertiv has been injured in fact. For example, as a direct consequence of the acts of SVO, SVO are using Vertiv's intellectual property and work product to complete

> Phase 1 of the Project and to design and construct Phases 2 and 3 of the Project, which erodes Vertiv's reputation as a designer and builder of data centers and provides an unjustified cost savings to SVO.

Fourth Amended Complaint at ¶¶ 55, 56, 57 (Emphasis added); Murray Decl. Ex. 3.

The Fourth Amended Complaint additionally asserted the following against SVO:

> SVO improperly and intentionally interfered with Vertiv's contract with DPR in various manners, including but not limited to routinely engaging in secretive and unauthorized direct communications with personnel regarding the work and services DPR was performing DPR for Vertiv on the jobsite and **disparaging Vertiv's work**.

Fourth Amended Complaint at ¶ 146 (Emphasis added); Murray Decl. at Ex. 3.

Indeed, after May 3, 2021, when SVO's newly retained coverage counsel, Steven Murray, informed Navigators by letter that its denial of coverage was "factually and legally unsupported," Navigators promptly reversed its decision to withdraw SVO's defense. Murray Decl. Ex. 3. Murray cited the allegations of "false reports" and "disparagement" in two other causes of action in the Fourth Amended Complaint referenced above, as well as allegations of potentially covered property damage. *Id.*

Further, *after* the dismissal of the defamation cause of action, there are numerous entries in the Navigators fee bills for defense of the disparagement claim. Declaration of Bruce Smyth ("Smyth Decl."), Ex. 1. There are fee entries regarding the review and analysis of documents produced by SVO, the Company and others in support of the Company's claim that SVO disparaged Vertiv's work, the preparation of briefing regarding those allegations, and other work related to the defense of the disparagement claim. *Id*. Further, there are billings for work on other general tasks that an attorney conducting the defense of defamation or disparagement would perform not specifically referencing either tort, such as attending status conferences and hearings, as noted in the Declaration of Jean-Paul Jassy, SVO's expert on the defense of such claims.

Murray also noted Navigators' duty to defend based on allegations in the amended complaint of property damage including the loss of use of tangible property which has not been physically damaged. These included allegations of loss of use of transfer switches, cooling systems and other

devices. Murray Decl. Ex. 3. *See, e.g. , Borg v. Transamerica Corp.,* 47 Cal. App. 4th 448, 457 (1996) (loss of use of tangible property by overhanging deck covered); *Thee Sombrero, Inc. v. Scottsdale Ins. Co.,* 28 Cal. App. 5th 729,736 (2018) (loss of use of nightclub from shooting on premises resulting in loss of conditional use permit was covered loss of use of tangible property).

Any doubt as to whether the facts triggered a continued duty to defend by the insurer, Navigators, must be resolved in favor of the insured, SVO. *See Hanover Ins. Co. v. Paul M. Zagaris, Inc*., 714 Fed. Appx. 735, 737 (9th Cir. 2018) (holding that "[d]oubts concerning the potential for coverage and the existence of [a] duty to defend are resolved in favor of the insured." quoting *Reg'l Steel Corp. v. Liberty Surplus Ins. Corp*., 226 Cal. App. 4th 1377, 1389 (2014)); *see also Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

Contrary to Navigators' contention that a complete cause of action must be alleged to trigger the duty to defend, "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.* 307 F.3d 944, 952 (9th Cir. 2002) (noting that a "loose nexus [is] required for duty-to-defend determinations.") *See, also, Barnett v. Fireman's Fund Ins. Co*., 90 Cal.App.4th 500 (2001); *CNA Cas. of Cal. v. Seaboard Sur. Co*., 176 Cal.App.3d 598 (1986); *Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442, 444 (C.D.Cal.1995)). In *Barnett*, for instance, facing facts similar to those here, the applicable policy provided coverage for the "offenses" of slanders or libel or disparagement of a person's or organization's goods, products or services. *Barnett, supra,* 90 Cal App. 4th at 509. Although the complaint contained causes of action for breach of fiduciary duty, intentional interference with contractual relations, breach of the implied covenant of good faith, and fraud, the court found that a duty to defend had been triggered because the complaint alleged that the insured's officers and employees had "told third persons that MedPartners' methods of doing business were flawed and would result in its failure and made other representations that disparaged and damaged MedPartners and SCMC." *Id.* at 510. As a result, "[the] allegations trigger[ed] at least a potential for coverage under the personal injury coverage for defamation provided by the [policy]." *Id.*

/ / /

The Navigators Policy provides coverage for "personal and advertising injury" offenses of defamation and disparagement, defined as including the following:

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Navigators' Policy attached to First Amended Complaint (ECF 43-1 at A-32) . Under California law disparagement is a knowingly false or misleading publication that derogates another's property or business and results in special damages. *See, e.g., Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,* 59 Cal. 4th 277, 291 (2014). Because allegations of a potentially covered claim for disparagement remained in the Fourth Amended Complaint, Navigators had a continued duty to defend.

If Navigators really believed that it had no duty to defend after receiving Murray's May 3, 2021 letter, it could have continued its refusal or filed an action to seek a declaration by the court that it had no such duty. It did neither. Navigators instead decided to continue the defense of SVO to minimize the fallout from its erroneous decision to withdraw the defense. Navigators' statement at page 16 of its Brief that SVO had "agreed" that Navigators could seek reimbursement of the fees and expenses after the defamation claim was dismissed without prejudice is similarly unfounded. Indeed, SVO's counsel, Steven Murray, expressly disclaimed any such agreement by SVO in a letter of May 18, 2021 to Navigators. Murray Decl. Ex. 6.

**B. <u>The Exclusions Navigators Cites Provide No Grounds For Summary Judgment.</u>**

The exclusions for intellectual property, breach of contract, and "knowing falsity" under the Policy which Navigators has cited provide no grounds for summary judgment, let alone any undisputed facts necessary for such a finding. "An insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* 100 Cal.App.4th 1017, 1038 (2002) (emphasis in original); *see also Waller v. Truck Ins. Exch*. 11 Cal.4th 1, 16 (1995); *Merced Mutual Ins. Co. v. Mendez* 213 Cal.App.3d 41, 47, (1989); *Royal Globe Ins. Co. v. Whitaker* 181 Cal.App.3d 532, 537, (1986). The *Atlantic Mutual* court thus observed:



P S PARKER SHAFFIE LLP

> Even though it may ultimately be determined that Atlantic Mutual has a viable defense to coverage by virtue of the application of the "first publication" exclusion, this can only affect its liability for indemnification. Its duty to defend depended on the existence of only a potential for coverage. That *potential* was never conclusively negated and obviously cannot be negated short of an actual trial to resolve what is clearly a genuine factual dispute. (emphasis in original) *Atlantic Mutual Ins. Co.*, 100 Cal.App.4th at 1040.

Such potential cannot be conclusively negated by reliance upon disputed *allegations* in the underlying complaint. *See Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 277 (1966) (holding that an intentional conduct exclusion did not extinguish the duty to defend because the insured "might have been able to show [] he did not commit willful and intended injury, but engaged only in nonintentional tortious conduct" despite the underlying complaint's "pleading of intentional and willful conduct.") Moreover, "[a]s a practical matter, courts usually find a duty to defend despite the knowing falsehoods exclusion. There is usually at least a possibility of coverage because, despite the allegations of intentional acts, the insured's conduct may be shown to have been merely reckless or negligent." Croskey et al., *Cal. Practice Guide: Insurance Litigation* (Rutter Group 2025) at ¶ 7:1066.2.

As to the "knowing violation" and "material published with knowledge of falsity" exclusions, Navigators relies entirely on the operative pleading's allegations to argue intentional conduct. Navigators has failed to offer independent evidence showing "knowledge of falsity" or "knowledge that the act would violate the rights of another." It cannot defeat the defense duty by pointing to contested allegations of willful conduct when nonintentional or negligent theories remain viable. Navigator's failure forecloses summary judgment based on scienter-governed exclusions, particularly considering the allegations in the Underlying Action, including negligent misrepresentation and non-intentional conduct.

The intellectual property, breach-of-contract, and contractual-liability exclusions cited by Navigators also cannot extinguish the defense obligation. The IP endorsement is applicable to claims "arising out of" infringement or injury to enumerated intellectual property rights, i.e., "copyright, patent, trademark, trade secret or other intellectual property rights." *See* ECF No. 43-1 at 24. However, the surviving allegations of "false reports," statements "disparaging Vertiv's work," and

reputational erosion are not predicated on asserting or vindicating IP rights but are based on a standalone disparagement offense and reputational harm, and therefore do not fall within the IP exclusion's scope. The reputational harms alleged arise from statements about performance and commissioning; the disparagement claim likewise involved work and services. They do not relate to appropriation and enforcement of IP.

The breach-of-contract and contractual-liability exclusions similarly do not defeat the duty to defend. The contractual-liability exclusion aims at liabilities the insured "assumes" by contract (*e.g.,* indemnity/hold harmless), and it expressly preserves coverage where the insured would have liability "in the absence of the contract or agreement." *See* Nav. Brief at 23. Claims for disparagement and for loss of use of tangible property plainly can exist independent of any contractual promise. The breach-of-contract exclusion likewise does not bar coverage for independent torts whose gravamen is extra-contractual conduct (e.g., publications to third parties that harm reputation). Even if some counts reference contractual duties, California's mixed-claim rule still requires a defense of the entire action so long as any potentially covered theory remains viable and posing a risk. Navigators cannot meet its burden to conclusively show that all alleged injury "arose out of" contract rather than out of separate tortious publications or out of interference with the use of equipment.

## V. NAVIGATORS' CLAIM FOR REIMBURSEMENT IS BARRED BY ITS BAD FAITH.

Navigators also is barred from seeking reimbursement by its own bad faith in withdrawing its defense of SVO. As discussed in more detail below, Navigators in bad faith withdrew its defense of SVO after the dismissal without prejudice of the defamation cause of action. Navigators' claims for reimbursement are founded on the theory of restitution, as noted in *Buss,* and its bad faith bars such an equitable claim. *See Electronics for Imaging Inc. v. Atlantic Mut. Ins. Co.*, 2007 WL 1430032 (N.D.Cal. May 14, 2007). In that case, the court found that the insurer was barred from allocating fees and expenses under *Buss* because it denied a duty to defend. *Id. See, also, KM Strategic Management, LLC v. American Cas. Co. of Reading,* 2016 W.L. 4059187 at *4 (C.D. Cal. July 25, 2016) (By repudiating duty to defend, insurer is liable for all defense fees and costs); *Kardly*

*v. State Farm Mut. Auto. Ins. Co.,* 207 Cal. App. 3d 479, 489 (1989) (insurer barred from asserting breach of subrogation obligation against its own insured by virtue of its insurance bad faith).

## VI. NAVIGATORS HAS FAILED TO MEET ITS BURDEN TO OBTAIN REIMBURSEMENT FOR FEES AND EXPENSES INCURRED AFTER THE DISMISSAL WITHOUT PREJUDICE OF THE DEFAMATION CAUSE OF ACTION.

Navigators has not established that it is entitled to reimbursement of attorneys' fees after the dismissal without prejudice of the defamation cause of action either, for multiple reasons. First, under California law, once a duty to defend arises, it "lasts until the underlying lawsuit is concluded, or until it has been shown there is no potential for coverage." *Scottsdale Ins. Co. v. MV Transp*., 36 Cal. 4th 643, 655 (2005). The duty to defend the defamation claim thus was not extinguished until the case was dismissed with prejudice. The Fourth Amended Complaint in any event still included claims for disparagement, a covered offense under the Navigators' Policy after the dismissal without prejudice of the defamation cause of action. Second, under California precedent, a dismissal without prejudice does not eliminate the duty to defend the dismissed claim because it can always be brought back into the case. Third, Navigators has not met its burden of establishing that all of the fee entries in the post dismissal period are solely allocable to claims which are not even potentially covered. In fact, some of the fee entries post dismissal expressly refer to the defense of the related disparagement claims.

### A. Navigators Had A Continuing Duty To Defend Because the Defamation Cause Of Action Was Dismissed Without Prejudice.

Navigators had a continuing duty to defend because the dismissal of the defamation cause of action was without prejudice and it could be brought back into the case. Under California law, an insurer is required to continue to provide a defense of a potentially covered claim which is dismissed without prejudice because it could be brought back into the case. *See, e.g, Westfield Ins. Co. v. TWT, Inc.,* 723 F. Supp. 492, 496 (N.D. Cal. 1989) (dismissal of cross-complaint without prejudice does not eliminate duty to defend because it could be reasserted at any time). The risk of a claim being brought back into the case is heightened when the existing allegations regarding


PARKER SHAFFIE LLP

disparagement, seeking or causing third parties to issue false reports, and erosion of reputation were already sufficient to amount to a defamation claim. "[T]hat the precise causes of action pled by the third party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287 (2014); S*ee, also, Hudson Ins. Co. v. Colony Ins. Co.,* 624 F3d 1264, 1267-1269 (9th Cir. 2010) (duty to defend triggered where the facts alleged supported cause of action for slogan infringement even though slogan infringement not specifically pleaded).

**B. <u>None Of The Cases Cited By Navigators Establish That Dismissal Without Prejudice Eliminates The Duty To Defend</u>**

In addition to ignoring its ongoing duty to defend the disparagement claim, the scores of cases Navigators cites provide no support for its contention that the dismissal without prejudice of the defamation cause of action eliminates the duty to defend. Navigators misleadingly cites the *Buss* case, 16 Cal. 4th at 46, in support of its claim that upon the dismissal of the defamation claim without prejudice, the duty to defend was "extinguished." In fact, the full citation states that the duty to defend may be discharged earlier than when the case is concluded only "if it is shown that no claim can in fact be covered." *Id*. Navigators has made no such showing. In *Gers, Inc. v. Atlantic Mut. Ins. Co*., 2005 WL 8166040 (S.D. Cal. Oct. 19, 2005), cited by Navigators, the arbitration in issue was limited to only contractual claims. The court found no duty to defend in an arbitration where a covered claim of defamation had been withdrawn because it was not a contractual claim. *Gers, Inc. v. Atlantic Mut. Ins. Co*., 2005 WL 8166038 at *7 (S.D. Cal. Mar. 29, 2005). In *California Union Ins. Co. v. Club Aquarius, Inc.*, 113 Cal. App. 3d 243, 247-248 (1980), the court found that the insurer need not defend the remaining portion of an action when the covered claim was disposed of in the liability portion of a bifurcated trial. No such adjudication was made by the arbitrator here.

In *State Farm Fire & Cas. Co. v. Plutsky, 848 F. 2d 199, 1998 WL 53926 (9th Cir. May 23, 1988)*, the court found no duty to defend because the district court had previously found that there were no allegations of the covered claim of wrongful eviction. There was no such finding here. In *Pacific Coast Surgical Ctr, LP .v. Scottsdale Ins. Co.,* 2019 WL 4390565 (C.D. Cal. June 25, 2019),

the court found that the insurer could withdraw the defense because a letter showing that the claim had been made prior to the start of a policy period constituted an undisputed fact that the claim was not potentially covered. There is no such undisputed fact here.

The other cases Navigators cites simply do not support its contention that the dismissal without prejudice eliminated the potential of coverage. In *Storek v. Fidelity & Guar. Ins. Underwriters, Inc.,* 504 F. Supp. 2d 803, 813 (N.D. Cal. 2007), cited by Navigators, the court rejected the speculation that an allegation in the cross-complaint that cross-defendants had "inserted themselves into the ownership relationship" regarding a property in dispute and that they "may have obtained authorization from [their mother] to make her trustee's decisions" implicitly demonstrated that the cross-complaint contained the seeds of a claim for defamation. 504 F.Supp.2dat 808-09. Here, in contrast, the allegations of defamation could be reasserted and the existing complaint contained allegations of potentially covered disparagement.

*Millenium Lab., Inc. v. Darwin Select Ins. Co.*, 676 Fed. Appx. 734, 737 (9th Cir. Jan. 27, 2017), cited by Navigators, also presents very different facts. That case had gone to trial without litigation of the potentially covered disparagement claim, an appeal and a motion for new trial were denied, and there was no indication that the insured intended to later pursue such a claim. At that late point, the court found no likelihood that there would be any amendment to add a disparagement claim. *Id.* Here, the litigation was ongoing after the dismissal without prejudice, the complaint still contained allegations of disparagement and the issue is the continued obligation of Navigators to defend until the case was settled, and not *after* the case was settled.

*Travelers Indem. Co. of Conn. v. Walking U Ranch, LLC*, 2022 WL 762303 (March 10, 2022), cited by Navigators, also involved the issue of the insurer's duty to defend after trial and on appeal. In that case, the court found that the insurer had a duty to defend the case through trial. The trial court found that although a cause of action for defamation was not tried, "a number of allegations demonstrate potentially defamatory remarks…," and as such "reveal potential liability for slander of person..." 2022 WL 762303 at *18. Because the only claim on which there was potential coverage had been disposed of by the trial court and the complaint no longer could be amended, there was no duty to provide a defense on appeal. In support, the court noted the ruling

in *Lumbermens Mut. Cas. Co. v. Corning, Inc.,* 2008 WL 11337841 (C.D. Cal. 2008) ("[P]artial judgment as to all covered claims is one of the few circumstances justifying the insurer's withdrawal of its defense") (internal citation omitted). The issue here in contrast is the duty of the insurer to defend *before* the case is resolved.

Navigators cites *Great Am. E & S Ins. Co. v. Theos Ed. Sys., Inc.,* 357 F. Supp. 3d 953, 968 (N.D. 2019), *aff'd* 799 Fed. Appx. 539 (9th Cir. Apri. 1, 2020) without explanation, but that decision has no relevance here either. In that case, the court found that because the plaintiff sought only attorneys' fees in a contempt proceeding and because such fees did not constitute covered damages, the insurer did not have a duty to defend.

**C. <u>Navigators' Contention That SVO Did Not Retender The Potentially Covered Claim Is Irrelevant.</u>**

Navigators' citation of cases which it contends require the tendering of new potentially covered claims misses the point here. There were no new claims because the claims for defamation and disparagement were in the Fourth Amended Complaint. In any event, after Navigators denied coverage because of the dismissal without prejudice of the defamation cause of action, SVO through counsel Steven Murray *retendered* the Fourth Amended Complaint, noting the allegations of the covered tort of disparagement. Murray Decl. Ex. 3. In *Millenium Lab., Inc. v. Darwin Select Ins. Co.*, *supra,* 676 Fed. Appx. at 737, cited by Navigators and discussed above, the court found no continued duty to defend *after* the case had gone to trial without litigation of the potentially covered claim. *Id.* However, the court found that *if* an amendment was added at that late date, the insured would be required to tender it to the insurer. 676 Fed. Appx. At 737. There is no such issue here.

All of the other cases cited by Navigators involve new allegations of potentially covered claims arising in the action. In *Travelers Cas. & Sur. Co. v. Employers Ins. Of Wausau,* 130 Cal. App. 4th 99, 110 (2005), the court found that claims newly raised in an amended complaint were not tendered to the insurer. In *The Upper Deck Co. , LLC v. Federal Ins. Co.*, 358 F. 3d 608, 613 (9th Cir. 2004) the court found that once the facts establish the potential of another covered cause of action after the insurer has made a decision on coverage, the insured must tender the complaint to the insurer. *Premier Pools Mgmt. Corp. v. Colony Ins. Co.,* 815 Fed. Appx. 168, 169 (9th Cir. July

20, 2020), cited by Navigators, is similarly irrelevant because the insured did not tender to the insurer after *new* disparagement allegations were raised.

Navigators asserts at page 19 of its Brief that it is "beyond speculation" that the Company could have pursued the dismissed defamation claim through the remaining causes of action. No speculation is required. The Fourth Amended Complaint still included claims of disparagement and Steven Murray's letter informed Navigators of that fact – which is why Navigators resumed the defense. *Crab Boat Owners Assn. v. Hartford Ins. Co. of the Midwest*, 2004 WL 2600455 (N.D. Cal. Nov. 15, 2004), cited by Navigators, involved a case with no allegations of a cause of action which could give rise to coverage. SVO has cited allegations of disparagement in the operative Fourth Amended Complaint and the dismissed cause of action for defamation dismissed without prejudice that could be reasserted.

**D. The Only Case On Point Establishes That Navigators Had A Continued Duty To Defend.**

Finally, Navigators makes a vain attempt to distinguish the only case on point in the circumstances actually present here -- where a party dismisses a potentially covered cause of action without prejudice before trial -- *Westfield Ins. Co. v. TWT, Inc.,* 723 F. Supp. 492 (N.D. Cal. 1989). None of the score of cases Navigators cites discuss a potentially covered claim dismissed without prejudice before trial. None of those cases have disapproved or questioned the *Westfield* holding. None of the cases cited by Navigators discuss the circumstance of allegations of a potentially covered claim in the operative complaint for disparagement either. Of course, another possibility that Navigators does not mention is that insurers do not raise the issue of the termination of their duty to defend when a covered cause of action has been dismissed without prejudice because the continuing obligation to defend is not controversial. Indeed, Navigators quickly reversed its decision once SVO retained coverage counsel who informed it of its error.

**E. There Is No Issue Of "Manufactured" Coverage.**

The cases Navigators cites which state that an insured may not "manufacture" a covered cause of action are all inapposite. There was nothing to "manufacture." The defamation cause of action dismissed without prejudice had been in the operative complaint and the disparagement



PS PARKER SHAFFIE LLP

allegations remained there. The ruling in *Amex Assur. Co. v. Allstate Ins. Co.,* 112 Cal. App. 4th 1246, 1252 (2003), cited by Navigators, is not based on any pleadings or facts in the case, unlike the circumstances here, which are based on the actual pleadings in the Fourth Amended Complaint. The court in *Gunderson v. Fire Ins. Exch.,* 37 Cal. App. 4th 1106, 1117 (1995), cited by Navigators, found no allegations of potentially covered property damage in the complaint and concluded that any alleged damage would have been caused intentionally and the property damage had to be caused negligently to be covered. Finally, the counsel for the plaintiff testified that he never intended to allege property damage. *Id.* In *Hurley Construction Co. v. State Farm Fire & Cas. Co.,* 10 Cal. App. 4th 533, 538 (1992), the court found no allegations in the complaint which might give rise to a covered claim. The only potential allegations were those dreamed up by the insured's coverage counsel to assert bodily injury or property damage not in the complaint. Here the defamation claim *was* in the complaint and the allegations of disparagement remained.

**F. Navigators' Contention That It Had No Duty To Defend The Disparagement Allegations Because There Were No Allegations Of Damages Is Unfounded.**

Navigators' assertion that it had no duty to defend a potentially covered claim for disparagement because there was no allegation of damages in the Fourth and Fifteenth Causes of Action which contained those allegations misses the point. An insurer has a duty to defend when there are allegations in a complaint which may give rise to a covered cause of action. There is no requirement that such allegations be fully formed and pleaded causes of action. *See, e.g.*, *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264 (9th Cir. 2010) (insurer had duty to defend where complaint did not assert a covered claim but contained factual allegations supporting such a claim). At least one of those other causes of action does not require damages as an element for recovery, but that does not mean that a potentially covered claim for *disparagement* is barred or fatally flawed. In any event, the Fourteenth Cause Of Action, which contains an allegation of disparagement, alleges damages at paragraph 148 and seeks those damages in the prayer for relief. The extent to which Navigators is stretching to find an alleged deficiency is demonstrated by its complaint that the allegation of disparagement is in a separate preceding paragraph 146 while the damages allegation is in paragraph 148 of the same cause of action. Nowhere is it required that the damages

allegation must be in the same paragraph as the allegation of the tortious act. The fifth cause of action, which has other allegations of false reports, seeks other and further relief in the prayer for that cause of action as well as injunctive relief.

*San Miguel Comm. Assn. v. State Farm Gen. Ins. Co.*, 220 Cal. App. 4th 798, 800-801 (2013), cited by Navigators, does not support Navigators' contentions. In that case the plaintiff sought only injunctive relief before amending the complaint to seek damages, at which point the insurer picked up the defense. Here both the previously asserted cause of action for defamation, dismissed without prejudice, and the Fourteenth Cause of Action, containing a disparagement allegation, sought damages. Neither mentioned restitution or injunctive relief. Unlike *San Miguel*, there is no declaration from counsel stating that he or she did not intend to seek damages. *See First One Lending Corp. v. Hartford Cas. Ins. Co.,* 664 Fed. Appx. 619 (9th Cir. 2016). *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985), also is inapposite. In that case, the court found no duty to defend a criminal case where the defendant faced only a fine or imprisonment.

Finally, Navigators' contention that SVO's allegations of disparagement are insufficient to trigger the duty to defend because they are merely legal conclusions like those in *Zox LLC v. West Am. Ins. Co.,* 2024 WL 512561 (9th Cir. Feb. 9, 2024), is unfounded. In that case, the allegation was made that Zox "disparaged the goods, services, or business of another by false or misleading misrepresentations of fact." *Id*. at *2. The allegations of Vertiv against SVO are far more specific, as noted in the allegations cited in the May 3, 2021 Murray letter. Murray Decl. Ex. 3.

## VII. <u>NAVIGATORS' MOTION MUST BE DENIED BECAUSE SVO'S AFFIRMATIVE DEFENSES ESTABLISH TRIABLE ISSUES</u>

Navigators is not entitled to summary judgment because SVO has asserted numerous affirmative defenses which allegedly offset or eliminate any recovery on Navigators' claims. The determination of whether an insurer is entitled to reimbursement under *Buss* is based on the equitable theory of restitution. It is a defense to restitution that there was little or no benefit conferred by Navigators on SVO. The legal malpractice of the defense counsel appointed by Navigators, Tyson, resulted in the loss of a multi-million dollar counterclaim in the lawsuit. Pelz Decl. Navigators also is barred from seeking reimbursement by its own bad faith in withdrawing its defense of SVO. Both

Navigators and Tyson were negligent in failing to timely tender the complaint to another insurer, Hallmark, which ultimately agreed to provide a defense. Had it been timely notified, Navigators' claim against SVO would have been reduced by $500,000. Knowing that it would be seeking reimbursement of the fees and expenses incurred in the action, Navigators allowed the defense counsel, Tyson, to grossly overbill the case. All of these defenses additionally were asserted as counterclaims and are discussed below in the opposition to Navigators' motion for summary judgment on those claims.

Navigators' contention that these defenses are irrelevant is unfounded. Navigators elected to sue its own insured for reimbursement under the equitable claim of restitution or unjust enrichment. Under California law, restitution is only allowed if it is unjust for the party receiving it to retain the alleged benefit. *Federal Deposit Ins. Co. v. Dintino,* 167 Cal. App. 4th 333 (2008). The defendant may introduce evidence that the alleged unjust enrichment is reduced by costs, expense and other factors. *American Master Lease LLC v. Idanta Partners, Ltd.,* 225 Cal. App. 4th 1451 (2014). Further, evidence of the inadequacy of defense counsel is relevant to fee recovery and excessive fees. *Century Surety Co. v. Robin Dingh Educational Services, Inc.,* 208 WL 11336770 (C.D. Cal. 2008). The defendant in a case seeking attorneys' fees is entitled to assert the malpractice of the attorney as a defense. *Safine v. Sinnott*, 15 Cal. App. 4th 614, 618 (1993)

## VIII. NAVIGATORS HAS NOT PROVEN THE ABSENCE OF TRIABLE ISSUES OF FACT ON ITS CLAIM OF DAMAGES

Navigators is not entitled to summary judgment because it has not proven the amount of any alleged reimbursement. The conclusory allegation by Angel Muth in her declaration that Navigators spent over $2.4 million in fees and expenses after the dismissal of the defamation cause of action without prejudice is not admissible evidence. There is no reference to fee bills or invoices, let alone any admissible evidence of payments. Muth's allegations are the subject of a concurrently filed objection and motion to strike.

## IX. NAVIGATORS' MOTION FOR SUMMARY JUDGMENT ON SVO'S AFFIRMATIVE CLAIMS MUST BE DENIED.

This Court should deny Navigators' motion for summary judgment as to SVO's

counterclaims because the disputed and undisputed material facts establish triable issues of fact. The counterclaim alleges four causes of action: Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Violation of California Business & Professions Code §§17200 et seq., and Declaratory Relief. (ECF 53). Navigators has no grounds for summary judgment as to any of them.[1]

A court may only grant summary judgment if the movant demonstrates that there is no genuine dispute regarding any material fact and that based on the undisputed facts the movant is entitled to judgment as a matter of law. [FRCP Rule 56(a)]. Movant bears the burden of not only asserting the existence of undisputed facts, but must support their position with citation to *specific* materials in the record that prove the existence of those facts with admissible evidence. [FRCP 56(c)]. Summary judgment is precluded if sufficient evidence exists for a trier of fact, viewing the evidence in the light most favorable to the nonmoving party, to find for the nonmoving party. *Campbell v. City of Los Angeles,* 903 F.3d 1090 (2018); *Ambrosetti v. Oregon Catholic Press,* 151 F.4th 1211 (2025). The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

### A. <u>Navigators Has Failed To Establish The Absence Of Triable Issues Of Fact On Its Breaches Of The Insurance Contract</u>

SVO has identified multiple alleged breaches of the insurance contract by Navigators, which are all clear and unequivocal.

First, Navigators breached the contract by abandoning the defense of SVO. It absurdly alleges that the contention it withdrew from the defense of SVO is "categorically false." This despite its March 31, 2021 letter to SVO stating that it was "withdrawing" its defense, not going to pay any more legal fees or costs and denying all coverage. Murray Decl. Ex. 1. SVO then had to enter into an agreement to retain Tyson to continue its defense and pay a $325,000 retainer. It only changed

[1] Navigators does not even address SVO's fourth cause of action for declaratory relief and therefore cannot establish the absence of triable issues of fact, which requires the denial of its motion as to that cause of action.

its mind after Steven Murray told it that its withdrawal was factually and legally unsupported. Its contention that it requires a period of time to make a coverage decision is equally unfounded. There is nothing in the March 31, 2021 letter that indicated it was mulling its decision. That letter is clear and unequivocal.

The case Navigators cites of a 3.5 month delay in the determination of coverage, *Travelers Prop. Cas. Co. of Am. v. Kaufman & Broad Monterey Bay, Inc.,* 2015 U.S. Dist. LEXIS 16952, *9-10 (N.D. Cal. Feb. 11, 2015), is not only distinguishable because it is an initial determination, but also because the reason for the delay was the insureds' failure to produce requested evidence that was essential to that carrier's determination. Once the requested evidence was provided by the insured, the carrier accepted coverage within days. In contrast, in this case there was no new or different information provided by the insured – simply a reminder of the facts and law that required continued representation by Navigators.

Second, the retention of the panel counsel Navigators selected, Tyson, is a breach of the insurance contract by Navigators because of malpractice and breaches of its professional obligations. Even the cases Navigators cite support claims for Navigators' breach of contract. *Merritt v. Reserve Ins. Co.,* 34 Cal. App. 858, 882 (1973), holds that an insurer has a duty to employ competent counsel and is responsible for the negligent conduct of its own duties. *Travelers Ins. Co. v. Lesher*, 187 Cal. App. 3d 169, 186 (1986), holds that an insurer is liable for negligence in selecting counsel. Navigators selected counsel who had conflicts by virtue of representing insurers on coverage issues while selecting them as counsel for SVO. The Declaration of David Frangiamore, attaching a copy of his expert report in this matter, sets forth the breaches of Navigators' insurance contract and of the implied covenant of good faith and fair dealing by the conflict of interest of in retaining Tyson. Further, the claim of malpractice is a defense to Navigators' action, which is for recovery of attorneys' fees. The defendant in a case seeking attorney's fees is entitled to assert the malpractice of the attorney as aa defense. *Safine v. Sinnott*, 15 Cal. App. 4th 614, 618 (1993). Further, evidence of the inadequacy of defense counsel is relevant to fee recovery and excessive fees. *Century Surety Co. v. Robin Dingh Educational Services, Inc.,* 208 WL 11336770 (C.D. Cal. 2008).

There clearly are triable issues with respect to Navigators' fee claim. See Declaration of Moscaret, attaching his Expert Report concluding that Navigators' fees should be cut 35% to 40%. As set forth in the Declaration of Pelz, there was a history of mismanagement by Tyson that led to the over-expenditure of fees and expenses. Navigators had little incentive to manage those fees and expenses because it knew all along that it would be seeking them back from SVO. Navigators fails, in its moving papers, to present any evidence that it properly managed SVO's defense and similarly does not present any admissible evidence to contradict that fact that it failed to manage that defense. Navigators attempts to reframe an insurer's obligation to its insured, arguing that it was only obligated to "employ competent counsel to represent the assured." [ECF 100, 27:11-13]. A more correct articulation (from the case to which they cite) of their obligation is "to inquire immediately into the facts of the case, hire competent counsel, provide counsel with adequate funding, and keep abreast of the progress of litigation. *Ghiglione v. Discover Prop. & Cas. Co.* 2007 WL 963250 (N.D. Cal. Mar. 29, 2007). Navigators failed in these obligations.

Navigators allowed TM to run up excessive bills, not only for itself but also for expert witnesses. Neither Navigators, nor Tyson under their auspices, had a plan to manage expert witnesses. They hired excessive expert witnesses who did not have the relevant expertise for the Underlying Action and several of whom were consequently not allowed to testify. *See* Pelz Decl.

Navigators seeks to counter this breach by incorrectly relying on *C. H. Kershaw v. Maryland Cas. Co.,* 172 Cal.App.2d 248, 258 (1958), for the proposition that payment of attorney's fees is prima facie evidence that those fees were reasonable. In that case an insurance company who improperly refused to provide coverage was not allowed to challenge the attorney's fees component of those damages. Here the insurer is seeking reimbursement from the insured on the equitable theory of restitution and the burden is on Navigators to prove that the fees and expenses it seeks are solely allocable to claims which are not even potentially covered, a completely different standard.

Equally inapposite is *Mai v. HKT Cal, Inc*., 66 Cal. App. 5th 504, 519-520 (2021). *Mai* is not an insurance case but rather is a case where attorney's fees are an element of damages. The fact that a prevailing party seeking to recover attorney's fees as an element of damages can rely on the amount of attorney's fees actually paid to prove those damages is unrelated to the applicable

standard here set forth in *Buss*.

Navigators additionally breached the insurance contract by requiring SVO to pay hundreds of thousands of dollars in fees and expenses which should have been paid by it. Copies of the invoices which SVO was improperly required to pay are attached to the Pelz Decl. as Exs. 6-8. Navigators was able to have SVO pay these fees and expenses because the counsel it selected, Tyson, in a clear conflict of interest, allocated such fees and expenses to SVO instead of Navigators. Thus, SVO was required to pay in excess of $100,000 in arbitrator's fees to AAA which should have been paid by Navigators, expert fees to HKA, and over $100,000 attorneys' fees of Tyson itself which were improperly allocated by Tyson to affirmative claims which should have been included in the defense. See Pelz Decl., Exs. 6-8. Though Navigators disputes some or all of those fees, they clearly constitute triable issues of fact.

Third, Tyson committed gross errors in its representation which cost SVO millions, as outlined in the accompanying Declaration of Barry MacNaughton, attaching his Expert Report. Through its negligence in responding to the Company's motion for terminating sanctions, the arbitrator excluded evidence of damages from SVO's counterclaim worth over $10 million. *See* Ulrich Decl. and Exs. 9-11thereto. Not only is this evidence of Tyson's failure to meet the standard of care, it is also evidence of Navigators' failure to keep abreast of and manage counsel.

The basis for this severe ruling was the failure by Tyson through the entirety of the Underlying Action to comply with discovery demands. They failed to properly oversee ESI protocols, failed to produce responsive discovery, and, through Tyson's inability to adequately work with expert witnesses, exposed the entirety of Tyson's database to discovery by failing to create a subset of relevant documents for expert witness review. Instead, Tyson gave experts access to all records – unsupervised. This resulted in making everything they reviewed discoverable and also resulted in grossly inflated expert witness bills as they charged to look through this mass of documents.

Navigators (and the counsel it selected) also failed to tender the Fourth Amended Complaint to Hallmark when the defamation cause of action was added, even though the assessment of insurance coverage is a basic task of defense. In the period between the filing of the Fourth

Amended Complaint and when Hallmark was put on notice by SVO's newly retained coverage counsel, Navigators incurred $1 million in fees and expenses which it now seeks from SVO. If it had timely placed Hallmark on notice, that amount would have been reduced by half, for which SVO would have no liability since Hallmark has not sued it for reimbursement.

**B. Navigators Breached the Implied Covenant Of Good Faith and Fair Dealing**

Navigators argues that for it to be liable in tort it must be found to have acted unreasonably or without proper cause. In its brief, Navigators simply makes assertions, without rebutting the allegations in the Complaint, and omits evidence of facts. It thus has failed to meet its burden at the summary judgment stage. *Daschke v. Hartenstein*, 420 F.Supp.3d 919, 936 (D. Ariz. 2019).

SVO has presented evidence that Navigators acted without proper cause in committing the numerous breaches of its obligations set forth above. Knowing that Navigators would bring this action for reimbursement, Navigators abrogated its obligation to keep abreast of and manage the Underlying Action. As shown above, this resulted in overbilling by counsel, a lack of oversight related to expert witnesses, and ultimately terminating sanctions being imposed because of this lack of concern for the insured.

**C. Triable Issues Remain On Business & Professions Code Section 17200 Claims**

Navigators bases its motion for summary judgment as to SVO's claim for violation of Business & Professions Code sections 17200, *et seq.*, solely on the contention that such claim is barred because SVO has an adequate alternative remedy at law under *Oxnard Manor LP v. Hallmark Specialty Ins. Co.,* 709 F. Supp. 3d 971, 991 (C.D. Cal. 2023). Even if SVO prevails on its bad faith claim, such determination does not deal with the larger problem of Navigators' failure to disclose to its insureds its conflicts of interest in the future where its appointed panel counsel represents insurers including Navigators on insurance coverage matters. *See, e.g., Lemus v. Rite_Aid Corp.,* 613 F. Supp. 3d 1269, 1283 (C.D. Cal. 2022) (plaintiff has stated claim under section 17200 where he has plausibly premised his claims for equitable relief on the possibility of future harm). Similarly, in *Haas v. Travelex Ins. Servs. Inc.,* 555 F. Supp. 3d 970, 976 (C.D. Cal. 2021), the court found that the plaintiff had adequately sought an alternative remedy by seeking an injunction directing the defendant insurers to cease the taking and keeping of unearned premiums.

**D. Triable Issues Of Fact Remain On Punitive Damages**

Navigators showed a conscious disregard of its insured's rights when it wrongfully pulled the defense of the case at a critical time, retained panel counsel who lost a $10 million counterclaim of SVO's, had numerous conflicts of interest allowing the billing of fees and expenses to SVO that should have been paid by it, and negligently failed to notify another insure of the action which would have reduced its claim here by $500,000. The availability of punitive damages in insurance bad faith cases is supported by public policy considerations. The relationship between insurer and insured is inherently imbalanced, with insurers occupying a superior bargaining position due to the adhesive nature of insurance contracts. Punitive damages serve to deter socially unacceptable conduct and restore balance in the contractual relationship. They also reflect the quasi-public nature of insurance services and the fiduciary responsibilities of insurers. *See Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809 (1979). The facts of this case show the kind of conscious disregard of an insured's rights that warrant the imposition of punitive damages.

**X. CONCLUSION**

For the foregoing reasons, Navigators' motion for summary judgment should be denied.

DATED: December 15, 2025 **PARKER SHAFFIE LLP**

By: [signature]

Bruce T. Smyth
Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**