Shawn Shaffie (SBN 262002)
shaffie@parkershaffiellp.com
Bruce T. Smyth (SBN 89171)
smyth@parkershaffiellp.com
Adam J. Telanoff (SBN 159761)
telanoff@parkershaffiellp.com
Edward Baker (SBN 311439)
baker@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 W. 6th Street, Suite 500
Los Angeles, California 90017
Telephone: (213) 622-4441
Facsimile: (213) 622-1444

Steven W. Murray (SBN 41493)
swm@psilaw.com
**STEVEN W. MURRAY, APC**
14930 Ventura Boulevard #205
Sherman Oaks, CA 91403
Telephone: (818) 501-2277
Facsimile: (818) 501-8441

Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

NAVIGATORS SPECIALTY INSURANCE COMPANY,,

Plaintiff,

v.

SVO BUILDING ONE, LLC,

Defendant.

SVO BUILDING ONE, LLC

Counterclaimant,

v.

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Counter-defendant.

Case No. 3:22-CV-07102-AMO
[Assigned to Hon. Aracelí Martínez-Olguín]

**DECLARATION OF DAVID H. FRANGIAMORE IN SUPPORT OF SVO BUILDING ONE, LLC'S OPPOSITION TO NAVIGATORS SPECIALITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGEMNT**

Date: March 5, 2026
Time: 2:00 p.m.
Dept.: Courtroom 10, 19th Floor

**DECLARATION OF DAVID FRANGIAMORE**

I, David H. Frangiamore, declare as follows:

1. I am a retained expert on behalf of Defendant and Counterclaimant SVO Building One, LLC ("SVO") in the above-entitled action. I am at least eighteen (18) years of age. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I make this declaration in support of SVO's Opposition to Navigators Specialtiy Insurance Company's ("Navigators") Motion for Summary Judgment filed in the matter of *Navigators Specialty Insurance Company v. SVO Building One, LLC*, in the Northern District of California, Case No. 3:22-CV-07102-AMO.

3. A true and correct copy of my Expert Report dated October 15, 2025, is attached hereto as **Exhibit 1** – it is fully incorporated herein by reference. My Expert Report discusses in detail my qualifications, the scope of my opinions, the materials and documents relied upon in forming the basis of my opinions, a summary of my opinions, and a comprehensive analysis of my opinions. Appendix D to Ex. 1 specifically details the materials I relied upon to form my opinions, and is incorporated herein by reference.

4. To be clear, I do not intend to testify on the law in this matter, and this Declaration does not contain opinions about coverage law or any other issue of law. I offer a number of opinions in this declaration. My opinions and conclusions are based upon my understanding and knowledge of the standards, customs, and practices in the insurance industry and how they are applied on a day-to-day basis in the process of claims handling, claims decision making and documentation, and how to look for ways to cover claims like the ones in this case. In other words, my opinions expressed herein are based on my own special knowledge, skill, experience, training and education. Perhaps more succinctly, my expertise is in what claims adjusters and claims managers are supposed to do and how they should do it. My expertise has allowed me to arrive at opinions specific to this case about whether defendant's claims adjusters and managers did what they were supposed to do with regard to the SVO's claims, and what should have been done differently. All of the opinions that I

offer in this declaration are based on my education, training, and experience, even if they are not prefaced by those words. To put it simply, insurance adjusters are people who investigate insurance claims to determine whether they are covered and how much money insurance companies should pay for those claims. In claims handling, like any other job, there are industry standards customs and practices. Some of those have been confirmed by the law.

5. As stated in greater detailed in the attached Expert Report, in my opinion, Navigators deviated from the insurance industry custom and practice and standards as follows:

a. by failing to adequately and properly investigate SVO's claim at the outset of the arbitration by allowing defense counsel to arbitrarily segregate attorneys fee and expert bills into affirmative and defense claims and not reviewing all the bills to make sure that all reasonable and necessary bills related to the defense are paid;

b. failing to acknowledge SVO's right to have its defense fees and costs fully funded up front subject to Navigators reservation of rights under Buss;

c. erroneously withdrawing the defense of SVO when the defamation cause of action was dismissed without prejudice even though there were still numerous allegations in the operative complaint of defamation and disparagement which required Navigators to continue to defend and the defamation claim could have been brought back into the case because it was dismissed without prejudice;

d. failing to supervise the litigation adequately and properly select competent defense counsel who had adequate qualified staffing to defend SVO in a more cost effective manner so as not to run up billing based on excessive and needless work;

e. Allowing panel counsel to unilaterally determine how much of its billing will be allocated to affirmative claims vs. a defense;

f. By not agreeing to resume its duty to defend and fully defend after its denial of coverage Navigators waived its right to assert any reservations of rights as a matter of insurance industry custom and practice;

g. By not disclosing to SVO that the Navigators policy does not provide coverage for attorneys fee liability for the breach of contract claim, Navigators unnecessarily

exposed SVO to increasing potential uncovered liability as the case progressed;

h. Navigators defense was so inadequate and underfunded SVO was forced to hire its own counsel at its own expense to settle the case;

i. Following settlement and until present, Navigators still failed to pay hundreds of thousands in attorneys' fees and expert costs.

6. It is also my opinion that, by engaging in the conduct outlined above, Navigators repeatedly **failed to adhere to longstanding insurance industry customs, practices, and standards overall in the handling of its defense and indemnity obligations as to the Arbitration and favored its own financial interests above the interests of SVO**. According to SVO, Navigators repeatedly instructed panel counsel to engage in conduct that prejudiced SVO's defense, by failing to pay necessary costs and expert fees incurred in the defense of the Action. According to SVO Navigators consistently and repeatedly failed to appoint new counsel to defend SVO, despite the numerous conflicts that existed between and among Navigators, SVO and panel counsel, and panel counsel's repeated incompetence defending SVO in the Arbitration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 11th day of December 2025, at San Diego, California.

David H. Frangiamore

# EXHIBIT "1"

# EXPERT REPORT OF DAVID H. FRANGIAMORE

*Navigators Specialty Insurance Company, et.al. v. SVO Building One*

U.S.D.C. Northern District of California Case No. 3:22-cv-071102

October 15, 2025

I, David H. Frangiamore, submit the following report in the above-entitled action:

## I. QUALIFICATIONS

A copy of my current curriculum vitae is attached as Appendix A. I have a Bachelor of Arts degree from Union College (1981), Schenectady, New York. In 1985, I graduated from Golden Gate University with a degree in law. I am an active member of the California Bar and an inactive member of the Washington State Bar. During and after law school, I worked with the law firm Huster & Schneider. There, I evaluated the proper insurance claim practices of many insurers in light of applicable law and department of insurance regulations. I also personally negotiated many insurance claims and dealt with many insurance claims adjusters and claims managers, including but not limited to, Farmers Insurance Company, USAA Insurance Company, CSAA Insurance Company, and CIGNA Insurance Company. From 1983 to 1991, I became familiar with the proper insurance claim handling practices of a wide variety of liability, first-party, and property insurance claims.

I joined Nationwide Mutual Insurance Company in 1991 as a Claims Attorney, where I handled major exposure personal auto, commercial auto, environmental, product defect, construction defect, homeowners, premises liability, and personal injury claims.

In 1993, I joined Wausau Insurance Company's Environmental Claims Unit, where I was appointed Environmental Claim Supervisor and later promoted to Senior Environmental Claim Supervisor. During this time, I handled and supervised over 1,000 environmental and product-related claims and lawsuits, which included but were not limited to mass tort, statutory and class action allegations, and included sites owned and operated by Fortune 1000 companies.

I was appointed manager of the Wausau construction defect unit in 1996. In that role, I supervised over 2,000 construction defects claims and lawsuits. The policies involved included CGL, EIL, property, package, builder's risk and wrap up insurance programs.

While at Nationwide and Wausau, I also reviewed a large variety of casualty-related claims under various liability policy forms, including those issued by the Insurance Services Office. Those forms included comprehensive liability coverage forms and manuscript forms

used by Wausau, Nationwide, and most other property, casualty, and auto insurance companies who are admitted to conduct business in the United States.

I received in-house training at Nationwide and Wausau. I have also received outside training on insurance coverage-related issues. I have provided training and instruction to insurance claim personnel at Nationwide and Wausau, as well as other insurance personnel and attorneys, on the requirements of insurance statutes, regulations and claims handling practices, including but not limited to, how to initiate and conduct claims investigations, and how to ethically represent an insurer's position regarding coverage issues to a policyholder.

I have worked with virtually every major insurance company (both primary and excess insurers), in the investigation, defense, litigation, and settlement of claims, including but not limited to, negotiations, meetings, depositions, and court appearances.

During the time I worked at Nationwide and Wausau, and up to the present time, I work directly with claim adjusters, claim supervisors, claims managers and directors of most of the major insurance companies and insurance brokers in the United States. In the process, I have become intimately familiar with the established insurance claims practices and procedures with regard to the proper handling of insurance claims.

I was responsible for the hiring and supervision of defense counsel in those cases where the liability coverage required that the insured was entitled to a defense for the claim or lawsuit. As a result, I have extensive experience evaluating the knowledge, training, and experience of defense counsel throughout the country to determine if they can provide our insureds with the full defense to which they were entitled. I have supervised litigation in thousands of cases. In some cases, I expect retained counsel to advise me of any potential conflicts of interest that would prevent them from providing the insured a full conflict free defense. Insurance industry custom and practice also requires that the insurer evaluate any potential conflicts before assigning defense counsel. I have fired designed defense counsel and replaced them with qualified counsel in collaboration with discussion with our insured. In some cases, I allowed the

insured's personal counsel to assume the defense provided they had the necessary knowledge experience and training to provide the insured a full defense.

I was also responsible for working with defense counsel to make sure that in the event expert witness testimony was needed to provide a full defense, any retained expert had the requisite knowledge, experience and training to qualify as an expert and subsequently provide the necessary testimony to support the defense. Retention of experts can be a crucial part of the defense strategy, so the adequate funding and prompt payment of defense experts is a necessary part of the defense obligation. The failure to promptly pay experts can result in the defense being severely compromised in the event the expert is unable to complete his or her work and comply with existing discovery and disclosure deadlines. As a result, the failure to full fund the necessary expert work means the insured is being deprived of the full defense to which it is entitled under insurance industry custom and practice.

I was also responsible for the review and processing of law firm and expert bills and related costs necessary to provide an insured with a full defense. Provision of a full defense means the insurer agrees to defend is obligated to take all measures to minimize the liability of its insured including paying the bills related to potentially uncovered causes of action. This is not limited to just providing a response to the adverse party's allegations but also includes pursuing affirmative defenses and intertwined affirmative claims. This is because in some instances the only good defense is an offense. In many instances the facts and issues related to the defense and affirmative defenses and affirmative claims are so intertwined an insurer is obligated fund such reasonable and necessary legal fees. If any damage award on an affirmative claim would reduce the insured's damage exposure that the insurer would have to indemnify, the insurer should review all such bills and consider funding the affirmative claims and defenses.

**Brief discussion of underlying Arbitration claim**

SVO is the owner and developer of computer data centers. SVO hired Vertex as the principal general contractor design consultant to build a data center at the former McClellan Air Force Base in Sacramento, CA. SVO and Vertix entered into a series of agreements related to the

designing and build of the data center. These agreements all had mandatory arbitration clauses. When disputes arose regarding the parties' performance under these agreements, Vertiv initiated a demand for arbitration per the mandatory arbitration clauses in these agreements. The demand for arbitration included a contract claim for $9 million in which attorney's fees were also sought on top of the contract amount.

On October 28, 2019, SVO tendered the arbitration hereinafter called the "Arbitration" to Navigators who agreed to provide a defense under a reservation of rights. Navigators specifically acknowledged there was a duty to defend based on allegations of defamation against Vertiv that were alleged in the Arbitration.

Specifically, Navigators reserved the right seek reimbursement of fees and costs related to uncovered claims. While the initial reservation of rights indicated that Navigators may assert other policy defenses, Navigators never informed SVO that under its supplemental payments clause any attorney's fees sought by Vertiv in the Arbitration would not be covered under the policy. This meant that as the litigation progressed SVO's possible uncovered liability for attorneys' fees would progressively get worse should Vertiv be determined to be the prevailing party.

Initially Navigators assigned Gordon Rees Scully & Mansukhani ("GRSM") as defense counsel. About nine months later GRSM withdrew from the case due to a conflict of interest. Navigator then appointed Tyson & Mendes as defense counsel. It is my understanding that SVO signed California Civil code section 2860(c)waivers with respect to Navigators retention of both of these law firms. It should be noted that both the GRSM and Tyson & Mendes dedicate a significant portion of their work to the zealous representation of insurance companies against policyholders in coverage and bad fair lawsuits.

It is my further understanding that both the GRSM and Tyson & Mendes firms did not submit all of their billings to Navigators for reimbursement. Specifically, these firms did not submit billings to Navigators related to what they believed were "affirmative claims". The amount of fees segregated and not submitted to Navigators was in the approximate amount of

$100,000 plus a larger amount of expert and consulting fees. In any event and as will be described further in this report, this arbitrary segregation of legal fees was the beginning of a scheme to deprive SVO of a full defense in the underlying Vertiv lawsuit. It is also my understanding this billing segregation was not limited to attorneys' fees but also included well over $100,000 in expert costs and expenses. There is no indication that defense counsel disclosed or discussed this inherent conflict or obtained SVO's consent before unilaterally separating the bills. This is a clear violation of insurance industry custom and practice because SVO should have been entitled to full funding of its defense fees and costs, up front with the insurer reserving its reimbursement rights under Buss.

After agreeing to and at least participating in a nominal defense for over 17 months, Navigators informed SVO on March 31, 2021, in a letter from adjuster Angel Muth, that it was withdrawing from the defense of SVO in fifteen days from the arbitration based on the fact Vertiv had dismissed its defamation cause of action against SVO without prejudice. After SVO's counsel contested this denial of coverage, Navigator responded six weeks later on May 18, 2021 stating in relevant part: While Navigators continues to believe it has no duty to defend SVI in the litigation, in light of your May 3, 2021 letter, Navigators will not withdraw from the defense of SVO in this litigation at this time.(See Letter from Simantob to SVO dated May18, 2021) By the time this letter was written Navigators had already withdrawn from the defense per the terms of its March 31, 2021 letter. Mr. Simantob's letter was not a resumption of the defense of SVO because he clearly indicated that Navigators now had no duty to defend. Under insurance industry custom and practice this constitutes a denial of coverage. The correct insurance industry custom and practice upon denial would have been to allow SVO to defend itself using counsel of its own choice. Instead, Navigators turned insurance industry practice on its head by unilaterally asserting could maintain and preserve it policy defense through a reservation of rights while simultaneously asserting there is no duty to defend.

It is my understanding SVO settled with Vertiv in December 2021 using other counsel without the participation or funding of the settlement by Navigators.

In this instance SVO needed to pursue its affirmative claims and defenses in order to reduce or eliminate its potential liability for defamation, fraud, negligence, misrepresentation and civil conspiracy. For example, Vertiv was seeking $9 million based on breach of contract. In order to minimize or eliminate this liability SVO was not just required to deny the allegations but was also alleging fraud against Vertiv, because it did not have the required promised California contractor's licenses when it began work on the project. Under California law SVO would be entitled to recover all the funds paid if it turned out Vertiv was an unlicensed contractor. So in this instance it was necessary to assert a separate fraud cause of action as part of a full defense to minimize or eliminate SVO's liability._ In response and in order to minimize the $9 million contractual claim SVO alleged that: (1) Vertiv misrepresented it had the requisite contractors licenses; (2) Vertiv in fact did not have the required contractor licenses; (3)Vertiv did not complete the project per contractual requirements; (4) Vertiv engaged in inadequate unsafe jobsite practices; (5) Vertiv filed baseless mechanics liens against SVO without just cause. These affirmative claims did not in of themselves seek additional damages of funds form Vertiv, but instead were the necessary affirmative defenses and claim that needed to be asserted to offset or eliminate the $9 million contractual liability claim of Vertiv.

<u>Qualifications</u>

I have been qualified and recognized in many state and federal courts as an insurance claim handling expert in disputes involving a wide variety of insurance issues under most personal lines and commercial lines property and casualty form policies. These disputes include, but are not limited to, agency, auto, property, bodily injury, personal injury offenses, product liability, fire, mold, construction defect, construction delay, business interruption, time element, cyber liability and environmental claims, and related class actions, including disputes involving underwriting and claim handling errors.

I am the author of a nationally recognized book on insurance entitled "How Insurance Companies Settle Cases," which is distributed by James Publishing. In addition, I speak periodically at seminars on insurance coverage issues, including but not limited to, proper

insurance claims handling practices. I have also spoken on insurance issues as a guest lecturer at Golden Gate University Law School.

I have extensive experience in the evaluation of claims under various personal injury related coverage forms, including but not limited to, forms providing coverage for various forms of liability coverage for the enumerated advertising injury offenses involving allegations of defamation and disparagement trade that can subject an insured to financial liability based on actual and statutory damages. This coverage for advertising injury is often part of packaged policy forms and often includes broad coverage for offenses and resulting damage as stated in the policy terms.

I currently act as an expert witness, insurance claim consultant, and attorney who is retained both by insurers and policyholders. A list of the cases in which I have testified in deposition or at trial in the last four years is attached as **Appendix B**. Further, a list of my publications over the past 10 years is attached as **Appendix C**. A list of the documents and materials I have reviewed in conjunction with this report are attached as **Appendix D**.

I have agreed to serve as an expert witness for Defendant and Cross-Defendant SVO Building one (”SVO”) in the above-entitled action. I am being compensated at my customary rate of $700 per hour for all work. My compensation in this matter is in no way contingent on the content of my opinion or the outcome of this or any other matter.

## II. OVERVIEW AND EXECUTIVE SUMMARY

This insurance coverage action was initiated by Navigators against its insured SVO. Navigators is seeking reimbursement for over $5 million in what it characterizes as uncovered defense fees and expert costs in the underlying Vertiv v. SVO arbitration. SVO has counter claims included: (1) breach of insurance contract, (2) tortious breach of insurance contract, and (3) unfair competition, arising from Navigators’ defense of the Arbitration. Upon tender by SVO of the Arbitration, Navigators agreed to defend SVO under a reservation of rights, acknowledging there were allegations of a “covered personal and advertising injury offense [which] included defamation”.

However, notwithstanding its agreement to accord SVO a full defense, based on my review of case records, discovery documents, and deposition transcripts, it is my opinion that Navigators' claims handling practices with regard to the arbitration failed to comply and were far below insurance industry custom and practice and standards. Specifically, in my opinion, Navigators deviated from those standards as follows: (a) by failing to adequately and properly investigate SVO's claim at the outset of the arbitration by allowing defense counsel to arbitrarily segregate attorneys fee and expert bills into affirmative and defense claims and not reviewing all the bills to make sure that all reasonable and necessary bills related to the defense are paid; (b) failing to acknowledge SVO's right to have its defense fees and costs fully funded up front subject to Navigators reservation of rights under Buss; (c) erroneously withdrawing the defense of SVO when the defamation cause of action was dismissed without prejudice even though there were still numerous allegations in the operative complaint of defamation and disparagement which required Navigators to continue to defend and the defamation claim could have been brought back into the case because it was dismissed without prejudice (d) failing to supervise the litigation adequately and properly select competent defense counsel who had adequate qualified staffing to defend SVO in a more cost effective manner so as not to run up billing based on excessive and needless work; (e) Allowing panel counsel to unilaterally determine how much of its billing will be allocated to affirmative claims vs. a defense; (f) By not agreeing to resume its duty to defend and fully defend after its denial of coverage Navigators waived its right to assert any reservations of rights as a matter of insurance industry custom and practice;(g) By not disclosing to SVO that the Navigators policy does not provide coverage for attorneys fee liability for the breach of contract claim, Navigators unnecessarily exposed SVO to increasing potential uncovered liability as the case progressed; (h) Navigators defense was so inadequate and underfunded SVO was forced to hire its own counsel at its own expense to settle the case; (i) Following settlement and until present, Navigators still failed to pay hundreds of thousands in attorneys' fees and expert costs.

It is also my opinion that, by engaging in the conduct outlined above, Navigators repeatedly failed to adhere to longstanding insurance industry customs, practices, and standards overall in the handling of its defense and indemnity obligations as to the Arbitration and favored its own financial interests above the interests of SVO. SVO asserts Navigators repeatedly and improperly used panel counsel to segregate the legal bills and expert fees to enable Navigators to reduce or potentially vitiate its defense coverage obligations as to the Arbitration. According to SVO, Navigators repeatedly instructed panel counsel to engage in conduct that prejudiced SVO's defense, by failing to pay necessary costs and expert fees incurred in the defense of the Action. According to SVO Navigators consistently and repeatedly failed to appoint new counsel to defend SVO, despite the numerous conflicts that existed between and among Navigators, SVO and panel counsel, and panel counsel's repeated incompetence defending SVO in the Arbitration. It is my understanding that the analysis of billing and defense funding issues is ongoing because of the volume of relevant documents. I reserve the right to update and supplement my opinion on these issues based on the disclosure of additional documents discovered in this case.

The opinions set forth in this report are based on my review of the available portions of the Navigators claim file, claim correspondence, the relevant insurance policies, certain pleadings in the underlying Vertiv Action and certain pleadings and motion practice in this coverage lawsuit, the transcripts of the deposition taken in this action and other pertinent materials identified in Appendix D. My opinions were also formed based on my 41 years of experience dealing with and being in the insurance industry, the knowledge I have developed as to appropriate claims handling practices based on my career as a claims adjuster, claims manager and in-house counsel, coverage counsel and the insurance regulations and requirements that govern claims handling practices by the California Insurance Commissioner.

## III. The Navigators policy

### Navigators' Insurance Policies and Pertinent Exclusions

Navigators initially agreed to provide a defense of the arbitration under its commercial general liability policy No. LA17CGL219162IC effective 7/12/17-8/12/19. Navigators initially

agreed that the duty to defend was triggered because: ”The litigation alleged defamation against SVO, which is the only allegation contained in this litigation which potentially qualifies as a numerated “personal or advertising injury or offense. (See October 19, 2019, letter from Navigators counsel Simantob) In the October 19, 2019, letter Mr. Simantob also mentioned the disparagement allegation was part of what triggered the duty to defend. However, -Navigators’ claims representative Angel Muth ignored those allegations when she erroneously and wrongfully denied coverage on March 31, 2021.

## IV. Explanation of Opinions

a. Improper segregation of attorneys’ fees and costs.

Navigators put its financial interests of Navigators ahead of those of SVO and by engaging in defense litigation strategies which were detrimental to and injured SVO, such as Navigators allowing its panel counsel to segregate attorney fees and expert costs into affirmative and defensive claims, which is contrary to its reservation of rights and the Buss v. Superior Ct. 16 Cal.4th 40(1997) decision. Under Buss the insurer is supposed to fully fund the defense upfront and not force the insured to fund part of its defense. Instead SVO stood Buss on its head by not fully funding the defense under the policies. It is my understanding Navigators improperly relied in its panel counsel to segregate out these fees, without ever reviewing these omitted fees and expenses to see if they were part of a full defense. Notwithstanding the defense firms’ ethical obligations to avoid conflicts by depriving its clients with a full defense, Navigators had an independent duty to make sure that its insured’s defense was being fully funded. This failure to fund or in the alternative reimburse SVO for these fees and costs forced SVO to engage in a two front war to minimize its liability in the Arbitration, and to later file its counterclaims to get its policy benefits reimbursed in full for the Arbitration. Insurance industry custom and practice requires that an insurer never put its own financial interest ahead of those of its policy holder. In this case, the past and ongoing conduct of Navigators demonstrates that its primary focus was and is limiting its own liability for defense fees and costs rather than looking to minimize the financial exposure of SVO.

b. Navigators never acknowledged SVO's right to have its defense fees and costs fully funded up front subject to Navigators reservation of rights under Buss.

The reservation of rights asserted by Navigators did not allow them to pre-emptively reduce or separate out fees and costs that could be related to the defense. Under Buss this activity is only permitted after the defense of the insured is funded and completed. Further the insurer must be able to discern from the billing those distinct billing entries which related only to uncovered causes of action. Because the billings were generated by panel counsel selected by Navigators there is an inherent conflict present. GRSM and Tyson & Mendes have for many decades been focused on serving the interests of insurance companies either in defense insurers in coverage/ bad faith suits or providing panel counsel for policyholder while being paid by insurers. For example, GRSM states on its website as follows:

*GRSM has an established record of success in representing insurers across the United States in primary and excess general liability matters. Whether providing coverage advice or representing our insurer clients in cutting-edge general liability insurance litigation, our attorneys apply a focused approach to implement efficient and effective strategies that meet not only short-term litigation goals but also the clients' long-term business goals.* (https://www.grsm.com/practice/insurance/general-liability-coverage/

On Tyson and Mendes' website it states as follows:

*Tyson & Mendes is experienced in representing primary insurers, excess insurers, life, health and disability insurers, reinsurers, and claims management organizations in the complete range of matters involving third and first party insurance and bad faith issues. Our representation has encompassed a broad scope of issues, including those associated with asbestos, products, pollution, construction defects, advertising injury, commercial disputes, and rescission actions.*

*We provide our insurance clients with a full range of pre-litigation counseling services, including: evaluating the legal and factual bases for requests by policyholders or beneficiaries for insurance coverage or benefits, and responding to such requests; assessing and handling demands for Cumis counsel; providing formal written legal opinions as to the existence and scope of insurance coverage, if any; and advising clients on practical alternatives to litigation.*

*If litigation is necessary, we have substantial expertise in handling insurance litigation in state and federal courts across the nation.* (https://www.tysonmendes.com/practice-areas/bad-faith-insurance-defense/

Because SVO had no input into the formulation or presentation of these bills or they are being put in a situation where their claim for defense reimbursement is prejudiced, in violation of insurance industry custom and practice. It is a violation of insurance industry custom and practice to assign such defense tasks to firms such as GRSM and Tyson & Mendes, when there was severe disagreement about the scope of coverage that will be provided.

c. Erroneously withdrawing the defense.

The March 3, 2021, letter from SVO's counsel pointed out that there are still factual allegations of defamation and disparagement and property damage alleged in the complaint despite the withdrawal without prejudice of the defamation cause of action.( See Murray letter to Simantob May 3, 2021) These allegations which had not been dismissed or refuted meant that under insurance industry custom and practice there was potential liability faced by SVO in the Arbitration. This meant the Navigators should have known there was a continued duty to defend. Nevertheless, Navigators denied coverage without just cause or reason.

d. To supervise the litigation adequately and properly select competent defense counsel who had adequate qualified staffing to defend SVO in a more cost-effective manner so as not to run up billing based on excessive and needless work.

Given the fact that Navigators was continually asserting its right to seek reimbursement of much of the attorneys' fees and costs it was expending on behalf of SVO, it was incumbent on Navigators to monitor and make sure litigation fees and costs were reasonable and necessary for the defense of the case. Unfortunately, Navigators failed to monitor or supervise the litigation as required under insurance industry. This was to the great prejudice of SVO because it meant that they were not getting the full defense on all the issues in the case and they would be faced with an unreasonable inflated fees and cost bill that Navigators was going to try recover at the conclusion of the Arbitration.

e. Allowing panel counsel to unilaterally determine how much of its billing will be allocated to affirmative claims vs. a defense.

By allowing defense counsel appointed by Navigators to segregate out portions of the bill and not send other portions of the bill to Navigators for review and payment, defense counsel was predetermining whether such bills would be reimbursable defense fees and expenses. Not only is this practice prohibited under the Buss reservation, but it also put the panel counsel in a conflict because it forced the defense firms who already have a divided loyalty into make the sole determination if the insured is entitled to coverage. Under insurance industry custom and practice this is a non-delegable duty that cannot be assigned to panel counsel.

f. By not agreeing to resume its duty to defend and fully defend after its denial of coverage Navigators waived its right to assert any reservations of rights as a matter of insurance industry custom and practice

Under insurance industry custom and practice a denial is coverage is the final word from the insurer that its investigation has concluded, and it does not want or need to be involved in the case going forward. When Navigators withdrew from the defense 15 days after the March 31, 2021, letter, SVO had no obligation to cooperate with Navigators in its defense of the Arbitration. Navigators communicated six weeks later that it wished to resume the defense on behalf of SVO under the condition it could maintain its reservation of rights. This was an invalid attempt to insert itself back into the case without just cause or reason. Because Navigators made it clear it had no duty to defend it therefore had no right to interfere or further participate in the defense. Under insurance industry custom and practice a non-defending insurer cannot preserve it policy rights and limitations. It rights to assert the basis for policy defense under a reservation are only for insurers who acknowledge a duty to defend. I am not aware of any agreement or understanding from SVO that they agreed to this gratuitous defense or otherwise agreed the Navigators other policy defense are reserved.

g. By not disclosing to SVO that the Navigators policy does not provide coverage for attorneys' fee liability for the breach of contract claim, Navigators unnecessarily exposed SVO to increasing potential uncovered liability as the case progressed.

As part of Vertiv's $9 million contract claim it was also seeking an award of attorneys' fees and costs if it was a prevailing party. While Navigators issued it reservation of right letters it never informed SVO that under the supplementary payments clause this claim for attorney's fees was excluded. Specifically, Navigators promised to pay: "e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorney expenses taxed against the insured." This meant that as the Arbitration progressed SVO faced ever increasing potential liability for attorneys' fees and costs which would not be covered by Navigators if Vertiv was determined to be a prevailing party in the arbitration. This misconduct by Navigators compounds the already existing failure to full fund and supervise the defense.

h. Navigators' defense was so inadequate and underfunded SVO was forced to hire its own counsel at its own expense to conduct the defense and settle the case.

Prior to completing this report, I spoke with SVO's attorney's fee expert Ken Moscaret. According to his analysis, and as a result of the ongoing failures to fully fund the defense and fund urgently needed expert work in the Arbitration, SVO was forced to hire an additional attorney to participate in the defense and negotiate a settlement. I agree with Mr. Moscaret's analysis and incorporate his opinions into this report. There is no indication that Navigators has considered reimbursing SVO for any portion of that additional attorney's fees in this case. This conduct would be considered another violation of insurance industry custom and practice.

**i.** Following Settlement and Until Present, Navigators Still Failed to Pay Hundreds of Thousands in Attorneys' Fees, Expert Costs and Expenses

Under insurance industry custom and practice an insurer has an ongoing obligation to adjust the claim not withstanding pending litigation between insurer and policyholder. The fact that Navigators has not reconsidered its positions on failing to fully fund the defense and has not taken time to admit and correct its substandard conduct and claims handling mistake, reflects that Navigators' unreasonable bad faith conduct is ongoing to the present day.

## IV. CALIFORNIA INSURANCE REGULATIONS AND INDUSTRY CUSTOMS, PRACTICE AND STANDARDS OF CLAIMS HANDLING PRACTICES

Insurance industry custom and practice require that insurance company claims handlers follow all applicable insurance regulations and statutes that apply to the handling of insurance claims when adjusting an insurance claim. Navigators is an admitted insurer in California.

Industry custom and practice and California claims handling regulations require that all adjusters or "claims agents" handling such California insurance claims receive the proper training in all applicable California claim-handling regulations. All claims agents are subject to the following training requirements:

> (a) Every insurer shall adopt and communicate to all its claims agents written standards for the prompt investigation and processing of claims and shall do so within ninety (90) days after the effective date of these regulations or any revisions thereto.
>
> (b) All licensees shall provide thorough and adequate training regarding these regulations to all their claims agents. Licensees shall certify that their claims agents have been trained regarding these regulations and any revisions thereto. However, licensees need not provide such training or certification to duly licensed attorneys.
>
> A licensee shall demonstrate compliance with this subsection by the following methods:
>
> (1) where the licensee is an individual, the licensee shall annually certify in writing under penalty of perjury that he or she has read and understands the regulations and any and all amendments thereto;
>
> (2) where the licensee is an entity, the annual written certification shall be executed, under penalty of perjury, by a principal of the entity as follows:
>
> (A) that the licensee's claims adjusting manual contains a copy of these regulations and all amendments thereto; and,
>
> (B) that clear written instructions regarding the procedures to be followed to effect proper compliance with this subchapter were provided to all its claims agents;
>
> (3) where the licensee retains independent adjusters as defined in California Insurance Code Section 14021, the licensee must provide training to the insurance adjusters regarding these regulations and annually certify, in a declaration executed under penalty of perjury, that such

> training is provided. Alternately, the insurance adjuster may annually certify in writing, under penalty of perjury, that he or she has read and understands these regulations and all amendments thereto or has successfully completed a training seminar which explains these regulations;
>
> (4) a copy of the certification required by subsections 2695.6(b) (1), (2) or (3) shall be maintained at all times at the principal place of business of the licensee, to be provided to the Commissioner only upon request.
>
> (5) the annual certification required by this subsection shall be completed on or before September 1 of each calendar year.

CCR tit. 10, § 2695.6. Including pursuant to industry custom and practice, Navigators claim personnel were required to receive this training under California law.

## V. THE COVENANT OF GOOD FAITH AND FAIR DEALING AND INDUSTRY CUSTOMS, PRACTICE AND STANDARDS OF CLAIMS HANDLING PRACTICES

In California, the custom and practice in the insurance industry as relevant to the covenant of good faith and fair dealing includes, *inter alia*, the following:

> Upon receipt of the claim the insurer must ascertain, describe and disclose to the insured all possible coverage under the applicable policies.
>
> All aspects of potential coverage must be explored and investigated, and disclosed to its insured, and a failure to do so can result in the entire remainder of the claim being mishandled, the result of which is that the policyholder is deprived of the promised policy benefits.
>
> If the insurer is reserving its rights to disclaim coverage it must ascertain if there is an overlap between the coverage defenses and the liability issues, to determine if there is a need to give the insured an opportunity to retain independent defense counsel to be paid by the insurer.
>
> If the claim is based on both actual financial damages sustained by a claimant and statutory damages imposed by law, the insurer and its defense counsel should perform thorough and complete liability and damage evaluations as part of the claim process.
>
> If the liability and damages evaluation performed by the insurer indicates the amount of available coverage is insufficient to pay

> such liability, damages and costs the insurer is obligated to promptly inform the insured of this information in an excess letter.
>
> If there are limitations on coverage those limitations must be fully disclosed to the insured in writing at the outset of the claim through a comprehensive reservation of rights, and these reservations of rights must be continually updated so that the insured is aware of all available policy benefits.
>
> A proactive claim investigation must then proceed, utilizing all the resources of this insurer and providing active assistance to the policyholder so that the claim can be processed.
>
> When determining the scope of coverage in the policy the insurer should always be guided by the policy language and not impose additional requirements or conditions to in a policy application or on later made claims to prove coverage, when no such restrictions or limits are stated in the policy terms.
>
> If, however, there is a determination is that coverage is not owed, the insurer is obligated to explain, in writing, the factual and legal bases for that determination. See for example Cal. Ins. Code § 790.03(h)(13); CCR § 2695.7(b)(1). The positions articulated therein must be reasonable, a requirement that means that the determination is supported by verified facts and derived from a full, fair, thorough, and objective investigation and based upon a reasonable interpretation of the applicable policy language.

It is an insurance custom and practice for the insurer to give at least equal regard to its insured's financial interest as it gives to its own interests, and never to put its own financial interests ahead of those of its insured. In my experience working for insurance companies and training claims adjusters, we were consistently made aware of these standards and principles. Based on over three decades of experience, I know that most insurers and claim handling personnel are aware of and work hard to comply with these basic standards and principles. These principles are well understood to claims departments, claims adjusters, and claims handlers in the insurance industry.

It is widely understood in the insurance industry that a deviation from these insurance industry customs and practices as described above would be evidence of inadequate and

substandard claims handling practices and could expose the insurer to "bad faith" liability. Based on my experience and review of the file materials in this case, and the observed substandard claim handling practices, it appears that Navigators failed to properly train, implement and monitor the claim handling practices of its personnel with respect to the defense of the adidas Action. As further discussed in this report, Navigators deviated substantially from all of these industry customs and practices in its handling and defense of the arbitration on behalf of SVO.

## VI. NAVIGATORS' CONDUCT FAILED TO MEET INDUSTRY CUSTOMS, PRACTICE AND STANDARDS OF CLAIMS HANDLING PRACTICES

Based on the foregoing conduct, it is my further opinion that Navigators failed to meet insurance industry customs, practices, and standards, including as follows:

Given the conflicts of interest and overlap of the liability and coverage issues in the defense of the Arbitration Navigators should not have assigned a defense law firm which actively focuses on defending the financial interests of the insurance industry. When assigning cases to defend to counsel, the insurer must make sure that the firm assigned will be conflict free and not have the potential of dual loyalties to the insurer and the policyholder. In this case, Navigators was or should have been aware that, for the last many decades, these firms have dedicated a substantial amount of their law practice to the defense of insurers in coverage and bad faith litigation. By assigning the defense of the Arbitration to GRSM and Tyson & Mendes Navigators violated insurance industry custom and practice for failing to determine if these firms' loyalty and advocacy of the insurance industry would hinder or jeopardize the defense of SVO.

Navigators did not adequately inquire into or evaluate the knowledge, experience and training of defense counsel for this complex case. One could characterize the arbitration as a "bet the company case" because of the huge potential financial exposure it presented. It was also a complex claim, involving both state and federal based claims based on alleged violation of patent

and copyright laws, licensing and construction issues. The analysis of these claims required, among other things, the retention of numerous expert witnesses preparing initial and rebuttal reports, which should have been funded as part of the defense.

Among other deficiencies in its conduct of the defense, Tyson & Mendes failed to respond adequately to repeated motions by Vertiv for sanctions for the failure to produce documents which ultimately resulted in the arbitrator excluding evidence of a claim under SVO's cross-complaint worth $10 million. Tyson & Mendes also failed to tender the complaint in the underlying action to SVO's other liability insurer, Hallmark. When SVO's personal counsel subsequently tendered the claim, that insurer agreed to pay half of the defense costs. If Tyson& Mendes had timely tendered the complaint, Navigators' claim would be almost $500,000 less.

The failure to reimburse all reasonable and necessary defense fees and costs meant there was an underpayment of the defense obligation, which constituted a de-facto denial of coverage. The failure to fully fund a defense means that an insured is deprived of the full defense promised by the insurer under insurance industry custom and practice. Where, as here, there is a significant underfunding of the defense and a delay and/or refusal to pay or reimburse defense related attorneys' fees and related expert costs, this underfunding can be considered a de-facto denial of coverage.

By not affording independent counsel and relinquishing control of the defense to SVO, so that the case could be resolved or possibly settled in order to avoid or minimize this financial exposure, Navigators was gambling with SVO's financial future and putting its own financial interests ahead of those of its policy holder.

Navigators failed to identify and correct serious ongoing claim handling errors in connection with this action, thereby forcing SVO to counterclaim Navigators to get reimbursement of its defense fees and costs and the settlement contribution, among other things. Under insurance industry custom and practice, an insurer is supposed to develop, implement and train its claim personal on necessary claim handling guidelines so that litigated claims, such as the Arbitration, are fully defended, and the insured is not only reimbursed all reasonable and

necessary defense fees and costs, but the insurer also actively participates in settlements so that the insured's liability can be, if possible, resolved with available policy limits. Because of Navigators refusal to fully fund or otherwise reimburse SVO for over $5 million in defense fees and expert costs Navigators breached its obligation and forced SVO to be the one who primarily defended and settled the Arbitration, rendering Navigators' commitment to defend illusory.

My opinions are based upon the information and data presently available to me. I understand that certain discovery is ongoing. Additional, different and/or updated information and data may be obtained in advance of trial. I therefore reserve the right to amend or modify my opinions and anticipate supplementing these opinions when such new information or data becomes available.

Executed on this 15th day of October 2025 at San Diego, California.

David H. Frangiamore