Shawn Shaffie (SBN 262002)
shaffie@parkershaffiellp.com
Bruce T. Smyth (SBN 89171)
smyth@parkershaffiellp.com
Adam J. Telanoff (SBN 159761)
telanoff@parkershaffiellp.com
Edward Baker (SBN 311439)
baker@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 W. 6th Street, Suite 500
Los Angeles, California 90017
Telephone: (213) 622-4441
Facsimile: (213) 622-1444

Steven W. Murray (SBN 41493)
swm@psilaw.com
**STEVEN W. MURRAY, APC**
14930 Ventura Boulevard #205
Sherman Oaks, CA 91403
Telephone: (818) 501-2277
Facsimile: (818) 501-8441

Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,, <br><br> Plaintiff, <br><br> v. <br><br> SVO BUILDING ONE, LLC, <br><br> Defendant. | Case No. 3:22-CV-07102-AMO <br> [Assigned to Hon. Aracelí Martínez-Olguín] <br><br> **DECLARATION OF JEAN-PAUL JASSY IN SUPPORT OF SVO BUILDING ONE, LLC'S OPPOSITION TO NAVIGATORS SPECILAITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date: March 5, 2026 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 10, 19th Floor |
| SVO BUILDING ONE, LLC <br><br> Counterclaimant, <br><br> v. <br><br> NAVIGATORS SPECIALTY INSURANCE COMPANY, <br><br> Counter-defendant. | |

**DECLARATION OF JEAN-PAUL JASSY**

I, Jean-Paul Jassy, declare as follows:

1. I am a retained expert on behalf of Defendant and Counterclaimant SVO Building One, LLC ("SVO") in the above-entitled action. I am at least eighteen (18) years of age. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I make this declaration in support of SVO's Opposition to Navigators Specialty Insurance Company's ("Navigators") Motion for Summary Judgment filed in the matter of *Navigators Specialty Insurance Company v. SVO Building One, LLC*, in the Northern District of California, Case No. 3:22-CV-07102-AMO.

3. A true and correct copy of Expert Report dated October 15, 2025, is attached hereto as **Exhibit 1** – it is fully incorporated herein by reference. My Expert Report discusses in detail my qualifications, the scope of my opinions, the materials and documents relied upon in forming the basis of my opinions, and a summary of my opinions. The following is a brief summary of my opinions, which are discussed in detail in the Expert Report and incorporated herein by reference.

**Summary of Opinions**

4. The scope of my expert engagement in the current action is to evaluate, discuss and offer opinions on behalf of SVO with respect to the legal work and costs necessary to defend against the defamation cause of action, and the defamation-related and "disparagement," allegations in the underlying action styled *Liebert Corporation v. SVO Building One, LLC*, American Arbitration Association, No. 01-18-0003-1318 (the "Underlying Arbitration").

5. The dismissal of the defamation cause of action without prejudice means that it could still be asserted again in the future, and is (or at least was) therefore a matter of abiding concern. Moreover, although the defamation claim was dismissed, at least two of the remaining causes of action in the Fourth Amended Complaint ("4AC") in the Underlying Arbitration, the fifth cause of action for unfair competition in violation of California Business & Professions Code §§ 17200, et seq. (the "UCL") and the fourteenth cause of action for intentional interference with contractual

relations) still alleged harm from purportedly false assertions of fact, alleging, *inter alia*, "disparagement" of Vertiv.

6. "Disparagement" is a broad term that is recognized in some contexts, but is not as well-defined in the law as defamation, and it is still subject to constitutional and other limitations such that it cannot be used by plaintiffs as an end around a defamation claim. Indeed, such allegations may have defenses akin to those available to a defamation claim, and would need to be defended against accordingly to be sure that such claims are not used as mechanisms by plaintiffs to get around the constitutional, statutory and common law protections against defamation claims. Moreover, "disparagement" and other similar types of allegations are often embedded in other causes of action that require a careful examination and analysis. Here, the work done defending against both the defamation claim, while it was operative in the Underlying Arbitration, as well as work done defending against claims that still alleged harm from allegedly "disparaging" statements in the Underlying Arbitration, were necessary to provide a fulsome and zealous defense for SVO.

7. In order to properly defend against the foregoing, it would be important to fully understand and evaluate, as to each allegedly defamatory, disparaging and purportedly injurious false statement or implication, referenced in the fifth cause of action for violation of the UCL, fourteenth cause of action for intentional interference with contractual relations, and fifteenth cause of action for defamation, a great deal of information that generally overlaps with many other factual issues and claims in the Underlying Arbitration.

8. As explained in greater detail in the attached Report, if I were retained to defend against the defamation cause of action and defamation-related and "disparagement" allegations in the Underlying Arbitration, I would have needed to understand the entire, comprehensive factual background with respect to "disparagement" and prepare to defend numerous factual and legal claims and strategies that overlap with the claims at issue in the Underlying Arbitration.

9. In order to properly understand and evaluate the pertinent allegations, claims and defenses discussed above, I would at the very least:

a. Request and review all pertinent SVO and accessible third party documents concerning the foregoing allegations and claims;

b. Interview all pertinent percipient former and current SVO employees and cooperative third parties concerning the foregoing allegations and claims;

c. Propound (and expect to respond to) written discovery (requests for production, interrogatories and requests for admission) and take (and expect to defend) party and third party depositions concerning the foregoing allegations and claims.

d. Evaluate whether to identify, interview, engage and prepare experts and consultants concerning the foregoing allegations and claims.

10. I would also want to be prepared for, and participate in, all hearings—including the arbitration itself—having to do with the case post-filing of the 4AC unless the issues anticipated to be under consideration at a particular hearing were truly and clearly distinct and separate from those relating to allegedly defamatory, false or disparaging statements and implications, as discussed above.

11. The attached Report, incorporated herein by reference, provides greater detail on the extent of the overlapping investing, factual development and legal strategy associated with defending these covered claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of December 2025, at New York, NY.

[signature]

Jean-Paul Jassy

# EXHIBIT "1"

# Navigators v. SVO

# Report of Jean-Paul Jassy
October 15, 2025

# REPORT OF JEAN-PAUL JASSY

I was retained by Parker Shaffie, LLP ("PS"), counsel for defendant SVO Building One, LLC ("SVO"), in the matter of *Navigators Specialty Insurance Company v. SVO Building One, LLC*, United States District Court for Northern District of California, No. 3:22-cv-07102-AMO (the "Action"). The following is my report.

## I. STATEMENT OF OPINIONS AND BASES FOR OPINIONS

1. The Action here arises from an underlying action styled *Liebert Corporation v. SVO Building One, LLC*, American Arbitration Association, No. 01-18-0003-1318 (the "Underlying Action"). I understand that the plaintiff in the Underlying Action changed its name to Vertiv Corporation ("Vertiv") in 2018, and added a defamation cause of action in the Underlying Action to the Fourth Amended Complaint ("4AC") on or about July 11, 2019. I understand that, on or about March 24, 2021, Vertiv dismissed its defamation cause of action without prejudice from the 4AC. The dismissal of the defamation cause of action without prejudice means that it could still be asserted again in the future, and is (or at least was) therefore a matter of abiding concern. Moreover, although the defamation claim was dismissed, at least two of the remaining causes of action in the 4AC (the fifth cause of action for unfair competition in violation of California Business & Professions Code §§ 17200, et seq. (the "UCL") and the fourteenth cause of action for intentional interference with contractual relations) still alleged harm from purportedly false assertions of fact, alleging, *inter alia*, "disparagement" of Vertiv. "Disparagement" is a broad term that is recognized in some contexts, but is not as well-defined in the law as defamation, and it is still subject to constitutional and other limitations such that it cannot be used by plaintiffs as an end around a defamation claim. Indeed, such allegations may have defenses akin to those available to a defamation claim, and would need to be defended against accordingly to be sure that such claims are not used as mechanisms by plaintiffs to get around the constitutional, statutory and common law protections against defamation claims. Moreover, "disparagement" and other similar types of allegations are often embedded in other causes of action that require a careful examination and analysis. Here, the work done defending against both the defamation claim, while it was operative in the Underlying Action, as well as work done defending against claims that still alleged harm from allegedly "disparaging" statements in the

Underlying Action, were necessary to provide a fulsome and zealous defense for SVO. I understand that the Underlying Action, including all remaining claims and counterclaims, was dismissed with prejudice on or about January 4, 2022.

2. I was asked by PS to evaluate and discuss, based on my experience, the work I would do to defend against the defamation cause of action, and the defamation-related and "disparagement," allegations in the Underlying Action. If I were retained to defend against the defamation cause of action and defamation-related and "disparagement" allegations in the Underlying Action, I would have needed to understand and prepare to defend as to the following:
    a. The factual and legal bases for the allegations, causes of action, and potential defenses, concerning the following in the 4AC:
        i. "Without limitation, at least the following acts by SVO were unfair business acts: … seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project … Without limitation, at least the following acts by SVO were fraudulent business acts: … seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project … As a direct and proximate cause of the wrongful conduct of SVO, Vertiv has been injured in fact. For example, as a direct consequence of the acts of SVO, SVO are [*sic*] using Vertiv's intellectual property and work product to complete Phase 1 of the Project and to design and construct Phases 2 and 3 of the Project, which erodes Vertiv's reputation as a designer and builder of data centers and provides an unjustified cost savings to SVO. Such harm will continue unless the acts of SVO are enjoined by the Court. Vertiv has no adequate remedy at law for the continued acts of unlawful, unfair and fraudulent business practices by SVO." 4AC ¶¶ 55, 56, 57.
            1. These broad allegations appear in the 4AC's fifth cause of action for "Violation of Unfair Competition Law".
            2. California's UCL is often used by plaintiffs as a "catch-all" to allege unfair or fraudulent business conduct that incorporates allegations akin to defamation claims, and that would and should be subject to the same analysis and defenses as a defamation claim.

ii. "SVO improperly and intentionally interfered with Vertiv's contract with DPR in various manners, including but not limited to routinely engaging in secretive and unauthorized direct communications with DPR personnel regarding the work and services DPR was performing for Vertiv on the jobsite and disparaging Vertiv's work." 4AC ¶ 146.

1. This allegation appears in the 4AC's fourteenth cause of action for intentional interference with contractual relations. Plaintiffs often allege, as Vertiv did here, that statements of a defamatory or disparaging nature resulted in an interference with contractual relations.
2. The allegation of "disparaging Vertiv's work" is particularly broad.
3. The interference cause of action "incorporates by reference each and every allegation in [all of the 4AC's preceding] paragraphs 1 through 142, as though set forth fully herein." 4AC ¶ 143. This broad incorporation by reference arguably sweeps in all prior allegations to the interference claim, which significantly broadens the potential scope of the claim, requiring an exhaustive approach to determining what is or is not actually at issue in the interference claim that would, in turn, require extensive discovery.
4. In such a circumstance, an argument can and should be considered that the allegations are a disguised defamation claim that should be subject to the constitutional, statutory and common law limitations circumscribing defamation claims, and/or is duplicative of a defamation claim.

iii. The entire fifteenth cause of action for defamation. 4AC ¶¶ 150-154.

1. The defamation cause of action "incorporates by reference each and every allegation in [all of the 4AC's preceding] paragraphs 1 through 149, as though set forth fully herein." 4AC ¶ 150. This broad incorporation by reference arguably sweeps in all prior allegations to the defamation claim, which significantly broadens the potential scope of the defamation claim, requiring an exhaustive approach

to determining what is or is not actually at issue in the defamation claim that would, in turn, require extensive discovery.

2. The defamation cause of action fails to allege significant details, which, as a result,would require exhaustive discovery to pin down the full nature of the claim and available arguments and defenses. By way of examples only, Vertiv broadly includes the allegations that:
    a. "… SVO engaged in conduct aimed at disparaging Vertiv's work and reputation …," and then offers the following vague non-exclusive example: "Such conduct includes making numerous false statements to third parts on the jobsite and within the industry, including but not limited, [*sic*] falsely stating that commencement of equipment commissioning at the Project was delayed as the result of Vertiv's inability to manage the Project." 4AC ¶ 151.
    b. "At the time such statements were made, SVO was aware that commissioning of equipment on the Project had already commenced." 4AC ¶ 151.
    c. "SVO knew the foregoing statements and representations were false and/or failed to use reasonable care to determine the truth or falsity of such statements." 4AC ¶ 152.
    d. "SVO made these statements to, among others, representatives of DPR, Critical Project Services, LLC, and BCSFM, LLC, for the purpose of harming Vertiv's reputation." 4AC ¶ 152.
    e. "As a direct and proximate result of SVO publishing false and defamatory statements, Vertiv has been damaged in an amount to be proven at the arbitration of this matter." 4AC ¶ 153.
    f. "Moreover, in making the above false statements with the intention of harming Vertiv, SVO acted with malice, oppression, and/or fraud and Vertiv is entitled to the recovery of punitive damages." 4AC ¶ 154.

b. In order to properly defend against the foregoing, it would be important to fully understand and evaluate, as to each allegedly defamatory, disparaging and purportedly injurious false statement or implication, referenced in the fifth cause of action for violation of the UCL, fourteenth cause of action for intentional interference with contractual relations, and fifteenth cause of action for defamation, a great deal of information, including:
    i. the language of the purportedly defamatory and disparaging statements;
    ii. the reasonability of any purportedly defamatory and disparaging implications;
    iii. the context in which the purportedly defamatory and disparaging statements or implications were allegedly made;
    iv. whether the purportedly defamatory and disparaging statements or implications were actually published;
    v. when the purportedly defamatory and disparaging statements or implications were published;
    vi. to whom, specifically, the purportedly defamatory and disparaging statements or implications were published;
    vii. how the purportedly defamatory and disparaging statements or implications were published (e.g., orally, in writing, etc.);
    viii. whether the purportedly defamatory and disparaging statements or implications could reasonably lead to a diminishment of Vertiv's reputation;
    ix. whether the purportedly defamatory and disparaging statements or implications are defamatory on their face or they require additional extrinsic information or knowledge to understand their purportedly defamatory nature;
    x. whether, when, how and to whom the purportedly defamatory and disparaging statements or implications were allegedly republished;
    xi. whether any purported third party republications are at issue and could reasonably be attributed to SVO;
    xii. whether the purportedly defamatory and disparaging statements or implications could reasonably be understood to be about Vertiv;
    xiii. whether the purportedly defamatory and disparaging statements or implications asserted verifiable facts;

xiv. the veracity (or lack thereof) of the purportedly defamatory and disparaging statements or implications;

xv. whether Vertiv qualifies as a public figure or limited purpose public figure as to the purportedly defamatory and disparaging statements or implications;

xvi. the state of mind of the purported speaker(s) as to the truth of the purportedly defamatory and disparaging statements or implications;

xvii. the state of mind of the purported speaker(s) as to malice concerning the purportedly defamatory and disparaging statements or implications;

xviii. general and special damages allegedly attributable to the purportedly defamatory and disparaging statements or implications;

xix. Vertiv's purported entitlement to exemplary or punitive damages as to the purportedly defamatory and disparaging statements or implications;

xx. Vertiv's purported entitlement to injunctive relief as requested in the 4AC's prayer; and

xxi. the availability of potential defenses—*e.g.*, privilege, statute(s) of limitations, laches, failure to mitigate damages, consent, waiver, estoppel, substantial truth, unclean hands, contributory or comparative fault or negligence, offset, standing, opinion, lack of malice, etc.—and the existence of facts and applicable law to support each of those defenses.

c. In order to properly understand and evaluate the pertinent allegations, claims and defenses discussed above, I would want to:

i. Request and review all pertinent SVO and accessible third party documents concerning the foregoing allegations and claims;

ii. Interview all pertinent percipient former and current SVO employees and cooperative third parties concerning the foregoing allegations and claims; and

iii. Propound (and expect to respond to) written discovery (requests for production, interrogatories and requests for admission) and take (and expect to defend) part and third party depositions concerning the foregoing allegations and claims.

iv. Evaluate whether to identify, interview, engage and prepare experts and consultants concerning the foregoing allegations and claims, particularly as to:
    1. any technical aspects that would be helpful to disprove falsity or establish substantial truth;
    2. the reasonability of interpretations of allegedly defamatory, false or disparaging statements and implications that may require technical explanations; and
    3. reasonability and foreseeability of damages purportedly attributable to the allegedly defamatory, false or disparaging statements and implications.

d. I would also expect to contemplate preparing, and, if appropriate, bringing various motions as permitted by the arbitral body's rules, including one or more (as needed) of the following:
    i. Motion to dismiss
    ii. Motion to strike
    iii. Discovery motions
    iv. Motion for summary judgment or adjudication of issues
    v. Motions in limine
    vi. Pre- and post-arbitration briefing

e. And of course it would be important to prepare direct and cross examinations of pertinent witnesses as to the above-referenced causes of action and allegations, and address the same in opening and closing statements.

f. I would also want to be prepared for, and participate in, all hearings—including the arbitration itself—having to do with the case post-filing of the 4AC unless the issues anticipated to be under consideration at a particular hearing were truly and clearly distinct and separate from those relating to allegedly defamatory, false or disparaging statements and implications, as discussed above.

## II. MATERIALS AND INFORMATION CONSIDERED

3. PS provided me with the following materials to review and consider in forming my opinions for this report, some or all of which might also be used as exhibits at trial:
    a. Vertiv Corporation's Fourth Amended Complaint, dated, July 11, 2019;
    b. SVO Building One, LLC's Answer to Fourth Amended Complaint of Liebert Corporation, dated August 8, 2019;

c. Letter from Wilson Elser to SVO Building One, LLC, dated October 28, 2019;
d. Waiver Pursuant to California Civil Code Section 2860, dated December 7, 2020;
e. Letter from Navigators to SVO Building One, LLC, dated March 31, 2021;
f. First Amended Complaint for Declaratory Relief, dated February 15, 2024;
g. Navigators Specialty Insurance Company's Responses to SVO Building One, LLC's Interrogatories, Set No. One, dated August 25, 2025;
h. SVO Building One, LLC's Answer to First Amended Complaint, dated July 16, 2024;
i. Excel Sheet of Tyson & Mendes Billing Entries Dated November 2020;
j. Excel Sheet of Tyson & Mendes Billing Entries Dated December 2020;
k. Excel Sheet of Tyson & Mendes Billing Entries Dated January 2021;
l. Excel Sheet of Tyson & Mendes Billing Entries Dated February 2021;
m. Excel Sheet of Tyson & Mendes Billing Entries Dated March 2021;
n. Excel Sheet of Tyson & Mendes Billing Entries Dated April 2021;
o. Excel Sheet of Tyson & Mendes Billing Entries Dated May 2021;
p. Excel Sheet of Tyson & Mendes Billing Entries Dated June 2021;
q. Excel Sheet of Tyson & Mendes Billing Entries Dated July 2021;
r. Excel Sheet of Tyson & Mendes Billing Entries Dated August 2021;
s. Excel Sheet of Tyson & Mendes Billing Entries Dated September 2021;
t. Excel Sheet of Tyson & Mendes Billing Entries Dated October 2021;
u. Excel Sheet of Tyson & Mendes Billing Entries Dated November 2021; and
v. Excel Sheet of Tyson & Mendes Billing Entries Dated December 2021.

4. I reviewed the foregoing materials in preparing this report; although I only skimmed some materials that were not relevant to the issues before me. For example, I only skimmed the patents attached to the 4AC because that had no bearing on my report.
5. In preparing this report, I also relied on my experience and knowledge of litigating defamation and related claims over the past 25+ years, as well as my knowledge of such claims from having taught them at the law school level and keeping abreast of new case law and trends in the field.

## III. QUALIFICATIONS AND EXPERIENCE

6. I received a Bachelor of Arts in Political Science from the University of California, Berkeley in 1996, graduating with highest department honors. I received a Juris Doctor from the University of Southern California Gould School of Law in 1999. While in law school, I received the highest grade in my Constitutional Law II (First Amendment law) class taught by noted constitutional law scholar Erwin Chemerinsky.
7. I was an associate at Davis Wright Tremaine LLP from 1999 to 2003; an associate at Loeb & Loeb LLP from 2003 to 2004; an associate at Sheppard Mullin Richter & Hampton LLP from 2004 to 2007; a founding partner of Bostwick & Jassy LLP, where I worked from 2007 to 2013; and a founding member of Jassy Vick Carolan LLP from 2013 to the present. At each of those firms, and throughout my over 25 years of practicing law, most of my work has focused on First Amendment, media and entertainment litigation.
8. I have litigated hundreds of defamation cases, most of which have been at the trial court level in state and federal courts in California. I have also litigated defamation cases in the California Supreme Court, California Courts of Appeal, the United States Supreme Court, the United States Courts of Appeals for the Ninth, Fifth and District of Columbia Circuits, as well as federal district courts in Arizona, Texas, Wisconsin, West Virginia, the District of Columbia, and state trial court in Florida.
9. Many of my cases have also included claims for trade libel and other claims where the gravamen was allegedly injurious false speech, including UCL claims and claims for intentional interference with contractual relations.
10. In addition to litigation, I also routinely represent clients in responding to retraction and correction demand letters asserting defamation liability, and I also routinely vet content for defamation concerns before publication.
11. Most of my clients in defamation and related matters are media, entertainment and internet companies, but I also regularly represent other types of businesses and individuals in defamation and related matters.
12. I have taught defamation and related law as part of full length courses at three law schools: the University of Southern California Gould School of Law (co-taught two semesters of Constitutional Law II – First Amendment law); University of California, Irvine School of Law (taught four semesters of First Amendment law and one semester of Media Law); Southwestern Law School (co-taught and taught a total of three summer courses on Defamation, Privacy & Publicity). I also taught Legal and Ethical Issues in Journalism at UCLA Extension for four quarters, which included teaching about defamation

law. And I have served as faculty several times at the American Bar Association's Forum on Communications Law's Media Advocacy Workshop, which typically covers defamation law.

13. Among other accolades, I have been listed in *The Best Lawyers in America* since 2011 in my primary fields of practice, and the publication has named me the Los Angeles "Lawyer of the Year" seven times: for First Amendment Law (in 2016, 2019, 2021 and 2023), for Litigation-First Amendment (in 2015 and 2023), and for Media Law (in 2025). *Chambers and Partners* lists me in Band 1 for Media & Entertainment: First Amendment Litigation in California, and Band 2 for First Amendment Litigation nationally. I've also been listed by *Super Lawyers* since 2005, first as a "Rising Star" (2005 – 2014) and then as a "Super Lawyer" (2014 – 2025).

14. I am active in associations that routinely discuss and consider First Amendment legal issues, very often including defamation law. For example, next month I will be installed as the President of the Defense Counsel Section of the Media Law Resource Center, an international organization that provides media organizations and media attorneys with information, updates and analysis of media law issues, including and particularly in the field of defamation. I am on the Board of Directors of the First Amendment Coalition, a nonprofit organization dedicated to promoting a free press and freedom of expression. I am a former member of the Governing Board of the American Bar Association's Forum on Communications Law, which is designed to unite and educate attorneys on legal issues affecting the media, entertainment and technology industries, including developments in the law of defamation.

15. In the past ten years I have written the following published materials:
    a. Lead Co-Author, *Media Libel Law: 50-State Survey*, Ninth Circuit Chapter (LexisNexis & Media Law Resource Center), 2020-2025
    b. Contributing Author, *The Right to Know: A Guide to Public Access and Media Law* (California Newspaper Publishers Association & California First Amendment Coalition) 2007, and reprint/update 2022.
    c. Author, *In a Pickle?: Vetting and Litigating Docudramas*, 38 COMM. LAW. 3 (June 2023).
    d. Author, *The Legal Implications of Advertising Cannabis Across Different Media*, Cannabis Business Executive, Aug. 22, 2017.
    e. Co-Columnist, *First & Foremost*, monthly column on First Amendment issues for LOS ANGELES DAILY JOURNAL and SAN FRANCISCO DAILY JOURNAL, June 2016 – November 2017.

f. Authored articles for LOS ANGELES DAILY JOURNAL and MEDIA LAW RESOURCE CENTER's MEDIALAWLETTER on media law and First Amendment matters.

16. I have never testified as an expert at deposition or at trial.

## IV. COMPENSATION

17. PS has retained me as an expert in this matter at the rate of $795 per hour.

Jean-Paul Jassy