Shawn Shaffie (SBN 262002)
shaffie@parkershaffiellp.com
Bruce T. Smyth (SBN 89171)
smyth@parkershaffiellp.com
Adam J. Telanoff (SBN 159761)
telanoff@parkershaffiellp.com
Edward Baker (SBN 311439)
baker@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 W. 6th Street, Suite 500
Los Angeles, California 90017
Telephone: (213) 622-4441
Facsimile: (213) 622-1444

Steven W. Murray (SBN 41493)
swm@psilaw.com
**STEVEN W. MURRAY, APC**
14930 Ventura Boulevard #205
Sherman Oaks, CA 91403
Telephone: (818) 501-2277
Facsimile: (818) 501-8441

Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SVO BUILDING ONE, LLC,<br><br>Defendant. | Case No. 3:22-CV-07102-AMO<br>[Assigned to Hon. Aracelí Martínez-Olguín]<br><br>**DECLARATION OF STEVEN MURRAY IN SUPPORT OF SVO BUILDING ONE, LLC'S OPPOSITION TO NAVIGATORS SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 5, 2026<br>Time: 2:00 p.m.<br>Dept.: Courtroom 10, 19th Floor |
| SVO BUILDING ONE, LLC<br><br>Counterclaimant,<br><br>v.<br><br>NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>Counter-defendant. | |

**DECLARATION OF STEVEN MURRAY**

I, Steven Murray, declare as follows:

1. I am a representative of the party in the above-entitled action. I am at least eighteen (18) years of age. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I make this declaration in support of SVO Building One, LLC's ("SVO") Opposition to Navigators Specialty Insurance Company's ("Navigators") Motion for Summary Judgment filed in the matter of *Navigators Specialty Insurance Company v. SVO Building One, LLC*, in the Northern District of California, Case No. 3:22-CV-07102-AMO.

3. In or about April of 2021, I was retained by SVO to as insurance coverage counsel. I have personal knowledge of the insurance coverage issues involved in this matter, including the related documents and correspondence related to insurance coverage issues in the Underlying Arbitration, and therefore have sufficient knowledge to provide foundation for, and authenticate, the following correspondence attached to this declaration.

4. Attached hereto as **Exhibit 1** is a true and correct copy of a coverage letter from Navigators to SVO dated March 31, 2021.

5. Attached hereto as **Exhibit 2** is a true and correct copy of a letter from me to Hallmark Specialty Insurance dated April 19, 2021.

6. Attached hereto as **Exhibit 3** is a true and correct copy of a letter from me to Navigators' coverage counsel at Wilson Elser dated May 3, 2021.

7. Attached hereto as **Exhibit 4** is a true and correct copy of a letter from Hallmark Specialty Insurance to me dated May 13, 2021.

8. Attached hereto as **Exhibit 5** is a true and correct copy the acceptance of retender from Navigators' coverage counsel at Wilson Elser dated May 18, 2021. Navigators never responded or replied to this letter.

9. Attached hereto as **Exhibit 6** is a true and correct copy of a letter from me to Navigators' coverage counsel at Wilson Elser dated May 18, 2021. Navigators never responded or

replied to this letter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 11th day of December, 2025, at Los Angeles, California.

Steven Murray

Steven Murray

# EXHIBIT "1"

83 Wooster Heights Road
Danbury, CT 06810

Navigators
A BRAND OF THE HARTFORD

March 31, 2021

CERTIFIED MAIL & EMAIL: *upelz@PRIMEDATACENTERS.COM*
Ulrich Pez
SVO Building one, LLC
3140 Peacekeeper Way, Suite 101A
McClellan Park, CA 95652

RE: Liebert Corporation v. SVO Building One, LLC
American Arbitration Association Case No. 01-18-0003-1318

| | |
|---|---|
| Insured: | SVO Building One, LLC |
| Claim No.: | CGL325269 |
| Policy: | LA17CGL219162IC, effective 07/12/17 to 08/12/19 |
| Litigation: | *Liebert Corporation v. SVO Building One, LLC* |
| American Arbitration Association Case No. 01-18-0003-1318Date of Loss: | TBD |
| Project: | OCP Data Center Construction Project |
| Loss Location: | McClellan Park Building 637, 2407 AK Street, McClellan, CA |

Dear Mr. Pez:

As you know, Navigators has been providing a defense to SVO Building One, LLC ("SVO") with respect to the above referenced Arbitration matter (the "Litigation") under a full reservation of rights, as set forth in correspondence to you dated October 28, 2019.

As is set forth in the October 28, 2019 reservation of rights letter, the Litigation does not allege "bodily injury" or "property damage" caused by an "occurrence", as those terms are defined in the above-referenced policy (the "Policy"). As such, there would be no coverage for this matter under Coverage A of the policy. Furthermore, the allegation of defamation against SVO is the only allegation contained in the Litigation that potentially qualifies as an enumerated "personal or advertising injury" offense under Coverage B of the policy. In our October 28, 2019 reservation of rights letter, Navigators specifically reserved its rights to withdraw from the defense, deny a defense and/or indemnity, and to seek reimbursement from SVO for all or a portion of all sums paid or advanced by Navigators toward attorneys' fees, costs, investigation or any other sums paid by Navigators in connection with the Litigation based on allocation between potentially covered claims and non-covered claims.

We are in receipt of Liebert Corporation's Partial Dismissal Without Prejudice of various claims against SVO, including its defamation claim. Navigators has determined there is no coverage under the Policy for


© 2021 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published or used without the permission of The Hartford.

the remaining claims asserted against SVO in the Lawsuit. As Navigators has no duty to defend SVO for any "suit" seeking damages to which this insurance does not apply, **Navigators is withdrawing its defense of SVO in the Lawsuit on April 15, 2021, fifteen (15) days from the date of this correspondence**. Starting on that date, Navigators will no longer pay for any legal fees or expenses incurred on behalf of SVO in the Litigation. Navigators will also not contribute to any settlement involving, or judgment against, SVO in the Litigation. Tyson & Mendes, LLP is copied on this correspondence. Tyson & Mendes has been appointed by Navigators to defend SVO with respect to the Litigation, and SVO approved that appointment. Additionally, Navigators understands that SVO has entered into a separate engagement with Tyson & Mendes with respect to prosecution of SVO's affirmative claims in the Litigation. It is your responsibility to contact Tyson & Mendes regarding any continued engagement regarding representation of SVO in the Litigation.

Navigators continues to reserve all rights, including the right to seek reimbursement for all or a portion of all sums paid or advanced by Navigators toward attorneys' fees, costs, investigation or any other sums paid by Navigators in connection with the Litigation based on allocation between potentially covered claims and non-covered claims.

In the event you believe all or part of this claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, 11th Floor, Los Angeles, CA 90013; 800-927-4357 or 213-897-8921.

If you believe that any relevant facts are misunderstood by Navigators, or if you have any questions about Navigators' position, please feel free to contact me.

Sincerely,

Angel L. Muth
Claims Specialist
Direct #: (949) 255-4850
E-mail: angel.muth@thehartford.com

cc: David Frishman
Tyson & Mendes
[Email Only: DFrishman@TysonMendes.com]

Marianne Evans
Hoffman Brown Company
5000 Van Nuys Blvd., 6th Floor
Sherman Oaks, CA 91403
[US Mail & Email: mevans@hoffmanbrown.com]


© 2021 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published or used without the permission of The Hartford.

# EXHIBIT "2"

STEVEN W. MURRAY
a law corporation

SUITE 205
14930 VENTURA BOULEVARD
SHERMAN OAKS, CALIFORNIA 91403

(818) 501-2277
fax (818) 501-6441
info@psilaw.com

April 19, 2021

**Via Facsimile**

Claims Dept.
HALLMARK SPECIALTY INS.
Two Lincoln Centre
5420 Lyndon B. Johnson Freeway
Dallas, TS 75240

Re: *Liebert Corp. vs. SVO Building One, etc.*
*AAA No. 01-18-0003-1318.*
Policy No. 77GL015D776

Dear Gentlepersons:

SVO Building OneSonora/Five Parties, an Insured under Policy No. 77GL015D776, has been sued by Liebert Corp. in the above arbitration proceeding. A copy the Fourth Amended Complaint (and its partial dismissal) is enclosed and is hereby tendered for defense and indemnity under *all* applicable policies.

The litigation is ongoing, and I ask you respond as soon as possible. Please have the appropriate defense adjuster contact me, and not my clients, with any questions.

Very truly yours,

STEVEN W. MURRAY

SWM/dr
cc: SVO Building One

# EXHIBIT "3"

STEVEN W. MURRAY
a law corporation

SUITE 205
14930 VENTURA BOULEVARD
SHERMAN OAKS, CALIFORNIA 91403

(818) 501-2277
fax (818) 501-6441
info@psilaw.com

May 3, 2021

David Simantob, Esq.
WILSON ELSER
555 S. Flower St., Ste. 2900
Los Angeles, CA 90071

Re: *Liebert Corporation vs. SVO Building One*
Navigators' Cl. No. 01-18-0003-1318

Dear Mr. Simantob:

SVO disagrees with Navigators' denial of coverage set forth in its March 31, 2021, letter stating it was withdrawing its defense in fifteen days.

> "the allegation of defamation against SVO is the *only* allegation contained in the Litigation that potentially qualifies as an enumerated 'personal or advertising injury' offense . . . ¶ We are in receipt of Liebert Corporation's . . . Dismissal . . . of . . . its defamation claim. *Navigators has determined there is no coverage under the Policy for the remaining claims asserted against SVO in the Lawsuit.* As Navigators has no duty to defend SVO . . . , **Navigators is withdrawing its defense of SVO in the Lawsuit on April 15, 2021, fifteen (15) days from the date of this letter.**" (Italics added.)

This determination is factually and legally unsupportable.

**1. Vertiv's 4th Amended Complaint Alleges Covered Claims.**

**A. Disparagement.** The policy provides coverage for the "personal injury" offenses of slander, libel and disparagement. Vertiv alleges this:

> "causing third parties to issue false reports regarding the commissioning of equipment on the Project;" (¶55, p. 12:23-24; ¶56, p.13:5-7.)
>
> SVO's conduct "erodes Vertiv's reputation as a designer and builder . . . ." (¶57, p. 13:13.)
>
> Communications "disparaging Vertiv's work" were made by SVO to DPR. (¶146, p. 29:13.)

**B. Property Damage.** The policy provides coverage for property damage which includes loss of use of tangible property which has not been physically injured. Vertiv alleges this:

> "SVO has given drawings and calculations prepared by Vertiv to designers and builders of data centers . . . ."(¶30, p. 8:19-20.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded STS2 Static Transfer Switch 2 for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the STS2 Static Transfer Switch 2, but . . . continues to do so." (¶82, p. 16:25-28.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '082 Patent . . . ." (¶86, p. 18:8-9.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded STS2 Static Transfer Switch 2 for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the STS2 Static Transfer Switch 2, but . . . continues to do so." (¶93, p. 18:27-28 to p. 19:1-2.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '804 Patent . . . ." (¶97, p. 19:25-26.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded DSE cooling system (e.g., DA150 and DA125) for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the DSE cooling system, but . . . continues to do so." (¶104, p. 20:15-18.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '404 Patent . . . ." (¶108, p. 23:11-12.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded DSE cooling system (e.g., DA150 and DA125) for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the DSE cooling system, but . . . continues to do so." (¶115, p. 24:3-6.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '424 Patent . . . ." (¶119, p. 25:23-24.)

> "Vertiv provided SVO with a Liebert-designed, manufactured and branded EXL S1 UPS for use in the Project. When Vertiv properly revoked the license in August 2018, SVO no longer had the right to use the EXL S1 UPS, but . . . continues to do so." (¶126, p. 26:14-17.)

> "SVO have [sic] continued to use in the United States without authority devices covered by the '124 Patent . . . ." (¶130, p. 27:11-12.)

**2. Navigators' Duty To Defend Continues.**

The dismissal of the Defamation Cause has no effect on Navigators' defense obligations because the other covered claims asserted against SVO remain in full force and effect. The continued pendency of the action triggers Navigators' duty to defend.

> "The duty commences upon tender of the defense, and continues until the underlying lawsuit is concluded." (*Lambert vs. Commonwealth Land Title* (1991) 53 Cal.3d 1072, 1077.)

**3. Summary.**

SVO is entitled to the policy benefits it bought and which California law protects. It continues to be entitled to a defense in the *Liebert* action. Navigators should revisit its coverage denial and withdrawal, and agree to protect SVO and make it whole. A written favorable response is requested within ten (10) days.

Very truly yours,

STEVEN W. MURRAY

SWM:dr
cc: SVO

# EXHIBIT "4"

HALLMARK

May 13, 2021

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Steven W. Murray, Esq.
14930 Ventura Boulevard, Suite 205
Sherman Oaks, CA 91402

Re: **Liebert Corporation v. SVO Building One, LLC**
Claim No.: 7736ca92220
Policy No.: 77GLO15D776
Insured: Sacramento Venture One, LLC
Claimant: Vertiv Corporation, f/k/a Liebert Corporation

Dear Mr. Murray:

This letter responds to the April 19, 2021 tender of the *Vertiv* arbitration under the Hallmark Specialty Insurance Company ("Hallmark") policy. We have reviewed the Fourth Amended *Vertiv* Complaint, your April 19 and May 3, 2021 letters, and the policy. Based thereon, and as set forth more fully below, Hallmark agrees to participate in the defense of the *Vertiv* arbitration under a reservation of rights.

While Hallmark understands that the allegations in the *Vertiv* arbitration are unproven facts and may be untrue, incomplete, or embellished, Hallmark must necessarily refer to these allegations in anticipating and informing you of any potential coverage issues. With this in mind, Hallmark certainly does not conclude that any allegation or inference which may be made from these allegations is in fact true, and any statement in this letter which may be construed otherwise is inadvertent.

**Background Information**

According to the Fourth Amended Complaint, in late 2016, Sacramento Venture One, LLC ("SVO") contacted Liebert Corporation, which in 2018 changed its name to Vertiv Corporation ("Vertiv") to design and construct a data center for SVO at 2407 AK Street, Sacramento, California. The project consisted of three, two-megawatt data halls (the data center industry measures size in terms of the amount of power a data center consumes as measured in megawatts). Vertiv and SVO entered into several agreements. In or about December, 2016, the parties entered into a "Consultant Agreement" and purchase order whereby Vertiv agreed to perform certain design services on the project. In or about May, 2017, Vertiv and SVO executed a "Lump Sum Turnkey Agreement" under which Vertiv agreed to provide certain design, engineering, procurement, installation, construction, testing, commissioning, and start up services for the project. The project was to be developed in three phases, each phase consisting of one of the three data halls.

Both the Consultant Agreement and the Turnkey Agreement included provisions confirming that Vertiv owned the intellectual property used in the work performed. Vertiv granted SVO only a

limited, non-exclusive, revocable license to use its intellectual property and work product in connection with the development and operation of the project.

Prior to contacting Vertiv, SVO had retained DPR Construction ("DPR") in or about February, 2016 to design and build the project. Ultimately, SVO decided to retain Vertiv to complete the project. However, if DPR did not continue work on the project, SVO would be obligated to pay a "Concession Amount", which amount SVO has refused to disclose. As a result, Vertiv was induced to enter into a subcontract with DPR. The undisclosed Concession Amount hindered Vertiv's ability to negotiate fair and equitable terms with DPR, resulting in increased costs on the project.

Vertiv's work on the project implicated the use of at least six of its patents and also its trade secrets. In July, 2018, SVO wrongfully terminated the Turnkey Agreement after Vertiv had substantially completed the first phase data hall. Following the termination, Vertiv properly revoked SVO's license to use Vertiv's intellectual property. Notwithstanding Vertiv's revocation, SVO has continued to use and wrongfully disclose Vertiv's trade secret information and patented technology. For example, SVO has given drawings and calculations prepared by Vertiv to other designers and builders of data centers, including those SVO retained to develop phases 2 and 3 of the project.

SVO owes Vertiv more than $9 million for Vertiv's work on the project. SVO misappropriated Vertiv's trade secrets and infringed six of Vertiv's patents. In January, 2018, Vertiv and DPR entered into a subcontract agreement. SVO improperly and intentionally interfered with Vertiv's contract with DPR by engaging in secretive and unauthorized direct communications with DPR personnel and disparaging Vertiv's work. During Vertiv's performance at the project and following its termination, SVO made numerous false statements to third parties on the jobsite and within the industry, including but not limited to falsely stating that commencement of equipment commissioning at the project was delayed as the result of Vertiv's inability to manage the project. This conduct was aimed at disparaging Vertiv's reputation.

**The Fourth Amended *Vertiv* Complaint**

*Liebert Corporation v. SVO Building One, LLC*, American Arbitration Association Case No. 01-18-0003-1318 ("the *Vertiv* arbitration") was filed on July 19, 2019. It contains 18 causes of action.

1. **Breach of Contract** – SVO breached the Turnkey Agreement as outlined above, damaging Vertiv in a sum in excess of $9 million. Vertiv also claims interest at 2% per month under California Civil Code §§ 8800 and 8818, and attorneys' fees and costs.

2. **Open Book Account** – SVO became indebted to Vertiv on an open book account for a sum in excess of $9 million, plus interest and attorneys' fees and costs.

3. **Reasonable Value** – The total reasonable value of the materials, labor, supplies and/or services Vertiv furnished is in excess of $9 million, plus interest.

4. **Declaratory Relief** – Vertiv seeks a judicial determination of the parties' respective rights and duties, and a declaration that Vertiv has properly revoked the license and SVO must cease using Vertiv's intellectual property and work product.

5. **Violation of Unfair Competition Law** – SVO's above alleged actions constitute unlawful, unfair and fraudulent business practices under California Business & Professions Code §§ 17200, et seq. Vertiv seeks injunctive relief.

6. **Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836** – SVO misappropriated Vertiv's trade secret information, causing Vertiv irreparable harm that cannot be fully redressed through damages alone, entitling Vertiv to injunctive relief. Vertiv also seeks punitive damages.

7. **Misappropriation of Trade Secrets in Violation of California Uniform Trade Secrets Act, Civil Code §§ 3426-3426.11** – SVO misappropriated Vertiv's trade secret information, causing Vertiv irreparable harm that cannot be fully redressed through damages alone, entitling Vertiv to injunctive relief. Vertiv also seeks punitive damages.

8-13. **Patent Infringement** – SVO infringed six of Vertiv's patents. Vertiv seeks damages in an amount to be proven at trial, enhanced damages, attorneys' fees, and injunctive relief.

14. **Intentional Interference with Contractual Relationship** – SVO improperly and intentionally interfered with Vertiv's January, 2018 contract with DPR, including disparaging Vertiv's work. This interfered with Vertiv's performance on the project and disrupted Vertiv's and DPR's contractual relationship, causing Vertiv to incur additional costs and damages in an amount to be proven at trial. Vertiv also seeks punitive damages.

15. **Defamation** – During Vertiv's work on the project and following its termination, SVO engaged in conduct aimed at disparaging Vertiv's work and reputation, by making numerous false statements to third parties on the jobsite and within the industry, including but not limited to falsely stating that commencement of equipment commissioning at the project was delayed as a result of Vertiv's inability to manage the project. As a result, Vertiv has been damaged in an amount to be proven at trial, and also seeks punitive damages.

16. **Fraud** – In or about May 2018, Vertiv reported to SVO that Vertiv understood that it had successfully performed facility mechanical completion and startup, testing, and commissioning as approved by SVO's retained commissioning consultant. SVO and its agents falsely represented to Vertiv that facility mechanical completion and startup, testing, and commissioning had not successfully passed and that Vertiv needed to do additional work and run new tests to achieve facility mechanical completion and startup, testing, and commissioning. in fact, SVO and its agents were aware that the facility mechanical completion and startup, testing, and commissioning had been successfully completed in or about May, 2017. As a result, Vertiv has suffered damages in an amount to be proven at trial, and also seeks punitive damages.

17. **Negligent Misrepresentation** - SVO and its agents negligently misrepresented to Vertiv that facility mechanical completion and startup, testing, and commissioning had not successfully passed and that Vertiv needed to do additional work and run new tests to achieve facility mechanical completion and startup, testing, and commissioning. Vertiv has suffered damages in an amount to be proven at trial.

18. **Civil Conspiracy** – SVO and its agents Nicholas Laag, Ulrich Pelz, and others knowingly and intentionally engaged in a civil conspiracy to defraud Vertiv by falsely representing to Vertiv

that the data center facility mechanical completion and startup, testing, and commissioning had not been completed and that Vertiv needed to do additional work and run new tests to achieve facility mechanical completion and startup, testing and commissioning. Vertiv has suffered damages in an amount to be proven at trial and also seeks punitive damages.

**<u>The Hallmark Policy</u>**

Coverage is sought under Hallmark Specialty Insurance Company policy no. 77GLO15D776, issued to the Named Insured Sacramento Venture One, LLC for the period November 6, 2015 to July 20, 2017 ("the policy"). The policy has bodily injury and property damage limits of $1 million per occurrence, $1 million personal and advertising injury liability, and $2 million general aggregate. Commercial general liability coverage is provided under policy form no. CG 00 01 12 07.

**<u>Reservation of Rights</u>**

The *Vertiv* Arbitration does not allege "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in Coverage A of the policy. Hallmark denies coverage under Coverage A of the policy for the claims made in the *Vertiv* arbitration.

The policy provides Personal and Advertising Injury Liability coverage in pertinent part as follows:

> **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> 1. **Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" for "personal and advertising injury" to which this insurance does not apply.
>
> * * *
>
> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The policy defines "personal and advertising injury" as follows:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement" or;

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

The policy defines "suit" in pertinent part as follows:

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent.

The *Vertiv* arbitration is based on the Consultant Agreement and/or the Turnkey Agreement entered into between Vertiv and SVO. Hallmark has not seen those agreements, and does not know if either includes a binding arbitration provision. Hallmark reserves its right to deny coverage for the *Vertiv* arbitration on the grounds that it does not constitute a "suit" as that term is defined in the Hallmark policy.

Of the various offenses listed under the definition of "personal and advertising injury," the only one that potentially applies to the claims made in the *Vertiv* arbitration is disparagement. Your May 3, 2021 letter claims the following allegations constitute potential "disparagement" under the policy:

- "Causing third parties to issue false reports regarding the commissioning of equipment on the Project" (¶ 55, 12:23-24; ¶ 56, 13:5-7)

- "As a direct consequence of the acts of SVO, SVO are (*sic*) using Vertiv's intellectual property and work product to complete Phase 1 of the Project and to design and construct Phases 2 and 3 of the Project, which erodes Vertiv's reputation as a designer and builder of data centers . . .." (¶ 57, 13:11-14)

- "SVO improperly and intentionally interfered with Vertiv's contract with DPR in various manners, including but not limited to routinely engaging in secretive and unauthorized direct communications with DPR personnel regarding the work and services DPR was performing for Vertiv on the jobsite and disparaging Vertiv's work," (¶ 146, 29:10-13)

In addition, the Fourth Amended Complaint contains the following allegation:

- "During Vertiv's performance at the Project and following its termination, SVO engaged in conduct aimed at disparaging Vertiv's work and reputation. Such conduct incudes making numerous false statements to third parties on the jobsite and within the industry, including but not limited, falsely stating that commencement of equipment commissioning at the Project was delayed as the result of Vertiv's inability to manage the Project. At the time such statements were made, SVO was aware that commissioning of equipment on the Project had already commenced." (¶ 151, 29:27 – 30:4)

The allegation at paragraph 57 of the Fourth Amended Complaint, that SVO's use of Vertiv's intellectual property and work product "erodes Vertiv's reputation" does not include a false or misleading statement, does not specifically refer to Vertiv, and does not clearly derogate Vertiv's product or business. As such, the allegations in paragraph 57 of the Fourth Amended Complaint do not allege a potential "disparagement" within the definition of "personal and advertising injury" in the Hallmark policy.

The Personal and Advertising Injury Liability coverage only applies to offenses committed during the policy period. Paragraph 146 alleges that SVO "improperly and intentionally interfered with Vertiv's contract with DPR" by "disparaging Vertiv's work." Paragraph 144 alleges that Vertiv and DPR entered into their subcontract "in or about January, 2018." Based thereon, SVO's allegedly disparaging remarks that interfered with the contract had to have taken place after January 2018, which is after the July 20, 2017 expiration of the Hallmark policy. Based thereon, Hallmark denies coverage for the disparagement alleged in paragraph 146 in the Fourth Amended *Vertiv* complaint on the grounds that it did not take place during the Hallmark policy period.

Paragraphs 55 and 56 allege that SVO caused "third parties to issue false reports regarding the commissioning of equipment on the project." Paragraph 157 describes these false reports as having been made after May, 2018.

> In or about May, 2018, Vertiv reported to SVO that it understood that it had successfully performed facility mechanical completion and startup, testing, and commissioning. However, SVO and its agents, Nicholas Laag, Ulrich Pelz, and others, represented to Vertiv that such facility mechanical completion and startup, testing, and commissioning had not successfully passed ....

Based thereon, Hallmark reserves the right to deny coverage for the false reports alleged in paragraphs 55 and 56 on the grounds that the alleged false reports were made in or after May, 2018, after the expiration of the Hallmark policy.

Paragraph 151 alleges that

> during Vertiv's performance at the Project and following its termination, SVO engaged in conduct aimed at disparaging Vertiv's work and reputation. Such conduct includes . . . falsely stating that commencement of equipment commissioning at the Project was delayed as the result of Vertiv's inability to

manage the Project. At the time such statements were made, SVO was aware that commissioning of equipment on the Project had already commenced.

According to the allegations, SVO started on the project in or after December, 2016, when it entered into the Consultant Agreement, and commissioning had been completed in or about May, 2017. If the disparaging statements were made when commissioning had already commenced and before it was completed, then these statements potentially took place between December, 2016 and May, 2017. That time frame is within the effective dates of the Hallmark policy. Hallmark reserves the right to deny coverage for the disparagement alleged in paragraph 151 to the extent it did not take place during the effective dates of the Hallmark policy.

The policy includes the following exclusions, which state that the policy does not apply to:

**a. Knowing Violation Of Rights Of Another**

> Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

> "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

The *Vertiv* arbitration alleges that SVO knew its alleged statements were false and intentionally made them. Hallmark reserves the right to deny coverage for the claims made in the *Vertiv* arbitration under the above exclusions.

The policy also states it does not apply to:

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."
>
> However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

Hallmark denies coverage for the patent infringement and misappropriation of trade secret claims in the *Vertiv* arbitration under the above exclusion.

The policy also contains the following "Exclusion – Punitive or Exemplary Damages" Endorsement.

> This insurance does not apply to any claim for punitive or exemplary damages, fine or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs

whether or not such damages, related interest or costs are characterized as punitive or exemplary damages (herein after referred to as punitive or exemplary damages). If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

In addition to the above exclusion, California public policy precludes insurance coverage for punitive damages. Hallmark denies coverage for any punitive or exemplary damages sought or awarded in the *Vertiv* arbitration.

**Defense of the *Vertiv* Arbitration**

Subject to the above reservation of rights, Hallmark will participate in the defense of SVO in the *Vertiv* arbitration. Said defense will be provided from the April 19, 2021 date of tender.

Hallmark hopes to work with the insured to bring this matter to a speedy and fair resolution for all parties. However, please be advised that Hallmark is investigating this matter and may participate in settlement negotiations, contribute to a settlement, contribute to a payment of a judgment, or undertake other actions to bring the claims against the insured to a close, all subject to the express understanding that Hallmark reserves the right to:

- require that the insured obtain an allocation of damages between covered and uncovered allegations in any future settlement;
- recover attorneys' fees and costs from the insured for those claims and/or causes of action which are not covered under the Hallmark policy;
- recover from the insured the cost of settlement or payment of an arbitration award to the extent the settlement or payment of an arbitration award exceeds the covered damages, if any;
- recover any costs, settlements, or arbitration awards from any of the insured's other insurance carriers and from any third party liable for injury or damages, including but not limited to any carriers who may provide coverage to SVO as an additional insured. To that end, please advise of tenders of this claim to any other carriers and any response thereto;
- file a declaratory action to determine Hallmark's obligations, although it is not obligated to file such an action; and
- withdraw from the defense of this action upon the development of information which establishes that there is no coverage, but Hallmark will not withdraw without giving the insured any legally required notice.

Because there are allegations of damages that are potentially not covered by the Hallmark policy, the insured may have the right to settle the subject arbitration at its own expense under certain circumstances. However, if the insured decides to settle (or enters a consent, stipulated or similar arbitration award)

without first obtaining the permission of Hallmark or without reaching an agreement with Hallmark about how much, if any, of the settlement will be allocated to covered damages, then some or all of the settlement may not be covered and/or the insured may incur a burden of proving how much, if any, of the settlement is covered. Accordingly, prior to taking any such action, we recommend that the insured inform Hallmark of its desire to settle this matter. In addition, Hallmark may not be bound by certain findings of fact and law in a fully litigated arbitration which does not adequately address factual and legal questions concerning coverage issues.

**Defense Under Civil Code § 2860**

Because Hallmark has reserved its rights as to certain issues, the insured has the right to select independent counsel pursuant to California Civil Code §2860. Pursuant to that statute, Hallmark will only contribute those necessary and reasonable fees incurred by independent counsel selected by the insured for the defense of this matter, up to the rate Hallmark normally pays for defense of similar actions in the area where this claim arose, pursuant to the terms of this letter. Those rates are: Partner - $260/hour; Associate - $225/hour; Paralegal - $125/hour. With respect to past and future invoices, Hallmark will require itemized statements for all activity performed, the date, the specific time involved, the attorney performing the activity, and the hourly rate charged.

Under § 2860, independent counsel and the insured are required to disclose all non-privileged information to Hallmark concerning the subject arbitration. In addition, independent counsel and the insured are required to disclose all *privileged* information concerning the arbitration, except privileged materials relevant to any coverage disputes. Based thereon, Hallmark will require a full evaluation of all material developments and the status of defense of the arbitration and full cooperation in controlling the conduct of the defense.

Finally, § 2860 requires that independent counsel confirm it has at least five years of civil litigation practice which includes substantial experience in the subject at issue in the subject lawsuits, and errors and omissions coverage. Please have defense counsel forward its firm resume, along with proof of malpractice insurance.

**Right Of Reimbursement**

Please note that as set forth above, Hallmark specifically reserves the right to seek reimbursement of any and all fees and costs paid by Hallmark in defense of the subject arbitration which are not related to covered claims.

**Non-Waiver**

Specification of the above will not be deemed a waiver of any other provisions, terms, or conditions of the Hallmark policy. It is understood and agreed that all rights to assert coverage under the Hallmark policy are reserved to SVO, and all rights to deny such coverage are reserved to Hallmark.

If you disagree with Hallmark's denial and reservation of rights under certain portions of the Hallmark policy, and believe Hallmark has acted wrongly in denying and reserving its rights under those portions of the policy, you may have this matter reviewed by the California Department of Insurance, Claims Service Bureau, 11th Floor, 300 South Spring Street, Los Angeles, California, 90013, (800) 927-4357.

Please contact the undersigned if you have any questions concerning Hallmark's coverage position in this matter, or should you possess any additional information bearing on coverage with respect to the *Vertiv* arbitration.

Very truly yours,
Hallmark Specialty Insurance Company

*Jason D. Smith*

Jason D. Smith
Senior Claims Representative – Commercial CD
(214) 845-6420

# EXHIBIT "5"

WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

May 18, 2021

David Simantob
Direct (213) 330-8819
David.Simantob@wilsonelser.com

***Via Email (swm@psilaw.com)***

Steven W. Murray, Esq.
14930 Ventura Blvd.
Suite 205
Sherman Oaks, California 91403

Re: *Liebert Corporation v. SVO Building One, LLC*
American Arbitration Association Fourth Amended Complaint
Case No. 01-18-0003-1318
Named Insured: SVO Building One, LLC
Policy No.: LA17CGL219162IC
(effective 07/12/17 to 03/12/18, extended to 8/12/19)
WEMED No: 18753-318

Dear Mr. Murray:

As you know, we are coverage counsel for Navigators Specialty Insurance Company ("Navigators") with regard to your tender on behalf of the named insured, SVO Building One, LLC ("SVO") of the above-referenced arbitration ("Litigation") before the American Arbitration Association ("AAA") under the above-referenced policy ("Policy") issued to SVO.

By our letter of October 28, 2019, Navigators agreed to defend SVO in the Litigation subject to a full and complete reservation of rights including, among other things, the right to withdraw from the defense. On March 24, 2021, however, the claimant Vertiv Corporation fka Liebert Corporation ("Vertiv") dismissed without prejudice, among other things, the Fifteenth Cause of Action for Defamation in its Fourth Amended Complaint ("Complaint"). On March 31, 2021, Navigators wrote to SVO and advised that, in light of the dismissal of defamation cause of action, Navigators no longer had a duty to defend SVO and was withdrawing its defense of SVO in the Litigation on April 15, 2021. We are in receipt of your letter of May 3, 2021, wherein you state that "SVO disagrees with Navigators' denial of coverage set forth in its March 31, 2021, letter" and assert that SVO "continues to be entitled to a defense in the [Litigation]."

While Navigators continues to believe it no longer has a duty to defend SVO in the Litigation, in light of your May 3, 2021 letter, Navigators will not withdraw from the defense of SVO in the Litigation at this time. Navigators' continued defense of SVO is subject to its full and complete reservation of rights as set forth in its October 28, 2019 letter and other correspondence with SVO. Specifically, as set forth in its October 28, 2019 letter, Navigators reserved its right "to

seek reimbursement of any defense" to the extent that it was for a non-covered claim and "[t]o the extent that Navigators pays for the defense of claims that do not fall within the scope of coverage, it reserves all rights under applicable law to seek reimbursement of those amounts from SVO." Navigators continues to reserve all such rights pursuant to *Buss v. Superior Court*, 16 Cal.4th 35 (1997), *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005), *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489 (2001), and *Hartford Cas. Ins. Co. v. J.R. Marketing, Inc*., 61 Cal.4th 988, (2015). Navigators also specifically reserves the right to file an action seeking declaratory and/or other relief on any issue raised herein, or which has been previously communicated to SVO, or which may be raised in the future, including, but not limited to, a declaratory relief action seeking a judicial determination that Navigators has no duty to defend or indemnify SVO and or is entitled to reimbursement.

In the meantime, nothing contained herein should be construed as an estoppel or waiver of any rights or defenses, whether or not stated herein, which Navigators may possess under the Policy and/or applicable law. It should be understood further that any actions by Navigators and/or its agents and representatives do not constitute and are not intended as an estoppel or waiver of any rights or defenses available to Navigators, whether or not stated herein, that may be available now or at any point in time. Navigators specifically reserves its right to rely on the language of the Policy, and to deny coverage for any valid reason that may subsequently appear. Navigators shall not waive any of its rights unless expressly so stated in writing by Navigators.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Fair Lawsuits Settlement Practices Regulations, if insureds believe all or part of this claim has been wrongfully denied or rejected, they may have this matter reviewed by the following entity:

California Department of Insurance
Consumer Services Division
300 S. Spring Street
Los Angeles, CA 90013
1-800-927-4357-HELP

Should you have any questions, please do not hesitate to contact the undersigned.

Sincerely,

Wilson Elser Moskowitz Edelman & Dicker, LLP

/s/

David Simantob

# EXHIBIT "6"

STEVEN W. MURRAY
a law corporation

SUITE 205
14930 VENTURA BOULEVARD
SHERMAN OAKS, CALIFORNIA 91403

(818) 501-2277
fax (818) 501-6441
info@psilaw.com

May 18, 2021

**Via Email and U.S. Mail**

David Simantob, Esq.
WILSON ELSER
555 S. Flower St., Ste. 2900
Los Angeles, CA 90071

Re: *Liebert Corporation vs. SVO Building One*
Navigators' Cl. No. 01-18-0003-1318

Dear Mr. Simantob:

Thank you for your May 18, 2021, letter, confirming Navigator's acceptance of SVO's re-tender of the *Liebert/Vertif* action. SVO has elected to be represented by *Cumis* counsel; its present counsel —David Frishman and Tyson & Mendes — will be acting in that capacity. The firm is also one of Navigators' approved panel firms.

Please note the Insureds expressly object to and disagree with all of Navigators' claimed reserved "rights" set forth in such May 18th letter, including the October 28, 2019, letter and "other correspondence" referred to therein. This includes, but is not limited to, unilateral withdrawal from the defense, seeking any form of reimbursement from the Insureds for any sums, or suing them for any reason whatsoever. An insurer cannot create "rights" solely by its correspondence. The Insureds do not agree to, acquiesce in or otherwise permit Navigators to assert "rights" not authorized by California law, while also reserving all of their lawful rights.

I appreciate your assistance in this matter, and look forward to a successful conclusion of the litigation. Thank you.

Very truly yours,

STEVEN W. MURRAY

SWM/dr
cc: SVO
David M. Frishman, Esq.