Shawn Shaffie (SBN 262002)
shaffie@parkershaffiellp.com
Bruce T. Smyth (SBN 89171)
smyth@parkershaffiellp.com
Adam J. Telanoff (SBN 159761)
telanoff@parkershaffiellp.com
Edward Baker (SBN 311439)
baker@parkershaffiellp.com
Behnam Parvinian (SBN 331944)
parvinian@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 W. 6th Street, Suite 500
Los Angeles, California 90017
Telephone: (213) 622-4441
Facsimile: (213) 622-1444

Steven W. Murray (SBN 41493)
swm@psilaw.com
**STEVEN W. MURRAY, APC**
14930 Ventura Boulevard #205
Sherman Oaks, CA 91403
Telephone: (818) 501-2277
Facsimile: (818) 501-8441

Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,,<br><br>Plaintiff,<br><br>v.<br><br>SVO BUILDING ONE, LLC,<br><br>Defendant. | Case No. 3:22-CV-07102-AMO<br>[Assigned to Hon. Aracelí Martínez-Olguín]<br><br>**DECLARATION OF ULRICH PELZ IN SUPPORT OF SVO BUILDING ONE, LLC'S OPPOSITION TO NAVIGATORS SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 5, 2026<br>Time: 2:00 p.m.<br>Dept.: Courtroom 10, 19th Floor |
| SVO BUILDING ONE, LLC<br><br>Counterclaimant,<br><br>v.<br><br>NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>Counter-defendant. | |

**DECLARATION OF ULRICH PELZ**

I, Ulrich Pelz, declare as follows:

1. I am and during the relevant time period discussed herein have been the Chief Financial Officer of defendant and counterclaimant SVO Building One, LLC ("SVO") in the above-entitled action. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I make this declaration in support of SVO's Opposition to Navigators Specialty Insurance Company's ("Navigators") Motion for Summary Judgment filed in the matter of *Navigators Specialty Insurance Company v. SVO Building One, LLC*, in the Northern District of California, Case No. 3:22-CV-07102-AMO.

3. In 2018, a large equipment manufacturer company, Liebert Corporation, which subsequently changed its name to Vertiv Corporation (the "Company") filed a lawsuit in arbitration against SVO (the "Underlying Arbitration"). The matter was tendered to Navigators, and Navigators agreed to provide a defense to SVO with respect to the arbitration of Company's claims against SVO, subject to a reservation of rights. A copy of that letter is attached hereto as **Exhibit 1**.

4. During the time period relevant to the claims at issue in this lawsuit, including during the Underlying Arbitration, I was in charge of managing the litigation on behalf of SVO in the Underlying Action. I therefore have sufficient personal knowledge of the facts stated herein to provide proper foundation and authenticate documents related to managing the litigation.

**GRSM is Selected as Counsel for SVO in the Underlying Arbitration – Actual Conflicts of Interest are Not Disclosed Causing Delay and Waste of Resources**

5. In or about December of 2019, the law firm of Gordon Rees Scully Mansukhani ("GRSM") was appointed by Navigators as SVO's counsel in the Underlying Arbitration.

6. During the retention process with GRSM, neither GRSM or Navigators identified or discussed any potential conflicts of interest, nor that GRSM in fact represented a related party adverse to SVO in the Underlying Arbitration.

7. In or about October of 2020 GRSM informed SVO that it would have to withdraw

as SVO's counsel due to a previously undisclosed conflict of interest.

8. When GRSM raised the conflict issue to SVO, SVO objected and demanded that GRSM continue handling the case given the considerable resources already expended in preparing the case, and that starting fresh with new counsel would delay the conclusion of the case further and substantially drain SVO's resources in bringing yet another new counsel up to speed on the case. SVO raised this request with Navigators and asked that GRSM remain as counsel with proper ethical walls in place in order to maintain continuity and save resources.

9. Around this same time, SVO requested that Navigators claw back the attorneys' fees and costs collected by GRSM given that the actual conflict was never identified or raised by Navigators or GRSM, and conversations took place with Navigators where SVO shared its concerns that significant resources had already been expended and would be wasted by retaining new attorneys. Navigators refused to confront GRSM about the undisclosed conflict or demand the return of attorneys' fees and costs needlessly wasted during GRSM's conflicted representation.

**After GRSM Withdraws, Navigators Transitions the Case to its Approved Panel Firm, Tyson & Mendes ("Tyson")**

10. On or around November 7, 2020, SVO was introduced to Tyson, one of Navigators' long-time panel counsel firms, to explore transitioning the case to Tyson. David Frishman was introduced as the handling partner on the matter. At no time during this transition was I made aware that a large part of Tyson's practice was the representation of insurance companies including Navigators in insurance coverage matters. I was not informed a conflict may arise with respect to Tyson's divided loyalty between Navigators and SVO.

11. On or about November 10, 2020, Navigators informed SVO that it confirmed Tyson did not have a conflict in assuming the representation of SVO in the arbitration. At this time, Navigators also presented SVO with a waiver of SVO's right to elect *Cumis* counsel in the matter and requested SVO sign and waive its right to *Cumis* counsel. Had the conflicted relationship between Navigators and Tyson been properly explained at this time, and in light of the reservation of rights, SVO would have elected to proceed with independent *Cumis* counsel at that time. Navigators never explained the significant of *Cumis* counsel to SVO, and why the need for *Cumis*

counsel might be heightened given the reservation of rights and the overlapping defensive/affirmative claims in the Underlying Arbitration.

12. On or about November 12, 2020, Mr. Frishman informed SVO that Tyson's Executive Management Committee had performed a detailed review of SVO's request that Tyson also represent SVO in connection with its affirmative claims (Counterclaims) against Company in the arbitration. Tyson agreed to represent SVO in the prosecution of its affirmative claims while continuing to defend SVO as to the claims against it. SVO's defense and affirmative claims were based on the same facts.

13. To the best of my knowledge, at no time during its representation did Tyson, or Navigators, explore additional insurance coverage beyond the Navigators' policy, in particular tendering the Fourth Amended Complaint in the Underlying Action to Hallmark Insurance Company ("Hallmark").

14. Between November and December of 2020, Tyson along with representatives of Navigators, provided inaccurate estimates of the attorneys' fees and costs that would need to be incurred to properly prepare the Underlying Arbitration for the arbitration trial. As one example, on or about November 24, 2022, Tyson estimated "conservatively" that the remaining costs of experts would be between $75,000-$100,000.

15. The initial budgeting provided by Tyson and reporting to Navigators was also woefully inadequate. On or about December 17, 2020, Tyson provided an initial budget for the matter in the amount of $1,016,5120. Tyson also reported to Navigators that the transition of this complex and document-intensive file would take significant time and resources, including the transfer and review of over 700,000 documents and file from GRSM to Tyson. This is just one example of the expensive consequences caused by Navigators' failure to identify the GRSM conflict of intertest that SVO raised with Navigators when the GRSM conflict was finally reported.

16. On or about December 30, 2020, SVO entered into a Legal Services Agreement with Tyson, for legal services related to the prosecution of SVO's affirmative Counterclaims in the Underlying Arbitration. At this time, it was contemplated that there would be considerable overlap between the defensive and affirmative claims. A true and correct copy of the Legal Services Agreement with Tyson is attached hereto as **Exhibit 2**.

17. Prior to executing the agreement, no one from Tyson informed SVO that prosecuting SVO's affirmative claims, while at the same time providing a defense as panel counsel for Navigators Insurance, could or would create a conflict of interest between SVO and Navigators Insurance. SVO was not provided with a written conflict disclosure and waiver at this time, and Navigators never explained how the overlapping defense and prosecution of counterclaims might create conflicts in billing or allocation of fees by their long-time panel firm between those fees that Navigators would cover and those that SVO would pay out of pocket.

18. On or about March 24, 2021, Company dismissed several causes of action in its Fourth Amended Complaint against SVO without prejudice, including the Defamation cause of action. A true and correct copy of the Notice of Dismissal without prejudice of the defamation cause of action is attached hereto as **Exhibit 3**.

19. Immediately thereafter, on March 31, 2021, Navigators sent SVO a letter stating that it was denying all coverage, it would be withdrawing its defense of SVO as of April 15, 2021, and would no longer pay for any legal fees or expenses incurred on behalf of SVO in the litigation.

20. Navigators also informed SVO it would not contribute to any settlement involving SVO in the litigation. The March 31, 2021 letter from Navigators also informed SVO that "Tyson & Mendes, LLP is copied on this correspondence. Tyson & Mendes has been appointed by Navigators to defend SVO with respect to the Litigation, and SVO approved that appointment. Additionally, Navigators understands that SVO has entered into a separate engagement with Tyson & Mendes with respect to the prosecution of SVO's affirmative claims in the Litigation. It is your responsibility to contact Tyson & Mendes regarding any continued engagement regarding representation of SVO in the Litigation."

21. On or about April 15, 2021, Navigators, withdrew its defense of SVO in the Underlying Arbitration, and stopped paying defense costs. On April 19, 2021, Steven Murray tendered the Fourth Amended Complaint to another insurer of SVO, Hallmark Insurance Company ("Hallmark").

22. Having been abandoned by Navigators, SVO needed to retain counsel immediately. Given the immediate need and the time and expense of bringing new counsel up to speed, SVO hired Tyson directly on April 16, 2021 under a new and separate engagement agreement. A true and correct copy of the second Legal Services Agreement with Tyson dated April 28, 2021 is attached hereto as **Exhibit 4**.

23. Tyson required a $325,000 retainer deposit, which SVO promptly paid. A true and correct copy of Tyson's invoice for the retainer is attached hereto as **Exhibit 5**.

24. SVO was forced to retain expensive coverage counsel, Steven Murray, who informed Navigators that its withdrawal of the defense was erroneous, by a letter dated May 3, 2021, and SVO thereby retendered its defense to Navigators. On May 18, 2021, Navigators by a letter from its coverage counsel, David Simantob, accepted the retender and again agreed to provide a defense to SVO in the arbitration under a reservation of rights.

25. By letter dated May 18, 2021, Mr. Murray on behalf of SVO stated that SVO did not accept any of the conditions or terms of any purported reservations of rights by Navigators. These letters are attached to the accompanying Murray Declaration.

26. Mr. Murray also tendered the Fourth Amended Complaint in the Underlying Arbitration to Hallmark for defense and indemnity. Hallmark subsequently accepted the defense and shared the attorneys' fees and costs in the Underlying Action with Navigators thereafter. Navigators billed approximately $1 million in fees and costs in the period from the original tender to it to May, 2025. If Tyson and Navigators had timely tendered the Fourth Amended Complaint to Hallmark, Halmark would have paid half of those fees and expenses and Navigators' claim against SVO would have been approximately $500,000 lower. Hallmark has not sued SVO for reimbursement of fees and costs.

27. On or about May 18, 2021, it is my understanding that SVO informed Navigators that it had elected to be represented by *Cumis* counsel, and SVO named David Frishman and Tyson as its *Cumis* counsel, to which Tyson agreed.

**SVO Incurs Out of Pocket Costs that Should Have been Paid by Navigators**

28. Navigators has refused to pay costs of defense which are covered under the Navigators' policy. It additionally utilized Tyson, its seasoned panel counsel firm, to allocate attorneys' fees and costs incurred in the litigation as "affirmative" claims against the Company which SVO would pay, as opposed to defense costs, which Navigators would pay. As a result of Navigators' refusal to pay covered fees and costs incurred by SVO in the Underlying Arbitration, SVO was forced to spend out of pocket on several litigation items that Navigators should have paid for.

29. As one key example, SVO was forced to pay AAA Arbitration fees in the Underlying Arbitration of over $140,000. True and correct copies of invoices for the payment of AAA Arbitration fees, which were paid directly by SVO, are attached hereto as **Exhibit 6.**

30. As another example, SVO was forced to pay hundreds of thousands of dollars in expert fees to HKA Consulting which should have been paid by Navigators. True and correct copies of example invoices for HKA Consulting expert fees,which were paid directly directly by SVO, are attached hereto as **Exhibit 7.**

31. SVO also paid out of pocket for a portion of Tyson's legal fees in the amount of at least $150,302.50. True and copies of the Tyson Invoices are attached hereto as **Exhibit 8**.

**Tyson's Representation of SVO Was Grossly Negligent**

32. The history of mismanagement by counsel selected by Navigators to represent SVO in the Underlying Arbitration started with GSRM and continued through Tyon's representation, ultimately leading to evidentiary sanctions that limited the introduction of damages evidence on lost profits, lost rents, lost capital, and delay – that essentially amounted to terminating sanctions. After years of expensive litigation (including the wasted resources during the transition from GRSM to Tyson), losing the ability to present evidence of damages vitiated all of the time, resources, and money that SVO put into the Underlying Arbitration.

33. The basis for these severe sanctions was the failure by both GSRM and Tyson, through the entirety of the Underlying Arbitration to comply with incoming discovery demands. They failed to properly oversee ESI protocols, failed to produce responsive discovery, and, through Tyson's inability to adequately work with expert witnesses, exposed the entirety of Tyson's document database to discovery by failing to create a subset of relevant documents for expert witness review. Instead, Tyson gave experts access to *all records* – unsupervised. This resulted in making everything Tyson had collected during the litigation discoverable and also resulted in grossly over-inflated expert witness bills, including by HKA Consulting, as experts were forced to review massive amount of irrelevant documents and charged to review the same.

34. As a result of Tyson's negligence, on December 7, 2021, Arbitrator George Fisher (the "Arbitrator") struck SVO's claim for consequential damages as an evidentiary sanction for SVO's purported failure to comply with the Arbitrator's discovery orders. A true and correct copy of the Arbitrator's ruling, made on the record, is attached hereto as **Exhibit 9**.

35. At the time the Arbitrator issued this evidentiary sanction, SVO's retained experts, HKA Global, Inc. ("HKA") , valued SVO's consequential damages at approximately $54 million. A true and correct copy of the relevant portions of the HKA expert report, prepared by David Bones on June 14, 2021, is attached hereto as **Exhibit 10.**

36. As set forth in Mr. Bones' written report, SVO had claims for consequential damages in the following categories: (1) $22,854,715 in lost profits – inclusive of prejudgment interest, (2) $6,248,772 in increased financing costs, (3) $4,359,861 - $5,235,842 in opportunity costs, (4) $16,312,647 in direct damages, (5) $825,000 in delay damages – not inclusive of prejudgment interest [Categories 1-5 combine for a total claim between $50,600,995 and $51,476,976], plus (6) $9,442,035 in statutory disgorgement damages as ruled by the Arbitrator in Phase 1. The summary of these damage figures can be found on Page 6 of Mr. Bones' report. *See*, Ex. 13, p. 6.

37. In seeking to impose evidentiary sanctions against SVO, Vertiv sought to, among other things, impose sanctions for:

**SVO also improperly provided its experts access to a database which included**

**documents never made available to Vertiv, and then sought to produce select documents through those experts. The prejudice to Vertiv is extreme, irreversible, and has been expressly acknowledged by the Arbitrator. It is fundamentally unfair that Vertiv has been forced to proceed with the evidentiary hearing handicapped as a result of being deprived of the opportunity to adequately process and analyze the improperly withheld documents.**

A true and correct copy of Vertiv Corporation's Renewed Motion for Sanctions Against Building One, LLC, is attached hereto as **Exhibit 11**.

Based upon the Arbitrator's ruling that struck SVO's claim for consequential damages, Mr. Bones report and SVO's claim for approximately $54 million in damages was never submitted to the trier of fact in the Underlying Arbitration

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of December, 2025, in New York, New York.

DocuSigned by:
Ulrich Pelz
FB39F08DEF434F8...

Ulrich Pelz


PS PARKER SHAFFIE LLP

EXHIBIT “1”

WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

October 28, 2019

David Simantob
Direct (213) 330-8819
David.Simantob@wilsonelser.com

***Via Email (upelz@PRIMEDATACENTERS.COM) and***
***U.S. Mail, Return Receipt Requested***

Mr. Ulrich Pelz
SVO Building One, LLC
3140 Peacekeeper Way, Suite 101A
McClellan Park, CA 95652

Re: *Liebert Corporation v. SVO Building One, LLC*
American Arbitration Association Fourth Amended Complaint
Case No. 01-18-0003-1318
Named Insured: SVO Building One, LLC
Policy No.: LA17CGL219162IC
(effective 07/12/17 to 03/12/18, extended to 8/12/19)
WEMED No: 18753-318

Dear Mr. Pelz:

Please be advised that we are coverage counsel for Navigators Specialty Insurance Company ("Navigators") with regard to the above-referenced action ("Litigation"). Navigators is in receipt of your tender on behalf of the named insured, SVO Building One, LLC ("SVO") of the Litigation submitted to the American Arbitration Association ("AAA") under the above-referenced policy ("Policy") issued to SVO.

Navigators will agree to defend the SVO in the Litigation under the Policy under a full reservation of rights, as further discussed below. It is important that SVO understand that Navigators' defense of SVO in the Litigation is subject to the full and complete reservation of rights under the Policy as described below. The purpose of this letter is to confirm, set forth in detail, and explain the nature of the reservation.

Please be advised that Navigators' position is based on the allegations contained in the Litigation as they are currently pled and the facts and circumstances presently known to it. Navigators recognizes that the allegations in the Litigation may be unsubstantiated and nothing in this letter is intended to suggest that the allegations have any legal or factual merit. Again, if you have any facts, legal arguments or other information that you believe may impact Navigators' coverage position for the Litigation, Navigators requests that you immediately bring it to Navigators' attention. Similarly, if you learn of any information that may impact Navigators' coverage position as matters proceed, Navigators requests that you immediately notify Navigators so that

it may evaluate the new information. Navigators reserves its right to supplement, amend, or change its coverage position at any time, including, but not limited to in circumstances where additional information and/or amended pleadings are submitted to it.

## I. The Policy.

Navigators issued Policy Number LA17CGL219162IC effective July 12, 2017 to March 12, 2018 to SVO Building One, LLC ("Policy"). The effective date of the Policy was extended by endorsements to August 12, 2019. The Policy contains a $2 million per "occurrence" limit and a $2 million aggregate limit. Please note, however, that the discussion in this letter is only a partial recitation of the terms, conditions, exclusions, and definitions contained in the Policy. It is not intended to supplement, amend, supersede or otherwise alter the Policy. Navigators does not intend to waive any of the provisions of the Policy by virtue of its synopsis. Please consult SVO's copies of the Policy for a complete listing of all of the terms, conditions, exclusions, and definitions contained therein.

The Policy lists the business description for SVO as an "8 Month OCP Data Center Construction Project" McClellan Park Building 637 at 2407 AK Street in McClellan CA 95652. The Policy includes a limitation of coverage to designated premises or project endorsement for the McClellan Park Building 637, 2407 AK Street in McClellan, CA 95652.

The Policy contains the following relevant provisions, in pertinent part:

> **SECTION I COVERAGES**
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

***

**2. Exclusions**

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

***

o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

***

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

c. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

***

**2. Exclusions**

This insurance does not apply to:

a. Knowing Violation Of Rights Of Another
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. Material Published With Knowledge Of Falsity
"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior To Policy Period
"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. Contractual Liability
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

The Policy contains an IP Amendment Endorsement Form Number, NPC 642 11 08, which provides in relevant part, as follows:

I. Item 14. of SECTION V - DEFINITIONS. Is deleted in its entirety and replaced with the following:

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment:

b. Malicious prosecution:

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lesser:

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:

e. Oral or written publication of material that violates a person's right of privacy.

II. Under SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, exclusion i. Infringement Of Copyright, Patent, Trademark Or Trade Secret, is deleted in its entirety and replaced with the following:

i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas "Personal and Advertising Injury" arising out of:

(a) Infringement, disparagement, dilution, diminishment of or damage to:

i. Copyright, slogan or title:

ii. Patent:

iii. Trademark, service mark, collective mark, or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service:

iv. Trade secret;

v. Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service:

vi. Advertising ideas, concepts, campaigns, or style of doing business; or

vii. Any other intellectual property rights recognized or implied by law.

(b) False designation of the origin of a good, product or service;

**II. <u>Litigation.</u>**

The Plaintiff, Liebert Corporation ("Plaintiff") filed a Fourth Amended Complaint with the American Arbitration Association ("AAA") against the named insured, SVO Building One, LLC. The Fourth Amended Complaint alleges the following twelve causes of action:

1. Breach of Contract
2. Open Book Account
3. Reasonable Value
4. Declaratory Relief

5. Violation of Unfair Competition
6. Misappropriation of Trade Secrets
7. Patent Infringement
8. Intentional interference with contractual relations
9. Defamation
10. Fraud
11. Negligent Misrepresentation
12. Civil Conspiracy

Plaintiff alleges it entered into several agreements with SVO regarding the design and construction for a data center that SVO was building at 2407 AK Street, Sacramento, California ("Project"). The first contract was allegedly a Consultant Agreement dated December 2016 where Plaintiff was to perform certain design services for the Project. Plaintiff and SVO also allegedly entered into a Lump Sum Turnkey Agreement in May 2017 to provide certain design, engineering, procurement, installation, construction, testing, commissioning and start up services at the Project. The Project was allegedly developed in three phases with each phase completing one of the three data halls.

Plaintiff allegedly granted SVO a limited, non-exclusive, not transferable revocable license to use Plaintiff's Intellectual property and work product solely in connection with the Project.

SVO also allegedly entered into a separate construction agreement with DPR Construction in February 2016. Plaintiff alleges that, unbeknownst to Plaintiff, SVO did not terminate its agreement with DPR. In December 2017, Plaintiff alleges a supplement/change to the building permit was completed changing the general contractor from DPR to the Plaintiff. Plaintiff alleges that SVO agreed to provide DPR a concession amount if Plaintiff did not hire DPR as a subcontractor. Plaintiff alleges this this hindered its ability to negotiate fair and equitable terms with DPR and increased costs on the Project.

SVO allegedly terminated the Turnkey Agreement in July 2018 after Plaintiff substantially completed Phase 1 of the Project. Thereafter, Plaintiff allegedly revoked SVO's license in writing on August 9, 2018. Plaintiff alleges that SVO gave drawings, shared information, Plaintiff's trade secrets and patented technology with other designers and builders of data centers or Plaintiff's competitors.

## III. <u>Coverage Position</u>.

Navigators will agree to defend the SVO in the Litigation under the Policy under a reservation of rights, as further discussed below.

The Insuring Agreement in the Policy for "bodily injury" and "property damage" provides, in relevant part that Navigators "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

The Insuring Agreement of the Policy also provides that the insurance only applies if "[t]he 'bodily injury' or 'property damage'" takes place "during the policy period . . . ." The Policy defines "bodily injury" in part as "bodily injury, sickness or disease sustained by a person. . ." The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or . . . [l]oss of use of tangible property that is not physically injured." The Policy defines "occurrence" to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Litigation does not allege "bodily injury" or "property damage" caused by an "occurrence", as those terms are defined in the Policy. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Litigation does not allege covered "bodily injury" or "property damage" caused by an "occurrence" which takes place during the policy period.

The Policy is subject to a "Contractual Liability" exclusion which provides in part that the policy does not apply to "[b]odily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," among certain exceptions. The Litigation alleges Breach of Contract. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Contractual Liability Exclusion applies to preclude or limit coverage under each of the Policy.

The Policy is subject a "Personal and Advertising Injury" exclusion which provides in part that the Policy does not apply to "'[b]odily injury' arising out of 'personal and advertising injury'." Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Personal and Advertising Injury Exclusion applies to preclude or limit coverage under each of the Policy.

The Policy also contains an "expected or intended" exclusion which provides in part that the policy does not apply to "bodily injury" or "property damage" "expected or intended from the standpoint of the insured." The Litigation alleges various intentional conduct against SVO including, but not limited to, intentional interference with contractual relations, fraud, negligent misrepresentation and civil conspiracy, among others. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the "expected or intended" exclusion applies to preclude or limit coverage under each of the Policy.

The Insuring Agreement for the "personal and advertising injury" coverage part of the Policy provides, in part, that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The Policy further provides that "[t]his insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

The Policy defines "personal and advertising injury" in part, as follows:

> "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment:
> b. Malicious prosecution:
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lesser:
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:
> e. Oral or written publication of material that violates a person's right of privacy.

The Litigation alleges defamation against SVO, which is the only allegation contained in the Litigation which potentially qualifies as an enumerated "personal or advertising injury" offense. Under the defamation cause of action, Plaintiff alleges during Plaintiff's performance of work at the Project and following its termination, SVO "disparaged" Plaintiff's work and reputation by "making numerous false statements to third parties on the jobsite and within the industry, including but not limited, falsely stating that commencement of equipment commissioning at the Project was delayed as a result of Veritiv's inability to manage the Project." Plaintiff alleges that statements were made to competitors including "DPR, Critical Project Services, LLC and BCSFM, LLC for purposes of harming Veritiv's reputation." Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the defamation claim does not fall within the "personal and advertising injury" offense of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" committed during the Policy period. Navigators also reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the Litigation does not allege an enumerated "personal and advertising injury" offense, a "personal injury" offense or an "advertising injury" offense arising out of SVO's business and committed during the policy period, as required by the Policy.

The Policy contains a Knowledge of Falsity Exclusion under the "personal and advertising injury" coverage part, which provides that the insurance does not apply to:

> **b. Material Published With Knowledge Of Falsity**
> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP



To the extent SVO published defamatory statements with knowledge that those statements are false, this exclusion may apply to preclude coverage. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy also contains an Intellectual Property Exclusion, as modified by endorsement, under the "personal and advertising injury" coverage part, which provides that the insurance does not apply to:

> **i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas "Personal and Advertising Injury" arising out of:**
>
> (a) Infringement, disparagement, dilution, diminishment of or damage to:
>
> i. Copyright, slogan or title:
>
> ii. Patent:
>
> iii. Trademark, service mark, collective mark, or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service:
>
> iv. Trade secret;
>
> v. Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service:
>
> vi. Advertising ideas, concepts, campaigns, or style of doing business; or
>
> vii. Any other intellectual property rights recognized or implied by law.
>
> (b) False designation of the origin of a good, product or service;

The Litigation alleges patent infringement and misappropriation of trade secrets, which are excluded by the Intellectual Property Exclusion. Navigators has no duty to indemnify SVO for any damages because of patent infringement or misappropriation of trade secrets. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy contains contractual liability and breach of contract exclusions under the "personal and advertising injury" coverage part, which provides in pertinent part, as follows:

> **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> ***
>
> **2. Exclusions**
>
> **This insurance does not apply to:**
>
> ***

e. Contractual Liability
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

The Litigation alleges breach of contract. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent the above exclusions apply to preclude or limit coverage under the Policy.

The Policy also excludes coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy also excludes coverage for "personal and advertising injury" "[a]rising out of a criminal act committed by or at the direction of the insured." The Litigation alleges fraud and civil conspiracy against SVO. Navigators reserves its rights to withdraw from the defense, deny a defense and/or indemnity and to seek reimbursement of any defense and/or indemnity to the extent this exclusion applies to preclude or limit coverage under the Policy.

The Policy also contains a punitive damages exclusion, by endorsement NPC-635 05 14, which provides in relevant part:

> This insurance does not apply to:
>
> Punitive damages, exemplary damages, fines, penalties, treble damages or other increase in damages resulting from the multiplication of compensatory damages, in whatever form assessed. If a "suit" is brought against the insured seeking damages to which this insurance applies and punitive or exemplary damages, we will provide a defense to such "suit". However, we will have no obligation to pay for any costs, interest, or judgment attributable to punitive or exemplary damages. Provisions of this exclusion do not apply in any state where such exclusion is expressly prohibited by state law or insurance department regulation.

To the extent the Litigation seeks punitive damages and those damages are not insurable, Navigators has no duty to indemnify SVO for any award of punitive damages.

Navigators also reserves its rights to deny indemnity for any equitable relief such as injunctive relief as they do not qualify as covered damages under the Policy. In addition, Navigators reserves its rights to deny indemnity for any causes of action that do not fall within a covered enumerated "personal or advertising injury" offense or qualify as a covered "property damage" or "bodily injury" caused by an "occurrence", including the causes of action for breach of contract, open book account, reasonable value, violation of unfair competition, misappropriation of trade secrets, patent infringement, intentional interference with contractual relations, fraud, negligent misrepresentation or civil conspiracy.

The Policy contains a limit of liability. Navigators will not pay any claim or judgment under the Policy to the extent that it exceeds the limits of the Policy. Any damage award in excess of the limit of liability, even for a loss that would be covered otherwise, will not be paid by Navigators.

## IV. Defense Counsel.

Navigators agrees to provide independent defense counsel selected by SVO in the Litigation from the date of tender of the Amended Complaint pursuant to California Civil Code §2860 which addresses the duties for independent counsel. As outlined in Civil Code Section 2860, the defense attorney selected by SVO to represent them must meet certain minimum qualifications. Pursuant to that statute, the defense attorney selected must have five (5) years of tort litigation practice, including substantial defense experience in the subjects and issues involved in the claim. They must also carry errors and omissions coverage.

Under California Civil Code §2860, Navigators' obligation to pay the reasonable fees incurred by defense counsel chosen by SVO is limited to rates which are actually paid by Navigators to its attorneys that it retains in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. California Civil Code §2860(c). Accordingly, Navigators will only agree to reimburse at hourly rates which are actually paid by Navigators in accord with California Civil Code §2860(c). Should counsel selected by SVO charge hourly rates in excess of these rates, SVO bears the full responsibility to pay the difference in rates.

Please note that SVO may choose to agree to waive its right to independent counsel pursuant to California Civil Code Section 2860, in which case Navigators will select and pay for defense counsel to defend SVO in this Litigation. ***Should SVO agree to waive its right to independent counsel, Navigators requests that it acknowledge its agreement to do so by signing the statement (which is required under California Civil Code Section 2860(e)) set forth at the end of this letter and returning it to my attention.***

Please be advised that Navigators will not pay any defense fees or costs relating to any insurance coverage action or advice, any non-legal fees and costs incurred for items such as crisis management or public relations, or any fees or costs incurred relative to any cross-claim SVO may file in this matter. To the extent that Navigators pays for the defense of claims that do not

fall within the scope of coverage, it reserves all rights under applicable law to seek reimbursement of those amounts from SVO.

Consistent with the provisions of the Policy and Civil Code § 2860, Navigators requests that SVO and defense counsel selected by SVO provide Navigators with all updates, pleadings, reports and analyses prepared detailing the evaluation of the Litigation, including an evaluation of the damages exposure, costs of defense through trial, and the amounts recommended for settlement of the Litigation. ***Please send all defense invoices and reports via email to the undersigned for review.*** Navigators reserves the right to review fees and costs billed by defense counsel chosen by SVO and to determine whether they are reasonable and reasonably incurred.

Please advise if another insurance carrier is providing coverage and/or a defense to SVO in the Litigation. Navigators will share the defense fees and costs of SVO in the Litigation with any other participating carrier defending SVO. If any other valid and collectible insurance is available to SVO for the defense of the Litigation, Navigators' obligations may be further limited under the Policy. Pursuant to the "other insurance" provision in the Policy, Navigators reserves the right to seek contribution for any defense and indemnity payments from all other valid and collectible insurance, whether issued to SVO or to others. Navigators also expressly reserves the right to assert its subrogation rights. Navigators requests that SVO immediately notify, if it has not already, any other insurance carriers whose coverage might apply to the claims asserted in this action and ask that the other carriers participate in the defense and indemnity of these claims. Please provide a copy of any such notification letters, any responses and their policies.

## V. Additional Reservation Of Rights.

Navigators also reserves the right to deny coverage for any uncovered damages alleged in the Litigation and/or where any damages are prohibited by applicable law, including, but not limited to Plaintiff's claim for punitive damages. The Policy also contains limits of insurance. Navigators will not pay any damages under the Policy to the extent any damages exceed the policy limit. Any damage award in excess of the limit of insurance, even for a loss that would be covered otherwise, will not be paid by Navigators.

Navigators wants SVO to know that by continuing with its investigation, by paying for lawyers to defend SVO in the Litigation, and by doing anything which Navigators feels is necessary to keep any loss to a minimum, Navigators is not necessarily agreeing to pay any judgment if one is obtained against SVO. Navigators will assert any and all of its applicable coverage defenses. Indeed, Navigators is not waiving its right to deny coverage, to further supplement or modify its reservation of rights, to raise any additional coverage defenses as they arise, or to refuse to defend SVO further at any future time. Navigators further reserves its right to seek reimbursement from SVO, independent counsel chosen by SVO, or from other persons not insured, and/or from other insurers, for all or a portion of all sums paid or advanced by Navigators towards attorneys' fees, costs, investigation, or any other sums paid by Navigators in

connection with the Litigation (including any indemnity payments) based on allocation between potentially covered claims and other claims, or based on any other reason.

Navigators agrees to defend SVO in the Litigation subject to a full reservation of rights, but will indemnify SVO only for those claims that come within the insuring agreements of, and are not excluded by, the Policy. Navigators will not indemnify SVO for any claims that are not so covered under the Policy. Any other damages awarded against SVO, or for which SVO assumes responsibility, would be the responsibility of SVO. Similarly, as noted above, should there be any award of punitive and/or exemplary damages, those would likewise be the responsibility of SVO.

Navigators expressly reserves its right to allocate between any covered and non-covered items of damages and payments (if any) of settlements and/or judgments and to seek reimbursement from SVO or others for any such non-covered indemnity payments. Navigators has no duty to indemnify SVO for any damages to the extent that those damages exceed the limits of insurance.

No payment by Navigators of any settlements and/or judgments shall constitute a waiver by Navigators of its rights under the Policy to later seek allocation and reimbursement of sums paid for any such settlements and/or judgments on the ground that there is no duty to indemnify SVO against all or a portion of this claim.

There may be additional terms, conditions, provisions and/or exclusions that bar or limit coverage under the Policy. Navigators reserves its rights to deny any duty to defend or indemnify and/or raise any and all coverage defenses.

## VI. Conclusion.

This letter is not intended as a comprehensive statement of each and every potentially applicable term, condition, exclusion, limitation, defense or right that Navigators may have under the Policy or in law. Navigators reserves the right to cite other provisions of the Policy not already cited in this letter. Navigators also reserves the right to raise and rely on all potentially applicable coverage defenses to disclaim coverage, whether or not stated in this letter. Navigators may rely on additional or different exclusionary terms or provisions in the Policy if, in the course of subsequent investigation, Navigators discovers facts which would make other terms of the Policy applicable. Navigators reserves the right to amend the coverage position set forth in this letter and to advise you of the grounds upon which any modifications are made.

Please note that nothing set forth in this letter should be deemed to amount to a waiver on the part of Navigators to assert the applicability of any of the provisions, terms, definitions, or exclusions of the Policy. Navigators expressly reserves the right to raise any additional coverage defenses, including the right to disclaim coverage on any other basis that may become apparent as this matter progresses and to file a declaratory judgment action to obtain a ruling on any disputed coverage issue.

Nothing contained herein should be construed as an estoppel or waiver of any rights or defenses, whether or not stated herein, which Navigators may possess under the Policy and/or applicable law. It should be understood further that any actions, including investigations, taken to date by Navigators and/or its agents and representatives do not constitute and are not intended as an estoppel or waiver of any rights or defenses available to Navigators, whether or not stated herein, that may be available now or at any point in time. Navigators specifically reserves its right to rely on the language of the Policy, and to deny coverage for any valid reason that may subsequently appear. Navigators shall not waive any of its rights unless expressly so stated in writing by Navigators.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Fair Lawsuits Settlement Practices Regulations, if insureds believe all or part of this claim has been wrongfully denied or rejected, they may have this matter reviewed by the following entity:

California Department of Insurance
Consumer Services Division
300 S. Spring Street
Los Angeles, CA 90013
1-800-927-4357-HELP

Should you have any questions, please do not hesitate to contact the undersigned.

Sincerely,

Wilson Elser Moskowitz Edelman & Dicker, LLP

David Simantob

cc: Mary Ann Vorndran ***(Via email only MVorndran@navg.com)***

Lisa D. Nicolls (***Via email only lnicolls@murphyaustin.com***)
Murphy Austin Adams Schoenfeld LLP
555 Capitol Mall, Suite 850, Sacramento, CA 95814

Marianne Evans (***Via email only mevans@hoffmanbrown.com***)
Hoffman Brown Company

**WAIVER PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2860**

This waiver is in connection with the matter entitled *Liebert Corporation v. SVO Building One, LLC,* American Arbitration Association, Case No. 01-18-0003-1318. The Insurer herein is Navigators Specialty Insurance Company.

SVO BUILDING ONE, LLC ("SVO") HAS BEEN ADVISED AND INFORMED OF ITS RIGHT TO SELECT INDEPENDENT COUNSEL TO REPRESENT IT IN THIS MATTER. IT HAS CONSIDERED THIS MATTER FULLY AND FREELY WAIVE ITS RIGHTS TO SELECT INDEPENDENT COUNSEL AT THIS TIME. SVO AUTHORIZES THE INSURER TO SELECT A DEFENSE ATTORNEY TO REPRESENT IT IN THIS MATTER.

DATED: _______________, 2019

SVO Building One, LLC

By: ________________________________
Its: ________________________________

# EXHIBIT "2"

# LEGAL SERVICES AGREEMENT

TYSON & MENDES, LLP ("TM") and SVO Building One LLC ("Client") agree that TM will provide legal services to Client as set forth below.

1. **SCOPE OF LEGAL SERVICES.** The legal services to be provided by TM pursuant to this Legal Services Agreement ("Agreement") to Client are as follows: Handling all aspects of Client's affirmative counter/cross-claim in the arbitration between SVO Building One, LLC and Vertiv Corp., Case No. 03-18-0003-1381. No other legal services will be provided to Client unless TM agrees to do so in writing. If additional legal services are provided, the terms of this Agreement shall continue in full force and effect as to such services unless a subsequent legal services agreement is entered into that expressly supersedes this Agreement. This Agreement shall terminate and all duties of TM to Client will terminate upon completion of such services.

2. **ENGAGEMENT-RETAINER FEE.** Prior to TM providing services pursuant to this Agreement, Client shall provide TM with a $10,000.00 Retainer Fee. The Retainer Fee shall be held in the TM Client Services Trust Account and applied to charges for services and/or costs provided on a monthly basis. TM invoices for services rendered will include an accounting of services charged against the Retainer Fee, with the Client being responsible for any difference. Upon exhaustion of the Retainer Fee, TM will advise Client and unless otherwise agreed to between Client and TM, Client shall replenish the full amount of the Retainer Fee within 14 days of receiving notice from TM.

3. **FEES AND BILLING.** TM's time will be accounted for in tenths of an hour and fees are calculated by applying hourly rates assigned to TM attorneys and other staff. Rates may also be subject to Court approval pursuant to applicable statutory restrictions. With advance notice in writing to Client, so it has an opportunity to "reasonably object", TM may, from time to time and in its sole discretion, utilize contract, outsource, and/or temporary service providers in connection with performing certain of the tasks to be rendered in connection with this engagement at the rates listed below. Fees and expenses will be billed monthly and are due upon receipt. Any bills that are not paid within 14 days from emailing by TM may be subject to a late charge equal to the lesser of 1% per month on the unpaid balance or the maximum rate permitted by law. The range of rates is set forth below. The invoices provided to Client will reflect all TM personnel who have billed time related to the representation of Client and their rates. Client agrees not to inform others of TM's rates being charged to Client.

| | |
|---|---|
| Partner/Senior Counsel | $295.00 |
| Associate | $225.00 |
| Paraprofessional | $165.00 |

4. **EXPENSES.** Client is responsible for all expenses incurred by TM in this representation. Certain expenses may include a standard overhead component when billed and are set forth below. TM will obtain advance payment for expenses from Client, subject to exceptional circumstances when TM in its discretion may determine to advance a cost. If TM advances an expense, Client will remain liable for the expense, and Client agrees to reimburse TM regardless of the outcome of this matter. Examples of expenses charged as a cost include, but are not limited to, standard air travel (i.e., coach), meals, experts, consultants, investigators, filing fees, court reporters, transcripts, postage, facsimiles, phone charges, overnight packages and couriers.

Any expense which is expected to exceed $2,000 must be approved by, Client in advance. Examples of current schedule of commonly incurred expenses charged at certain rates is set forth below and is reconsidered annually:

| | |
|---|---|
| Photocopying | $0.30 per page |
| Mileage | Per allowable IRS rate |
| Computer legal research | Per LexisNexis and/or Westlaw Transactional Pricing Plan |
| Messenger Charges | Per Attorney Service, FedEx, UPS or local messenger fee service charges. |

5. **PERCENTAGE CONTIGENCY FEE-SUCCESSFUL RESOLUTION**: In addition to the fees and billing set forth in paragraph 3, Client agrees to pay to TM for professional services a fee percentage fee as follows of any and all amounts recovered in such matter by way of settlement, judgment or otherwise:

- Recovery up to $9,000,000.00: 5% of Net Recovery.
- Recovery excess of $9,000,000: 10% of Net Recovery.

**NET RECOVERY:** TM shall be entitled to this fee after (1) payment to TM of all representation related costs and expenses, and (2) payment to Client of its out-of-pocket costs advanced by Client. The foregoing fee encompasses services provided by TM in connection with the arbitration, trial courts, appellate courts, administrative, or other case matter related proceedings. Should no recovery on Client's affirmative cross-claim be obtained, payment will not be made pursuant to this section but Client shall make all payments pursuant to all other sections of this Agreement, including, but not limited to Sections 3 and 4, *supra*. Net Recovery includes all interest, if any, on all items of damage recovered by Client. Net Recovery also includes any applicable post judgment interest on any fee due TM under this provision.

The fee arrangement set forth in this Agreement is not set by law but is negotiable between attorney and client and is subject to California Business & Professions Code section 6147. By signing this Agreement, Client accepts these terms and agrees that they are reasonable. If the recovery consists of payments to be made over a period of time, or other property not entirely cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery as by generally-recognized accounting and appraisal standards. If recovery payments are paid over time to Client, payment under this provision shall be payable to TM in tranches as such payments are received by Client.

6. **LIENS AND THIRD-PARTY INTEREST**. Client represents that Client has not given a security interest or otherwise assigned (voluntarily or involuntarily) any interest in the claim which is the subject of this Agreement. TM will have a lien for TM's fees and advanced expenses with respect to the matters which are the subject of this Agreement and on all proceeds of any recovery obtained whether by settlement, arbitration award, or court judgment or on any property obtained, including by patent, trademark, copyright, rescission, specific performance or other means. This generally means that TM has an ownership interest in any recovery by Client to the extent of TM's unpaid fees and expenses. Client will advise TM of any liens on any

recovery Client will advise TM of any liens on any recovery which will or may impact TM's interest in Client's recovery. Client acknowledges that it is aware of the right to seek the advice of independent counsel as to this provision and has been provided a reasonable opportunity to do so.

**7. FEE AWARDS.** It is understood that any sanctions against opposing party/counsel or attorney fee awards to TM and/or Client not based on reimbursement of fees shall belong exclusively to TM. But if the sanctions award includes a cost item (such as filing fee for making a motion or attorney' fees, etc. incurred and paid by Client in any motion, opposition to a motion, etc. from which said sanctions are awarded), the amount thereof shall be credited to client's costs account when received by Attorney.

**8. CLIENT COOPERATION.** Client understands and agrees that, in order for TM to represent it effectively, it is necessary for Client to assist and cooperate with TM. Client agrees to (1) make itself (including its employees if applicable) available to discuss issues as they arise in this matter; (2) attend and participate in meetings, preparation sessions, court proceedings and other activities in connection with the representation; (3) provide complete and accurate information and documents on a timely basis; and (4) make timely payment to any experts or vendors retained in connection with the services provided under this Agreement.

**9. TM GENERAL COUNSEL.** TM represents it has performed a diligent Conflicts of Interest check and that to its knowledge, it has no Conflict of Interest concerning the scope of its representation under this Agreement. It may however, be necessary in the course of TM's representation for its lawyers to analyze their professional duties or responsibilities, or those of TM, and to consult with the TM's General Counsel (the lawyer designated by TM to be its attorney in charge of risk management, ethics and other related issues) or other lawyers in doing so. To the extent TM is addressing its duties, obligations or responsibilities to Client or others in those consultations, it is possible someone may have the view that a conflict of interest exists as between TM and Client. As a condition of this engagement, Client waives any conflict of interest that might be viewed to arise out of any such consultations. Client further agrees that such consultations are protected from disclosure by TM's attorney-client privilege, that Client will not seek to discover or inquire into them, and shall not be entitled to access to same either during the course of the engagement or thereafter should a dispute between Client and TM ever arise. Nothing in the foregoing shall otherwise affect TM's obligation to keep Client informed of material developments in the course of the representation.

**10. DISCHARGE OF TM.** Client may discharge TM at any time by written notice effective when received within two days of delivery to TM. Unless specifically agreed by TM and Client, TM will provide no further services and advance no further expenses on Client's behalf after receipt of the notice unless required to do so in order to protect Client's interests. If TM is Client's attorney of record in any proceeding, Client will execute and return a substitution-of-attorney form executed by Client immediately on its receipt from TM. Notwithstanding TM's discharge, Client will be obligated to pay TM's fees per this Agreement for all services provided and to reimburse TM for all expenses incurred or advanced by TM before the discharge, incurred in effectuating the discharge and as necessary to protect the interests of the Client.

**11. WITHDRAWAL OF TM.** TM may withdraw at any time as permitted under the applicable rules of professional conduct. The circumstances under which such rules permit such withdrawal include, but are not limited to, Client consent, Client's conduct rendering it unreasonably difficult for TM to carry out the employment effectively, failure to cooperate and

failure to keep TM advised of Client's contact information. TM may be required or elect to withdraw if a conflict of interest develops between Client, any other persons and entities, and/or TM, including any conflict between the interests of Client and TM that is not waived or waivable that adversely affects TM's ability to provide the type of representation it has a duty to, or should provide to Clients, or if the matter requires an expertise which TM does not have and it would not be practical to develop under the circumstances. Except as provided by California law, whether statutorily or decisional, notwithstanding TM's withdrawal, Client is obligated to pay TM the TM fees for all services provided and to reimburse TM for all expenses incurred or advanced by TM before the withdrawal, or in the case of an adjudicatory proceeding, through the time when an order allowing the withdrawal is obtained.

12. **MAINTENANCE OF CLIENT DOCUMENTS.** TM may maintain documents related to the representation of Client in an electronically stored format only. Except for original documents, inducing contracts, agreements etc., once such documents are scanned and stored electronically, the paper form of the document may be destroyed. TM, in its discretion, may maintain certain documents in other than electronic form if necessary.

13. **RELEASE OF CLIENT'S DOCUMENTS**. Once the services under this Agreement have been completed, at the request of the Client, TM will deliver to Client all existing hard copy documents related to representation of Client. The documents will be sent to the Client address listed below, to the attention of the Client signatory. If Client also requests delivery of documents related to representation of Client existing in electronic form, TM will provide them to Client via a disk or the internet. The documents to be returned to Client include items reasonably necessary for Client's representation, excepting attorney work product or those documents which are otherwise privileged from disclosure. TM retains the right to keep copies of all Client documents. If Client does not request return of its documents, declines delivery of the documents, does not respond to related communications from TM within 30 days, or if Client cannot be located upon reasonable investigation, TM will have no further obligation to retain the documents and may destroy them in its discretion without further notice to Client.

14. **NO INVOLVEMENT WITH INSURANCE ISSUES.** Under no circumstances shall TM provide any legal services relating to any aspects of insurance coverage and Client agrees that it shall make other arrangements with separate counsel in regard to same. Client also agrees that it shall be solely responsible for tendering its defense to and seek insurance coverage from any insurers or other persons or entities who may owe it a defense or indemnification with regard to same.

15. **PAYMENT RESPONSIBILITY.** In the event that insurance coverage may be available to cover some or all of the fees and/or costs incurred in connection with TM's representation of Client relating to this engagement, TM agrees that any payments made by Client's insurer(s) in this regard shall be promptly refunded to Client in the event that Client has already paid TM for such amounts. However, Client remains responsible to pay TM for any and all amounts incurred in connection with the representation that may not be reimbursed in full by the Client's insurer(s) including but not limited to any shortfalls in payment, rate discrepancies, fee/cost disallowances, etc. relating to same.

16. **MEDIATION OF ALL ISSUES.** In the event of any dispute relating to this Agreement, the relationship between TM and Client, or the services performed (including but not limited to disputes regarding TM's fees or expenses and those involving claims of negligence, breach of

fiduciary duty or contract, fraud or any claims based upon a written law) TM and Client agree to first (and before initiating any legal action or arbitration) meet and confer within 30 days' notice by one party to another in an effort to negotiate a resolution of the dispute.

If the dispute is not resolved through negotiation, TM and/or Client shall, and before initiating any legal action or arbitration, within 20 days of failed negotiations, request that the Judicial Arbitration and Mediation Service (JAMS) choose a neutral mediator to conduct an in person mediation in the office of TM from which the services were performed with all involved parties to take place within 30 days of contact with JAMS. TM and Client agree to share equally in the mediation cost. If the dispute is not resolved after mediation, then the dispute shall be submitted to arbitration as provided below in this Agreement.

17. **ARBITRATION OF ALL DISPUTES.** If a dispute arises between TM and Client (including any agents, employees, officers, representatives or related entities or persons of Client) as to whether any legal services rendered by TM under this Agreement or otherwise, were improperly, negligently, or incompetently rendered, or otherwise rendered in breach of a contractual, ethical or other duty, the dispute will be submitted for arbitration, and TM and Client will be bound by the result. TM and Client expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this provision and that they shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person or entity.

TM recommends and Client acknowledges that Client may retain an independent attorney to advise client regarding arbitration and Client has had the opportunity to fully and freely discuss with a representative of TM or independent counsel the process of binding arbitration and its consequences which include, but are not limited to:

- By agreeing to binding arbitration, Client has waived the right to submit the dispute for determination by a judge or jury trial;
- Pre-arbitration discovery is generally more limited than and different from that allowed in court proceedings;
- The arbitrator's award is not required to include factual findings or legal reasonings;
- The arbitration award is final and binding on TM and Client;
- The grounds for appeal of an arbitration award are very limited compared to a court judgment or jury verdict

It is further agreed and understood that initial resort to the courts by either party shall not be considered a waiver of that party's right to compel binding arbitration under this provision. Arbitration shall be provided by JAMS and in accordance with California Code of Civil Procedure § 1280 et seq. with each party selecting a party arbitrator who, in turn, shall select a neutral arbitrator unless the amount in controversy is less than $250,000 in which case the matter will be decided by a single neutral arbitrator to be selected by TM and Client, or by JAMS if agreement cannot be reached. TM and Client agree that the TM law office in the city from which the legal services were provided shall be the venue for any legal proceedings hereunder, unless otherwise agreed to, in writing, between TM and Client. TM and Client further agree that the parties will have the right to discovery as provided in the Civil Discovery Act of 1986, as amended, set forth in the California Code of Civil Procedure, except that the arbitrator(s), rather

than the court, shall resolve all discovery disputes that arise. The arbitration otherwise will be conducted pursuant to the JAMS Recommended Arbitration Discovery Protocols for Domestic, Commercial Cases which can be found at http://www.jamsadr.com/arbitration-discovery-protocols/. All costs of such arbitration shall be split equally between TM and Client except that each side is responsible for its own attorneys' fees and costs. The parties shall maintain the confidential nature of the arbitration proceeding and the award, including the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

Additionally, if a dispute arises between TM and Client regarding TM's fees or expenses under this Agreement, Client has the right to elect non-binding arbitration pursuant to the fee arbitration provisions of the State Bar of California, as set forth in California Business & Professions Code section 6200 and following sections. If Client does not timely elect to proceed under the State Bar fee arbitration procedures, any dispute over TM's fees or expenses will be resolved by binding arbitration pursuant to the process described above in this paragraph.
Additionally, if any party within 30 days of service of notice of an award after non-binding arbitration wishes to have a trial of the dispute, instead of the initiation of a trial pursuant to California Business & Professions Code section 6200 and following sections, the dispute over TM's fees or expenses instead will be resolved by binding arbitration pursuant to the process described above in this section. The prevailing party in any action to recover TM fees or expenses will be awarded attorneys fees and costs incurred in a collection proceeding. TM will be considered to be the prevailing party if any amount of claimed fees or expenses is awarded to it. This sum will include the value of the time spent by the TM's own attorneys and other professionals to prosecute or defend such a proceeding, with fees calculated at the rate charged to Client in the matter(s) at issue.

**18. ADVANCE CONFLICT WAIVER.** Client understands and agrees this is not an exclusive agreement, precluding TM from representing other clients as provided herein and that Client is free to choose counsel other than TM. Client acknowledges it is a sophisticated consumer of legal services and has had the opportunity to consult independent counsel regarding this waiver specifically. TM is a national law firm that represents numerous clients over a wide range of industries and businesses and in a wide variety of situations. TM undertakes this representation on condition that it may undertake the representation consistent with this waiver. Client agrees that TM is representing Client or its affiliates pursuant to this Agreement and in other matters will not prevent or disqualify TM from representing other clients who may be adverse to Client or its affiliates in such other matters, in other circumstances and that Client consents in advance to TM undertaking such adverse representations except, in any matter which is substantially related to TM's representation of Client, or in any matter where there is a reasonable probability the confidential information furnished to TM could be used to your disadvantage. Client understands and agrees that, with this exception, TM is otherwise free to represent other clients, including clients whose interests may conflict with that of Client's in litigation, business transactions or other legal matters. TM will provide notice to Client should TM elect to represent another client in accordance with this paragraph of such representation and Client waives any objection to TM providing notice to new client of the fact that TM represents Client identifying Client in such notice. To the limited extent provided herein Client waives TM's duty of undivided loyalty to Client. To the extent Client is a business, TM has been

retained only to represent the particular business named in this Agreement and not any of its parents, subsidiaries, affiliates or related entities and Client waives any conflicts of interest with regard to TM representing others with matters adverse to such entities.

**19. ENTIRE AGREEMENT**. This Agreement contains the entire agreement of the parties. No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

**20. SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.** If any provision of this Agreement is held by a court or other tribunal of competent jurisdiction, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**21. MODIFICATION BY SUBSEQUENT AGREEMENT.** This Agreement may be modified by subsequent agreement of the parties but only if in writing.

**22. NON-ASSIGNABILITY.** Client agrees not to assign, sell or otherwise transfer any rights to pursue any type of claim against TM including, but not limited to, professional negligence, breach of contract or breach of any duties owed to Client and that any such assignment is void and without effect.

**23. APPLICABLE LAW.** The laws of the State of the TM office from which the majority of legal services are to be provided shall govern the construction and interpretation of this Agreement.

**24. NO GUARANTEE OF OUTCOME.** TM does not guarantee that any specific result or outcome will occur in this matter, including the amount of fees and expenses incurred during the course of the representation. The parties acknowledge that no representation has been made to the undersigned or their representatives concerning the outcome or probable outcome of the subject matter this Agreement.

**25. POSSIBLE PAYMENT BY CLIENT OF ADVERSE PARTIES' FEES AND COSTS.** Client acknowledges that in certain circumstances Client may be obligated to pay an adverse party or parties' fees and/or costs incurred depending on the outcome of the legal proceedings which are the subject of this Agreement. Such payment is the sole responsibility of Client and not of TM.

**26. OPPORTUNITY TO CONSULT WITH OTHER COUNSEL.** Client may wish to consult with another legal counsel about the content and effect of this Agreement before signing below. Client's signature will certify that Client has either met with another attorney before signing or has chosen not to do so, but Client understands Client has the right and has had the opportunity to consult with another legal counsel.

**27. EFFECTIVE DATE OF AGREEMENT.** The effective date of this Agreement will be the latest date of signing by Client or signing by an authorized partner of TM and its terms shall be retroactive to the date TM first performed services for Client which are the subject of this Agreement. TM has no obligation to provide any services until this Agreement has been fully executed by TM and Client and no attorney-client relationship is established until the full execution of this Agreement and payment of the engagement Retainer Fee.

**28. CONFIRMATION OF UNDERSTANDING.** It is acknowledged by the signature below that Client has read this entire Agreement, understands all of its terms and that any and all questions Client has about the Agreement have been answered adequately.

The foregoing is agreed to by and on behalf of:

By: SVO Building One LLC,
a Delaware limited liability company

Sacramento Venture One LLC,
a Delaware limited liability company
Its: Sole Managing Member

Prime Data Centers Corp.,
a Delaware corporation
Its: Administrative Manager

Dated: 12/29/2020

Name: Nicholas Laag
Address: 110 Pacific Avenue, San Francisco, CA 94111
Phone: 415-941-9050
Email: nlaag@primedatacenters.com

Dated: 12/30/2020

TYSON & MENDES, LLP
Name: DAVID M. FLISHMAN
Title: PARTNER ATTORNEY
Address: 1055 WEST 7TH STREET, SUITE 2500, LA, CA 90017
Phone: (213) 745-8600
Email: DFLISHMAN@TYSONMENDES.COM

# EXHIBIT "3"

Robert H. Sloss (Bar No. 87757)
Mark G. Budwig (Bar No. 126045)
Laurence R. Phillips (Bar No. 190152)
Scott R. Omohundro (Bar No. 1794210
PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP
12544 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone: 858.720.6300
Facsimile: 619.235.0398
E-mail: robert.sloss@procopio.com
mark.budwig@procopio.com
laurence.phillips@procopio.com
scott.omohundro@procopio.com

Attorneys for Claimant/Counter-Respondent
VERTIV CORPORATION (fka LIEBERT CORPORATION)

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LIEBERT CORPORATION, an Ohio corporation,<br><br>Claimant,<br><br>v.<br><br>SVO BUILDING ONE, LLC, a Delaware limited liability company,<br><br>Respondents. | Case No. 01-18-0003-1318<br><br>**PARTIAL DISMISSAL WITHOUT PREJUDICE**<br><br>Arbitrator: George C. Fisher |
| AND RELATED COUNTERCLAIM. | |



EXH. C-1

TO: ARBITRATOR GEORGE C. FISHER AND SVO BUILDING ONE, LLC AND ITS ATTORNEYS OF RECORD:

NOTICE is given that Vertiv Corporation (fka Liebert Corporation) hereby **dismisses without prejudice** the following causes of action in its Fourth Amended Complaint: Thirteenth Cause of Action (Claim for Infringement of Patent No. 6,563,048), Fifteenth Cause of Action (Defamation), Sixteenth Cause of Action (Fraud), Seventeenth Cause of Action (Negligent Misrepresentation), and Eighteenth Cause of Action (Civil Conspiracy).

DATED: March 24, 2021

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: ______________________
Robert H. Sloss
Mark G. Budwig
Laurence R. Phillips
Scott R. Omohundro
Attorneys for Claimant/Counter-Respondent VERTIV CORPORATION (fka LIEBERT CORPORATION)

Liebert Corporation v. SVO Building One, LLC
Case No. 01-18-0003-1318

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is PROCOPIO, CORY, HARGREAVES & SAVITCH LLP, 12544 High Bluff Drive, Suite 400, San Diego, CA 92130. On March 24, 2021, I served the within documents:

- **PARTIAL DISMISSAL WITHOUT PREJUDICE**

☐ **BY U.S. MAIL** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

☐ **BY OVERNIGHT MAIL** by placing the document(s) listed above in a sealed overnight envelope and depositing it for overnight delivery at San Diego, California, addressed as set forth below. I am readily familiar with the practice of this firm for collection and processing of correspondence for processing by overnight mail. Pursuant to this practice, correspondence would be deposited in the overnight box located at 12544 High Bluff Drive, Suite 300, San Diego, CA 92130 in the ordinary course of business on the date of this declaration.

☑ **BY E-MAIL OR ELECTRONIC SERVICE** based on an agreement of the parties to accept service by electronic transmission, by electronically mailing the document(s) listed above to the e-mail address(es) set forth below, or as stated on the attached service list and/or by electronically notifying the parties set forth below that the document(s) listed above can be located and downloaded from the hyperlink provided. No error was received, within a reasonable time after the transmission, nor any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| George C. Fisher<br>American Arbitration Association<br>Email: georgecfisher@gmail.com | Arbitrator |
| David M. Frishman, Esq.<br>Richard P. Dieffenbach, Esq.<br>Cindy Mader, Esq.<br>Jamie R. Nazemi Tabrizi, Esq.<br>Tyson & Mendes<br>445 South Figueroa Street, Suite 3100<br>Los Angeles, CA 90017<br>Telephone: (213) 745-8600<br>Facsimile: (213) 745-8604<br>Email: dfrishman@tysonmendes.com<br>rdieffenback@tysonmendes.com<br>jtabrizi@tysonmendes.com<br>cmader@tysonmendes.com<br>gescobar@tysonmendes.com | Attorneys for Respondent/Counter-Claimant SVO BUILDING ONE, LLC |

☑ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 24, 2021, at San Diego, California.

Leslie D. Sharpe

# EXHIBIT "4"

# AMEDNED LEGAL SERVICES AGREEMENT

This Amended Legal Services Agreement is entered into between TYSON & MENDES, LLP ("TM") and SVO Building One LLC ("Client"), effective April 16, 2021 and supersedes all prior Legal Services Agreements between TM and Client regarding the arbitration between SVO Building One, LLC and Vertiv Corp., Case No. 03-18-0003-1381. TM will provide legal services to Client as set forth below.

**1. SCOPE OF LEGAL SERVICES**. The legal services to be provided by TM pursuant to this Legal Services Agreement ("Agreement") to Client are as follows: Handling all aspects of Client's Defense and affirmative counter/cross-claim in the arbitration between SVO Building One, LLC and Vertiv Corp., Case No. 03-18-0003-1381. No other legal services will be provided to Client unless TM agrees to do so in writing. If additional legal services are provided, the terms of this Agreement shall continue in full force and effect as to such services unless a subsequent legal services agreement is entered into that expressly supersedes this Agreement. This Agreement shall terminate and all duties of TM to Client will terminate upon completion of such services.

**2. ENGAGEMENT-RETAINER DEPOSIT FEE**. Prior to TM continuing to provide services pursuant to this Agreement, Client shall provide TM with a $325,000.00 Retainer Deposit Fee. The Retainer Deposit Fee shall be held in the TM Client Services Trust Account and applied to charges for services and/or costs provided on a monthly basis, if TM invoices are not paid timely as provided in this agreement, or as otherwise may be mutually agreed upon between TM and Client, in writing. If TM and Client mutually agree to payment for any services rendered out of the Retainer Deposit Fee, TM will provide an accounting of services charged against the Retainer Deposit Fee, with the Client being responsible for any difference. During the pendency of this agreement, the Retainer Deposit Fee shall be maintained at all times by the Client at the amount of $325,000.00 Should the Retainer Deposit Fee become less than $325,000, TM will advise Client and unless otherwise agreed to between Client and TM, Client shall replenish the full amount of the Retainer Fee within 15 days of receiving notice from TM.

**3. FEES AND BILLING**. TM's time will be accounted for in tenths of an hour and fees are calculated by applying hourly rates assigned to TM attorneys and other staff. Rates may also be subject to Court approval pursuant to applicable statutory restrictions. With advance notice in writing to Client, so it has an opportunity to "reasonably object", TM may, from time to time and in its sole discretion, utilize contract, outsource, and/or temporary service providers in connection with performing certain of the tasks to be rendered in connection with this engagement at the rates listed below. Fees and expenses will be billed monthly and are due upon receipt and payment of all invoices must be within 15 days of emailing by TM, excepting charges Client may dispute. With regard to any disputed charges Client believes in good faith to exist, Client shall advise TM by email within 10 days of receiving TM's invoice of any such disputed charges. TM shall have 10 days to respond to Client, by email, and provide clarification of said disputed charges. Any undisputed bills that are not paid within 15 days from emailing by TM, shall constitute good cause and grounds for TM to immediately withdraw from this Legal Services Agreement and as counsel for SVO in the arbitration. Any invoice charges disputed by Client, with which TM, in good faith, disagrees, which are not paid within 30 days of TM emailing the invoice shall constitute good cause and grounds for TM to immediately withdraw from this Legal Services

Agreement and as counsel for SVO in the arbitration. Any TM invoices, not paid within 15 days of emailing by TM may be subject to a late charge equal to the lesser of 1% per month on the unpaid balance or the maximum rate permitted by law. The range of rates is set forth below. The invoices provided to Client will reflect all TM personnel who have billed time related to the representation of Client and their rates. Client agrees not to inform others of TM's rates being charged to Client.

| | |
|---|---|
| Partner/Senior Counsel | $295.00 |
| Associate | $225.00 |
| Paraprofessional | $165.00 |

4. **EXPENSES**. Client is responsible for all expenses and costs incurred by TM in this representation. Certain expenses may include a standard overhead component when billed and are set forth below. TM will obtain advance payment for expenses from Client, subject to exceptional circumstances when TM in its discretion may determine to advance a cost. If TM advances an expense, Client will remain liable for the expense, and Client agrees to reimburse TM regardless of the outcome of this matter. Examples of expenses charged as a cost include, but are not limited to, standard air travel (i.e., coach), meals, experts, consultants, investigators, filing fees, court reporters, transcripts, postage, facsimiles, phone charges, overnight packages and couriers. Any expense which is expected to exceed $2,000 must be approved by, Client in advance. Examples of current schedule of commonly incurred expenses charged at certain rates is set forth below and is reconsidered annually:

| | |
|---|---|
| Photocopying | $0.30 per page |
| Mileage | Per allowable IRS rate |
| Computer legal research | Per LexisNexis and/or Westlaw Transactional Pricing Plan |
| Messenger Charges | Per Attorney Service, FedEx, UPS or local messenger fee service charges. |

5. **PERCENTAGE CONTIGENCY FEE-SUCCESSFUL RESOLUTION**. In addition to the fees and billing set forth in paragraph 3, Client agrees to pay to TM for professional services a fee percentage fee as follows of any and all amounts recovered in such matter by way of settlement, judgment or otherwise:

- Recovery up to $9,000,000.00: 5% of Net Recovery.
- Recovery excess of $9,000,000: 10% of Net Recovery.

**NET RECOVERY:** TM shall be entitled to this fee after (1) payment to TM of all representation related costs and expenses, and (2) payment to Client of its out-of-pocket costs advanced by Client. The foregoing fee encompasses services provided by TM in connection with the arbitration, trial courts, appellate courts, administrative, or other case matter related

proceedings. Should no recovery on Client's affirmative counter/cross-claim be obtained, payment will not be made pursuant to this section but Client shall make all payments pursuant to all other sections of this Agreement, including, but not limited to Sections 3 and 4, *supra*. Net Recovery includes all interest, if any, on all items of damage recovered by Client. Net Recovery also includes any applicable post judgment interest on any fee due TM under this provision.

The fee arrangement set forth in this Agreement is not set by law but is negotiable between attorney and client and is subject to California Business & Professions Code section 6147. By signing this Agreement, Client accepts these terms and agrees that they are reasonable. If the recovery consists of payments to be made over a period of time, or other property not entirely cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery as by generally-recognized accounting and appraisal standards. If recovery payments are paid over time to Client, payment under this provision shall be payable to TM in tranches as such payments are received by Client.

**6. LIENS AND THIRD-PARTY INTEREST**. Client represents that Client has not given a security interest or otherwise assigned (voluntarily or involuntarily) any interest in the claim which is the subject of this Agreement. TM will have a lien for TM's fees and advanced expenses with respect to the matters which are the subject of this Agreement and on all proceeds of any recovery obtained whether by settlement, arbitration award, or court judgment or on any property obtained, including by patent, trademark, copyright, rescission, specific performance or other means. This generally means that TM has an ownership interest in any recovery by Client to the extent of TM's unpaid fees and expenses. Client will advise TM of any liens on any recovery Client will advise TM of any liens on any recovery which will or may impact TM's interest in Client's recovery. Client acknowledges that it is aware of the right to seek the advice of independent counsel as to this provision and has been provided a reasonable opportunity to do so.

**7. FEE AWARDS.** It is understood that any sanctions against opposing party/counsel or attorney fee awards to TM and/or Client not based on reimbursement of fees shall belong exclusively to TM. But if the sanctions award includes a cost item (such as filing fee for making a motion or attorney' fees, etc. incurred and paid by Client in any motion, opposition to a motion, etc. from which said sanctions are awarded), the amount thereof shall be credited to client's costs account when received by Attorney.

**8. CLIENT COOPERATION.** Client understands and agrees that, in order for TM to represent it effectively, it is necessary for Client to assist and cooperate with TM. Client agrees to (1) make itself (including its employees if applicable) available to discuss issues as they arise in this matter; (2) attend and participate in meetings, preparation sessions, court proceedings and other activities in connection with the representation; (3) provide complete and accurate information and documents on a timely basis; and (4) make timely payment to any experts or vendors retained in connection with the services provided under this Agreement.

**9. TM GENERAL COUNSEL.** TM represents it has performed a diligent Conflicts of Interest check and that to its knowledge, it has no Conflict of Interest concerning the scope of its representation under this Agreement. It may however, be necessary in the course of TM's representation for its lawyers to analyze their professional duties or responsibilities, or those of TM,

and to consult with the TM's General Counsel (the lawyer designated by TM to be its attorney in charge of risk management, ethics and other related issues) or other lawyers in doing so. To the extent TM is addressing its duties, obligations or responsibilities to Client or others in those consultations, it is possible someone may have the view that a conflict of interest exists as between TM and Client. As a condition of this engagement, Client waives any conflict of interest that might be viewed to arise out of any such consultations. Client further agrees that such consultations are protected from disclosure by TM's attorney-client privilege, that Client will not seek to discover or inquire into them, and shall not be entitled to access to same either during the course of the engagement or thereafter should a dispute between Client and TM ever arise. Nothing in the foregoing shall otherwise affect TM's obligation to keep Client informed of material developments in the course of the representation.

**10. DISCHARGE OF TM.** Client may discharge TM at any time by written notice effective when received within two days of delivery to TM. Unless specifically agreed by TM and Client, TM will provide no further services and advance no further expenses on Client's behalf after receipt of the notice unless required to do so in order to protect Client's interests. If TM is Client's attorney of record in any proceeding, Client will execute and return a substitution-of-attorney form executed by Client immediately on its receipt from TM. Notwithstanding TM's discharge, Client will be obligated to pay TM's fees per this Agreement for all services provided and to reimburse TM for all expenses incurred or advanced by TM before the discharge, incurred in effectuating the discharge and as necessary to protect the interests of the Client.

**11. WITHDRAWAL OF TM.** TM may withdraw at any time as permitted under the applicable rules of professional conduct. The circumstances under which such rules permit such withdrawal include, but are not limited to, Client consent, Client's conduct rendering it unreasonably difficult for TM to carry out the employment effectively, failure to cooperate and failure to keep TM advised of Client's contact information. TM may be required or elect to withdraw if a conflict of interest develops between Client, any other persons and entities, and/or TM, including any conflict between the interests of Client and TM that is not waived or waivable that adversely affects TM's ability to provide the type of representation it has a duty to, or should provide to Clients, or if the matter requires an expertise which TM does not have and it would not be practical to develop under the circumstances. Except as provided by California law, whether statutorily or decisional, notwithstanding TM's withdrawal, Client is obligated to pay TM the TM fees for all services provided and to reimburse TM for all expenses incurred or advanced by TM before the withdrawal, or in the case of an adjudicatory proceeding, through the time when an order allowing the withdrawal is obtained.

**12. MAINTENANCE OF CLIENT DOCUMENTS.** TM may maintain documents related to the representation of Client in an electronically stored format only. Except for original documents, inducing contracts, agreements etc., once such documents are scanned and stored electronically, the paper form of the document may be destroyed. TM, in its discretion, may maintain certain documents in other than electronic form if necessary.

**13. RELEASE OF CLIENT'S DOCUMENTS**. Once the services under this Agreement have been completed, at the request of the Client, TM will deliver to Client all existing hard copy documents related to representation of Client. The documents will be sent to the Client address

listed below, to the attention of the Client signatory. If Client also requests delivery of documents related to representation of Client existing in electronic form, TM will provide them to Client via a disk or the internet. The documents to be returned to Client include items reasonably necessary for Client's representation, excepting attorney work product or those documents which are otherwise privileged from disclosure. TM retains the right to keep copies of all Client documents. If Client does not request return of its documents, declines delivery of the documents, does not respond to related communications from TM within 30 days, or if Client cannot be located upon reasonable investigation, TM will have no further obligation to retain the documents and may destroy them in its discretion without further notice to Client.

**14. NO INVOLVEMENT WITH INSURANCE ISSUES.** Under no circumstances shall TM provide any legal services relating to any aspects of insurance coverage and Client agrees that it shall make other arrangements with separate counsel in regard to same. Client also agrees that it shall be solely responsible for tendering its defense to and seek insurance coverage from any insurers or other persons or entities who may owe it a defense or indemnification with regard to same.

**15. PAYMENT RESPONSIBILITY.** In the event that insurance coverage may be available to cover some or all of the fees and/or costs incurred in connection with TM's representation of Client relating to this engagement, TM agrees that any payments made by Client's insurer(s) in this regard shall be promptly refunded to Client in the event that Client has already paid TM for such amounts. However, Client remains responsible to pay TM for any and all amounts incurred in connection with the representation that may not be reimbursed in full by the Client's insurer(s) including but not limited to any shortfalls in payment, rate discrepancies, fee/cost disallowances, etc. relating to same.

**16. MEDIATION OF ALL ISSUES**. In the event of any dispute relating to this Agreement, the relationship between TM and Client, or the services performed (including but not limited to disputes regarding TM's fees or expenses and those involving claims of negligence, breach of fiduciary duty or contract, fraud or any claims based upon a written law) TM and Client agree to first (and before initiating any legal action or arbitration) meet and confer within 30 days' notice by one party to another in an effort to negotiate a resolution of the dispute.

If the dispute is not resolved through negotiation, TM and/or Client shall, and before initiating any legal action or arbitration, within 20 days of failed negotiations, request that the Judicial Arbitration and Mediation Service (JAMS) choose a neutral mediator to conduct an in person mediation in the office of TM from which the services were performed with all involved parties to take place within 30 days of contact with JAMS. TM and Client agree to share equally in the mediation cost. If the dispute is not resolved after mediation, then the dispute shall be submitted to arbitration as provided below in this Agreement.

**17. ARBITRATION OF ALL DISPUTES.** If a dispute arises between TM and Client (including any agents, employees, officers, representatives or related entities or persons of Client) as to whether any legal services rendered by TM under this Agreement or otherwise, were improperly, negligently, or incompetently rendered, or otherwise rendered in breach of a contractual, ethical or other duty, the dispute will be submitted for arbitration, and TM and Client

will be bound by the result. TM and Client expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this provision and that they shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person or entity.

TM recommends and Client acknowledges that Client may retain an independent attorney to advise client regarding arbitration and Client has had the opportunity to fully and freely discuss with a representative of TM or independent counsel the process of binding arbitration and its consequences which include, but are not limited to:

- By agreeing to binding arbitration, Client has waived the right to submit the dispute for determination by a judge or jury trial;
- Pre-arbitration discovery is generally more limited than and different from that allowed in court proceedings;
- The arbitrator's award is not required to include factual findings or legal reasonings;
- The arbitration award is final and binding on TM and Client;
- The grounds for appeal of an arbitration award are very limited compared to a court judgment or jury verdict

It is further agreed and understood that initial resort to the courts by either party shall not be considered a waiver of that party's right to compel binding arbitration under this provision.

Arbitration shall be provided by JAMS and in accordance with California Code of Civil Procedure § 1280 et seq. with each party selecting a party arbitrator who, in turn, shall select a neutral arbitrator unless the amount in controversy is less than $250,000 in which case the matter will be decided by a single neutral arbitrator to be selected by TM and Client, or by JAMS if agreement cannot be reached. TM and Client agree that the TM law office in the city from which the legal services were provided shall be the venue for any legal proceedings hereunder, unless otherwise agreed to, in writing, between TM and Client. TM and Client further agree that the parties will have the right to discovery as provided in the Civil Discovery Act of 1986, as amended, set forth in the California Code of Civil Procedure, except that the arbitrator(s), rather than the court, shall resolve all discovery disputes that arise. The arbitration otherwise will be conducted pursuant to the JAMS Recommended Arbitration Discovery Protocols for Domestic, Commercial Cases which can be found at http://www.jamsadr.com/arbitration-discovery-protocols/. All costs of such arbitration shall be split equally between TM and Client except that each side is responsible for its own attorneys' fees and costs. The parties shall maintain the confidential nature of the arbitration proceeding and the award, including the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

Additionally, if a dispute arises between TM and Client regarding TM's fees or expenses under this Agreement, Client has the right to elect non-binding arbitration pursuant to the fee arbitration provisions of the State Bar of California, as set forth in California Business & Professions Code section 6200 and following sections. If Client does not timely elect to proceed under the State Bar fee arbitration procedures, any dispute over TM's fees or expenses will be

resolved by binding arbitration pursuant to the process described above in this paragraph.

Additionally, if any party within 30 days of service of notice of an award after non-binding arbitration wishes to have a trial of the dispute, instead of the initiation of a trial pursuant to California Business & Professions Code section 6200 and following sections, the dispute over TM's fees or expenses instead will be resolved by binding arbitration pursuant to the process described above in this section. The prevailing party in any action to recover TM fees or expenses will be awarded attorneys fees and costs incurred in a collection proceeding. TM will be considered to be the prevailing party if any amount of claimed fees or expenses is awarded to it. This sum will include the value of the time spent by the TM's own attorneys and other professionals to prosecute or defend such a proceeding, with fees calculated at the rate charged to Client in the matter(s) at issue.

**18. ADVANCE CONFLICT WAIVER.** Client understands and agrees this is not an exclusive agreement, precluding TM from representing other clients as provided herein and that Client is free to choose counsel other than TM. Client acknowledges it is a sophisticated consumer of legal services and has had the opportunity to consult independent counsel regarding this waiver specifically. TM is a national law firm that represents numerous clients over a wide range of industries and businesses and in a wide variety of situations. TM undertakes this representation on condition that it may undertake the representation consistent with this waiver. Client agrees that TM is representing Client or its affiliates pursuant to this Agreement and in other matters will not prevent or disqualify TM from representing other clients who may be adverse to Client or its affiliates in such other matters, in other circumstances and that Client consents in advance to TM undertaking such adverse representations except, in any matter which is substantially related to TM's representation of Client, or in any matter where there is a reasonable probability the confidential information furnished to TM could be used to your disadvantage. Client understands and agrees that, with this exception, TM is otherwise free to represent other clients, including clients whose interests may conflict with that of Client's in litigation, business transactions or other legal matters. TM will provide notice to Client should TM elect to represent another client in accordance with this paragraph of such representation and Client waives any objection to TM providing notice to new client of the fact that TM represents Client identifying Client in such notice. To the limited extent provided herein Client waives TM's duty of undivided loyalty to Client. To the extent Client is a business, TM has been retained only to represent the particular business named in this Agreement and not any of its parents, subsidiaries, affiliates or related entities and Client waives any conflicts of interest with regard to TM representing others with matters adverse to such entities.

**19. ENTIRE AGREEMENT**. This Agreement contains the entire agreement of the parties. No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

**20. SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.** If any provision of this Agreement is held by a court or other tribunal of competent jurisdiction, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**21. MODIFICATION BY SUBSEQUENT AGREEMENT.** This Agreement may be modified by subsequent agreement of the parties but only if in writing.

**22. NON-ASSIGNABILITY**. Client agrees not to assign, sell or otherwise transfer any rights to pursue any type of claim against TM including, but not limited to, professional negligence, breach of contract or breach of any duties owed to Client and that any such assignment is void and without effect.

**23. APPLICABLE LAW.** The laws of the State of the TM office from which the majority of legal services are to be provided shall govern the construction and interpretation of this Agreement.

**24. NO GUARANTEE OF OUTCOME**. TM does not guarantee that any specific result or outcome will occur in this matter, including the amount of fees and expenses incurred during the course of the representation. The parties acknowledge that no representation has been made to the undersigned or their representatives concerning the outcome or probable outcome of the subject matter this Agreement.

**25. POSSIBLE PAYMENT BY CLIENT OF ADVERSE PARTIES' FEES AND COSTS.** Client acknowledges that in certain circumstances Client may be obligated to pay an adverse party or parties' fees and/or costs incurred depending on the outcome of the legal proceedings which are the subject of this Agreement. Such payment is the sole responsibility of Client and not of TM.

**26. OPPORTUNITY TO CONSULT WITH OTHER COUNSEL.** Client may wish to consult with another legal counsel about the content and effect of this Agreement before signing below. Client's signature will certify that Client has either met with another attorney before signing or has chosen not to do so, but Client understands Client has the right and has had the opportunity to consult with another legal counsel.

**27. EFFECTIVE DATE OF AGREEMENT.** The effective date of this Agreement is April 16, 2021 and its terms shall be retroactive to the date TM first performed services for Client which are the subject of this Agreement. TM has no obligation to provide any services until this Agreement has been fully executed by TM and Client and no attorney-client relationship is established until the full execution of this Agreement and payment of the engagement Retainer Fee.

**28. CONFIRMATION OF UNDERSTANDING.** It is acknowledged by the signature below that Client has read this entire Agreement, understands all of its terms and that any and all questions Client has about the Agreement have been answered adequately.

The foregoing is agreed to by and on behalf of:

By: SVO Building One LLC,
a Delaware limited liability company

Sacramento Venture One LLC,
a Delaware limited liability company
Its: Sole Managing Member

Prime Data Centers Corp.,
a Delaware corporation
Its: Administrative Manager

Dated: 4/27/21

______________________________
Name: Nicholas Laag
Address: 110 Pacific Avenue, San Francisco, CA 94111
Phone: 415-941-9050
Email: nlaag@primedatacenters.com

Dated: __________

TYSON & MENDES, LLP

______________________________
Name: __________________________
Title: __________________________
Address: ________________________
Phone: __________________________
Email: __________________________

# EXHIBIT "5"

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID: [redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 04/28/2021
**Invoice Number:** 74700

**20-2453 / Liebert International v. SVO Building One, LLC**

| | |
|---|---|
| **CASE:** | Liebert International v. SVO Building One, LLC |
| **CASE NO:** | 03-18-0003-1381 |
| **OUR FILE NO:** | 20-2453 |

| **Professional Fees** | | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| 04/16/2021 DF | Retainer deposit | 0.00 | 0.00 | 325,000.00 |
| | | Sub-total Fees: | | $325,000.00 |

| | |
|---|---|
| **Total Fees:** | $325,000.00 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$325,000.00** |



CONFIDENTIAL

# EXHIBIT "6"

MERCHANTS bank of commerce

P.O. Box 994748 Redding, CA 96099-4748

**Statement Date:** **09/30/2021** **Page 1**

| Customer Service Information |
|---|
| Website: www.mboc.com |
| Care Center: 800-421-2575 |

PRIME DATA CENTERS CORP
620 COOLIDGE DR #185
FOLSOM CA 95630-3184

| Your Account Summary at a Glance | | | | |
|---|---|---|---|---|
| **Account Type** | **Number** | **Balance** | **YTD Interest** | **Maturity Date** |
| Business Select Checking | [redacted] | [redacted] | $0.00 | |

Give paperless a try! Sign up for electronic statements and you will be able to access your statements from anywhere, anytime. It's safe, secure, and good for the environment. Learn more about signing up by calling us at 800.421.2575.

**Account Statement for Business Select Checking Account Number:** [redacted]

**Prime Data Centers Corp**

[redacted]

| Summary of Overdraft and Nonsufficient Funds Fees | This Period | Year to Date | Prior Year |
|---|---|---|---|
| Total Overdraft Fees | 0.00 | 0.00 | 0.00 |
| Total Nonsufficient Funds Fees | 0.00 | 0.00 | 0.00 |

**Deposits and Other Additions**

| Date | Amount | Description |
|---|---|---|

**USE THIS ONLINE TOOL TO BALANCE YOUR ACCOUNT(S):**

- https://www.mboc.com/calculator/CheckBook

If checkbook and statement do not balance, have you: Accounted for bank charges? Verified additions and subtractions in your checkbook? Compared cancelled checks to checkbook? Compared deposit amounts on statement to checkbook?

PLEASE REPORT ANY ERRORS OR OMISSIONS WITHIN 30 DAYS. OTHERWISE STATEMENT WILL BE CONSIDERED CORRECT AND CHECKS GENUINE. ALL DEPOSITS AND CREDITS ARE SUBJECT TO FINAL PAYMENT.

**APPLIES TO CONSUMER ACCOUNTS ONLY**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**
Telephone us at 800-421-2575 or write us at Merchants Bank of Commerce 1951 Churn Creek Road Redding, CA 96002 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. Notification should be made as soon as possible if you think your statement or receipt is incorrect or if you need more information about a transaction listed on the statement or receipt. You must contact Merchants Bank of Commerce no later than 60 days after we sent you the first statement on which the problem or error appears. You must be prepared to provide the following information:

- Your name and account number
- A description of the error or transaction you are unsure about along with an explanation as to why you believe it is an error or why you need more information
- The dollar amount of the suspected error

If you provide oral notice, you may be required to send your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days (twenty (20) business days for new accounts), after we hear from you and if an error has occurred will correct any error promptly. If we need more time, however, we may take up to forty five (45) days (ninety (90) days for errors or questions involving new accounts, a transaction initiated outside of the United States or a transaction at a point-of-sale terminal) to investigate your complaint or question. If we do this, you will have the use of the funds in question after the ten (10) business days (twenty (20) business days for new accounts). If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, then we may not credit your account during the investigation. Your account is considered a new account for the first thirty (30) days after the first deposit is made, unless you already have an established account with us before this account is opened.

We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.

You may ask for copies of the documents that we used in our investigation.

**OVERDRAFT LINES OF CREDIT**
We use the Average Daily Balance Method (including current transactions) on your account. We figure the interest charge on your account by applying the periodic rate to the average daily balance of your account (including current transactions). To get the average daily balance we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits and unpaid interest charges. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the average daily balance.

**BILLING RIGHTS SUMMARY**

*In Case of Errors or Questions About Your Bill*

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:

Merchants Bank of Commerce
1951 Churn Creek Road
Redding, CA 96002

You may also contact us via email: main@mboc.com or on the web at www.mboc.com

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing [or electronically]. You may call us at (800) 421-2757 or (530) 224-3333 but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**HOW TO CONTACT US**

Merchants Bank of Commerce
1951 Churn Creek Road
Redding, CA 96002
(800) 421-2575

Email main@mboc.com
24 Hour Automated Telephone Banking (800) 422-7931

**www.mboc.com**

**Member FDIC** EQUAL HOUSING LENDER 03/19

MERCHANTS bank of commerce

P.O. Box 994748 Redding, CA 96099-4748



## Deductions

| Date | Amount | Description |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| 09/02/2021 | $25,780.00 | Wire To Aaa/American Arbitration Associatio |
| [redacted] | [redacted] | [redacted] |
| 09/22/2021 | $16,110.50 | Wire To Tyson  Mendes Llp |
| [redacted] | [redacted] | [redacted] |

## Checks

| Date | Amount | Serial Number |
|---|---|---|
| [redacted] | [redacted] | |

## Balance Summary For Business Select Checking Account [redacted]

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

MERCHANTS bank of commerce

P.O. Box 994748 Redding, CA 96099-4748

**Images for Business Select Checking**
[redacted]
**09/30/2021**
**Page 3**

[redacted]

**Statement set for account** [redacted]

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank

Good Evening, Jennifer Przygrodzka

Single Transactions Recurring Transactions

| Created date | Status | Transaction Type | Account | Amount |
|---|---|---|---|---|
| 11/11/2021 | Processed | Domestic Wire - Tracking ID: 1350141 | [redacted] | $60,192.30 |

**Tracking ID:** 1350141

**Created:** 11/11/2021 5:44 PM

**Created By:** Jennifer Przygrodzka

**Authorized:** 11/11/2021 5:45 PM

**Authorized By:** Jennifer Przygrodzka

**Will process On:** 11/12/2021

**From Account:** [redacted]

**To Account:** 2000017952068

**To Account Type:** Checking

**Originator Wire Header:** Prime Data Centers

**Message to Beneficiary:** Re Case # 01-18-0003-1318-2-CR

**Amount:** $60,192.30

**Recipient Wire Name:** AAA/American Arbitration Associatio

**Beneficiary FI Routing Number:** 121000248

**Beneficiary FI Name:** Wells Fargo Bank

**Beneficiary FI Address 1:** 150 East 42nd Street, 24th FL.,

**Beneficiary FI City:** new york

**Beneficiary FI State:** NY

**Beneficiary FI ZIP:** 10017

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank
P.O. Box 994748 Redding, CA 96099-4748

Statement Date: 11/30/2021 Page 1

| Customer Service Information |
|---|
| Website: www.mboc.com<br>Care Center: 800-421-2575 |

PRIME DATA CENTERS LLC
620 COOLIDGE DR #185
FOLSOM CA 95630-3184

## Your Account Summary at a Glance

| Account Type | Number | Balance | YTD Interest | Maturity Date |
|---|---|---|---|---|
| Basic Business Checking | [redacted] | [redacted] | $0.00 | |

Give paperless a try! Sign up for electronic statements and you will be able to access your statements from anywhere, anytime. It's safe, secure, and good for the environment. Learn more about signing up by calling us at 800.421.2575.

## Account Statement for Basic Business Checking Account Number: [redacted]

[redacted]

### Summary of Overdraft and Nonsufficient Funds Fees

| | This Period | Year to Date | Prior Year |
|---|---|---|---|
| Total Overdraft Fees | 0.00 | 0.00 | 0.00 |
| Total Nonsufficient Funds Fees | 0.00 | 0.00 | 0.00 |

### Deposits and Other Additions

| Date | Amount | Description |
|---|---|---|
| [redacted] | | |

**USE THIS ONLINE TOOL TO BALANCE YOUR ACCOUNT(S):**

- https://www.mboc.com/calculator/CheckBook

If checkbook and statement do not balance, have you: Accounted for bank charges? Verified additions and subtractions in your checkbook? Compared cancelled checks to checkbook? Compared deposit amounts on statement to checkbook?

PLEASE REPORT ANY ERRORS OR OMISSIONS WITHIN 30 DAYS. OTHERWISE STATEMENT WILL BE CONSIDERED CORRECT AND CHECKS GENUINE. ALL DEPOSITS AND CREDITS ARE SUBJECT TO FINAL PAYMENT.

**APPLIES TO CONSUMER ACCOUNTS ONLY**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**
Telephone us at 800-421-2575 or write us at Merchants Bank of Commerce 1951 Churn Creek Road Redding, CA 96002 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. Notification should be made as soon as possible if you think your statement or receipt is incorrect or if you need more information about a transaction listed on the statement or receipt. You must contact Merchants Bank of Commerce no later than 60 days after we sent you the first statement on which the problem or error appears. You must be prepared to provide the following information:

- Your name and account number
- A description of the error or transaction you are unsure about along with an explanation as to why you believe it is an error or why you need more information
- The dollar amount of the suspected error

If you provide oral notice, you may be required to send your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days (twenty (20) business days for new accounts), after we hear from you and if an error has occurred will correct any error promptly. If we need more time, however, we may take up to forty five (45) days (ninety (90) days for errors or questions involving new accounts, a transaction initiated outside of the United States or a transaction at a point-of-sale terminal) to investigate your complaint or question. If we do this, you will have the use of the funds in question after the ten (10) business days (twenty (20) business days for new accounts). If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, then we may not credit your account during the investigation. Your account is considered a new account for the first thirty (30) days after the first deposit is made, unless you already have an established account with us before this account is opened.

We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.

You may ask for copies of the documents that we used in our investigation.

**OVERDRAFT LINES OF CREDIT**
We use the Average Daily Balance Method (including current transactions) on your account. We figure the interest charge on your account by applying the periodic rate to the average daily balance of your account (including current transactions). To get the average daily balance we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits and unpaid interest charges. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the average daily balance.

**BILLING RIGHTS SUMMARY**

*In Case of Errors or Questions About Your Bill*

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:

Merchants Bank of Commerce
1951 Churn Creek Road
Redding, CA 96002

You may also contact us via email: main@mboc.com or on the web at www.mboc.com

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing [or electronically]. You may call us at (800) 421-2757 or (530) 224-3333 but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**HOW TO CONTACT US**

Merchants Bank of Commerce
1951 Churn Creek Road
Redding, CA 96002
(800) 421-2575

Email main@mboc.com
24 Hour Automated Telephone Banking (800) 422-7931

**www.mboc.com**

**Member FDIC** EQUAL HOUSING LENDER 03/19

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank



## Deposits and Other Additions

| Date | Amount | Description |
|---|---|---|
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |

## Deductions

| Date | Amount | Description |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| 11/12/2021 | $60,192.30 | Wire To Aaa/American Arbitration Associatio |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank
P.O. Box 994748 Redding, CA 96099-4748



## Deductions

| Date | Amount | Description |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| | | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

## Checks

| Date | Amount | Serial Number | Date | Amount | Serial Number | Date | Amount | Serial Number |
|---|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | | |

## Balance Summary For Basic Business Checking Account [redacted]

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

Statement set for account [redacted]



CONFIDENTIAL

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank

**Images for Basic Business Checking**
[redacted]
**11/30/2021**
**Page 4**

[redacted]

**Statement set for account** [redacted]



CONFIDENTIAL

Welcome to Pay Online

# PAY ONLINE

AMERICAN ARBITRATION ASSOCIATION®

## PAYMENT CONFIRMATION - Please print a copy for your records.

AAA Case

SVO Building One, LLC

Thank you for your payment.

If you require assistance please call Customer Service at 800.778.7879 between the hours of 9:00 AM EST - 8:00 PM EST Monday through Friday.

| Bill Line # | Description | Due Date | Amount Paid |
|---|---|---|---|
| 13765419 | Your Share of the Arbitrator's Compensation Deposit for Preliminary Matters | 10-Aug-2023 | $1,500.00 |
| 13777790 | Final Fee | 28-Aug-2023 | $6,825.00 |

Payment received on:Oct 16, 2023 at 16:45 Eastern Daylight Time

$8325.00

American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, USA.

© 2023 American Arbitration Association

Pay Online (ver 4.6.0.7 RAD)

Contact Privacy Terms of Use Secure Case Administration

Follow AAA®

AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| Statement Date |
|---|
| 15-Nov-21 |
| **Balance Currently Due** |
| $60,192.30 |
| **Case #** |
| 01-18-0003-1318-2-CR |

**Pay PIN**: 10970416

# Detail Invoice/Statement

David M. Frishman, Esq.
Tyson & Mendes, LLP
445 South Figueroa Street
Suite 3100
Los Angeles, CA 90071

**Representing: SVO Building One, LLC**

Re: Liebert Corporation aka Vertiv
Vs.
SVO Building One, LLC

| Statement Date | Case # | Previous Balance | Credits/Cancellations | New Charges | Statement Balance |
|---|---|---|---|---|---|
| 15-Nov-21 | 01-18-0003-1318 | $67,316.69 | $7,124.39 | $0.00 | $60,192.30 |

| Bill Line Date *Transaction Date* | Bill Line # | Description | Amount | Credits/ Cancellations | Balance | Due Date |
|---|---|---|---|---|---|---|
| 16-Oct-2021 | 13265114 | Your Share of the Additional Neutral Compensation Deposit | $48,000.00 | | $48,000.00 | 15-Nov-2021 |
| 11-Oct-2021 | 13261073 | Fee for Increased Counter Claim | $5,070.91 | | $5,070.91 | 11-Oct-2021 |
| 18-Aug-2021 | 13228290 | Arbitrator's Compensation | $40,000.00 | | $7,121.39 | 30-Sep-2021 |
| *04-Sep-2021* | | ACH/Wire | | $25,780.00 | | |
| *27-Oct-2021* | | Check (#00710383) | | $7,098.61 | | |
| 03-Aug-2021 | 13199509 | Fee for Increased Counter Claim | $25.78 | | $0.00 | 03-Aug-2021 |
| *27-Oct-2021* | | Check (#00710383) | | $25.78 | | |
| 10-Mar-2021 | 13033374 | Your Share of the Neutral Compensation Deposit covering additional preliminary matters, including pre-hearings | $45,000.00 | | $0.00 | 23-Mar-2021 |
| *11-May-2021* | | Check (#0000047918) | | $45,000.00 | | |
| 15-Oct-2020 | 12828872 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $30,000.00 | | $0.00 | 30-Oct-2020 |
| *26-Jan-2021* | | Check (#0000043640) | | $26,500.00 | | |
| *11-May-2021* | | Check (#0000047918) | | $3,500.00 | | |
| 31-Jan-2020 | 12560095 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $6,000.00 | | $0.00 | 31-May-2020 |
| *26-Jan-2021* | | Check (#0000043640) | | $6,000.00 | | |
| 31-Jan-2020 | 12560093 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $6,000.00 | | $0.00 | 30-Apr-2020 |
| *03-Feb-2020* | | Check (#9431) | | $3,500.00 | | |
| *26-Jan-2021* | | Check (#0000043640) | | $2,500.00 | | |
| 31-Jan-2020 | 12560091 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $6,500.00 | | $0.00 | 31-Mar-2020 |
| *03-Feb-2020* | | Check (#9431) | | $6,500.00 | | |
| 31-Jan-2020 | 12560089 | Your Share of the Neutral Compensation Deposit covering study for additional hearing days | $8,000.00 | | $0.00 | 14-May-2021 |
| *26-Jul-2021* | | Check (#0000050722) | | $8,000.00 | | |
| 31-Jan-2020 | 12560084 | Your Share of the Neutral Compensation Deposit covering | $20,800.00 | | $0.00 | 14-May-2021 |

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

| Statement Date |
|---|
| 15-Nov-21 |
| **Balance Currently Due** |
| $60,192.30 |
| **Case #** |
| 01-18-0003-1318-2-CR |

**Pay PIN**: 10970416

| | | | | | | |
|---|---|---|---|---|---|---|
| <br>*26-Jul-2021* | | additional hearing days<br>Check (#0000050722) | | <br>$20,800.00 | | |
| 31-Jan-2020<br>*04-Aug-2020* | 12560079 | Expenses to be reimbursed to Arbitrator (Add'l Hearing Days)<br>Cancellation | $2,375.00 | <br>$2,375.00 | $0.00 | 31-Jul-2020 |
| 10-Oct-2019<br>*08-Nov-2019* | 12490245 | Arbitrator's Compensation<br>Check (#9316) | $43,300.00 | <br>$43,300.00 | $0.00 | 08-Nov-2019 |
| 22-May-2019<br>*10-Jun-2019* | 12402674 | Rental Fee for AAA Hearing Room<br>Check (#62262) | $100.00 | <br>$100.00 | $0.00 | 22-May-2019 |
| 01-May-2019<br>*09-May-2019* | 12389102 | Rental Fee for AAA Hearing Room<br>Check (#62096) | $100.00 | <br>$100.00 | $0.00 | 01-May-2019 |
| 28-Mar-2019<br>*04-Aug-2020* | 12367781 | Expenses to be reimbursed to Arbitrator<br>Cancellation | $2,125.00 | <br>$2,125.00 | $0.00 | 31-Jul-2020 |
| 28-Mar-2019<br>*26-Jul-2021* | 12367779 | Your Share of Arbitrator's Compensation for study and award<br>Check (#0000050722) | $12,000.00 | <br>$12,000.00 | $0.00 | 14-May-2021 |
| 28-Mar-2019<br>*26-Jul-2021* | 12367777 | Your share of Arbitrator's Compensation for hearings<br>[redacted]50722) | $27,200.00 | <br>$27,200.00 | $0.00 | 14-May-2021 |
| 28-Mar-2019<br>*09-May-2019* | 12367773 | Your Share of Arbitrator's Compensation for prehearing time<br>Check (#62096) | $40,000.00 | <br>$40,000.00 | $0.00 | 29-Apr-2019 |
| 19-Mar-2019<br>*01-May-2019* | 12361498 | Final Fee<br>Check (#9157) | $13,750.00 | <br>$13,750.00 | $0.00 | 19-Mar-2019 |
| 20-Nov-2018<br>*26-Nov-2018* | 12292108 | Your Share of Arbitrator's Compensation<br>Check (#9000.) | $7,500.00 | <br>$7,500.00 | $0.00 | 19-Dec-2018 |
| 03-Oct-2018<br>*09-Oct-2018* | 12264481 | Expenses to be reimbursed to Arbitrator<br>Check (#59796) | $50.00 | <br>$50.00 | $0.00 | 10-Oct-2018 |
| 03-Oct-2018<br>*09-Oct-2018* | 12264479 | Your Share of the Neutral Compensation Deposit covering preliminary matters<br>Check (#59796) | $2,500.00 | <br>$2,500.00 | $0.00 | 10-Oct-2018 |
| 06-Sep-2018<br>*06-Sep-2018* | 12247902 | Administrative Fee for Counterclaim<br>Check (#59603) | $11,500.00 | <br>$11,500.00 | $0.00 | 06-Sep-2018 |

| Statement Balance | Balance Currently Due |
|---|---|
| $60,192.30 | $60,192.30 |

**Corporate Address and Tax ID**: American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, EIN: [redacted]





CONFIDENTIAL

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

| Statement Date |
| --- |
| 15-Nov-21 |
| **Balance Currently Due** |
| $60,192.30 |
| **Case #** |
| 01-18-0003-1318-2-CR |

**Pay PIN**: 10970416

# Payment Options

## Paying by Credit Card or eCheck

To pay with a credit card or eCheck online, go to www.adr.org, click on "***File or Access your Case***" and then select "***Quick Pay an Invoice***" and use this **Pay PIN**: **10970416**.

## Wire Transfer

As information transmitted by the bank is often truncated due to limited space, please email your reference information (Case #/Bill Line #/Program #/Party Name) with the date and amount of your wire, to ensure that your payment is credited promptly and correctly (e.g. 011400021841 P1 or #1234567 P2 or EDU1234). Please email as follows:

For active cases: send to your AAA case representative and corpfinance@adr.org
For new filings (where your case number is not known): send to casefiling@adr.org and corpfinance@adr.org

FOR WIRES / ACH / EFT

**Name of Bank:** Wells Fargo Bank
**Address:** 150 East 42nd Street, 24th FL., New York, NY 10017, USA
**Account Name:** AAA/American Arbitration Association
**Account Number:** [redacted]
**ABA/Transit Number:** 121000248
**Reference:** Case # and Bill Line #/Party Name; or Program # (as applicable)
**Swift Code/BIC:** WFBIUS6S

Note: Please take steps to ensure that your bank does in fact wire the entire amount to our account. From time to time, certain banks will keep a portion of the wire transfer for their own service fee, leaving a balance due to the AAA/ICDR.

## Paying by Check

*Payment by mailing checks is strongly discouraged due to significant disruptions in mail delivery as a result of COVID-19.*

In the event that this is the only way you are able to make a payment, please return this page with your payment (please indicate the Case # on the check) to:

45 E River Park Place West
Suite 308
Fresno, CA 93720
Telephone: (877)528-0880
Fax: (855)433-3046

AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| Statement Date |
|---|
| 13-Oct-2023 |
| **Balance Currently Due** |
| $8,325.00 |
| **Case #** |
| 01-23-0002-5212-2-JC |

Case Manager: Julie E Collins JulieCollins@adr.org
**Pay PIN**: 12003033

# Summary Invoice/Statement

Lindy Scoffield
Evans Wieckowski Ward & Scoffield, LLP
745 University
Sacramento, CA 95825

**Representing: SVO Building One, LLC**

Re: Salute Mission Critical, LLC (f/k/a Salute, Inc.)
Vs.
SVO Building One, LLC

**To pay online directly, click here.**

| Statement Date | Case # | Previous Balance | Credits/Cancellations | New Charges | Statement Balance |
|---|---|---|---|---|---|
| 13-Oct-2023 | 01-23-0002-5212 | $8,325.00 | $0.00 | $0.00 | $8,325.00 |

| Bill Line Date | Bill Line # | Description | Amount | Credits/ Cancellations | Balance | Due Date |
|---|---|---|---|---|---|---|
| 28-Aug-2023 | 13777790 | Final Fee | $6,825.00 | $0.00 | $6,825.00 | 28-Aug-2023 |
| 10-Aug-2023 | 13765419 | Your Share of the Arbitrator's Compensation Deposit for Preliminary Matters | $1,500.00 | $0.00 | $1,500.00 | 10-Aug-2023 |
| 08-Aug-2023 | 13762867 | Administrative Fee for Counterclaim | $5,500.00 | $5,500.00 | $0.00 | 08-Aug-2023 |

| Statement Balance | Balance Currently Due |
|---|---|
| $8,325.00 | $8,325.00 |

AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| Statement Date |
|---|
| 13-Oct-2023 |
| **Balance Currently Due** |
| $8,325.00 |
| **Case #** |
| 01-23-0002-5212-2-JC |

Case Manager: Julie E Collins JulieCollins@adr.org
Pay PIN: 12003033

# Payment Options

**Paying by Credit Card or eCheck** (To pay this invoice online directly, click here.)
Or you can go to www.adr.org, click on "***File or Access your Case***" and then select "***Quick Pay an Invoice***" and use this **Pay PIN**: **12003033**. Please note that where permitted by law, a 3% processing fee will be assessed on payments made by credit card; all such processing fees are non-refundable, regardless of whether AAA fees or compensation or expense deposits are later refunded in full or in part. The AAA accepts payment by Visa, MasterCard, and Discover. There is no processing fee for payments made by echeck or debit cards.

**Wire Transfer**
As information transmitted by the bank is often truncated due to limited space, please email your reference information (Case #/Bill Line #/Program #/Party Name) with the date and amount of your wire, to ensure that your payment is credited promptly and correctly (e.g. 011400021841 P1 or #1234567 P2 or EDU1234). Please email as follows:

For active cases: send to your AAA case representative and corpfinance@adr.org
For new filings (where your case number is not known): send to casefiling@adr.org and corpfinance@adr.org

FOR WIRES / ACH / EFT

**Name of Bank:** Wells Fargo Bank
**Address:** 150 East 42nd Street, 24th FL., New York, NY 10017, USA
**Account Name:** AAA/American Arbitration Association
**Account Number:** [redacted]
**ABA/Transit Number:** 121000248
**Reference:** Case # and Bill Line #/Party Name; or Program # (as applicable)
**Swift Code/BIC:** WFBIUS6S

Note: Please take steps to ensure that your bank does in fact wire the entire amount to our account. From time to time, certain banks will keep a portion of the wire transfer for their own service fee, leaving a balance due to the AAA/ICDR.

**Paying by Check**
Please return this page with your payment (please indicate the Case # on the check) to:

45 E River Park Place West
Suite 308
Fresno, CA 93720
Telephone: (877)528-0880
Fax: (855)433-3046

**Corporate Address and Tax ID**: American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, EIN: [redacted]





CONFIDENTIAL

MERCHANTS bank of commerce

Good Morning, Jennifer Przygrodzka

Single Transactions | Recurring Transactions

| Created date | Status | Transaction Type | Account | Amount |
|---|---|---|---|---|
| 5/17/2021 | Processed | Domestic Wire - Tracking ID: 1284575 | [redacted] | $48,500.00 |

**Tracking ID:** 1284575

**Created:** 05/17/2021 11:09 AM

**Created By:** Jennifer Przygrodzka

**Authorized:** 05/17/2021 11:10 AM

**Authorized By:** Jennifer Przygrodzka

**Will process On:** 05/17/2021

**From Account:** [redacted]

**To Account:** [redacted]

**To Account Type:** Checking

**Originator Wire Header:** Prime Data Centers

**Message to Beneficiary:** Case#01-18-0003-1318-2-CR Bill line#13033374 & 12828872

**Amount:** $48,500.00

**Recipient Wire Name:** AAA/American Arbitration Associatio

**Beneficiary FI Routing Number:** 121000248

**Beneficiary FI Name:** Wells Fargo Bank

**Beneficiary FI Address 1:** 150 East 42nd Street, 24th FL.,

**Beneficiary FI City:** new york

**Beneficiary FI State:** NY

**Beneficiary FI ZIP:** 10017

AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| Statement Date |
|---|
| 25-Apr-2021 |
| **Balance Currently Due** |
| $48,500.00 |
| **Case #** |
| 01-18-0003-1318-2-CR |

**Pay PIN**: 10970416

# Summary Invoice/Statement

David M. Frishman, Esq.
Tyson & Mendes, LLP
445 South Figueroa Street
Suite 3100
Los Angeles, CA 90071

**Representing: SVO Building One, LLC**

Re: Liebert Corporation aka Vertiv
Vs.
SVO Building One, LLC

| Statement Date | Case # | Previous Balance | Credits/Cancellations | New Charges | Statement Balance |
|---|---|---|---|---|---|
| 25-Apr-2021 | 01-18-0003-1318 | $116,500.00 | $0.00 | $0.00 | $116,500.00 |

| Bill Line Date | Bill Line # | Description | Amount | Credits/ Cancellations | Balance | Due Date |
|---|---|---|---|---|---|---|
| 10-Mar-2021 | 13033374 | Your Share of the Neutral Compensation Deposit covering additional preliminary matters, including pre-hearings | $45,000.00 | $0.00 | $45,000.00 | 23-Mar-2021 |
| 15-Oct-2020 | 12828872 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $30,000.00 | $26,500.00 | $3,500.00 | 30-Oct-2020 |
| 31-Jan-2020 | 12560095 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $6,000.00 | $6,000.00 | $0.00 | 31-May-2020 |
| 31-Jan-2020 | 12560093 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $6,000.00 | $6,000.00 | $0.00 | 30-Apr-2020 |
| 31-Jan-2020 | 12560091 | Your Share of the Neutral Compensation Deposit covering additional pre-hearing matters | $6,500.00 | $6,500.00 | $0.00 | 31-Mar-2020 |
| 31-Jan-2020 | 12560089 | Your Share of the Neutral Compensation Deposit covering study for additional hearing days | $8,000.00 | $0.00 | $8,000.00 | 14-May-2021 |
| 31-Jan-2020 | 12560084 | Your Share of the Neutral Compensation Deposit covering additional hearing days | $20,800.00 | $0.00 | $20,800.00 | 14-May-2021 |
| 31-Jan-2020 | 12560079 | Expenses to be reimbursed to Arbitrator (Add'l Hearing Days) | $2,375.00 | $2,375.00 | $0.00 | 31-Jul-2020 |
| 10-Oct-2019 | 12490245 | Arbitrator's Compensation | $43,300.00 | $43,300.00 | $0.00 | 08-Nov-2019 |
| 22-May-2019 | 12402674 | Rental Fee for AAA Hearing Room | $100.00 | $100.00 | $0.00 | 22-May-2019 |
| 01-May-2019 | 12389102 | Rental Fee for AAA Hearing Room | $100.00 | $100.00 | $0.00 | 01-May-2019 |
| 28-Mar-2019 | 12367781 | Expenses to be reimbursed to Arbitrator | $2,125.00 | $2,125.00 | $0.00 | 31-Jul-2020 |
| 28-Mar-2019 | 12367779 | Your Share of Arbitrator's Compensation for study and award | $12,000.00 | $0.00 | $12,000.00 | 14-May-2021 |
| 28-Mar-2019 | 12367777 | Your share of Arbitrator's Compensation for hearings | $27,200.00 | $0.00 | $27,200.00 | 14-May-2021 |
| 28-Mar-2019 | 12367773 | Your Share of Arbitrator's Compensation for prehearing time | $40,000.00 | $40,000.00 | $0.00 | 29-Apr-2019 |
| 19-Mar-2019 | 12361498 | Final Fee | $13,750.00 | $13,750.00 | $0.00 | 19-Mar-2019 |
| 20-Nov-2018 | 12292108 | Your Share of Arbitrator's Compensation | $7,500.00 | $7,500.00 | $0.00 | 19-Dec-2018 |
| 03-Oct-2018 | 12264481 | Expenses to be reimbursed to Arbitrator | $50.00 | $50.00 | $0.00 | 10-Oct-2018 |
| 03-Oct-2018 | 12264479 | Your Share of the Neutral Compensation Deposit covering preliminary matters | $2,500.00 | $2,500.00 | $0.00 | 10-Oct-2018 |
| 06-Sep-2018 | 12247902 | Administrative Fee for Counterclaim | $11,500.00 | $11,500.00 | $0.00 | 06-Sep-2018 |

| Statement Balance | Balance Currently Due |
|---|---|
| $116,500.00 | $48,500.00 |

**Corporate Address and Tax ID**: American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, EIN [redacted]

AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| Statement Date |
| --- |
| 25-Apr-2021 |
| **Balance Currently Due** |
| $48,500.00 |
| **Case #** |
| 01-18-0003-1318-2-CR |

**Pay PIN**: 10970416

# Payment Options

## Paying by Credit Card or eCheck

To pay with a credit card or eCheck online, go to www.adr.org, click on "***File or Access your Case***" and then select "***Quick Pay an Invoice***" and use this **Pay PIN**: **10970416**.

## Wire Transfer

As information transmitted by the bank is often truncated due to limited space, please email your reference information (Case #/Bill Line #/Program #/Party Name) with the date and amount of your wire, to ensure that your payment is credited promptly and correctly (e.g. 011400021841 P1 or #1234567 P2 or EDU1234). Please email as follows:

For active cases: send to your AAA case representative and corpfinance@adr.org
For new filings (where your case number is not known): send to casefiling@adr.org and corpfinance@adr.org

FOR WIRES / ACH / EFT

**Name of Bank:** Wells Fargo Bank
**Address:** 150 East 42nd Street, 24th FL., New York, NY 10017, USA
**Account Name:** AAA/American Arbitration Association
**Account Number:** [redacted]
**ABA/Transit Number:** 121000248
**Reference:** Case # and Bill Line #/Party Name; or Program # (as applicable)
**Swift Code/BIC:** WFBIUS6S

Note: Please take steps to ensure that your bank does in fact wire the entire amount to our account. From time to time, certain banks will keep a portion of the wire transfer for their own service fee, leaving a balance due to the AAA/ICDR.

## Paying by Check

*Payment by mailing checks is strongly discouraged due to significant disruptions in mail delivery as a result of COVID-19.*

In the event that this is the only way you are able to make a payment, please return this page with your payment (please indicate the Case # on the check) to:

45 E River Park Place West
Suite 308
Fresno, CA 93720
Telephone: (877)528-0880
Fax: (855)433-3046

MERCHANTS bank of commerce

Good Evening, Jennifer Przygrodzka

Single Transactions Recurring Transactions

| Created date | Status | Transaction Type | Account | Amount |
|---|---|---|---|---|
| 9/1/2021 | Authorized | Domestic Wire - Tracking ID: 1323988 | [redacted] | $25,780.00 |

**Tracking ID:** 1323988

**Created:** 09/01/2021 4:27 PM

**Created By:** Jennifer Przygrodzka

**Authorized:** 09/01/2021 4:27 PM

**Authorized By:** Jennifer Przygrodzka

**Will process On:** 09/02/2021

**From Account:** [redacted]

**To Account:** [redacted]

**To Account Type:** Checking

**Originator Wire Header:** Prime Data Centers

**Message to Beneficiary:** Re case #01-18-0003-1318

**Amount:** $25,780.00

**Recipient Wire Name:** AAA/American Arbitration Associatio

**Beneficiary FI Routing Number:** 121000248

**Beneficiary FI Name:** Wells Fargo Bank

**Beneficiary FI Address 1:** 150 East 42nd Street, 24th FL.,

**Beneficiary FI City:** new york

**Beneficiary FI State:** NY

**Beneficiary FI ZIP:** 10017





CONFIDENTIAL

MERCHANTS bank of commerce
P.O. Box 994748 Redding, CA 96099-4748

Statement Date: 04/30/2020 Page 1

| Customer Service Information |
|---|
| Website: www.mboc.com |
| Care Center: 800-421-2575 |

SVO BUILDING ONE LLC
3140 PEACEKEEPER WAY SUITE 101A
MCCLELLAN CA 95652-0894

| Your Account Summary at a Glance | | | | |
|---|---|---|---|---|
| **Account Type** | **Number** | **Balance** | **YTD Interest** | **Maturity Date** |
| Basic Business Checking | [redacted] | [redacted] | $0.00 | |

In these unprecedented times, we are working to remain available to serve your banking needs while taking action to mitigate the spread of COVID-19. All branches are open. Many of our services are available online anywhere, any time. To help limit your public exposure, we encourage you to use MBOC alternative services. Please visit www.MBOC.com for additional information.

**Account Statement for Basic Business Checking Account Number:** [redacted]

[redacted]

| Summary of Overdraft and Nonsufficient Funds Fees | This Period | Year to Date | Prior Year |
|---|---|---|---|
| Total Overdraft Fees | 0.00 | 0.00 | 0.00 |
| Total Nonsufficient Funds Fees | 0.00 | 0.00 | 0.00 |

[redacted]

# EXHIBIT "7"

WELLS FARGO **Wires**

# Payment Information

| | | | |
|---|---|---|---|
| CHIPS Confirmation # | 0445609/008341/008341 | Status | Successful |
| Payment ID | 286 | Modified | 05/06/2021 02:28 pm ET by PRZYJ411 |
| Type | Wire | | |
| Name | HKA Global, Inc | | |

# Debit Account

### Debit Account

PRIME DATA CENTER CORP
Acct #[redacted] USD

# Beneficiary

### Beneficiary

HKA Global, Inc
United States of America (US)
Acct # [redacted]

### Beneficiary Bank

HSBC BANK USA NATIONAL ASSOCIATION
829 10TH AVE
NEW YORK 10019
United States of America (US)
FEDWIRE# 021001088

# Payment Details

| | |
|---|---|
| Debit Currency | USD - United States Dollar |
| Credit Currency | USD - United States Dollar |
| Amount | 51,368.00 USD |
| Value Date | 05/06/2021 |

# References

### Originator

XTREAM DATA CENTERS CORP
5170 GOLDEN FOOTHILL PKWY
EL DORADO HILLS CA 957629608
United States of America (US)

### Payment References

ID or Acct # [redacted]

Print





CONFIDENTIAL

WELLS FARGO

# Wires

## Payment Information

Name HKA Global, Inc

Status Awaiting 1 approvals.

Payment ID 290

Modified 06/28/2021 07:48 pm ET by PRZYJ411

Type Wire

## Debit Account

Debit Account
PRIME DATA CENTER CORP
Acct # [redacted] USD

## Beneficiary

**Beneficiary**
HKA Global, Inc
United States of America (US)
Acct # [redacted]

Beneficiary Bank
HSBC BANK USA NATIONAL ASSOCIATION
829 10TH AVE
NEW YORK 10019
United States of America (US)
FEDWIRE# 021001088

## Payment Details

Debit Currency USD - United States Dollar

Credit Currency USD - United States Dollar

Amount 69,170.40 USD

Value Date 06/29/2021

Cutoff 06/29/2021 06:15 pm ET

## References

Originator to Beneficiary Information

OBI Re Project ESF-03382.02

OBI Invoices 0000001, 0000002, 0000003

OBI Payment subject to review

**Originator**
XTREAM DATA CENTERS CORP
5170 GOLDEN FOOTHILL PKWY
EL DORADO HILLS CA 957629608
United States of America (US)

Payment References

ID or Acct # [redacted]

WELLS FARGO

# Wires

## Payment Information

Name HKA Global, Inc

Status Awaiting 1 approvals.

Payment ID 291

Modified 06/28/2021 07:49 pm ET by PRZYJ411

Type Wire

## Debit Account

Debit Account
PRIME DATA CENTER CORP
Acct # [redacted] USD

## Beneficiary

**Beneficiary**
HKA Global, Inc
United States of America (US)
Acct # [redacted]

Beneficiary Bank
HSBC BANK USA NATIONAL ASSOCIATION
829 10TH AVE
NEW YORK 10019
United States of America (US)
FEDWIRE# 021001088

## Payment Details

Debit Currency USD - United States Dollar

Credit Currency USD - United States Dollar

Amount 65,802.10 USD

Value Date 06/29/2021

Cutoff 06/29/2021 06:15 pm ET

## References

Originator to Beneficiary Information

OBI Re Project ESF-03382.02

OBI Invoice 0000004

OBI Payment subject to review

**Originator**
XTREAM DATA CENTERS CORP
5170 GOLDEN FOOTHILL PKWY
EL DORADO HILLS CA 957629608
United States of America (US)

Payment References

ID or Acct # [redacted]

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank
P.O. Box 994748 Redding, CA 96099-4748

Statement Date: 11/30/2021 Page 1

| Customer Service Information |
|---|
| Website: www.mboc.com |
| Care Center: 800-421-2575 |

PRIME DATA CENTERS CORP
620 COOLIDGE DR #185
FOLSOM CA 95630-3184

| Your Account Summary at a Glance | | | | |
|---|---|---|---|---|
| Account Type | Number | Balance | YTD Interest | Maturity Date |
| Business Select Checking | [redacted] | [redacted] | $0.00 | |

Give paperless a try! Sign up for electronic statements and you will be able to access your statements from anywhere, anytime. It's safe, secure, and good for the environment. Learn more about signing up by calling us at 800.421.2575.

**Account Statement for Business Select Checking Account Number: 2140861**

[redacted]

| Summary of Overdraft and Nonsufficient Funds Fees | This Period | Year to Date | Prior Year |
|---|---|---|---|
| Total Overdraft Fees | 0.00 | 0.00 | 0.00 |
| Total Nonsufficient Funds Fees | 0.00 | 0.00 | 0.00 |

**Deposits and Other Additions**

| Date | Amount | Description |
|---|---|---|

**USE THIS ONLINE TOOL TO BALANCE YOUR ACCOUNT(S):**

- https://www.mboc.com/calculator/CheckBook

If checkbook and statement do not balance, have you: Accounted for bank charges? Verified additions and subtractions in your checkbook? Compared cancelled checks to checkbook? Compared deposit amounts on statement to checkbook?

PLEASE REPORT ANY ERRORS OR OMISSIONS WITHIN 30 DAYS. OTHERWISE STATEMENT WILL BE CONSIDERED CORRECT AND CHECKS GENUINE. ALL DEPOSITS AND CREDITS ARE SUBJECT TO FINAL PAYMENT.

**APPLIES TO CONSUMER ACCOUNTS ONLY**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**
Telephone us at 800-421-2575 or write us at Merchants Bank of Commerce 1951 Churn Creek Road Redding, CA 96002 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. Notification should be made as soon as possible if you think your statement or receipt is incorrect or if you need more information about a transaction listed on the statement or receipt. You must contact Merchants Bank of Commerce no later than 60 days after we sent you the first statement on which the problem or error appears. You must be prepared to provide the following information:

- Your name and account number
- A description of the error or transaction you are unsure about along with an explanation as to why you believe it is an error or why you need more information
- The dollar amount of the suspected error

If you provide oral notice, you may be required to send your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days (twenty (20) business days for new accounts), after we hear from you and if an error has occurred will correct any error promptly. If we need more time, however, we may take up to forty five (45) days (ninety (90) days for errors or questions involving new accounts, a transaction initiated outside of the United States or a transaction at a point-of-sale terminal) to investigate your complaint or question. If we do this, you will have the use of the funds in question after the ten (10) business days (twenty (20) business days for new accounts). If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, then we may not credit your account during the investigation. Your account is considered a new account for the first thirty (30) days after the first deposit is made, unless you already have an established account with us before this account is opened.

We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.

You may ask for copies of the documents that we used in our investigation.

**OVERDRAFT LINES OF CREDIT**
We use the Average Daily Balance Method (including current transactions) on your account. We figure the interest charge on your account by applying the periodic rate to the average daily balance of your account (including current transactions). To get the average daily balance we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits and unpaid interest charges. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the average daily balance.

**BILLING RIGHTS SUMMARY**

*In Case of Errors or Questions About Your Bill*

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:

Merchants Bank of Commerce
1951 Churn Creek Road
Redding, CA 96002

You may also contact us via email: main@mboc.com or on the web at www.mboc.com

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing [or electronically]. You may call us at (800) 421-2757 or (530) 224-3333 but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**HOW TO CONTACT US**

Merchants Bank of Commerce
1951 Churn Creek Road
Redding, CA 96002
(800) 421-2575

Email main@mboc.com
24 Hour Automated Telephone Banking (800) 422-7931

**www.mboc.com**

**Member FDIC** EQUAL HOUSING LENDER 03/19

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank



## Deductions

| Date | Amount | Description |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| 11/03/2021 | $13,583.70 | Wire To Hka Global, Inc. |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

## Checks

| Date | Amount | Serial Number |
|---|---|---|
| [redacted] | [redacted] | |

## Balance Summary For Business Select Checking Account 2140861

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| [redacted] | | | | | |

Statement set for account [redacted]



CONFIDENTIAL

MERCHANTS BANK OF COMMERCE
A division of Columbia Bank

Images for Business Select Checking
[redacted]
11/30/2021
Page 3

[redacted]

Statement set for account [redacted]

Columbia Bank

## STATEMENT OF ACCOUNT

| | |
|---|---|
| Statement Date: | 09/30/22 |
| Last Statement Date: | 08/31/22 |
| Account: | [redacted] |

Direct Inquiries to:
**Roseville (877) 272-3678**
1504 Eureka Road, Suite 100 Roseville CA 95661

PRIME DATA CENTERS CORP
620 COOLIDGE DR STE 185
FOLSOM CA 95630-3184

[redacted]





CONFIDENTIAL

## TO HELP BALANCE YOUR ACCOUNT

**Step 1-** Update your checkbook record. Enter checks, interest credited, and service charges not recorded.

**Step 2-** LIST OUTSTANDING CHECKS, ATM, POS, AND OTHER WITHDRAWALS below.

| Number | Amount | | Number | Amount | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | **TOTAL** | $ | |

**Step 3-** Check Reconciliation

| Check Reconciliation | |
|---|---|
| Ending Statement Balance | |
| Add your deposits made but not shown on statement | |
| SUBTOTAL | |
| Subtract your total outstanding checks & other withdrawals (Step 2) | |
| This should agree with your checkbook balance | |

SPECIAL NOTATIONS ON YOUR STATEMENT:

1. A minus sign (-) to the left of an Ending Balance figure means the account was overdrawn that day.

ON CALL: You may verify preauthorized deposits or payments, access account information, transfer funds, or make a loan payment anytime by using our automated service. Please call 253-305-0050 or 1-800-304-0050.

IN CASE OF LOSS OR THEFT OF YOUR DEBIT OR ATM CARD: Notify us immediately at 1-877-272-3678 to report the loss, theft or disappearance of your debit or ATM card, the disclosure of your PIN, or that an unauthorized transfer or purchase has occurred or might occur.

IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS: You must notify us within 30 days of the date we mailed or made this statement available to you of any unauthorized or missing signature, alteration on a check, unauthorized or missing endorsement, or other improper charges identified on this statement. Failure to notify us within the prescribed time period or to commence action against us within 90 days after notice to us will preclude you from asserting claims against us based on such checks or charges.

IN CASE OF ERRORS OR QUESTIONS ABOUT ELECTRONIC TRANSFERS:

CONSUMER ACCOUNTS: Telephone or write us using the telephone number or address listed below as soon as you can, if you think your statement or receipt is wrong, or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.

1. Tell us your name and account number.
2. Describe the error or transfer in question, and explain as clearly as you can why you believe it is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.
4. If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so you will have use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

BUSINESS ACCOUNTS: Telephone us using the telephone number below as soon as you can.

Telephone: 1-877-272-3678

Address: Columbia Bank
Visa Card Services MS 6935
PO Box 2156
Tacoma, WA 98401-2156

Columbia Bank

## STATEMENT OF ACCOUNT

Statement Date: 09/30/22

Account: [redacted]

[redacted]

### OTHER DEBITS

| Date | Description | | Amount |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| 09-20 | Wire Transfer Out | HKA Global Inc WIRE XFER | $23,750.00 |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

| | This Period | Year to Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $70.00 |

### DAILY BALANCES

[redacted]

MERCHANTS bank of commerce

Good Evening, Jennifer Przygrodzka

Single Transactions Recurring Transactions

| Created date | Status | Transaction Type | Account | Amount |
|---|---|---|---|---|
| 9/27/2021 | On Hold | Domestic Wire - Tracking ID: 1332680 | [redacted] | $256,969.70 |

**Tracking ID:** 1332680

**Created:** 09/27/2021 4:02 PM

**Created By:** Jennifer Przygrodzka

**Authorized:** 09/27/2021 4:02 PM

**Authorized By:** Jennifer Przygrodzka

**Will process On:** 09/28/2021

**From Account:** [redacted]

**To Account:** [redacted]

**To Account Type:** Checking

**Originator Wire Header:** Prime Data Centers

**Message to Beneficiary:** INV#000006A & INV#000005A

**Amount:** $256,969.70

**Recipient Wire Name:** HKA Global, Inc.

**Beneficiary FI Routing Number:** 021001088

**Beneficiary FI Name:** HSBC Bank USA N.A





CONFIDENTIAL

HKA

## Change Order # 1 dated 4-26-21 to the Agreement for Professional Services

THIS CHANGE ORDER #1 ("Change Order #1") dated 4-26-21, is mutually agreed by and between SVO Building One, LLC, ("Client") and HKA Global, Inc., ("HKA") to modify the previously executed AGREEMENT FOR PROFESSIONAL SERVICES.

WHEREAS, Client had undertaken construction of a data center project ("Project") and disputes had arisen on the Project; and

WHEREAS, Client has retained Tyson & Mendes, LLP as counsel ("Counsel") to address the disputes that have arisen on the Project, and to replace Gordon & Rees, LLP ("prior counsel"); and

WHEREAS, Client had previously engaged the services of HKA as Expert in connection with resolution of those disputes as established in the AGREEMENT FOR PROFESSIONAL SERVICES, fully executed on September 8, 2020 ("Agreement"):

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, and intending to be legally bound, Client, Counsel, and HKA agree by this CHANGE ORDER #1 to incorporate into this change order all provisions of the September 8, 2020 Agreement and Exhibit A (both documents attached for reference) except as specifically modified or added herein:

1. SCOPE OF SERVICES. During the term of this Agreement, HKA shall perform the services referenced in the attached Exhibit A, and as further directed by Counsel, on behalf of Client. In the event of conflicts or inconsistencies between Exhibit A, the Agreement, and this CHANGE ORDER #1, the provisions of this CHANGE ORDER #1 shall take precedence.

Exhibit A Scope of Services is modified as follows:

(a) DELETE: Phase 1 – HKA Preliminary Assessment
(b) ADD: Damages and IP Expert Analysis and Testimony
  .1 David Bones: Damages
  .2 Gary Liddicoat: IP
(c) ADD: Technical Expert Analysis and Testimony
  .1 Kam Behagi: Projects Delays and Responsibilities
  .2 Ken Baker: Contractor Standard of Care
  .3 Jeffrey Smith: Defective Work; Design Standard of Care
  .4 Ren Semenza: Defective Work; Design Standard of Care
  .5 Jerry Hartford: Defective Work; Design Standard of Care

2. COMPENSATION.

(a) *Fees and Expenses.* As consideration for the services to be provided by HKA under this CHANGE ORDER #1, HKA shall be compensated for services performed and expenses incurred in accordance with Exhibit A.

Exhibit A Compensation is modified as follows: ADD:
:

| Damages | | |
|---|---|---|
| David Bones | Partner | $400.00 |
| Gary Liddicoat | Partner | $350.00 |
| Joe Seder | Partner | $350.00 |
| Other Partners | | $350.00 - $500.00 |
| Directors | | $345.00 |
| Associate Directors | | $320.00 |
| Kathyrn Schillinger | Manager | $295.00 |
| Sr Associate Consultants | | $255.00 |
| Jessica Caron | Associate Consultant | $225.00 |
| Alexander Martino | Associate Consultant | $225.00 |
| Rouqian Zhang | Associate Consultant | $225.00 |
| Research/Case Assistants | | $140.00 |

(b) *Retainer.* Upon the execution of this CHANGE ORDER #1, to avoid interruption of any services, HKA shall be paid a retainer. The full amount of the evergreen retainer shall be held by HKA and applied against HKA's final invoice.

Exhibit A Retainer provision is modified as follows:
ADD: Retainer payable in the amount of $51,368.
DELETE: Retainer payable in the amount of $20,000.

(c) *Administration Charge.* NO CHANGE.

(d) *Invoicing and Payment.* Twice-monthly, HKA shall invoice its fees and reimbursable expenses to Client. Client payment is due within 15-days of invoice receipt. Any supporting documentation provided with the invoice shall be provided in electronic format and supported by electronic signatures. Client shall not contest the validity of signatures solely because they are electronic.

i. NO CHANGE.
ii. NO CHANGE.
iii. NO CHANGE.
iv. NO CHANGE.
v. NO CHANGE.

(e) *Suspension for Non-Payment; Payment Prior to Final Performance.* NO CHANGE.

(f) *Cost Estimate.* For purposes of assisting Client in budgeting and planning, HKA has included completion estimates for the cost of its services under this Agreement. Client understands and agrees that any amount estimated by HKA is intended to be and shall be construed only as an estimate and not as a guarantee or warranty by HKA with respect to the actual final cost for performing the services under this Agreement.

Budgets for Completion of Expert Analysis through Arbitration:

Segment 1 (Technical Experts): $400,000

Segment 2 (Damages and IP Experts): $250,000.

IN WITNESS WHEREOF, Client, Counsel, and HKA acknowledge and agree to the foregoing terms and conditions, as of the date first written above, through their signatures below.

**SVO Building One, LLC ("Client")**

By: ______________________
Name: Nicholas Laag
Title: Managing Partner & CEO

**Tyson & Mendes, LLC ("Counsel")**

By: ______________________
Name: David Frishman
Title: Partner

**Global Inc. ("HKA")**

By: ______________________
Gino Wideen, Partner

HKA

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

May 7, 2021
Project No: ESF-03382.02
Invoice No: 0000002

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from April 1, 2021 to April 30, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | **Hours** | **Rate** | **Amount** | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 7.25 | 400.00 | 2,900.00 | |
| Partner | | | | |
| Liddicoat, Gary | 4.50 | 350.00 | 1,575.00 | |
| Director | | | | |
| Alcarez, Julia | 20.50 | 345.00 | 7,072.50 | |
| Manager | | | | |
| Schillinger, Kathryn | 1.50 | 295.00 | 442.50 | |
| Totals | 33.75 | | 11,990.00 | |
| **Total Labor** | | | | **11,990.00** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 479.60 | |
| **Total Additional Fees** | **479.60** | **479.60** |

**Total this Invoice** **US$12,469.60**

**Outstanding Invoices**

| **Number** | **Date** | **Balance** |
|---|---|---|
| 0000001 | 4/5/2021 | 2,479.10 |
| **Total** | | **2,479.10** |

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

cc: David M. Frishman, Esq.

# Billing Backup

HKA Global, Inc. Invoice 0000002 Dated 5/7/2021 Friday, May 7, 2021 9:48:43 AM

Segment 2.0 Damages

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 4/15/2021 | .50 | 400.00 | 200.00 |
| | Internal call. | | | | |
| 48067 | Bones, David | 4/19/2021 | 1.75 | 400.00 | 700.00 |
| | Prepare for and attend call with counsel and client. | | | | |
| 48067 | Bones, David | 4/20/2021 | .50 | 400.00 | 200.00 |
| | Internal coordination call. | | | | |
| 48067 | Bones, David | 4/22/2021 | 1.50 | 400.00 | 600.00 |
| | Call with counsel. Internal coordination. | | | | |
| 48067 | Bones, David | 4/24/2021 | 1.00 | 400.00 | 400.00 |
| | Development of outline. | | | | |
| 48067 | Bones, David | 4/26/2021 | 1.00 | 400.00 | 400.00 |
| | Continued development of outline. | | | | |
| 48067 | Bones, David | 4/27/2021 | 1.00 | 400.00 | 400.00 |
| | Internal call. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 4/1/2021 | .75 | 350.00 | 262.50 |
| | Review documents; Provide documents to counsel | | | | |
| 48110 | Liddicoat, Gary | 4/14/2021 | .75 | 350.00 | 262.50 |
| | Internal meeting | | | | |
| 48110 | Liddicoat, Gary | 4/15/2021 | .50 | 350.00 | 175.00 |
| | Internal meeting | | | | |
| 48110 | Liddicoat, Gary | 4/19/2021 | 1.50 | 350.00 | 525.00 |
| | Call with counsel and client | | | | |
| 48110 | Liddicoat, Gary | 4/27/2021 | 1.00 | 350.00 | 350.00 |
| | Internal coordination call | | | | |
| Director | | | | | |
| 48149 | Alcarez, Julia | 4/21/2021 | .25 | 345.00 | 86.25 |
| | On boarding discussion. | | | | |
| 48149 | Alcarez, Julia | 4/22/2021 | 3.00 | 345.00 | 1,035.00 |
| | Internal discussion, review claim and counterclaim and other filings. | | | | |
| 48149 | Alcarez, Julia | 4/23/2021 | 5.00 | 345.00 | 1,725.00 |
| | Review presentation to counsel, financials and other hot docs, work planning. | | | | |
| 48149 | Alcarez, Julia | 4/26/2021 | 1.00 | 345.00 | 345.00 |
| | Review documents and internal correspondence. | | | | |
| 48149 | Alcarez, Julia | 4/27/2021 | 4.25 | 345.00 | 1,466.25 |
| | Internal discussions, document review, and work planning for commercial damages analysis and report. | | | | |
| 48149 | Alcarez, Julia | 4/28/2021 | 7.00 | 345.00 | 2,415.00 |
| | Review documents, prepare work plan, review lost profits analyses and plan for future damages analysis, identify needed documents. | | | | |





CONFIDENTIAL

| | | | | | | |
|---|---|---|---|---|---|---|
| | Manager | | | | | |
| 48133 | Schillinger, Kathryn | 4/22/2021 | .50 | 295.00 | 147.50 | |
| | Onboard team member to the project | | | | | |
| 48133 | Schillinger, Kathryn | 4/27/2021 | 1.00 | 295.00 | 295.00 | |
| | Internal meeting | | | | | |
| | Totals | | 33.75 | | 11,990.00 | |
| | **Total Labor** | | | | | **11,990.00** |

**Total this Project** **US$11,990.00**

**Total this Report** **US$11,990.00**



CONFIDENTIAL

HKA

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

April 5, 2021
Project No: ESF-03382.02
Invoice No: 0000001

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from March 1, 2021 to March 31, 2021**

**Professional Personnel**

| Segment 2.0 Damages | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 3.00 | 400.00 | 1,200.00 | |
| Partner | | | | |
| Liddicoat, Gary | 2.75 | 350.00 | 962.50 | |
| Manager | | | | |
| Schillinger, Kathryn | .75 | 295.00 | 221.25 | |
| Totals | 6.50 | | 2,383.75 | |
| **Total Labor** | | | | **2,383.75** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Cost - 4% | 95.35 | |
| **Total Additional Fees** | **95.35** | **95.35** |

**Total this Invoice US$2,479.10**

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

cc: David M. Frishman, Esq.

# Billing Backup

HKA Global, Inc. Invoice 0000001 Dated 4/5/2021 Monday, April 5, 2021 1:32:22 PM

Project ESF-03382.02 SVO Affirmative Claim

**Professional Personnel**

| Segment 2.0 Damages | | | **Hours** | **Rate** | **Amount** | |
|---|---|---|---|---|---|---|
| Partner | | | | | | |
| 48067 | Bones, David | 3/1/2021 | 1.50 | 400.00 | 600.00 | |
| | Call with counsel and client. | | | | | |
| 48067 | Bones, David | 3/19/2021 | 1.50 | 400.00 | 600.00 | |
| | Prepare for and attend call with counsel/client | | | | | |
| Partner | | | | | | |
| 48110 | Liddicoat, Gary | 3/15/2021 | .50 | 350.00 | 175.00 | |
| | Review documents | | | | | |
| 48110 | Liddicoat, Gary | 3/19/2021 | 1.75 | 350.00 | 612.50 | |
| | Prepare for and attend call with counsel/client | | | | | |
| 48110 | Liddicoat, Gary | 3/23/2021 | .50 | 350.00 | 175.00 | |
| | Discuss relativity documents for transfer | | | | | |
| Manager | | | | | | |
| 48133 | Schillinger, Kathryn | 3/23/2021 | .75 | 295.00 | 221.25 | |
| | Review of documents provided | | | | | |
| | Totals | | 6.50 | | 2,383.75 | |
| | **Total Labor** | | | | | **2,383.75** |

**Total this Project** **US$2,383.75**

**Total this Report** **US$2,383.75**

HKA

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

May 18, 2021
Project No: ESF-03382.02
Invoice No: 0000003

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from May 1, 2021 to May 15, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 14.25 | 400.00 | 5,700.00 | |
| Partner | | | | |
| Liddicoat, Gary | 22.00 | 350.00 | 7,700.00 | |
| Director | | | | |
| Alcarez, Julia | 52.00 | 345.00 | 17,940.00 | |
| Manager | | | | |
| Schillinger, Kathryn | 29.50 | 295.00 | 8,702.50 | |
| Associate Consultant | | | | |
| Martino, Alexander | 53.75 | 225.00 | 12,093.75 | |
| Totals | 171.50 | | 52,136.25 | |
| **Total Labor** | | | | **52,136.25** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 2,085.45 | |
| **Total Additional Fees** | **2,085.45** | **2,085.45** |

**Total this Invoice** **US$54,221.70**

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 0000001 | 4/5/2021 | 2,479.10 |
| 0000002 | 5/7/2021 | 12,469.60 |
| **Total** | | **14,948.70** |

Tax I.D. #[redacted]
PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

cc: David M. Frishman, Esq.

# Billing Backup

HKA Global, Inc. Invoice 0000003 Dated 5/18/2021

Tuesday, May 18, 2021
9:49:57 AM

Segment 2.0 Damages

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 5/3/2021 | 1.00 | 400.00 | 400.00 |
| | Calls with counsel | | | | |
| 48067 | Bones, David | 5/4/2021 | .50 | 400.00 | 200.00 |
| | Internal call | | | | |
| 48067 | Bones, David | 5/6/2021 | 2.00 | 400.00 | 800.00 |
| | Internal meeting, doc review. | | | | |
| 48067 | Bones, David | 5/7/2021 | 1.25 | 400.00 | 500.00 |
| | Doc review, internal call. | | | | |
| 48067 | Bones, David | 5/10/2021 | 2.00 | 400.00 | 800.00 |
| | Call with client and counsel, internal discussion. | | | | |
| 48067 | Bones, David | 5/11/2021 | 2.00 | 400.00 | 800.00 |
| | Internal discussions. | | | | |
| 48067 | Bones, David | 5/12/2021 | 1.50 | 400.00 | 600.00 |
| | Internal discussions. | | | | |
| 48067 | Bones, David | 5/13/2021 | 2.00 | 400.00 | 800.00 |
| | Call with client and counsel, internal discussion. | | | | |
| 48067 | Bones, David | 5/14/2021 | 2.00 | 400.00 | 800.00 |
| | Internal discussions. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 5/3/2021 | 1.00 | 350.00 | 350.00 |
| | Internal coordination re: document transfer logistics and industry research | | | | |
| 48110 | Liddicoat, Gary | 5/4/2021 | 1.00 | 350.00 | 350.00 |
| | Internal coordination call | | | | |
| 48110 | Liddicoat, Gary | 5/5/2021 | .50 | 350.00 | 175.00 |
| | Internal call re: documents | | | | |
| 48110 | Liddicoat, Gary | 5/6/2021 | 1.50 | 350.00 | 525.00 |
| | Internal coordination call | | | | |
| 48110 | Liddicoat, Gary | 5/7/2021 | 1.75 | 350.00 | 612.50 |
| | Review work product; internal call re: damages and industry research | | | | |
| 48110 | Liddicoat, Gary | 5/10/2021 | 4.00 | 350.00 | 1,400.00 |
| | Call with client/counsel; review documents; review work plan | | | | |
| 48110 | Liddicoat, Gary | 5/11/2021 | 2.50 | 350.00 | 875.00 |
| | Internal coordination call; review documents | | | | |
| 48110 | Liddicoat, Gary | 5/12/2021 | 4.25 | 350.00 | 1,487.50 |
| | Review documents; internal call re: documents; preparation for client call | | | | |
| 48110 | Liddicoat, Gary | 5/13/2021 | 3.25 | 350.00 | 1,137.50 |
| | Call with client and counsel; internal call re: financing | | | | |
| 48110 | Liddicoat, Gary | 5/14/2021 | 2.25 | 350.00 | 787.50 |
| | internal coordination call; review work product | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Director | | | | | |
| 48149 | Alcarez, Julia | 5/3/2021 | 8.50 | 345.00 | 2,932.50 |
| | Internal discussion, draft report, oversee market research, review appraisals, and review new damages documents. | | | | |
| 48149 | Alcarez, Julia | 5/4/2021 | 7.50 | 345.00 | 2,587.50 |
| | Internal discussions, work planning, report editing, draft disgorgement exhibit and exhibit refinancing exhibit. | | | | |
| 48149 | Alcarez, Julia | 5/6/2021 | 3.50 | 345.00 | 1,207.50 |
| | Access documents, internal discussions, draft report and work plan, prepare agenda for client call. | | | | |
| 48149 | Alcarez, Julia | 5/7/2021 | 5.50 | 345.00 | 1,897.50 |
| | Edit work plan, oversee disgorgement analysis, internal discussion, discussion with delay team, prepare questions for client discussion. | | | | |
| 48149 | Alcarez, Julia | 5/10/2021 | 7.50 | 345.00 | 2,587.50 |
| | Internal discussion, oversee creation of "But For" financial model, discussion with client and counsel, work planning. | | | | |
| 48149 | Alcarez, Julia | 5/11/2021 | 5.00 | 345.00 | 1,725.00 |
| | Oversee budget model analysis, oversee actual financials analysis, internal discussions and coordination. | | | | |
| 48149 | Alcarez, Julia | 5/12/2021 | 5.75 | 345.00 | 1,983.75 |
| | Internal discussions, oversee lost profits analysis and increased interest analysis, prepare discussion points for call with client. | | | | |
| 48149 | Alcarez, Julia | 5/13/2021 | 6.25 | 345.00 | 2,156.25 |
| | Discussion with client and counsel, internal discussions and work planning, oversee lost profits calculations and increased interest calculations. | | | | |
| 48149 | Alcarez, Julia | 5/14/2021 | 2.50 | 345.00 | 862.50 |
| | oversee lost profits calculation, internal coordination, internal discussions on lost profits model | | | | |
| Manager | | | | | |
| 48133 | Schillinger, Kathryn | 5/4/2021 | 2.25 | 295.00 | 663.75 |
| | Internal meeting, review documents and previous analyses | | | | |
| 48133 | Schillinger, Kathryn | 5/5/2021 | .75 | 295.00 | 221.25 |
| | Access documents from Dropbox | | | | |
| 48133 | Schillinger, Kathryn | 5/6/2021 | 6.25 | 295.00 | 1,843.75 |
| | Review documents in relativity | | | | |
| 48133 | Schillinger, Kathryn | 5/7/2021 | 1.00 | 295.00 | 295.00 |
| | Review relativity, discuss increased interest analysis | | | | |
| 48133 | Schillinger, Kathryn | 5/10/2021 | 5.50 | 295.00 | 1,622.50 |
| | Document review, Increased interest analysis, Call with the client | | | | |
| 48133 | Schillinger, Kathryn | 5/11/2021 | 3.00 | 295.00 | 885.00 |
| | Review financing documents in Relativity, internal coordination calls | | | | |
| 48133 | Schillinger, Kathryn | 5/12/2021 | 6.75 | 295.00 | 1,991.25 |
| | Review of Relativity documents, prepare increased financing cost calculation, internal calls | | | | |
| 48133 | Schillinger, Kathryn | 5/13/2021 | 4.00 | 295.00 | 1,180.00 |
| | Review documents in relativity, develop increased interest calculation, internal status call, call with client | | | | |
| Associate Consultant | | | | | |
| 48431 | Martino, Alexander | 5/3/2021 | 4.50 | 225.00 | 1,012.50 |
| | Perform market research | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 48431 | Martino, Alexander | 5/4/2021 | 4.75 | 225.00 | 1,068.75 | |
| | Update refinancing analysis and Relativity document searches | | | | | |
| 48431 | Martino, Alexander | 5/6/2021 | 4.00 | 225.00 | 900.00 | |
| | Document Review and Relativity Document searches; Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 5/7/2021 | 7.75 | 225.00 | 1,743.75 | |
| | Updates to Disgorgement Analysis, Document Review, and Relativity document searches | | | | | |
| 48431 | Martino, Alexander | 5/10/2021 | 7.75 | 225.00 | 1,743.75 | |
| | Updates to Lost Profits Analysis and Relativity document searches | | | | | |
| 48431 | Martino, Alexander | 5/11/2021 | 5.50 | 225.00 | 1,237.50 | |
| | Updates to Lost Profits Analysis and Relativity document searches | | | | | |
| 48431 | Martino, Alexander | 5/12/2021 | 5.75 | 225.00 | 1,293.75 | |
| | Updates to Lost Profits Analysis and Relativity document searches | | | | | |
| 48431 | Martino, Alexander | 5/13/2021 | 6.25 | 225.00 | 1,406.25 | |
| | Updates to Lost Profits Analysis, Updates to Disgorgement Analysis and Relativity document searches | | | | | |
| 48431 | Martino, Alexander | 5/14/2021 | 7.50 | 225.00 | 1,687.50 | |
| | Updates to Lost Profits Analysis and Market Research | | | | | |
| | Totals | | 171.50 | | 52,136.25 | |
| | **Total Labor** | | | | | **52,136.25** |
| | | | | **Total this Project** | | **US$52,136.25** |
| | | | | **Total this Report** | | **US$52,136.25** |





CONFIDENTIAL

HKA

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Unrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

June 11, 2021
Project No: ESF-03382.02
Invoice No: 0000004

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from May 16, 2021 to May 31, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 18.00 | 400.00 | 7,200.00 | |
| Partner | | | | |
| Liddicoat, Gary | 20.00 | 350.00 | 7,000.00 | |
| Director | | | | |
| Alcarez, Julia | 61.75 | 345.00 | 21,303.75 | |
| Manager | | | | |
| Schillinger, Kathryn | 52.75 | 295.00 | 15,561.25 | |
| Associate Consultant | | | | |
| Caron, Jessica | 9.75 | 225.00 | 2,193.75 | |
| Martino, Alexander | 44.50 | 225.00 | 10,012.50 | |
| Totals | 206.75 | | 63,271.25 | |
| **Total Labor** | | | | **63,271.25** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 2,530.85 | |
| **Total Additional Fees** | **2,530.85** | **2,530.85** |

**Total this Invoice** **US$65,802.10**

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 0000001 | 4/5/2021 | 2,479.10 |
| 0000002 | 5/7/2021 | 12,469.60 |
| 0000003 | 5/18/2021 | 54,221.70 |
| **Total** | | **69,170.40** |

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

cc: David M. Frishman, Esq.

# Billing Backup

HKA Global, Inc. Invoice 0000004 Dated 6/11/2021 Friday, June 11, 2021 10:05:25 AM

Segment 2.0 Damages

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 5/18/2021 | 1.50 | 400.00 | 600.00 |
| | Internal calls. | | | | |
| 48067 | Bones, David | 5/19/2021 | 3.50 | 400.00 | 1,400.00 |
| | Team coordination calls related to lost profits and financing costs. | | | | |
| 48067 | Bones, David | 5/24/2021 | 1.00 | 400.00 | 400.00 |
| | Review of analyses. | | | | |
| 48067 | Bones, David | 5/25/2021 | 1.00 | 400.00 | 400.00 |
| | Internal discussions. | | | | |
| 48067 | Bones, David | 5/26/2021 | 2.00 | 400.00 | 800.00 |
| | Draft report; internal discussions. | | | | |
| 48067 | Bones, David | 5/28/2021 | 4.00 | 400.00 | 1,600.00 |
| | Internal discussions and coordination with construction team. | | | | |
| 48067 | Bones, David | 5/29/2021 | 1.00 | 400.00 | 400.00 |
| | Reviewed report. | | | | |
| 48067 | Bones, David | 5/30/2021 | 1.00 | 400.00 | 400.00 |
| | Reviewed report. | | | | |
| 48067 | Bones, David | 5/31/2021 | 3.00 | 400.00 | 1,200.00 |
| | Internal discussions re draft report. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 5/17/2021 | 1.50 | 350.00 | 525.00 |
| | Review work product; internal call | | | | |
| 48110 | Liddicoat, Gary | 5/18/2021 | .75 | 350.00 | 262.50 |
| | Internal coordination call | | | | |
| 48110 | Liddicoat, Gary | 5/19/2021 | 4.00 | 350.00 | 1,400.00 |
| | internal meeting re: damages; review work product | | | | |
| 48110 | Liddicoat, Gary | 5/20/2021 | 1.50 | 350.00 | 525.00 |
| | Review work product; perform research | | | | |
| 48110 | Liddicoat, Gary | 5/21/2021 | 1.50 | 350.00 | 525.00 |
| | Internal coordination calls | | | | |
| 48110 | Liddicoat, Gary | 5/24/2021 | 1.50 | 350.00 | 525.00 |
| | review work product re: damages; internal call | | | | |
| 48110 | Liddicoat, Gary | 5/25/2021 | 2.00 | 350.00 | 700.00 |
| | internal coordination call; review additional documents provided | | | | |
| 48110 | Liddicoat, Gary | 5/27/2021 | 1.25 | 350.00 | 437.50 |
| | Internal call; review work product | | | | |
| 48110 | Liddicoat, Gary | 5/28/2021 | 4.00 | 350.00 | 1,400.00 |
| | Internal call; review work product | | | | |
| 48110 | Liddicoat, Gary | 5/31/2021 | 2.00 | 350.00 | 700.00 |
| | Internal call; review work product | | | | |
| Director | | | | | |
| 48149 | Alcarez, Julia | 5/17/2021 | 4.25 | 345.00 | 1,466.25 |
| | Internal discussions, oversee margin research and analysis, oversee increased interest calculation, review Standard of Care report for coordination | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 48149 | Alcarez, Julia | 5/18/2021 | 5.50 | 345.00 | 1,897.50 |
| | Oversee increased interest and lost profits analyses edits, review SOC and delay reports, internal coordination and discussion. | | | | |
| 48149 | Alcarez, Julia | 5/19/2021 | 4.25 | 345.00 | 1,466.25 |
| | Internal discussions on lost profits and increased interest, work planning, and coordination. | | | | |
| 48149 | Alcarez, Julia | 5/20/2021 | 2.50 | 345.00 | 862.50 |
| | Review lost profits analysis and prepare for QC, internal discussion on QC plan for increased interest, edit draft report. | | | | |
| 48149 | Alcarez, Julia | 5/21/2021 | 3.50 | 345.00 | 1,207.50 |
| | Internal discussions, QC planning for lost profits analysis, work planning. | | | | |
| 48149 | Alcarez, Julia | 5/24/2021 | 7.50 | 345.00 | 2,587.50 |
| | Draft report, oversee QC on lost profits and increased interest, internal discussions about analyses and document requests, work planning. | | | | |
| 48149 | Alcarez, Julia | 5/25/2021 | 4.75 | 345.00 | 1,638.75 |
| | Oversee QC, review increased interest analysis, internal coordination, draft lost profits section of report. | | | | |
| 48149 | Alcarez, Julia | 5/26/2021 | 4.00 | 345.00 | 1,380.00 |
| | Edit report, oversee QC of lost profits, review and edit increased interest analysis, update disgorgement analysis, internal discussion. | | | | |
| 48149 | Alcarez, Julia | 5/27/2021 | 8.25 | 345.00 | 2,846.25 |
| | Oversee QC on multiple analyses, internal discussion on increased interest calculation, edit draft report. | | | | |
| 48149 | Alcarez, Julia | 5/28/2021 | 10.25 | 345.00 | 3,536.25 |
| | Draft report, internal discussions, oversee revisions to the increased financing analysis, oversee creation of margin analysis, coordination and work planning. | | | | |
| 48149 | Alcarez, Julia | 5/30/2021 | 3.00 | 345.00 | 1,035.00 |
| | Edit report, review increased financing calculation, internal correspondence. | | | | |
| 48149 | Alcarez, Julia | 5/31/2021 | 4.00 | 345.00 | 1,380.00 |
| | Edit report, internal discussion, work planning. | | | | |
| Manager | | | | | |
| 48133 | Schillinger, Kathryn | 5/17/2021 | 6.00 | 295.00 | 1,770.00 |
| | Update increased financing cost analysis, review documents provided by counsel, internal coordination call | | | | |
| 48133 | Schillinger, Kathryn | 5/18/2021 | 3.00 | 295.00 | 885.00 |
| | Internal coordination call | | | | |
| 48133 | Schillinger, Kathryn | 5/19/2021 | 3.00 | 295.00 | 885.00 |
| | Internal call to discuss increased interest damages, updates to increased interest damages calculation | | | | |
| 48133 | Schillinger, Kathryn | 5/20/2021 | 4.00 | 295.00 | 1,180.00 |
| | Increased interest calculation, draft report | | | | |
| 48133 | Schillinger, Kathryn | 5/21/2021 | 6.75 | 295.00 | 1,991.25 |
| | Increased interest calculation | | | | |
| 48133 | Schillinger, Kathryn | 5/24/2021 | 6.50 | 295.00 | 1,917.50 |
| | Update increased interest calculation, research LIBOR rates | | | | |
| 48133 | Schillinger, Kathryn | 5/25/2021 | 2.00 | 295.00 | 590.00 |
| | Update increased interest calculation, update report | | | | |
| 48133 | Schillinger, Kathryn | 5/26/2021 | 4.25 | 295.00 | 1,253.75 |
| | Update increased interest calculation, update report, internal coordination | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 48133 | Schillinger, Kathryn | 5/27/2021 | 5.75 | 295.00 | 1,696.25 | |
| | Review SVO competitor Forms 10-K, update increased interest calculation | | | | | |
| 48133 | Schillinger, Kathryn | 5/28/2021 | 9.00 | 295.00 | 2,655.00 | |
| | Update increased interest calculation, prepare debt service coverage ratio, review SVO competitor Forms 10-K, internal coordination call | | | | | |
| 48133 | Schillinger, Kathryn | 5/31/2021 | 2.50 | 295.00 | 737.50 | |
| | Internal coordination call | | | | | |
| Associate Consultant | | | | | | |
| 48431 | Martino, Alexander | 5/17/2021 | 7.00 | 225.00 | 1,575.00 | |
| | Updates to Loss Profits Analysis, Comparable Company Analysis, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 5/18/2021 | 4.50 | 225.00 | 1,012.50 | |
| | Researched and performed financial analyses on industry competitors. | | | | | |
| 48431 | Martino, Alexander | 5/19/2021 | 6.00 | 225.00 | 1,350.00 | |
| | Updates to Loss Profits Analysis, Updates to Market Competitors Analysis, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 5/20/2021 | 1.00 | 225.00 | 225.00 | |
| | Updates to Lost Profits Analysis | | | | | |
| 48431 | Martino, Alexander | 5/21/2021 | 3.00 | 225.00 | 675.00 | |
| | Updates to Lost Profits Analysis, Outline of QC Plan, internal discussions | | | | | |
| 48261 | Caron, Jessica | 5/24/2021 | .50 | 225.00 | 112.50 | |
| | Internal call with colleagues. | | | | | |
| 48431 | Martino, Alexander | 5/24/2021 | 4.00 | 225.00 | 900.00 | |
| | QC of Increased Interest Analysis, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 5/25/2021 | 2.00 | 225.00 | 450.00 | |
| | QC of Increased Interest Calculation, Internal Discussions | | | | | |
| 48261 | Caron, Jessica | 5/26/2021 | 6.75 | 225.00 | 1,518.75 | |
| | QC of report exhibits. | | | | | |
| 48431 | Martino, Alexander | 5/26/2021 | 3.50 | 225.00 | 787.50 | |
| | Updates and QC on Disgorgement Calculation, Answering questions on Lost Profits QC, Internal Discussions | | | | | |
| 48261 | Caron, Jessica | 5/27/2021 | 2.50 | 225.00 | 562.50 | |
| | QC of report exhibits. | | | | | |
| 48431 | Martino, Alexander | 5/27/2021 | 5.50 | 225.00 | 1,237.50 | |
| | QC of Disgorgement Analysis, QC of Increased Interest Analysis, Updates to Lost Profits Analysis. | | | | | |
| 48431 | Martino, Alexander | 5/28/2021 | 8.00 | 225.00 | 1,800.00 | |
| | QC of Increased Interest Calculations, Creation of EBITDA Analysis, Creation of Documents Relied Upon Lists, Internal Discussions | | | | | |
| | Totals | | 206.75 | | 63,271.25 | |
| | **Total Labor** | | | | | **63,271.25** |
| | | | | **Total this Project** | | **US$63,271.25** |
| | | | | **Total this Report** | | **US$63,271.25** |





CONFIDENTIAL

HK>A

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

August 17, 2021
Project No: ESF-03382.02
Invoice No: 000006A

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from July 1, 2021 to July 31, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 14.00 | 400.00 | 5,600.00 | |
| Partner | | | | |
| Liddicoat, Gary | 30.25 | 350.00 | 10,587.50 | |
| Director | | | | |
| Alcarez, Julia | 80.25 | 345.00 | 27,686.25 | |
| Manager | | | | |
| Schillinger, Kathryn | 23.75 | 295.00 | 7,006.25 | |
| Associate Consultant | | | | |
| Martino, Alexander | 50.25 | 225.00 | 11,306.25 | |
| Research Assistants | | | | |
| Evans, Parker | 8.00 | 140.00 | 1,120.00 | |
| Griffin, Elinor | 12.75 | 140.00 | 1,785.00 | |
| Totals | 219.25 | | 65,091.25 | |
| **Total Labor** | | | | **65,091.25** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 2,603.65 | |
| **Total Additional Fees** | **2,603.65** | **2,603.65** |

| | |
|---|---|
| **Total this Segment** | **US$67,694.90** |
| **Total this Invoice** | **US$67,694.90** |

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 000005A | 7/29/2021 | 189,274.80 |
| **Total** | | **189,274.80** |



CONFIDENTIAL

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

# Billing Backup

CUS - HKA Global, Inc. Invoice 000006A Dated 8/17/2021 Tuesday, August 17, 2021 10:28:29 AM

Project ESF-03382.02 SVO Affirmative Claim

**Segment 2.0 Damages**

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David<br>Review of trial themes | 7/1/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Call with client and counsel | 7/11/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Internal call. | 7/13/2021 | .50 | 400.00 | 200.00 |
| 48067 | Bones, David<br>Internal call. | 7/15/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Call with counsel. | 7/16/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Call with counsel and client. | 7/18/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Trial theme development. | 7/22/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Internal call. | 7/23/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Review draft trial demonstratives | 7/25/2021 | 2.00 | 400.00 | 800.00 |
| 48067 | Bones, David<br>Internal call. | 7/26/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Internal call. | 7/27/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Internal call and call with counsel. | 7/28/2021 | 1.50 | 400.00 | 600.00 |
| 48067 | Bones, David<br>Internal call. | 7/29/2021 | 1.00 | 400.00 | 400.00 |
| Partner | | | | | |
| 48110 | Liddicoat, Gary<br>Review work product | 7/8/2021 | 1.50 | 350.00 | 525.00 |
| 48110 | Liddicoat, Gary<br>internal call | 7/9/2021 | 1.00 | 350.00 | 350.00 |
| 48110 | Liddicoat, Gary<br>call with client and counsel; internal discussion | 7/11/2021 | 1.50 | 350.00 | 525.00 |
| 48110 | Liddicoat, Gary<br>call with client and counsel; review documents provided | 7/12/2021 | 2.50 | 350.00 | 875.00 |
| 48110 | Liddicoat, Gary<br>internal meeting re: operational costs; review documents | 7/13/2021 | 1.50 | 350.00 | 525.00 |
| 48110 | Liddicoat, Gary<br>internal meeting re: operational costs; review documents | 7/15/2021 | 2.00 | 350.00 | 700.00 |
| 48110 | Liddicoat, Gary<br>internal meeting re: operational costs; review documents | 7/16/2021 | 2.50 | 350.00 | 875.00 |





CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 48110 | Liddicoat, Gary | 7/18/2021 | 1.50 | 350.00 | 525.00 |
| | call with client/counsel | | | | |
| 48110 | Liddicoat, Gary | 7/19/2021 | 3.50 | 350.00 | 1,225.00 |
| | internal call/meetings; review Taylor report | | | | |
| 48110 | Liddicoat, Gary | 7/20/2021 | 2.50 | 350.00 | 875.00 |
| | internal calls/meetings; review Taylor Report; develop deposition points | | | | |
| 48110 | Liddicoat, Gary | 7/22/2021 | 2.50 | 350.00 | 875.00 |
| | attend Taylor deposition; review documents | | | | |
| 48110 | Liddicoat, Gary | 7/23/2021 | 2.50 | 350.00 | 875.00 |
| | internal call/meetings; review arbitration demonstratives | | | | |
| 48110 | Liddicoat, Gary | 7/26/2021 | 1.25 | 350.00 | 437.50 |
| | Internal meeting | | | | |
| 48110 | Liddicoat, Gary | 7/27/2021 | 2.50 | 350.00 | 875.00 |
| | Internal meeting | | | | |
| 48110 | Liddicoat, Gary | 7/29/2021 | 1.50 | 350.00 | 525.00 |
| | Internal meeting | | | | |
| Director | | | | | |
| 48149 | Alcarez, Julia | 7/1/2021 | 1.00 | 345.00 | 345.00 |
| | Discussion with counsel, internal coordination. | | | | |
| 48149 | Alcarez, Julia | 7/7/2021 | .50 | 345.00 | 172.50 |
| | Internal discussion and work planning. | | | | |
| 48149 | Alcarez, Julia | 7/9/2021 | .50 | 345.00 | 172.50 |
| | Internal coordination. | | | | |
| 48149 | Alcarez, Julia | 7/12/2021 | 6.50 | 345.00 | 2,242.50 |
| | Internal discussions for direct invoice review, work planning, draft exhibits and supplement. | | | | |
| 48149 | Alcarez, Julia | 7/13/2021 | 5.50 | 345.00 | 1,897.50 |
| | Internal discussions, evaluate invoice universe, work planning. | | | | |
| 48149 | Alcarez, Julia | 7/14/2021 | 5.75 | 345.00 | 1,983.75 |
| | Review invoice data, work planning, draft correspondence to counsel, review depositions. | | | | |
| 48149 | Alcarez, Julia | 7/15/2021 | 6.75 | 345.00 | 2,328.75 |
| | Review depositions, draft workplan for demonstratives, internal discussion. | | | | |
| 48149 | Alcarez, Julia | 7/16/2021 | 4.00 | 345.00 | 1,380.00 |
| | Work planning, internal discussions | | | | |
| 48149 | Alcarez, Julia | 7/19/2021 | 4.50 | 345.00 | 1,552.50 |
| | Review Taylor and Harris reports, internal discussions. | | | | |
| 48149 | Alcarez, Julia | 7/20/2021 | 7.00 | 345.00 | 2,415.00 |
| | Review and edit demonstratives, draft deposition questions for Taylor. | | | | |
| 48149 | Alcarez, Julia | 7/21/2021 | 4.75 | 345.00 | 1,638.75 |
| | Edit demonstratives, internal communication. | | | | |
| 48149 | Alcarez, Julia | 7/22/2021 | 5.50 | 345.00 | 1,897.50 |
| | Coordinate Taylor depo attendance, edit demonstratives, attend Taylor depo and internal communication. | | | | |
| 48149 | Alcarez, Julia | 7/23/2021 | 4.00 | 345.00 | 1,380.00 |
| | Edit demonstratives and internal discussion. | | | | |
| 48149 | Alcarez, Julia | 7/24/2021 | 2.00 | 345.00 | 690.00 |
| | Edit demonstratives and direct testimony outline. | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 48149 | Alcarez, Julia | 7/26/2021 | 3.00 | 345.00 | 1,035.00 |
| | Work planning and edit demonstratives. | | | | |
| 48149 | Alcarez, Julia | 7/27/2021 | 6.00 | 345.00 | 2,070.00 |
| | Edit demonstratives, analyze operating expenses, internal discussions. | | | | |
| 48149 | Alcarez, Julia | 7/28/2021 | 2.00 | 345.00 | 690.00 |
| | Edit demonstratives, discuss operating expenses. | | | | |
| 48149 | Alcarez, Julia | 7/29/2021 | 6.00 | 345.00 | 2,070.00 |
| | Oversee demonstrative QC, discuss operating expenses, oversee but-for/actual expense crosswalk. | | | | |
| 48149 | Alcarez, Julia | 7/30/2021 | 5.00 | 345.00 | 1,725.00 |
| | Edit demonstratives and direct testimony outline, oversee QC, internal coordination. | | | | |
| Manager | | | | | |
| 48133 | Schillinger, Kathryn | 7/1/2021 | 1.50 | 295.00 | 442.50 |
| | Review Bones deposition transcript | | | | |
| 48133 | Schillinger, Kathryn | 7/7/2021 | .50 | 295.00 | 147.50 |
| | Internal coordination call re: demonstratives | | | | |
| 48133 | Schillinger, Kathryn | 7/12/2021 | .50 | 295.00 | 147.50 |
| | Internal call regarding direct invoice analysis | | | | |
| 48133 | Schillinger, Kathryn | 7/13/2021 | .25 | 295.00 | 73.75 |
| | Internal coordination regarding direct invoice analysis | | | | |
| 48133 | Schillinger, Kathryn | 7/19/2021 | 2.25 | 295.00 | 663.75 |
| | Review Taylor Report, internal discussion re: Taylor Report | | | | |
| 48133 | Schillinger, Kathryn | 7/20/2021 | 2.75 | 295.00 | 811.25 |
| | Prepare/discuss/review demonstratives | | | | |
| 48133 | Schillinger, Kathryn | 7/21/2021 | 3.50 | 295.00 | 1,032.50 |
| | Prepare/discuss/review demonstratives; develop testimony outline | | | | |
| 48133 | Schillinger, Kathryn | 7/22/2021 | 1.50 | 295.00 | 442.50 |
| | Edit demonstratives | | | | |
| 48133 | Schillinger, Kathryn | 7/26/2021 | 3.50 | 295.00 | 1,032.50 |
| | Analyze and discuss pre-opening expenses | | | | |
| 48133 | Schillinger, Kathryn | 7/27/2021 | 4.25 | 295.00 | 1,253.75 |
| | Analyze/discuss pre-opening expenses, coordinate QC of demonstratives | | | | |
| 48133 | Schillinger, Kathryn | 7/28/2021 | 2.00 | 295.00 | 590.00 |
| | Analyze/discuss pre-opening expenses | | | | |
| 48133 | Schillinger, Kathryn | 7/29/2021 | 1.25 | 295.00 | 368.75 |
| | Review demonstratives, coordinate QC of demonstratives | | | | |
| Associate Consultant | | | | | |
| 48431 | Martino, Alexander | 7/15/2021 | .75 | 225.00 | 168.75 |
| | Internal Discussion on Demonstrative Preparation | | | | |
| 48431 | Martino, Alexander | 7/16/2021 | 4.50 | 225.00 | 1,012.50 |
| | Creation of Demonstratives | | | | |
| 48431 | Martino, Alexander | 7/19/2021 | 8.00 | 225.00 | 1,800.00 |
| | Demonstrative Creation and PowerPoint Preparation | | | | |
| 48431 | Martino, Alexander | 7/20/2021 | 8.00 | 225.00 | 1,800.00 |
| | Demonstrative Creation and Slide Deck Preparation | | | | |
| 48431 | Martino, Alexander | 7/21/2021 | 8.00 | 225.00 | 1,800.00 |
| | Updates to Demonstrative Slide Deck | | | | |
| 48431 | Martino, Alexander | 7/22/2021 | 2.00 | 225.00 | 450.00 |
| | Updates to Demonstrative slide deck | | | | |





CONFIDENTIAL

| | | | | | | |
|---|---|---|---|---|---|---|
| 48431 | Martino, Alexander | 7/23/2021 | 3.75 | 225.00 | 843.75 | |
| | Demonstrative Preparation; Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 7/27/2021 | 3.50 | 225.00 | 787.50 | |
| | Edits to Demonstrative Slide Deck | | | | | |
| 48431 | Martino, Alexander | 7/28/2021 | 5.25 | 225.00 | 1,181.25 | |
| | Edits to Demonstrative slide deck, Edits to graphics | | | | | |
| 48431 | Martino, Alexander | 7/29/2021 | 5.50 | 225.00 | 1,237.50 | |
| | Demonstrative Preparation; QC review and subsequent edits | | | | | |
| 48431 | Martino, Alexander | 7/30/2021 | 1.00 | 225.00 | 225.00 | |
| | Demonstrative QC review and edit implementation; | | | | | |
| Research Assistants | | | | | | |
| 48673 | Evans, Parker | 7/27/2021 | 1.50 | 140.00 | 210.00 | |
| | QC demonstratives | | | | | |
| 48654 | Griffin, Elinor | 7/27/2021 | 6.25 | 140.00 | 875.00 | |
| | Demonstrative Quality Control | | | | | |
| 48673 | Evans, Parker | 7/28/2021 | 5.00 | 140.00 | 700.00 | |
| | QC demonstratives | | | | | |
| 48654 | Griffin, Elinor | 7/28/2021 | .50 | 140.00 | 70.00 | |
| | Demonstrative Quality Control | | | | | |
| 48673 | Evans, Parker | 7/29/2021 | 1.50 | 140.00 | 210.00 | |
| | QC demonstratives | | | | | |
| 48654 | Griffin, Elinor | 7/29/2021 | 6.00 | 140.00 | 840.00 | |
| | Perform quality control procedures | | | | | |
| | Totals | | 219.25 | | 65,091.25 | |
| | **Total Labor** | | | | | **65,091.25** |

| | |
|---|---|
| **Total this Segment** | **US$65,091.25** |
| **Total this Project** | **US$65,091.25** |
| **Total this Report** | **US$65,091.25** |





CONFIDENTIAL

HKA

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

September 15, 2021
Project No: ESF-03382.02
Invoice No: 000007A

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from August 1, 2021 to August 31, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 5.75 | 400.00 | 2,300.00 | |
| Partner | | | | |
| Liddicoat, Gary | 2.25 | 350.00 | 787.50 | |
| Director | | | | |
| Alcarez, Julia | 11.00 | 345.00 | 3,795.00 | |
| Manager | | | | |
| Schillinger, Kathryn | 6.00 | 295.00 | 1,770.00 | |
| Associate Consultant | | | | |
| Martino, Alexander | 12.75 | 225.00 | 2,868.75 | |
| Research Assistants | | | | |
| Evans, Parker | 5.00 | 140.00 | 700.00 | |
| Griffin, Elinor | 6.00 | 140.00 | 840.00 | |
| Totals | 48.75 | | 13,061.25 | |
| **Total Labor** | | | | **13,061.25** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 522.45 | |
| **Total Additional Fees** | **522.45** | **522.45** |
| **Total this Segment** | | **US$13,583.70** |
| **Total this Invoice** | | **US$13,583.70** |

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 000005A | 7/29/2021 | 189,274.80 |
| 000006A | 8/17/2021 | 67,694.90 |
| **Total** | | **256,969.70** |



CONFIDENTIAL

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

# Billing Backup

CUS - HKA Global, Inc. Invoice 000007A Dated 9/15/2021 Wednesday, September 15, 2021 9:48:04 AM

Project ESF-03382.02 SVO Affirmative Claim

Segment 2.0 Damages

**Professional Personnel**

| | | | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 8/3/2021 | 1.00 | 400.00 | 400.00 |
| | Internal calls. | | | | |
| 48067 | Bones, David | 8/6/2021 | .50 | 400.00 | 200.00 |
| | Internal call. | | | | |
| 48067 | Bones, David | 8/10/2021 | .50 | 400.00 | 200.00 |
| | Internal call. | | | | |
| 48067 | Bones, David | 8/13/2021 | .50 | 400.00 | 200.00 |
| | Internal call. | | | | |
| 48067 | Bones, David | 8/17/2021 | .50 | 400.00 | 200.00 |
| | Internal call | | | | |
| 48067 | Bones, David | 8/20/2021 | .25 | 400.00 | 100.00 |
| | Internal call | | | | |
| 48067 | Bones, David | 8/21/2021 | .50 | 400.00 | 200.00 |
| | Call with counsel and client | | | | |
| 48067 | Bones, David | 8/23/2021 | 1.00 | 400.00 | 400.00 |
| | Prepare for and attend call with counsel and client. | | | | |
| 48067 | Bones, David | 8/25/2021 | 1.00 | 400.00 | 400.00 |
| | Prepare for and attend call with counsel. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 8/3/2021 | .75 | 350.00 | 262.50 |
| | Internal call/meeting | | | | |
| 48110 | Liddicoat, Gary | 8/10/2021 | .50 | 350.00 | 175.00 |
| | Internal meeting | | | | |
| 48110 | Liddicoat, Gary | 8/17/2021 | .50 | 350.00 | 175.00 |
| | Internal meeting | | | | |
| 48110 | Liddicoat, Gary | 8/23/2021 | .50 | 350.00 | 175.00 |
| | Internal call/meeting | | | | |
| Director | | | | | |
| 48149 | Alcarez, Julia | 8/2/2021 | 1.00 | 345.00 | 345.00 |
| | Work planning, internal discussions. | | | | |
| 48149 | Alcarez, Julia | 8/3/2021 | 1.00 | 345.00 | 345.00 |
| | Internal coordination | | | | |
| 48149 | Alcarez, Julia | 8/4/2021 | .75 | 345.00 | 258.75 |
| | Review and edit demonstratives. | | | | |
| 48149 | Alcarez, Julia | 8/5/2021 | 1.00 | 345.00 | 345.00 |
| | Internal discussion and work planning. | | | | |
| 48149 | Alcarez, Julia | 8/17/2021 | 1.00 | 345.00 | 345.00 |
| | Internal coordination, status review. | | | | |
| 48149 | Alcarez, Julia | 8/19/2021 | 3.00 | 345.00 | 1,035.00 |
| | Internal discussion and status, email review and work planning. | | | | |
| 48149 | Alcarez, Julia | 8/20/2021 | .25 | 345.00 | 86.25 |
| | Internal coordination call | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 48149 | Alcarez, Julia | 8/23/2021 | 1.00 | 345.00 | 345.00 | |
| | Discuss crosswalk and status. | | | | | |
| 48149 | Alcarez, Julia | 8/24/2021 | 1.50 | 345.00 | 517.50 | |
| | Discuss status, internal coordination, budget review. | | | | | |
| 48149 | Alcarez, Julia | 8/31/2021 | .50 | 345.00 | 172.50 | |
| | Status discussions and work planning. | | | | | |
| Manager | | | | | | |
| 48133 | Schillinger, Kathryn | 8/2/2021 | .50 | 295.00 | 147.50 | |
| | Coordinate demonstrative QC | | | | | |
| 48133 | Schillinger, Kathryn | 8/3/2021 | .50 | 295.00 | 147.50 | |
| | Coordinate demonstrative QC, respond to QC questions | | | | | |
| 48133 | Schillinger, Kathryn | 8/4/2021 | .50 | 295.00 | 147.50 | |
| | Coordinate demonstrative QC | | | | | |
| 48133 | Schillinger, Kathryn | 8/10/2021 | 3.25 | 295.00 | 958.75 | |
| | Review Silver Point payoff statement, quantify impact of change in payoff date, internal meeting | | | | | |
| 48133 | Schillinger, Kathryn | 8/19/2021 | .50 | 295.00 | 147.50 | |
| | Internal coordination call | | | | | |
| 48133 | Schillinger, Kathryn | 8/23/2021 | .75 | 295.00 | 221.25 | |
| | Internal team meeting re: crosswalk | | | | | |
| Associate Consultant | | | | | | |
| 48431 | Martino, Alexander | 8/2/2021 | 1.00 | 225.00 | 225.00 | |
| | Demonstrative QC Review and Edit implementation | | | | | |
| 48431 | Martino, Alexander | 8/4/2021 | 3.50 | 225.00 | 787.50 | |
| | Edits to Demonstrative Slide Deck, Review of QC | | | | | |
| 48431 | Martino, Alexander | 8/5/2021 | 3.50 | 225.00 | 787.50 | |
| | Expenses Crosswalk Analysis, Edits to Demonstrative Slide Deck, Review of Demonstrative QC | | | | | |
| 48431 | Martino, Alexander | 8/6/2021 | .50 | 225.00 | 112.50 | |
| | Edits to Demonstrative | | | | | |
| 48431 | Martino, Alexander | 8/10/2021 | 2.00 | 225.00 | 450.00 | |
| | Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 8/11/2021 | 1.50 | 225.00 | 337.50 | |
| | Continued Crosswalk Analysis | | | | | |
| 48431 | Martino, Alexander | 8/23/2021 | .75 | 225.00 | 168.75 | |
| | Internal Discussions | | | | | |
| Research Assistants | | | | | | |
| 48654 | Griffin, Elinor | 8/3/2021 | 2.00 | 140.00 | 280.00 | |
| | Demonstrative Quality Control | | | | | |
| 48673 | Evans, Parker | 8/4/2021 | 2.50 | 140.00 | 350.00 | |
| | Quality control procedures | | | | | |
| 48654 | Griffin, Elinor | 8/4/2021 | 1.50 | 140.00 | 210.00 | |
| | Demonstrative Quality Control | | | | | |
| 48673 | Evans, Parker | 8/5/2021 | 2.50 | 140.00 | 350.00 | |
| | Quality control procedures | | | | | |
| 48654 | Griffin, Elinor | 8/5/2021 | 1.00 | 140.00 | 140.00 | |
| | Demonstrative Quality Control | | | | | |
| 48654 | Griffin, Elinor | 8/6/2021 | 1.50 | 140.00 | 210.00 | |
| | Demonstrative Quality Control | | | | | |
| | Totals | | 48.75 | | 13,061.25 | |
| | **Total Labor** | | | | | **13,061.25** |





CONFIDENTIAL

| | |
|---|---|
| **Total this Segment** | **US$13,061.25** |
| **Total this Project** | **US$13,061.25** |
| **Total this Report** | **US$13,061.25** |

HK>A

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

July 29, 2021
Project No: ESF-03382.02
Invoice No: 000005A

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from June 1, 2021 to June 30, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | **Hours** | **Rate** | **Amount** | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 97.50 | 400.00 | 39,000.00 | |
| Partner | | | | |
| Liddicoat, Gary | 79.75 | 350.00 | 27,912.50 | |
| Director | | | | |
| Alcarez, Julia | 137.25 | 345.00 | 47,351.25 | |
| Manager | | | | |
| Schillinger, Kathryn | 99.50 | 295.00 | 29,352.50 | |
| Associate Consultant | | | | |
| Martino, Alexander | 116.75 | 225.00 | 26,268.75 | |
| Research Assistants | | | | |
| Evans, Parker | 45.50 | 140.00 | 6,370.00 | |
| Griffin, Elinor | 41.00 | 140.00 | 5,740.00 | |
| Totals | 617.25 | | 181,995.00 | |
| **Total Labor** | | | | **181,995.00** |

**Additional Fees**

| | | | |
|---|---|---|---|
| Administration Fee - 4% | | 7,279.80 | |
| **Total Additional Fees** | | **7,279.80** | **7,279.80** |
| | **Total this Segment** | | **US$189,274.80** |
| | **Total this Invoice** | | **US$189,274.80** |

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

# Billing Backup

CUS - HKA Global, Inc. Invoice 000005A Dated 7/29/2021 Thursday, July 29, 2021 12:00:11 PM

Project ESF-03382.02 SVO Affirmative Claim

**Segment 2.0 Damages**

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 6/1/2021 | 2.00 | 400.00 | 800.00 |
| | Internal discussions, review report | | | | |
| 48067 | Bones, David | 6/2/2021 | 2.00 | 400.00 | 800.00 |
| | Internal discussions, review report | | | | |
| 48067 | Bones, David | 6/3/2021 | 2.00 | 400.00 | 800.00 |
| | Internal discussions, review report | | | | |
| 48067 | Bones, David | 6/4/2021 | 3.00 | 400.00 | 1,200.00 |
| | Calls with counsel, internal discussions, review report. | | | | |
| 48067 | Bones, David | 6/5/2021 | 1.00 | 400.00 | 400.00 |
| | Review report. | | | | |
| 48067 | Bones, David | 6/6/2021 | 2.00 | 400.00 | 800.00 |
| | Review report. | | | | |
| 48067 | Bones, David | 6/7/2021 | 3.50 | 400.00 | 1,400.00 |
| | Calls with client and counsel. Calls with team. | | | | |
| 48067 | Bones, David | 6/8/2021 | 2.00 | 400.00 | 800.00 |
| | Calls with client and counsel. Internal call. | | | | |
| 48067 | Bones, David | 6/9/2021 | 2.00 | 400.00 | 800.00 |
| | Review report, calls with counsel. | | | | |
| 48067 | Bones, David | 6/10/2021 | 3.00 | 400.00 | 1,200.00 |
| | Review report, internal calls. | | | | |
| 48067 | Bones, David | 6/11/2021 | 4.00 | 400.00 | 1,600.00 |
| | Review report, internal calls. | | | | |
| 48067 | Bones, David | 6/12/2021 | 2.50 | 400.00 | 1,000.00 |
| | Review report, internal calls. | | | | |
| 48067 | Bones, David | 6/13/2021 | 2.00 | 400.00 | 800.00 |
| | Call with client and counsel, internal calls. | | | | |
| 48067 | Bones, David | 6/14/2021 | 7.00 | 400.00 | 2,800.00 |
| | Finalize report, calls with counsel, internal calls. | | | | |
| 48067 | Bones, David | 6/15/2021 | 4.00 | 400.00 | 1,600.00 |
| | Internal call, deposition prep. | | | | |
| 48067 | Bones, David | 6/16/2021 | 8.00 | 400.00 | 3,200.00 |
| | Deposition prep, internal calls. | | | | |
| 48067 | Bones, David | 6/17/2021 | 8.00 | 400.00 | 3,200.00 |
| | Deposition prep, call with counsel. | | | | |
| 48067 | Bones, David | 6/18/2021 | 8.00 | 400.00 | 3,200.00 |
| | Deposition prep, internal calls. | | | | |
| 48067 | Bones, David | 6/19/2021 | 8.00 | 400.00 | 3,200.00 |
| | Deposition prep, call with counsel. | | | | |
| 48067 | Bones, David | 6/20/2021 | 3.00 | 400.00 | 1,200.00 |
| | Depo prep. | | | | |
| 48067 | Bones, David | 6/21/2021 | 4.00 | 400.00 | 1,600.00 |
| | Depo prep, meeting with counsel. | | | | |
| 48067 | Bones, David | 6/22/2021 | 1.00 | 400.00 | 400.00 |
| | Internal discussions | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 48067 | Bones, David | 6/24/2021 | .50 | 400.00 | 200.00 |
| | Internal Discussions | | | | |
| 48067 | Bones, David | 6/28/2021 | 2.00 | 400.00 | 800.00 |
| | Internal discussions, depo prep. | | | | |
| 48067 | Bones, David | 6/29/2021 | 5.00 | 400.00 | 2,000.00 |
| | Depo prep. | | | | |
| 48067 | Bones, David | 6/30/2021 | 8.00 | 400.00 | 3,200.00 |
| | Depo prep and attendance. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 6/1/2021 | 2.00 | 350.00 | 700.00 |
| | internal call; review work product | | | | |
| 48110 | Liddicoat, Gary | 6/2/2021 | 2.00 | 350.00 | 700.00 |
| | internal call; review work product | | | | |
| 48110 | Liddicoat, Gary | 6/3/2021 | 2.50 | 350.00 | 875.00 |
| | internal call; review work product; review IP expert reports | | | | |
| 48110 | Liddicoat, Gary | 6/4/2021 | 3.00 | 350.00 | 1,050.00 |
| | review IP expert reports; call with counsel | | | | |
| 48110 | Liddicoat, Gary | 6/6/2021 | 1.00 | 350.00 | 350.00 |
| | Review expert report | | | | |
| 48110 | Liddicoat, Gary | 6/7/2021 | 4.00 | 350.00 | 1,400.00 |
| | internal calls; review expert report; calls with client/counsel; review work product | | | | |
| 48110 | Liddicoat, Gary | 6/8/2021 | 3.00 | 350.00 | 1,050.00 |
| | internal call; review work product and report; call with client/counsel | | | | |
| 48110 | Liddicoat, Gary | 6/9/2021 | 6.00 | 350.00 | 2,100.00 |
| | call with client/counsel; review IP documents | | | | |
| 48110 | Liddicoat, Gary | 6/10/2021 | 6.00 | 350.00 | 2,100.00 |
| | review expert report; review IP documents; review Napper deposition and exhibits | | | | |
| 48110 | Liddicoat, Gary | 6/11/2021 | 9.00 | 350.00 | 3,150.00 |
| | review/update expert report; review work product; internal calls; review IP documents | | | | |
| 48110 | Liddicoat, Gary | 6/12/2021 | 3.50 | 350.00 | 1,225.00 |
| | internal calls; review expert report | | | | |
| 48110 | Liddicoat, Gary | 6/13/2021 | 9.75 | 350.00 | 3,412.50 |
| | review/update expert report; review/update exhibits to expert report; review IP documents; internal calls; call with client/counsel | | | | |
| 48110 | Liddicoat, Gary | 6/14/2021 | 8.00 | 350.00 | 2,800.00 |
| | review/update expert report; review/update exhibits to expert report; review IP documents | | | | |
| 48110 | Liddicoat, Gary | 6/15/2021 | 4.00 | 350.00 | 1,400.00 |
| | Deposition prep; internal meetings/calls | | | | |
| 48110 | Liddicoat, Gary | 6/16/2021 | 4.00 | 350.00 | 1,400.00 |
| | Deposition prep; internal meetings/calls | | | | |
| 48110 | Liddicoat, Gary | 6/17/2021 | 2.00 | 350.00 | 700.00 |
| | Deposition prep; internal meetings/calls | | | | |
| 48110 | Liddicoat, Gary | 6/18/2021 | 1.00 | 350.00 | 350.00 |
| | Deposition prep; internal meetings/calls | | | | |
| 48110 | Liddicoat, Gary | 6/28/2021 | 2.50 | 350.00 | 875.00 |
| | Internal meeting; review amended statement of damages; assist in Bones deposition prep | | | | |
| 48110 | Liddicoat, Gary | 6/29/2021 | 6.50 | 350.00 | 2,275.00 |
| | Assist in Bones deposition preparation; call with counsel | | | | |

Director

| | | | | | |
|---|---|---|---|---|---|
| 48149 | Alcarez, Julia | 6/1/2021 | 8.25 | 345.00 | 2,846.25 |
| | Edit report, internal discussions and coordination, discussion with counsel, oversee QC. | | | | |
| 48149 | Alcarez, Julia | 6/2/2021 | 4.75 | 345.00 | 1,638.75 |
| | Oversee QC, prepare template for invoice/PO review, onboard and oversee resources for invoice/PO review. | | | | |
| 48149 | Alcarez, Julia | 6/3/2021 | 5.00 | 345.00 | 1,725.00 |
| | Edit report, internal discussions, oversee QC, oversee subcontractor invoice review. | | | | |
| 48149 | Alcarez, Julia | 6/4/2021 | 6.00 | 345.00 | 2,070.00 |
| | Edit report, oversee QC of exhibits and provide comments, oversee data entry of POs and invoices, work planning. | | | | |
| 48149 | Alcarez, Julia | 6/5/2021 | 1.50 | 345.00 | 517.50 |
| | Finalize subcontractor invoice review, internal correspondence. | | | | |
| 48149 | Alcarez, Julia | 6/6/2021 | 1.00 | 345.00 | 345.00 |
| | Review client comments, internal correspondence. | | | | |
| 48149 | Alcarez, Julia | 6/7/2021 | 7.00 | 345.00 | 2,415.00 |
| | Internal discussions regarding client feedback, discussion with counsel and client, draft analysis of buildings II and III, oversee opportunity cost analysis, work planning. | | | | |
| 48149 | Alcarez, Julia | 6/8/2021 | 7.50 | 345.00 | 2,587.50 |
| | Oversee report QC, discussions internally and with counsel and client, oversee edits to lost profits analysis and preparation of opportunity cost analysis, edit buildings II and III ROM calculation. | | | | |
| 48149 | Alcarez, Julia | 6/9/2021 | 7.25 | 345.00 | 2,501.25 |
| | Oversee QC of report and exhibits, finish building 2 and 3 ROM, draft report sections for new analyses | | | | |
| 48149 | Alcarez, Julia | 6/10/2021 | 6.25 | 345.00 | 2,156.25 |
| | Oversee report and exhibit QC, edit report, internal discussions, work planning. | | | | |
| 48149 | Alcarez, Julia | 6/11/2021 | 9.50 | 345.00 | 3,277.50 |
| | Edit report, oversee documents relied upon production, internal discussions and coordination, work planning, discussions with counsel. | | | | |
| 48149 | Alcarez, Julia | 6/12/2021 | 6.25 | 345.00 | 2,156.25 |
| | Edit report, internal discussions and coordination, oversee documents relied upon preparation, review client comments. | | | | |
| 48149 | Alcarez, Julia | 6/13/2021 | 10.50 | 345.00 | 3,622.50 |
| | Edit report, oversee report QC, discussions with client and counsel, internal discussions, oversee edits to increased financing, and prepare for report submission. | | | | |
| 48149 | Alcarez, Julia | 6/14/2021 | 11.50 | 345.00 | 3,967.50 |
| | Finalize report, oversee report QC, oversee document preparation and submission, internal discussions and discussions with counsel. | | | | |
| 48149 | Alcarez, Julia | 6/15/2021 | 4.00 | 345.00 | 1,380.00 |
| | Review depositions and internal correspondence. | | | | |
| 48149 | Alcarez, Julia | 6/16/2021 | 4.75 | 345.00 | 1,638.75 |
| | Assist in Bones deposition preparation. | | | | |
| 48149 | Alcarez, Julia | 6/17/2021 | 4.00 | 345.00 | 1,380.00 |
| | Bones deposition preparation internally and with counsel. | | | | |
| 48149 | Alcarez, Julia | 6/18/2021 | 5.00 | 345.00 | 1,725.00 |
| | Bones deposition preparation including analyses and errata, internal coordination. | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 48149 | Alcarez, Julia | 6/19/2021 | 2.00 | 345.00 | 690.00 |
| | Bones deposition preparation conversation with counsel, internal correspondence. | | | | |
| 48149 | Alcarez, Julia | 6/20/2021 | 1.25 | 345.00 | 431.25 |
| | Internal coordination and draft addendum for Bones report. | | | | |
| 48149 | Alcarez, Julia | 6/21/2021 | 4.75 | 345.00 | 1,638.75 |
| | Internal coordination, prepare addendum, and prepare for Bones deposition prior to cancellation by Procopio. | | | | |
| 48149 | Alcarez, Julia | 6/22/2021 | 1.00 | 345.00 | 345.00 |
| | Internal coordination. | | | | |
| 48149 | Alcarez, Julia | 6/23/2021 | .75 | 345.00 | 258.75 |
| | Internal discussion. | | | | |
| 48149 | Alcarez, Julia | 6/24/2021 | .50 | 345.00 | 172.50 |
| | Internal correspondence and correspondence with counsel. | | | | |
| 48149 | Alcarez, Julia | 6/25/2021 | 4.00 | 345.00 | 1,380.00 |
| | Review opposing reports, review Smith report, internal coordination and discussion. | | | | |
| 48149 | Alcarez, Julia | 6/28/2021 | 1.00 | 345.00 | 345.00 |
| | Internal coordination, review and comment on statement of damages. | | | | |
| 48149 | Alcarez, Julia | 6/29/2021 | 1.50 | 345.00 | 517.50 |
| | Bones deposition preparation conversations internally and with counsel. | | | | |
| 48149 | Alcarez, Julia | 6/30/2021 | 10.50 | 345.00 | 3,622.50 |
| | Prepare for and support Bones deposition. | | | | |
| Manager | | | | | |
| 48133 | Schillinger, Kathryn | 6/1/2021 | 8.50 | 295.00 | 2,507.50 |
| | Updates to increased interest calculation, review of SVO competitors, internal coordination | | | | |
| 48133 | Schillinger, Kathryn | 6/2/2021 | 5.25 | 295.00 | 1,548.75 |
| | Updated increased interest calculation, quality control review | | | | |
| 48133 | Schillinger, Kathryn | 6/3/2021 | 7.50 | 295.00 | 2,212.50 |
| | Team discussion re: discounting increased interest calculation, updates to increased interest calculation, create report support folder, quality control review | | | | |
| 48133 | Schillinger, Kathryn | 6/4/2021 | 7.50 | 295.00 | 2,212.50 |
| | Quality control review, update report, update increased interest calculation, internal coordination calls | | | | |
| 48133 | Schillinger, Kathryn | 6/7/2021 | 7.50 | 295.00 | 2,212.50 |
| | Call with client and counsel, perform quality control procedures, review documents provided by counsel | | | | |
| 48133 | Schillinger, Kathryn | 6/8/2021 | 4.50 | 295.00 | 1,327.50 |
| | Call with client and counsel, perform quality control procedures | | | | |
| 48133 | Schillinger, Kathryn | 6/9/2021 | 7.25 | 295.00 | 2,138.75 |
| | Perform quality control, update analyses | | | | |
| 48133 | Schillinger, Kathryn | 6/10/2021 | 7.50 | 295.00 | 2,212.50 |
| | Perform quality control, update analyses | | | | |
| 48133 | Schillinger, Kathryn | 6/11/2021 | 11.25 | 295.00 | 3,318.75 |
| | Perform quality control, update analyses, document organization for production | | | | |
| 48133 | Schillinger, Kathryn | 6/12/2021 | 7.00 | 295.00 | 2,065.00 |
| | Document organization for production | | | | |





CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 48133 | Schillinger, Kathryn | 6/13/2021 | 8.25 | 295.00 | 2,433.75 |
| | Quality control review, finalizing report and exhibits | | | | |
| 48133 | Schillinger, Kathryn | 6/14/2021 | 9.50 | 295.00 | 2,802.50 |
| | Quality control review, finalizing report and exhibits, Bates stamping documents | | | | |
| 48133 | Schillinger, Kathryn | 6/15/2021 | 3.00 | 295.00 | 885.00 |
| | Depo prep | | | | |
| 48133 | Schillinger, Kathryn | 6/19/2021 | .50 | 295.00 | 147.50 |
| | Invoice review | | | | |
| 48133 | Schillinger, Kathryn | 6/21/2021 | 1.50 | 295.00 | 442.50 |
| | Depo prep | | | | |
| 48133 | Schillinger, Kathryn | 6/27/2021 | .50 | 295.00 | 147.50 |
| | Review of second amended damages | | | | |
| 48133 | Schillinger, Kathryn | 6/28/2021 | 1.75 | 295.00 | 516.25 |
| | Call with counsel re: second amended damages statement | | | | |
| 48133 | Schillinger, Kathryn | 6/30/2021 | .75 | 295.00 | 221.25 |
| | Depo prep | | | | |
| Associate Consultant | | | | | |
| 48431 | Martino, Alexander | 6/1/2021 | 6.00 | 225.00 | 1,350.00 |
| | QC of Increased Interest Analysis, Updates to Lost Profits Analysis | | | | |
| 48431 | Martino, Alexander | 6/2/2021 | 7.50 | 225.00 | 1,687.50 |
| | QC of Increased Interest, Internal Communications, Updates to Lost Profits Analysis, QC of Crosswalk | | | | |
| 48431 | Martino, Alexander | 6/3/2021 | 8.25 | 225.00 | 1,856.25 |
| | QC of Increased Interest, Updates to Lost Profits Analysis, Updates to EBITDA Analysis, Internal Communications | | | | |
| 48431 | Martino, Alexander | 6/4/2021 | 7.50 | 225.00 | 1,687.50 |
| | Increased Interest QC Review, Updates to Lost Profits Analysis, Updates to EBITDA Analysis, Updates to Docs Relied Upon, Internal Discussions | | | | |
| 48431 | Martino, Alexander | 6/7/2021 | 8.50 | 225.00 | 1,912.50 |
| | Creation of Opportunity Cost Calculation, Updates to EBITDA Analysis, Updates to Lost Profits Analysis, Updates to Report, Updates to Disgorgement/Increased Construction, Updates to Docs Relied Upon, Internal Discussions | | | | |
| 48431 | Martino, Alexander | 6/8/2021 | 7.50 | 225.00 | 1,687.50 |
| | Report QC, Updates to Opportunity Cost, Updates to Lost Profits Analysis, Internal Discussions | | | | |
| 48431 | Martino, Alexander | 6/9/2021 | 8.75 | 225.00 | 1,968.75 |
| | Updates to Notes on Exhibits 1, 2, 3, and 4; Coordination and Implementation of Quality Control Comments; Internal Discussions | | | | |
| 48431 | Martino, Alexander | 6/10/2021 | 8.00 | 225.00 | 1,800.00 |
| | Updates to Lost Profits Analysis, Report QC, Exhibit 3 QC, Docs Relied Upon edits | | | | |
| 48431 | Martino, Alexander | 6/11/2021 | 10.50 | 225.00 | 2,362.50 |
| | QC of Exhibit 2, Updates to Documents Relied Upon, Internal Discussions | | | | |
| 48431 | Martino, Alexander | 6/12/2021 | 8.75 | 225.00 | 1,968.75 |
| | Prepare Documents Relied Upon for Bates stamp process and production. | | | | |
| 48431 | Martino, Alexander | 6/13/2021 | 9.00 | 225.00 | 2,025.00 |
| | Report QC, Updates to Exhibits 2 and 5, Creation of Exhibit 7, QC of Exhibit 3, Updates to Docs Relied Upon | | | | |





CONFIDENTIAL

| Project | ESF-03382.02 | SVO Affirmative Claim | | | Invoice | 000005A |
|---|---|---|---|---|---|---|
| 48431 | Martino, Alexander | 6/14/2021 | 9.75 | 225.00 | 2,193.75 | |
| | Report Finalization, Updates to Exhibit 2, Edits to Docs Relied Upon, Internal Discussions, Report QC | | | | | |
| 48431 | Martino, Alexander | 6/15/2021 | 10.00 | 225.00 | 2,250.00 | |
| | Attachment Support Binder Creation | | | | | |
| 48431 | Martino, Alexander | 6/16/2021 | 5.25 | 225.00 | 1,181.25 | |
| | Report Support Binder Creation, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 6/17/2021 | 1.00 | 225.00 | 225.00 | |
| | Commissions calculation review, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 6/30/2021 | .50 | 225.00 | 112.50 | |
| | Internal Discussions | | | | | |
| Research Assistants | | | | | | |
| 48673 | Evans, Parker | 6/2/2021 | 7.50 | 140.00 | 1,050.00 | |
| | perform data entry on subcontractor invoices and purchase orders | | | | | |
| 48654 | Griffin, Elinor | 6/2/2021 | 4.75 | 140.00 | 665.00 | |
| | perform data entry on subcontractor invoices and purchase orders | | | | | |
| 48673 | Evans, Parker | 6/3/2021 | 5.00 | 140.00 | 700.00 | |
| | perform data entry on subcontractor invoices and purchase orders | | | | | |
| 48654 | Griffin, Elinor | 6/3/2021 | 5.75 | 140.00 | 805.00 | |
| | perform data entry on subcontractor invoices and purchase orders | | | | | |
| 48673 | Evans, Parker | 6/4/2021 | 7.00 | 140.00 | 980.00 | |
| | perform data entry on subcontractor invoices and purchase orders | | | | | |
| 48654 | Griffin, Elinor | 6/4/2021 | 6.50 | 140.00 | 910.00 | |
| | perform data entry on subcontractor invoices and purchase orders | | | | | |
| 48654 | Griffin, Elinor | 6/10/2021 | 1.00 | 140.00 | 140.00 | |
| | organizing and checking bate stamps | | | | | |
| 48673 | Evans, Parker | 6/11/2021 | 2.75 | 140.00 | 385.00 | |
| | Ongoing Bate stamps; Updates to Documents Relied Upon | | | | | |
| 48654 | Griffin, Elinor | 6/11/2021 | 8.75 | 140.00 | 1,225.00 | |
| | organizing and checking bate stamps and working on binder for sourcing files | | | | | |
| 48673 | Evans, Parker | 6/12/2021 | 8.75 | 140.00 | 1,225.00 | |
| | Prepare Documents Relied Upon for Bates stamp process and production | | | | | |
| 48673 | Evans, Parker | 6/14/2021 | 7.25 | 140.00 | 1,015.00 | |
| | Compiled Report Support Folder | | | | | |
| 48654 | Griffin, Elinor | 6/14/2021 | 6.50 | 140.00 | 910.00 | |
| | Report Support Binder and Report Support Folder | | | | | |
| 48673 | Evans, Parker | 6/15/2021 | 7.25 | 140.00 | 1,015.00 | |
| | Compiled Report Support Folder | | | | | |
| 48654 | Griffin, Elinor | 6/15/2021 | 7.75 | 140.00 | 1,085.00 | |
| | Report Support Folder | | | | | |
| | Totals | | 617.25 | | 181,995.00 | |
| | **Total Labor** | | | | | **181,995.00** |
| | | | | **Total this Project** | | **US$181,995.00** |
| | | | | **Total this Report** | | **US$181,995.00** |



SVON 000094

CONFIDENTIAL

HKA

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
11 Pacific Avenue
San Francisco, CA 94111

November 12, 2021
Project No: ESF-03382.02
Invoice No: 000009A

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from October 1, 2021 to October 31, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | **Hours** | **Rate** | **Amount** | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 8.00 | 400.00 | 3,200.00 | |
| Partner | | | | |
| Liddicoat, Gary | 7.25 | 350.00 | 2,537.50 | |
| Director | | | | |
| Alcarez, Julia | 36.50 | 345.00 | 12,592.50 | |
| Manager | | | | |
| Schillinger, Kathryn | 5.75 | 295.00 | 1,696.25 | |
| Associate Consultant | | | | |
| Martino, Alexander | 31.50 | 225.00 | 7,087.50 | |
| Totals | 89.00 | | 27,113.75 | |
| **Total Labor** | | | | **27,113.75** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 1,084.55 | |
| **Total Additional Fees** | **1,084.55** | **1,084.55** |

**Total this Segment US$28,198.30**

**Total this Invoice US$28,198.30**

**Outstanding Invoices**

| **Number** | **Date** | **Balance** |
|---|---|---|
| 000008A | 10/11/2021 | 47,825.70 |
| **Total** | | **47,825.70** |

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

# Billing Backup

CUS - HKA Global, Inc. Invoice 000009A Dated 11/12/2021 Friday, November 12, 2021 8:18:26 AM

Project ESF-03382.02 SVO Affirmative Claim

Segment 2.0 Damages

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 10/4/2021 | 1.00 | 400.00 | 400.00 |
| | Demonstrative review. | | | | |
| 48067 | Bones, David | 10/5/2021 | 2.00 | 400.00 | 800.00 |
| | Internal coordination call. Theme development for hearing. | | | | |
| 48067 | Bones, David | 10/8/2021 | 1.00 | 400.00 | 400.00 |
| | Internal coordination call. | | | | |
| 48067 | Bones, David | 10/12/2021 | .50 | 400.00 | 200.00 |
| | Internal coordination call. | | | | |
| 48067 | Bones, David | 10/15/2021 | 1.00 | 400.00 | 400.00 |
| | Internal coordination call | | | | |
| 48067 | Bones, David | 10/16/2021 | 1.00 | 400.00 | 400.00 |
| | Prepare and attend call with Counsel. | | | | |
| 48067 | Bones, David | 10/19/2021 | .50 | 400.00 | 200.00 |
| | Internal coordination call. | | | | |
| 48067 | Bones, David | 10/26/2021 | .50 | 400.00 | 200.00 |
| | Internal coordination call. | | | | |
| 48067 | Bones, David | 10/28/2021 | .50 | 400.00 | 200.00 |
| | Call with counsel. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 10/4/2021 | 1.50 | 350.00 | 525.00 |
| | internal meeting; review work product | | | | |
| 48110 | Liddicoat, Gary | 10/5/2021 | 1.25 | 350.00 | 437.50 |
| | internal meeting; review work product | | | | |
| 48110 | Liddicoat, Gary | 10/16/2021 | 1.50 | 350.00 | 525.00 |
| | Prepare and attend call with Counsel | | | | |
| 48110 | Liddicoat, Gary | 10/21/2021 | .50 | 350.00 | 175.00 |
| | Review/discuss work product | | | | |
| 48110 | Liddicoat, Gary | 10/22/2021 | .50 | 350.00 | 175.00 |
| | Review work product; internal meeting | | | | |
| 48110 | Liddicoat, Gary | 10/28/2021 | .50 | 350.00 | 175.00 |
| | internal call | | | | |
| 48110 | Liddicoat, Gary | 10/29/2021 | 1.50 | 350.00 | 525.00 |
| | internal meeting/calls | | | | |
| Director | | | | | |
| 48149 | Alcarez, Julia | 10/1/2021 | .50 | 345.00 | 172.50 |
| | Internal coordination | | | | |
| 48149 | Alcarez, Julia | 10/4/2021 | 2.25 | 345.00 | 776.25 |
| | Internal discussion and oversee damages demonstratives. | | | | |
| 48149 | Alcarez, Julia | 10/5/2021 | 3.50 | 345.00 | 1,207.50 |
| | Internal coordination, review of Moeder increased financing analysis, demonstrative prep | | | | |



CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 48149 | Alcarez, Julia | 10/6/2021 | 1.75 | 345.00 | 603.75 |
| | Edit demonstratives, discussion with client and counsel. | | | | |
| 48149 | Alcarez, Julia | 10/7/2021 | 1.75 | 345.00 | 603.75 |
| | Draft updated summary of damages, internal discussions on demonstratives. | | | | |
| 48149 | Alcarez, Julia | 10/8/2021 | 2.00 | 345.00 | 690.00 |
| | Internal coordination, prepare updated summary of damages. | | | | |
| 48149 | Alcarez, Julia | 10/10/2021 | .50 | 345.00 | 172.50 |
| | Correspondence with counsel. | | | | |
| 48149 | Alcarez, Julia | 10/11/2021 | 1.50 | 345.00 | 517.50 |
| | Correspondence with counsel regarding statement of damages. | | | | |
| 48149 | Alcarez, Julia | 10/12/2021 | .50 | 345.00 | 172.50 |
| | Internal coordination. | | | | |
| 48149 | Alcarez, Julia | 10/13/2021 | 4.75 | 345.00 | 1,638.75 |
| | Review and edit demonstratives and direct testimony outline. | | | | |
| 48149 | Alcarez, Julia | 10/15/2021 | 2.00 | 345.00 | 690.00 |
| | Internal discussion, correspondence with counsel, review statement of damages. | | | | |
| 48149 | Alcarez, Julia | 10/16/2021 | .75 | 345.00 | 258.75 |
| | Discussion on Sequoia loan. | | | | |
| 48149 | Alcarez, Julia | 10/18/2021 | 3.00 | 345.00 | 1,035.00 |
| | Internal status discussion, edits to statement of damages and coordination with counsel | | | | |
| 48149 | Alcarez, Julia | 10/19/2021 | 2.00 | 345.00 | 690.00 |
| | Internal coordination, edits to statement of damages. | | | | |
| 48149 | Alcarez, Julia | 10/20/2021 | 1.00 | 345.00 | 345.00 |
| | Sequoia loan S&U review | | | | |
| 48149 | Alcarez, Julia | 10/21/2021 | 1.75 | 345.00 | 603.75 |
| | Review S&U, internal discussion. | | | | |
| 48149 | Alcarez, Julia | 10/22/2021 | .50 | 345.00 | 172.50 |
| | Internal coordination | | | | |
| 48149 | Alcarez, Julia | 10/25/2021 | 3.00 | 345.00 | 1,035.00 |
| | Review Bones deposition transcript. | | | | |
| 48149 | Alcarez, Julia | 10/28/2021 | 3.00 | 345.00 | 1,035.00 |
| | Review depo transcript, internal discussion on open items. | | | | |
| 48149 | Alcarez, Julia | 10/29/2021 | .50 | 345.00 | 172.50 |
| | Internal coordination. | | | | |
| Manager | | | | | |
| 48133 | Schillinger, Kathryn | 10/4/2021 | 1.25 | 295.00 | 368.75 |
| | Arbitration testimony prep | | | | |
| 48133 | Schillinger, Kathryn | 10/5/2021 | 2.25 | 295.00 | 663.75 |
| | Arbitration testimony prep; internal meeting re: increased financing damages and responses to Moeder | | | | |
| 48133 | Schillinger, Kathryn | 10/7/2021 | 1.00 | 295.00 | 295.00 |
| | Develop response to Moeder's increased financing criticisms | | | | |
| 48133 | Schillinger, Kathryn | 10/18/2021 | .25 | 295.00 | 73.75 |
| | Internal coordination | | | | |
| 48133 | Schillinger, Kathryn | 10/19/2021 | 1.00 | 295.00 | 295.00 |
| | QC of Amended Statement of Damages | | | | |

Associate Consultant

| | | | | | | |
|---|---|---|---|---|---|---|
| 48431 | Martino, Alexander | 10/4/2021 | 3.00 | 225.00 | 675.00 | |
| | Internal Discussions on Demonstrative/Arbitration, Search for Loan value support, Present Value of FFE calculation | | | | | |
| 48431 | Martino, Alexander | 10/5/2021 | 3.25 | 225.00 | 731.25 | |
| | Demonstrative slide creation, internal discussions | | | | | |
| 48431 | Martino, Alexander | 10/6/2021 | 5.75 | 225.00 | 1,293.75 | |
| | Demonstrative Edits, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 10/7/2021 | 5.50 | 225.00 | 1,237.50 | |
| | Demonstrative Edits, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 10/13/2021 | .50 | 225.00 | 112.50 | |
| | Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 10/14/2021 | 1.50 | 225.00 | 337.50 | |
| | Demonstrative Edits | | | | | |
| 48431 | Martino, Alexander | 10/15/2021 | 4.00 | 225.00 | 900.00 | |
| | Demonstrative Edits | | | | | |
| 48431 | Martino, Alexander | 10/20/2021 | 2.00 | 225.00 | 450.00 | |
| | Review of monthly reporting to Sequoia for Sources and Uses | | | | | |
| 48431 | Martino, Alexander | 10/28/2021 | 3.00 | 225.00 | 675.00 | |
| | Review of Bones Deposition | | | | | |
| 48431 | Martino, Alexander | 10/29/2021 | 3.00 | 225.00 | 675.00 | |
| | Bones Deposition Review | | | | | |
| | Totals | | 89.00 | | 27,113.75 | |
| | **Total Labor** | | | | | **27,113.75** |

| | |
|---|---|
| **Total this Segment** | **US$27,113.75** |
| **Total this Project** | **US$27,113.75** |
| **Total this Report** | **US$27,113.75** |





CONFIDENTIAL

HK>A

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

December 13, 2019

Kenneth R. Baker
*Partner*

Lisa D. Nicolls, Esq.
Murphy Austin Adams Schoenfeld LLP
555 Capital Mall
Suite 850
Sacramento, CA 95814

RE: HKA Project No.: ESF-03382.00
HKA Project Name: SVO Building One Data Center

Dear Ms. Nicolls:

Enclosed, please find HKA Global, Inc. Invoice ESF-03382.00-0000001 in the amount of $7,884.54 for professional services rendered and costs incurred on the above mentioned project for the period of November 1, 2019, to November 30, 2019.

Kindly remit payment in the amount of $7,884.54 to HKA Global, Inc. Tax I.D. #[redacted] Finance Department, One Commerce Square, 2005 Market Street, Suite #820, Philadelphia, PA 19103; OR send your electronic transfer payment, as follows:

HSBC Bank USA N.A., New York, NY
Wire Transfers – Account #[redacted] – Routing #021001088
ACH Transfers – Account #[redacted] – Routing #022000020
For Credit to HKA Global, Inc.
SWIFT Code: MRMDUS33

If you have any questions, please feel free to call me at (619) 980-1703, or send me an email at KenBaker@hka.com.

Very truly yours,
HKA GLOBAL, INC.

Kenneth R. Baker
Partner

KRB/jl

Enclosure(s)

**HKA**

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Lisa D. Nicolls, Esq.
Murphy Austin Adams Schoenfeld LLP
555 Capital Mall
Suite 850
Sacramento, CA 95814

December 13, 2019
Project No: ESF-03382.00
Invoice No: 0000001

Project ESF-03382.00 SVO Building One Data Center
Phase 1 budget - $20,000, plus reimbursable expenses

**Professional Services from November 1, 2019 to November 30, 2019**

Segment 1.0 Phase 1

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Baker, Kenneth | 9.00 | 375.00 | 3,375.00 | |
| Associate Director | | | | |
| Beihagi, Kamyar | 9.00 | 335.00 | 3,015.00 | |
| Totals | 18.00 | | 6,390.00 | |
| **Total Labor** | | | | **6,390.00** |

**Reimbursable Expenses**

| | | |
|---|---|---|
| Business Meals | 3.12 | |
| Air Fare | 999.92 | |
| Parking | 45.00 | |
| Other Direct Costs | 190.90 | |
| **Total Reimbursables** | **1,238.94** | **1,238.94** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Cost - 4% | 255.60 | |
| **Total Additional Fees** | **255.60** | **255.60** |

**Total this Segment** **US$7,884.54**

**Total this Invoice** **US$7,884.54**

**Phase 1 - $20,000 NTE Budget, plus reimbursable expenses**

Tax I.D. # [redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

Project ESF-03382.00 SVO Building One Data Center Invoice 0000001

# Billing Backup

HKA Global, Inc. Invoice 0000001 Dated 12/13/2019

Friday, December 13, 2019
2:34:05 PM

Project ESF-03382.00 SVO Building One Data Center

Segment 1.0 Phase 1

**Professional Personnel**

| | | | | Hours | Rate | Amount | |
|---|---|---|---|---|---|---|---|
| Partner | | | | | | | |
| 31209 | Baker, Kenneth | 11/8/2019 | | 1.00 | 375.00 | 375.00 | |
| | T-Atty SL, LN, SD re/ 11/11 kickoff, documents; | | | | | | |
| 31209 | Baker, Kenneth | 11/11/2019 | | 8.00 | 375.00 | 3,000.00 | |
| | Kick-off meeting incl doc review, travel; | | | | | | |
| Associate Director | | | | | | | |
| 47809 | Beihagi, Kamyar | 11/8/2019 | | 1.00 | 335.00 | 335.00 | |
| | Call with Counsel | | | | | | |
| 47809 | Beihagi, Kamyar | 11/11/2019 | | 8.00 | 335.00 | 2,680.00 | |
| | Meeting with Counsel and Client; Site Visit. | | | | | | |
| | | Totals | | 18.00 | | 6,390.00 | |
| | | **Total Labor** | | | | | **6,390.00** |

**Reimbursable Expenses**

| | | | | |
|---|---|---|---|---|
| Business Meals | | | | |
| EX 1176604 | 11/11/2019 | Beihagi, Kamyar / Coffee | 3.12 | |
| Air Fare | | | | |
| EX 1177084 | 11/11/2019 | Baker, Kenneth / Southwest Airlines SAN>SMF | 499.96 | |
| EX 1176604 | 11/11/2019 | Beihagi, Kamyar / Air | 499.96 | |
| Parking | | | | |
| EX 1176604 | 11/11/2019 | Beihagi, Kamyar / Parking | 45.00 | |
| Other Direct Costs | | | | |
| EX 1177084 | 11/11/2019 | Baker, Kenneth / Olympic Cab | 40.90 | |
| EX 1177084 | 11/11/2019 | Baker, Kenneth / Aviara Transportation | 150.00 | |
| | **Total Reimbursables** | | **1,238.94** | **1,238.94** |

| | |
|---|---|
| **Total this Segment** | **US$7,628.94** |
| **Total this Project** | **US$7,628.94** |
| **Total this Report** | **US$7,628.94** |





CONFIDENTIAL

# Detailed Expense Report

HKA Global, Inc.

Tuesday, December 10, 2019
12:24:43 PM

**Resource** **31209** **Baker, Kenneth Robert**

**Signed** ____________________

**Submitted**

**Approved** ____________________

**Organization** **CUS:US:SF:CL**

**Expense Report:** **Nov #3 - 11/11/19 SVO Data Center** **Report Date:** **11/22/2019**

| Date | Category | Description | Project | Segment | Employee/ Entity | Bill | Account | Currency Code | Amount | Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/11/2019 | Air Fare | Southwest Airlines SAN>SMF | ESF-03382.00 SVO Building One Data Center | 1.0 | | [X] | 52200.01 | USD | 499.96 | 499.96 |
| Business Reason: Data Center Kick Off Meeting-SAN>SMF>SAN | | | | | | | | | | |
| 11/11/2019 | Taxi | Olympic Cab | ESF-03382.00 SVO Building One Data Center | 1.0 | | [X] | 52900.00 | USD | 40.90 | 40.90 |
| Business Reason: Data Center Kick Off Meeting-From Airport to Meeting | | | | | | | | | | |
| 11/11/2019 | Other Transportation | Aviara Transportation | ESF-03382.00 SVO Building One Data Center | 1.0 | | [X] | 52900.00 | USD | 150.00 | 150.00 |
| Business Reason: Data Center Kick Off Meeting-From Home to Ariport, From Airport to Home | | | | | | | | | | |
| | | | | | | | **Total Expenses** | | | **690.86** |
| | | | | | | | **Total Due** | | | **690.86** |

v7.6.744 (ELVIRAESQUEDA) -





CONFIDENTIAL

**Esqueda, Elvira**

| | |
|---|---|
| **From:** | Southwest Airlines <southwestairlines@ifly.southwest.com> |
| **Sent:** | Thursday, November 7, 2019 2:13 PM |
| **To:** | Esqueda, Elvira |
| **Subject:** | Kenneth R Baker's 11/11 Sacramento trip (OYBFOU): Your reservation is confirmed. |

Here's your itinerary and other important travel information.
View our mobile site | View in browser

Southwest

Manage Flight | Flight Status | My Account

## Hi Kenneth R,

We're looking forward to flying together! It can't come soon enough. Below you'll find your itinerary, important travel information, and trip receipt. See you onboard soon!

NOVEMBER 11 - NOVEMBER 11

# SAN ✈ SMF

San Diego to Sacramento

Confirmation # **OYBFOU**

Confirmation date: 11/07/2019

| | |
|---|---|
| PASSENGER | **Kenneth R Baker** |
| RAPID REWARDS # | 26943210 |
| TICKET # | 5262139115164 |
| EXPIRATION[1] | November 6, 2020 |
| EST. POINTS EARNED | 5,262 |

Rapid Rewards® points are only estimations.

## Your itinerary

**Flight 1:** Monday, 11/11/2019 Est. Travel Time: **1h 50m** Business Select®

| FLIGHT | DEPARTS | | ARRIVES |
|---|---|---|---|
| # 1885 | **SAN 06:30AM** San Diego | ✈ | **SMF 08:20AM** Sacramento |

**Flight 2:** Monday, 11/11/2019 Est. Travel Time: **1h 30m** Business Select®

| FLIGHT # 1713 | DEPARTS | | ARRIVES |
|---|---|---|---|
| | SMF 05:55PM Sacramento | | SAN 07:25PM San Diego |

## Payment information

| Total cost | | |
|---|---|---|
| **Air - OYBFOU** | | |
| Base Fare | $ | 438.48 |
| U.S. Transportation Tax | $ | 32.88 |
| U.S. 9/11 Security Fee | $ | 11.20 |
| U.S. Flight Segment Tax | $ | 8.40 |
| U.S. Passenger Facility Chg | $ | 9.00 |
| **Total** | **$** | **499.96** |

**Payment**

Amer Express ending in 3006
Date: November 7, 2019

**Payment Amount: $499.96**

Fare Rules: If you decide to make a change to your current itinerary it may result in a fare increase. In the case you're left with travel funds from this confirmation number, you're in luck! We're happy to let you use them towards a future flight for the individual named on the ticket, as long as the new travel is completed by the expiration date.

Your ticket number: 5262139115164

## Prepare for takeoff

**24 hours** before your departure:

Check-in on Southwest.com® or using the Southwest Mobile App. Use your mobile device and receive a mobile boarding pass.

**30 minutes** before your departure:

Arrive at the gate prepared to board.

**10 minutes** before your departure:

This is the last opportunity to board your flight if you are present in the gate area and have met all check-in requirements.

**If you do not plan to travel on your flight:** Things happen, we understand! Please let us know at least 10 minutes prior to your flight's scheduled departure if you won't be traveling. If you don't notify us, you may be subject to our No Show Policy.

See more travel tips

**Don't miss out on automatic check-in**

EarlyBird Check-In® reserves your boarding position at 36 hours before your flight, earlier than regular check-in.

Get it now >

--ORIGINAL--
OLYMPIC CAB
MED# 0035
DRIVER: 9817499
CUSTOMER COPY
11/11/19 TR 1592
START END MILES
09:39 09:53 9.7
REGULAR FARE
RATE 1:$ 33.40
SMSFEE:$ 2.50
SURCH: $ 0.00
STSRCH:$ 0.00
TIP: $ 5.00
TOTAL: $ 40.90

CARD TYPE: AMEX
XXXXXXXXXXX3006
AUTH:806342

THANKS
TO CONTACT SITOA
916-444-0008

**Esqueda, Elvira**

| | |
|---|---|
| **From:** | Aviara Transportation via Square <receipts@messaging.squareup.com> |
| **Sent:** | Wednesday, November 13, 2019 4:59 PM |
| **To:** | Esqueda, Elvira |
| **Subject:** | Receipt from Aviara Transportation |

Now when you shop at sellers who use Square, your receipts will be delivered automatically.

Not your receipt?

Aviara Transportation

How was your experience?

$150.00

| | |
|---|---|
| Custom Amount | $150.00 |
| Total | **$150.00** |






Aviara Transportation

Last Location

619-203-2505

AMEX 3006 (Swipe)

KENNETH BAKER

Nov 11 2019 at 6:25 PM #Hu1C Auth code: 509479

© 2019 Square, Inc.

1455 Market Street, Suite 600
San Francisco, CA 94103

© Mapbox © OpenStreetMap Improve this map

Square Privacy Policy · Not your receipt?
Manage preferences for digital receipts

# Detailed Expense Report

Friday, November 15, 2019
4:07:54 PM

HKA Global, Inc.

Resource 47809 Beihagi, Kamyar

Signed [signature]

Approved [signature]

**Submitted**

Organization CUS:US:SF:CL

Expense Report: SVO Data Center Client Meeting Report Date: 11/15/2019

| Date | Category | Description | Project | Segment | Employee/ Entity | Bill | Account | Currency Code | | Amount | Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/11/2019 | Air Fare | Air | ESF-03382.00<br>SVO Building One Data Center | 1.0 | | ☒ | 52200.01 | USD | 🗋 | 499.96 | 499.96 |
| Business Reason: Roundtrip San Diego - sacramento | | | | | | | | | | | |
| 11/11/2019 | Parking | Parking | ESF-03382.00<br>SVO Building One Data Center | 1.0 | | ☒ | 52200.05 | USD | 🗋 | 45.00 | 45.00 |
| 11/11/2019 | Breakfast | Coffee | ESF-03382.00<br>SVO Building One Data Center | 1.0 | | ☒ | 51115.00 | USD | 🗋 | 3.12 | 3.12 |
| | | | | | | | Total Expenses | | | | 548.08 |
| | | | | | | | Total Due | | | | 548.08 |





CONFIDENTIAL

citi

Citi® / AAdvantage® Platinum Select® World Elite™ Mastercard® -7659

## Transaction Details

| Date | Description | Amount |
|---|---|---|
| Nov 07, 2019 | SOUTHWES5262139149914 800-435-9792 TX | $499.96 |

**Additional Details**

| | |
|---|---|
| Purchased On | Nov 07, 2019 |
| Posted On | Nov 07, 2019 |
| Category | Air Travel - Southwest |
| Merchant Details | United States |

citi

Citi® / AAdvantage® Platinum Select® World Elite™ Mastercard® -7659

Transaction Details

| Date | Description | Amount |
|---|---|---|
| Nov 11, 2019 | SAN DIEGO COUNTY RAA SAN DIEGO CA | $45.00 |

**Additional Details**

| | |
|---|---|
| Purchased On | Nov 11, 2019 |
| Posted On | Nov 11, 2019 |
| Purchase Method | Card Swiped |
| Cardmember Name | Kamyar Beihagi |
| Category | Vehicle Services - Auto Parking Lots / Garages |
| Merchant Details | United States |

# Receipt

3665 North Harbor Drive
Suite 200
San Diego, CA 92101

# Sale

| | |
|---|---|
| Receipt Number: | 110378651 |
| Arrived: | 11 Nov 2019 05:58 AM |
| Paid: | 11 Nov 2019 06:02 PM |
| Ticket Number: | 168884 |
| Payment Method: | MasterCard 7659 |
| Approval Code: | 146199 |
| Valet Fee: | $40.00 |
| Tip: | $5.00 |
| Total: | $45.00 |

We appreciate your business.
Thank you for parking with us.

citi

Citi® / AAdvantage® Platinum Select® World Elite™ Mastercard® -7659

Transaction Details

| Date | Description | | Amount |
|---|---|---|---|
| Nov 11, 2019 | CIAO T1 E SAN (CP) SAN DIEGO CA | | $3.12 |
| | **Additional Details** | | |
| | Purchased On | Nov 11, 2019 | |
| | Posted On | Nov 11, 2019 | |
| | Cardmember Name | Kamyar Beihagi | |
| | Category | Restaurants - Fast Food Restaurants | |
| | Merchant Details | United States | |

OPERATED BY
HMS HOST

CIAO
SAN DIEGO AIRPORT

4759 Nieva

CHK 6468 GST 1
NOV11'19 6:06AM

1 COFFEE M 2.90

SUBTOTAL 2.90
TAX 0.22
AMOUNT PAID 3.12
AT47634Z XXX7659
MSTRCD CC 3.12
---4759 Closed NOV11 06:06AM----

HK>A

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
11 Pacific Avenue
San Francisco, CA 94111

January 10, 2022
Project No: ESF-03382.02
Invoice No: 000011A

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from December 1, 2021 to December 31, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 7.50 | 400.00 | 3,000.00 | |
| Partner | | | | |
| Liddicoat, Gary | 6.50 | 350.00 | 2,275.00 | |
| Director | | | | |
| Alcarez, Julia | 26.50 | 345.00 | 9,142.50 | |
| Manager | | | | |
| Schillinger, Kathryn | 2.75 | 295.00 | 811.25 | |
| Associate Consultant | | | | |
| Marin, Isabel | .50 | 225.00 | 112.50 | |
| Martino, Alexander | 12.75 | 225.00 | 2,868.75 | |
| Totals | 56.50 | | 18,210.00 | |
| **Total Labor** | | | | **18,210.00** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 728.40 | |
| **Total Additional Fees** | **728.40** | **728.40** |

**Total this Segment** **US$18,938.40**

**Total this Invoice** **US$18,938.40**

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 000008A | 10/11/2021 | 47,825.70 |
| 000009A | 11/12/2021 | 28,198.30 |
| 000010A | 12/10/2021 | 20,516.60 |
| **Total** | | **96,540.60** |



CONFIDENTIAL

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33





CONFIDENTIAL

# Billing Backup

CUS - HKA Global, Inc. Invoice 000011A Dated 1/10/2022 Wednesday, January 10, 2022 9:42:37AM

Project ESF-03382.02 SVO Affirmative Claim

Segment 2.0 Damages

**Professional Personnel**

| | | | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 12/5/2021 | 2.50 | 400.00 | 1,000.00 |
| | Call with client and counsel re Bones declaration. | | | | |
| 48067 | Bones, David | 12/6/2021 | 2.00 | 400.00 | 800.00 |
| | Finalize affidavit. Review testimony outline. | | | | |
| 48067 | Bones, David | 12/7/2021 | 2.50 | 400.00 | 1,000.00 |
| | Review demonstratives and testimony outline. | | | | |
| 48067 | Bones, David | 12/8/2021 | .50 | 400.00 | 200.00 |
| | Commercial damages team wind down pending terminating sanctions decision. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 12/7/2021 | 3.00 | 350.00 | 1,050.00 |
| | Review demonstratives; internal meeting | | | | |
| 48110 | Liddicoat, Gary | 12/20/2021 | 2.00 | 350.00 | 700.00 |
| | Review Taylor Report, and Declaration; internal call | | | | |
| 48110 | Liddicoat, Gary | 12/21/2021 | 1.50 | 350.00 | 525.00 |
| | Review Taylor Report, and Deposition; develop testimony cross-points. | | | | |
| Director | | | | | |
| 48149 | Alcarez, Julia | 12/1/2021 | 5.50 | 345.00 | 1,897.50 |
| | Edit demonstratives, oversee QC, edit direct testimony outline. | | | | |
| 48149 | Alcarez, Julia | 12/2/2021 | 3.00 | 345.00 | 1,035.00 |
| | Edit demonstratives, edit direct testimony outline. | | | | |
| 48149 | Alcarez, Julia | 12/3/2021 | 2.00 | 345.00 | 690.00 |
| | Internal coordination, correspondence with counsel. | | | | |
| 48149 | Alcarez, Julia | 12/5/2021 | 2.50 | 345.00 | 862.50 |
| | Discussion with counsel and client, internal discussion, draft and edit Bones declaration. | | | | |
| 48149 | Alcarez, Julia | 12/6/2021 | 3.00 | 345.00 | 1,035.00 |
| | Edit and finalize declaration, internal discussions. | | | | |
| 48149 | Alcarez, Julia | 12/7/2021 | 4.00 | 345.00 | 1,380.00 |
| | Internal discussions, review transcripts, work planning. | | | | |
| 48149 | Alcarez, Julia | 12/8/2021 | 3.00 | 345.00 | 1,035.00 |
| | Review transcripts, internal discussion. | | | | |
| 48149 | Alcarez, Julia | 12/9/2021 | 1.00 | 345.00 | 345.00 |
| | Internal communication on transcripts. | | | | |
| 48149 | Alcarez, Julia | 12/20/2021 | 2.50 | 345.00 | 862.50 |
| | Review Taylor report, deposition, and declaration, prepare questioning for counsel, internal discussions. | | | | |
| Manager | | | | | |
| 48133 | Schillinger, Kathryn | 12/7/2021 | 1.25 | 295.00 | 368.75 |
| | Internal coordination call regarding direct testimony and demonstratives | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 48133 | Schillinger, Kathryn | 12/8/2021 | 1.50 | 295.00 | 442.50 | |
| | Internal coordination call, Prepare budget to actual | | | | | |
| Associate Consultant | | | | | | |
| 48747 | Marin, Isabel | 12/1/2021 | .50 | 225.00 | 112.50 | |
| | Internal Discussion; QC Review | | | | | |
| 48431 | Martino, Alexander | 12/1/2021 | 5.00 | 225.00 | 1,125.00 | |
| | Demonstrative Edits; QC Review; Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 12/2/2021 | .25 | 225.00 | 56.25 | |
| | Demonstrative Edits; Internal Coordination | | | | | |
| 48431 | Martino, Alexander | 12/6/2021 | 1.00 | 225.00 | 225.00 | |
| | Sequoia Loan Review; Internal Discussion | | | | | |
| 48431 | Martino, Alexander | 12/7/2021 | 4.00 | 225.00 | 900.00 | |
| | Sequoia Loan Review for Advance clauses; Investigation into SVO meeting reporting requirements; Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 12/8/2021 | 2.50 | 225.00 | 562.50 | |
| | Sequoia Loan Review; Internal Discussions | | | | | |
| | Totals | | 56.50 | | 18,210.00 | |
| | **Total Labor** | | | | | **18,210.00** |

| | |
|---|---|
| **Total this Segment** | **US$18,210.00** |
| **Total this Project** | **US$18,210.00** |
| **Total this Report** | **US$18,210.00** |





CONFIDENTIAL

HK>A

MAKING THE BEST POSSIBLE OUTCOMES A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
110 Pacific Avenue
San Francisco, CA 94111

October 11, 2021
Project No: ESF-03382.02
Invoice No: 000008A

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from September 1, 2021 to September 30, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 12.25 | 400.00 | 4,900.00 | |
| Partner | | | | |
| Liddicoat, Gary | 17.75 | 350.00 | 6,212.50 | |
| Director | | | | |
| Alcarez, Julia | 60.25 | 345.00 | 20,786.25 | |
| Manager | | | | |
| Schillinger, Kathryn | 21.25 | 295.00 | 6,268.75 | |
| Associate Consultant | | | | |
| Marin, Isabel | 4.00 | 225.00 | 900.00 | |
| Martino, Alexander | 30.75 | 225.00 | 6,918.75 | |
| Totals | 146.25 | | 45,986.25 | |
| **Total Labor** | | | | **45,986.25** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 1,839.45 | |
| **Total Additional Fees** | **1,839.45** | **1,839.45** |

**Total this Segment** **US$47,825.70**

**Total this Invoice** **US$47,825.70**

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 000007A | 9/15/2021 | 13,583.70 |
| **Total** | | **13,583.70** |



CONFIDENTIAL

| Project | ESF-03382.02 | SVO Affirmative Claim | Invoice | 000008A |
|---|---|---|---|---|

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

# Billing Backup

CUS - HKA Global, Inc. Invoice 000008A Dated 10/11/2021 Monday, October 11, 2021 11:00:52 AM

Project ESF-03382.02 SVO Affirmative Claim

Segment 2.0 Damages

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David<br>Call with counsel. Internal call. | 9/7/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Internal call. | 9/10/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Review of Moeder report and initial thoughts outline. | 9/11/2021 | 2.00 | 400.00 | 800.00 |
| 48067 | Bones, David<br>Moeder depo prep. | 9/12/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Interal call re Moeder depo prep. Call with counsel re Moeder depo prep. | 9/14/2021 | 2.50 | 400.00 | 1,000.00 |
| 48067 | Bones, David<br>Call with counsel re Moeder depo prep. | 9/16/2021 | .75 | 400.00 | 300.00 |
| 48067 | Bones, David<br>Internal coordination call. | 9/21/2021 | .50 | 400.00 | 200.00 |
| 48067 | Bones, David<br>Call with client and counsel. | 9/22/2021 | .50 | 400.00 | 200.00 |
| 48067 | Bones, David<br>Internal coordination call. | 9/24/2021 | .50 | 400.00 | 200.00 |
| 48067 | Bones, David<br>Call with electrical expert, client, and counsel. | 9/27/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Internal coordination call. | 9/28/2021 | 1.00 | 400.00 | 400.00 |
| 48067 | Bones, David<br>Review of industry research. | 9/30/2021 | .50 | 400.00 | 200.00 |
| Partner | | | | | |
| 48110 | Liddicoat, Gary<br>Review Bitterlin Report; review documents | 9/7/2021 | 1.50 | 350.00 | 525.00 |
| 48110 | Liddicoat, Gary<br>Review work product; internal meeting | 9/8/2021 | 1.50 | 350.00 | 525.00 |
| 48110 | Liddicoat, Gary<br>Review work product; review Moeder report, internal meetings | 9/10/2021 | 2.00 | 350.00 | 700.00 |
| 48110 | Liddicoat, Gary<br>Review Moeder report; review documents | 9/11/2021 | 2.50 | 350.00 | 875.00 |
| 48110 | Liddicoat, Gary<br>review Moeder report; internal call | 9/12/2021 | 1.50 | 350.00 | 525.00 |
| 48110 | Liddicoat, Gary<br>Moeder deposition prep calls and meetings; call with counsel | 9/14/2021 | 3.00 | 350.00 | 1,050.00 |
| 48110 | Liddicoat, Gary<br>Moeder deposition prep | 9/15/2021 | 2.00 | 350.00 | 700.00 |
| 48110 | Liddicoat, Gary<br>Moeder deposition prep; Call with counsel | 9/16/2021 | 1.75 | 350.00 | 612.50 |

| Project | ESF-03382.02 | SVO Affirmative Claim | | | Invoice | 000008A |
|---|---|---|---|---|---|---|
| 48110 | Liddicoat, Gary<br>Internal coordination call | 9/17/2021 | .50 | 350.00 | 175.00 | |
| 48110 | Liddicoat, Gary<br>Internal coordination call | 9/28/2021 | 1.00 | 350.00 | 350.00 | |
| 48110 | Liddicoat, Gary<br>Internal coordination call | 9/30/2021 | .50 | 350.00 | 175.00 | |
| Director | | | | | | |
| 48149 | Alcarez, Julia<br>Internal correspondence and status discussion. | 9/1/2021 | .50 | 345.00 | 172.50 | |
| 48149 | Alcarez, Julia<br>Internal discussion on crosswalk, review Bitterlin report, work planning | 9/8/2021 | 3.00 | 345.00 | 1,035.00 | |
| 48149 | Alcarez, Julia<br>Edits to crosswalk and Bitterlin report review | 9/9/2021 | 2.00 | 345.00 | 690.00 | |
| 48149 | Alcarez, Julia<br>Discuss crosswalk and demonstratives, internal coordination. | 9/10/2021 | 2.00 | 345.00 | 690.00 | |
| 48149 | Alcarez, Julia<br>Review Moeder report, internal correspondence. | 9/11/2021 | 1.00 | 345.00 | 345.00 | |
| 48149 | Alcarez, Julia<br>Evaluate Moeder report, internal discussions. | 9/12/2021 | 3.00 | 345.00 | 1,035.00 | |
| 48149 | Alcarez, Julia<br>Draft deposition questions for Moeder, internal discussions and oversee analysis. | 9/13/2021 | 7.00 | 345.00 | 2,415.00 | |
| 48149 | Alcarez, Julia<br>Edit deposition questions for Moeder, internal discussions, oversee analyses, call with client and counsel. | 9/14/2021 | 8.25 | 345.00 | 2,846.25 | |
| 48149 | Alcarez, Julia<br>Edit Moeder depo outline, internal discussions on Moeder increased financing calculations | 9/15/2021 | 4.50 | 345.00 | 1,552.50 | |
| 48149 | Alcarez, Julia<br>Discussions with counsel, prep for Moeder deposition, edit draft outline of depo questions | 9/16/2021 | 3.50 | 345.00 | 1,207.50 | |
| 48149 | Alcarez, Julia<br>Prepare for and attend Moeder depo | 9/17/2021 | 9.75 | 345.00 | 3,363.75 | |
| 48149 | Alcarez, Julia<br>Internal coordination, oversee analysis on Bitterlin report and prepare workplan for demonstratives. | 9/21/2021 | 4.00 | 345.00 | 1,380.00 | |
| 48149 | Alcarez, Julia<br>Analyze Bitterlin report, internal discussions and correspondence. | 9/23/2021 | 4.00 | 345.00 | 1,380.00 | |
| 48149 | Alcarez, Julia<br>Internal coordination and status. | 9/24/2021 | 1.00 | 345.00 | 345.00 | |
| 48149 | Alcarez, Julia<br>Prepare for and participate in HKA call with TM and Bitterlin. | 9/27/2021 | 1.50 | 345.00 | 517.50 | |
| 48149 | Alcarez, Julia<br>Internal coordination call, internal correspondence, oversee demonstratives | 9/28/2021 | 4.00 | 345.00 | 1,380.00 | |
| 48149 | Alcarez, Julia<br>Internal discussion and oversee demonstrative edits | 9/30/2021 | 1.25 | 345.00 | 431.25 | |
| Manager | | | | | | |
| 48133 | Schillinger, Kathryn<br>Internal coordination | 9/1/2021 | .50 | 295.00 | 147.50 | |
| 48133 | Schillinger, Kathryn<br>Review of but-for and actual expense crosswalk | 9/2/2021 | 1.00 | 295.00 | 295.00 | |

| Project | ESF-03382.02 | SVO Affirmative Claim | | | Invoice | 000008A |
|---|---|---|---|---|---|---|
| 48133 | Schillinger, Kathryn | 9/7/2021 | .25 | 295.00 | 73.75 | |
| | Internal coordination | | | | | |
| 48133 | Schillinger, Kathryn | 9/12/2021 | 2.50 | 295.00 | 737.50 | |
| | Review Moeder report | | | | | |
| 48133 | Schillinger, Kathryn | 9/13/2021 | 1.00 | 295.00 | 295.00 | |
| | Coordinate industry research | | | | | |
| 48133 | Schillinger, Kathryn | 9/14/2021 | 5.50 | 295.00 | 1,622.50 | |
| | Review and recreate Moeder increased financing analysis, review industry research | | | | | |
| 48133 | Schillinger, Kathryn | 9/15/2021 | 4.00 | 295.00 | 1,180.00 | |
| | Develop questions for Moeder depo, internal coordination call, review industry research | | | | | |
| 48133 | Schillinger, Kathryn | 9/16/2021 | .50 | 295.00 | 147.50 | |
| | Review industry research | | | | | |
| 48133 | Schillinger, Kathryn | 9/21/2021 | 2.25 | 295.00 | 663.75 | |
| | Internal meeting; review work product | | | | | |
| 48133 | Schillinger, Kathryn | 9/23/2021 | .25 | 295.00 | 73.75 | |
| | Review email to Bitterlin | | | | | |
| 48133 | Schillinger, Kathryn | 9/29/2021 | 2.00 | 295.00 | 590.00 | |
| | Budget to actual analysis | | | | | |
| 48133 | Schillinger, Kathryn | 9/30/2021 | 1.50 | 295.00 | 442.50 | |
| | Internal coordination call | | | | | |
| Associate Consultant | | | | | | |
| 48431 | Martino, Alexander | 9/1/2021 | .50 | 225.00 | 112.50 | |
| | Document Preparation for Crosswalk Discussion | | | | | |
| 48431 | Martino, Alexander | 9/8/2021 | 3.50 | 225.00 | 787.50 | |
| | Reading through Bitterlin Report, Checking calculations, Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 9/9/2021 | 1.25 | 225.00 | 281.25 | |
| | Internal Communications | | | | | |
| 48431 | Martino, Alexander | 9/10/2021 | 1.00 | 225.00 | 225.00 | |
| | Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 9/12/2021 | 2.50 | 225.00 | 562.50 | |
| | Analysis of opposing expert report, Internal Discussions | | | | | |
| 48747 | Marin, Isabel | 9/13/2021 | 1.00 | 225.00 | 225.00 | |
| | Market Research | | | | | |
| 48431 | Martino, Alexander | 9/13/2021 | .50 | 225.00 | 112.50 | |
| | Analysis of opposing expert report; internal discussions | | | | | |
| 48747 | Marin, Isabel | 9/14/2021 | 2.00 | 225.00 | 450.00 | |
| | Market research; data center research | | | | | |
| 48431 | Martino, Alexander | 9/14/2021 | 4.00 | 225.00 | 900.00 | |
| | Internal Discussions, Review of Appraisals and Assessments | | | | | |
| 48431 | Martino, Alexander | 9/15/2021 | 1.00 | 225.00 | 225.00 | |
| | Read through of Bitterlin Report for tenant mention | | | | | |
| 48747 | Marin, Isabel | 9/16/2021 | 1.00 | 225.00 | 225.00 | |
| | Data Center Research/ Fixing PDF issue | | | | | |
| 48431 | Martino, Alexander | 9/27/2021 | 3.50 | 225.00 | 787.50 | |
| | Demonstrative slide Deck edits | | | | | |
| 48431 | Martino, Alexander | 9/28/2021 | 2.00 | 225.00 | 450.00 | |
| | Demonstrative Slide Deck Edits | | | | | |





CONFIDENTIAL

| Project | ESF-03382.02 | SVO Affirmative Claim | | | | Invoice | 000008A |
|---|---|---|---|---|---|---|---|
| 48431 | Martino, Alexander | 9/29/2021 | | 5.00 | 225.00 | 1,125.00 | |
| | Demonstrative Slide Deck Edits and Budget QC | | | | | | |
| 48431 | Martino, Alexander | 9/30/2021 | | 6.00 | 225.00 | 1,350.00 | |
| | Demonstrative slide edits, internal discussions. | | | | | | |
| | Totals | | | 146.25 | | 45,986.25 | |
| | **Total Labor** | | | | | | **45,986.25** |
| | | | | | | **Total this Segment** | **US$45,986.25** |
| | | | | | | **Total this Project** | **US$45,986.25** |
| | | | | | | **Total this Report** | **US$45,986.25** |





CONFIDENTIAL

HK>A

MAKING THE BEST
POSSIBLE OUTCOMES
A REALITY, EVERY TIME

Ulrich Pelz
Prime Data Center
11 Pacific Avenue
San Francisco, CA 94111

December 10, 2021
Project No: ESF-03382.02
Invoice No: 000010A

Project ESF-03382.02 SVO Affirmative Claim

**Professional Services from November 1, 2021 to November 30, 2021**

Segment 2.0 Damages

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Bones, David | 2.50 | 400.00 | 1,000.00 | |
| Partner | | | | |
| Liddicoat, Gary | 2.00 | 350.00 | 700.00 | |
| Director | | | | |
| Alcarez, Julia | 25.00 | 345.00 | 8,625.00 | |
| Manager | | | | |
| Schillinger, Kathryn | 5.75 | 295.00 | 1,696.25 | |
| Associate Consultant | | | | |
| Marin, Isabel | 12.75 | 225.00 | 2,868.75 | |
| Martino, Alexander | 21.50 | 225.00 | 4,837.50 | |
| Totals | 69.50 | | 19,727.50 | |
| **Total Labor** | | | | **19,727.50** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 789.10 | |
| **Total Additional Fees** | **789.10** | **789.10** |

**Total this Segment** **US$20,516.60**

**Total this Invoice** **US$20,516.60**

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 000008A | 10/11/2021 | 47,825.70 |
| 000009A | 11/12/2021 | 28,198.30 |
| **Total** | | **76,024.00** |

| Project | ESF-03382.02 | SVO Affirmative Claim | Invoice | 000010A |
|---|---|---|---|---|

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number:[redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

# Billing Backup

CUS - HKA Global, Inc. Invoice 000010A Dated 12/10/2021 Friday, December 10, 2021 11:52:42 AM

Project ESF-03382.02 SVO Affirmative Claim

Segment 2.0 Damages

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 48067 | Bones, David | 11/2/2021 | .50 | 400.00 | 200.00 |
| | Internal coordination call | | | | |
| 48067 | Bones, David | 11/16/2021 | .50 | 400.00 | 200.00 |
| | Internal coordination call. | | | | |
| 48067 | Bones, David | 11/18/2021 | 1.50 | 400.00 | 600.00 |
| | Team strategy call. | | | | |
| Partner | | | | | |
| 48110 | Liddicoat, Gary | 11/2/2021 | 1.00 | 350.00 | 350.00 |
| | Internal coordination meetings/calls | | | | |
| 48110 | Liddicoat, Gary | 11/18/2021 | 1.00 | 350.00 | 350.00 |
| | Internal call; review workplan | | | | |
| Director | | | | | |
| 48149 | Alcarez, Julia | 11/2/2021 | .50 | 345.00 | 172.50 |
| | Internal coordination and correspondence with counsel. | | | | |
| 48149 | Alcarez, Julia | 11/5/2021 | .50 | 345.00 | 172.50 |
| | Internal status discussion. | | | | |
| 48149 | Alcarez, Julia | 11/9/2021 | .75 | 345.00 | 258.75 |
| | Review depo notes and internal discussion. | | | | |
| 48149 | Alcarez, Julia | 11/12/2021 | 1.00 | 345.00 | 345.00 |
| | Correspondence with counsel, internal discussions | | | | |
| 48149 | Alcarez, Julia | 11/15/2021 | 2.00 | 345.00 | 690.00 |
| | Internal discussions, correspondence with counsel, work planning. | | | | |
| 48149 | Alcarez, Julia | 11/16/2021 | 1.50 | 345.00 | 517.50 |
| | Internal discussions and work planning. | | | | |
| 48149 | Alcarez, Julia | 11/17/2021 | 2.00 | 345.00 | 690.00 |
| | Review opening statements, work planning. | | | | |
| 48149 | Alcarez, Julia | 11/18/2021 | 1.00 | 345.00 | 345.00 |
| | Internal discussion and work planning | | | | |
| 48149 | Alcarez, Julia | 11/22/2021 | 2.75 | 345.00 | 948.75 |
| | Edit demonstratives and internal discussion. | | | | |
| 48149 | Alcarez, Julia | 11/23/2021 | 4.25 | 345.00 | 1,466.25 |
| | Edit demonstratives, internal coordination | | | | |
| 48149 | Alcarez, Julia | 11/24/2021 | 2.00 | 345.00 | 690.00 |
| | Review transcripts. | | | | |
| 48149 | Alcarez, Julia | 11/29/2021 | 1.00 | 345.00 | 345.00 |
| | Edit demonstratives and q&a outline | | | | |
| 48149 | Alcarez, Julia | 11/30/2021 | 5.75 | 345.00 | 1,983.75 |
| | Edit demonstratives and q&a, internal discussions | | | | |
| Manager | | | | | |
| 48133 | Schillinger, Kathryn | 11/16/2021 | 1.00 | 295.00 | 295.00 |
| | Develop demonstratives, internal team meeting | | | | |
| 48133 | Schillinger, Kathryn | 11/18/2021 | 1.00 | 295.00 | 295.00 |
| | Internal team meeting | | | | |

| Project | ESF-03382.02 | SVO Affirmative Claim | | | Invoice | 000010A |
|---|---|---|---|---|---|---|
| 48133 | Schillinger, Kathryn | 11/24/2021 | 3.50 | 295.00 | 1,032.50 | |
| | Update direct testimony outline | | | | | |
| 48133 | Schillinger, Kathryn | 11/30/2021 | .25 | 295.00 | 73.75 | |
| | Review of Silver Point Loan document, internal call | | | | | |
| Associate Consultant | | | | | | |
| 48431 | Martino, Alexander | 11/1/2021 | 1.00 | 225.00 | 225.00 | |
| | Bones Depo Review | | | | | |
| 48431 | Martino, Alexander | 11/8/2021 | 1.75 | 225.00 | 393.75 | |
| | Bones Depo Review | | | | | |
| 48431 | Martino, Alexander | 11/9/2021 | 1.00 | 225.00 | 225.00 | |
| | Internal Discussion and Coordination | | | | | |
| 48431 | Martino, Alexander | 11/15/2021 | 1.50 | 225.00 | 337.50 | |
| | Internal Discussions, Demonstrative Edits | | | | | |
| 48431 | Martino, Alexander | 11/16/2021 | 3.25 | 225.00 | 731.25 | |
| | Demonstrative Edits, Arbitration Document Review | | | | | |
| 48431 | Martino, Alexander | 11/18/2021 | 1.00 | 225.00 | 225.00 | |
| | Internal Discussions | | | | | |
| 48747 | Marin, Isabel | 11/23/2021 | 2.00 | 225.00 | 450.00 | |
| | Report review; Coordination for QC Schedules; Internal Discussions | | | | | |
| 48431 | Martino, Alexander | 11/23/2021 | 2.00 | 225.00 | 450.00 | |
| | Internal Discussions, Demonstrative Edits, QC Coordination | | | | | |
| 48747 | Marin, Isabel | 11/29/2021 | 5.00 | 225.00 | 1,125.00 | |
| | QC for Demonstratives | | | | | |
| 48431 | Martino, Alexander | 11/29/2021 | 7.00 | 225.00 | 1,575.00 | |
| | Demonstrative Edits; QC Coordination | | | | | |
| 48747 | Marin, Isabel | 11/30/2021 | 5.75 | 225.00 | 1,293.75 | |
| | Remainder Demonstrative QC; Internal Discussion | | | | | |
| 48431 | Martino, Alexander | 11/30/2021 | 3.00 | 225.00 | 675.00 | |
| | Demonstrative Edits; QC Coordination | | | | | |
| | Totals | | 69.50 | | 19,727.50 | |
| | **Total Labor** | | | | | **19,727.50** |
| | | | | | **Total this Segment** | **US$19,727.50** |
| | | | | | **Total this Project** | **US$19,727.50** |
| | | | | | **Total this Report** | **US$19,727.50** |

HK>A

MAKING THE BEST
POSSIBLE OUTCOMES
A REALITY, EVERY TIME

David M. Frishman, Esq.
Tyson & Mendes
1055 West 7th St., Suite 2500
Los Angeles, CA 90017

December 22, 2021
Project No: ESF-03382.02
Invoice No: 0000017

Project ESF-03382.02 SVO Payor-Tech Svcs Experts
Navigators Claim No.: CGL325269
Hallmark Policy No.: 77GLO15D776

**Professional Services from December 1, 2021 to December 18, 2021**

Segment 1.0 Expert Services

**Professional Personnel**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Baker, Kenneth | 75.75 | 375.00 | 28,406.25 | |
| Executive Consultant | | | | |
| Hartford, Gerald | 29.00 | 350.00 | 10,150.00 | |
| Director | | | | |
| Beihagi, Kamyar | 112.75 | 335.00 | 37,771.25 | |
| Executive Consultant | | | | |
| Smith, Robert | 89.25 | 325.00 | 29,006.25 | |
| Senior Associate Consultant | | | | |
| Shah, Alay | 171.00 | 275.00 | 47,025.00 | |
| Associate Consultant | | | | |
| Patel, Hirenkumar | 131.50 | 275.00 | 36,162.50 | |
| Totals | 609.25 | | 188,521.25 | |
| **Total Labor** | | | | **188,521.25** |

**Additional Fees**

| | | |
|---|---|---|
| Administration Fee - 4% | 7,540.85 | |
| **Total Additional Fees** | **7,540.85** | **7,540.85** |
| **Total this Segment** | | **US$196,062.10** |
| **Total this Invoice** | | **US$196,062.10** |

**Outstanding Invoices**

| **Number** | **Date** | **Balance** |
|---|---|---|
| 0000015 | 11/19/2021 | 11,107.18 |
| 0000016 | 12/6/2021 | 86,037.90 |
| **Total** | | **97,145.08** |

| Project | ESF-03382.02 | SVO Payor-Tech Svcs Experts | Invoice | 0000017 |
|---|---|---|---|---|

Tax I.D. #[redacted]

PLEASE REMIT PAYMENT TO:
HKA Global, Inc.
One Commerce Square
2005 Market Street, Suite 820
Philadelphia, PA 19103

HSBC Bank USA N.A.
452 Fifth Avenue
New York, NY 10018

Account Number: [redacted]
Routing Number (ACH): 022000020
ABA Number: 021001088
Swift Code: MRMDUS33

| Project | ESF-03382.02 | SVO Payor-Tech Svcs Experts | Invoice | 0000017 |
|---|---|---|---|---|

# Billing Backup

CUS - HKA Global, Inc. Invoice 0000017 Dated 12/22/2021 Wednesday, December 22, 2021 9:52:45 AM

Project ESF-03382.02 SVO Payor-Tech Svcs Experts

Segment 1.0 Expert Services

**Professional Personnel**

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Partner | | | | | |
| 31209 | Baker, Kenneth | 12/1/2021 | 5.00 | 375.00 | 1,875.00 |
| | T-AS; PPT testimony edits for SOC; | | | | |
| 31209 | Baker, Kenneth | 12/6/2021 | 5.50 | 375.00 | 2,062.50 |
| | T-AS; SOC testimony PPT; E-DF re budget; Review GH testimony PPT; | | | | |
| 31209 | Baker, Kenneth | 12/7/2021 | 7.00 | 375.00 | 2,625.00 |
| | T-internal; E-Jamie; E-Julee; T-AS; SOC testimony PPT; Uli comments re PPT; E-attys re/ scheduling, transcripts; review transcripts; | | | | |
| 31209 | Baker, Kenneth | 12/8/2021 | 5.00 | 375.00 | 1,875.00 |
| | T-AS; SOC testimony PPT; Uli comments re PPT; E-GH; review transcripts; | | | | |
| 31209 | Baker, Kenneth | 12/9/2021 | 6.00 | 375.00 | 2,250.00 |
| | T-atty DF; T-AS; SOC testimony PPT; Uli comments re PPT; review transcripts; E-GH; | | | | |
| 31209 | Baker, Kenneth | 12/10/2021 | 6.75 | 375.00 | 2,531.25 |
| | T-AS; SOC testimony PPT; Uli comments re PPT; review transcripts; | | | | |
| 31209 | Baker, Kenneth | 12/11/2021 | 2.50 | 375.00 | 937.50 |
| | T-DF; SOC testimony PPT; Uli comments; Q&A; | | | | |
| 31209 | Baker, Kenneth | 12/12/2021 | 4.00 | 375.00 | 1,500.00 |
| | SOC testimony PPT, Q&A, exhibit references; | | | | |
| 31209 | Baker, Kenneth | 12/13/2021 | 6.25 | 375.00 | 2,343.75 |
| | T-AS; SOC testimony PPT, Q&A, exhibit references; T-atty DF; | | | | |
| 31209 | Baker, Kenneth | 12/14/2021 | 6.00 | 375.00 | 2,250.00 |
| | T-internal; T-AS; SOC testimony PPT, Q&A, exhibit references; T-atty DF and Ulrich; | | | | |
| 31209 | Baker, Kenneth | 12/15/2021 | 5.00 | 375.00 | 1,875.00 |
| | T-AS; SOC testimony PPT, Q&A, exhibit references; T-atty DF; T-RJS re/ testimony; Es- invoice and cost estimate testimony for Ian, GH; Review Ulrich 'settlement spreadsheet' | | | | |
| 31209 | Baker, Kenneth | 12/16/2021 | 6.75 | 375.00 | 2,531.25 |
| | T-AS; T-atty DF; SOC testimony PPT, Q&A, exhibit references; reconciliation w/ Ulrich spreadsheet re CPS settlement; prep for testimony; completion costs and payment info; prep for cross; | | | | |
| 31209 | Baker, Kenneth | 12/17/2021 | 6.00 | 375.00 | 2,250.00 |
| | Arb testimony and prep; | | | | |
| 31209 | Baker, Kenneth | 12/18/2021 | 4.00 | 375.00 | 1,500.00 |
| | T-atty DF and AS to review all PPT testimony, Q&A, and exhibit references; | | | | |
| Executive Consultant | | | | | |
| 47685 | Hartford, Gerald | 12/1/2021 | 2.00 | 350.00 | 700.00 |
| | Update PowerPoint for Testimony | | | | |





CONFIDENTIAL

| Project | ESF-03382.02 | SVO Payor-Tech Svcs Experts | | | Invoice | 0000017 |
|---|---|---|---|---|---|---|
| 47685 | Hartford, Gerald<br>Update PowerPoint for Testimony | 12/2/2021 | 2.00 | 350.00 | 700.00 | |
| 47685 | Hartford, Gerald<br>Update PowerPoint for Testimony | 12/3/2021 | 6.00 | 350.00 | 2,100.00 | |
| 47685 | Hartford, Gerald<br>Update PowerPoint for Testimony | 12/4/2021 | 8.00 | 350.00 | 2,800.00 | |
| 47685 | Hartford, Gerald<br>Emails/document review/PP prep for testimony | 12/6/2021 | 2.00 | 350.00 | 700.00 | |
| 47685 | Hartford, Gerald<br>Emails/document review/PP prep for testimony | 12/7/2021 | 2.00 | 350.00 | 700.00 | |
| 47685 | Hartford, Gerald<br>Emails/document review/PP prep for testimony | 12/8/2021 | 2.00 | 350.00 | 700.00 | |
| 47685 | Hartford, Gerald<br>Emails/document review/PP prep for testimony | 12/9/2021 | 2.00 | 350.00 | 700.00 | |
| 47685 | Hartford, Gerald<br>Emails/document review/PP prep for testimony | 12/10/2021 | 2.00 | 350.00 | 700.00 | |
| 47685 | Hartford, Gerald<br>Emails/document review/PP prep for testimony | 12/11/2021 | 1.00 | 350.00 | 350.00 | |
| Director | | | | | | |
| 47809 | Beihagi, Kamyar<br>Arbitration Testimony Preparations | 12/1/2021 | 7.00 | 335.00 | 2,345.00 | |
| 47809 | Beihagi, Kamyar<br>Arbitration Testimony Preparations | 12/2/2021 | 8.50 | 335.00 | 2,847.50 | |
| 47809 | Beihagi, Kamyar<br>Arbitration Testimony Preparations | 12/3/2021 | 8.00 | 335.00 | 2,680.00 | |
| 47809 | Beihagi, Kamyar<br>Arbitration Testimony Preparations; Call with Client and Counsel. | 12/6/2021 | 7.50 | 335.00 | 2,512.50 | |
| 47809 | Beihagi, Kamyar<br>Call with KRB and other experts; Arbitration Testimony Preparations; Call with Client and Counsel. | 12/7/2021 | 7.75 | 335.00 | 2,596.25 | |
| 47809 | Beihagi, Kamyar<br>Call with Client and Counsel; Arbitration Testimony Preparations; | 12/8/2021 | 8.50 | 335.00 | 2,847.50 | |
| 47809 | Beihagi, Kamyar<br>Arbitration Testimony Preparations; Call with Client and Counsel. | 12/9/2021 | 9.50 | 335.00 | 3,182.50 | |
| 47809 | Beihagi, Kamyar<br>Call with KRB and other Experts. Arbitration Testimony Preparations; Call with Client and Counsel. | 12/10/2021 | 8.50 | 335.00 | 2,847.50 | |
| 47809 | Beihagi, Kamyar<br>Arbitration Testimony Preparations; Call with Client and Counsel. | 12/11/2021 | 9.50 | 335.00 | 3,182.50 | |
| 47809 | Beihagi, Kamyar<br>Testimony Preparations | 12/12/2021 | 6.00 | 335.00 | 2,010.00 | |
| 47809 | Beihagi, Kamyar<br>Testimony Preparations | 12/13/2021 | 4.50 | 335.00 | 1,507.50 | |
| 47809 | Beihagi, Kamyar<br>Testimony Preparations | 12/14/2021 | 8.25 | 335.00 | 2,763.75 | |
| 47809 | Beihagi, Kamyar<br>Testimony Preparations; Direct Examination Day 1 | 12/15/2021 | 8.75 | 335.00 | 2,931.25 | |
| 47809 | Beihagi, Kamyar<br>Testimony Preparations; Direct Examination Day 2 | 12/16/2021 | 6.00 | 335.00 | 2,010.00 | |
| 47809 | Beihagi, Kamyar<br>Testimony Preparations; Cross- Examination | 12/17/2021 | 4.50 | 335.00 | 1,507.50 | |

| Project | ESF-03382.02 | SVO Payor-Tech Svcs Experts | | | Invoice | 0000017 |
|---|---|---|---|---|---|---|
| Executive Consultant | | | | | | |
| 33178 | Smith, Robert | 12/1/2021 | .75 | 325.00 | 243.75 | |
| | Damages: call with A. Shah re architectural damages. | | | | | |
| 33178 | Smith, Robert | 12/2/2021 | 6.00 | 325.00 | 1,950.00 | |
| | Damages: Continue with PowerPoint update. | | | | | |
| 33178 | Smith, Robert | 12/3/2021 | 4.75 | 325.00 | 1,543.75 | |
| | Damages: Continue with PowerPoint update, team call. | | | | | |
| 33178 | Smith, Robert | 12/4/2021 | 4.00 | 325.00 | 1,300.00 | |
| | Damages: Review of J. Smith deposition, update PowerPoint. | | | | | |
| 33178 | Smith, Robert | 12/5/2021 | 4.50 | 325.00 | 1,462.50 | |
| | Damages: Review Smith deposition and update PowerPoint. | | | | | |
| 33178 | Smith, Robert | 12/6/2021 | 1.25 | 325.00 | 406.25 | |
| | Damages: Review of Smith deposition, coordinate testimony for Tuesday 12/7. | | | | | |
| 33178 | Smith, Robert | 12/7/2021 | 6.00 | 325.00 | 1,950.00 | |
| | Damages: Review testimony, team call, review PowerPoint with counsel. | | | | | |
| 33178 | Smith, Robert | 12/8/2021 | 13.00 | 325.00 | 4,225.00 | |
| | Damages: Continue work on PowerPoint, call with counsel. | | | | | |
| 33178 | Smith, Robert | 12/9/2021 | 15.25 | 325.00 | 4,956.25 | |
| | Damages: continue with PowerPoint, call with counsel. | | | | | |
| 33178 | Smith, Robert | 12/10/2021 | 7.25 | 325.00 | 2,356.25 | |
| | Damages: Prepare for testimony. Testimony from 4:00 - 5:00PM. | | | | | |
| 33178 | Smith, Robert | 12/13/2021 | 13.00 | 325.00 | 4,225.00 | |
| | Damages: Preparation for testimony. | | | | | |
| 33178 | Smith, Robert | 12/14/2021 | 8.00 | 325.00 | 2,600.00 | |
| | Damages: Preparation for testimony, testimony on architectural issues. | | | | | |
| 33178 | Smith, Robert | 12/15/2021 | 5.50 | 325.00 | 1,787.50 | |
| | Damages: Testimony on architectural issues. | | | | | |
| Senior Associate Consultant | | | | | | |
| 47785 | Shah, Alay | 12/1/2021 | 11.00 | 275.00 | 3,025.00 | |
| | Create spreadsheets and work packages for construction damages and payments (for four experts) | | | | | |
| 47785 | Shah, Alay | 12/2/2021 | 11.50 | 275.00 | 3,162.50 | |
| | Create spreadsheets and work packages for construction damages and payments (for four experts) | | | | | |
| 47785 | Shah, Alay | 12/3/2021 | 10.50 | 275.00 | 2,887.50 | |
| | Internal Coordination Call; Create spreadsheets and work packages for construction damages and payments (for four experts); E - Respond to attorney emails and requests | | | | | |
| 47785 | Shah, Alay | 12/4/2021 | 1.00 | 275.00 | 275.00 | |
| | E - Respond to attorney emails and requests | | | | | |
| 47785 | Shah, Alay | 12/5/2021 | 3.50 | 275.00 | 962.50 | |
| | Respond to requests from Counsel regarding damages and documents; Edit draft Baker Testimony presentation | | | | | |
| 47785 | Shah, Alay | 12/6/2021 | 9.00 | 275.00 | 2,475.00 | |
| | Call with Ken Baker Re/ testimony presentation of other experts; Prepare and send draft budget augmentation; Review Vertiv's renewed motion of sanctions | | | | | |

| Project | ESF-03382.02 | SVO Payor-Tech Svcs Experts | | | Invoice | 0000017 |
|---|---|---|---|---|---|---|
| 47785 | Shah, Alay<br>Internal Coordination Meeting; Call with Ken Baker Re/ testimony presentation of other experts; Coordinate and edit outline of Gerald Hartford Testimony; Prepare overview of Swinerton COs for the client | 12/7/2021 | 9.50 | 275.00 | 2,612.50 | |
| 47785 | Shah, Alay<br>Review Arbitrator's ruling on Vertiv's sanction; Call with Ken Baker Re/ testimony presentation; Edit Ken Baker draft testimony presentation | 12/8/2021 | 9.25 | 275.00 | 2,543.75 | |
| 47785 | Shah, Alay<br>Assist Counsel in identifying documents used in Kam Beihagi's Testimony PPT; Coordinate architectural related damages work; Call with counsel Re/ Kam Beihagi testimony; Create draft damage work packages for Gerald Hartford and Ken Baker | 12/9/2021 | 11.75 | 275.00 | 3,231.25 | |
| 47785 | Shah, Alay<br>Internal Coordination Call; Call with KB Re/ Testimony Review; Call with Kam Re/ Testimony Review; Edit draft of Ken Baker testimony presentation | 12/10/2021 | 8.00 | 275.00 | 2,200.00 | |
| 47785 | Shah, Alay<br>Edit draft of Ken Baker testimony presentation; Call with Counsel Re/ Ken Baker Testimony Presentation | 12/11/2021 | 8.00 | 275.00 | 2,200.00 | |
| 47785 | Shah, Alay<br>Meeting with Ken Re/ Testimony slide discussions; Meeting with client and counsel Re/ other completion cost damages; Edit Baker Testimony slides | 12/12/2021 | 8.00 | 275.00 | 2,200.00 | |
| 47785 | Shah, Alay<br>Continue - Edit Baker Testimony Slides; Meeting with KB Re/ Testimony slides; Call with JS Re/ Architectural damages; Review Arbitration Transcripts for Jeff Good testimony | 12/13/2021 | 10.00 | 275.00 | 2,750.00 | |
| 47785 | Shah, Alay<br>Consolidate Baker Testimony Slides; Meeting with KB Re/ Testimony slides; Meeting with counsel Re/ Expert Testimony; Create Baker testimony outline | 12/14/2021 | 16.00 | 275.00 | 4,400.00 | |
| 47785 | Shah, Alay<br>Continue - Consolidate Baker Testimony Slides; Continue - Baker testimony outline; Meeting with KB Re/ Testimony slides; Meeting with counsel Re/ Expert Testimony; Create Baker Testimony Exhibit List | 12/15/2021 | 16.00 | 275.00 | 4,400.00 | |
| 47785 | Shah, Alay<br>Continue - Consolidate Baker Testimony Slides; Continue - Baker testimony outline; Edit Baker Testimony Exhibit List; Meeting with KB Re/ Testimony slides; Meeting with counsel Re/ Expert Testimony | 12/16/2021 | 13.00 | 275.00 | 3,575.00 | |
| 47785 | Shah, Alay<br>Continue - Consolidate Baker Testimony Slides; Continue - Baker testimony outline; Edit Baker Testimony Exhibit List; Meeting with KB Re/ Testimony slides; Meeting with counsel Re/ Expert Testimony | 12/17/2021 | 9.00 | 275.00 | 2,475.00 | |
| 47785 | Shah, Alay<br>Meeting with counsel Re/ Baker Testimony | 12/18/2021 | 6.00 | 275.00 | 1,650.00 | |
| Associate Consultant | | | | | | |
| 48307 | Patel, Hirenkumar<br>Work on draft summary for Ian Bitterlin Claims and Payments | 12/1/2021 | 13.50 | 275.00 | 3,712.50 | |





CONFIDENTIAL

| Project | ESF-03382.02 | SVO Payor-Tech Svcs Experts | | | Invoice | 0000017 |
|---|---|---|---|---|---|---|
| 48307 | Patel, Hirenkumar<br>Work on draft summary spreadsheet for Ian Bitterlin, Ken Baker and Gerald Hartford Claims and Payments | 12/2/2021 | 8.00 | 275.00 | 2,200.00 | |
| 48307 | Patel, Hirenkumar<br>Work on draft summary spreadsheet for Ian Bitterlin, Ken Baker and Gerald Hartford Claims and Payments. Prepare final claims and payments package for Jeff Smith. Work on Jeff's presentation. | 12/3/2021 | 9.00 | 275.00 | 2,475.00 | |
| 48307 | Patel, Hirenkumar<br>Work on Gerarld and Jeff's presentation. | 12/6/2021 | 6.00 | 275.00 | 1,650.00 | |
| 48307 | Patel, Hirenkumar<br>Internal Coordination Call. Create SVO direct testimony outline for Gerald Hartford. Work on Gerald's Presentation. | 12/7/2021 | 10.00 | 275.00 | 2,750.00 | |
| 48307 | Patel, Hirenkumar<br>Complete SVO direct testimony outline for Gerald Hartford. Work on Gerald's Presentation. | 12/8/2021 | 8.00 | 275.00 | 2,200.00 | |
| 48307 | Patel, Hirenkumar<br>Finalized Jeff's presentation for his arbitration testimony. | 12/9/2021 | 14.00 | 275.00 | 3,850.00 | |
| 48307 | Patel, Hirenkumar<br>Internal Coordination call. Made some last minutes changes to Jeff's presentation. Work on Gerald's Presentation. | 12/10/2021 | 8.00 | 275.00 | 2,200.00 | |
| 48307 | Patel, Hirenkumar<br>Prepare Architectural package for 12 items for Jeff's testimony. Create Kam's direct testimony outline. Coordination call with Kam and Julee. | 12/12/2021 | 15.00 | 275.00 | 4,125.00 | |
| 48307 | Patel, Hirenkumar<br>Work on Kam's direct testimony outline. Search relativity for the documents requested by Jeff. Work on Jerry's presentation. | 12/13/2021 | 8.00 | 275.00 | 2,200.00 | |
| 48307 | Patel, Hirenkumar<br>Internal Coordination Call. Create Ken Baker's PPT exhibit number spreadsheet. Work on Ken's presentation. | 12/14/2021 | 8.00 | 275.00 | 2,200.00 | |
| 48307 | Patel, Hirenkumar<br>Work on Ken Baker's PPT exhibit number spreadsheet. Work on Ken's presentation. | 12/15/2021 | 10.00 | 275.00 | 2,750.00 | |
| 48307 | Patel, Hirenkumar<br>Finalize Ken Baker's PPT exhibit number spreadsheet. Finalize Ken's presentation. | 12/16/2021 | 10.00 | 275.00 | 2,750.00 | |
| 48307 | Patel, Hirenkumar<br>Internal coordination call. Prepare timeline for mechanical, architectural, other invoices. | 12/17/2021 | 2.00 | 275.00 | 550.00 | |
| 48307 | Patel, Hirenkumar<br>Prepare timeline for mechanical, architectural, other invoices. | 12/18/2021 | 2.00 | 275.00 | 550.00 | |
| | Totals | | 609.25 | | 188,521.25 | |
| | **Total Labor** | | | | | **188,521.25** |
| | | | | | **Total this Segment** | **US$188,521.25** |
| | | | | | **Total this Project** | **US$188,521.25** |
| | | | | | **Total this Report** | **US$188,521.25** |





CONFIDENTIAL

# EXHIBIT "8"

Prime Data Centers
620 Coolidge Dr. Ste 185
Folsom, CA 95630

Tyson & Mendes, LLP
5661 La Jolla Boulevard
La Jolla, CA 92037

November 22, 2021

Dear Ms. De LaRosa,

Re: Payment of September Invoice #81521

Please find enclosed a check for the payment for the September 28, 2021, billing, which is made under protest. As previously stated, there are disagreements concerning the billings for these services, which are to be discussed later. All of our rights are reserved.

Thank you

Jenny Przygrodzka
Finance Director

THE RED THERMO SECURED "SP" LOGO IN THE LOWER CORNER OF THIS CHECK MUST FADE TEMPORARILY WHEN WARMED BY TOUCH OR FRICTION. SEE BACK FOR ADDITIONAL FEATURES

1177

XTREAM DATA CENTERS CORP
5170 GOLDEN FOOTHILL PARKWAY
EL DORADO HILLS, CA 95762

DATE Nov 22, 2021

11-24/1210

$ 15,462.00

PAY TO THE ORDER OF Tyson & Mendes LLP

Fifteen thousand four hundred sixty two dollars and 00/100 only DOLLARS

WELLS FARGO Wells Fargo Bank, N.A.

MEMO Inv # 81521

[redacted] [redacted]

SUPERIOR PRESS · 888-590-7998 JB-3287162

MERCHANTS bank of commerce

Good Morning, Jennifer Przygrodzka

Single Transactions Recurring Transactions

| Created date | Status | Transaction Type | Account | Amount |
|---|---|---|---|---|
| 9/13/2021 | Authorized | Domestic Wire - Tracking ID: 1327737 | Business Select Checking [redacted] | [redacted] |

| | |
|---|---|
| **Tracking ID:** | 1327737 |
| **Created:** | 09/13/2021 11:19 AM |
| **Created By:** | Jennifer Przygrodzka |
| **Authorized:** | 09/13/2021 11:20 AM |
| **Authorized By:** | Jennifer Przygrodzka |
| **Will process On:** | 09/13/2021 |
| **From Account:** | Business Select Checking [redacted] |
| **To Account:** | [redacted] |
| **To Account Type:** | Checking |
| **Originator Wire Header:** | Prime Data Centers |
| **Message to Beneficiary:** | Re invoice #78418 |
| **Amount:** | [redacted] |
| **Recipient Wire Name:** | Tyson & Mendes LLP |
| **Beneficiary FI Routing Number:** | 021001088 |
| **Beneficiary FI Name:** | HSBC Bank USA. N.A. |
| **Beneficiary FI Address 1:** | 452 Fifth Avenue |
| **Beneficiary FI City:** | new york |
| **Beneficiary FI State:** | NY |
| **Beneficiary FI ZIP:** | 10018 |

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID: [redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 01/06/2021
**Invoice Number:** 69624

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 01/06/2021 - 01/06/2021 |

**Professional Fees**

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 01/06/2021 | ADM | Retainer Fee | 0.00 | 0.00 | 10,000.00 |
| | | | Sub-total Fees: | | $10,000.00 |

| | |
|---|---|
| **Total Fees:** | $10,000.00 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$10,000.00** |

SVON 000214

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO 
CLAIM NO: CGL325269

**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**



CONFIDENTIAL

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID: [redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 04/28/2021
**Invoice Number:** 74700

**20-2453 / Liebert International v. SVO Building One, LLC**

| | |
|---|---|
| **CASE:** | Liebert International v. SVO Building One, LLC |
| **CASE NO:** | 03-18-0003-1381 |
| **OUR FILE NO:** | 20-2453 |

| **Professional Fees** | | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| 04/16/2021 DF | Retainer deposit | 0.00 | 0.00 | 325,000.00 |
| | | Sub-total Fees: | | $325,000.00 |

| | |
|---|---|
| **Total Fees:** | $325,000.00 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$325,000.00** |



CONFIDENTIAL

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID: [redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 03/31/2021
**Invoice Number:** 73467

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 02/16/2021 - 02/28/2021 |

**Professional Fees**

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 02/16/2021 | DF | Telephone call with client SVO contact, Ulrich Pelz [redacted] | 0.20 | 295.00 | 59.00 |
| 02/16/2021 | DF | Review and analysis of decelerations of wittiness Jeff Good submitted in Delaware Federal action regarding further preparation for deposition of wittiness | 0.50 | 295.00 | 147.50 |
| 02/16/2021 | DF | Review regarding results of further expert conference call regarding damages defenses and damages work up related issues | 0.30 | 295.00 | 88.50 |

Sub-total Fees: $295.00

**Rate Summary**

| | | | |
|---|---|---|---|
| David M. Frishman | Partner | 1.00 hours at $295.00/hr | 295.00 |
| | Total hours: | 1.00 | |

**Expenses**

| Date | Description | Units | Price | Amount |
|---|---|---|---|---|
| 02/01/2021 | Fees Incurred for Services Rendered in January 2021 via Shayan Sorooshian (Invoice No. 02.01.2021) [Approved by Ulrich Pelz] | 1.00 | 5,200.00 | 5,200.00 |

Sub-total Expenses: $5,200.00

**Trust Account**

| | | |
|---|---|---|
| | Beginning Balance: | $10,000.00 |
| 03/02/2021 | | (4,926.50) |
| | Ending Balance: | $5,073.50 |



CONFIDENTIAL

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



Trust Balance of $5,073.50 applied to invoice
Remaining balance due **$421.50**

| | |
|---|---|
| **Total Fees:** | $295.00 |
| **Total Expenses:** | $5,200.00 |
| **Total Current Billing:** | **$5,495.00** |

**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**

Shayan Sorooshian
325 Tuscany Court
Danville CA, 94506

February 1, 2021

**Re: Vertiv Corp. vs SVO Building One, LLC; Invoice Services January 2020**

Dear David, please find below the invoice for the Services rendered during January 1, - January 31, 2020.

| Date | Description | Time | Rate | Amount |
|---|---|---|---|---|
| 1/4/21 | Information Technology Department Meeting and Review of Erin Philips Emails | 4 | 50 | 200 |
| 1/5/21 | Meeting with Ulrich [redacted] | 8 | 50 | 400 |
| 1/6/21 | Meeting with Jamie | 1 | 50 | 50 |
| 1/7/21 | Meeting with Jamie and Ulrich, [redacted] | 8 | 50 | 400 |
| 1/8/21 | Meeting with Jamie and Ulrich, [redacted], Reviewing Privilege keyword emails | 8 | 50 | 400 |
| 1/9/21 | Looked at Privileged documents Vertiv Production | 4 | 50 | 200 |
| 1/10/21 | Envise Custodian analysis | 4 | 50 | 200 |
| 1/12/21 | Meeting with Ullrich and Custodian [redacted] | 2 | 50 | 100 |
| 1/13/21 | Helped With Privilege Docs and Meeting with Ulrich | 4 | 50 | 200 |
| 1/14/21 | Weeks Depo Prep | 4 | 50 | 200 |
| 1/15/21 | All Subcontractors Document Production | 2 | 50 | 100 |
| 1/16/21 | Weeks DEPO Review | 8 | 50 | 400 |
| 1/17/21 | Weeks DEPO Review | 8 | 50 | 400 |

| | | | | |
|---|---|---|---|---|
| 1/18/21 | Weeks DEPO Review | 8 | 50 | 400 |
| 1/19/21 | Weeks DEPO Review | 8 | 50 | 400 |
| 1/20/21 | Weeks DEPO Review | 8 | 50 | 400 |
| 1/22/21 | Checking Withheld Docs | 5 | 50 | 250 |
| 1/23/21 | Salute Documents | 2 | 50 | 100 |
| 1/24/21 | DPR Production | 1 | 50 | 50 |
| 1/26/21 | Third Party Productions and DPR Drywall Documents | 3 | 50 | 150 |
| 1/27/21 | Meeting | 1 | 50 | 50 |
| 1/28/21 | Meeting with Ulrich [redacted] | 3 | 50 | 150 |
| **Total Hours** | | 104 | | **$ 5200** |

Sincerely,

Shayan Sorooshian

Address: 325 Tuscany Court. Danville CA, 94506
Bank details: Account Number : [redacted] Routing Number: 322271627

SVON 000220

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID: [redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 04/29/2021
**Invoice Number:** 74810

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 03/03/2021 - 03/31/2021 |

**Professional Fees**

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 03/03/2021 | CNM | Review and analyze change order notice #1-10 in light of damage calculation for Vertiv | 1.80 | 295.00 | 531.00 |
| 03/17/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 03/18/2021 | DF | Prepare for conference call with HKA damages experts concerning affirmative claims of SVO | 0.40 | 295.00 | 118.00 |
| 03/19/2021 | DF | Attend video conference meeting with SVO litigation team (Partner David Frishman and Julee Fritsch), client SVO contact Ulrich Pelz, and various HKA damage expert team members, including lead expert Ken Baker, regarding [redacted] | 1.20 | 295.00 | 354.00 |
| 03/19/2021 | JMF | Attend video conference meeting with SVO litigation team (Partner David Frishman and Julee Fritsch), client SVO contact Ulrich Pelz, and various HKA damage expert team members, including lead expert Ken Baker, regarding [redacted] | 1.20 | 295.00 | 354.00 |
| 03/21/2021 | DF | [redacted] ssions and thoughts of evidence in support of claim of such conduct | 0.30 | 295.00 | 88.50 |
| 03/23/2021 | DF | Review email from HKA damages expert Gary Liddicoat regarding HKA damages records files | 0.10 | 295.00 | 29.50 |
| 03/23/2021 | DF | Limited review of HKA damages expert files regarding completeness and quality of records in possession of expert | 0.60 | 295.00 | 177.00 |



CONFIDENTIAL

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



| | | | | | |
|---|---|---|---|---|---|
| 03/30/2021 | BJB | Review and analyze Krechuniak v. Noorzoy as to liquidated damages on willful and gross negligence | 0.70 | 295.00 | 206.50 |

Sub-total Fees: $1,888.00

**Rate Summary**

| | | | |
|---|---|---|---|
| Bonnie J. Bennett | Senior Counsel | 0.70 hours at $295.00/hr | 206.50 |
| David M. Frishman | Partner | 2.70 hours at $295.00/hr | 796.50 |
| Julee M. Fritsch | Senior Counsel | 1.20 hours at $295.00/hr | 354.00 |
| Cindy N. Mader | Senior Counsel | 1.80 hours at $295.00/hr | 531.00 |
| Total hours: | | 6.40 | |

**Trust Account**

| | | |
|---|---|---|
| | Beginning Balance: | $5,073.50 |
| 04/01/2021 | | (5,073.50) |
| | Ending Balance: | $0.00 |

| | |
|---|---|
| **Total Fees:** | $1,888.00 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$1,888.00** |

**Statement of Account**

| Date | Invoice No | Invoice Total | Payments | Balance |
|---|---|---|---|---|
| 03/31/2021 | 73467 | 5,495.00 | 5,073.50 | 421.50 |
| 04/29/2021 | 74810 | 1,888.00 | 0.00 | 1,888.00 |
| **Balance Due** | | | | **2,309.50** |

SVON 000222

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO

CLAIM NO: CGL325269



**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID:[redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 07/07/2021
**Invoice Number:** 77540

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 05/03/2021 - 05/31/2021 |

**Professional Fees**

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 05/03/2021 | JMF | Review SVO financial documents from 2021 for supplemental document production and for experts review | 0.70 | 295.00 | 206.50 |
| 05/03/2021 | JMF | Telephone call with damages expert Dave Bones regarding status of damages documents | 0.30 | 295.00 | 88.50 |
| 05/03/2021 | JMF | Revise Ulrich's [redacted] workup [redacted] | 1.30 | 295.00 | 383.50 |
| 05/03/2021 | ALR | Review and analysis of work product spreadsheets of SVO financials created by SVO to delete any attorney notes and provide to experts at HKA for use in calculating damages owed to SVO (6 spreadsheets with roughly 8 tabs each. Approx 45 pages of data reviewed) | 0.80 | 225.00 | 180.00 |
| 05/04/2021 | JMF | Review SVO's 28 financial documents from 2018 - 2021 to be sent to HKA damages defense expert Dave Bones, Gary Liddicoat and Julia Alcarez (56 pages) | 1.40 | 295.00 | 413.00 |
| 05/04/2021 | ALR | Review and analysis of damages documents to determine which documents should be produced to David Bones of HKA for his expert report (40 documents reviewed with roughly 150 pages) | 1.60 | 225.00 | 360.00 |
| 05/04/2021 | ALR | Review and analysis of damages documents to determine which documents should be produced to David Bones of HKA for his expert report (45 documents reviewed with roughly 130 pages) | 1.50 | 225.00 | 337.50 |
| 05/04/2021 | ALR | Review and analysis of damages documents to determine which documents should be produced to David Bones of HKA for his expert report (30 documents reviewed with roughly 120 pages) | 1.40 | 225.00 | 315.00 |
| 05/04/2021 | ALR | Exchanged 3 emails with client Ulrich Pelz [redacted] | 0.30 | 225.00 | 67.50 |

| | | | | | |
|---|---|---|---|---|---|
| 05/04/2021 | ALR | Review and analysis of SVO payroll statements from 2020 to current sent by SVO to determine whether the numbers and statements on the documents were useful to HKA experts David Bones and did not include any sensitive information that would require redactions (such as social security or bank account numbers) (35 documents with 180 pages) | 2.10 | 225.00 | 472.50 |
| 05/05/2021 | JMF | Review SVO's payroll statements for purposes of damages experts' opinions regarding delay and scheduling damages | 1.30 | 295.00 | 383.50 |
| 05/06/2021 | EAK | Extensive document review regarding expert witness documents and producing invoices and purchase orders to experts regarding SVO damages claims | 2.20 | 225.00 | 495.00 |
| 05/06/2021 | EAK | Extensive document review regarding expert witness documents and producing invoices and purchase orders to experts regarding SVO damages claims | 2.40 | 225.00 | 540.00 |
| 05/06/2021 | EAK | Extensive document review regarding expert witness documents and producing invoices and purchase orders to experts regarding SVO damages claims | 1.10 | 225.00 | 247.50 |
| 05/06/2021 | JMF | Review and analyze SVO's quarterly reports for 2017 for the damages experts' opinions (41 pages) | 0.90 | 295.00 | 265.50 |
| 05/06/2021 | JMF | Review and analyze SVO's quarterly reports for 2018 for the damages experts' opinions (64 pages) | 1.30 | 295.00 | 383.50 |
| 05/06/2021 | JMF | Review and analyze SVO's quarterly reports for 2019 for the damages experts' opinions (43 pages) | 0.80 | 295.00 | 236.00 |
| 05/07/2021 | EAK | Extensive document review regarding expert witness documents and producing invoices and purchase orders to experts regarding SVO damages claims | 2.10 | 225.00 | 472.50 |
| 05/24/2021 | JMF | Review on relativity financial documents for March 2021 for purposes of supporting damage opinions (approximately 60 pages) | 1.20 | 295.00 | 354.00 |
| 05/25/2021 | JMF | Draft email to expert Dave Bones regarding status of arbitration dates | 0.10 | 295.00 | 29.50 |
| 05/26/2021 | JMF | Draft email to expert Dave Bones regarding March 2021 financials | 0.10 | 295.00 | 29.50 |
| 05/26/2021 | JMF | Review SVO's filed Cross-Claims for purposes of finding documentation to support payments to Vertiv for expert report | 0.30 | 295.00 | 88.50 |
| 05/26/2021 | JMF | Review SVO accounts receivable and bank records on relativity for purposes of finding documentation to support payments to Vertiv for expert report (approximately 75 pages) | 1.40 | 295.00 | 413.00 |
| 05/27/2021 | DF | Review and analysis of status of SVO damages work up expert report of Dave Bones and related issues | 2.40 | 295.00 | 708.00 |
| | | | | Sub-total Fees: | $7,470.00 |

**Rate Summary**

| | | | | |
|---|---|---|---|---|
| David M. Frishman | Partner | 2.40 | hours at $295.00/hr | 708.00 |
| Julee M. Fritsch | Senior Counsel | 11.10 | hours at $295.00/hr | 3,274.50 |
| Ethan A. Kraft | Associate | 7.80 | hours at $225.00/hr | 1,755.00 |
| Alexander L. Randolph | Associate | 7.70 | hours at $225.00/hr | 1,732.50 |
| | Total hours: | 29.00 | | |

**Trust Account** Beginning Balance: $0.00

SVON 000225

CONFIDENTIAL

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



Ending Balance: $0.00

| | |
|---|---|
| **Total Fees:** | $7,470.00 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$7,470.00** |

**Statement of Account**

| Date | Invoice No | Invoice Total | Payments | Balance |
|---|---|---|---|---|
| 07/07/2021 | 77540 | 7,470.00 | 0.00 | 7,470.00 |
| **Balance Due** | | | | **2,396.50** |

**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**



CONFIDENTIAL

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID [redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 08/30/2021
**Invoice Number:** 80272

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 07/01/2021 - 07/31/2021 |

## Professional Fees

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 07/01/2021 | RPD | Telephone conference with David Bones and Julia Alcaraz of HKA regarding deposition transcript and damages calculations for consequential versus delay damages | 0.40 | 295.00 | 118.00 |
| 07/01/2021 | RPD | Further revision of Statement of damages update based on Bones' calculations | 0.70 | 295.00 | 206.50 |
| 07/02/2021 | JMF | Review SVO's MMCHR invoices for HKA standard of care expert's possible construction costs | 0.70 | 295.00 | 206.50 |
| 07/02/2021 | JMF | Review SVO's health benefits invoices for HKA standard of care expert's possible construction costs | 0.60 | 295.00 | 177.00 |
| 07/02/2021 | JMF | Edit draft of SVO's opening brief for purposes of reviewing damages sections | 1.60 | 295.00 | 472.00 |
| 07/03/2021 | JMF | Draft commercial damages section of the arbitration brief | 3.40 | 295.00 | 1,003.00 |
| 07/04/2021 | JMF | Draft commercial damages for the arbitration brief | 0.30 | 295.00 | 88.50 |
| 07/06/2021 | JMF | Continue to draft commercial damages section of arbitration brief | 6.30 | 295.00 | 1,858.50 |
| 07/06/2021 | DF | Limited review of initial draft outline regarding client SVO affirmative claims | 0.30 | 295.00 | 88.50 |
| 07/07/2021 | JMF | Continue to draft Commercial Damages section of the arbitration brief | 5.30 | 295.00 | 1,563.50 |
| 07/07/2021 | JMF | Telephone call with Ken Baker regarding the status of the supporting documentation for invoices | 0.40 | 295.00 | 118.00 |
| 07/07/2021 | JMF | Telephone call with HKA's Hiren Patel regarding status of obtaining invoices for defect damages for Ken Baker's testimony | 0.30 | 295.00 | 88.50 |
| 07/07/2021 | JMF | Telephone call with Alay Shay regarding status of invoices and estimates tc support the defect damages in Ken Baker's report | 0.30 | 295.00 | 88.50 |
| 07/07/2021 | JMF | Telephone call with Alay Shah and Hiren Patel regarding documentation to support the electrical defect damages | 0.40 | 295.00 | 118.00 |



CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 07/08/2021 | JMF | Review Vertiv's counsel's email regarding the scheduling of commercial damage expert Nathan Moeder | 0.20 | 295.00 | 59.00 |
| 07/08/2021 | JMF | Draft email to Vertiv's counsel regarding late deposition date of expert Nathan Moeder | 0.40 | 295.00 | 118.00 |
| 07/08/2021 | JMF | Draft argument for brief for July 9, 2021 arbitration hearing | 0.80 | 295.00 | 236.00 |
| 07/08/2021 | JMF | Draft Commercial Damages section of Arbitration Brief | 8.50 | 295.00 | 2,507.50 |
| 07/08/2021 | DF | Review regarding ongoing dispute with counsel for Vertiv concerning deposition of Vertiv commercial damages expert Moeder and strategy to obtain report and deposition of expert earlier than proposed dates by Vertiv | 0.20 | 295.00 | 59.00 |
| 07/11/2021 | ALR | Call with TM attorneys and HKA expert Ken Baker and Alay Shah discussing other invoices section of Ken's report and potentially moving documents into a supplemental report from David Bones | 1.50 | 225.00 | 337.50 |
| 07/11/2021 | ALR | Attend call with HKA expert David Bones to discuss documents moving from Ken Baker's report into David Bones' supplemental report | 0.80 | 225.00 | 180.00 |
| 07/11/2021 | JMF | Telephone conference with HKA Expert David Bones and Gary Liddicoat, Ulrich Pelz and TM attorney Alexander Randolph regarding [redacted] | 1.30 | 295.00 | 383.50 |
| 07/11/2021 | JMF | Continue to draft affirmative defense arbitration brief | 5.30 | 295.00 | 1,563.50 |
| 07/11/2021 | JMF | Draft email to David Bones regarding Vertiv's damages experts' scopes | 0.40 | 295.00 | 118.00 |
| 07/12/2021 | JMF | Telephone call with HKA expert Gary Liddicoat and Ulrich Pelz regarding [redacted] | 0.70 | 295.00 | 206.50 |
| 07/12/2021 | DF | Telephone conference with HKA experts Ken Baker and Alay Shah and Ulrich Pelz and TM attorneys David Frishman and Alexander Randolph regarding [redacted] | 0.50 | 295.00 | 147.50 |
| 07/14/2021 | JMF | Continue to draft damages section of the arbitration brief | 2.30 | 295.00 | 678.50 |
| 07/16/2021 | JMF | Attend telephone conference with HKA experts David Bones, Ken Baker and Gary Liddicoat regarding the operational costs that possibly would go into Dave Bones' report | 0.90 | 295.00 | 265.50 |
| 07/16/2021 | JMF | Review HKA Expert David Bones' operational costs monthly chart for 99 vendors | 0.70 | 295.00 | 206.50 |
| 07/16/2021 | NAK | Review and analyze deposition of expert witness Kamyar Beihagi, pages 82 -92, for purposes of understanding and evaluating substantive testimony in preparation for drafting page-line summary of the testimony for purposes of efficient review during and for trial | 0.60 | 225.00 | 135.00 |
| 07/16/2021 | DF | Email to commercial damages expert David Bones regarding status of addendum to damages report and related issues | 0.10 | 295.00 | 29.50 |
| 07/17/2021 | DF | Review file, including summary of prior meeting with HKA experts David Bones and Ken Baker regarding potential addition of operational costs to David Bones' commercial damages report in preparation of conference cal meeting with HKA expert David Bones and client SVO contact, Ulrich Pelz | 0.30 | 295.00 | 88.50 |
| 07/18/2021 | JMF | Telephone conference with Ulrich Pelz and HKA experts David Bones, Gary Liddicoat and TM attorney David Frishman regarding [redacted] | 0.70 | 295.00 | 206.50 |

| | | | | | |
|---|---|---|---|---|---|
| 07/18/2021 | DF | Attend conference call meeting with SVO client contact, Ulrich Pelz, TM SVO litigation team member Julee Fritsch and HKA experts David Bones, and Gary Liddicoat and regarding [redacted] | 0.70 | 295.00 | 206.50 |
| 07/18/2021 | DF | Review, analysis and annotation of draft SVO opposition to Vertiv's motion in limine no. 3 to exclude evidence related to alleged new damage claim by SVO | 0.30 | 295.00 | 88.50 |
| 07/19/2021 | DF | Email to client SVO contacts, Ulrich Pelz and Nicholas Lagg regarding [redacted] | 0.30 | 295.00 | 88.50 |
| 07/20/2021 | DF | Email to expert Ian Bitterlin regarding potential new SVO affirmative claims and related issues | 0.10 | 295.00 | 29.50 |
| 07/21/2021 | JMF | Review HKA expert David Bones' comments and questions regarding lost profits and operational costs made in Vertiv expert Bob Taylor's report | 1.80 | 295.00 | 531.00 |
| 07/21/2021 | DF | Review regarding status of client providing electrical damages information and supporting documentation concerning expert report of Ian Bitterlin and related expert opinions | 0.10 | 295.00 | 29.50 |
| 07/21/2021 | DF | Email to expert Ian Bitterlin regarding new SVO damage claims and related issues | 0.10 | 295.00 | 29.50 |
| 07/21/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 07/22/2021 | DF | Email exchange with expert Ian Bitterlin regarding potential new damages claims and related issues | 0.10 | 295.00 | 29.50 |
| 07/26/2021 | JMF | Revise damages sections for Opening Brief | 3.60 | 295.00 | 1,062.00 |
| 07/29/2021 | JMF | Telephone call with HKA expert David Bones regarding status of Vertiv's commercial damages expert | 0.30 | 295.00 | 88.50 |
| 07/29/2021 | DF | Review email from commercial damages expert David Bones regarding arbitration and budget related issues | 0.10 | 295.00 | 29.50 |
| 07/29/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 07/29/2021 | DF | Email to client SVO contact Ulrich Pelz [redacted] | 0.10 | 295.00 | 29.50 |
| 07/29/2021 | DF | Telephone call with SVO team member Julee Fritsch and HKA commercial damages expert David Bones regarding status of Vertiv's commercial damages expert Moder and realted issues concerning deposition strategy, budget related issues, including projected further budget and arbitration timing issues in light of bifurcation | 0.30 | 295.00 | 88.50 |
| | | | | Sub-total Fees: | $16,110.50 |

**Rate Summary**

| | | | | |
|---|---|---|---|---|
| Richard P. Dieffenbach | Senior Counsel | 1.10 | hours at $295.00/hr | 324.50 |
| David M. Frishman | Partner | 3.80 | hours at $295.00/hr | 1,121.00 |
| Julee M. Fritsch | Senior Counsel | 47.50 | hours at $295.00/hr | 14,012.50 |
| Nareg A. Kourouyan | Associate | 0.60 | hours at $225.00/hr | 135.00 |
| Alexander L. Randolph | Associate | 2.30 | hours at $225.00/hr | 517.50 |
| | Total hours: | 55.30 | | |

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



**Trust Account**

| | |
|---|---|
| Beginning Balance: | $0.00 |
| Ending Balance: | $0.00 |

| | |
|---|---|
| **Total Fees:** | $16,110.50 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$16,110.50** |

**Statement of Account**

| Date | Invoice No | Invoice Total | Payments | Balance |
|---|---|---|---|---|
| 07/26/2021 | 78418 | 16,756.00 | 0.00 | 16,756.00 |
| 08/30/2021 | 80272 | 16,110.50 | 0.00 | 16,110.50 |
| **Balance Due** | | | | **27,793.00** |

**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**



CONFIDENTIAL

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID:[redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 07/26/2021
**Invoice Number:** 78418

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 06/01/2021 - 06/30/2021 |

**Professional Fees**

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 06/01/2021 | JMF | Telephone call with damages expert Julia Alcarez at HKA regarding documents needed, issues with particular line items, and invoices that need to be analyzed | 0.60 | 295.00 | 177.00 |
| 06/04/2021 | JMF | Review draft Affirmative Damages report | 1.70 | 295.00 | 501.50 |
| 06/06/2021 | JMF | Draft email to HKA regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 06/06/2021 | JMF | Review Ulrich Pelz's [redacted] | 2.70 | 295.00 | 796.50 |
| 06/07/2021 | JMF | Draft email to Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 06/07/2021 | DF | Attend telephone conference strategy meeting with Julee Fritsch, Ulrich Pelz and HKA experts David Bones, Julia Alcarez, and Alay Shah regarding [redacted] | 0.80 | 295.00 | 236.00 |
| 06/07/2021 | JMF | Attend telephone conference strategy meeting with David Frishman, Ulrich Pelz and HKA experts David Bones, Julia Alcarez, and Alay Shah regarding [redacted] | 0.80 | 295.00 | 236.00 |
| 06/08/2021 | DF | Attend damages report analysis strategy conference meeting with HKA damages expert team, TM SVO litigation team member Alex Randolph, and client SVO contact Nicholas Lagg regarding [redacted] | 1.00 | 295.00 | 295.00 |
| 06/08/2021 | DF | Review email exchange between HKA damages expert team and SVO client contact, Nicholas Lagg regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 06/08/2021 | JMF | Telephone conference with Ulrich Pelz and HKA experts David Bones, Julia Alcarez regarding [redacted] | 1.00 | 295.00 | 295.00 |
| 06/08/2021 | JMF | Review SVO's bond documents for commercial damages expert | 0.30 | 295.00 | 88.50 |



CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 06/10/2021 | JMF | Draft email to HKA Julia Alcarez regarding prejudgment interest for expert damages report | 0.30 | 295.00 | 88.50 |
| 06/11/2021 | DF | Limited partial review and analysis of further draft report of HKA damages expert David Bones regarding completeness, supplementing needs and related issues | 0.50 | 295.00 | 147.50 |
| 06/13/2021 | JMF | Telephone conference with David Frishman, Alexander Randulph, Ulrich Pelz and HKA experts David Bones, Gary Liddicoat, and Julia Alcarez regarding [redacted] | 1.50 | 295.00 | 442.50 |
| 06/13/2021 | JMF | Draft email to expert David Bones regarding relabeling and restructuring damages report in light of LTSA | 0.50 | 295.00 | 147.50 |
| 06/13/2021 | DF | Telephone conference with Julee Fritsch, Alexander Randolph, Ulrich Pelz and HKA experts David Bones, Gary Liddicoat and Julia Alcarez regarding [redacted] | 1.50 | 295.00 | 442.50 |
| 06/14/2021 | JMF | Telephone conference with HKA experts David Bones, Gary Liddicoat and Julia Alcarez regarding restructuring and relabeling the damages report | 0.60 | 295.00 | 177.00 |
| 06/14/2021 | JMF | Telephone call with David Bones regarding status of affirmative defense damages report | 0.30 | 295.00 | 88.50 |
| 06/14/2021 | RPD | Review expert damages and penalty report from David Bones | 0.40 | 295.00 | 118.00 |
| 06/14/2021 | JMF | Review final affirmative defenses damages expert report and documents relied upon | 0.80 | 295.00 | 236.00 |
| 06/14/2021 | JMF | Review and revise damage expert's report regarding consequential damages | 0.80 | 295.00 | 236.00 |
| 06/16/2021 | JMF | Review David Bones' final affirmative defense damages report in preparation for pre-deposition meeting | 2.20 | 295.00 | 649.00 |
| 06/17/2021 | JMF | Telephone conference with David Frishman and HKA experts David Bones, Gary Liddicoat and Julia Alcarez | 1.70 | 295.00 | 501.50 |
| 06/17/2021 | JMF | Review affirmative damages expert report for pre-deposition meeting with HKA expert David Bones | 0.80 | 295.00 | 236.00 |
| 06/17/2021 | JMF | Draft email to Marco Venero at SVO regarding [redacted] | 0.20 | 295.00 | 59.00 |
| 06/17/2021 | JMF | Draft email to Nicholas Laag regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 06/17/2021 | JMF | Review Nicholas Laag's email regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 06/17/2021 | JMF | Review Vertiv's email regarding invoices for David Bones' defect damages section in his expert report | 0.10 | 295.00 | 29.50 |
| 06/17/2021 | DF | Attend pre-deposition preparation video conference call with TM SVO litigation team member Julee Fritsch and HKA damages team, David Bones, Gary Liddicoat and Julia Alcarez | 1.70 | 295.00 | 501.50 |
| 06/17/2021 | DF | Email to client SVO contact regarding potential error in addendum to report of mechanical engineer report | 0.10 | 295.00 | 29.50 |
| 06/20/2021 | JMF | Travel to Phoenix for the deposition of expert David Bones | 5.50 | 295.00 | 1,622.50 |
| 06/20/2021 | JMF | Review expert David Bones' final report | 0.60 | 295.00 | 177.00 |
| 06/21/2021 | JMF | Travel from deposition of expert David Bones | 6.30 | 295.00 | 1,858.50 |
| 06/21/2021 | JMF | Attend pre-deposition meeting and cancelled deposition of expert David Bones | 3.50 | 295.00 | 1,032.50 |

| | | | | | |
|---|---|---|---|---|---|
| 06/21/2021 | JMF | Telephone call with Vertiv's counsel regarding taking David Bones' deposition off calendar | 0.30 | 295.00 | 88.50 |
| 06/21/2021 | JMF | Review three emails from Vertiv regarding cancelling David Bones' deposition | 0.80 | 295.00 | 236.00 |
| 06/21/2021 | JMF | Draft two emails to Vertiv regarding unilateral cancellation of expert David Bones' deposition | 0.70 | 295.00 | 206.50 |
| 06/21/2021 | JMF | Review 6 page addendum to expert David Bones' report regarding construction costs | 0.40 | 295.00 | 118.00 |
| 06/21/2021 | JMF | Draft two emails to HKA Julia Alcarez regarding the calculations of the construction costs and the second addendum total for the mechanical engineer construction costs | 0.40 | 295.00 | 118.00 |
| 06/21/2021 | JMF | Telephone call with HKA Julia Alcarez regarding the final construction costs calculations for the addendum | 0.20 | 295.00 | 59.00 |
| 06/24/2021 | JMF | Review David Bones' lost rental profit analysis regarding increased operating cost invoices | 0.40 | 295.00 | 118.00 |
| 06/24/2021 | JMF | Telephone call with Ulrich Pelz and David Frishman regarding [redacted] | 0.30 | 295.00 | 88.50 |
| 06/25/2021 | CNM | Review and analyze Rule 6 of the American Arbitration Association ("AAA") Commercial Rules in regards to procedure for party to increase claim amount and/or summary of damages | 0.50 | 295.00 | 147.50 |
| 06/25/2021 | CNM | Review and analyze SVO's statement of damages and updated statement of damages | 0.60 | 295.00 | 177.00 |
| 06/25/2021 | DF | Review AAA Rule 6 and realted issues and strategy concerning potential updating and amending of client SVO statement of damages in light of position of Vertiv concerning potential new claims | 0.30 | 295.00 | 88.50 |
| 06/27/2021 | JMF | Draft email to Dave Bones regarding Statement of Damages | 0.20 | 295.00 | 59.00 |
| 06/28/2021 | JMF | Draft two emails to David Bones regarding Updated Statement of Damages | 0.20 | 295.00 | 59.00 |
| 06/28/2021 | JMF | Telephone conference with Richard Dieffenbach and HKA experts Dave Bones and Gary Liddicoat regarding Second Amended Statement of Damages | 1.10 | 295.00 | 324.50 |
| 06/28/2021 | JMF | Review proposed Second Amended Statement of Damages and total itemized construction defect damages | 0.60 | 295.00 | 177.00 |
| 06/28/2021 | DF | Review regarding amended statement of damages on behalf of client SVO and related issues concerning same, including accounting for all updated damages claims and potential new claims not previously asserted as alleged by Vertiv | 0.30 | 295.00 | 88.50 |
| 06/29/2021 | RPD | Further drafting of Second Amended Statement of Damages utilizing figures from Bones, Baker, Hartford reports | 1.30 | 295.00 | 383.50 |
| 06/29/2021 | RPD | Telephone conference with Alay Shah and Julia Villalobos of HKA regarding information to include in Second Amended Statement of Damages | 0.60 | 295.00 | 177.00 |
| 06/29/2021 | RPD | Further correspondence with David Bones and Gary Liddicoat regarding testimony of Laykin for use in Bones' deposition | 0.20 | 295.00 | 59.00 |
| 06/29/2021 | DF | Review regarding readiness of damages expert David Bones of HKA for deposition and related issues and strategy | 0.30 | 295.00 | 88.50 |
| 06/29/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 06/30/2021 | RPD | Attend and defend deposition of David Bones, financial damages expert | 6.70 | 295.00 | 1,976.50 |

| | | | | | |
|---|---|---|---|---|---|
| 06/30/2021 | JMF | Review damages expert David Bones' billing invoices for production to Vertiv | 0.30 | 295.00 | 88.50 |
| 06/30/2021 | DF | Review regarding results and performance of damages expert David Bones of HKA during deposition and related issues concerning client SVO claimed construction related damages | 0.30 | 295.00 | 88.50 |
| 06/30/2021 | DF | Email to client SVO contact, Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 06/30/2021 | DF | Review and analysis of draft second amended statement of damages on behalf of client SVO and related issues and strategy considerations | 0.20 | 295.00 | 59.00 |
| 06/30/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |

Sub-total Fees: $16,756.00

**Rate Summary**

| | | | | |
|---|---|---|---|---|
| Richard P. Dieffenbach | Senior Counsel | 9.20 | hours at $295.00/hr | 2,714.00 |
| David M. Frishman | Partner | 7.40 | hours at $295.00/hr | 2,183.00 |
| Julee M. Fritsch | Senior Counsel | 39.10 | hours at $295.00/hr | 11,534.50 |
| Cindy N. Mader | Senior Counsel | 1.10 | hours at $295.00/hr | 324.50 |
| | Total hours: | 56.80 | | |

**Trust Account**

Beginning Balance: $0.00

Ending Balance: $0.00

| | |
|---|---|
| **Total Fees:** | $16,756.00 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$16,756.00** |

**Statement of Account**

| Date | Invoice No | Invoice Total | Payments | Balance |
|---|---|---|---|---|
| 07/07/2021 | 77540 | 7,470.00 | 5,073.50 | 2,396.50 |
| 07/26/2021 | 78418 | 16,756.00 | 0.00 | 16,756.00 |
| **Balance Due** | | | | **19,152.50** |

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID [redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 09/28/2021
**Invoice Number:** 81521

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 08/09/2021 - 08/31/2021 |

| **Professional Fees** | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 08/09/2021 | ALR | Review and analysis of Real Time CFO productions looking for documentation of payments from SVO to subcontractors to bolster bank statements as proof of payment (60 documents roughly 180 pages) | 2.10 | 225.00 | 472.50 |
| 08/10/2021 | ALR | Review and analysis of case law and secondary sources regarding proof of payment in construction defect cases for use in drafting a memorandum on the case law of proof of payment (3 secondary sources, 9 cases) | 2.30 | 225.00 | 517.50 |
| 08/10/2021 | ALR | Review and analysis of Real Time CFO productions looking for documentation of payments from SVO to subcontractors to bolster bank statements as proof of payment (85 documents roughly 220 pages) | 2.30 | 225.00 | 517.50 |
| 08/11/2021 | ALR | Review and analysis of Real Time CFO production to compare draw requests with invoices used by HKA Experts (roughly 130 pages) | 2.20 | 225.00 | 495.00 |
| 08/11/2021 | ALR | Review and analysis of Real Time CFO productions looking for documentation of payments from SVO to subcontractors to bolster bank statements as proof of payment (5 documents roughly 240 pages) | 2.10 | 225.00 | 472.50 |
| 08/12/2021 | ALR | Review and analysis of Real Time CFO productions looking for documentation of payments from SVO to subcontractors to bolster bank statements as proof of payment (6 documents roughly 140 pages) | 1.80 | 225.00 | 405.00 |
| 08/12/2021 | ALR | Drafting and revising spreadsheet showing proof of payment of invoices gained from real time CFO documents and draw requests | 2.30 | 225.00 | 517.50 |
| 08/12/2021 | ALR | Drafting and revising spreadsheet showing proof of payment of invoices gained from real time CFO documents and draw requests | 2.10 | 225.00 | 472.50 |
| 08/12/2021 | ALR | Review and analysis of all documents and spreadsheets provided by HKA Experts in order to determine which invoices remained in the final reports of Ken Baker, Jeff Smith, and Gerald Hartford in order to compare these invoices with RTC draw requests | 1.30 | 225.00 | 292.50 |
| 08/13/2021 | DF | Review regarding proof of payment of prior repairs and related issues, including further production of document needs | 0.30 | 295.00 | 88.50 |



CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 08/13/2021 | JMF | Review excel spreadsheet of SVO's construction costs with invoices and proof of payment via bank statements | 0.80 | 295.00 | 236.00 |
| 08/13/2021 | ALR | Review and analysis of SVO supporting documents for affirmative claims for damages including invoices used by HKA as well as COR's and purchase orders in order to compile a master list of all damages claimed by SVO (55 documents roughly 170 pages) | 2.40 | 225.00 | 540.00 |
| 08/13/2021 | ALR | Review and analysis of SVO supporting documents for affirmative claims for damages including invoices used by HKA as well as COR's and purchase orders in order to compile a master list of all damages claimed by SVO (40 documents roughly 210 pages) | 2.20 | 225.00 | 495.00 |
| 08/17/2021 | ALR | Review and analysis of bank statements provided by SVO to attempt to correlate costs and invoices claimed by SVO and HKA Experts with payments from relevant accounts (30 documents roughly 130 pages) | 2.20 | 225.00 | 495.00 |
| 08/17/2021 | ALR | Review and analysis of bank statements provided by SVO to attempt to correlate costs and invoices claimed by SVO and HKA Experts with payments from relevant accounts (25 documents roughly 110 pages) | 1.80 | 225.00 | 405.00 |
| 08/17/2021 | ALR | Review and analysis of bank statements provided by SVO to attempt to correlate costs and invoices claimed by SVO and HKA Experts with payments from relevant accounts (33 documents roughly 175 pages) | 2.30 | 225.00 | 517.50 |
| 08/17/2021 | ALR | Drafting and revising 2 emails to client Ulrich Pelz regarding [redacted] | 0.30 | 225.00 | 67.50 |
| 08/17/2021 | DF | Phase II arbitration preparation, including assessment of needs, strategy, including preparation of outline regarding Phase II arbitration issues concerning proof of damages | 3.00 | 295.00 | 885.00 |
| 08/18/2021 | ALR | Drafting and revising memorandum regarding the status of damage calculations including compiling master spreadsheet of damages, master spreadsheet of estimates given by experts, Swinerton payment application and COR damages, and gathering supporting documents | 1.70 | 225.00 | 382.50 |
| 08/18/2021 | ALR | Review and analysis of Swinerton payment applications to attempt to match payments in RTC draw requests with the individual damage items claimed by Jeff Smith in his architectural report (7 documents roughly 130 pages) | 1.80 | 225.00 | 405.00 |
| 08/18/2021 | ALR | Review and analysis of Swinerton payment applications to attempt to match payments in RTC draw requests with the individual damage items claimed by Jeff Smith in his architectural report (6 documents roughly 115 pages) | 1.60 | 225.00 | 360.00 |
| 08/18/2021 | ALR | Review and analysis of Swinerton payment applications to attempt to match payments in RTC draw requests with the individual damage items claimed by Jeff Smith in his architectural report (5 documents roughly 95 pages) | 1.60 | 225.00 | 360.00 |
| 08/18/2021 | ALR | Review and analysis of Swinerton COR's to attempt to match payments in RTC draw requests with the individual damage items claimed by Jeff Smith in his architectural report (15 documents roughly 80 pages) | 2.10 | 225.00 | 472.50 |
| 08/18/2021 | DF | Email to commercial damages expert David Bones of HKA regarding request for conference call with client concerning HKA invoice and projected future budget | 0.10 | 295.00 | 29.50 |
| 08/18/2021 | JMF | Review excel spreadsheet of SVO's construction costs with corresponding bank statement withdrawals | 0.50 | 295.00 | 147.50 |

| | | | | | |
|---|---|---|---|---|---|
| 08/19/2021 | ALR | Review and analysis of Swinerton payment applications trying to match payments of Swinerton bills with individual tasks claimed as damages against Vertiv by HKA experts (5 documents roughly 85 pages) | 2.20 | 225.00 | 495.00 |
| 08/19/2021 | ALR | Review and analysis of Swinerton payment applications trying to match payments of Swinerton bills with individual tasks claimed as damages against Vertiv by HKA experts (12 documents roughly 150 pages) | 2.30 | 225.00 | 517.50 |
| 08/19/2021 | ALR | Review and analysis of Swinerton payment applications trying to match payments of Swinerton bills with individual tasks claimed as damages against Vertiv by HKA experts (25 documents roughly 170 pages) | 2.70 | 225.00 | 607.50 |
| 08/19/2021 | JMF | Review redacted Prime Data Center, Venture One and SVO's bank statements for proof of payment of construction costs | 0.90 | 295.00 | 265.50 |
| 08/20/2021 | DF | Email to commercial damages expert David Bones of HKA regarding conference call with client concerning budget related issues for expert | 0.10 | 295.00 | 29.50 |
| 08/20/2021 | DF | Review and reply to email from commercial damages expert David Bones of HKA regarding confirmation of conference call for August 21 concerning budget realted questions by client | 0.10 | 295.00 | 29.50 |
| 08/20/2021 | ALR | Review and analysis of documents to prepare for Phase 2 brief in order to defend and rebut Vertiv's claims (75 documents roughly 250 pages) | 2.10 | 225.00 | 472.50 |
| 08/20/2021 | ALR | Review and analysis of Phase 2 brief looking for sections that required citations from documents to search for the documents (25 pages) | 2.40 | 225.00 | 540.00 |
| 08/22/2021 | JMF | Review assessment of invoiced construction costs with proof of payment via RealTime CFOs | 0.60 | 295.00 | 177.00 |
| 08/23/2021 | DF | Attend conference call with client SVO contact Ulrich Pelz, team member Julee Fritsch and commercial damages expert David Bones regarding [redacted] | 0.70 | 295.00 | 206.50 |
| 08/23/2021 | JMF | Telephone conference with Ulrich Pelz, HKA experts David Bones and Gary Liddicoat and TM attorney David Frishman regarding [redacted] | 0.70 | 295.00 | 206.50 |
| 08/23/2021 | JMF | Review accounting transaction payments of construction costs for Prime Data Center, Sacramento Venture One and SVO Building One from 2017-2021 | 0.80 | 295.00 | 236.00 |
| 08/23/2021 | DF | Review email from commercial damages expert David Bones to SVO client contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 08/23/2021 | DF | Review and analysis of Miller v. National American Life Ins. Co. and Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist. California Court of Appeal decisions regarding conflicting contractual damages provisions | 0.40 | 295.00 | 118.00 |
| 08/24/2021 | JMF | Telephone conference with Ulrich Pelz and TM attorney Alex Randolph regarding [redacted] | 0.50 | 295.00 | 147.50 |
| 08/24/2021 | ALR | Drafting and revising spreadsheet of damages statement with matching invoices to show proof of payment for SVO invoices from subcontractors after reviewing the Quickbook statements | 2.20 | 225.00 | 495.00 |
| 08/24/2021 | ALR | Review and analysis of SVO Quickbooks documents to show proof of payment from SVOB1 to subcontractors for invoices (roughly 85 pages) | 1.70 | 225.00 | 382.50 |
| 08/24/2021 | ALR | Telephone conference with Ulrich Pelz and TM attorney Julee Fritsch and Alex Randolph regarding [redacted] | 0.50 | 225.00 | 112.50 |

| | | | | | |
|---|---|---|---|---|---|
| 08/24/2021 | ALR | Review and analysis of SVO Quickbooks documents to show proof of payment from SVOB1 to subcontractors for invoices (roughly 130 pages) | 2.10 | 225.00 | 472.50 |
| 08/25/2021 | DF | Review email from Cristina Ryan of AAA regarding statement for increased counter claim on behalf of client SVO, including review of attached invoice | 0.10 | 295.00 | 29.50 |
| 08/25/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 08/25/2021 | ALR | Review and analysis of Quickbooks documents produced by SVO attempting to match records of payment for multiple invoices with individual invoices used by HKA to claim damages | 1.80 | 225.00 | 405.00 |
| 08/25/2021 | ALR | Drafting and revising spreadsheet of invoices without payment to send to Jenny P to try to match with internal SVO payments | 1.60 | 225.00 | 360.00 |
| 08/25/2021 | ALR | Review and analysis of bank statements provided to SVO trying to match payments from banks with invoices from SVO subcontractors (80 documents) | 3.80 | 225.00 | 855.00 |
| 08/26/2021 | DF | Further review and assess strategy for establishing proof of payment by SVO of repair damages and related issues concerning clear supporting documents from client regarding payment op invoice confirmation | 0.40 | 295.00 | 118.00 |
| 08/26/2021 | DF | Review and reply to email from client SVO coverage counsel regarding TM carrier bill approval and related issues | 0.20 | 295.00 | 59.00 |
| 08/27/2021 | DF | Review email from HKA to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 08/27/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 08/27/2021 | CNM | Review and analyze invoices, purchase orders and proposals supporting electrical damages to provide to estimator | 3.70 | 295.00 | 1,091.50 |
| 08/27/2021 | CNM | Review and analyze proof of electrical damages by cross referencing bank statements and excel sheet | 2.10 | 295.00 | 619.50 |
| 08/30/2021 | JMF | Review Vertiv's email regarding expert Nathan Moeder's deposition | 0.10 | 295.00 | 29.50 |
| 08/30/2021 | JMF | Draft email to David Bones regarding Vertiv expert Nathan Moeder's deposition | 0.10 | 295.00 | 29.50 |
| 08/30/2021 | JMF | Review and analyze caselaw regarding proof of payment for construction repair costs | 0.10 | 295.00 | 29.50 |
| 08/31/2021 | DF | Review email from commercial damages expert David Bones regarding status of budget approval by client SVO for HKA commercial damages team concerning Phase II of arbitration | 0.10 | 295.00 | 29.50 |
| 08/31/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 08/31/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 08/31/2021 | DF | Telephone call with SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |

| | | | | | |
|---|---|---|---|---|---|
| 08/31/2021 | ALR | Review and analysis of bank statements produced by SVO prior to 2019 to attempt to match payments with costs and invoices (24 documents roughly 85 pages) | 2.10 | 225.00 | 472.50 |
| 08/31/2021 | ALR | Review and analysis of bank statements produced by SVO prior to 2018 to attempt to match payments with costs and invoices (24 documents roughly 100 pages) | 1.80 | 225.00 | 405.00 |
| 08/31/2021 | JMF | Telephone call with Jenny at SVO regarding [redacted] | 0.40 | 295.00 | 118.00 |
| 08/31/2021 | JMF | Review banks statements and Quickbooks itemization of construction costs invoices and payments for vendors ACCO and Commercial Sign Crafters | 0.40 | 295.00 | 118.00 |

Sub-total Fees: $20,535.50

**Rate Summary**

| | | | |
|---|---|---|---|
| David M. Frishman | Partner | 6.20 hours at $295.00/hr | 1,829.00 |
| Julee M. Fritsch | Senior Counsel | 5.90 hours at $295.00/hr | 1,740.50 |
| Cindy N. Mader | Senior Counsel | 5.80 hours at $295.00/hr | 1,711.00 |
| Alexander L. Randolph | Associate | 67.80 hours at $225.00/hr | 15,255.00 |
| | Total hours: | 85.70 | |

**Trust Account**

Beginning Balance: $0.00

Ending Balance: $0.00

**Unapplied amount for $5,073.50 applied**

**TOTAL BALANCE DUE $15,462.00**

| | |
|---|---|
| **Total Fees:** | $20,535.50 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$20,535.50** |

**Statement of Account**

| Date | Invoice No | Invoice Total | Payments | Balance |
|---|---|---|---|---|
| 09/28/2021 | 81521 | 20,535.50 | 0.00 | 20,535.50 |
| **Balance Due** | | | | **15,462.00** |

SVON 000240

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID:[redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 11/17/2021
**Invoice Number:** 91732

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 09/01/2021 - 09/30/2021 |

**Professional Fees**

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 09/01/2021 | DF | Review email from client SVO contact Ulrich Pelz to [redacted] | 0.10 | 295.00 | 29.50 |
| 09/01/2021 | DF | Email to commercial damages expert David Bones regarding status of deposition of Vertiv's commercial damages expert Moeder | 0.10 | 295.00 | 29.50 |
| 09/01/2021 | DF | Review reply email from commercial damages expert David Bones regarding deposition of Vertiv commercial damages expert Moeder and related timing issues | 0.10 | 295.00 | 29.50 |
| 09/01/2021 | JMF | Telephone conference with Ulrich Peltz, Jenny Przygrodzka and TM attorney Alexander Randolph regarding [redacted] | 0.80 | 295.00 | 236.00 |
| 09/01/2021 | DF | Further review of issues and strategy concerning deposition of Vertiv commercial damages expert Moeder | 0.10 | 295.00 | 29.50 |
| 09/01/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 09/01/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/01/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/01/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.20 | 225.00 | 495.00 |
| 09/01/2021 | CNM | Review and correlate invoices in support of 38 affirmative claims cited in electrical report | 1.60 | 295.00 | 472.00 |



CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 09/01/2021 | CNM | Confirm electrical claims track estimator and expert's calculations in electrical report. | 1.20 | 295.00 | 354.00 |
| 09/02/2021 | DF | Review and reply to email from client SVO contact Ulrich Pelz regarding [redacted] | 0.20 | 295.00 | 59.00 |
| 09/02/2021 | DF | Email to client SVO contacts Ulrich Pelz and Jenny Przygrodzka regarding [redacted] | 0.20 | 295.00 | 59.00 |
| 09/02/2021 | DF | Telephone call with client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 09/02/2021 | JMF | Review SVO and Venture One's BNY Mellon bank statements which support invoices for construction costs of Phase 2 arbitration | 1.60 | 295.00 | 472.00 |
| 09/02/2021 | ALR | Redacting bank statements (25 documents roughly 110 pages) | 2.10 | 225.00 | 472.50 |
| 09/02/2021 | ALR | Redacting bank statements (35 documents roughly 100 pages) | 2.00 | 225.00 | 450.00 |
| 09/04/2021 | DF | Review and reply to email from client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 09/04/2021 | JMF | Review the status of bank statement proof of payment for invoices for construction costs excluding electrical for purposes of preparation of Phase 2 arbitration | 0.70 | 295.00 | 206.50 |
| 09/07/2021 | JMF | Review Swinerton payment applications and change orders to determine costs associated with data hall one versus data halls two and three | 1.70 | 295.00 | 501.50 |
| 09/07/2021 | JMF | Telephone call with Jenny regarding [redacted] | 0.30 | 295.00 | 88.50 |
| 09/07/2021 | JMF | Review Swinerton missing proof for three bill payments in preparation of proving construction costs during Phase 2 of arbitration | 0.40 | 295.00 | 118.00 |
| 09/07/2021 | ALR | Review and analysis of bank statements and work product used by HKA experts in order to show proof of payment for SVO costs | 2.20 | 225.00 | 495.00 |
| 09/07/2021 | ALR | Review and analysis of bank statements and work product used by HKA experts in order to show proof of payment for SVO costs | 1.90 | 225.00 | 427.50 |
| 09/07/2021 | ALR | Review and analysis of bank statements and work product used by HKA experts in order to show proof of payment for SVO costs | 2.10 | 225.00 | 472.50 |
| 09/07/2021 | ALR | Review and analysis of bank statements and work product used by HKA experts in order to show proof of payment for SVO costs | 2.00 | 225.00 | 450.00 |
| 09/07/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.10 | 225.00 | 247.50 |
| 09/07/2021 | ALR | Review and analysis of bank statements and work product used by HKA experts in order to show proof of payment for SVO costs | 1.60 | 225.00 | 360.00 |
| 09/07/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/07/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |

| | | | | | |
|---|---|---|---|---|---|
| 09/08/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/08/2021 | ALR | Review and analysis of bank statements and work product used by HKA experts in order to show proof of payment for SVO costs | 2.30 | 225.00 | 517.50 |
| 09/08/2021 | ALR | Review and analysis of bank statements and work product used by HKA experts in order to show proof of payment for SVO costs | 2.40 | 225.00 | 540.00 |
| 09/09/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.00 | 225.00 | 450.00 |
| 09/09/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.00 | 225.00 | 450.00 |
| 09/09/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.00 | 225.00 | 450.00 |
| 09/09/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.40 | 225.00 | 540.00 |
| 09/10/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/10/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/10/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/10/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/13/2021 | JMF | Review HKA's email regarding payment applications to support Swinerton construction costs | 0.20 | 295.00 | 59.00 |
| 09/13/2021 | JMF | Review Vertiv's commercial damages expert Nathan Moeder's report and documents he relied upon in preparation of deposition | 2.80 | 295.00 | 826.00 |
| 09/13/2021 | JMF | Review Table 1 of Data Center Research Interviews in expert Nathan Moeder's report in preparation for deposition | 0.70 | 295.00 | 206.50 |
| 09/13/2021 | JMF | Review Table 2.1 Income Statement Assumptions in expert Nathan Moeder's report in preparation for deposition | 0.70 | 295.00 | 206.50 |
| 09/13/2021 | JMF | Review Table 2.2 Projected Income Statement in expert Nathan Moeder's report in preparation for deposition | 0.60 | 295.00 | 177.00 |
| 09/13/2021 | JMF | Review Table 3 Actual Income Statement in expert Nathan Moeder's report in preparation for deposition | 0.50 | 295.00 | 147.50 |
| 09/13/2021 | JMF | Review Tables 4.1 and 4.2 Reconciliation of But-For and Actual in expert Nathan Moeder's report in preparation for deposition | 0.80 | 295.00 | 236.00 |
| 09/13/2021 | JMF | Review Table 5 Prejudgment Interest in expert Nathan Moeder's report in preparation for deposition | 0.40 | 295.00 | 118.00 |

| | | | | | |
|---|---|---|---|---|---|
| 09/13/2021 | JCT | Teleconference with McClellan Park CEO and potential damages witness in Phase II of arbitration, Frank Myers, SVO principal Ulrich Pelz, and TM team members David Frishman and Richard Dieffenbach and Jamie Tabrizi regarding [redacted] (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 0.50 | 225.00 | 112.50 |
| 09/13/2021 | JCT | Teleconference with SVO principal Ulrich Pelz regarding [redacted] | 0.50 | 225.00 | 112.50 |
| 09/13/2021 | JCT | Creation of detailed evidence tree for SVO defenses to Vertiv's claims outlining relevant witnesses anticipated for both sides, and anticipated evidence and arguments | 8.10 | 225.00 | 1,822.50 |
| 09/13/2021 | JMF | Review CBRE Research report on decreasing rental rates in preparation for Nathan Moeder's deposition in preparation for deposition | 0.70 | 295.00 | 206.50 |
| 09/13/2021 | CNM | Attend conference with client, expert Ian Bitterlin and Team SVO member, David Frishman regarding [redacted] (multiple attorneys attendance per Angel Muth of Navigator and Jason Smith of Hallmark) | 0.30 | 295.00 | 88.50 |
| 09/13/2021 | JMF | Review HKA expert David Bones' deposition transcript in preparation of Vertiv expert Nathan Moeder's deposition | 2.60 | 295.00 | 767.00 |
| 09/13/2021 | JMF | Review JLL report on decreasing rental rates in preparation for Nathan Moeder's deposition | 0.80 | 295.00 | 236.00 |
| 09/13/2021 | JMF | Draft outline for Vertiv's expert's deposition of Nathan Moeder | 1.80 | 295.00 | 531.00 |
| 09/14/2021 | DF | Additional email to client SVO contact Jenny Przygrodzka regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 09/14/2021 | ALR | Review and analysis of HKA work product regarding proof of payment for Swinerton documents and cross referencing work provided in spreadsheet with internal SVO documents and bank statements to check work | 1.40 | 225.00 | 315.00 |
| 09/14/2021 | JMF | Review portions of the Litigation Services Handbook relied upon by expert Nathan Moeder in preparation for deposition | 0.90 | 295.00 | 265.50 |
| 09/14/2021 | JMF | Review Chinese credit check analysis of Nicholas Laag's company in preparation for deposition | 0.80 | 295.00 | 236.00 |
| 09/14/2021 | JMF | Telephone conference with HKA damages experts David Bones, Gary Liddicoat, and Julia Alcarez and Team SVO member Alexander Randolph regarding strategy and topics of inquiry in preparation for the deposition of Vertiv's damages expert Nathan Moeder (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 1.50 | 295.00 | 442.50 |
| 09/14/2021 | JMF | Review a portion of the Litigation Services Handbooks regarding ex ante vs ex post damages analysis produced by Vertiv's expert Nathan Moeder in preparation for deposition | 0.60 | 295.00 | 177.00 |
| 09/14/2021 | JMF | Review expert Nathan Moeder's Venture One's transaction list by vendor from 2017 - 2019 produced to support his report in preparation for deposition | 0.40 | 295.00 | 118.00 |
| 09/14/2021 | JMF | Review expert Nathan Moeder's Prime Data's transaction list by vendor from 2017 - 2018 produced to support his report in preparation for deposition | 0.40 | 295.00 | 118.00 |

| | | | | | |
|---|---|---|---|---|---|
| 09/14/2021 | JMF | Review expert Nathan Moeder's SVO's transaction list by vendor from 2017 - 2019 produced to support his report in preparation for deposition | 0.50 | 295.00 | 147.50 |
| 09/14/2021 | JMF | Review Prime Data's General Ledger for January - December 2017 that was produced with expert Nathan Moeder's report of opinions in preparation for deposition | 0.40 | 295.00 | 118.00 |
| 09/14/2021 | JMF | Continue to review Vertiv's expert Nathan Moeder in preparation for his deposition | 1.80 | 295.00 | 531.00 |
| 09/14/2021 | JMF | Review emails regarding JCC charges in preparation for Vertiv expert Nathan Moeder's deposition | 0.60 | 295.00 | 177.00 |
| 09/14/2021 | JMF | Review Prime Data's Transaction Report for 2015-2016 that was produced with expert Nathan Moeder's report of opinions in preparation for deposition | 0.60 | 295.00 | 177.00 |
| 09/14/2021 | JMF | Review SVO's Transaction Report for 2017-2019 that was produced with expert Nathan Moeder's report of opinions in preparation for deposition | 0.40 | 295.00 | 118.00 |
| 09/14/2021 | JMF | Review SVO's emails regarding the draw down request on Silver Point loan in preparation of expert Nathan Moeder's deposition | 0.30 | 295.00 | 88.50 |
| 09/14/2021 | JMF | Review auditor's letter regarding Prime Data Center for 2018 in preparation of expert Nathan Moeder's deposition | 0.60 | 295.00 | 177.00 |
| 09/15/2021 | JMF | Review David Bones' damages report in preparation for Nathan Moeder's deposition | 1.40 | 295.00 | 413.00 |
| 09/15/2021 | JMF | Continue to draft outline for deposition of Vertiv expert's Nathan Moeder | 2.60 | 295.00 | 767.00 |
| 09/15/2021 | JMF | Review complete chapter of Litigation Services Handbook relied upon by expert Nathan Moeder in preparation of deposition | 1.20 | 295.00 | 354.00 |
| 09/15/2021 | JMF | Review Vertiv expert Nathan Moeder's curriculum vitae in preparation for his deposition | 0.40 | 295.00 | 118.00 |
| 09/15/2021 | JMF | Review Vertiv expert Nathan Moeder's list of cases in preparation for his deposition | 0.40 | 295.00 | 118.00 |
| 09/15/2021 | JMF | Review SVO's 2019 Q2 Quarterly Report in preparation for Vertiv's expert's Nathan Moeder's deposition | 0.80 | 295.00 | 236.00 |
| 09/15/2021 | JMF | Review HKA expert David Bones' Margin Analysis of data centers' revenue from 2016-2020 in preparation of Nathan Moeder's deposition | 0.70 | 295.00 | 206.50 |
| 09/15/2021 | JMF | Review expert David Bones' summary of damages related to lost profits for purposes of preparation for Nathan Moeder's deposition | 0.60 | 295.00 | 177.00 |
| 09/15/2021 | JMF | Review Projected Income Statements of SVO from February 2018 to June 2021 for preparation of Nathan Moeder's deposition | 0.90 | 295.00 | 265.50 |
| 09/15/2021 | JMF | Review But-For Interest on Silver Point Loan in preparation of Nathan Moeder's deposition | 0.40 | 295.00 | 118.00 |
| 09/15/2021 | JMF | Review But-For Interest on Sequoia Loan in preparation of Nathan Moeder's deposition | 0.60 | 295.00 | 177.00 |
| 09/16/2021 | JMF | Attend telephone conference with HKA David Bones, Gary Liddicoat and Julia Alcarez regarding deposition of Vertiv's expert Nathan Moeder | 1.20 | 295.00 | 354.00 |
| 09/16/2021 | JMF | Review Lee and Associates' Appraisal of 147 pages in preparation for Vertiv's expert's Nathan Moeder's deposition | 0.80 | 295.00 | 236.00 |
| 09/16/2021 | JMF | Review CMA Strategy Consulting's 2018 Appraisal of 143 pages in preparation for Vertiv's expert's Nathan Moeder's deposition | 0.70 | 295.00 | 206.50 |
| 09/16/2021 | JMF | Review Newmark's Appraisal of 185 pages in preparation for Vertiv's expert's Nathan Moeder's deposition | 1.20 | 295.00 | 354.00 |

| | | | | | |
|---|---|---|---|---|---|
| 09/16/2021 | JMF | Review Newmark's 2017 Appraisal of 139 pages in preparation for Vertiv's expert's Nathan Moeder's deposition | 0.90 | 295.00 | 265.50 |
| 09/16/2021 | JMF | Review Letter of Intent between SVO and VMax International in preparation of deposition of Nathan Moeder | 0.60 | 295.00 | 177.00 |
| 09/16/2021 | JMF | Continue to draft outline for deposition of Vertiv expert's Nathan Moeder | 2.30 | 295.00 | 678.50 |
| 09/16/2021 | JMF | Review SVO's Senior Secured Credit Facility Lender Presentation 2018 in preparation for Vertiv's expert's Nathan Moeder (51 pages) | 0.80 | 295.00 | 236.00 |
| 09/16/2021 | JMF | Review Nathan Moeder's matrix of providers and brokers in preparation for Nathan Moeder's deposition | 0.90 | 295.00 | 265.50 |
| 09/16/2021 | JMF | Review Chris Sumpter's email regarding Nathan Moeder's provider matrix for preparation of deposition | 0.70 | 295.00 | 206.50 |
| 09/16/2021 | JMF | Review Ian Bitterlin's expert report regarding construction costs and lost revenue analysis | 1.30 | 295.00 | 383.50 |
| 09/17/2021 | JMF | Take deposition of Vertiv's expert Nathan Moeder | 7.50 | 295.00 | 2,212.50 |
| 09/17/2021 | JMF | Three telephone calls with HKA expert Julia Alcarez and TM Attorney Alexander Randolph regarding Nathan Moeder's deposition testimony (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 0.90 | 295.00 | 265.50 |
| 09/17/2021 | JMF | Review SVO's 2017 projections and proforma financials | 0.80 | 295.00 | 236.00 |
| 09/17/2021 | JMF | Review exhibits for deposition of Vertiv expert Nathan Moeder | 1.70 | 295.00 | 501.50 |
| 09/17/2021 | JMF | Review Vertiv expert Nathan Moeder's report and supporting documentation in preparation of deposition | 1.50 | 295.00 | 442.50 |
| 09/17/2021 | ALR | Attend expert call with Julia Alcarez and TM attorney Julee Fritsch regarding Nathan Moeder deposition (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 0.90 | 225.00 | 202.50 |
| 09/17/2021 | DF | Review and assess results of deposition of Vertiv commercial damages expert Moeder | 0.40 | 295.00 | 118.00 |
| 09/17/2021 | DF | Review and assess damages work up regarding invoices and strategy for SVO continuing changes in damages claims | 2.50 | 295.00 | 737.50 |
| 09/17/2021 | DF | Arbitration preparation regarding exhibits review | 4.70 | 295.00 | 1,386.50 |
| 09/18/2021 | JMF | Review Twitter's SEC filings regarding lease disclosures | 1.60 | 295.00 | 472.00 |
| 09/18/2021 | JMF | Review Twitter lease regarding confidentiality agreement and disclosure | 0.90 | 295.00 | 265.50 |
| 09/18/2021 | JMF | Review documents produced by SVO referencing Twitter | 1.70 | 295.00 | 501.50 |
| 09/19/2021 | RJO | Review and analysis of deposition transcript of expert Robert Taylor deposition testimony in preparation for taking arbitration testimony | 2.30 | 295.00 | 678.50 |
| 09/20/2021 | JMF | Telephone conference with Jenny Przygrodzka and TM attorney Julee Fritsch regarding [redacted] (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 0.80 | 295.00 | 236.00 |
| 09/20/2021 | JMF | Review payment applications regarding Swinerton payments | 0.60 | 295.00 | 177.00 |
| 09/20/2021 | JMF | Review SVO's Quickbooks bill payments regarding Swinerton payments | 0.40 | 295.00 | 118.00 |
| 09/20/2021 | ALR | Telephone conference with Jenny Przygrodzka and TM attorney Julee Fritsch regarding [redacted] (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 0.80 | 225.00 | 180.00 |

| | | | | | |
|---|---|---|---|---|---|
| 09/21/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/21/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.90 | 225.00 | 427.50 |
| 09/21/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/21/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/21/2021 | JMF | Review SVO and Prime Data's nine months of banks statements in 2019 and 2020 | 0.40 | 295.00 | 118.00 |
| 09/21/2021 | JMF | Review SVO's Mission Critical Specialists' construction costs backup for purposes of experts' testimony during Phase 2 arbitration | 0.60 | 295.00 | 177.00 |
| 09/21/2021 | JMF | Review SVO's Painter Plus construction costs backup for purposes of experts' testimony during Phase 2 arbitration | 0.40 | 295.00 | 118.00 |
| 09/21/2021 | JMF | Review SVO's bank statements and invoices to support the KW Mission Critical construction costs claimed for preparation of Phase 2 arbitration | 0.40 | 295.00 | 118.00 |
| 09/21/2021 | JMF | Review SVO's Swinerton construction costs backup for purposes of experts' testimony during Phase 2 arbitration | 0.40 | 295.00 | 118.00 |
| 09/21/2021 | JMF | Telephone call with HKA Alay Shah regarding the backup documentation for Swinerton construction costs for Phase 2 arbitration | 0.20 | 295.00 | 59.00 |
| 09/21/2021 | ALR | Review and analysis of backup documentation for Swinerton builders and payments from SVO to Swinerton to inform HKA experts and discuss their opinions on proof of payment for Swinerton damages (40 documents roughly 240 pages) | 2.30 | 225.00 | 517.50 |
| 09/21/2021 | ALR | Review and analysis of documents produced by SVO accountant and comparing it with bank statements to show proof of payment for SVO subcontractors | 3.10 | 225.00 | 697.50 |
| 09/22/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.90 | 225.00 | 427.50 |
| 09/22/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/22/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/22/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/22/2021 | JMF | Review SVO's BNY statements June 2020 for preparation of the construction cost damages | 0.80 | 295.00 | 236.00 |
| 09/22/2021 | DF | Attend arbitration strategy conference with SVO team member regarding Phase II arbitration exhibits opposition to motion for reconsideration of Vertiv and pre arbitration preparation issues (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 0.70 | 295.00 | 206.50 |

| | | | | | |
|---|---|---|---|---|---|
| 09/22/2021 | DF | Attend conference call with client SVO contact Ulrich Pelz clients Frank Watson and TM SVO team member Richard Dieffenbach and Jamie Tabrizi regarding [redacted] (Multiple attorneys attendance authorized by Angel Muth of Navigator and Jason Smith of Hallmark) | 0.70 | 295.00 | 206.50 |
| 09/23/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling material critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/23/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/23/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.90 | 225.00 | 427.50 |
| 09/23/2021 | RJO | Review and analysis of deposition transcript of expert Jeff Smith in preparation for taking arbitration testimony | 1.20 | 295.00 | 354.00 |
| 09/23/2021 | DF | Review regarding ongoing issues with client SVO providing invoices and related issues | 1.10 | 295.00 | 324.50 |
| 09/23/2021 | DF | Review and assess status of expert experts to correlate and adjust SVO damages claim based upon additional invoices and records provided by client SVO and in light of new opinions of expert Ian Bitterlin | 1.30 | 295.00 | 383.50 |
| 09/23/2021 | CNM | Review and analyze Vertiv's motions in limine including 2 new motions in limine for exclusion of lost rent and cumulative and unsubstantiated expert testimony | 0.50 | 295.00 | 147.50 |
| 09/24/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/24/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.20 | 225.00 | 495.00 |
| 09/24/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/24/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 0.70 | 225.00 | 157.50 |
| 09/24/2021 | JMF | Review HKA Alay Shah's email regarding reconciling Swinerton invoices with proof of payment | 0.40 | 295.00 | 118.00 |
| 09/26/2021 | JMF | Review and redact SVO Quickbooks payments information in support for construction costs | 0.80 | 295.00 | 236.00 |
| 09/26/2021 | JMF | Review and redact SVO's Wells Fargo account statements for support of construction costs | 1.40 | 295.00 | 413.00 |
| 09/27/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/27/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.20 | 225.00 | 495.00 |
| 09/27/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.20 | 225.00 | 495.00 |


CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 09/27/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.10 | 225.00 | 247.50 |
| 09/27/2021 | JMF | Telephone conference with Ulrich Pelz, expert Ian Bitterlin, HKA experts Ken Baker, Julia Alcarez, Gary Liddicoat, Jeff Smith, and Alay Shah and TM attorneys David Frishman and Cindy Mader regarding [redacted] [Multiple TM attorneys authorized by Angel Muth of Navigators and Jason Smith of Hallmark] | 1.00 | 295.00 | 295.00 |
| 09/27/2021 | JMF | Review of redacted SVO bank statements to support construction cost claims | 0.70 | 295.00 | 206.50 |
| 09/27/2021 | DF | Review email from HKA to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 09/27/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 09/27/2021 | CNM | Attend conference with Ulrich Pelz, expert Ian Bitterlin, HKA experts Ken Baker, Julia Alcarez, Gary Liddicoat, Jeff Smith, and Alay Shah and TM attorneys David Frishman, and Julee Fritsch regarding [redacted] [Multiple TM attorneys authorized by Angel Muth of Navigators and Jason Smith of Hallmark] | 1.20 | 295.00 | 354.00 |
| 09/28/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.40 | 225.00 | 315.00 |
| 09/28/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/28/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.20 | 225.00 | 495.00 |
| 09/28/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.20 | 225.00 | 495.00 |
| 09/29/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/29/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.80 | 225.00 | 405.00 |
| 09/29/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.30 | 225.00 | 517.50 |
| 09/29/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 1.00 | 225.00 | 225.00 |
| 09/29/2021 | CNM | Draft email to client, Ulrich Pelz, regarding [redacted] | 0.10 | 295.00 | 29.50 |



CONFIDENTIAL

| | | | | | |
|---|---|---|---|---|---|
| 09/30/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/30/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/30/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/30/2021 | EAK | Review and analysis of documents on relativity for assistance in compiling opening brief, affirmative claims, expert reports critical for use at arbitration for Phase II Exhibits. | 2.10 | 225.00 | 472.50 |
| 09/30/2021 | JMF | Review Exhibit List of SVO's bank statements to assess missing support for construction costs for Phase 2 Arbitration | 1.20 | 295.00 | 354.00 |
| 09/30/2021 | CNM | Draft and outline loss of revenue issues regarding claim 105 (failure to meet 2MW) and claim 107 (failure to advise on generator rating) and overall lost of approximately $14.4 million | 2.00 | 295.00 | 590.00 |
| 09/30/2021 | ALR | Review and analysis of bank statements and other backup for payment in order to help show proof of payment in arbitration | 2.60 | 225.00 | 585.00 |
| 09/30/2021 | ALR | Review and analysis of bank statements and other backup for payment in order to help show proof of payment in arbitration | 2.30 | 225.00 | 517.50 |
| 09/30/2021 | CNM | Communicate with HKA expert, Jeff Smith, regarding finalizing estimates for claim 105 for failure to meet 2MW of ICT load and claim 107 for failure to advise on generator rating | 0.20 | 295.00 | 59.00 |
| | | | | Sub-total Fees: | $59,231.00 |

**Rate Summary**

| | | | | |
|---|---|---|---|---|
| David M. Frishman | Partner | 12.80 | hours at $295.00/hr | 3,776.00 |
| Julee M. Fritsch | Senior Counsel | 76.40 | hours at $295.00/hr | 22,538.00 |
| Ethan A. Kraft | Associate | 91.30 | hours at $225.00/hr | 20,542.50 |
| Cindy N. Mader | Senior Counsel | 7.10 | hours at $295.00/hr | 2,094.50 |
| Robert J. Olson | Senior Counsel | 3.50 | hours at $295.00/hr | 1,032.50 |
| Alexander L. Randolph | Associate | 32.00 | hours at $225.00/hr | 7,200.00 |
| Jamie C. Tabrizi | Associate | 9.10 | hours at $225.00/hr | 2,047.50 |
| | Total hours: | 232.20 | | |

**Trust Account**

Beginning Balance: $0.00

Ending Balance: $0.00

| | |
|---|---|
| **Total Fees:** | $59,231.00 |
| **Total Expenses:** | $0.00 |
| **Total Current Billing:** | **$59,231.00** |



CONFIDENTIAL

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



**Statement of Account**

| Date | Invoice No | Invoice Total | Payments | Balance |
|---|---|---|---|---|
| 09/28/2021 | 81521 | 20,535.50 | 5,073.50 | 15,462.00 |
| 11/17/2021 | 91732 | 59,231.00 | 0.00 | 59,231.00 |
| **Balance Due** | | | | **74,693.00** |

**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**



CONFIDENTIAL

**Tyson & Mendes, LLP**
5661 La Jolla Boulevard
La Jolla, CA 92037
Phone No.: (858) 459-4400
Fax: (858) 459-3864
Federal Tax ID:[redacted]

**SVO Building One, LLC**
**Ulrich Pelz**

**Invoice Date:** 12/20/2021
**Invoice Number:** 93322

**20-2453.001 / SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO**

| | |
|---|---|
| **CASE:** | SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO |
| **INSURED:** | |
| **CLAIM NO:** | CGL325269 |
| **OUR FILE NO:** | 20-2453.001 |
| **BILLING PERIOD:** | 10/02/2021 - 10/31/2021 |

**Professional Fees**

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/02/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.40 | 295.00 | 118.00 |
| 10/04/2021 | JMF | Review medical records from Kamran Hakimian, MD regarding nerve test for purposes of mediation | 0.60 | 295.00 | 177.00 |
| 10/04/2021 | JMF | Review Vertiv's Motion in Limine to Exclude SVO's New Damage Claims | 0.70 | 295.00 | 206.50 |
| 10/04/2021 | JMF | Review SVO's Motion in Limine to Exclude Additional Scope for Vertiv's Expert Nathan Moeder in preparation of Phase 2 arbitration hearing | 0.40 | 295.00 | 118.00 |
| 10/05/2021 | JMF | Review HKA expert Alay Shah's email regarding allocating costs of Swinerton delay damages | 0.20 | 295.00 | 59.00 |
| 10/06/2021 | RPD | Correspondence to HKA and to Ulrich Pelz regarding [redacted] | 0.20 | 295.00 | 59.00 |
| 10/06/2021 | BGB | Draft summary of Twitter emails and contact with Jeff Barber. Draft summary of emails marked in Relativity Batch 3 #600-1185 for the purpose of tracking discovery made and not made, as legally required. (13 pg. drafted.) | 6.80 | 225.00 | 1,530.00 |
| 10/06/2021 | JMF | Review Swinerton Change Orders and Invoices for analysis of SVO's Swinerton construction costs to be recovered against Vertiv in preparation of Phase 2 arbitration | 1.30 | 295.00 | 383.50 |
| 10/06/2021 | DF | Email exchange with client SVO contact Ulrich plaintiff regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/07/2021 | JMF | Draft email to HKA expert Alay Shah regarding allocating costs of Swinerton delay damages | 0.20 | 295.00 | 59.00 |
| 10/07/2021 | JMF | Review SVO's delay damages during Swinerton's finishing Phase 1 and Data Halls 2 and 3 | 1.40 | 295.00 | 413.00 |
| 10/07/2021 | JMF | Review HKA Alay Shah's email and excel spreadsheet regarding Swinerton payment applications on work on Phase 1 | 0.70 | 295.00 | 206.50 |

| | | | | | |
|---|---|---|---|---|---|
| 10/08/2021 | JMF | Draft email to HKA's David Bones' team regarding lost rents and documents used to prove SVO's damages claim | 0.20 | 295.00 | 59.00 |
| 10/08/2021 | JMF | Review email from HKA's David Bones' team regarding lost rents and documents used to prove SVO's damages claim | 0.20 | 295.00 | 59.00 |
| 10/11/2021 | RPD | Draft Third Amended Statement of Damages | 1.30 | 295.00 | 383.50 |
| 10/11/2021 | RPD | Multiple correspondence with Ulrich Pelz regarding [redacted] | 0.40 | 295.00 | 118.00 |
| 10/11/2021 | RPD | Correspondence with HKA expert consultant regarding daily interest accumulation | 0.30 | 295.00 | 88.50 |
| 10/11/2021 | JMF | Review Chris Sumpter's email regarding obtaining confirmed lease rates from competitors leasing data centers | 0.20 | 295.00 | 59.00 |
| 10/13/2021 | JMF | Review emails regarding invoices sent to KLD to produce in preparation of the custodian of records evidentiary hearing regarding financial records | 2.30 | 295.00 | 678.50 |
| 10/13/2021 | JMF | Review HKA chart of invoices and estimates of construction costs in preparation of the custodian of records evidentiary hearing regarding financial records | 0.80 | 295.00 | 236.00 |
| 10/14/2021 | DF | Telephone call with client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/14/2021 | DF | Emil to Ulrich Pelz [redacted] | 0.10 | 295.00 | 29.50 |
| 10/14/2021 | DF | Review and reply to email from counsel for Vertiv regarding designation of SVO custodian of records concerning job cost reports and damages documents | 0.10 | 295.00 | 29.50 |
| 10/14/2021 | DF | Telephone call with client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/14/2021 | DF | Email to client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/14/2021 | DF | Email to counsel for Vertiv regarding identification of SVO custodians of records regarding job costs and damages documents | 0.10 | 295.00 | 29.50 |
| 10/15/2021 | JMF | Telephone conference with Vertiv's Auditors CLA, Ulrich Pelz, Jenny Przygrodzka and TM attorney David Frishman regarding [redacted] (Multiple timekeepers per Angel Muth of Navigators and Jason Smith of Hallmark) | 0.70 | 295.00 | 206.50 |
| 10/15/2021 | JMF | Telephone conference with Ulrich Pelz, Jenny Przygrodzka, Marco and TM attorney David Frishman regarding custodian of records regarding [redacted] (Multiple timekeepers per Angel Muth of Navigators and Jason Smith of Hallmark) | 1.30 | 295.00 | 383.50 |
| 10/15/2021 | JMF | Telephone conference with TM attorney David Frishman regarding strategy production the custodian of records regarding Vertiv's job costs reports per arbitrator's order (Multiple timekeepers per Angel Muth of Navigators and Jason Smith of Hallmark) | 1.00 | 295.00 | 295.00 |
| 10/15/2021 | JMF | Review HKA David Bones' report regarding the Sequoia loan and loan refinancing opinions for purposes of the custodian of records regarding Vertiv's job costs reports per arbitrator's order (Multiple timekeepers per Angel Muth of Navigators and Jason Smith of Hallmark) | 0.10 | 295.00 | 29.50 |

| | | | | | |
|---|---|---|---|---|---|
| 10/15/2021 | DF | Telephone call with client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/15/2021 | DF | Email to SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/15/2021 | JMF | Draft email to HKA David Bones regarding arbitrator's order to produce the person most knowledgeable of job costs | 0.10 | 295.00 | 29.50 |
| 10/18/2021 | DF | Email to arbitrator George Fisher confirming SVO custodian of records appearance regarding damages documents issues | 0.10 | 295.00 | 29.50 |
| 10/18/2021 | JMF | Review SVO's Monthly Report to Sequoia for preparation of the custodian of records hearing of job costs | 0.70 | 295.00 | 206.50 |
| 10/18/2021 | JMF | Review the status of SVO's bank statements for the proof of payment of construction costs | 0.60 | 295.00 | 177.00 |
| 10/19/2021 | JMF | Review three years of SVO's Monthly Reports and the costs claimed to Sequoia for the draw down of the loan for preparation of custodian of records of job cost reports | 1.60 | 295.00 | 472.00 |
| 10/20/2021 | JMF | Review SVO's file of bated purchase orders for support of construction costs for preparation of custodian of records hearing on job costs | 0.30 | 295.00 | 88.50 |
| 10/20/2021 | JMF | Review SVO, Venture One and Prime Data's s invoice matrix for support of construction costs for preparation of custodian of records hearing on job costs | 0.70 | 295.00 | 206.50 |
| 10/20/2021 | RD | Analyze Defendant's Exhibit List dated September 3, 2021, identifying documents to be produced as exhibits in arbitration phase 2 for. (425+ | 3.50 | 165.00 | 577.50 |
| 10/21/2021 | RPD | Attend prep session for Ulrich Pelz as person most knowledgeable for financial documents for SVO (Second Session) with Team SVO members Julee Fritsch, David Frishman, Jamie Tabrizi, Ethan Kraft (Multiple attorney participation authorized by Angel Muth and Jason Smith | 3.50 | 295.00 | 1,032.50 |
| 10/21/2021 | RPD | Attend prep session for Ulrich Pelz and Jenny P for person most knowledgeable testimony 10-21-2021 | 4.50 | 295.00 | 1,327.50 |
| 10/21/2021 | RPD | [redacted] | 0.90 | 295.00 | 265.50 |
| 10/21/2021 | RPD | [redacted] with David Frishman and Ulrich Pelz | 0.20 | 295.00 | 59.00 |
| 10/21/2021 | JMF | Review HKA Ken Baker's supplemental expert report regarding invoices and supporting documentation for CPS and BCS vendors in preparation for custodian of records of job costs hearing | 0.80 | 295.00 | 236.00 |
| 10/21/2021 | JMF | Review HKA expert Ken Baker's deposition testimony regarding BCS and CPS construction costs for preparation of the custodian of records hearing | 0.70 | 295.00 | 206.50 |
| 10/21/2021 | JMF | Review SVO's bill payments ledgers, transactions lists and quickbooks records production in preparation for the custodian of records of job costs reports | 0.70 | 295.00 | 206.50 |
| 10/21/2021 | DF | Review updated excel spreadsheet regarding invoices relied upon by experts in support of clients damages claims | 0.20 | 295.00 | 59.00 |
| 10/22/2021 | JMF | Attended arbitration hearing of SVO's custodian of records of job cost reports | 7.50 | 295.00 | 2,212.50 |
| 10/22/2021 | JMF | Review Jeff Good arbitration hearing testimony regarding interaction with Jenny Prydozka for preparation of the custodian of records hearing | 0.60 | 295.00 | 177.00 |
| 10/22/2021 | JMF | [redacted] with Jenny Pryozka [redacted] | 0.80 | 295.00 | 236.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/22/2021 | JMF | Review emails between Jeff Good and Jenny Prydozka and change order requests in preparation of the custodian of records of job costs | 0.70 | 295.00 | 206.50 |
| 10/22/2021 | JMF | Review SVO's production of documents on April 30th and later regarding job cost reports for preparation of custodian of records of job costs | 0.90 | 295.00 | 265.50 |
| 10/22/2021 | DF | Email to client regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/22/2021 | DF | Review email from client regarding [redacted] | 0.10 | 295.00 | 29.50 |
| 10/25/2021 | JMF | Review Vertiv counsel's email regarding production of SVO's Quickbooks Data in discovery | 0.10 | 295.00 | 29.50 |
| 10/25/2021 | JMF | Draft email to Vertiv's counsel regarding production of SVO's Quickbooks Data in discovery | 0.40 | 295.00 | 118.00 |
| 10/26/2021 | JMF | Review Vertiv counsel's email regarding location of quickbooks data in SVO's document production | 0.10 | 295.00 | 29.50 |
| 10/26/2021 | JMF | Draft email to Vertiv's counsel regarding location of quickbooks data in SVO's document production | 0.20 | 295.00 | 59.00 |
| 10/26/2021 | JMF | Review Vertiv's email regarding SVO's Quickbooks records produced in discovery | 0.20 | 295.00 | 59.00 |
| 10/26/2021 | JMF | Draft email to Vertiv regarding SVO's Quickbooks records produced in discovery | 0.60 | 295.00 | 177.00 |
| 10/26/2021 | JMF | Review Vertiv's email regarding SVO's Quickbooks records that were produced in discovery | 0.10 | 295.00 | 29.50 |
| 10/26/2021 | JMF | Review select RealTime CFO Quickbook documents produced in discovery in response to Vertiv's inquiry regarding SVO's production | 0.80 | 295.00 | 236.00 |
| 10/27/2021 | JMF | Review exhibits Vertiv presented during the custodian of records of job costs evidentiary hearing | 0.80 | 295.00 | 236.00 |
| 10/27/2021 | JMF | Review Quickbooks documents SVO produced in discovery in response to Vertiv's inquiry | 1.30 | 295.00 | 383.50 |
| 10/27/2021 | JMF | Review index of documents relief upon in response to Vertiv's inquiry regarding job costs not produced | 0.70 | 295.00 | 206.50 |
| 10/27/2021 | JMF | Review HKA David Bones report regarding recoop of fees of the DPR lien | 0.60 | 295.00 | 177.00 |
| 10/27/2021 | JMF | Review expert David Bones' report regarding delay damages and the cap on the contract price | 0.50 | 295.00 | 147.50 |
| 10/28/2021 | JMF | Telephone conference with Urlich Pelz and TM Attorneys David Frishman, and Ethan Kraft regarding [redacted] | 0.60 | 295.00 | 177.00 |
| 10/28/2021 | JMF | Telephone conference call with TM Attorney David Frishman and HKA experts Ken Baker and David Bones regarding HKA experts Phase 2 testimony on SVO's costs Swinerton lien impacts on damages | 0.70 | 295.00 | 206.50 |
| 10/28/2021 | JMF | Draft email to Vertiv's counsel regarding bate stamp numbers of SVO's Quickbooks produced in discovery | 1.40 | 295.00 | 413.00 |
| 10/28/2021 | DF | Telephone conference call with TM Attorney Julee Fritsch and HKA experts Ken Baker and David Bones regarding HKA experts Phase 2 testimony on SVO's costs Swinerton lien impacts on damages | 0.70 | 295.00 | 206.50 |
| 10/29/2021 | JMF | Review in Relativity the Quickbooks data produced by SVO | 0.40 | 295.00 | 118.00 |
| 10/29/2021 | JMF | Telephone call with Alisa at KLD regarding Quickbooks data in Relativity but not bate-stamped and produced by SVO | 0.40 | 295.00 | 118.00 |
| 10/29/2021 | DF | Review regarding status of evaluation of Swinerton mechanics lei and impact on SVO damages claims | 0.30 | 295.00 | 88.50 |

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



| | | | | | |
|---|---|---|---|---|---|
| 10/29/2021 | DF | Review and assess email from client SVO contact [redacted] | 0.20 | 295.00 | 59.00 |
| 10/30/2021 | DF | Telephone call with SVO auditor Tim Mahoney regarding [redacted] | 0.20 | 295.00 | 59.00 |
| 10/30/2021 | DF | Telephone call with client SVO contact Ulrich Pelz regarding [redacted] | 0.10 | 295.00 | 29.50 |

Sub-total Fees: $17,890.00

**Rate Summary**

| | | | | |
|---|---|---|---|---|
| Blaire G. Bayliss | Associate | 6.80 | hours at $225.00/hr | 1,530.00 |
| Robyne Dew | Paralegal | 3.50 | hours at $165.00/hr | 577.50 |
| Richard P. Dieffenbach | Senior Counsel | 11.30 | hours at $295.00/hr | 3,333.50 |
| David M. Frishman | Partner | 3.30 | hours at $295.00/hr | 973.50 |
| Julee M. Fritsch | Senior Counsel | 38.90 | hours at $295.00/hr | 11,475.50 |
| | Total hours: | 63.80 | | |

**Trust Account**

Beginning Balance: $0.00

Ending Balance: $0.00

**Total Fees:** $17,890.00
**Total Expenses:** $0.00
**Total Current Billing:** **$17,890.00**

**Statement of Account**

| Date | Invoice No | Invoice Total | Payments | Balance |
|---|---|---|---|---|
| 11/17/2021 | 91732 | 59,231.00 | 0.00 | 59,231.00 |
| 12/20/2021 | 93322 | 17,890.00 | 0.00 | 17,890.00 |
| **Balance Due** | | | | **77,121.00** |



CONFIDENTIAL

CASE: SVO Building One, LLC v. Liebert Corporation aka Vertiv v. SVO
CLAIM NO: CGL325269



**Payment by check sent via U.S. Mail should be sent to:**

Tyson & Mendes, LLP
Dept. LA 25187
Pasadena, CA 91185-5187

**Payment by check sent via FedEx/UPS should be sent to:**

Tyson & Mendes, LLP
Lockbox - 25187
14005 Live Oak Ave.
Irwindale, CA 91706-1300

**OR**

**Payment by wire transfer/ACH should be sent to:**

HSBC Bank USA. N.A.
452 Fifth Avenue, New York, NY 10018, United States
ABA Transit #: 021001088
Routing #: 022000020
Account #: [redacted]
Account Name: Tyson & Mendes LLP
Swift Code: MRMDUS33
Reference: Invoice # and/or client matter #

---

**When sending payment via wire/ACH, please send remittance advice information to cashreceipts@tysonmendes.com in order to guarantee proper allocation of payments.**

**All payments must be in U.S. Dollars**
**Questions relating to this invoice should be directed to:**
**billing@tysonmendes.com**

EXHIBIT "9"

Mr. Frishman for a second. I would prefer that he answer. But . . . . 3:26:04
We would be fine discussing the motion now considering we were planning on playing tape the remainder of the day. 3:26:37
THE ARBITRATOR: Okay.
MR. PHILLIPS: Can we -- if we're going to do that, can we take five minutes, I want to make sure I get Mark in here.
MR. TABRIZI: That's fine with us. 3:26:48
THE ARBITRATOR: Let's take a five-minute break. Let's take a ten-minute break.
MR. PHILLIPS: Thanks, Mr. Fisher.
MR. TABRIZI: Thank you.
THE ARBITRATOR: 3:40. 3:26:57
(3:27 p.m.)
(A recess was taken.)
(3:41 p.m.)
THE ARBITRATOR: Shall we go back on the record? 3:41:30
All right. I have received, I believe, all of the papers and have gone through them. As you know, the SVO papers were filed yesterday and I went through them yesterday and last night. And so I'm going to put the ball back in Mr. Phillips' court. 3:41:48

Do you have anything further to say, 3:41:50
Mr. Phillips?
MR. PHILLIPS: I'll be brief.
What struck me on the opposition is I think
there's just a fundamental misunderstanding by SVO of 3:41:58
what we're doing with this motion. Our initial motion
was for terminating sanctions, Mr. Fisher. You denied
that without prejudice and suggested, you know, refiling
it and I think you used the analogy of red card and
yellow card and soccer. You weren't ready to, you know, 3:42:18
bust out the red card.
So what we've asked for are lesser sanctions
and I believe some of that has been lost on SVO. I
thought we were pretty clear. I have the conclusion of
our renewed motion here very plainly sets forth that we 3:42:37
are no longer seeking terminating sanctions but the
lesser sanction, the incremental sanction that are
referenced in both the law we cited and the law that SVO
cited.
There -- you know, I'll just jump around a 3:42:55
little bit. You know, one of the requests is for
negative inference relating to the damages post what we
believe is an improper termination. We believe that the
evidence that has been submitted, we've had an
opportunity to hear from Mr. Laag, which I don't believe 3:43:14

he rebutted any of that evidence, is that, as of the date of termination, according to SVO's own representation to its lender and title company, when asked the very pointed, unambiguous question, is, you know, the project complete, the answer is it's complete and operational subject to the wall being -- being completed and punch list. 3:43:18 3:43:35

So SVO to suggest that that is an appropriate response to a lending institution and a title company when it was their position that at the time July 5th, that the project was not substantially complete, for them to give that answer to the lender and title company as contemplating loaning them millions of dollars, it's beyond the pale. I don't even know how to respond to that. 3:44:01 3:44:18

It's a clear question with a clear answer. It's not really subject to interpretation.

So -- and that message we heard before July 5th and internal communications and presentations to SVO's board. And following that, the representations were consistent with respect to what was told to the lenders on July 5th that the project was essentially -- was complete by Vertiv. The videos we saw support that and corroborate that. 3:44:36

You know, this notion that those are snapshots 3:44:56

CONFIDENTIAL

in time that were forward thinking is when you say that 3:45:00
8 megawatts are available now, and that data hall center
improvements are complete now, you mean that they're
complete now, not now in some future point in time.
So, you know -- and also with Mr. Beihagi, 3:45:17
which obviously there's a lot of declarations, I didn't
see one from Mr. Beihagi, there's no delay analysis
following the termination of Vertiv. And when you
combine that with the representations made by SVO and
then you combine that with the documents that weren't 3:45:33
timely produced relative to "The Tenant" -- I'm sorry,
or tenant, Swinteron, and the job cost records, we
believe -- and then the position that, Mr. Fisher,
you've acknowledged that Vertiv is in, we do believe
that the sanctions are warranted and really required in 3:45:55
order to establish a fair playing field. And you will
recall and we will all recall, you know, that's one of
the first things that Mr. Frishman was jumping up and
down demanding when they first got involved in this
case. They wanted a fair arbitration and that related 3:46:13
to documents.
The irony is that we are in that position now.
That's been acknowledged. And something needs to be
done about it.
And we've given -- you know, and Mr. Fisher, 3:46:28

you know, we've given you what we request are the appropriate sanctions and we refiled a motion based on what we perceive to be an invitation to do so. But you're acting as a trial court in these proceedings as agreed to by the parties and expressly set forth in Section 9.3 of the turnkey agreement. You have the authority to sua sponte issue whatever sanctions, remedies, or whatever you feel is appropriate to carry out a fair proceeding. And that's exactly what we're asking you to do. 3:46:30 3:46:44 3:47:05

So unless you have any other questions from us, you know, that's essentially -- we're not -- you know, we've gone over the opposition and we're not -- we don't think there is anything persuasive in there to really explain adequately the position that Vertiv has been unfairly put in. 3:47:21

THE ARBITRATOR: All right. Mr. Dieffenbach, anything to add to your papers?

MR. DIEFFENBACH: Well, I would just say, Mr. Fisher, that this facility was not completed. It was not up -- it was not completed in accordance with what Vertiv promised SVO it would deliver. It was not occuppiable. It could not handle a tenant. It did not have the conditions necessary for commissioning. It did not have the conditions necessary for a certificate of 3:47:34 3:47:58

occupancy, even a temporary certificate of occupancy. 3:48:02

The evidence that we put forth with Mr. Laag with the CPS field reports shows wires not connected, shows floors cracked, shows ceilings missing, shows walls missing. 3:48:16

We had testimony from Vertiv's own expert earlier that the building had to be sealed up tighter than a drum in order for the -- the -- the cooling systems to adequately work and to properly allow the place to function. That wasn't possible in this -- in 3:48:31 this unsealed building.

The statements on YouTube which are practice advertising basically, are not sworn statements to some tenant that we're ready to go for you. They are advertisements. It's what they are. They are nothing 3:48:54 more than that.

Statements to lenders are couched in conditional terms saying that things are not completed. They are largely completed but not fully completed, and they're certainly not in compliance with what -- what 3:49:06 Vertiv promised, first of all.

So those things, on this unclean hands argument, is an equitable argument and you may recall that Vertiv's not entitled any remedy under law or equity due to their violation of 7031, No. 1; No. 2, 3:49:25

CONFIDENTIAL

Vertiv's not harmed by puffery that SVO makes about its facility. 3:49:31

Vertiv delivered an incomplete building that was inadequate for the purpose that it had signed up for and was six months past the due date that it had promised it would complete the building. 3:49:45

So on the facts, those are the facts. That's the evidence.

On the sanctions issue, there's no basis for sanctions here. There's no concealment, no willful hiding of the ball. It doesn't make any sense that Vertiv would do that or that SVO would do that to conceal its own damages or the basis for its own damages. 3:50:00

The documents relating Swinteron, the documents relating to the tenant don't have anything to do with Data Hall 1 damages and -- and in good faith we believe that they were not related to the damage claims here. They have been produced. 3:50:17

The QuickBooks information is not going to help anybody because its rudimentary. The lender reports, everything else that has the details that show what was reported to the lenders are -- are in Vertiv's possession. 3:50:37

You know, this -- it just smacks to me of an 3:50:58

attempt to, as our papers say, pound the table when 3:51:00
there's really no -- no basis in law for -- for this
motion or for the complaints that Vertiv is raising in
the motion.

You know, we're putting on the best case we 3:51:16
can, and the evidence is there to support our claims.
They're not precluded from any evidence that would
defeat those claims. We're not -- we're not interested
in hiding the ball.

THE ARBITRATOR: And my views I've expressed 3:51:33
before. I went over them quite a bit in the November 10
hearing, and I was wrestling back and forth as we were
going along here trying to deal with what I see is a
difficult situation to kind of resolve.

And that's basically trying to conclude the 3:51:53
arbitration in the time we have fairly or to remove any
doubts of fairness and put everything over, which SVO
has kindly agreed to do for a period of time to examine
all of these documents. And I also wanted to say to
check to see what happened with the tenant and their 3:52:15
case. And to see generally where we're going and how
it's headed and what the relevance is of -- of the
documents that are kind of -- I say in question.

So -- excuse me.

So having wrestled with that, let me go back 3:52:36

and repeat a little bit to where I think we are. 3:52:41

And that is that with regard to the -- well, the tenant documents, obviously that's a -- that's a real problem to me. That was -- the subpoena I issued was September 17, and now here it is December 6th. They 3:52:56 haven't produced anything. And, in fact, with regard to their various motions, they delayed everything until the Court finally had its preliminary ruling and then I think a week ago or so came up with its final ruling. And the ruling was that has been true all along. 3:53:18

I mean, the whole arbitration act when I go back to the original conversation I had when Mr. Frishman joined, arbitrations are a method of dispute resolution that are sanctioned under the State of California to resolve disputes fairly. 3:53:33

There -- this dichotomy that SVO tried to raise that the statement that -- that there's no jurisdictional or legal basis to compel compliance by a nonparty to testify and/or produce documents in response to an arbitration subpoena. That statement is just 3:53:56 flat-out false. And the -- and SVO knew that. And to try to distinguish and hide behind a false statement -- a splitting of hairs that, well, of course I have authority to issue a subpoena. But I don't have any authority to enforce the subpoena. And I think -- and 3:54:15

they told the tenant that, that I didn't have authority, 3:54:20 that I admitted I hadn't had that authority.

But the Court gives authority for me to do what I do, issuing a subpoena without enforcement is worthless. So the whole arbitration system depends upon 3:54:31 the Court enforcing that. And now we've done it twice. Once we went with DPR and we established all of that. And then along comes the tenant who -- who starts talking and communicated with SVO. And I'm not sure it's by coincidence or not, but both the objection by 3:54:53 SVO to -- in the arbitration to the Swinteron documents and the letter from the Perkins Coie people as to why they don't need to comply have the identical same language.

"The Tenant" objects to your subpoena to the 3:55:12 extent there is no jurisdictional or legal basis to compel compliance by a nonparty like "The Tenant" to testify and/or produce documents in response to an arbitration subpoena.

45 or 50 days to establish, that's false when 3:55:25 everybody knew it. So that just delayed the whole thing on the tenants. And I think the tenant documents are significant. I don't care what anybody else thinks.

I don't care if tenants don't want to do due diligence. I'm surprised at that. But documents of -- 3:55:40

that are relating to the tenants and negotiations with the -- with the owner are very relevant and germane. 3:55:44

And the -- and if there is any question, I went back over the Court opinion, they agreed with the arbitrator on about five different points including breadth, including resolution of disputes regarding them, including discussions between SVO and -- and the tenant regarding the lease or regarding the production of documents in this case. They upheld all of that. 3:56:01

And I've gone over those documents before about the -- you know -- and SVO came in originally with the tenant subpoena and not only objected but they claimed every right that any Republicans ever claimed on any issue that they had absolute rights to do what they wanted and, in fact, they were going beyond that and they were instructing the tenant not to produce any documents. 3:56:22 3:56:45

And I immediately responded to that and ordered that SVO instruct the tenant to produce those documents that it had. SVO didn't do that. They went back and said, well, you gotta make your decision and we've had experience with this and the Courts uphold it. But what they didn't really -- they didn't honor that instruction which might have facilitated things. 3:57:02

So here we are now with 10 or 11 days left of a 3:57:17

three-and-a-half-year proceeding without those documents 3:57:21
and SVO has argued that they -- they haven't -- they
didn't disclose anything about construction to anybody
and all kinds of things. That may or may not be true.
I find it difficult to believe, but that could be, but 3:57:37
still, we don't have time to sort all of that through.
And then we have the two instances of -- well,
the one instance -- well, and -- during that process,
there were some more documents related to marketing that
were produced. 3:57:52
And then we have the Swinteron issues where
Swinteron -- more documents with respect to Swinteron
were produced.
Now SVO claims they're not really relevant or
pertinent. But again, I read over the Swinteron 3:58:03
document by Mr. Good, I mean, Swinteron is all over this
case both with respect to repair, with respect to
scheduling, with respect to costs, and have all of those
documents produced at the last minute when they were all
supposed to have been produced before, even if it was a 3:58:23
clerical error creates a real problem. Because those
are significant issues.
And we've gone over and I've asked, Swinteron,
you know, I've used the word "Swinteron," it was
replaced by "general contractor," you know. I'm not 3:58:35

going to parse words. But they did things on a 3:58:38
time-and-material basis to repair and complete
Data Hall 1. They did replace Vertiv on Data Halls 2
and 3. And they -- those are significant documents.
And then finally, the documents that were 3:58:55
concerning me were the -- the job cost records. And as
I've said before, that Mr. Pelz has acknowledged,
they're only invoices during the first hearing. We
established they were worth 3- or 4 million. I
understand now may be worth 5 or 7. 3:59:15
We had discussions November 10 about producing
the invoices or identifying them or amounts or do
something so that we would have an even playing field.
And I haven't received that yet. I did get the expert
information of repair including estimates or invoices. 3:59:30
But those are going to require, I believe, I don't think
they're specific invoices, they're apportionments of
invoices have got to be involved in that.
And the apportionments of invoices, how an
invoice is apportioned, Mr. Pelz acknowledged that was 3:59:46
work product and he would work that out with the lawyers
and with -- you know, when he turned it in, and he's
also talked with, you know, the relativity database and
the experts have. And the experts have apportioned
those. And in part, on based on what he, Mr. Pelz, has 4:00:05

said. And so that creates a huge difficulty, too, in sorting all of that through. 4:00:11

And complicated by the fact that the experts then acknowledge that they had other records that hadn't been produced. The invoices or operating costs or something and they took them out of the report. 4:00:25

And even the declarations that come into this filed with the stuff yesterday, you know, says they didn't rely on any of this other thing for their information, but they didn't acknowledge, they didn't have access to it or have it. They're trying to tailor their opinions to information that's not disputable. They don't have to get into those gray areas. 4:00:43

But those gray areas could well be fertile cross-examination grounds to find out why they didn't do it or to cross-examine why they did. So that basically, I find that we -- it's -- I can't say and as Vertiv has claimed that it does put them in a difficult position, they don't want to postpone another time to go do another time. They don't want to be unfairly treated. But it does -- so how do we have, in this circumstance, through these faults of partially due to responsibility of people, partially due to clerical errors, but what we've got to real mess. 4:01:00 4:01:21

And we've got a real mess that's occurring 4:01:39

three and a half years, maybe longer, after the agreement was signed, probably three years after the -- let's see, June, when was it terminated, June of 2018? So three -- it was terminated three and a half years ago, Vertiv was, as SVO would say, was justifiably terminated for breach, and we've got a situation where things are still uncertain. There's no -- there's no closure. They're still finding defects all being done for three and a half years. 4:01:42 4:01:57

So my view as an arbitrator, and to be fair to everybody, is to bring this to a conclusion that is fair. 4:02:16

And I -- and therefore, to figure out how we can have the time done in the next ten days to finish this fairly, I don't want to postpone it again. I haven't wanted to postpone this -- I've reluctantly agreed to postpone it because it was necessary six times probably. And we all know the circumstances, changed counsel, this, that, whatever. 4:02:33

But, you know, this -- this case has a life of its own that just isn't proper. It's basically -- this isn't life ending or life -- hugely big case that needs full resolution. This is a construction case of a 2-megawatt data hall, which I understand is now a small data hall. 4:02:50 4:03:11

And it was done -- there was a executive report, substantial commissioning report done three and a half years ago. There were a list of to-dos. There's several descriptions of what was to do and the punch list and all of that sort of stuff. But it's now three years later, that hasn't been completed. 4:03:12 4:03:30

We have partial things that the owner has agreed -- well, has decided that they need to fix that are apparently 3- to $7 million worth of -- 3- to $7 million worth of invoices somewhere. But nothing else. 4:03:45

He's got a hundred claims of additional things to do. This isn't a gift that keeps on giving. This is a construction case that needs to end. And I see it as a big responsibility to end that case fairly. 4:03:59

Now, with all of that in mind, the way I think it should be done, what I will do is to -- "sanctions" is a word that sounds punitive. I'm not trying to punish anybody. But I am trying to fairly do -- fairly proceed. And I'm going to do that by limiting the evidence much like a motion in limine. 4:04:19

And I think that the evidence should be -- the damage evidence should be limited. I think the -- given all of this turmoil over the tenant and all of that, lost profits, I'm going to bar evidence on lost profits, 4:04:36

CONFIDENTIAL

lost rents, cost of capital, you know, delay. 4:04:43
I'll leave open liquidated damages. And I will leave open the cost to repair, to complete or repair which is a huge battleground in itself. But I think we can fit that in given what I understand the records are. 4:05:02
So that's -- I'm not sure if that's a sanction or not a sanction. But it's clearly a limitation on evidence based upon work product, based upon obstruction -- notice providing records timely, of obstruction with third-party witnesses and documents and 4:05:22 I've given everybody two opportunities to brief these issues.
I do agree a little bit with Mr. Phillips. I read through all of those documents, and I was particularly interested if anybody was saying that going 4:05:41 back that we didn't have documents, they didn't have, or, you know, go back to this discrepancies between like Mr. Baker in his declaration and his deposition. He didn't deny the deposition, he just vagued it up. But there's nothing further there. 4:05:58
I received another one with the other experts that kind of come in and say they've got all of this and there are things to say. But that doesn't change the real problem I've got.
So my intent is to go forward limiting -- if I 4:06:12

just look at the third amended statement of damages, 4:06:17
limiting damage evidence to the cost to repair or
replace Liebert's Phase 1 scope of work, excluding
evidence really of the damages related to lost profits
in the $22 million, exclude damages related to increase 4:06:36
financing costs of $6 million, exclude damages related
to lost opportunity cost of equity of 4-or $5 million,
and the delay damages on liquidated damages and whatnot
I'm leaving open. And that we can proceed.
Then with that limitation, deal with the other 4:07:03
remaining issues of the case, which I think we can
pursue according to the schedule we presently have,
which is December 15 for SVO to conclude its case,
Vertiv to rebut or reply, and then we can have the last
day of this hearing on December 22nd. 4:07:29
I think I've also, going back to the baseball
arbitration provisions where the best and final offer
both sides, in other words, it's been used on that
basis, and I do think it's important that we have those
offers. And so what I'm -- I've asked for one on the 4:07:47
13th. My present intent is to have one either in a --
well, let me think.
If we finish on the 22nd, we can either have
another round of revised or better offers or not. Then
that's probably what we ought to do. Or alternatively, 4:08:10

have whatever briefing wants to be done and couple that with an offer and I think maybe both offers would be good. So then after we finish on the 22nd, we have a Christmas break. We have a period for briefing and submission of another proposed offer. 4:08:13 4:08:27

And then after the briefing on those submissions, I will read the briefs and then I will set a date if I think another offer is necessary for a final and best offer, and the hearing, although we won't have any more evidence after the 22nd on the schedule, the hearing won't be closed until I get the briefing and the offer -- well, the hearing won't be closed until I get the two last and best offers. Then we will close the hearing and I have time to decide which one it is. The dates aren't that clear, but that's what I'm thinking. 4:08:43 4:08:58

So --

MR. FRISHMAN: May we be heard, Mr. Fisher?

THE ARBITRATOR: You can make your statements for the record in a minute. Let me think what else I need to be done. 4:09:12

I don't think so on the -- I believe I'm in compliance with the -- although I'm not labeling it "sanctions," I am labeling it "evidence control." And if it is a sanction, so be it, it is. But even if it is a sanction, I am authorized under Rule 58 to order 4:09:34

appropriate sanctions where party fails to comply with 4:09:39
obligations under these rules or an order of the arbitrator and if I do limit or terminating, I do in writing and require the submission of evidence and legal argument prior to making the award or enter a default 4:09:53
and provide a party that is subject to the request with an opportunity to respond prior to making a determination.

I believe we've done that. We've had two rounds with all kinds of stuff so that's all done. 4:10:05

We have orders. The orders are to produce everything by April wasn't complied with even if it was a clerical error.

The instruction on the tenant subpoena, to some extent on the Swinteron, all of which have created an 4:10:18
area that to complete this fairly and can be done. And I think -- well, I've said what I've said.

So if you'd like to make statements for the record, go ahead.

Mr. Frishman. 4:10:35

MR. FRISHMAN: Just a couple statements, Mr. Fisher, since there was quite a bit there.

Obviously we view this as a significant sanction and one that's inappropriate.

You know, I would just start and wanted to make 4:10:48

it clear, we understand that you disagreed with our 4:10:51 objections to the tenant subpoenas as well as the Swinteron subpoena. But as we have previously advised, we made those objections in good faith.

I also wanted to make it very clear: We never 4:11:07 ever obstructed anything with respect to the tenant subpoena or Swinteron subpoena. And also, we never ever told the tenant not to produce documents in response to the subpoena.

As we've previously stated, when we received 4:11:28 that subpoena -- I'm sorry, when we received a call from the tenant, they asked us questions, we told them we thought the subpoena was enforceable. We gave them our history with DPR. We told them that, as it turned out, we felt the subpoena was enforceable. The arbitrator 4:11:50 acknowledged that they could not compel, could not compel the appearance personally; that we had to go to court, and we went there and we were successfully able to compel DPR to court. And that's all we told them.

We gave them a copy of the motion for their -- 4:12:07 for their edification. We don't believe that's obstruction or anything wrong with that. You know, at this point, they've had these documents for some time, Mr. Fisher, and in fairness, the more balanced approach when you actually look at the history of this case and 4:12:28

CONFIDENTIAL

why we're here three years, it's not just because of new attorneys. That's part of it. But you're more familiar with the actual, you lived the actual history and you're aware of all of the continuances, but it dealt with lots of document production issues. 4:12:31 4:12:47

It started with 73 trade secrets that took the better part of a year to clean up in this process going back and forth between the state court and the federal court and the arbitration.

It started with then a document production and a motion for summary judgment. In between that, there were continuances going on. There were document production issues, and they were bona fide irrespective of how they panned out. 4:13:02

You know, Vertiv has had these documents now for a couple of months. And I can't help the tenant situation. It's not anything we -- we covered. 4:13:17

Swinteron's produced all of their documents. And to issue such a harsh sanction, you know, you can call it "evidentiary control." It's certainly not incremental. It's a jump almost to the finish line here. And it seems to me that the better course would be to do a continuance. 4:13:38

This is a private arbitration. I understand that it's been three and a half years. That's not the 4:13:54

CONFIDENTIAL

fault of my office or my client, per se, or -- or, for 4:13:58
that matter, Vertiv. The case is what it is. It's been
a moving -- a moving target. There's been a lot that's
happened.

This thing started and it could never have 4:14:10
been -- and I've said this to you before, and I say it
again with all due respect, it could have never, when
you look at this case, been -- been arbitrated so
quickly. We could be in a long cause case, you know, if
we were in the Superior Court. And I'm not advocating 4:14:26
that, but it's a big case with a lot of claims that we
believe the evidence supports with a lot of claims that
involve significant dollars with bona fide loss of rent,
loss of profits. Those claims were always listed from
day one on a statement of damages. And now you're going 4:14:48
cut them all? I don't think so.

I think the better way to do is say wait a
minute, this is a private -- private arbitration. You
guys are paying for it. I appreciate you all have
calendars. I'm going to accommodate. I want to level 4:15:03
the playing field to the extent that you believe there's
prejudice. And we will go as far as we can go and we
will pause until after the Christmas break. And/or
whenever counsel's trial is over and we'll recommence.
That, to me, is the reasonable fair measure, not 4:15:22

slashing a significant component of SVO's claims. 4:15:28
Especially when there was no intent.

I mean, the documents were not produced intentionally. They were not withheld. Certainly Vertiv looked at these documents to some extent and they 4:15:42 don't even produce one. I mean, you haven't heard the evidence testimony but Vertiv's own experts, I'll represent, have said there's a loss of -- of rental claim here.

It just -- it's too harsh, Mr. Fisher, and we 4:15:57 respectfully disagree with that.

I don't know if my colleagues have any other issue to chime in on.

Jamie, do you have anything?

Richard, anything further from you? 4:16:10

MR. DIEFFENBACH: No, nothing further.

I just -- I think it's an inappropriate time to award sanctions in this matter. I just don't -- I don't think there's really a procedural basis for it. But we've put it all into the papers. 4:16:24

MR. FRISHMAN: And, you know, I would move on to the next thing because I think you've been copied on some of these -- well, all of the scheduling emails, we have been doing everything to streamline our case, which is quite big. You know, as it turns out, we just 4:16:40

realistically won't be able to complete this case by the 4:16:48 15th. What we have coming is an ambitious Thursday, we have a light day tomorrow but that's really because we have accommodated Mr. Sloss at his request with the understanding that, you know, we can't lose that time 4:17:06 and move Mr. Laykin on to Thursday which makes it anxious.

I can forecast Friday. We have Mr. Good, Mr. Smith, and another expert.

Moving to Tuesday, the 14th, we have Mr. Pelz 4:17:25 who we expect will last all day for a number of reasons, there's a lot here, a lot of evidence, a lot of story. And we do have some language issue so he tends to go a little bit slower. And we would expect significant cross-examination of him. And that still leaves us four 4:17:46 experts.

So it's pretty consistent with what I had said earlier, which was, you know, December 17th or 18th was what we were looking at realistically. And I would note that this is after slashing and streamlining. 4:18:02

As far as the video is concerned, you know, we can still play video if there's any downtime. But we are amenable to submitting transcripts along with the excerpts. There are -- you know, we would request probably that at least one or two videos, you know, be 4:18:24

viewed by you, but you could do that on your own. But that's where we are at. 4:18:26

We can't bring this case in, you know, by the 15th. We've just looked at it every single way. We've got multiple third-party witnesses. We don't control them all. It is the holiday season. And a lot of these witnesses are long, Mr. Fisher, and certainly fairness would allow us to put on our full case. 4:18:39

And I'll remind -- you know, remind you that I mentioned this, you know, even in Phase 1 or prescheduling hearings where I said, listen, we needed more time. Our case was big, and we were going to need additional days. And you certainly didn't rule that out. You left that open because I believed you recognized you wanted the parties to put on a case. You wanted to hear the case. 4:18:57 4:19:14

And so with that, you know, again, we need until the 17th, 18th to conclude our case. And, you know, we would certainly request that you simply continue the matter to level the playing field as opposed to issuing what we don't view is an appropriate sanction or even an incremental sanction but rather one that's -- that's very harsh and that's our case. 4:19:30

I mean, the way to do this in a private arbitration where the parties are paying for it and 4:19:49

where the arbitrator is getting paid and -- and, you 4:19:52
know, triple A is getting paid is to level the playing field. It's not intentional what happened here with the document productions. It's that simple.

I would -- well, I'll leave it at that other 4:20:06
than my understanding and, you know, Mr. Phillips can -- have been copied on this. We, just for transparency, over the weekend we received an email from counsel for "The Tenant," you know, asking for something from us. And I told her we can't do anything due to the court 4:20:25
order. They wanted to know certain information apparently about what we -- we had produced and we said we can't do that. And I said, you know, you go and talk to -- to Mr. Phillips. And if you can reach an agreement with Mr. Phillips and the arbitrator, we'll do 4:20:47
that. The last I saw was that there was supposed to be some meet and confer and we have heard nothing further, but it's not like Procopio is not looking at these tenant documents. And I had also mentioned that we still have the custodian of records documents issue that 4:21:06
I don't know when that's going to be resolved.

And so I don't have any further to say other than I do think the ruling is extremely harsh. I do view it as a sanction that's not merited, it's to the end and I'll leave it at that. 4:21:29

THE ARBITRATOR: Thank you. 4:21:32
MR. FRISHMAN: Ask that you reconsider it.
THE ARBITRATOR: Mr. Phillips, anything further?
MR. PHILLIPS: Mr. Fisher, no, unless there is 4:21:37 anything -- I mean, I think we've fully briefed this and we have argued this ad nauseam and I think that horse is pretty much dead on the side of the road unless there is anything you want to hear from us in response to what you just heard Mr. Frishman say. 4:21:50
THE ARBITRATOR: No, I don't think so. Okay. Well, we could proceed with a video, but I think given the import of all of this, it's best we just break for the day and start fresh in the morning.
MR. FRISHMAN: What about my request for 4:22:19 additional time to complete our case?
THE ARBITRATOR: We will deal with that as we go along and see how the case goes. I mean, I've -- I -- contrary to what -- I will -- my goal is still the same is to have a fair arbitration and we need to take 4:22:34 what it can given all of the circumstances. And I don't intend to arbitrarily cut you off if we're making progress.
MR. FRISHMAN: Last clarification, nonbinding initial offer on the 13th. Did you mention the 22nd for 4:23:01

a second offer? 4:23:04
THE ARBITRATOR: I did, but that's one I'm not sure on. I put that out really more for discussion.
MR. FRISHMAN: Got it.
THE ARBITRATOR: You might think about that. 4:23:13 It may be depending on the 13th, what that looks like. And my intent is to have the final and best after any briefing people want to do in consideration to what the offers are to that point. That's kind of where I'm headed. 4:23:30
I've done a bit of looking at the -- how these are used and they're used in various ways and it's not a lot of procedures in law on how the best way to do it is and I'm trying to implement a procedure that's, as they say, fair and workable. 4:23:47
MR. FRISHMAN: All right. You'll let us know?
THE ARBITRATOR: I will.
MR. FRISHMAN: All right. Thank you.
THE ARBITRATOR: Thank you.
All right. We'll meet again tomorrow at 9:00. 4:23:59
MR. PHILLIPS: Thank you, Mr. Fisher.
MR. DIEFFENBACH: Thank you.
THE ARBITRATOR: Thank you.
- - -
(Proceedings were adjourned at 4:24 p.m.) 4:24:05

# EXHIBIT "10"

*Highly Confidential - Outside Attorneys' Eyes Only*

# SVO BUILDING ONE, LLC PRELIMINARY DAMAGES EXPERT REPORT

## JUNE 14, 2021

| | |
|---|---|
| PREPARED BY: | DAVID R. BONES |
| PREPARED AT THE REQUEST OF: | TYSON & MENDES, LLP |
| PROJECT: | LIEBERT CORPORATION V. SVO BUILDING ONE, LLC |

HKA GLOBAL, INC.
ONE COMMERCE SQUARE
2005 MARKET STREET, Suite 820
PHILADELPHIA, PA 19103

**TABLE OF CONTENTS**

**1 INTRODUCTION AND QUALIFICATIONS** ..... 1
**1.1 Overview of Engagement** ..... 1
**2 PROJECT BACKGROUND AND ALLEGATIONS** ..... 2
**2.1 Parties** ..... 2
**2.2 Project Background** ..... 2
**2.3 Allegations By SVO** ..... 4
**3 EXPERT REPORTS OF KAMYAR BEIHAGI, GERALD HARTFORD, JEFFREY SMITH, KENNETH BAKER, AND IAN BITTERLIN** ..... 5
**4 DAMAGES CALCULATIONS** ..... 6
**4.1 Commercial Damages** ..... 6
**4.2 Direct Damages** ..... 25
**4.3 Delay Damages During the Contract Period** ..... 27
**4.4 Statutory Disgorgement Penalty** ..... 27
**4.5 Summary of Damages** ..... 28
**5 ALLEGED INTELLECTUAL PROPERTY DAMAGES** ..... 29
**5.1 Discussion of Mr. Napper's Schedule 1 Damages of $22,000** ..... 29
**5.2 Discussion of Mr. Napper's Schedule 2 Damages of $907,000** ..... 30
**5.3 Discussion of Dr. Hofmann Disclosure** ..... 31

## 4 DAMAGES CALCULATIONS

I have developed the following opinions based on my evaluation of currently available information:

- SVO's damages related to lost profits are $22,854,715 including prejudgment interest.
- SVO's damages related to increased financing costs are $6,248,772.
- SVO's damages related to lost opportunity cost of equity are $4,359,861 - $5,235,842.
- SVO's direct damages are $16,312,647, not including prejudgment interest.
- SVO's delay damages are $825,000, not including prejudgment interest.
- SVO's total economic damages are therefore $50,600,995 - $51,476,976.
- SVO's statutory disgorgement penalty is $9,442,035 including prejudgment interest.

### 4.1 COMMERCIAL DAMAGES

As discussed in Section 2.3 above, SVO contends it has suffered lost profits attributable to the Vertiv Impacts. I calculated lost profits as the difference between the profits SVO would have made but-for Vertiv's Impacts and the profits SVO actually made and is expected to make in the future. The lost profits damage period begins in February 2018, the first month that SVO expected to earn rental revenue from Data Hall 1, and ends in June 2021, the month prior to when Building One is projected to be fully leased.[30]

The Project delays and increased construction costs caused by the Vertiv Impacts caused SVO to refinance its existing debt earlier than anticipated, at a higher interest rate than anticipated. The period over which I evaluated increased financing costs begins July 27, 2017, the effective date of SVO's initial construction loan, and ends November 13, 2021, as I understand that SVO is currently planning to refinance into a lower-cost term loan after this period. Once that term loan is established, SVO will no longer be incurring increased debt financing costs, assuming SVO recovers its other damages as a result of arbitration.

[30] Based on current projections, SVO anticipates fully leasing Data Halls 1, 2, and 3 by July 2021. *See* SVO-00458183.

prejudgment interest.[123] Including prejudgment interest of 10%, the statutory disgorgement penalty totals $9,442,035.[124] See Table 14 below.

**Table 14 - Statutory Disgorgement Penalty**

| Invoice Number | Date Paid | SVO Payment | Periods | Prejudgment Interest | Total Disgorgement |
|---|---|---|---|---|---|
| 51000012 | 05/30/2017 | $ 400,000 | 4.15 | $ 166,000 | $ 566,000 |
| 51000016 | 07/12/2017 | 53,764 | 4.03 | 21,667 | 75,431 |
| 51000017 | 08/31/2017 | 1,258,299 | 3.89 | 489,478 | 1,747,777 |
| 51000018 | 10/12/2017 | 131,363 | 3.78 | 49,655 | 181,018 |
| 51000019 | 11/14/2017 | 1,309,414 | 3.69 | 483,174 | 1,792,588 |
| 51000021 | 12/15/2017 | 1,327,877 | 3.60 | 478,036 | 1,805,913 |
| 51000020 | 12/27/2017 | 500,000 | 3.57 | 178,500 | 678,500 |
| 51000022 | 01/17/2018 | 170,679 | 3.51 | 59,908 | 230,587 |
| 51000024 | 02/13/2018 | 438,933 | 3.44 | 150,993 | 589,926 |
| 51000025 | 04/10/2018 | 955,054 | 3.28 | 313,258 | 1,268,312 |
| 51000030-1 | 05/08/2018 | 378,523 | 3.21 | 121,506 | 500,029 |
| CO 005 | 07/06/2018 | 4,566 | 3.04 | 1,388 | 5,954 |
| **Total** | | **$ 6,928,472** | | **$ 2,513,563** | **$ 9,442,035** |

## 4.5 SUMMARY OF DAMAGES

Based on my analysis presented above, it is my opinion that SVO's damages are as follows:

- SVO's damages related to lost profits are $22,854,715 including prejudgment interest.
- SVO's damages related to increased financing costs are $6,248,772.
- SVO's damages related to lost opportunity cost of equity are $4,359,861 - $5,235,842.
- SVO's direct damages are $16,312,647, not including prejudgment interest.
- SVO's delay damages are $825,000, not including prejudgment interest.
- SVO's total economic damages are $50,600,995 - $51,476,976.
- SVO's statutory disgorgement penalty is $9,442,035 including prejudgment interest.

[123] Exhibit 6.

[124] Exhibit 6. Prejudgment interest is calculated as of the scheduled arbitration date of July 22, 2021, using simple interest of 10% in accordance with California Civil Code, § 3289.

# EXHIBIT "11"

Robert H. Sloss (Bar No. 87757)
Mark G. Budwig (Bar No. 126045)
Scott R. Omohundro (Bar No. 179421)
Laurence R. Phillips (Bar No. 190152)
PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP
12544 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone: 858.720.6300
Facsimile: 619.235.0398
E-mail: robert.sloss@procopio.com
mark.budwig@procopio.com
scott.omohundro@procopio.com
laurence.phillips@procopio.com

Attorneys for Claimant/Counter-Respondent VERTIV CORPORATION (fka LIEBERT CORPORATION)

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LIEBERT CORPORATION, an Ohio corporation,<br><br>Claimant,<br><br>v.<br><br>SVO BUILDING ONE, LLC, a Delaware limited liability company,<br><br>Respondents. | Case No. Case No. 01-18-0003-1318<br><br>**VERTIV CORPORATION'S *RENEWED* MOTION FOR SANCTIONS AGAINST SVO BUILDING ONE, LLC**<br><br>Arbitrator: George C. Fisher |
| AND RELATED COUNTERCLAIM. | |

Claimant and Counter-Respondent VERTIV CORPORATION (fka LIEBERT CORPORATION) ("Veritiv") hereby submits the following *Renewed* Motion for Sanctions Against SVO Building One, LLC ("SVO"), (hereinafter referred to as "Motion").

/ / /

/ / /

/ / /

/ / /

/ / /

## I. INTRODUCTION

As made abundantly clear in Vertiv's prior Motion for Terminating Sanctions, SVO has failed and refused to produce thousands of documents relevant to its alleged damages. The improperly withheld documents relate to the Tenant lease, the "close out" of Swinerton's work, and SVO's job costs. SVO also improperly provided its experts access to a database which included documents never made available to Vertiv, and then sought to produce select documents through those experts. The prejudice to Vertiv is extreme, irreversible, and has been expressly acknowledged by the Arbitrator. It is fundamentally unfair that Vertiv has been forced to proceed with the evidentiary hearing handicapped as a result of being deprived of the opportunity to adequately process and analyze the improperly withheld documents. As of the filing of this Motion, the Tenant has yet to respond to Vertiv's evidentiary hearing subpoena and produce its own documents, which the Arbitrator has correctly determined could not be more germane or relevant to the issues in this arbitration.

Now that the parties are five days into the Phase 2 evidentiary hearing, it also has become abundantly clear that SVO cannot prove either its claim for the cost to repair/replace/complete Vertiv's scope of work (in the amount of $21.3 million) or its claim for lost profits/financing costs/cost of equity (in the amount of $34.2 million). As plainly demonstrated by the testimony of Messrs. Laag and Pelz on November 23, 2021 and the corresponding admitted exhibits, since July 2018 (*prior to terminating Vertiv*) SVO has acknowledged and repeatedly represented that Vertiv's scope of work (Data Hall 1) was <u>complete and operational, subject only to the completion of a screen wall and punch-list</u>.

The representations from Messrs. Laag and Pelz to SVO's construction lenders, Board of Directors, insurance carriers, and to potential/existing tenants were <u>consistent and remained unchanged from June 2018 through 2020</u>. These unequivocal representations are also entirely irreconcilable with SVO's current claims totaling over $65 million. SVO was either grossly misrepresenting the status of the project to its existing and prospective lenders (which would be tantamount to bank fraud), insurance carriers, and tenants, or, much more likely, SVO has been grossly misrepresenting the status of the project upon Vertiv's termination to the Arbitrator. Either

way, SVO has proved to have demonstrably unclean hands.

In light of (i) SVO's failure and refusal to produce all documents relevant to its damages; (ii) SVO's obstruction of Vertiv's efforts to obtain an independent production from Tenant; and (iii) the admissions of Messrs. Laag and Pelz, SVO must be precluded from seeking to introduce evidence in connection with its claim for lost profits/financing costs/cost of equity (i.e., consequential damages). Indeed, the documentary evidence and admissions from SVO plainly establish that Data Hall 1 was operational and Vertiv had substantially completed its scope of work at the time it was improperly terminated in July 2018.

Not surprisingly, SVO's experts conducted no post-termination delay analysis.[1] SVO's attempt to place liability on Vertiv for any alleged delays to the project between July 23, 2018 and February 2021 is irreconcilably at odds with the admitted evidence (and unsupported by expert testimony), and as such no further time and money should be wasted in connection with SVO's claim.

In addition, SVO should be precluded from introducing evidence of "estimates" in connection with its claim for the cost to repair/replace/complete Vertiv's scope of work given that SVO has conceded that its out-of-pocket costs are limited to $3 million to $4 million. At a minimum, SVO should be precluded from introducing evidence that is contrary to the admissions of Messrs. Laag and Pelz that Data Hall 1 was complete and operational prior to Vertiv's wrongful termination.

Finally, the Arbitrator should find, as a negative inference, that SVO's improperly withheld job cost data would not support its claim for damages, and further that the unproduced Tenant documents would similarly confirm what has already been established through admitted evidence, i.e., that Data Hall 1 was complete and operational when SVO wrongfully terminated Vertiv. Such inference is eminently reasonable as no litigant would withhold records that support its claim. Plainly, SVO's job cost data, the Swinerton records, and documents relating to the lease with Tenant were withheld because they would only serve to further undermine SVO's claims.

/ / /

/ / /

[1] See Vertiv Motion in Limine to Exclude Cumulative and Unsubstantiated Expert Testimony (No. 7 of 8), and the Arbitrator's ruling precluding SVO's expert from testifying as to any schedule analysis post-termination because he did not perform any such analysis. (10/5/21 Reporter's Transcript, 55:8-56:17.)

## II. STANDARD OF REVIEW

Relevant to this renewed motion, the following sanctions may be imposed for the misuse of the discovery process: (1) issue sanction by an order prohibiting a party from supporting or opposing designated claims or defenses and (2) evidence sanction by an order prohibiting a party from introducing designated matters in evidence. (Code of Civil Procedure § 2023.030(b)-(d).)

A trial court has broad discretion in selecting the appropriate penalty, and appellate courts must uphold the trial court's determination absent an abuse of discretion. (See *J.W. v. Watchtower Bible and Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1169; *Lopez v. Watchtower Bible and Tract Society of New York, Inc. (*2016) 246 Cal.App.4th 566, 604-605.) Appellate courts must defer to the trial court's credibility decisions and draw all reasonable inferences in support of the trial court's ruling. (*Ibid.*)

## III. MOTION FOR TERMINATING SANCTIONS

Vertiv hereby incorporates by reference as if set forth in full herein its Motion for Terminating Sanctions, and provides the following summary of that Motion:

### A. SVO Failed to Produce Documents Relating to its Lease and Obstructed Vertiv's Efforts to Obtain an Independent Production from Tenant.

In the lead up to the arbitration hearing it became clear SVO had failed to produce all documents relevant to its alleged lost rent and profit damages, including all documents relating to the lease it entered with Tenant. While the lease is dated January 27, 2021, SVO did not produce it until April 30, 2021, with Tenant's name redacted.

Upon learning of the existence of the lease with Tenant, Vertiv requested, and the Arbitrator issued (over SVO's objections), an evidentiary hearing subpoena to Tenant to appear and produce documents at the arbitration ("Subpoena"). In overruling SVO's objections, the Arbitrator found the information requested in the Subpoena is relevant and material to the issues in this arbitration. The Arbitrator found that SVO's delayed production of the lease itself was "bothersome" (10/5/21 Reporter's Transcript ("RT") at 32:5-15.), and that the information relating to SVO's negotiations with Tenant "couldn't be more germane and relevant to this case":

/ / /

```
15 But what I'm concerned about is that relevant
16 information is not being given. And there have been
17 negotiations with the tenant, the tenant is in. There's
18 a lease. And it's all relevant -- I think primarily --
19 it couldn't be more germane and relevant to this case.
```

(*Id.*, at 61:15-19)

The Arbitrator determined there was a critical need for Tenant to appear at the evidentiary hearing and provide an independent production of the requested documents because SVO's own production of documents relating to its lease with Tenant was entirely unreliable. In his October 19, 2021 Order, the Arbitrator found that Tenant's refusal to comply must be remedied for there to be a fair and just conclusion of the arbitration. Yet, not only did SVO fail and refuse to produce its own records until ordered to do so by the Arbitrator, it sought to obstruct Vertiv from obtaining these records directly from Tenant, which to date have not been produced. SVO's production of its own records was determined to be as unreliable as its counsel's numerous representations that they "have produced everything."

**B. SVO Improperly Withheld Key Documents Relating to Swinerton Builders**

As set forth in more detail in its Motion for Terminating Sanctions, Vertiv learned on October 4, 2021 that Swinerton Builders recorded a mechanic's lien in the amount of **$3,436,685.99** against the subject property on August 24, 2021. Vertiv did not learn of the lien from SVO, and there is no reason to believe it ever would have. When Vertiv submitted to the Arbitrator a subpoena for the Custodian of Records of Swinerton to produce all documents relating to the lien, SVO incredibly objected and sought to obstruct Vertiv's right to obtain records relating to SVO's $3.5 million dispute with its replacement contractor. These objections were rightfully found by the Arbitrator to be "at best, specious."[2] After having its frivolous objections rejected, SVO conceded, despite protestations to the contrary, that it had not completed a full production of its own Swinerton related records. The result was the production by SVO of an additional *750* responsive emails. The so-called "glitch" by its third-party discovery vendor, KLD, has never been explained.

///

[2] As we learned from Swinerton's Custodian of Records, Swinerton prepared an internal schedule analysis which showed SVO was responsible for delays on the project. Mr. Good testified that he expected the delay analysis and further cost reconciliation would be completed by Swinerton within the three weeks following his deposition, which was on October 19, 2021.

### C. SVO Has Improperly Withheld Key Job Cost Records and Data

SVO is claiming over $65 million against Vertiv based on a $15 million project, yet SVO failed to produce its job cost records maintained in its QuickBooks database. Within the database are costs claimed by SVO for the *repair and completion* of Vertiv's scope of work, in addition to SVO's *operating* costs which are directly related to its claims for delay damages (i.e., lost profits/financing costs/cost of equity). We now know that of the $21.3 million in damages claimed for the purported repair and completion costs, SVO is actually out of pocket no more than $3 million to $4 million.[3] There is every reason to believe these improperly withheld job cost records would tell a similar story as it relates to SVO's operating costs. Indeed, any costs incurred would be reflected in the QuickBooks database, so the refusal to produce such records only confirms the costs claimed were not incurred and likely never will be.

The Arbitrator has repeatedly ordered the parties to produce all responsive records. In response, SVO counsel has repeatedly (and inaccurately) stated all SVO responsive records have been produced. There is simply no justification for SVO to withhold data from QuickBooks, the only job cost control system it utilized on the project.[4] Without the production of SVO's job cost data, the inference is clear and irrefutable – SVO is unable to support either its claim to repair and complete Vertiv's scope or its claim for delay damages.

### D. SVO Provided its Experts Access to Documents Not Produced to Vertiv

As detailed in Vertiv's Motion for Terminating Sanctions, SVO's Person Most Qualified, Ulrich Pelz, acknowledges that SVO gave access to its Relativity database to its experts. SVO's expert, Ken Baker, confirmed as much during his deposition, testifying that his firm was granted *"a number of licenses so that anybody that wanted to go into it [the Relativity database] to search for, you know, topic du jour, could do it directly."*[5] As a result, Mr. Baker and his team had access to SVO invoices that had not been Bates stamped, which he understood to mean they had not been

---

[3] The remaining $18 million to $19 million constitutes work not performed and is supported only by estimates.

[4] SVO had an obligation to query its existing database and produce relevant information, but failed and refused to do so. (See *Apple Inc. v. Samsung Electronics Co. Ltd.*, 2013 WL 4426512 (N.D. Cal. 2013); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683, 79 U.S.P.Q.2d 1832, 64 Fed. R. Serv. 3d 393 (N.D. Cal. 2006).)

[5] See the Declaration of Sheila Grela, ¶¶ 9 and 10, submitted in support of Vertiv's prior Motion for Terminating Sanctions.

produced to Vertiv.[6] Unlike SVO's experts, neither Vertiv's counsel nor its experts were ever given access to SVO's Relativity database, in particular to records that had not been otherwise produced by SVO. It is fundamentally unfair for SVO's experts to have access to records that SVO did not produce to Vertiv. As acknowledged by the Arbitrator on multiple occasions, it is also wholly improper for SVO to produce documents through its experts. This cannot be explained away as a "glitch."

## IV. NICHOLAS LAAG AND ULRICH PELZ CONSISTENTLY REPRESENTED, BEGINNING IN JULY 2018, THAT DATA HALL 1 WAS COMPLETE AND OPERATIONAL.

Nicholas Laag is the sole Director of SVO Building One LLC and has been since its formation. Ulrich Pelz was at all relevant time SVO's acting Chief Financial Officer. Both Messrs. Laag and Pelz were examined at length by Vertiv on November 23, 2021, during Day 5 of the Phase 2 evidentiary hearing. Vertiv will reserve comment on the credibility of Messrs. Laag and Pelz as exposed by their testimony because the present motion is focused on Vertiv's request for sanctions. Suffice it to say, however, that SVO's unclean hands were further demonstrated by their testimony regarding SVO's secret retention of Michael Wall, their efforts to conceal change orders from SVO's lender (to improperly allow SVO access to more cash "up front" from their lender), their undisclosed "concession agreement" with DPR, their direction to Syska Hennessy Group to reverse the finding that Data Hall 1 was substantially commissioned, and finally, their diligent pursuit of back dated NDAs (Non-Disclosure Agreements).

As expressly relevant to the present motion, Messrs. Laag and Pelz were provided with evidence of their representations/admissions, beginning in July 2018, that Data Hall 1 was complete and operational. The admissions were consistently made and remained unchanged, as demonstrated by the following chronology:

- April 6, 2018 email from Mr. Laag to construction lender – "A lot of progress has been made over past 4 weeks and it **looks like Vertiv will <u>complete</u> Level 5 commissioning in the next 2 weeks**. . . . Based on current review, it looks likely

[6] *Ibid.*

that these items including final Punch List with Vertiv will drag the **<u>100% completion</u> to first or second week of May**." (Ex. 11405)[7]

> dock. Based on current review, it looks likely that these items including final Punch List with Vertiv will drag the 100% completion to first or second week May. This is in our view ok and does not impact any customer viewings or discussions. We also gladly take the Liquidated Damages.

- May 16, 2018 email from Mr. Laag to prospective lender – "civil construction is **<u>completed</u>**." (Ex. 11381)

> Hope your well. Wanted to follow up on below. As noted now that civil construction is completed, we have been able to achieve considerably improved terms for a longer term (10) year loan with interest as low as 7% fixed,

- May 29, 2018 email from Mr. Laag to construction lender – "it is our desire to recombination [sic] by counsel to terminate the agreement with Vertiv within the next 7-10 days as we are **<u>getting too close to completion</u>**." (Ex. 11448)

> 3) Termination of Vertiv for Default - it is our desire and recombination by counsel to terminate the agreement with Vertiv within the next 7-10 days as we are getting too close to completion. Default is substantiated by several factors including for example >60 day

- June 11, 2018 presentation to construction lender – "DH1 – **<u>Completed June 15-2018</u>**" (Ex. 11380)




[7] Consistent with Mr. Laag's email, Syska Hennessy Group issued its Final Commissioning Report on April 30, 2018, finding: "As of April 30, 2018, Syska Hennessy Group finds the systems **substantially commissioned**." (Ex. 10395)

- June 12, 2018 Meeting Minutes from Meeting of the Board of Directors of Prime Data Centers, Corp – "Data Hall 1 is **almost complete**" / "the building is **operational**" (Ex. 11104)

> The Board Acknowledges the Pipeline Report
>
> b) Construction
>
> The construction is materially delayed, however now moving along quite fine and Data Hall 1 is almost complete. The main
>
> Nicholas has also confirmed that the Data Hall 1 has received an operational certificate from a 3rd party (Syska & Hennessey) such that from a technical perspective the building is operational.

- July 5, 2018 email from Mr. Pelz to lender's title company with attachments – "Data Hall 1 is **complete and operational**." (Ex. 11784)[8]

> Building for all 3 phases complete. Phase 1 TIs i.e. Data Hall 1 is complete and operational.
> Only remaining work required from Vertiv is:
> 1) Screen Wall for Southern Gen Yard and Substation;
> 2) "Punch" List

- July 20, 2019 YouTube video – "Prime Data Centers – Sacramento Data Center – Drone Fly-Through" (Ex. 6177)

> A drone fly-through of Prime Data Center's Sacramento Data Center - Building One. Is your company going through a data center site selection process? Let us show you why Sacramento is one of the best geographic locations in the entire western United States. To get in touch: www.primedatacenters.com

- August 7, 2019 email from Mr. Laag with attached brochure – "Data Hall 1: 2MW (N+1) critical built and **fully commissioned incl containment, busway for customer to install racks immediately**." (Ex. 11782)

[8] Vertiv was thereafter terminated pursuant to SVO's July 23, 2018 Notice of Termination (Ex. 5080).




- February 26, 2020 YouTube video – "Prime Data Centers – Why Sacramento is the Best California Data Center Site" (Ex. 6176)




- July 22, 2020 YouTube video – "This data hall (Data Hall 1) has all of the tenant improvements **<u>complete</u>** and is **<u>ready for move in right now</u>**." (Ex. 6174)




- October 20, 2020 YouTube video – "Prime Data Centers – Sacramento Campus Available Now" (Ex. 6172)




Messrs. Laag and Pelz made these representations to SVO's lenders (current and prospective), Board of Directors, insurance carriers, and potential and existing tenants. Their admissions, which were consistent and remained unchanged as evidenced above, are diametrically and irreconcilably opposed to what SVO is now claiming. It is simply impossible to reconcile $65 million in claimed damages with a data hall that was represented to be complete and operational prior to Veritiv's improper termination.

## V. CONCLUSION

Vertiv filed its Motion for Terminating Sanctions because it was faced with the fundamentally unfair and untenable prospect of either being forced to commence Phase 2 of the evidentiary hearings at a serious disadvantage or face a further significant delay in the completion of these arbitration proceedings. SVO cannot be allowed to intentionally conceal certain evidence that is relevant to its damages claim (and likely serves to undermine such claims), while also being permitted to introduce and rely upon isolated, carefully selected evidence it believes supports its claim. Yet that is exactly what is going to occur, and the only means to address the inevitable

prejudice is with the issuance of sanctions. Vertiv is renewing its motion and seeking both issue and evidence sanctions because the testimony of Messrs. Laag and Pelz confirms what must be inferred from SVO's missing documents – Data Hall 1 was long ago complete and operational and SVO's claims for damages, are, to borrow a phrase, specious at best.

Based on the foregoing, Vertiv respectfully requests the Arbitrator preclude SVO from introducing evidence in support of its claims for consequential damages; and further, that SVO be precluded from presenting evidence of cost to complete damages in excess of $3 million to $4 million. In conjunction with these sanctions, SVO should also be precluded from contradicting the admissions of Messrs. Laag and Pelz that Data Hall 1 was complete and operational on July 5, 2018. Finally, the Arbitrator should find, as a negative inference, that documents not produced by SVO (job cost records) and Tenant (relating to the lease) do not support SVO's claim for damages, but instead would be consistent with Data Hall 1 being complete and operational prior to Vertiv being wrongfully terminated.

DATED: November 24, 2021

PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP

By: ______________________
Robert H. Sloss
Mark G. Budwig
Scott R. Omohundro
Laurence R. Phillips
Attorneys for Claimant/Counter-Respondent
VERTIV CORPORATION
(fka LIEBERT CORPORATION)