David Simantob, SBN 155790
Email: David.Simantob@wilsonelser.com
Shannon L. Santos, SBN 260112
Email: Shannon.Santos@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: 213.443.5100
Facsimile: 213.443.5101

*Attorneys for Plaintiff/Counter-Defendant Navigators Specialty Insurance Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Plaintiff,

vs.

SVO BUILDING ONE, LLC,

Defendant.

SVO BUILDING ONE, LLC,

Counterclaimant,

vs.

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Counter-Defendant.

Case No. 3:22-cv-07102-AMO
Hon. Araceli Martínez-Olguín
Courtroom 10

**NAVIGATORS SPECIALTY INSURANCE COMPANY'S REPLY TO SVO BUILDING ONE, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

[Filed concurrently with Request to Strike Evidentiary Objections]

| | |
|---|---|
| Hearing Date: | March 5, 2026 |
| Time: | 2:00 p.m. |
| Courtroom: | 10, 19th Floor |
| Action Filed: | November 14, 2022 |
| Trial Date: | July 14, 2026 |

/ / /

/ / /

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 8

II. ARGUMENT ........ 9

A. SVO Confuses the Applicable Legal Standard for a Defense Obligation. ........ 9

B. Dismissal of the Defamation Claim Extinguished Any Defense Obligation. ........ 10

1. The Defamation Allegations Were the Only Trigger of Coverage B. ........ 10

2. A Stray "Disparage" Reference Cannot Revive Coverage B. ........ 13

3. No "Property Damage" Is Alleged in the FAC to Trigger Coverage A. ........ 15

C. SVO's Attempt to Throw Arguments at the Wall in Hopes Something Sticks Fails to Rebut the Clear and Concise Arguments Raised in the Motion. ........ 17

D. The Opposition Does Not Revive Any of SVO's Counterclaims. ........ 19

1. SVO Cannot Show that Navigators Breached the Policy. ........ 19

2. Absent a Breach of Contract Claim, the Bad Faith Claim Fails. ........ 21

3. For Two Separate Legal Reasons, the UCL Claim Fails. ........ 21

4. SVO Does Not Cite to Any Evidence to Seek Punitive Damages. ........ 22

IV. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*,
838 F.2d 346 (9th Cir. 1988) .......... 14

*AIU Ins. Co. v. Super. Ct.*,
51 Cal. 3d 807 (1990) .......... 13

*American Claims Mgmt., Inc. v. Allied World Surplus Lines Ins. Co.*,
484 F. Supp. 3d 869 (S.D. Cal. 2020) .......... 20

*Amex Assur. Co. v. Allstate Ins. Co.*,
112 Cal. App. 4th 1246 (2003) .......... 12

*Avery Dennison Corp. v. Allendale Mut. Ins. Co.*,
310 F.3d 1114 (9th Cir. 2002) .......... 15

*Bank of the West v. Super. Ct.*,
2 Cal. 4th 1258 (1992) .......... 13

*Barney v. Aetna Cas. & Sur. Co.*,
185 Cal. App. 3d 966 (1986) .......... 21

*Blue Ridge Ins. Co. v. Jacobsen*,
25 Cal. 4th 489 (2001) .......... 11

*The Burlington Ins. Co. v. Devdhara*,
2010 U.S. Dist. LEXIS 99955 (N.D. Cal. Sept. 23, 2010) .......... 13

*Buss v. Super. Ct.*,
16 Cal. 4th 35 (1997) .......... 8-12, 18, 19

*Cal. Union Ins. Co. v. Club Aquarius, Inc.*,
113 Cal. App. 3d 243 (1980) .......... 11

*Century Sur. Co. v. Robin Singh Educ. Servs.*,
2008 U.S. Dist. LEXIS 129940 (C.D. Cal. Apr. 14, 2008) .......... 18

*Chateau Chamberay Homeowners Assn. v. Associated Inter. Ins. Co.*,
90 Cal. App. 4th 335 (2001) .......... 21

*Collin v. American Empire Ins. Co.*,
21 Cal. App. 4th 787 (1994) .......... 15, 16

*Comprehensive Med. Ctr., Inc. v. State Farm Mut. Auto. Ins.*,
690 F. Supp. 3d 1104 (C.D. Cal. 2023) .......... 9

*Crab Boat Owners Assn. v. Hartford Ins. Co. of the Midwest*,
2004 U.S. Dist. LEXIS 23615 (N.D. Cal. Nov. 15, 2004) ....................11, 14, 16

*Electronics for Imaging Inc. v. Atlantic Mut. Ins. Co.*,
2007 U.S. Dist. LEXIS 38058 (N.D. Cal. May 14, 2007)....................12

*Fidelity Nat'l Fin., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
2014 U.S. Dist. LEXIS 49854 (S.D. Cal. Apr. 9, 2014) ....................17

*Gers, Inc. v. Atlantic Mut. Ins. Co*.,
2005 U.S. Dist. LEXIS 62937 (S.D. Cal. Oct. 19, 2005)....................11

*Ghiglione v. Discover Prop. & Cas. Co.*,
2007 U.S. Dist. LEXIS 22901 (N.D. Cal. Mar. 29, 2007) ....................18, 20

*Gibson v. Gov't Employ. Ins. Co.*,
162 Cal. App. 3d 441 (1984)....................17

*Golden Eagle Ins. Corp. v. CEN-FED, Ltd.*,
148 Cal. App. 4th 976 (2007)....................15, 16

*Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc*.,
357 F. Supp. 3d 953 (N.D. Cal. 2019)....................11, 14

*Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc*.,
799 Fed. Appx. 539 (9th Cir. Apr. 1, 2020) ....................11, 14

*Gunderson v. Fire Ins. Exch*.,
37 Cal. App. 4th 1106 (1995)....................12

*Haas v. Travelex Ins. Servs.*,
555 F. Supp. 3d 970 (C.D. Cal. 2021)....................22

*Harlow v. Chaffey Cmty. Coll. Dist.*,
2022 U.S. App. LEXIS 25357 (9th Cir. Sept. 6, 2022)....................16

*Hartford Cas. Ins. Co. v. Swift Distr., Inc.*,
59 Cal. 4th 277 (2014)....................14

*Hurley Constr. Co. v. State Farm Fire & Cas. Co*.,
10 Cal. App. 4th 533 (1992)....................12

*James 3 Corp. v. Truck Ins. Exch*.,
91 Cal. App. 4th 1093 (2001)....................21

*Kardly v. State Farm Mut. Auto. Ins. Co.*,
207 Cal. App. 3d 479 (1989)....................12

*Kazi v. State Farm Fire & Cas. Co*.,
24 Cal. 4th 871 (2001)....................15, 19

*KM Strategic Mgmt., LLC v. American Cas. Co. of Reading, PA*,
2016 U.S. Dist. LEXIS 98273 (C.D. Cal. July 25, 2016)....12

*Lemus v. Rite Aid Corp.*,
613 F. Supp. 3d 1269 (C.D. Cal. 2022)....22

*Libow v. Fullerton & Co., Inc.*,
34 Fed. Appx. 543 (9th Cir. Apr. 17, 2002)....17

*Love v. Fire Ins. Exch.*,
221 Cal. App. 3d 1136 (1990)....21

*Low v. Golden Eagle Ins. Co.*,
99 Cal. App. 4th 109 (2002)....14

*Lumbermens Mut. Cas. Co. v. Corning, Inc.*,
2008 U.S. Dist. LEXIS 126717 (C.D. Cal. Dec. 24, 2008)....11

*Mancha Dev. Co., LLC v. Houston Cas. Co.*,
2019 U.S Dist. LEXIS 214545 (C.D. Cal. July 9, 2019)....17

*Manzarek v. St. Paul Fire & Marine Ins. Co*.,
519 F.3d 1025 (9th Cir. 2008)....21

*McHugh v. United Serv. Auto. Assn.*,
164 F.3d 451 (9th Cir. 1999)....10

*Merritt v. Reserve Ins. Co.*,
34 Cal. App. 3d 858 (1973)....18, 20

*Millennium Lab., Inc. v. Darwin Select Ins. Co*.,
676 Fed. Appx. 734 (9th Cir. Jan. 27, 2017)....11

*Montrose Chem. Corp. of Cal. v. Super. Ct.*,
6 Cal. 4th 287 (1993)....9

*Murphy v. Federal Ins. Co.*,
2001 U.S. Dist. LEXIS 11578 (N.D. Cal. Aug. 1, 2001)....15

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Siliconix, Inc.*,
726. F. Supp. 264, 272 (N.D. Cal. 1989)....15

*Oxnard Manor LP*,
709 F. Supp. 3d 971 (C.D. Cal. Dec. 2023)....22

*Pacific Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co*.,
2019 U.S. Dist. LEXIS 169897 (C.D. Cal. June 25, 2019)....11

*Razuki v. Amguard Ins. Co.*,
2025 U.S. App. LEXIS 13922 (9th Cir. June 6, 2025)....10

*Reichert v. General Ins. Co. of Am.*,
68 Cal. 2d 822 (1968)....19

*Royce Int'l Broadcasting Corp. v. Vigilant Ins. Co.*,
51 Fed. Appx. 229 (9th Cir. 2002)....16

*Safine v. Sinnott*,
15 Cal. App. 4th 614 (1993)....18

*San Miguel Comm. Assn. v. State Farm Gen. Ins. Co.*,
220 Cal. App. 4th 798 (2013)....13

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (2005)....10, 11

*State Farm Fire & Cas. Co. v. Plutsky*,
1988 U.S. App. LEXIS 22048 (9th Cir. May 23, 1988)....11

*Stockton Mariposa, LLC v. West Am. Ins. Co*.,
585 F. Supp. 3d 1241 (C.D. Cal. 2022)....10

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.*,
97 Cal. App. 4th 704 (2002)....16

*The Travelers Indem. Co. of Conn. v. Walking U Ranch, LLC*,
2022 U.S. Dist. LEXIS 44058 (C.D. Cal. Mar. 10, 2022)....11

*Trekeight, LLC v. Symantec Corp.*,
2006 U.S. Dist. LEXIS 100609 (S.D. Cal. May 23, 2006)....14

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
682 F. Supp. 2d 1003 (N.D. Cal. 2010)....14

*The Upper Deck Co., LLC v. Federal Ins. Co*.,
358 F.3d 608 (9th Cir. 2004)....12

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal. 4th 1 (1995)....9, 10, 15, 21

*WAWGD, Inc. dba Foresight Sports v. Sentinel Ins. Co.*,
2017 U.S. Dist. LEXIS 161361 (S.D. Cal. Sept. 29, 2017)....16

*Westfield Ins. Co. v. TWT, Inc.*,
723 F. Supp. 492 (N.D. Cal. 1989)....11

*Zox LLC v. West Am. Ins. Co.*,
2024 U.S. App. LEXIS 3095 (9th Cir. Feb. 9, 2024)....14

**Statutes**

Cal. Civ. Code § 3294 ....................22

Fed. R. Civ. P. 56 .................... 16

L.R. 7-3.................... 10, 22

Navigators hereby submits its Reply to the Opposition [Doc. 106] ("Opposition") filed by SVO to Navigators' Motion for Summary Judgment [Doc. 100] ("Motion").

## I. INTRODUCTION

The Motion addressed the duty to defend standard to establish why Navigators is entitled to reimbursement of amounts paid for uncovered fees. Given SVO's distortion of the applicable standard, Navigators must once again explain the difference between the defense obligation and the reimbursement allocation. The *Buss* allocation is only utilized if there is a duty to defend a "mixed" action. Absent such a duty, **all fees** are incurred in defense of uncovered claims and subject to reimbursement. The Court decides coverage, and the trier of fact decides allocation. Navigators' Motion only moves on the defense obligation, leaving the allocation question for the trier of fact.

Shockingly, SVO asserts Navigators' agreement to **continue to defend after the only potentially covered claim was dismissed** creates liability, giving rise to bad faith, by the statement, "[i]If Navigators really believed that it had no duty to defend …, it could have continued its refusal or filed an action to seek a declaration by the court that it had no such duty. It did neither." (Opposition, 9:11-13.) Rather than commend Navigators for acceding to SVO's demand for a continued defense, SVO argues that defending as SVO itself demanded now somehow precludes Navigators from seeking reimbursement. SVO cites no legal authority in support of this contention.

The fact that SVO's Opposition does not refute any of the arguments raised by the Motion by evidence is reason alone for the Motion to be granted. Navigators has established that there is no triable issue of fact as to whether there was a duty to defend after the sole potentially covered claim for defamation was dismissed from the *Liebert Corp. v. SVO Building One, LLC* case ("Underlying Action"). As of March 24, 2021, there was no longer any potential for coverage under the Navigators policy ("Policy"), and the defense that followed was subject to Navigators' reserved right to reimbursement. Tellingly, SVO does not contend that defamation was reasserted in the Underlying Action or that damages were sought for defamation. Rather than respond to the merits, SVO's Opposition, replete with improper expert opinion, rehashes duty-to-defend rhetoric while sidestepping the central, policy-driven coverage analysis. SVO does not show a surviving covered claim to preclude a reimbursement finding. Thus, Navigators is entitled to summary judgment on its

first cause of action for declaratory relief on the right to reimbursement. [Doc. 1.]

SVO did not rebut the facts that show SVO's Counterclaims fail as a matter of law. The fact that Navigators provided a defense from tender through trial summarily defeats SVO's breach of contract and bad faith claims. The only allegation in SVO's unfair competition ("UCL") claim fails to establish unlawful conduct given there was no legal conflict with the use of panel counsel, which SVO agreed to. Navigators is entitled to judgment on SVO's Counterclaims. [Doc. 53.]

## II. ARGUMENT

### A. SVO Confuses the Applicable Legal Standard for a Defense Obligation.

SVO attempts to avoid a summary judgment finding in Navigators' favor by confusing the duty to defend standard with the reimbursement allocation standard:

- **Duty to Defend Decided by Court:** A defense obligation turns on whether there is an allegation "giving rise to the potential for coverage under the insuring agreement," which requires the Court to review the policy language and the pleading. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995). It is SVO's burden to show the claim falls within coverage even where Navigators moved for summary judgment. *Montrose Chem. Corp. of Cal. v. Super. Ct.*, 6 Cal. 4th 287, 300 (1993); *Comprehensive Med. Ctr., Inc. v. State Farm Mut. Auto. Ins.*, 690 F. Supp. 3d 1104, 1115 (C.D. Cal. 2023).
- **Reimbursement Allocation Decided by Trier of Fact:** For periods of time when a defense is owed in a "mixed" action, the insurer can recover fees that "are not even potentially covered." *Buss v. Super. Ct.*, 16 Cal. 4th 35, 50 (1997). It is Navigators' burden to show the allocation by a "preponderance of the evidence." *Id.* at 40. It is axiomatic that an insurer can seek reimbursement of all fees incurred during the time when **no defense was owed**, such as when the case transitions from a "mixed" action to an uncovered action as was the case here.

Navigators' Motion moves only on the duty to defend. Navigators recognizes that the allocation for a "mixed" action goes to the trier of fact, and, for that reason, Navigators did not move on its second cause of action for reimbursement of all amounts paid in defense of uncovered claims from tender. [Doc. 43, First Amended Complaint, ¶¶ 38-45.] Navigators only moved on the defense obligation, showing there was no potential for coverage once the defamation cause of action was dismissed.

SVO, on the other hand, improperly moved for summary judgment on the allocation question. [Doc. 101.] The Court cannot decide allocation on summary judgment, but it is required to determine any defense obligation. *Buss*, 16 Cal. 4th at 61; *Waller*, 11 Cal. 4th at 18; *Stockton Mariposa, LLC v. West Am. Ins. Co.*, 585 F. Supp. 3d 1241, 1247 (C.D. Cal. 2022).

It is indisputable based on the overwhelming majority of cases that, once defamation was dismissed from the Fourth Amended Complaint ("FAC"), there was no potential coverage for the Underlying Action, and it was not a "mixed" action. *Buss*, 16 Cal. 4th at 48. All fees incurred from that point forward were in defense of uncovered claims, subject to reimbursement. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 658-59 (2005). Importantly, the Court must make this coverage determination without reliance on expert opinion, including the multiple improper expert opinions SVO includes in the Opposition. *Razuki v. Amguard Ins. Co.*, 2025 U.S. App. LEXIS 13922 (9th Cir. June 6, 2025), quoting *McHugh v. United Serv. Auto. Assn.*, 164 F.3d 451, 454 (9th Cir. 1999) ("[E]xpert opinions 'cannot be used to provide legal meaning or interpret the polic[y] as written."). It is well settled that the duty to defend is a question of law, and, thus, expert opinions cannot be used.[1]

**B. <u>Dismissal of the Defamation Claim Extinguished Any Defense Obligation.</u>**

Any obligation Navigators owed SVO to defend the FAC was based on the defamation allegations alone. The FAC alleged no other trigger of coverage. Thus, once the 15th cause of action for defamation was dismissed, any defense obligation terminated.

**1. The Defamation Allegations Were the Only Trigger of Coverage B.**

Under Coverage B, the Policy covers claims of "damages" because of "personal and advertising injury," including "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." [Doc. 100-2, Policy, EX. A-23, 37.] As the FAC alleged, "SVO engaged in conduct aimed at disparaging Vertiv's work and reputation" [Doc. 100-3, FAC, ¶ 151, EX. B-29], Navigators accepted SVO's defense subject to the right of reimbursement. [Doc. 100-4, October 28, 2019 Letter, EX. C-1, 7-8, 12-13.] No other allegation in the FAC sought "damages" for defamation or disparagement.

[1] Navigators will not address all of the deficiencies in SVO's experts' opinions at this time. Rather, Navigators will raise those issues in proper motions *in limine* before trial. SVO's experts' opinions have no impact on the Motion. (Opposition, 21:20-23; 22:1-2; 23:12-13.) On that basis, Navigators submits evidentiary objections to the use of any such expert opinion in the Opposition. L.R. 7-3(c).

Navigators could have withdrawn from the defense when defamation was dismissed but, instead, at SVO's demand, agreed to continue defending the action. [Doc. 100-8, May 18, 2021 Letter, EX. G-1, 2.] *Buss* authorizes termination of the defense where "no claim can in fact be covered." *Buss*, 16 Cal. 4th at 46. Federal and California state court decisions discussed in the Motion confirm this point: the defense obligation terminates once the covered claim is dismissed. *Gers, Inc. v. Atlantic Mut. Ins. Co*., 2005 U.S. Dist. LEXIS 62937, *8 (S.D. Cal. Oct. 19, 2005); *Cal. Union Ins. Co. v. Club Aquarius, Inc.*, 113 Cal. App. 3d 243, 247-248 (1980); *State Farm Fire & Cas. Co. v. Plutsky*, 1988 U.S. App. LEXIS 22048, *5 (9th Cir. May 23, 1988); *Pacific Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co*., 2019 U.S. Dist. LEXIS 169897, *22 (C.D. Cal. June 25, 2019); *Lumbermens Mut. Cas. Co. v. Corning, Inc.*, 2008 U.S. Dist. LEXIS 126717, *23 (C.D. Cal. Dec. 24, 2008). By demanding that Navigators continue defending after defamation was dismissed, SVO "agreed" to the right to reimbursement as a matter of law, despite its assertion to the contrary. (Opposition, 9:14-17.) *See Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 498 (2001) ("By accepting the insurer's defense under these circumstances, the insured is deemed to have accepted this condition."); *Buss*, 16 Cal. 4th at 61, n.27 ("Not only did Transamerica reserve all its rights,…[b]ut, receiving consideration, Buss agreed thereto."); *Scottsdale Ins. Co.*, 36 Cal. 4th at 656.

As predicted, SVO's only argument in the Opposition is that the dismissal was made "without prejudice" such that *Westfield Ins. Co. v. TWT, Inc.*, 723 F. Supp. 492 (N.D. Cal. 1989) creates a defense obligation. As the Motion squarely refutes this argument, the Opposition offers nothing to challenge the conclusion that the defense obligation terminated on March 24, 2021. *Westfield Ins. Co.* is not controlling and conflicts with later governing authorities, which uniformly hold that the defense obligation terminates once the only covered allegations are dismissed. *Gers, Inc.*, 2005 U.S. Dist. LEXIS 62937 at *7-8; *Millennium Lab., Inc. v. Darwin Select Ins. Co*., 676 Fed. Appx. 734, 737 (9th Cir. Jan. 27, 2017); *The Travelers Indem. Co. of Conn. v. Walking U Ranch, LLC*, 2022 U.S. Dist. LEXIS 44058, *52-53 (C.D. Cal. Mar. 10, 2022); *Lumbermens Mut. Cas. Co.*, 2008 U.S. Dist. LEXIS 126717 at *53-54; *Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc*., 357 F. Supp. 3d 953, 968 (N.D. Cal. 2019), *aff'd*, 799 Fed. Appx. 539 (9th Cir. Apr. 1, 2020); *Crab Boat Owners Assn. v. Hartford Ins. Co. of the Midwest*, 2004 U.S. Dist. LEXIS 23615, *19-20 (N.D. Cal. Nov. 15, 2004);

*Amex Assur. Co. v. Allstate Ins. Co*., 112 Cal. App. 4th 1246, 1252 (2003); *Gunderson v. Fire Ins. Exch*., 37 Cal. App. 4th 1106, 1117 (1995); *Hurley Constr. Co. v. State Farm Fire & Cas. Co*., 10 Cal. App. 4th 533, 538 (1992); *The Upper Deck Co., LLC v. Federal Ins. Co*., 358 F.3d 608, 616 (9th Cir. 2004). Faced with the overwhelming weight of these subsequent authorities, SVO doubles down, insisting that one District Court ruling ought to control this Court's adjudication. (Opposition, 12:20-27.) The weight of subsequent authority rejects any "manufactured" duty to defend theory premised on hypothetical amendments or the mere possibility of reviving a dismissed claim. SVO's attempt to distinguish these cases relies upon strained mischaracterizations of the courts' opinions.

SVO's claim that *Buss* precludes reimbursement in bad faith cases is meritless, notably demonstrated by the fact that SVO does not cite *Buss* at all for this proposition. (Opposition, 11:22-24.) Instead, SVO cites two cases, neither of which involves an insurer seeking reimbursement under *Buss*. Those cases actually involve the opposite fact pattern – cases where the **insured** was seeking reimbursement of fees after the insurer **denied a defense**. *Electronics for Imaging Inc. v. Atlantic Mut. Ins. Co*., 2007 U.S. Dist. LEXIS 38058, *1 (N.D. Cal. May 14, 2007); *KM Strategic Mgmt., LLC v. American Cas. Co. of Reading, PA*, 2016 U.S. Dist. LEXIS 98273, *5 (C.D. Cal. July 25, 2016). Those cases hold that, "[t]he insurer cannot seek reimbursement … if it breached its obligation to provide a defense in the first place--there is nothing to reimburse since the insurer paid nothing." *Electronics for Imaging Inc*., 2007 U.S. Dist. LEXIS 38058 at *4; *see also*, *KM Strategic Mgmt., LLC*, 2016 U.S. Dist. LEXIS 98273 at *15 ("[W]hile an insurer 'defending on a reservation of rights basis is normally entitled to reimbursement from the insured for costs incurred in defending claims not even potentially covered under its policy[,] ... [n]o such allocation is allowed, however, where the insurer wrongly refuses to defend the entire action.'") (citation and emphasis omitted).[2] That is obviously not the case here where Navigators paid $5.5 million in SVO's defense. [Doc. 100-1, Declaration of Angel Muth ("Muth Dec."), ¶ 13.]

In the end, the Opposition fails to challenge the Motion's conclusion that the defense obligation terminated upon dismissal of the only covered claim on March 24, 2021.

[2] SVO also cites to *Kardly v. State Farm Mut. Auto. Ins. Co*., 207 Cal. App. 3d 479, 488-489 (1989), but that case involved whether an insured could proceed on a claim against the insurer after interfering with the insurer's subrogation rights, an issue not present in this case.

**2. A Stray "Disparage" Reference Cannot Revive Coverage B.**

Navigators will not waste the Court's time by reiterating why the fifth cause of action alleging violations of the UCL and the 14th cause of action for "intentional interference with contractual relationship" do not allege a claim for "damages" caused by disparagement. Instead, Navigators directs the Court to the Motion's lengthy explanation demonstrating why such allegations never triggered coverage. [Doc. 100, Motion, 20:1-22:21.] Navigators did not reference anything other than the defamation allegations in agreeing to defend the Underlying Action. [Doc. 100-4, October 28, 2019 Letter, EX. C-8, citing FAC, ¶ 151 ("Under the defamation cause of action, Plaintiff alleges … SVO 'disparaged' Plaintiff's work and reputation by 'making numerous false statements to third parties on the jobsite and within the industry'").] SVO knew from Navigators' original acceptance of the tender that only the defamation allegations were potentially covered under the Policy.

Contrary to SVO's assertion, there is no claim for "damages" because of disparagement to trigger coverage under the Policy. *San Miguel Comm. Assn. v. State Farm Gen. Ins. Co.*, 220 Cal. App. 4th 798, 800-801 (2013). It is undisputable that injunctive relief is not a form of compensable "damages." *The Burlington Ins. Co. v. Devdhara*, 2010 U.S. Dist. LEXIS 99955, *29 (N.D. Cal. Sept. 23, 2010); *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 842 (1990). Claims under the UCL cannot seek "damages" and are not covered by insurance policies. *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1258, 1272 (1992). That alone eliminates the possibility that the fifth cause of action triggered coverage, because it only sought equitable relief. [Doc. 100-3, FAC, ¶ 57, EX. B-13 ("Such harm will continue unless the acts of SVO are enjoined by the Court. Vertiv has no adequate remedy at law for the continued acts of unlawful, unfair and fraudulent business practices by SVO."); Prayer for Relief, EX. B-33 (stating the fifth cause of action seeks "preliminary and permanent injunctive relief" and "disgorgement of the unjust enrichment realized by SVO").] Navigators never asserted that the failure to seek "damages" as that term is defined in insurance coverage cases renders the cause of action "barred or fatally flawed." (Opposition, 17:22-23.) Again, SVO confuses policy interpretation with liability defenses. To obtain coverage, SVO must prove the insuring agreement in the Policy is triggered, which includes a showing of compensable "damages" pursuant to the cited authority.

Moreover, the FAC allegations of "false reports" in the 14th cause of action do not trigger

coverage, because they do not allege that **SVO** made disparaging comments about Vertiv Corporation ("Claimant"), which the Policy requires. To the contrary, the Claimant contends that "third parties," not SVO, made "false reports." [Doc. 100-3, FAC, ¶¶ 55-56, EX. B-12, 13.] *Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1021 (N.D. Cal. 2010) ("To state a claim for trade libel, the plaintiff must allege that the **defendant** published a statement") (emphasis added); *Trekeight, LLC v. Symantec Corp.*, 2006 U.S. Dist. LEXIS 100609, *31-32 (S.D. Cal. May 23, 2006) (same); *Hartford Cas. Ins. Co. v. Swift Distr., Inc.*, 59 Cal. 4th 277, 291 (2014) ("A false or misleading statement (1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business.").

SVO similarly cannot show a claim for "damages" for disparagement as defamation had already been dismissed, disavowing any recovery for disparagement. *Great Am. E&S Ins. Co.*, 357 F. Supp. 3d at 968, *aff'd*, 799 Fed. Appx. 539 (holding the claimant's "concession that it was not seeking damages for disparagement confirms there is no[] duty for Great American to defend."). SVO cannot now speculate that the Claimant might have substituted the intentional interference cause of action for the very defamation cause of action it had intentionally dismissed. *Crab Boat Owners Assn*., 2004 U.S. Dist. LEXIS 23615 at *19-20 (citing *Low v. Golden Eagle Ins. Co*., 99 Cal. App. 4th 109, 114 (2002) as "holding that plaintiff impermissibly speculates when surmising an amendment to the third-party plaintiffs pleading that would 'in effect substitute one cause of action for another'"). The FAC's conclusory allegation that SVO "disparage[ed] Vertiv's work" does not change this result. The Ninth Circuit's decision in *Zox LLC v. West Am. Ins. Co.*, 2024 U.S. App. LEXIS 3095, *3-4 (9th Cir. Feb. 9, 2024) is dispositive of this issue. *Zox* explains that conclusory disparagement labels do not trigger a defense. Rather, courts look to factual allegations that support the elements of disparagement. Notably, SVO does not even attempt to rebut *Zox* as those allegations mirror those SVO invokes – that SVO "disparaged Vertiv's work." [Doc. 100-3, FAC, ¶ 146, EX. B-29.][3]

---

[3] Furthermore, the FAC's sentence that SVO "disparage[ed] Vertiv's work" starts with "SVO improperly and intentionally interfered with Vertiv's contract." [Doc. 100-3, FAC, ¶ 146, EX. B-29.] The cause of action itself is labeled as "intentional interference." [Doc. 100-3, FAC, EX. B-29.] The intentional acts exclusions apply specifically to exclude coverage for acts that were allegedly done by the insured with the intention of causing harm. [Doc. 100-1, Policy, EX. A-23.] *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 352 (9th Cir. 1988). SVO cannot create coverage by pointing to allegations that are solely based on SVO's intentional conduct.

SVO's assertion that the defense invoices contain entries about disparagement after the defamation dismissal does not advance its coverage theory. (Opposition, 1:13-15.) A defense is triggered by the pleading, not the time entries submitted by defense counsel. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Siliconix, Inc.*, 726. F. Supp. 264, 272 (N.D. Cal. 1989) ("[A]lthough [the insured's] counsel in the patent suit may assert that potentially covered claims are suggested by the damages asserted in [the claimant's] complaint, his self-serving legal opinion hardly constitutes a 'fact' known to [the insurer] which … gives rise to a continuing duty to defend."). Regardless, it is irrefutable that the Claimant would need to seek "damages," which were not as stated above.

In short, there is no "doubt as to whether the facts triggered a continued duty to defend." (Opposition, 8:5-6.) The indisputable material facts show that the defense obligation terminated when the defamation claim was dismissed.

**3. No "Property Damage" Is Alleged in the FAC to Trigger Coverage A.**

SVO has the burden to show that the FAC alleges "property damage" caused by an "occurrence" to trigger coverage. [Doc. 100-2, Policy, EXH. A-18.] *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994). SVO has not met its burden under the Policy.

Violations of intellectual property rights (the vast majority of the claims asserted in the FAC) are not claims for "property damage." *Avery Dennison Corp. v. Allendale Mut. Ins. Co*., 310 F.3d 1114, 1116 (9th Cir. 2002); *Murphy v. Federal Ins. Co*., 2001 U.S. Dist. LEXIS 11578, *8 (N.D. Cal. Aug. 1, 2001). In addition, the FAC only alleged economic losses, which do not qualify as "property damage." *Kazi v. State Farm Fire & Cas. Co*., 24 Cal. 4th 871, 879 (2001); *Waller*, 11 Cal. 4th at 17; *Golden Eagle Ins. Corp. v. CEN-FED, Ltd.*, 148 Cal. App. 4th 976, 987 (2007). SVO argues that the allegations of the "loss of use of transfer switches, cooling systems and other devices" triggered Coverage A. (Opposition, 7:28-8:1.) The only time "transfer switch" or "cooling system" is referenced in the FAC is in connection with SVO's violations of the Claimant's patents, which are excluded by the intellectual property exclusion. [Doc. 100-3, FAC, ¶¶ 21-22, 78, 81-83, 89, 92-94, 104-105, 111, 115-116, EXH. B-5, 6, 16-25.] The phrase "other device" is not in the FAC at all. Putting that aside, SVO's argument is fundamentally flawed as the FAC does not make a claim for "damages" caused by the Claimant's "loss of use." Rather, the alleged "loss of use" is actually ***SVO's***

legal loss of use of "transfer switches" and "cooling systems" given the unpermitted use of the Claimant's patents. [Doc. 100-3, FAC, ¶¶ 82, 93, 104, 115, 126, EXH. B-16, 18-20, 24, 26.] For coverage to apply, ***the Claimant***, not the insured, must allege "loss of use" causing "damages."

Even if the FAC could be read as alleging the Claimant's loss of use of anything, the cause of such "property damage" would not be an "occurrence." *WAWGD, Inc. dba Foresight Sports v. Sentinel Ins. Co.*, 2017 U.S. Dist. LEXIS 161361, *13-14 (S.D. Cal. Sept. 29, 2017). At most, the Claimant would be arguing a breach of agreement or conversion, neither of which constitute an "accident" to trigger coverage. *Golden Eagle Ins. Co.*, 148 Cal. App. 4th at 989 ("Cen-Fed's failure to discharge its contractual liabilities under the lease agreement was nothing more than a nonaccidental act of breach of contract."); *Royce Int'l Broadcasting Corp. v. Vigilant Ins. Co.*, 51 Fed. Appx. 229, 230 (9th Cir. 2002) (holding breach of contract arising out of a refusal to go through with a sale was not accidental and did not constitute an "occurrence"); *Collin*, 21 Cal. App. 4th at 803-804 (holding conversion is not a covered "accident"); *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 714 (2002); *Crab Boat Owners Assn.*, 2004 U.S. Dist. LEXIS 23615 at *12, n.1 ("[C]onversion cannot be an 'occurrence' or 'accident' within the meaning of insurance policies."). There was never a trigger of coverage for "property damage" in the FAC.

For these reasons, Navigators has established that it had no obligation to defend SVO after dismissal of the defamation claim and, therefore, is entitled to reimbursement of $2,998,457.50 incurred in defense of uncovered claims following the dismissal. [Doc. 100-1, Muth Dec., ¶ 13.] SVO's objection to the damages calculation fails for two reasons. First, evidence of that amount was produced by Navigators on September 24, 2025 during discovery (Bates N09885-09908). [Doc. 104-1, Declaration of Shannon Santos ("Santos Dec."), ¶ 2.] Second, regardless, after the revision to Rule 56, "[c]ourts must now consider unauthenticated evidence at summary judgment if the evidence can 'be presented in a *form* that would be admissible' at trial." *Harlow v. Chaffey Cmty. Coll. Dist.*, 2022 U.S. App. LEXIS 25357, *3 (9th Cir. Sept. 6, 2022), citing Fed. R. Civ. P. 56(c)(2) (emphasis in original). SVO's improper evidentiary objections do not preclude the Court from granting judgment in Navigators' favor by issuing a declaration "that Navigators has the right to reimbursement of all attorneys' fees and costs incurred in defense of the Underlying Action as of March 24, 2021 as it had

no duty to defend SVO under the Policy as of that time." [Doc. 43, First Amended Complaint, ¶ 37.]

**C. SVO's Attempt to Throw Arguments at the Wall in Hopes Something Sticks Fails to Rebut the Clear and Concise Arguments Raised in the Motion.**

SVO asserts a flurry of other arguments to try and avoid summary judgment in Navigators' favor. None of these extraneous contentions justifies denial of the Motion.

For example, SVO references the fact that the other insurer that defended the Underlying Action, Hallmark Insurance Company ("Hallmark"), did not seek reimbursement from SVO for the fees incurred. (Opposition, 4:15-16; 24:2-4.) Another insurer's decision whether to seek reimbursement based on its own policy provisions is completely irrelevant to interpreting Navigators' Policy. Likewise, SVO's assertion that an earlier tender to Hallmark would reduce Navigators' damages is baseless and reflects an effort to deflect SVO's own responsibility to tender claims onto Navigators. (Opposition, 1:26-2:2; 19:2-3; 24:2-4.) SVO cites no authority to suggest an insurer has an obligation under a policy to inform its insured of other insurance coverage available to it. *Gibson v. Gov't Employ. Ins. Co.*, 162 Cal. App. 3d 441, 443 (1984) ("[T]he insurer's fiduciary duties are limited to those arising out of the insurance contract and do not encompass the duties asserted."). Neither Navigators nor defense counsel has any legal obligation to provide coverage advice to SVO, including advising on available insurance. *Libow v. Fullerton & Co., Inc.*, 34 Fed. Appx. 543, 546 (9th Cir. Apr. 17, 2002) ("[A]n insurer does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage"); *Mancha Dev. Co., LLC v. Houston Cas. Co.*, 2019 U.S Dist. LEXIS 214545, *29 (C.D. Cal. July 9, 2019) ("[B]ecause both the insurer and the insured are clients of defense counsel, the provision of coverage advice to either side would violate counsel's duty to the other."); *Fidelity Nat'l Fin., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2014 U.S. Dist. LEXIS 49854, *16-17 (S.D. Cal. Apr. 9, 2014). No authority exists to suggest Navigators had any such duty, and none could as that information lies exclusively with SVO rather than its insurers. Regardless, any alleged failure to tender to another insurer does not impact the coverage determination based on the Policy.

SVO then argues that Navigators had an obligation to tender the defense to Hallmark as "the assessment of insurance coverage is a basic task of defense." (Opposition, 23:26-28.) It goes without

saying that Navigators was the defending insurer, not the assigned defense counsel and, as such, is not charged with any attorney obligations to defend a case. *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 880 (1973); *Ghiglione v. Discover Prop. & Cas. Co.*, 2007 U.S. Dist. LEXIS 22901, *10 (N.D. Cal. Mar. 29, 2007). The Motion shows Navigators "inquire[d] immediately into the facts of the case, hire[d] competent counsel, provide[d] counsel with adequate funding, and [kept] abreast of the progress of the litigation." *Ghiglione*, 2007 U.S. Dist. LEXIS 22901 at *6-7. That is the universe of what Navigators was required to do, not assist SVO in pursuing additional coverage. Moreover, the case SVO cites to support its untenable position that malpractice constitutes a defense to an action for attorneys' fees is readily distinguishable and unpersuasive, as it addresses the unrelated principle that malpractice may serve as a defense in actions ***between an attorney and client***. *Safine v. Sinnott*, 15 Cal. App. 4th 614, 616 (1993). The case contains no holding – express or implied – that the same principle applies in the fundamentally distinct context of an action by an insurer seeking *Buss* reimbursement from the insured. Similarly, SVO's second cite was a rescission action where the District Court found a triable issue as to whether the attorneys' fees sought in recovery were in fact paid. *Century Sur. Co. v. Robin Singh Educ. Servs.*, 2008 U.S. Dist. LEXIS 129940, *54 (C.D. Cal. Apr. 14, 2008). In this case, Navigators has produced invoices, proof of payment, internal charts of payments, and verified discovery responses to establish the amount paid. [Doc. 104-1, Santos Dec., ¶ 2.] Regardless, Navigators' First Amended Complaint seeks declaratory relief, and Navigators has shown it is entitled to a declaration as to the right to reimbursement.

Any affirmative defenses asserted in this case do not preclude judgment given the Motion establishes the elements for Navigators to recover on post-dismissal fees. SVO provides no legal authority in support of its proposition that "[i]t is a defense to restitution that there was little or no benefit conferred by Navigators on SVO" or that Navigators "is barred from seeking reimbursement by its own bad faith." (Opposition, 18:25-28.) These purported legal statements disregard the fact that Navigators defended from tender and paid $5.5 million in defense costs, conclusively refuting SVO's disingenuous contention that it derived no benefit from the defense. (Motion, 11:21-28; 12:19-21.) In a last-ditch effort, SVO cites to non-insurance restitution law instead of acknowledging the established precedent that *Buss* provides no such limitations on recovery of fees spent on uncovered

claims. *Buss* is the precedent that dictates an insurer's right of reimbursement from its insured.

Lastly, in yet another perplexing strawman argument, SVO asserts that the Motion claims SVO was required to retender the FAC. (Opposition, 15:10-13.) This accusation is misleading. The Motion states that, if the Claimant amended the FAC to reinstate the defamation claim while Navigators was not defending, SVO would need to retender. (Motion, 18:12-15.) This is self-evident, as only SVO would be aware of the reinstatement of the defamation claim. Regardless, SVO's point, even though inaccurate, is immaterial because Navigators never actually withdrew from the defense and the Claimant never amended the FAC.

Throughout the Opposition, SVO repeatedly makes factual assertions without any citation to evidence, including that Navigators "rehired" coverage counsel to "pull back" Navigators' coverage position. (Opposition, 4:7-9.) Navigators respectfully requests that the Court decline to adopt any conclusions in the Opposition that lack evidentiary or legal support.

**D. <u>The Opposition Does Not Revive Any of SVO's Counterclaims.</u>**

The Motion establishes that there is no triable issue of fact that would allow SVO to recover on any of its Counterclaims, including the cause of action for declaratory relief even though SVO claims to have missed that part of the Motion. (Motion, 28:21-23; Opposition, 20:27-28.) The Opposition does not refute any of Navigators' arguments in this regard.

**1. SVO Cannot Show that Navigators Breached the Policy.**

The Motion conclusively establishes that SVO cannot meet the elements of the breach of contract claim, because it cannot show a breach. *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Navigators paid for SVO's defense from tender through trial and never ceased paying for defense counsel. [Doc. 100-1, Muth Dec., ¶¶ 4, 10, 13.] While Navigators expressed its intent to withdraw once there was no covered claim, it never stopped paying defense fees. [Doc. 100-1, Muth Dec., ¶¶ 10, 13.] **Even if SVO could show that Navigators had withdrawn, SVO still could not recover on its breach of contract claim.** Once the only potentially covered claim was dismissed, any defense obligation was extinguished. *Buss*, 16 Cal. 4th at 46; *Kazi*, 24 Cal. 4th at 879.

For the same reason, a new retainer agreement with panel counsel does not establish a breach. First, it is undisputed that the same firm was representing SVO in connection with its affirmative

claims. [Doc. 100-1, Muth Dec., ¶ 11.] Second, even if SVO signed the retainer agreement because it expected to be paying for its own defense, it does not change the fact that SVO did not pay such fees. The insurers paid all defense fees. [Doc. 100-1, Muth Dec., ¶¶ 5, 10, 13.] Tellingly, SVO makes no contention that the retainer was used for defense fees, presumably to avoid making a false statement to the Court. (Opposition, 20:24-25; Doc. 106-7, Pelz Dec.)

Moreover, any alleged malpractice by counsel cannot be imputed to Navigators, including any assertion that counsel's handling of the Underlying Action resulted in striking one of SVO's affirmative claims. *Merritt*, 34 Cal. App. 3d at 881-882; *Ghiglione*, 2007 U.S. Dist. LEXIS 22901 at *10. SVO is separately pursuing a malpractice action against panel counsel. [Doc. 65, SVO's Motion to Continue Trial, 4:4-6.] If SVO's theory of liability was true, SVO could obtain a double recovery: first in the malpractice action against counsel and again in a breach of contract claim against the insurer. Similarly, allegations of "excessive bills" reflect a dispute solely between SVO and defense counsel. (Opposition, 22:14-15.) Yet inexplicably, SVO attempts to use this groundless malpractice defense to avoid its obligation to reimburse Navigators, while citing no authority for the same.

SVO's theory that an insurer cannot utilize panel counsel without creating a conflict has been routinely rejected by the courts. (Opposition, 21:19-20.) *American Claims Mgmt., Inc. v. Allied World Surplus Lines Ins. Co.*, 484 F. Supp. 3d 869, 883 (S.D. Cal. 2020) (holding "this type of relationship [between insurer and defense counsel where the same attorney is repeatedly retained] is not abnormal."). Regardless, **SVO was offered independent counsel** under Civil Code section 2860, which it expressly waived for its defense. [Doc. 106-7, Declaration of Ulrich Pelz ("Pelz Dec."), ¶ 11.] SVO likewise does not provide any authority to rebut the cases cited in the Motion that payment of attorneys' fees is *prima facie* evidence of their reasonableness. (Motion, 27:21-28:1.)

The only evidence SVO cites for the proposition that "hundreds of thousands of dollars in fees" for SVO's defense were "improperly allocated by Tyson to affirmative claims" (Opposition, 23:2-10) is documentation of payments not in any way designated as defense costs. [Doc. 106-7, pp. 53-209.] For example, SVO takes issue with paying some of the arbitration costs, but it is uncontested that SVO was pursuing affirmative claims against the Claimant. [Doc. 106-7, Pelz Dec., ¶¶ 12, 16, 20.] The fees charged to SVO directly from panel counsel were for the separate retention

for prosecution of affirmative claims, and Navigators was "never provided copies of the bills that went to SVO for fees and costs associated with the affirmative claims." [Doc. 100-1, Muth Dec., ¶ 11.] It is well established that Navigators owes no coverage obligation to fund SVO's affirmative claims against the Claimant. *James 3 Corp. v. Truck Ins. Exch*., 91 Cal. App. 4th 1093, 1104 (2001); *Barney v. Aetna Cas. & Sur. Co*., 185 Cal. App. 3d 966, 975 (1986). While SVO does not provide any evidence to suggest the amounts were "improperly allocated" to the affirmative claims, even if SVO could make such an assertion, it still would not establish liability against Navigators, because its only relevance would be to SVO's malpractice action against panel counsel.

**2. Absent a Breach of Contract Claim, the Bad Faith Claim Fails.**

While Navigators disputes SVO's contention that the Motion does not respond to the allegations of purported bad faith as alleged in the Counterclaims (Opposition, 24:7-8), the applicable legal authority mandates that the bad faith claim be dismissed if the breach of contract claim fails. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990); *Waller*, 11 Cal. 4th at 36; *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1034 (9th Cir. 2008). The Motion establishes that SVO cannot prevail on breach of contract, thus requiring the Court to also find in Navigators' favor on the bad faith claim. The "breaches" referenced in the Opposition all relate to Navigators' defense obligations under the Policy. (Opposition, 24:10-15.) Any defense obligation has been thoroughly addressed through the Motion.

Alternatively, Navigators seeks summary judgment on the bad faith claim based on a genuine dispute as to its coverage obligations upon dismissal of the defamation claim. *Chateau Chamberay Homeowners Assn. v. Associated Inter. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001). **The Opposition does not respond to the genuine dispute argument at all**, conceding that the bad faith claim should be adjudicated in Navigators' favor based on there being a genuine coverage dispute irrespective of the finding on the defense obligation.

**3. For Two Separate Legal Reasons, the UCL Claim Fails.**

SVO falsely states that Navigators "solely" argues that "SVO has an adequate alternative remedy at law" to bar the UCL claim. (Opposition, 24:17-19.) To the contrary, the Motion makes two distinct arguments: (1) no conflict existed by the appointment of panel counsel, the only allegation in

the Counterclaim [Doc. 53, Counterclaim, ¶ 47]; and (2) SVO is precluded from seeking equitable relief under the UCL statute given the relief sought through the other Counterclaims (*Oxnard Manor LP*, 709 F. Supp. 3d 971, 991 (C.D. Cal. Dec. 2023)). (Motion, 30:5-31:10.) SVO chose only to respond to one argument, again conceding adjudication of this claim in Navigators' favor.

The cases SVO cites in support of its position that there is no other equitable remedy at law both deal with pleading challenges, not summary judgment motions. *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1274 (C.D. Cal. 2022); *Haas v. Travelex Ins. Servs.*, 555 F. Supp. 3d 970, 973-974 (C.D. Cal. 2021). Moreover, those cases involved a request for a "prospective injunction" and "the possibility of future harm." *Haas*, 555 F. Supp. 3d at 976; *Lemus*, 613 F. Supp. 3d at 1283. SVO cannot establish a possibility of future harm to it as the Underlying Action has terminated. [Doc. 100-1, Muth Dec., ¶ 13.] Therefore, the UCL claim is statutorily barred.

**4. SVO Does Not Cite to Any Evidence to Seek Punitive Damages.**

SVO did not conduct any discovery in this case on the punitive damages claim to meet the high statutory burden. Cal. Civ. Code § 3294. [Doc. 104-1, Santos Dec., ¶ 4.] If SVO had any evidence to support such purported damages, it would have included such evidence in the Opposition.

## III. CONCLUSION

Navigators requests the Court grant the Motion. In accordance with L.R. 7-3(c), Navigators hereby makes evidentiary objections to SVO's use of any expert opinion as stated above and for relying on confidential or "attorneys' eyes only" documents from the Underlying Action that are subject to a protective order. [Doc. 106-5, Moscaret Expert Report, Ex. H, pp. 101-108, Doc. 106-7, Pelz Dec., Ex. 9-10, pp. 211-244.] There is no protective order in this case. [Doc. 91, Court Transcript, 21:10-22:10.]

Dated: December 22, 2025

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: */s/ Shannon L. Santos*
David Simantob
Shannon L. Santos
*Attorneys for Plaintiff/Counter-Defendant Navigators Specialty Insurance Company*