Shawn Shaffie (SBN 262002)
shaffie@parkershaffiellp.com
Bruce T. Smyth (SBN 89171)
smyth@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 W. 6th Street, Suite 500
Los Angeles, California 90017
Telephone: (213) 622-4441
Facsimile: (213) 622-1444

Steven W. Murray (SBN 41493)
swm@psilaw.com
**STEVEN W. MURRAY, APC**
14930 Ventura Boulevard #205
Sherman Oaks, CA 91403
Telephone: (818) 501-2277
Facsimile: (818) 501-8441

Attorneys for Defendant and Counterclaimant
**SVO BUILDING ONE, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Plaintiff,

v.

SVO BUILDING ONE, LLC,

Defendant.

SVO BUILDING ONE, LLC

Counterclaimant,

v.

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Counter-defendant.

Case No. 3:22-CV-07102-AMO
[Assigned to Hon. Araceli Martinez-Olguin]

**DECLARATION OF BRUCE T. SMYTH IN SUPPORT OF REPLY IN SUPPORT OF MOTION OF DEFENDANT SVO BUILDING ONE. LLC FOR SUMMARY JUDGMENT**

Date: March 5, 2026
Time: 2:00 p.m.
Dept.: Courtroom 10, 19th Floor

*[Filed concurrently with Reply and Objections]*

/ / /

/ / /

**DECLARATION OF BRUCE T. SMYTH**

I, Bruce T. Smyth, declare as follows:

1. I am an attorney at law licensed to practice before the Courts of the State of California and have been admitted to the Bar of the United States District Court for the Northern District of California. I am Senior Counsel with Parker Shaffie, LLP, counsel of record for defendant and counterclaimant SVO Building One, LLC ("SVO"). In that capacity, I am aware of the facts set forth herein of my own personal knowledge.

2. I submit this declaration in support of SVO's Reply to Navigators' Opposition to SVO's motion for summary judgment.

3. In the course of discovery, Navigators produced copies of the fee bills of Tyson & Mendes LLP after they had been reviewed and in some cases marked down by its bill reviewing service, Legal Xchange. The documents were bate stamped for production by Navigators with the prefix "N" followed by a five digit number. A number of the fee entries after the dismissal without prejudice of the defamation cause of action in March 2021 reference the claims of disparagement or of false reports by SVO or by its subcontractor DPR. Attached hereto collectively as Exhibit 1 are copies of pages from that production which reference those claims with the relevant entries highlighted in yellow. These include Production Nos. N06465, N06470, N07514, N09388, N07520 and N08397. Portions of other billing entries reflecting attorney-client communications are redacted in black.

4. Attached hereto as Exhibit 2 are true and correct copies of excerpts from the certified copy of the deposition of Andre Jardini, which I took by video on November 18, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 22, 2025 at Los Angeles, California

Bruce T. Smyth

Bruce T. Smyth

# EXHIBIT "1"

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | CFD analysis, including opinions of Vertiv expert P. Isaak and counter opinions of SVO expert G. Hartford | |
| 06/09/2021 | Sydney Lottes | 188 | L120 A104 | 0.90 | 0.00 | $80.00 | $0.00 | $72.00 | $0.00 | Review and analysis of dates of selected documents on relativity and relevant bates # (76 documents) in preparation for finalization of Exhibit List for Arbitration. | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Alexander Randolph | 204 | L340 A109 | 0.60 | 0.00 | $165.00 | $0.00 | $99.00 | $0.00 | Expert call with Alay of HKA Experts to discuss document productions to experts | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Sydney Lottes | 211 | L120 A104 | 1.00 | 0.00 | $80.00 | $0.00 | $80.00 | $0.00 | Review and analysis of timeline of selected facts, documents on relativity and relevant bates # (57 pages) in preparation for finalization of Exhibit List for Arbitration. | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Sydney Lottes | 213 | L120 A104 | 1.00 | 0.00 | $80.00 | $0.00 | $80.00 | $0.00 | Review and analysis of dates of selected documents on relativity and relevant bates # (86 documents) in preparation for finalization of Exhibit List for Arbitration. | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Ethan Kraft | 235 | L440 A103 | 1.60 | 0.00 | $165.00 | $0.00 | $264.00 | $0.00 | Review and analysis of issues related to trademark infringement issues: Section 3.2(b) of the LSTKA signed by Vertiv and SVO, proprietary design drawings, and on site security. | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Sydney Lottes | 243 | L120 A104 | 1.00 | 0.00 | $80.00 | $0.00 | $80.00 | $0.00 | Review and analysis of documents on Relativity and relative bates #s in preparation for finalization of Exhibit List for arbitration (44 documents). | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Suzanne Willoughby | 258 | L420 A107 | 0.10 | 0.00 | $80.00 | $0.00 | $8.00 | $0.00 | Email to HKA experts G. Liddicoat, K. Baker, D. Bones Vertiv expert Dr. L. Hofmann additional 3 supporting documents to Vertiv expert Dr. L. Hofmann's report. | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Jamie Tabrizi | 264 | L120 A104 | 2.30 | 0.00 | $165.00 | $0.00 | $379.50 | $0.00 | Extensive review and analysis of documents produced by SVO, Vertiv, CPS and DPR that would pertain to Vertiv's allegations contained in its cause of action for intentional interference with contractual relations, specifically communications that would prove Vertiv's claim that SVO and DPR were having secret meetings disparaging Vertiv's work or any documents supporting damages arising therefrom (review approximately 300 documents) in order to prepare defense briefing regarding same | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Sydney Lottes | 265 | L120 A104 | 0.80 | 0.00 | $80.00 | $0.00 | $64.00 | $0.00 | Review and analysis of dates of selected arbitration Pleadings documents (56 documents) in preparation for Arbitration. | This invoice is a duplicate of invoice 79821 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | and relevant bates # (5 pages) in preparation for finalization of Exhibit List for Arbitration. | duplicate of invoice 79821 |
| 06/09/2021 | Jamie Tabrizi | 1174 | L120 A109 | 1.40 | 0.00 | $165.00 | $0.00 | $231.00 | $0.00 | Attend conference call meeting with client SVO contact, Ulrich Pelz, TM SVO litigation team members Cindy Mader and David Frishman and HKA defense damages experts regarding [redacted] | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | David Frishman | 1197 | L110 A107 | 0.10 | 0.00 | $225.00 | $0.00 | $22.50 | $0.00 | Email to personal counsel of client regarding status of coordination of insurance carriers regarding defense of SVO | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | David Frishman | 1198 | L340 A103 | 0.30 | 0.00 | $225.00 | $0.00 | $67.50 | $0.00 | Review revise and supplement meet and confer letter to counsel for Vertiv regarding summary opinion report deficiencies regarding Vertiv expert L Hoffman | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Suzanne Willoughby | 1219 | L420 ZZZ-A110 | 0.40 | 0.00 | $80.00 | $0.00 | $32.00 | $0.00 | Upload additional Dr. Hofmann supporting 9 documents to D. Killinger, Duff & Phelps expert's dropbox | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Jamie Tabrizi | 1237 | L120 A104 | 2.50 | 0.00 | $165.00 | $0.00 | $412.50 | $0.00 | Extensive review and analysis of documents produced by SVO, Vertiv, CPS and DPR that would pertain to Vertiv's allegations contained in its cause of action for unfair competition, namely, documents that disprove Vertiv's contentions that: SVO induced Vertiv to retain DPR on this project in order to obtain a concession amount from DPR; or that SVO caused third party commissioning agent Syska Hennessey to issue a false report regarding commissioning (approximately 400 documents) in order to prepare defense briefing regarding same | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | CIndy Mader | 1250 | L130 A106 | 0.10 | 0.00 | $215.00 | $0.00 | $21.50 | $0.00 | Communicate with client. U. Pelz, regarding [redacted] | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | Ethan Kraft | 1252 | L440 A103 | 1.60 | 0.00 | $165.00 | $0.00 | $264.00 | $0.00 | Draft proposed stipulation of facts related to Trademark infringement issues: Section 3.2(b) of the LSTKA signed by Vertiv and SVO, proprietary design drawings, and on site security. | This invoice is a duplicate of invoice 79821 |
| 06/09/2021 | David Frishman | 1260 | L340 A106 | 0.30 | 0.00 | $225.00 | $0.00 | $67.50 | $0.00 | Telephone call from client SVO contact, Ulrich Pelz, regarding [redacted] | This invoice is a duplicate of |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | cause of action regarding allegations of DPR disparagement of Vertiv and their recollections regarding circumstances surrounding allegations from percipient knowledge of project as well as unfair business practices claim | | |
| 06/28/2021 | Julee Fritsch | 889 | L340 A104 | 1.40 | 1.40 | $215.00 | $215.00 | $301.00 | $143.04 | Review Ulrich Pelz's [redacted] | | |
| 06/28/2021 | Richard Dieffenbach | 930 | L340 A109 | 1.10 | 1.10 | $215.00 | $215.00 | $236.50 | $112.39 | Telephone conference with Julee Fritsch and HKA experts Dave Bones and Gary Liddicoat regarding Second Amended Statement of Damages | | |
| 06/28/2021 | Robyne Dew | 956 | L440 A104 | 3.20 | 0.00 | $80.00 | $80.00 | $256.00 | $0.00 | Continue to search review LinkedIn and other background check internet research databases for residential or current employment addresses to serve Alvernez, Eaves, Oberle, Perez and Hanes. | Clerical As Described | This entry appears t task such as a telep website, database, seeking information party or witness; su name, address, cor information, etc. Th describes work that require the legal exp professional billing a and is typically perfo administrative supp |
| 06/28/2021 | Julee Fritsch | 968 | L340 A104 | 3.40 | 3.40 | $215.00 | $215.00 | $731.00 | $347.39 | Review Brandon McDaniel's deposition for purposes of preparing for delay expert deposition | | |
| 06/28/2021 | David Frishman | 980 | L340 A106 | 0.20 | 0.20 | $225.00 | $225.00 | $45.00 | $21.39 | Email to client SVO contact, Ulrich Pelz regarding [redacted] | | |
| 06/28/2021 | Suzanne Willoughby | 1016 | L440 A104 | 2.10 | 2.10 | $80.00 | $80.00 | $168.00 | $79.84 | Reviewed and analyzed California arbitration hearings and AAA website regarding presentations, exhibits, web video, AAA virtual mock hearings, AAA Order and Procedures, mock hearings, technology and remote hearings, and opening statements in preparation for 7/22 AAA hearing email to the team. | | |
| 06/28/2021 | David Frishman | 1019 | L340 A108 | 0.20 | 0.20 | $225.00 | $225.00 | $45.00 | $21.39 | Telephone call from lead HKA expert with Ken Baker regarding deposition of Ken Baker and related issues, including status of Vertiv expert depositions | | |
| 06/28/2021 | Julee Fritsch | 1035 | L340 A104 | 0.30 | 0.30 | $215.00 | $215.00 | $64.50 | $30.65 | Review expert Jeff Smith's materials regarding screen wall issues and defect | | |
| 06/28/2021 | Julee Fritsch | 1052 | L340 A104 | 0.40 | 0.40 | $215.00 | $215.00 | $86.00 | $40.87 | Review missing backup documentation for four of Jeff Smith's architectural design defect (approximately 75 pages) | | |
| 06/28/2021 | Jamie Tabrizi | 1090 | L120 A103 | 6.80 | 6.80 | $165.00 | $165.00 | $1,122.00 | $399.90 | Prepare factual introduction, factual background, and initial legal standards sections of briefing regarding SVO's defense to Vertiv's Intentional interference with contractual relations cause of action regarding allegations of DPR disparagement of Vertiv | Insufficient Detail | 59.3 cumulative hou the arbitration brief previous invoice an this invoice). Withou as to complexity, iss length of total # of documents/pages o prepared/reviewed, reasonableness of t cannot be determin attach a copy of this any appeal. |
| 06/28/2021 | David Frishman | 1094 | L340 A104 | 0.40 | 0.40 | $225.00 | $225.00 | $90.00 | $42.77 | Review regarding results of pre- deposition preparation meeting of IP expert, Erik Laykin, including readiness for deposition and testimony strategy issues | | |
| 06/28/2021 | David Frishman | 1108 | L340 A108 | 0.30 | 0.30 | $225.00 | $225.00 | $67.50 | $32.08 | Telephone call with SVO IP expert Erik Laykin regarding readiness for deposition and strategy issues concerning deposition testimony on issue of computative fluid dynamics, reliance upon consultant Ian Bitterlin and overall strategy for deposition and related defense of IP issues | | |
| 06/28/2021 | Ethan Kraft | 1117 | L120 A109 | 1.40 | 1.40 | $165.00 | $165.00 | $231.00 | $109.78 | Attend SVO litigation team meeting with Richard | | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/28/2021 | 389 | L440 A104 | 1.00 | 1.00 | $256.00 | $0.00 | $256.00 | $0.00 | Continue to search review LinkedIn and other background check internet research databases for residential or current employment addresses to serve Alvernez, Eaves, Oberle, Perez and Hanes. | Task was not clerical | As discussed with claims handler Angel Muth, this is a very unique case. The claims by Vertiv against SVO are multiple (see our prior pre-arbitration report of June 24, 2021). Those claims, which center around the construction of a data center and are highly complex and overlapping and involve multiple contractual issues and related claims, as well as Intellectual Property claims (i.e., alleged trade secret violations and patent infringement), as well as unfair business practices, etc. The work completed to assist the attorney in the furtherance of developing a defense strategy. A legal secretary could not complete the task because the review and work product takes into account the specific legal and factual underpinnings of the case file and is in furtherance of highlighting and expounding upon these issues. It should be noted that Hallmark Insurance, which was sharing in fees and costs at 50% paid for this charge without deduction, or similar). | D. Admin/Cle |
| 06/28/2021 | 390 | L120 A103 | 1.00 | 1.00 | $706.30 | $0.00 | $706.30 | $0.00 | Prepare factual introduction, factual background, and initial legal standards sections of briefing regarding SVO's defense to Vertiv's Intentional interference with contractual relations cause of action regarding allegations of DPR disparagement of Vertiv | Time was Reasonable | As discussed with claims handler Angel Muth, this is a very unique case. The claims by Vertiv against SVO are multiple (see our prior pre-arbitration report of June 24, 2021). Those claims, which center around the construction of a data center and are highly complex and overlapping and involve multiple contractual issues and related claims, as well as Intellectual Property claims (i.e., alleged trade secret violations and patent infringement), as well as unfair business | F. Docum not attach |

N09388

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Ian Bitterlin for use in making his expert opinions (45 documents 120 pages) | | would require the at worked non-stop, or matters only, withou other matters; non-l or personal reasons or breaks, or even l from 8:00 am to 8:4 the foregoing, this d feasible nor practica and other entries bi have been reduced full. Please provide explanation for the t this date across all any appeal of this re |
| 06/29/2021 | Julee Fritsch | 1006 | L340 A104 | 1.30 | 1.30 | $215.00 | $215.00 | $279.50 | $132.83 | Review portions of deposition transcript of Aaron Weeks for purposes of preparing for Vertiv expert Chris Smith's deposition | | |
| 06/29/2021 | Suzanne Willoughby | 1086 | L420 ZZZ-A110 | 2.60 | 0.00 | $80.00 | $80.00 | $208.00 | $0.00 | Downloaded and uploaded expert's relied upon documents of reports to G. Harford, K. Baker, K. Beihagi, D. Bones, and E. Laykin in preparation for updating experts' matrix. | Clerical As Described | File management/o including retrieval/ g sorting/ marking/ lal receipt/ calendaring document tracking/ duplicates/ preparin copying/ down-load printing, forwarding assembling/ filing fil filing pleadings/ upc database/ keeping t and deadlines/ sche deemed a clerical ta of who performs the |
| 06/29/2021 | Alexander Randolph | 1111 | L120 A104 | 1.30 | 1.30 | $165.00 | $165.00 | $214.50 | $79.51 | Review and analysis of documents provided by SVO for electrical engineer Ian Bitterlin for use in making his expert opinions (50 documents 110 pages) | Excessive Time | Attorney has billed 6/29/21 on Hartford way of illustration, th would require the at worked non-stop, or matters only, withou other matters; non-l or personal reasons or breaks, or even l from 8:00 am to 8:4 the foregoing, this d feasible nor practica and other entries bi have been reduced full. Please provide explanation for the t this date across all any appeal of this re |
| 06/29/2021 | Richard Dieffenbach | 1116 | L440 A106 | 0.20 | 0.20 | $215.00 | $215.00 | $43.00 | $20.43 | Correspondence with SVO Team leader David Frishman regarding trial technician and retainer agreement for same, estimated rate sheet | | |
| 06/29/2021 | David Frishman | 1131 | L340 A108 | 0.10 | 0.10 | $225.00 | $225.00 | $22.50 | $10.69 | Email to lead HKA expert Ken Baker regarding deposition testimony of HKA expert Jeff Smith and related issues | | |
| 06/29/2021 | CIndy Mader | 1134 | L330 A109 | 6.50 | 6.50 | $215.00 | $215.00 | $1,397.50 | $664.13 | Attend and defend deposition of expert, Erik Laykin of Duff & Phelps regarding misappropriation of trade secrets and payment of patents. | | |
| 06/29/2021 | Alexander Randolph | 1155 | L120 A104 | 1.30 | 1.30 | $165.00 | $165.00 | $214.50 | $79.51 | Review and analysis of documents provided by SVO for electrical engineer Ian Bitterlin for use in making his expert opinions (45 documents 130 pages) | Excessive Time | Attorney has billed 6/29/21 on Hartford way of illustration, th would require the at worked non-stop, or matters only, withou other matters; non-l or personal reasons or breaks, or even l from 8:00 am to 8:4 the foregoing, this d feasible nor practica and other entries bi have been reduced full. Please provide explanation for the t this date across all any appeal of this re |
| 06/29/2021 | Suzanne Willoughby | 1156 | L440 A104 | 0.80 | 0.80 | $80.00 | $80.00 | $64.00 | $30.41 | Reviewed multiple emails with R. Dew paralegal regarding witness M. Arroyo and emails with D. Frishman, R. Dieffenbach, and J. Tabrizi to determine the need for the hearing and preparation to subpoena via attorney C. Mankey. | | |
| 06/29/2021 | Jamie Tabrizi | 1158 | L120 A103 | 5.20 | 5.20 | $165.00 | $165.00 | $858.00 | $305.81 | Prepare legal analysis, factual analysis, damages and conclusion sections of briefing regarding SVO's defense to Vertiv's | Insufficient Detail | 59.3 cumulative hou the arbitration brief previous invoice an this invoice). Withou as to complexity, iss |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Intentional interference with contractual relations cause of action regarding allegations of DPR disparagement of Vertiv | | length of total # of documents/pages o prepared/reviewed, reasonableness of t cannot be determin attach a copy of this any appeal. |
| 06/29/2021 | David Frishman | 1167 | L340 A109 | 7.00 | 7.00 | $225.00 | $225.00 | $1,575.00 | $748.48 | Attend and defend deposition preparation Cleveland, OH, of HKA expert Jeff Smith (architecture - construction), with monitoring and participation by client SVO contact, Ulrich Pelz | | |
| 06/29/2021 | Jamie Tabrizi | 1208 | L120 ZZZ-A100 | 0.70 | 0.70 | $165.00 | $165.00 | $115.50 | $54.89 | Strategy call with TM member Julee Fritsch regarding necessary questions to be asked to expert Chris Smith during deposition pertaining to Vertiv claims regarding SVO impact on schedule based on interactions with DPR present in unfair business practice and intentional interference with contract claims | | |
| 06/29/2021 | David Frishman | 1274 | L340 A108 | 0.20 | 0.20 | $225.00 | $225.00 | $45.00 | $21.39 | Telephone call with lead HKA expert Ken Baker regarding deposition testimony and performance of HKA expert Jeff Smith (architecture - construction), with monitoring and related issues | | |
| 06/29/2021 | Richard Dieffenbach | 1303 | L430 A107 | 0.20 | 0.20 | $215.00 | $215.00 | $43.00 | $20.43 | Correspondence with Scott Omuhundro, Vertiv counsel, regarding stipulation to extend exhibit, Motion In Limine and stipulated facts dates | | |
| 06/29/2021 | David Frishman | 1355 | L340 A109 | 0.50 | 0.50 | $225.00 | $225.00 | $112.50 | $53.46 | Attend further and final pre-deposition preparation meeting in Cleveland, OH, with HKA expert Jeff Smith (architecture -construction) | | |
| 06/30/2021 | Jamie Tabrizi | 35 | L120 A104 | 0.20 | 0.20 | $165.00 | $165.00 | $33.00 | $15.68 | Extensive review and analysis of DPR counsel Daniel Sakaguchi's response to SVO's meet and confer letter regarding updated privilege log and search for additional documents identified by SVO as missing from production per the arbitrator's order from June 22 hearing | | |
| 06/30/2021 | Suzanne Willoughby | 91 | L440 A107 | 0.30 | 0.00 | $80.00 | $80.00 | $24.00 | $0.00 | Emails and call with A. Lavelle at KLD regarding the request to provide the bated produced versions of the CLI documents and to provide the Bates numbers to the produced version. | Clerical As Described | |
| 06/30/2021 | Suzanne Willoughby | 119 | L420 A107 | 0.10 | 0.00 | $80.00 | $80.00 | $8.00 | $0.00 | Multiple emails with Gabrielle at Peterson Court reporting regarding the videos status to B. Napper and L. Hofmann | Clerical As Described | |
| 06/30/2021 | Julee Fritsch | 135 | L340 A104 | 0.90 | 0.90 | $215.00 | $215.00 | $193.50 | $71.73 | Review Contract and COR Summary documents dated June 22, 2018 and Vertiv's response for purposes of deposing expert Chris Smith | Excessive Time | Attorney has billed 6/30/21 on Hartford way of illustration, t would require the a worked non-stop, o matters only, withou other matters; non-l or personal reasons or breaks, or even l desk, from 8:00 am light of the foregoin appear feasible nor entry and other entr day have been redu in full. Please provi explanation for the t this date across all any appeal of this r |
| 06/30/2021 | David Frishman | 162 | L440 A104 | 0.20 | 0.20 | $225.00 | $225.00 | $45.00 | $21.39 | Review consider and assess strategy concerning calling DPR employee Matt Arroyo as a arbitration wittiness, including assessment of risk associated with doing so given DPR position and prior refusal of potential | | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | documents on relativity (300 documents) for assistance in compiling exhibits critical for use at arbitration for Phase II Exhibit" | |
| 07/10/2021 | 141 | L120 A103 | 1.00 | 1.00 | $345.42 | $0.00 | $345.42 | $0.00 | Preparation of section of briefing to arbitrator regarding Vertiv's unfair business claims, specifically, regarding Vertiv's contention that SVO Seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the project | Time was Reasonable | As discussed with claims handler Angel Muth, this is a very unique case. The claims by Vertiv against SVO are multiple (see our prior pre-arbitration report of June 24, 2021). Those claims, which center around the construction of a data center and are highly complex and overlapping and involve multiple contractual issues and related claims, as well as Intellectual Property claims (i.e., alleged trade secret violations and patent infringement), as well as unfair business practices, etc. Time billed accurately reflects time spent drafting the Brief. The review and drafting of report (58 pages total) requires input from multiple attorneys across multiple entries. Further, drafting of the brief requires substantial time and effort to ensure that all necessary information is included. Extensive review and analysis of pertinent and key case files is necessary to ensure a thorough update and report is provided. It should be noted that Hallmark Insurance, which was sharing in fees and costs at 50% paid for this charge without deduction, or similar). | F. Document not attached |
| 07/10/2021 | 142 | L120 A109 | 1.00 | 1.00 | $118.74 | $0.00 | $118.74 | $0.00 | Preparation of section of briefing to | Time was Reasonable | As discussed with claims handler Angel | F. Document not attached |

# EXHIBIT "2"

CERTIFIED COPY

Express Deposition Services
by EXPRESSNETWORK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Navigators Specialty Insurance Company vs SVO Building One, LLC

Andre Jardini - Expert

November 18, 2025

Laurie A. Schmidt, CSR No. 12719, Job No. 11711

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SVO BUILDING ONE, LLC<br><br>Defendant.<br>______________________________<br>AND RELATED CROSS-ACTION<br>______________________________ | Case No. 3:22-CV-07102-AMO |

VIDEOCONFERENCE DEPOSITION OF

ANDRE JARDINI - EXPERT

TUESDAY, NOVEMBER 18, 2025, 9:27 A.M.

Reported by Laurie A. Schmidt, CSR No. 12719

Job #11711

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br>Plaintiff,<br>v.<br>SVO BUILDING ONE, LLC<br>Defendant.<br>AND RELATED CROSS-ACTION | Case No. 3:22-CV-07102-AMO |

VIDEOCONFERENCE DEPOSITION OF ANDRE JARDINI, EXPERT, taken on behalf of the Defendant and Counterclaimant, commencing at 9:29 a.m., Tuesday, November 18th, 2025, remotely, via Zoom, before Laurie A. Schmidt, Certified Shorthand Reporter No. 12719.

Job No.: 11711

APPEARANCES OF COUNSEL

FOR THE PLAINTIFF NAVIGATORS SPECIALTY INSURANCE COMPANY:

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
BY: SHANNON L. SANTOS, ESQ.
555 South Flower Street
Suite 2900
Los Angeles, California 90071
(213) 443-5100
Shannon.Santos@wilsonelder.com

FOR THE DEFENDANT AND COUNTERCLAIMANT SVO BUILDING ONE, LLC:

PARKER SHAFFIE LLP
BY: BRUCE T. SMYTH, ESQ. (SBN 89171)
800 West 6th Street
Suite 500
Los Angeles, California 90017
(213) 622-4441
smyth@parkershaffiellp.com

ALSO PRESENT: Brad Bissegger, Videographer

I N D E X

DEPONENT: ANDRE JARDINI, EXPERT PAGE:

EXAMINED BY MR. SMYTH 6

E X H I B I T S

| EXHIBIT NOS.: | | PAGE: |
| --- | --- | --- |
| EXHIBIT 6: | NOTICE OF VIDEO DEPOSITION OF EXPERT WITNESS ANDRE JARDINI | 7 |
| EXHIBIT 7: | Expert Documents (N10515-N10519) | 11 |
| EXHIBIT 8: | NAVIGATORS SPECIALTY INSURANCE COMPANY'S INITIAL EXPERT WITNESS DISCLOSURES | 13 |
| EXHIBIT 9: | Buss v. Superior Court 16 Cal.4th 35 (1997) | 26 |
| EXHIBIT 10: | Navigators' Document Production (redacted) (N03168-N03170) | 40 |

QUESTIONS INSTRUCTED NOT TO ANSWER:

PAGE LINE

(None.)

VIA ZOOM VIDEOCONFERENCING;
TUESDAY, NOVEMBER 18, 2025; 9:27 A.M.

THE VIDEOGRAPHER: Okay. My name is Brad Bissegger. I am a videographer associated with Express Deposition Services.

Today's date is November 18th, 2025, and the time is 9:27 a.m. Pacific Standard Time.

This deposition is being taken via Zoom in the matter of Navigators Specialty Insurance Company versus SVO Building One, LLC, and related cross-actions, in the United States District Court, Northern District of California. Case Number 3:22-CV-07102-AMO.

This is the videotaped deposition of Andre Jardini. This deposition is being taken on behalf of the Defendant and Counterclaimant.

Will Counsel please introduce themselves for the record?

MR. SMYTH: Bruce Smyth of Parker Shaffie LLP, Counsel for SVO Building One, LLC.

MS. SANTOS: Shannon Santos for Navigators Specialty Insurance Company.

MR. SMYTH: Thank you.

Will the court reporter please swear in the witness?

CERTIFIED SHORTHAND STENOGRAPHER: Certainly. Thank you.

(ANDRE JARDINI,
EXPERT WITNESS
Deponent, was sworn and examined
and testified as follows:)

CERTIFIED SHORTHAND STENOGRAPHER: Do you solemnly state that the testimony that you shall give in this matter shall be the truth, the whole truth, and nothing but the truth, so help you God?

MR. JARDINI: I do.

CERTIFIED SHORTHAND STENOGRAPHER: Thank you.

I will state, my name is Laurie Schmidt. I am a Certified Shorthand Stenographer. My License Number is 12719.

Counsel, you may proceed.

MR. SMYTH: Okay.

EXAMINATION

BY MR. SMYTH:

Q. Mr. Jardini, could you just give your full name for the record, please?

A. My full name is Andre, middle name Emilio,

E-m-i-l-i-o, last name Jardini, J-a-r-d-i-n-i.
Q. Mr. Jardini, you are testifying as an expert witness on behalf of the Plaintiff Navigators in this case; is that correct?
A. That is correct.
Q. Okay. I know you've had your deposition taken probably over a hundred times. Can I dispense with the admonitions?
A. I'm perfectly fine with that, if you choose to do that.
Q. Okay. Are you under any medication or suffering from any condition that would prevent you from giving your best testimony today?
A. No.
MR. SMYTH: Okay. Okay. I'd like to bring up as Exhibit Number 1 the Notice of Deposition in this matter.
MS. SANTOS: Are we going to mark this as Exhibit 6?
MR. SMYTH: Yes.
(Exhibit 6 was marked for identification and is attached hereto.)
Q. BY MR. SMYTH: Mr. Jardini, were you provided a copy of this notice of deposition?
A. Yes, I was.

Q. Okay. Now, when these outlines were prepared, did you provide Karen Scott or any other auditors instructions as to how they were to be prepared?

A. An outline of services is a basic schedule that we prepare in every audit. I've been retained in audits more than 1,900 times, 40 or 50 times a year. In every single case, an auditor prepares an outline of services. It serves numerous important functions. It makes the review of the invoices more readily ascertainable and transparent, and it doesn't require separate instruction. These are functions that these auditors do every day, all day, and in Karen Scott's case, for more than 20 years.

Q. Okay. And in doing that -- well, let me back up a little bit.

If you look at the one that we've talked about, the "P" there, it says "Timekeeper," and there are three timekeepers listed.

Do you see that?

A. I do.

Q. Okay. Now, first, how does Karen Scott, or whoever is preparing the outline, know how to amalgamate time from various time entries into a summary of multiple time entries?

A. The function of an auditor in this part of their

Q. Okay. Do you know if any of those cases have been reported Buss allocations?
A. I don't know. I don't usually follow up after I do my work.
Q. Okay. And I assume the Buss cases, they would all be cases that were litigated in California?
A. Well, Buss was, and I don't know if other jurisdictions have similar principles, I just don't know -- happen to know that. I've testified in 37 different states and a number of foreign countries, and I don't have a way to tell you whether they have Buss-type concepts in those other places, or if I've been retained to do something relating to those concepts.
Q. Okay. Let's go to the prior paragraph, and you -- and that paragraph basically discussed some occasions where judges have disagreed with some or all of your conclusions.
Do you know if any of those disagreements were in cases involving reimbursement under the Buss case?
A. I don't think so, but I haven't gone back to review 30 years of history to see if that's true or not, but I don't remember anything like that.
Q. You mentioned that you were involved in the Buss case. What was your involvement in that case?

A. I did an analysis for, I believe the party was HH Sports, one of the parties, and it had to do with payment of fees to them, and I don't recall specifically beyond that. This is -- if the Buss case reaches the Supreme Court in '97 -- 1997, my work was probably three years before that, so I don't remember the details. I do remember being in the case because Buss is, of course, Jerry Buss of the Lakers fame, and so, it was memorable in that way, because he was a well-known figure in Los Angeles at that time, as well as in the later years.

Q. Do you know if your report was, in any way, involved in the Buss Supreme Court decision?

A. It's not referenced there, so I didn't follow the case as it wound its way through appeal. I did note that, ultimately, it resulted in the Buss decision, and then, that was revisited in other audits that I did after that.

Q. Okay. In Paragraph 18, you state that:

"In no past court finding has any specific opinion on a specific audit issue reached the basis and underpinning of my opinions in this Case."

Do you know if there is any court finding that

10:30

involved the opinions in a Buss reimbursement case?

critical tool which permits me to do my work, and provides clarity in making those assessments, much better, frankly than the line-by-line invoices themselves, because the meaning is lost in the volume of the entries, and the meaning is best deciphered in looking at the outline of services which permits the work to be done in a ready and accurate way.
Q. Okay. Well, when you say that -- or strike that.
There are about 8,000 fee entries in these invoices. Probably more than that. If you had looked at all of them, there would be a substantial amount of time reflected in your billing sheets; is that correct?
A. I'm not sure what you're asking.
Q. Yeah. I mean, if you look -- if you looked at each entry, that would have taken a substantial period of time; is that right?
A. Well, my auditors did bill substantial periods time, and they did look at every entry.
Q. No. I was asking if you personally did it.
A. I looked at them in general to understand format, billing style, and such other things. I didn't duplicate the work done at much lower cost, and much more efficiently by my auditors.
Q. Now, did you look through -- or strike that.
Did, you, or anyone in connection with your

review of the billing entries, investigate whether there was work performed in connection with the defense of the specific allegations set forth in Mr. Murray's letter under "disparagement"?

A. We looked at every line. We also, before doing that, did a word search. The word "disparagement," I don't believe, appears in the bills anywhere. We did a word search for "defamation," which appears a comparative handful of times. And that's an electronic word search, which doesn't substitute for a line-by-line review, which we did do, but it is an -- it is an adjunct which tells you I think fairly clearly that they're not litigating disparagement or defamation at least to any significant degree in a case that turns on intellectual property in a complicated business transaction.

Q. Did you do a word search for "disparagement"?

A. I don't recall. Somebody could. If they come up with the word, I'd be very surprised, and if it did come up, it would come up once, twice maybe. I don't know. I don't think it comes up at all, and I'll stick with that.

Q. Okay. Do you have an understanding as to whether a specific cause of action must be alleged in order to trigger the duty to defend?

defend. Look, if the case -- if the defamation case was resumed, then a decision could be made to continue to defend.

In point of fact, the carrier was defending even after the defamation count was dismissed, so it's somewhat academic to say what or wasn't the duty to defend. They did defend.

So, again, my first answer to that would be, I'm not here to speak to duty to defend at all, but I can't escape the notion that it was defended even after the dismissal.

Q. BY MR. SMYTH: Let's go to Paragraph 42 of the report, which summarized basically says that these records reflect that Navigators paid approximately $2,497,187.09 in fees and costs incurred prior to March 24, 2021.

And then, it goes on to say, the records reflect that Navigators paid $2,998,457.50 in fees and costs for the defense of the underlying action after March 24, 2021.

Where did you get those numbers?

A. From the invoices. There's a total fees and costs billed schedule for each firm attached as exhibits to this declaration, and that's what the invoices show when we totaled them.

Q. Okay. And is that -- let me skip to it.
Is that Exhibit 10 to your report?
A. Hold on a second. I'll confirm that, if I can.
Yes, Exhibit 10. It goes firm by firm and breaks down the fees and costs billed both before and after the dismissal of the defamation count.
Q. Okay. And if you add those up, you get $2,497,187.09 prior to March 24, 2021?
A. I could go back through and do it again, but that will -- that was what was determined at the time I did my declaration.
Q. Okay.
A. It's easy to confirm.
Q. Okay. And for after March 24, 2021, Exhibit 10 will show $2,998,457.50 fees and costs were incurred; is that right?
A. I see the total for Tyson & Mendes, which is the firm involved post-March 24, 2021, as reflected on Exhibit 10, as $2,414,876.55. I don't know the disparity, but I think the table is probably correct.
Q. So, and you're looking at -- the number you quoted is on Exhibit 10 to your report at the last page under the Tyson & Mendes LLP Fees and Costs Billed?
A. Yeah, that list by invoice date, invoice number, each amount of fees and costs billed. So, it looks like

it's a very correct recitation of the post-March 24, 2021 time. Recognizing that the April 29th, 2021 invoice had to be separated by date, the date of March 24, 2021. And so, most of that invoice was in the pre-period, and some of it was in the post-period, and it has an amount of $2,414,876.55, which I think is the correct number.

Q. Okay. And that's under the description post-March 24, 2021 total, total billed; is that right?

A. It's all specified on the Exhibit 10 recitation as to Tyson & Mendes. Every number in every place by every statement date and every invoice, all the fees and costs billed are accurately represented there.

Q. Okay. And you believe that that number is more accurate than the letter -- excuse me -- than the total in Paragraph 42 of $2,998,457.50?

MS. SANTOS: Objection. Mischaracterizes what Paragraph 42 says, which is the totals for fees and costs, and not just Tyson & Mendes.

THE WITNESS: Yeah, you have to look at each of the firms, and if you did, and added it all up, the number would be correct from Exhibit 10, and I will stick with what's in Exhibit 10, and if it went into the declaration at a different number, I would prefer the number that's specified by every statement date at the

amount of fees and costs that are applicable.
So, that's going to be the best record of that.
Q. BY MR. SMYTH: Okay. Now, if in order to determine from Exhibit 10 the total of fees incurred prior -- fees and costs prior to March 24, 2021, you would add the totals in Exhibit 10 for the pre-March 24, 2021 fees incurred; is that right?
A. Okay. It's very clearly specified in the schedules, the fees and costs billed schedules.
You look at total fees and costs for Murphy Austin Adams & Schoenfeld, you'd add it to the total fees and costs billed by Morris James, LLP, you'd add that to total fees and costs billed by Law Offices of Sean Debruine, and then, you'd add total fees and costs billed by Gordon & Rees, then you'd add total fees and costs billed pre-March 24, 2021 by Tyson & Mendes, and those are the amounts billed.
Paragraph 42 is expressed in amounts paid. So, that may be the difference. I'm not sure, I'd have to go back and check, but they aren't necessarily the same thing, billed and paid.
Q. Well, do you know what other amounts would be paid to get the totals different?
A. I don't know the reason for the disparity. I just note that Exhibit 10 in painstaking detail has

every invoice by all those firms broken down by the relevant date, and those are the amounts in the bills that we reviewed and that we saw. And in this Paragraph 42, I'm expressing it as to amounts paid. And so, those may be different numbers.

I don't know the answer to that, as I sit here today, but that is a potential reason for a disparity.

Q. Because of the disparity, do you have an understanding that the numbers that you have in Paragraph 42 came from another source, and the addition of the numbers in paragraph -- excuse me -- in Exhibit 10?

A. I think that we have all the invoices because they're specified by actual invoice number and date, we also have the entire claim file of Navigators, which would have payment information. So, there may be two different sources. I don't recall, as I sit here today, if that's the case or not.

Q. You don't -- you don't -- is it correct you don't recall what the source would be of the numbers in Paragraph 42?

A. Well, it says "Paid," so there would be some reference in the claims file of amounts paid. It's something that anyone could look at if they needed to, and then, the bills that we reviewed are specifically

stated by invoice date and date in complete detail as to all of the five or six firms involved.

Q. Okay. Is it correct that the totals in Paragraph 42 were not based on a calculation that you made?

A. I don't recall. I have assistant auditors that do the total fees and costs billed analysis, and I was probably provided with a number, so that's the best I can tell you.

Q. Okay. Okay. Let's go to Paragraph 45 of your report. And the line is first:

"Here, it is undisputed that 17 of the 18 claims in the underlying action were not subject to coverage under the relevant insurance policy."

Would you agree that Mr. Murray's letter disputed that?

A. I guess you could review that as a position taken by him. I don't think there's anything seeking damages for reputational harm, other than the defamation count, based on the complaint that I saw. So, I thought it would be undisputed, but apparently, he has different thoughts.

Q. Okay. And let's go to Paragraph 46. It says:

"I have reviewed carefully the billing records of the firms that defended SVO."

level of detail that they're kept obfuscate key information that's necessary to do work either as to reasonableness -- by the way, he didn't do it in that arena as well. I mean, he should have, but he didn't. He didn't break out the bills in ways that make it meaningful, he didn't have schedules prepared, and so on. But certainly as to allocation, it is a key, key tool that if you -- if you simply say, "Oh, I don't want to use that tool," you are -- you are leaving meaning and import on the table. Also, you are making it much more difficult for the trier of fact to understand what is being presented. Why don't you just throw a stack of $5 million in bills in front of a group of people and say, "Figure it out for yourself"? I mean, that is apparently what he's suggesting, and that approach hides the true light of meaning that our approach reveals time and time again, and has been praised for revealing.

So, he just doesn't seem to understand -- which he should by the way. He does audit work for a living, apparently. He should understand that this is an important methodology and tool approved by NALFA, approved by auditing professionals, approved by courts, and so on, and then, he disparages it, as saying, "Well, you have to list every item of the invoice."

There's no requirement that you look at every

item of the invoice to do this work, and then, spell it out on a separate piece of paper, as if it's a separate piece of information. It isn't. It's all in the invoices.

If you want to see what's in the invoices, the outline of services has the date range and the description of the service and the timekeepers involved. Often, just one person on one date. Meaning, it's the exact entry from the time records.

So, you have available all levels of information, synthesized information that permits the work, and a reference back to the source documents that you could -- that anybody could look at, at any time, if you suspect that our work is skewed in some fashion, which it is not, and nor does he suggest that it is. I think he just had to say something in the rebuttal period.
He didn't do an allocation analysis himself, he wasn't in a position to say, "The allocation analysis is incorrect," he says it's -- apparently, it's the position of SVO that a hundred percent of this case involving one dismissed claim for defamation and 17 unrelated claims, a hundred percent of it is related to covered claims, which is absurd, but that apparently is where he has to come down since he didn't do the allocation work himself.

So, if he -- if he did do it, in a meaningful way, he would come to a number. He might disagree with my three percent, but he certainly wouldn't come to a hundred percent. That would be patently absurd.

And so, he was left with just criticizing methodology which he doesn't understand.

And if I had a chance to sit down with him and talk to him about what we did, I think he'd agree that what we did is reasonable and appropriate, but he needed to say something in the rebuttal period, and he had to attract -- distract from the fact that he didn't have a contrary opinion, nor did anybody else, and to say that process was somehow flawed, but it's not.

Q. Okay. Now, how would looking at each individual entry and stating why it was either potentially solely non-covered claims or a covered claim, how would that obscure the knowledge of whether that expense was one that should be reimbursable or not?

A. Invoices are designed for a very particular purpose. They tell you what a particular lawyer did that they want the client to pay for at the appropriate rate. It's not prepared -- those records are not prepared to assist in an allocation analysis. In fact, oftentimes, when we do allocation analysis, we deal with block billing and redacted entries, and there's a lot of

A. Okay.
Q. Okay. And if you look at Exhibit 7, it excludes seven of the entries, all of which are in 2018 on the Sean DeBruine fees; is that right?
A. There are entries before the date of July 24, 2019.
Q. Okay. Now, do these outlines -- or strike that.
It's correct that these outlines do not necessarily include the fees that Navigators paid; is that right?
A. The outlines are information taken from the invoices themselves. The invoices from which they're taken are listed on Exhibit 10. The amounts paid, as it turns out I now know, were from interrogatories that Navigators answered under oath.
So, my Paragraph 42, as to the amounts paid, are the amounts paid as detailed in answers to your discovery.
So, whether those should be the same or different, I don't have an answer for you, but what we looked at is the Exhibit 10 invoices, and produced the outlines of services, which you've been going through.
Q. But it's correct though that the outlines of services include time periods for which Navigators did not reimburse?

that's probably where it is.

Q. Okay. And is it correct that there's no entry for the review of expert bills or invoices?

A. Well, there's, "Review claim file," and I don't recall if that would have included that. So, there's no specific entry that mentions experts or expert invoices.

MR. SMYTH: Okay. Okay. I don't have anything further.

THE VIDEOGRAPHER: Ms. Santos, before we go off record, did you need a copy of the transcript?

MS. SANTOS: Transcript, yes; video, no.

THE VIDEOGRAPHER: All right. Thank you.

This concludes today's deposition. The time is 2:15 p.m., the date is November 18th, 2025, and we're off the record.

(Whereupon the deposition proceeding was concluded at 2:15 p.m.)

I have read the foregoing deposition transcript and by signing hereafter, approve same.

Dated________________________.

________________________________________
ANDRE JARDINI - EXPERT

DEPOSITION OFFICER'S CERTIFICATE

STATE OF CALIFORNIA )
)s.s.
COUNTY OF LOS ANGELES )

I, Laurie A. Schmidt, hereby certify:

I am a duly qualified Certified Shorthand Reporter, in the State of California, holder of Certificate Number CSR 12719 issued by the Court Reporters Board of California and which is in full force and effect. (Bus. & Prof. 8016)

I am not financially interested in this action and am not a relative or employee of any attorney of the parties, or of any of the parties. (Civ. Proc. 2025.320(a))

I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(b) and prior to being examined, the retrained was first placed under oath or affirmation by me. (Civ. Proc. 2025.320, 2025.540(a))

I am the deposition officer that stenographically recorded the testimony in the foregoing deposition and the foregoing transcript is a true record of the testimony given. (Civ. Proc. 2025.540(a))

I have not, and shall not, offer or provide any services or products to any party's attorney or third party who is financing all or part of the action without first offering same to all parties or their attorneys attending the deposition and making same available at the same time to all parties or their attorneys. (Civ. Proc. 2025.320(b))

I shall not provide any service or product consisting of the deposition officer's notations or comments regarding the demeanor of any witness, attorney, or party present at the deposition to any party or any party's attorney or third party who is financing all or part of the action, nor shall I collect any personal identifying information about the witness as a service or product to be provided to any party or third party who is financing all or part of the action. (Civ. Proc. 2025.320(c))

Dated: November 24, 2025

Laurie A. Schmidt

DECLARATION ERRATA SHEET

ASSIGNMENT NO.: 11711
CASE CAPTION: Navigators Specialty Insurance Company v. SVO Building One, LLC
DEPONENT: Andre Jardini- Expert

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I have read the foregoing transcript of my deposition taken in the above-captioned matter or the same has been read to me, and the same is true and accurate, save and except for the changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

Signed on the _______ day of
______________________________, 2025.

____________________________________
ANDRE JARDINI - EXPERT