**Pages 1 - 40**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Araceli Martínez-Olguín, Judge

NAVIGATORS SPECIALTY INSURANCE COMPANY, )
Plaintiff, )
VS. ) **NO. 3:22-CV-07102-AMO**
SVO BUILDING ONE, LLC, )
Defendant. )

San Francisco, California
Thursday, March 5, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
WILSON, ELSER, MOSKOWITZ, EDELMAN, DICKER, LLP
555 South Flower Street, Suite 2900
Los Angeles, CA 90071
**BY: SHANNON L. SANTOS, ATTORNEY AT LAW**

For Defendant:
CHARLSTON, REVICH AND WOLLITZ, LLP
1925 Century Park East, Suite 320
Los Angeles, CA 91367
**BY: BRUCE T. SMYTH, ATTORNEY AT LAW**

REPORTED REMOTELY BY: Stephen W. Franklin, RMR, CRR, CPE
Official United States Reporter

**Thursday - March 5, 2026 1:58 p.m.**

**P R O C E E D I N G S**

---o0o---

**THE COURTROOM DEPUTY:** Calling civil matter 22-7102, Navigators Specialty Insurance Company v. SVO Building One, LLC. Counsel please come up to the podiums to state your appearances for the record starting with the plaintiff.

**MS. SANTOS:** Shannon Santos for Navigators specialty.

**THE COURT:** Good afternoon.

**MR. SMYTH:** Your Honor, Bruce Smyth for defendant, SVO Building One.

**THE COURT:** Good afternoon.

All right. Folks, we're here on your cross motions for summary judgment, as well as a motion to exclude an expert witness and the motion to strike, and there's also some objections in there thrown in for good measure. I've got a handful of questions for you that I want to start with, and then I'll give you all a chance to highlight anything else you think that I should hear, and we'll sort of take it from there.

I just want to start by asking you both a little bit. As you know, your papers spend a lot of time discussing or disputing the correct standard for reimbursement under *Buss*. I just want to start by asking if, from each of your perspectives, if you agree with the idea that under *Buss*, the insurer must prove by a preponderance of the evidence that the

reimbursement sought can be allocated solely to the claims that are not even potentially covered.

Can I get agreement on that point, Ms. Santos?

**MS. SANTOS:** Yes.

**MR. SMYTH:** Yes, as well, Your Honor.

**THE COURT:** I thought so. All right. Wonderful.

All right. So let me ask Ms. Santos. If I find that Jardini should be excluded as an expert, what evidence do you have to support reimbursement allocations?

**MS. SANTOS:** So as an initial matter, the motion for summary judgment the Navigators filed is on the defense obligation, which is a completely different standard. Has nothing to do with *Buss*, has nothing to do with allocation.

So setting the Navigators motion aside, and if you're focused on the SVO MSJ and their motion to exclude, should Jardini be excluded, Navigators would still be permitted to allocate those invoices. It would be a matter of showing the jury what the -- what defense counsel is billing for. It would be showing them the invoices, having a Navigators personnel person talk about what was going on in the case, maybe you'd have defense counsel talk about what's going on in the case. Either way, you can still allocate without an expert.

**THE COURT:** That's not my question, though, because, right, I have the papers in front of me. So what have you shown me at this point -- I guess I'm asking maybe about

what's -- and you can redirect me, but what's in the record in front of me so far that shows that you have any evidence? Because you all didn't submit all the invoices to me, correct?

**MS. SANTOS:** Correct.

**MR. SMYTH:** Correct.

**THE COURT:** All right. So I don't have them.

So right now with the record in front of me what do you have if you don't have Jardini?

**MS. SANTOS:** Well, the invoices themselves would be admissible at trial. So the invoices would come in, a Navigators person would testify as to the bills and what was being paid and what went to the coverage issues. The deposition of Navigators was not taken in this case, so that testimony hasn't even been contemplated by the Court or the defendant yet. So that is all evidence that would come in at trial, but it doesn't, for purposes of summary judgment, even if you were to exclude Jardini from testifying, the *Buss* case says that if there's a potential that Navigators could show a allocation that would show that some of these fees went to uncovered claims, they have to be permitted the opportunity to do so.

So it's not that we didn't give you all the evidence. That's not what the MSJ standard would be. We are entitled at trial to put on any evidence available to us, a lot of which has been produced during discovery to the defendant but would

not have been included with an MSJ, because it doesn't impact the MSJ, and that's the evidence that we're entitled to put on at trial for an allocation, from our perspective, from tender until the dismissal of the defamation, or if necessary, from the dismissal through trial.

**THE COURT:** But as I understand it, and I want to get you into this conversation, but I -- as I understand it, I have -- I also have SVO's motion for summary judgment. So as I see it, right, the motion from SVO is plaintiff doesn't have evidence to present. So then it's your task to have put in front of me evidence that you would show the jury, and I don't think I have that. I appreciate that you're sort of referencing these other things, but once we get here, when they say you don't have evidence because -- and as I remember it -- and again, I'll give you a chance here. Maybe I should actually let you jump in instead, Mr. Smyth.

But as I understand it at this point, there's some briefing about the fact that contention interrogatories were served, Judge Illman told you to provide a line by line, you didn't provide a line by line.

**MS. SANTOS:** Yes, we did.

**THE COURT:** You did? Where is that?

**MS. SANTOS:** That is in the briefing. We provided those amended discovery responses to the Court.

**THE COURT:** So as I read the amended discovery

responses, do they not point to summaries created by Jardini and Jardini's assistants?

**MS. SANTOS:** With a line-by-line allocation showing which of the line items. We don't disagree with Jardini. He went through all the invoices. He pulled out which --

**THE COURT:** Tell me where it is in your brief.

**MS. SANTOS:** Where the amended responses are?

**THE COURT:** Sure, or the line by line. I want the line by line, because as I saw some of the Jardini response, or ... as I saw some of the Jardini responses, they are not traceable back to particular invoices. They are conglomerations of bills such that SVO wouldn't be able to say it's this one, and this one, and this one.

**MS. SANTOS:** So the amended discovery responses are attached at 104-2. In there it does include the full breakdown. Interrogatory number 1 has the chart. Interrogatory number 3 has the chart. I think those were the two charts, and then it talks about the experts. Which, the experts were solely allocable to uncovered claims, so there wasn't a line-by-line done for the experts.

The Jardini charts which we copied over, because that analysis had already been completed, it's not -- it's a batching of things that are identified in the invoices. So he provides a date, he provides a timekeeper and a description of what was done by that attorney. With that information you go

back -- you can go back to the defense invoices and you can say interrogatory number 1, it starts with "prepare memorandum regarding general scope of lawsuit." That is, because there's only one timekeeper identified, that is a single line item in the defense invoices.

If, further down in the same chart, he did a combination of December 12, or December 16 through 28, "analysis of defamation cause of action compared with other causes of action," there's two timekeepers there. So that would have been a summary, a paraphrasing of what those two attorneys had identified in the invoices that was matched as the same litigation task.

So from our perspective this is a line-by-line breakdown. I misspoke when I told the magistrate that the expert hadn't already prepared that; he had. And then we went ahead and copied it over even though the information I had given the magistrate was wrong, and that was why the amended responses were ordered.

**MR. SMYTH:** Your Honor.

**THE COURT:** Can I hear from you?

**MR. SMYTH:** They're not line by line, they're amalgamations of fees done by staff of Mr. Jardini without any guidance. He -- well, number one, they're not line by line even though that's what was represented to the magistrate judge would be provided. Second, they're not even prepared in any

kind of organized manner. There was no standard Mr. Jardini gave the staff who were amalgamating those under the *Buss* case or under anything else as to how to amalgamate them. They just arbitrarily, you know, batched them. And that might be appropriate if you're looking at fee reasonableness but not appropriate when you're making a determination under the *Buss* allocation.

**THE COURT:** Can I ask you, Ms. Santos, I'm looking on page -- I'm in 104-2. I'm looking at page 6 of one of these charts.

**MS. SANTOS:** Yes, 6 of 17.

**THE COURT:** Yes. So let's look at the third entry there that says 12/16 through 28th. Presumably that's of 2020.

**MS. SANTOS:** Yes.

**THE COURT:** All right. So that is an amalgamation of some time entries, right?

**MS. SANTOS:** That is the same batching method that Mr. Jardini and his office has done on every time entry in thousands of audits, and what they did --

**THE COURT:** So the answer is "yes"?

**MS. SANTOS:** This is, it's his batching. However you want to characterize it, it is a batching. He put the different time entries done by J -- GS and RD, because they went to the same litigation task, so he put them in one place and he marked them as defamation, that those were covered

claims.

**THE COURT:** All right.

**MS. SANTOS:** I would also note that, again, this only goes to allocation. So this issue becomes moot if the Navigators MSJ on the defense obligation is granted. You don't get to allocation.

**THE COURT:** Let me ask you, Mr. Smyth.

In support of your breach of contract claim you indicate that you had to enter into a contract with Tyson and pay a $325,000 retainer when Navigators withdrew its defense. There's no citation for that in your memorandum. Can you point me to where that is in the record?

**MR. SMYTH:** I will -- I'm sure that it was included, but I'll look for it.

**THE COURT:** All right.

**MR. SMYTH:** We do have a -- I think evidence of a invoice for that, and it was paid. But I'll look for it. I ...

**THE COURT:** Okay.

**MS. SANTOS:** There is no indication in that motion that the 325 went to defense fees, though. There is the contention that they paid that, but there's no contention by SVO that it went towards defense --

**THE COURT:** Is that argument in your papers?

**MS. SANTOS:** I -- actually I think -- I cannot say

off the top of my head. I do believe it was because we were only talking about whether we picked up the defense, and we -- Navigators did say repeatedly, we paid all defense fees.

**THE COURT:** Oh, I'm sorry, I shouldn't have interrupted. I thought you were going to say that it was attributable to their affirmative defense, which I do remember being in your -- that argument I remember in your papers.

**MS. SANTOS:** We did not receive the retainer until recently, so I am not going to speculate as to what the retainer agreement was entered into. I don't know if it went to the affirmative claims. I will take SVO's word for it that they entered into it when Navigators said they were going to withdraw. Either way, Navigators never stopped paying the fees. So if they paid that retainer, either Tyson returned it or it got applied to the affirmative defenses.

**MR. SMYTH:** Well, Tyson did return it. There's -- you know, that we don't disagree with, but we did have to pay it. We did have to enter into an agreement with Tyson for the representation at somewhat higher fees than that. And then after Mr. Murray informed Navigators that they were breaching their obligations because there still was a continuing duty to defend, Navigators then changed its position and agreed to -- accepted the re-tender and agreed to defend. But the 325 was in fact paid although later refunded, and we did have to enter into a contract and scramble around for a while until

Navigators changed its position.

**THE COURT:** Ms. Santos, let me switch gears one more time here. Your motion for summary judgment asserts that you're moving for summary judgment on all of SVO's counterclaims.

**MS. SANTOS:** Yes.

**THE COURT:** But I didn't see a discussion of their declaratory relief claim.

**MS. SANTOS:** It is. And we note in our reply that they said that we didn't, and we did. So, but it was incorporated into the breach of contract defense because it's the same argument. If we win on breach of contract, we within on dec. relief. So --

**THE COURT:** Right, but if I decide that their brief that they have -- that you don't -- that your motion for summary judgment on the breach of contract claim is denied, then so is -- then --

**MS. SANTOS:** The dec. relief, yes. Then there's a dispute as to coverage, yes.

**THE COURT:** Okay. Thank you.

Folks, those are -- that's the bulk of my questions for you. I sort of bounced around the motions, but I do want to give you all a chance to make any affirmative presentation that you might have on anything that you might like related to your various motions. So Ms. Santos, why don't you kick us off and

take a few minutes, and then Mr. Smyth, I'll let you jump in to both rebut as the briefing went. She'll open, and you can counter and add your own -- and add anything you might have about your own affirmative motions.

**MS. SANTOS:** Since the bulk of the briefing has to do with the defense obligation, from my perspective I understand SVO filed more motions with respect to the expert issue, but I think the bulk of this issue turns on the defense. I would focus on that. It sounds like the Court understands we're talking about two different standards here. It's not the *Buss* allocation, it's whether there was a covered claim. There's no dispute defamation was dismissed, so SVO is focusing on the *Westfield-TWT* case to say that because it was dismissed without prejudice, you can bring the claim back in later and the defense obligation continues, and then they also refer to some allegations in the fourth amended complaint.

With respect to *TWT*, I would like the Court to focus on the fact that in the 37 years since this case was decided, no other state or federal case has followed it. It is a one-sentence line in this case with no analysis that said because emotional distress cross-complaint could be brought back in, there was a continuing defense obligation. The fact that the substantive extensive body of law that followed that case in 37 years all says that that's not how you evaluate coverage, we strongly encourage the Court to follow all of those subsequent

cases. I think SVO referred to it as us citing to scores of cases, and it's true. There is dozens of cases that have followed this saying the exact opposite. The fact that it was a one-line sentence with no real analysis, there are decisions in the Ninth Circuit and the court of appeal that say that's patently unpersuasive anyway. So this one decision that said that there was a continuing defense obligation is not enough to bring this claim back in.

The briefs, our briefs cite to all of the cases that say you cannot manufacture coverage. And instead, unlike what *TWT* did, you have to focus on what's actually pled. And when the defamation cause of action was dismissed there were no allegations remaining in the fourth amended complaint that would trigger Coverage B. Noting that, SVO turns and says, okay, well, there's things in the other causes of action, and they refer to the fifth cause of action and the 14th cause of action, neither of which there's a potential for coverage.

So the 2024 *Zox* case said you don't look at just the word "disparagement". It's not enough that the label is in there. There have to be facts pled to suggest that they are seeking damages, compensatory damages, for disparagement of a goods -- of an individual organization or their goods and services in order to trigger coverage.

The fifth cause of action. First, it's for unfair competition. So it's not seeking damages as courts have

defined it. They're not seeking compensatory damages, they're seeking injunctive relief. So there's no coverage.

The 14th cause of action, which is for intentional interference with contractual relations, say that the -- that it was the SVO caused third parties to issue false reports. So there you're not even alleging that SVO disparaged the claimant, you're alleging someone else disparaged the claimant, and that's not going to be a trigger of coverage.

All that aside, *Zox* says the fact that the disparagement is included in that allegation is not going to bring it back within coverage.

And then I don't know if you want me to go into Coverage A. They do --

**THE COURT:** (Shakes head.)

**MS. SANTOS:** Okay. I will not address Coverage A then.

So with respect to the defense obligation, those I think are the main points we make in response to SVO. Our point is defamation was dismissed; there's no coverage. And then the counterclaims we address by saying we defended through trial. The fact that we defended through trial makes it disingenuous for SVO to be asserting bad faith, and the unfair competition claim is barred.

I'm happy to go into those, as well, but I know this is really extensively briefed, and it looks like you have gone

through everything.

**THE COURT:** Can I ask you? With regard to the 14th cause of action, I believe your -- I think I'm maybe looking at a different part of it, right. The allegations that I see from the complaint, from the underlying complaint, is: "SVO improperly and intentionally interfered with Vertiv's contract with DPR and various matters, including but not limited to routinely engaging in secretive and unauthorized direct communications with personnel regarding the work and services DPR was performing for Vertiv on the job site and disparaging Vertiv a work."

I think I heard you talk about soliciting third parties. I understood that to be allegations related to the fifth cause of action.

**MS. SANTOS:** Yes.

**THE COURT:** So can you talk with me a little bit about those with regard to the 14th cause of action?

**MS. SANTOS:** My apologies. I did mix that up.

So the fifth cause of action is not saying that SVO disparaged anyone. Paragraph 146, where it says that SVO was disparaging Vertiv's work, you're looking at it in context of an intentional interference cause of action. So there's no damages being sought for disparagement. What they are seeking is contractual interference damages. This is -- and that's consistent with the entire fourth amended complaint.

This was a business dispute. It was an intellectual property dispute. They were not seeking defamation. They also disavowed seeking any defamatory damages when they dismissed defamation. If they were still seeking those damages they would have left defamation in. They left intentional interference in because they're seeking contractual damages from the interference. That would also be excluded because it's intentional conduct.

But before you even get to the exclusions, *Zox* says using disparagement there is not enough to trigger coverage. *Zox* says you can't just use the label, you have to issue facts, you have to say how they were being disparaged, what was being done and how they were damaged because of that, and this 146 doesn't do that.

**THE COURT:** Why?

**MS. SANTOS:** Because all it says -- and they're focusing on the last sentence, but the entire allegation as you quoted starts with "intentionally interfered," so now we know we're outside of coverage, "interfered with the contract in various manners." That's what the allegation's about. It's talking about interfering with the contract. That's what the allegation is as part of their claim for damages because of that. And then it continues in various ways, including disparaging Vertiv's work. It doesn't say how. *Zox* says you have to say how, what did you do, what did you say, how were

you damaged because of this. This one word in 146 doesn't do that.

It looks like you have it up, but I can point where it is.

**THE COURT:** I see it. Go ahead. Go on to a different point if you'd like.

**MS. SANTOS:** That was my point on the defense obligation. I'm not going to address Coverage A. The counterclaims, again, if we -- you can't say we breached the contract. We go through in the briefing the various reasons in SVO's counterclaims as to why they say we breached the contract. They focus with respect to this retainer agreement on the claim that we were going to withdraw from the defense. We could have withdrawn from this defense and they still wouldn't have recovered for breach of contract. You -- there was no coverage, and if there's no coverage, there's no breach of contract.

We could have withdrawn; Navigators didn't. Navigators continued defending through trial. So not only would it not have been a breach if they withdrew, but the fact that they continued paying defense fees through the arbitration suggests that there's no evidence in support of breach of contract, and that's the bad faith cause of action.

**THE COURT:** Go ahead, Ms. Santos. You have a few more minutes. Is there anything else you want to address?

**MS. SANTOS:** With respect to the Navigators MSJ, I

think, again, just focusing -- it sounds like we're applying the right standard. It's almost a situation where we don't know what more Navigators could have done here. We don't know what Navigators -- what SVO could have wanted. Navigators did everything SVO asked. They stayed in the case when they had a right to withdraw. They paid 5.5 million in defense fees with the understanding it was subject to a right to reimbursement. They reserved that right and they trusted that under the *Buss* case that this would -- this money would be coming back to them for the uncovered claims.

The *Buss* case, which allows for this kind of reimbursement, was -- if it doesn't apply here, there's no other case that's going to apply. This is a case where you can look at it and you can say any potential coverage stopped on this date. Everything after that is uncovered. Everything before that we're gonna have to allocate, and we understand that, but from that date forward everything's uncovered. We get reimbursement for everything.

If *Buss* was going to have any teeth, if *Buss* had any purpose, it would be for here.

**THE COURT:** Anything else, Ms. Santos?

**MS. SANTOS:** No, thank you.

**THE COURT:** Thank you, Ms. Santos.

Go ahead.

**MR. SMYTH:** Let me respond first to the -- their

motion for summary judgment.

First they talk about the *TWT* case, which was exactly the circumstance here where there was a dismissal without prejudice of a cause of action, and the Court ruled that the insurance company still had a duty to defend because the cause of action could be brought back into the case.

All the cases, every single case that Navigators has cited has been a case where there wasn't just a dismissal, a voluntary dismissal, there was either an adjudication by the Court or the determination was made after a trial, and the courts in those cases said, well, yeah, you can't amend to add in the same cause of action because it's already been tried and you're on appeal at this point. So there's not a single case that distinguishes the *TWT* case.

And the point that Navigators keeps making is, well, there's no other cases that discuss it. Well, there may be a reason for that, mainly because whenever it comes up, people assume that you can in fact re-allege the case, and there's no case that distinguishes it or disputes it, and it's a case from actually this district. So we submit that that part of it is that there was a continued duty to defend because the defamation cause of action could be brought back into the case.

Second, there is -- there are numerous allegations of disparagement, and the standard that Navigators cites, well, it doesn't have a particular, it doesn't have all the allegations

of disparagement, doesn't have all the requirements, but that's not what the standard is. The standard is there's some kind of bare allegation of a cause of action which would engender the duty to defend, and there are all sorts of allegations of disparagement in the case.

The points that they've made about, well, first they allege that somebody else did the disparagement, but as the Court has noted in the discussion with counsel, paragraph 46 does allege disparagement by --

**THE COURT:** SVO.

**MR. SMYTH:** -- SVO.

And then the other allegations are -- I think they can be interpreted to say that SVO was making the allegations. But in any event, even if you take the specific allegation, you know, caused these disparaging statements to be made, that's still sufficient to state a cause of action for disparagement. If I get somebody to make a false statement even though I don't specifically make it myself, we submit that that's sufficient to state a cause of action for disparagement, and it certainly sets the -- satisfies the standard of the bare allegation that's required for a continuing duty to defend.

The Nav --

**THE COURT:** I just want to get you to address more squarely a couple of points that Ms. Santos made with regard to the fifth cause of action. If it's a UCL, right, the fifth

cause of action is for violation of the UCL.

**MR. SMYTH:** Uh-huh.

**THE COURT:** So to her point, she said, right, that cause of action wouldn't have resulted in damages. So if it wouldn't have resulted -- or that's the argument I understand her to be making, because the fifth cause of action wouldn't have resulted in damages, it isn't possibly covered.

Tell me why she's wrong.

**MR. SMYTH:** Well, first it's also the disparagement also in another cause of action that --

**THE COURT:** No, no. I'm asking you -- I understand that. We're going to get to the 14th. I'm asking you to focus on the fifth first.

**MR. SMYTH:** I would submit that you don't have to allege all the elements of the claim. If it's included in another claim that has different requirements or different duties, as long as there's the allegation is in there of a disparagement or a defamation, that's sufficient. I mean, the standard is not whether the allegation within another cause of action is sufficient to state a complete cause of action. We submit that if you just state, you know, the allegation of disparagement, that's enough, and I believe some of the other actions that were cause of action also did seek damages even though there are other causes of action.

**THE COURT:** All right. I just want to make sure I'm

following you, Mr. Smyth.

So Coverage B provides for coverage of damages because of personal and advertising injury arising out of, right, the rest of it. Okay. So I hear Ms. Santos saying cause of action 14 couldn't possibly have been covered because it wouldn't have resulted in damages.

Tell me why that's not right.

**MR. SMYTH:** Because the allegation of disparagement could result in damages, and that was buried in there in the complaint, and the cases talk about just some bare allegation. So the fact that it's in a cause of action that doesn't seek damages we submit does not mean that you're not, you know, that if it were developed out further, potentially if there were, you know, duty to defend it, that damages would be alleged or could be recovered.

**THE COURT:** Okay. I'm following. Thank you. Go ahead. I interrupted you. Please pick up wherever you were.

**MR. SMYTH:** The other case that was cited was the *Zox* case, and the disparagement that case, there was just a general allegation of the elements of disparagement, but the allegations in this talk about disparagement in connection with the commissioning of the work. There's other allegations in the complaint that talk about this meeting between DPR and SVO that resulted in these disparaging allegations. So it's more than just a bare recitation of the elements of a disparagement

claim, and so it's different from *Zox*.

The other points that were raised were the -- on the counterclaim, and there are a number of claims. First, there is the bad faith counterclaim. They did breach the duty to defend, and we, SVO, were required to retain and pay for coverage counsel to disabuse them of that notion, so there are damages there. We had to pay $325,000, although that was admittedly refunded after Navigators changed its position, and we did have to enter into an agreement at somewhat higher fees with the Tyson firm, although that, again, after that was done they went back to the prior amount, prior standard.

But additionally there are other claims. There are claims for fees that they allege are -- were allocable to the counterclaim for experts and for attorney's fees, and we contend that that is not in fact the case, that those fees are recoverable because they are part of the defense obligation, and that is part of the counterclaim.

We allege as a counterclaim but also as a defense that there was legal malpractice by the counsel that was selected that -- by Navigators that resulted in a loss of a $10 million counterclaim because of a discovery sanction.

There was a failure on the part of the defense counsel to tender to another carrier, Hallmark, which, if that had been timely tendered, because Hallmark ultimately defended, Navigators would be seeking about half a million dollars less

in fees back from us because Hallmark picked up the defense from the time of tender, but because of the malpractice of the defense counsel they did not timely tender it to Hallmark. And so Navigators is seeking a million dollars of fees for those periods, whereas it would be $500,000 if that were in fact the case.

And, you know, we submit that all of these are, they're -- there's triable issues of fact on these claims and that they're not ones that are susceptible to summary judgment at this point.

I'd like to go on to the -- our motion for summary judgment. So our motion basically focuses on the deficiencies of the responses to interrogatories. We -- it's a mammoth job in this case. There's a very high burden for Navigators. They have to show the -- a number~-- the amount of fees, specific fees that are solely allocable to causes of action that are not even potentially covered. We asked them to do that in interrogatories, both as six or -- five or six difference ways, and also with regard to the expenses and costs, and they didn't do it. And we filed a motion to compel, and Magistrate Judge Illston granted it, and basically he directed them to file a line-by-line allocation of those fees, and they didn't do it, and what they provided was a expert report from Mr. Jardini which doesn't do it. It does not provide a line by line.

And what he says, or the standard he uses is one that's

just not applicable in this case. It's not a *Buss* standard. What -- instead of going line by line by each entry and saying, well, here it's solely allocable, he had this group of his staff assemble them in some arbitrary way. In so doing, deleting a lot of the detail that would show how -- whether those fees were solely allocable to noncovered claims, and he didn't apply the *Buss* standard.

The *Buss* standard is, at the risk of repeating it too many times, but solely allocable to noncovered claims, and the burden of proving that or the standard for proving that is preponderance of the evidence. But what Mr. Jardini does is he skips over that part and just goes to preponderance of the evidence, and he has a determination where he says, well, there's 18 causes of action and only one of them is covered, and so therefore they're always going to be a preponderance of the evidence if you omit the basic requirement.

And we cited the one case, the *Warbach* case in the Ninth Circuit where there was a deficient effort to provide the information required under *Buss*, and summary judgment was granted under that. And we submit that under the *Celotex versus Catrett* case, where the burden is on the moving party to prove an element of its claim and it fails to do that, then the responding party's entitled to summary judgment, and we submit that's what the case is here.

We also submit as to Mr. Jardini's report and his

testimony it's -- he applies the wrong standard. He -- and worse than that, a lot of the things he states are simply not true. He testified that he --

**THE COURT:** Mr. Smyth, I'm going to move you off Mr. Jardini.

**MR. SMYTH:** Okay.

**THE COURT:** Because it's just not a good use of your time, because I'll tell you right now, I tend to agree with you.

**MR. SMYTH:** Okay.

**THE COURT:** So I don't want -- you're preaching to the choir on that one.

**MR. SMYTH:** Okay.

**THE COURT:** So please go ahead and hit some of the other pieces.

**MR. SMYTH:** Okay. So that's -- I really, I really -- you know, I'm prepared to answer any questions if I've missed anything or there's anything that hasn't been covered, but I think we've laid it out in the papers, and if the Court has any questions we'd be pleased to respond to them.

**THE COURT:** All right. Thank you.

Ms. Santos, is there anything that you want to add at this point?

**MS. SANTOS:** Yes.

So counsel said that the *TWT* case is exactly the same as

the SVO case. If anything, the *Gers* case is exactly the same as the SVO case. There you had a defamation cause of action that was dismissed, and 16 years almost to the day after *TWT* was decided, the district court said there was no continuing duty to defend after the case was dismissed. So if we're determining how the district courts are applying this case following *TWT*, it's if a defamation cause of action, which is the only potential covered claim is dismissed, there's no continuing duty to defend. Otherwise, under SVO's theory you would never have a pleading that wouldn't be covered. You always have the potential to amend it, and you could always amend it to state a covered claim.

So if there was -- if we were only basing it on a claim, a future claim in the pleading, you would never be able to deny coverage, and that's obviously not the standard. That's why the subsequent case law says you can't manufacture coverage by hypothesizing what they would amend to say in the future.

**THE COURT:** But, so I don't understand SVO's argument to be about what could potentially be amended. I -- here's the distinction I understand between your position and theirs. Your position is coverage was rightly denied when the defamation cause of action was dismissed because the defamation cause of action was the only one that was potentially covered. I understand their position to be within the remaining causes of action, there were facts alleged that still could have

resulted in damages under disparagement, which was covered by the policy. So I just, I'm making -- I want -- your argument to me about amending or what could possibly have been brought in seems off the mark. That's how I'm understanding the distinction.

Bring me -- help explain to me further.

**MS. SANTOS:** I think if that was SVO's counsel's position they wouldn't have focused so much on the briefs on the without prejudice dismissal. So what I'm saying --

**THE COURT:** Talk to me about the law and not their briefs.

So I want to say this. I feel like there are places where you all are so, in your papers, where you're so busy just pointing at each other's that instead of giving me the law and some of the evidence that you have, you're too busy with like, that brief doesn't say that, and this brief doesn't say that, and it's not helpful. So I'm asking you, I'm telling you my understanding of the arguments and the way that I understand you all to be arguing the law. I don't care about what their position was in their papers. I'm asking you to explain to me why I have it wrong and why it isn't -- why -- as I understand their argument if that's not correct, tell me what yours is.

**MS. SANTOS:** Looking at the defense obligation post-dismissal. I think that there's two different ways they're arguing coverage. Either the defamation could have

been brought back in, or the disparagement allegations remained in the complaint.

Now, that's how I addressed it with respect to the fifth and the 14th. I won't go over that again. There is no coverage for the fifth and 14th causes of action. The claimant had disavowed. So you're not seeking damages for that.

I'm trying to also address their argument that defamation could have come back in because it was dismissed without prejudice, but I've clearly done that. I won't spend any more time.

**THE COURT:** Yeah, that, I don't think that -- that doesn't hold much water to my mind. The idea that it could have come back, I agree with you that's a universe in which but tomorrow they could add something that is coverage, so you should continue to defend.

**MS. SANTOS:** So if instead we're focusing just on paragraphs 55, 56 and 146, that I address the false reports in the fifth cause of action were made by third parties, no damages. The claimant had already disavowed any disparagement damages.

**THE COURT:** Let me try asking you each a more pointed question, because -- well, I shared with Ms. Santos my impression was, right, your argument is after defamation was dismissed there was nothing left. I understand SVO's position to be, but there were still potentially covered claims because

of other -- because of the -- because the complaint read as a whole.

And I am at least capturing that right? Am I understanding your position right?

**MS. SANTOS:** Yes.

**THE COURT:** Okay. Am I understanding your position right?

**MR. SMYTH:** That is right, except we additionally argue that it could be brought back in and that none of the cases that she -- that Navigators cites dispute that.

**THE COURT:** Well, but kind of put to the side the idea that it could have been brought back in. Stay with me here on the idea of, right, it's about how you read the complaint that is still live at that point.

All right. What's the best case on your side that says I should read the complaint cause of action by cause of action? Think on it.

What's yours? What's yours for the idea that I should look at the tendered complaint, I should look at all of it together, and that's how I should decide whether it's covered by the policy? Because that's really the question, right?

**MR. SMYTH:** Yes.

**THE COURT:** So what's your best case?

**MR. SMYTH:** I have a case. I need to find it.

**THE COURT:** Take a minute. Find it and let me know.

**MS. SANTOS:** I was going to say the problem is it's black letter law that you look at the complaint. So I don't even know if I went into that kind of detail.

**THE COURT:** But you're each telling me how to look at the complaint. You all don't disagree that I should look at the complaint. The difference is how you want me to interpret the complaint and what I'm supposed to take meaning from in the complaint. So I'm asking you what's the case that supports your principle that what I'm supposed to look at is there are 18 or 19 causes of action, this one was dismissed, this is what's left because that one's gone, I'm done, versus ... right, what's the case for that?

**MS. SANTOS:** So --

**THE COURT:** And if there isn't one, I'll take that, too.

**MS. SANTOS:** No, because I'm trying to decide what I think would be most effective for you to focus on.

**THE COURT:** Okay.

**MS. SANTOS:** With respect to the disparagement comments, I think the most important case is going to be the *Zox* case. So that's the Ninth -- do you want that cite?

**THE COURT:** No, no, I got that. *Zox* is Ninth Circuit. I've got that one front and center.

**MS. SANTOS:** Yeah. So that's where I would focus with respect to the allegation that there's disparagement.

**THE COURT:** Okay.

**MS. SANTOS:** I know our briefs, and probably in both sets, because I know a lot of this is duplicative, we include case law that says once you dismiss it, you're disavowing those damages. And I think that, if I'm understanding your point correctly, that would be the focus, because once they've dismissed the defamation they've disavowed those damages going forward. I wish I could Control F my briefs right now, but it's wherever I said disavow, that's, those are the cases, and I think it's more than one that would have gone to you give up the right to seek those damages.

**THE COURT:** That's helpful, because ...

Okay. So with that let me ask you, Mr. Smyth, where would you have me look? Because from Ms. Santos I'm hearing *Zox* and wherever I see disavowal.

**MS. SANTOS:** Yes.

**THE COURT:** Okay.

**MR. SMYTH:** I am still looking. There is a case, and I'd be pleased to just, you know, after the hearing just cite the case, but there is a case that says that the standard for determining whether there's a duty to defend is whether there is an allegation, a bare allegation of a cause of action would be sufficient to require a duty to defend. We have so many briefs.

**THE COURT:** No, no, I think I know. I think I have a

sense of where you're generally pointing to, so if that's where you want to direct me, that's helpful.

**MR. SMYTH:** Okay.

**THE COURT:** All right. Folks, with that I think I've got what I need from you all.

**MS. SANTOS:** I --

**THE COURT:** You're in the middle when I --

**MS. SANTOS:** Yes.

**THE COURT:** You may finish, Ms. Santos.

**MS. SANTOS:** If you feel comfortable you have everything with respect to the Navigators MSJ I won't respond about the legal malpractice, the late tender. That's all in the briefs.

SVO did say that they incurred coverage counsel fees to indicate that those were breach of contract damages. That wouldn't be breach of contract, that would be bad faith. We're nowhere near bad faith. You can't get attorney's fees for pursuing contract benefits unless you're in bad faith. But I do want to respond with respect to the issue of the evidence and the motion to exclude.

With respect to SVO saying that there was a lack of evidence, obviously I think that the amended responses to the interrogatories gave what information the magistrate requested. Counsel said we gave the expert report after the motion to compel. That was not true. I had told the magistrate I would

need to get the expert to do a line by line, and when I went back and talked to the expert and he said, no, that is the line by line, that is why we never did a supplemental expert report.

**THE COURT:** I guess let me clarify.

When I saw what looked like a continued discovery dispute in the briefs, my first question was why cannot that get raised separately, and then I looked at the calendar and realized that this was all happening as your motions for summary judgment were coming due. So I told myself that's why the -- this whether or not, whether or not -- that's why -- I'm just telling you, it's complete speculation on my part, but I think I saw Judge Illman's order was from November and then your summary judgment briefs were due I think in December. So I sort of told myself that's how this made it into this motion for summary judgment.

I put that to the left even though I'm asking you about it mostly because what I'm then trying to pin down is this, which is, yes, if we're getting down into allocation, SVO argues Navigators doesn't have evidence if -- doesn't have evidence, and I think what I'm hearing you say you have, especially if Jardini is out, then the evidence isn't there. My question is, right, when we're in this -- in this motion for summary judgment I understand the burden then to be for you to point me to specific evidence, and I don't think that's there in your papers.

**MS. SANTOS:** So, and I'm hoping I'm on the right tab. Yes, I am. Okay. Document 104, page 9 of 31, I list all of the discovery that was conducted in the coverage litigation that would have gone towards --

**THE COURT:** Right. But the problem is, and so I will say it now and not put it into the order, but if you're just listing all the documents and everything that it's there, this is that wonderful example of the fact that federal judges are not pigs looking for truffles in your record, right? The obligation is to point me to specific evidence that is there, not this. So --

**MS. SANTOS:** Well, and that's why we did attach the amended discovery responses to show what information. Our original discovery responses were already attached. We attached the amended to show the allocation we had already done. Like we said, SVO opted not to take Navigators' deposition. That's obviously testimony that we're allowed to put on with respect to allocation.

**THE COURT:** That's evidence that you're allowed to put on if you survive summary judgment, and you could have given me a declaration to that end so that I have it, because you are supposed to give me specific evidence at this stage, right? It's their motion for summary judgment. They're saying, hey, there's no evidence in the record. Your job is to show me the evidence you would put forward, not just say, I

have some. That's the problem I'm having at this stage with this claim.

**MS. SANTOS:** I understand, and other than my declaration and the amended responses, I understand that there was not a client declaration with respect to the opposition to their MSJ.

So then in focusing on Jardini, then -- well, first we have a motion to strike our opposition because Navigators was relying on the incorrect standing order. I understand I have two oppositions out there, so I don't know how you intend to rule on that motion.

I would say Jardini is the *Buss* expert. He is literally the best expert there could be to do a *Buss* allocation. You can't say he's doing the *Buss* allocation wrong. He created the *Buss* allocation, so he is the person to put out there.

SVO chose not to designate an allocation expert, and I understand it's to their detriment, because we designated the *Buss* allocation expert. So now they're trying to get ours excluded. But if you read the transcript, which I know you will do, and I'm sorry for the clerk, it's the job that you do it, but I reread his transcript today on the plane, and it is so obvious that he is providing the full explanation on how he does his methodology, how it's consistent across the board, how his auditors do it in and out every day for 20 years.

Every time counsel tried to trap him --

**THE COURT:** Let me stop you, because this is the part -- the problem~-- the issue that I'm having with Jardini is that I understand Mr. Jardini -- Dr. Jardini -- Jardini, let's stick with Jardini. I understand Jardini to be applying the rule you gave him, which is going after the defamation claim was dismissed should be out. Is that incorrect?

**MS. SANTOS:** No, not at all. And that is something SVO repeatedly says, and I can cite you exactly where in his transcript he says that's not true.

He said he, as part of his process, his team and him would have looked at all of the invoices through the end. He did not do an outline of services post-dismissal because there was nothing to put on the chart. There was no -- there was no reference to defamation. There's no reference to disparagement. So he cannot create an outline of services. He did that for the part that he needed the allocation to show which portions were covered and which portions were uncovered, but he did do the analysis for the post-dismissal fees, and I'm going to find you the cite in his deposition.

**THE COURT:** Don't point me to his deposition. Point me to where you cite his deposition in your brief.

**MS. SANTOS:** So I, for condensing sake, I only kept the version of the deposition in my binder that I attached to the motion to exclude, because there I gave you the entire transcript, whereas the opposition to the MSJ I only gave you

the pages I cited to. Now, I am almost positive, having gone through this brief, that it is cited in the opposition as well, but I can give you the document where it is in the motion to exclude.

So it's Document 105-2, page 19 of 35. He starts on page 71, and it continue -- 71, at line 13, through 72, line 16, and then at 105-2 with the full transcript on page 28 of 35, page 109, lines 15, to 110, 7 he repeatedly corrects Mr. Smyth and said, I did do that review, I did look at those invoices, I determined there was no evidence that any work was being done on disparagement or defamation.

**THE COURT:** Take a minute, and we're going to wrap up.

**MR. SMYTH:** I'm sorry?

**THE COURT:** I said take a minute, and then we're going to wrap up.

**MR. SMYTH:** He said that there's no allegations of disparagement in the fees after the dismissal. It's demonstrably wrong. There are allegations. We've attached them as an exhibit. There's all sorts of allegations of disparagement in terms of the work that was done. He didn't look at those fees. He didn't have any of his staff do it. He's just making this stuff up.

**THE COURT:** And am I right you would point generally to claims 5 and 14 that we were discussing earlier? That's

what's left in the complaint?

**MR. SMYTH:** I'm sorry?

**THE COURT:** In the underlying action, what's left in the underlying action at that point are the allegations that are attached to claims 5 and 14; is that right?

**MR. SMYTH:** I believe that's so. I thought they were paragraphs, I'm going by memory, 55 and 146.

**THE COURT:** 146 is for claim 14.

**MR. SMYTH:** That's the one that has the disparagement and the other ones have the --

**THE COURT:** I'm just confirming that that's --

**MR. SMYTH:** Yes, yes.

**THE COURT:** I'm confirming that in the end they're different questions, but they end up, right, we're back looking at the complaint, right?

**MS. SANTOS:** No, Mr. Jardini was not looking at the complaint. He was looking at the pleadings that he was given to understand where the case was, and once the defamation case was dismissed, he understood the defamation cause of action is not there, so he's looking at the invoices to see was there any work done as defense counsel wrote it down, not the pleading, that suggested they were working on a disparagement or a defamation claim, and there is nothing in the post-dismissal time entries that would say that. And that's why he said he did do that allocation, and if we were to lose the MSJ, he

would give that testimony at trial for the post-dismissal allocation, as well.

**THE COURT:** Understood.

All right. Folks, I'm going to take this under submission, and we'll follow up with you all accordingly.

Thank you. Thank you all. Have a good afternoon.

(Proceedings concluded at 2:54 p.m.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Thursday, March 19, 2026



Stephen W. Franklin, RMR, CRR
Official Reporter, U.S. District Court