United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAVIGATORS SPECIALTY
INSURANCE COMPANY,

Plaintiff,

v.

SVO BUILDING ONE, LLC,

Defendant.

Case No. 22-cv-07102-AMO

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 100, 101, 102, 111

This is an insurance coverage dispute.  The parties' cross motions for summary judgment and Defendant SVO Building One, LLC's *Daubert* motion were heard before the Court on March 5, 2026.  Having read the parties' papers and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court rules as follows.

**BACKGROUND**

The following summary of relevant facts is undisputed.

Plaintiff Navigators Specialty Insurance Company issued Policy No. LA17CGL219162IC ("Policy") to Defendant SVO Building One, LLC for the period of July 12, 2017, to August 12, 2019.  Declaration of Angel Muth, Dkt. No. 100-1 ("Muth Decl.") ¶ 2; Policy, Dkt. No. 100-2.  Coverage A of the policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence."  Policy at 18.  Coverage B of the Policy provides coverage for "damages" because of "personal and advertising injury" arising out of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  Policy at 23, 32.  The Policy contains exclusions for violations of

intellectual property, breach of contract, and the knowing violations of another's rights.  Policy at 37-38.

In 2017, SVO entered into a contract with Vertiv,[1] an equipment manufacturing company, to design a data center in Sacramento, California.  Dkt. No. 101 at 9.  In 2018, Vertiv sued SVO, alleging breach of contract.  *Id.* ("Underlying Action").  On July 11, 2019, Vertiv filed a fourth amended complaint ("Underlying Complaint") asserting eighteen causes of action against SVO, including one cause of action for defamation.  Underlying Complaint, Dkt. No. 100-3 ("Underlying Compl.").  On July 29, 2019, SVO tendered the fourth amended complaint to Navigators.  Dkt. No. 101 at 9.  On October 28, 2019, coverage counsel for Navigators wrote to SVO and agreed to provide a defense to the fourth amended complaint pursuant to the Policy conditioned on a reservation of rights to deny coverage.  Dkt. No. 100-4.  Navigators' coverage counsel stated that the litigation did not allege "bodily injury" or "property damage" to trigger coverage under Coverage A of the Policy.  *Id.* at 7.  It also stated that "[t]he [l]itigation alleges defamation against SVO, which is the only allegation contained in the [l]itigation which potentially qualifies as an enumerated 'personal or advertising injury' offense" under Coverage B of the Policy.  *Id.* at 8.

On March 24, 2021, Vertiv dismissed a number of causes of action without prejudice, including the defamation cause of action.  Dkt. No. 100-5.  On March 31, 2021, Navigators' claims representative wrote to SVO advising it was denying all coverage, would be withdrawing from its defense of SVO as of April 15, 2021, and would no longer pay any legal fees or costs incurred on behalf of SVO in the Underlying Action after that date.  Dkt. No. 100-6.  Navigators asserted that the dismissal of the defamation cause of action eliminated the potential for coverage under its Policy.  *Id.* at 1.

On May 3, 2021, SVO's counsel, Steven Murray, sent Navigators a letter, which stated its denial of coverage was "factually and legally unsupported."  Dkt. No. 100-7 at 1.  Murray cited allegations of "disparagement" in two other causes of action in the fourth amended complaint, as

---

[1] Vertiv previously was known as Leibert Corporation.  Dkt. No. 101 at 9.

well as allegations of potentially covered property damage under Coverage A. *Id.* at 1-3. On May 18, 2021, Navigators' coverage counsel wrote a letter to SVO stating that it would continue providing a defense to SVO under a reservation of rights. Dkt. No. 100-8. On January 5, 2022, the Underlying Action settled and was subsequently dismissed with prejudice in its entirety. Dkt. No. 101-1 at 159-160.

Navigators filed this suit against SVO on November 14, 2022. Dkt. No. 1. On February 15, 2024, the Court granted SVO's motion to dismiss with leave to amend. Dkt. No. 41. Navigators filed an amended complaint bringing two causes of action: (1) declaratory relief for a right to reimbursement from March 24, 2021, onwards and (2) declaratory relief for a right to reimbursement for uncovered claims. Amended Complaint, Dkt. No. 43 ("Am. Compl."). On June 13, 2024, the Court denied SVO's motion to dismiss Navigators' amended complaint. Dkt. No. 49. On July 16, 2024, SVO filed an answer and counterclaims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of Business and Professions Code §§ 17200, et seq. and §§ 17500 et seq., and (4) declaratory judgment. Dkt. No. 53.

On December 1, 2025, Navigators filed a motion seeking summary judgment on its first cause of action and on all of SVO's counterclaims. Dkt. No. 100. The same day, SVO filed a motion seeking summary judgment on both of Navigators' causes of actions, but not on its counterclaims. Dkt. No. 101. Also on December 1, 2025, SVO filed a *Daubert* motion to exclude the testimony of Navigators' expert witness André E. Jardini. Dkt. No. 102. On November 15, 2025, Navigators filed an opposition to SVO's motion for summary judgment, Dkt. No. 104, and an opposition to SVO's *Daubert* motion, Dkt. No. 105.[2] On December 22, 2025, both Navigators

---

[2] The same day, SVO filed an opposition to Navigators' motion for summary judgment, Dkt. No. 106, and objections to portions of a declaration of Angel Muth, which was filed in support of Navigators' motion for summary judgment, Dkt. No. 107. SVO also filed evidentiary objections to portions of the declaration of Shannon Santos, which was filed in support of Navigators' opposition to SVO's motion for summary judgment. Dkt. No. 113. The objections violate the District's Civil Local Rules as they were not contained within SVO's briefing. *See* Civil L.R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."). Accordingly, the Court OVERRULES the objections.

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

and SVO filed reply briefs in support of their motions for summary judgment. Dkt. Nos. 110, 112.[3]

## DISCUSSION

The Court first considers the *Daubert* motion before taking up SVO's motion for summary judgment, and finally Navigator's motion for summary judgment.

### I.     *Daubert* Motion

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" when: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

"Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999)). "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Id.* The trial court's

---

[3] SVO also filed a motion to strike Navigators' opposition to its *Daubert* motion. Dkt. No. 111. Navigators subsequently filed an amended, compliant opposition to SVO's *Daubert* motion. Dkt. No. 116-4. SVO asks that the Court not consider Navigators' amended opposition, as it is untimely. Dkt. No. 117. The Court GRANTS SVO's motion to strike Navigators' opposition to SVO's Daubert motion, Dkt. No. 104, as overlong. Civil Standing Order at 4. The Court DENIES SVO's request that it not consider Navigators' subsequent opposition, and considers Navigators' compliant opposition, Dkt. No. 116-4, in assessing the motion.

gatekeeping function under Rule 702 centers "not [on] the correctness of the expert's conclusions but the soundness of his methodology." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (citation and quotations omitted). Courts should screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Id.* at 1025 (quotation and citation omitted); *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat."). The Ninth Circuit has placed emphasis on *Daubert*'s admonition that a district court should conduct this analysis "with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

Flaws in a proffered expert's analysis typically go to the weight, rather than the admissibility, of the expert's testimony. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) ("In most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility. [] Vigorous cross-examination of a study's inadequacies allows the jury to appropriately weigh the alleged defects and reduces the possibility of prejudice." (internal citation omitted)). "In some cases, however, the analysis may be 'so incomplete as to be inadmissible as irrelevant.' " *Id.* (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 n.10 (1986)).

Navigators proffers André E. Jardini as an expert to opine on the proper reimbursement allocation for costs paid by Navigators in the Underlying Action. Dkt. No. 116-4 at 2. SVO contends that the Court should exclude Jardini because his report is unreliable and irrelevant, as Jardini "ignores the applicable standard for determining whether attorneys' fees and expenses may be reimbursed to an insurer set forth by the California Supreme Court[.]" Dkt. No. 102 at 2. The Court agrees that Jardini is an improper expert under Rule 702 because his analysis incorrectly applies the operative legal standard and is thus irrelevant. *See Hemmings*, 285 F.3d at 117; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quotation and citation omitted).

The parties agree that *Buss v. Superior Ct.*, 16 Cal. 4th 35, 39 (1997) ("*Buss*") lays out the standard for when litigation costs may be reimbursed to an insurer. Dkt. No. 101 at 8; Dkt. No.

116-4 at 3. Pursuant to *Buss*, in a "mixed action" where some claims are covered by the insurance policy and some are not,[4] the insurer must prove by a preponderance of the evidence that the costs they seek "can be allocated solely to the claims that are not even potentially covered." *Id.* at 52; *see also State Farm General Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 286 (2009) (determining that "[a]ttorney fees awarded as costs against the insured can be allocated *solely* to claims that were not even potentially covered if (1) the fees were incurred solely to defend against claims that were not even potentially covered or (2) the right to recover fees arose *solely* from claims that were not even potentially covered." (emphasis in original)); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1271 (2007) (citing *Buss* and stating, "[a]n insurer may obtain reimbursement *only* for defense costs that can be allocated solely to the claims that are not even potentially covered.") (emphasis in original)).

Jardini's report explains that he "identified services that were possibly partially related to a defamation claim. In making this analysis, [he] had in mind the overwhelming import in the case of the various trade secret claims as opposed to the defamation claim as shown by both [Vertiv] and SVO." Jardini Report ¶ 58. At his deposition, he further explained his methodology, stating "I'm looking at [attorney time entries regarding discovery] in the context of a case in which defamation was dismissed voluntarily; meaning, it's not an important part of the case; that it was only one of 18 claims, and that discovery, more likely than not, was related to things not defamation." Jardini Dep., Dkt. No. 102-1 at 19-20. But the standard is not simply whether attorney time is more likely than not related to defamation and it does not take into consideration the "overwhelming import" of a claim. Rather, the proper question is whether attorney time more likely than not "can be allocated solely to the claims that are not even potentially covered." *Buss*, 16 Cal. 4th at 61. Jardini's application of a standard of "overwhelming import" to his assessment of costs attributable to the covered claims plainly departs from the *Buss* standard that requires more rigorous delineation of defense costs that can be allocated solely to claims not even

---

[4] Neither party disputes that the Underlying Action prior to March 23, 2021, was a "mixed action" where some claims were covered by the Policy and some were not. *See* Dkt. No. 101 at 12; Dkt. No. 104 at 12.

potentially covered. *Buss*, 16 Cal. 4th at 52. Thus, Jardini's opinion is not only unhelpful, it is irrelevant as it does not have "a valid connection to the pertinent inquiry." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."). Accordingly, the Court GRANTS SVO's motion to exclude the testimony of Jardini.

## II.    Motions for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

"On cross motions for summary judgment, the burdens faced by opposing parties vary with the burden of proof they will face at trial." *Marker v. U.S. Dep't of Educ.*, No. 23-CV-05873-JSC, 2026 WL 145845, at *3 (N.D. Cal. Jan. 20, 2026) (quotations and citation omitted). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Id.* (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000). When the moving party has

United States District Court
Northern District of California

carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

When deciding a summary judgment motion, courts must view the evidence in the light most favorable to the nonmoving party. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, when a nonmoving party fails to produce evidence rebutting the moving party's showing, then summary adjudication is proper. *Nissan Fire*, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."). Lastly, the court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### A. SVO's Motion for Summary Judgment

SVO moves for summary judgment on each of Navigators' claims. *See* Dkt. No. 101. The Court discusses each claim in turn.

### i. Navigators' First Cause of Action

Navigators seeks a declaration that "Navigators has the right to reimbursement of all attorneys' fees and costs incurred in defense of the Underlying Action as of March 24, 2021 as it had no duty to defend SVO under the Policy as of that time." Am. Compl. ¶ 37. SVO argues that it is entitled to summary judgment on this claim because no material facts are in dispute and, as a matter of law, Navigators had a continuing duty to defend after March 24, 2021. Dkt. No. 101 at 23.

In California, an insurer has the duty to defend claims that are "merely potentially covered" by the insurance policy. *Buss*, 16 Cal. 4th at 46. Conversely, the insurer has no duty to defend in an action where none of the claims are potentially covered. *Id.* at 47. "While the duty to defend is broad, '[a]n insurer will not be compelled to defend its insured when the potential for liability is so tenuous and farfetched.' " *Zox LLC v. W. Am. Ins. Co.*, No. 23-55125, 2024 WL

United States District Court
Northern District of California

512561, at *1 (9th Cir. Feb. 9, 2024) (quoting *Montrose Chem. Corp. v. Superior Ct.*, 861 P.2d 1153, 1162 (Cal. 1993)).

Navigators contends that it did not have a duty to defend after the defamation cause of action was dismissed without prejudice in the Underlying Action on March 24, 2021. Dkt. No. 104 at 24-30. "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 952 (9th Cir. 2002) ("[t]he duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim."); *see also Millennium Lab'ys, Inc. v. Darwin Select Ins. Co.*, 676 F. App'x 734, 736 (9th Cir. 2017) ("[Defendant] was obligated to defend [plaintiff] if it was at least possible that the policy covered claims in [the underlying action].")); *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500 (2001). "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). To meet its burden of showing it had no duty to defend, Navigators must prove that there was no potential for coverage. *See id.*; *see also Vann v. Travelers Companies*, 39 Cal. App. 4th 1610, 1614 (1995).

SVO argues that, at the time of the subject dismissal on March 24, 2021, the Underlying Complaint "irrefutably included other allegations that were virtually akin to defamation and expressly asserted the covered tort of disparagement." Dkt. No. 106 at 14. SVO points to facts asserted in support of Vertiv's fifth cause of action for violations of the Unfair Competition Law:

> Without limitation, at least the following acts by SVO were unfair business acts: … **seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project** . . . Without limitation, at least the following acts by SVO were fraudulent business acts: . . . **seeking and/or causing third parties to issue false reports regarding the commissioning of equipment on the Project** . . . As a direct and proximate cause of the wrongful conduct of SVO, Vertiv has been injured in fact. For example, as a direct consequence of the acts of SVO, SVO are using Vertiv's intellectual property and work product to complete Phase 1 of the Project and to design and construct Phases 2 and 3 of the

> Project, which erodes Vertiv's reputation as a designer and builder of data centers and provides an unjustified cost savings to SVO.

Underlying Compl. ¶¶ 55-57 (emphasis added by the Court). The Underlying Complaint additionally asserted the following in support of Vertiv's fourteenth cause of action for intentional interference with contractual relationship:

> SVO improperly and intentionally interfered with Vertiv's contract with DPR in various manners, including but not limited to routinely engaging in secretive and unauthorized direct communications with personnel regarding the work and services DPR was performing for Vertiv on the jobsite and **disparaging Vertiv's work**.

*Id.* ¶ 146 (emphasis added by the Court). These factual allegations give rise to potential claims for defamation because they aver that SVO caused third parties to issue false reports about Vertiv and that SVO disparaged Vertiv's work. Thus, the allegations in the Underlying Complaint sufficed to maintain the duty to defend even after the defamation cause of action had been dismissed. *See Barnett*, 90 Cal. App. 4th at 509 (finding that duty to defend was triggered even though the underlying complaint did not assert a covered cause of action for slander, libel, defamation, or disparagement because the underlying complaint contained factual allegations that the insured disparaged the opposing party).

Navigators seeks to hold off this conclusion by raising three arguments. First, Navigators contends that the defamation allegations remaining in the complaint were conclusory and should therefore not be credited. Dkt. No. 104 at 27-28 (citing *Zox LLC v. W. Am. Ins. Co.*, 2024 WL 512561, at \*2). *Zox* is not instructive because the allegations in the Underlying Complaint here are more specific than those in *Zox*. 2024 WL 512561, at \*2 (concluding that policy which covered disparagement claims did not require tendering a defense where the underlying complaint alleged that the insured "disparaged the goods, services, or business of another by false or misleading representations of fact"). *Id.* at \*2. Here, unlike in *Zox*, *id.*, the Underlying Complaint alleges that SVO disparaged Vertiv's work to a specific third-party, DPR, during unauthorized and secretive discussions regarding work and services that DPR performed for Vertiv. Underlying Compl. ¶ 146. These allegations are not too conclusory to be credited.

Second, Navigators argues that the fifth and fourteenth causes of action in the Underlying Action are not covered by the Policy because it only applies to "personal and advertising injury"

10

where a claimant is seeking "damages." Dkt. No. 104 at 27. Navigators contends the fifth and fourteenth causes of action pursued only equitable relief and purely economic losses, not damages, and thus could not have triggered coverage. *Id.* As an initial matter, the fourteenth cause of action for intentional interference with contractual relationship did seek damages, contrary to Navigators' contention. Underlying Compl. ¶ 149 ("In intentionally interfering with Vertiv's contract with DPR, SVO acted, willfully, maliciously and fraudulently, entitling Vertiv to an award of exemplary or punitive damages."). In any event, Navigators cites no authority establishing that the facts which give rise to coverage need to be pleaded in support of a covered cause of action seeking damages in order to give rise to the duty to defend. Indeed, this runs counter to *Barnett*, which holds that even where there is no covered cause of action, underlying facts can still give rise to a duty to defend. 90 Cal App. 4th at 509 ("the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party."); *see also Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267-68 (9th Cir. 2010) (holding that an insurer had duty to defend where complaint did not assert a covered claim but contained factual allegations supporting such a claim).

Third, Navigators argues that the fifth and fourteenth causes of action fall within the Policy exclusions, and thus coverage is barred for any facts alleged in support of those claims. Dkt. No. 104 at 29. But Navigators ignores the applicable standard of analysis, which requires focus on the factual allegations to assess the duty to defend rather than focusing on the enumerated causes of action to determine potential coverage. *Barnett*, 90 Cal App. 4th at 509; *Hudson Ins. Co.*, 624 F.3d at 1267-68. Review of the factual allegations contained within the complaint in the Underlying Action demonstrates that the facts supporting the fifth and fourteenth causes of action give rise to the potentially covered claim of defamation. For example, Vertiv alleges SVO violated unfair competition laws by "seeking and/or causing third parties to issue false reports regarding the commission of equipment on the Project[.]" *Id.* ¶ 55. It additionally alleges that SVO "routinely engag[ed] in secretive and unauthorized direct communications with DPR personnel regarding the work and services DPR was performing for Vertiv on the jobsite and disparaging Vertiv's work . . . for the purpose and with the intent of interfering with Vertiv's

United States District Court
Northern District of California

performance . . . and disrupting Vertiv and DPR's contractual relationship." Underlying Compl. ¶¶ 146-47. These factual allegations of disparagement to third parties give rise to potential coverage for defamation, and Navigators makes no argument that the factual allegations fall within the "intellectual property" or "knowing violations of another's rights" exclusions. Thus, the Court finds that, as a matter of law, Navigators had a duty to defend SVO in the Underlying Action that continued after March 24, 2021, and SVO is entitled to summary judgment on Navigators' first claim. *See* Fed. R. Civ. P. 56(a).

### ii.  Navigators' Second Cause of Action

In its second cause of action, Navigators seeks a declaration that "Navigators has the right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of SVO in the Underlying Action under the Policy." Am. Compl. ¶ 45. SVO contends summary judgment must be granted on this claim because Navigators failed to produce evidence that establishes that any fees and costs are solely allocable to claims which are "not even potentially covered." Dkt. No. 101 at 13-14 (citing *Buss*, 16 Cal. 4th at 52). In response, Navigators points only to its amended responses to SVO's interrogatories as sufficient evidence that Navigators paid for SVO's defense of uncovered claims.[5] Dkt. No. 104 at 13. These amended responses are not enough to raise a triable question of fact as they incorporate and rely on Jardini's report, which the Court has excluded. *See* Section I. Thus, Navigators has not carried its burden of showing specific facts, "supported by admissible evidence" which would allow a reasonable jury to find for it on its second claim. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 252 ("[T]here must be evidence on which the jury could reasonably find for the plaintiff."). The Court GRANTS SVO's

---

[5] SVO propounded interrogatories which asked Navigators "to identify the billing entries and expenses it contended were solely allocable to potentially non-covered claims." *Id.* at 14. Unsatisfied with Navigators' responses, SVO moved to compel further responses. Dkt. No. 92. Magistrate Judge Robert M. Illman granted SVO's motion and ordered Navigators to supplement its responses to the interrogatories. *See* Dkt. No. 95; *see also* Dkt. No. 101-1 at 215. In response to SVO's interrogatories, Navigators produced exhibits to a declaration from Jardini. Dkt. No. 104-2. These exhibits are tables prepared by Jardini and his staff which batch and summarize attorney time entries in the Underlying Action. *Id.* Navigators did not produce the line-by-line attorney time entries that SVO requested and Judge Illman ordered produced. *Id.*

United States District Court
Northern District of California

motion for summary judgment as to Navigators' second claim.

### B. Navigators' Motion for Summary Judgment

Navigators moves for summary judgment on its first cause of action and all of SVO's counterclaims. *See* Dkt. No. 100. The Court takes up Navigators' first cause of action and then examines whether Navigators is entitled to summary judgment on SVO's counterclaims.

#### i. Navigators' First Cause of Action

Because, as discussed above in Section II(A), Navigators had a continuing duty to defend SVO in the Underlying Action after March 24, 2021, Navigators is not entitled to a declaration that "Navigators has the right to reimbursement of all attorneys' fees and costs incurred in defense of the Underlying Action as of March 24, 2021 as it had no duty to defend SVO under the Policy as of that time." Am. Compl. ¶ 37. Therefore, the Court DENIES Navigators' motion for summary judgment as to its first cause of action.

#### ii. SVO's Counterclaims

SVO brings counterclaims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of Business and Professions Code §§ 17200, et seq. and §§ 17500 et seq., and (4) declaratory judgment. Dkt. No. 53. SVO also seeks punitive damages. *Id.* at 20, 23. The Court considers Navigators' motion with regard to each claim in turn.

#### 1. Breach of Contract

To succeed on a breach of contract claim, SVO needs to prove the following elements: "(1) [existence of] the contract, (2) [SVO's] performance or excuse for nonperformance, (3) [Navigators'] breach, and (4) the resulting damages to [SVO]." *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968); *see also Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458 (1985). Navigators argues that SVO cannot show breach. *See* Dkt. No. 100 at 25; Dkt. No. 110 at 19.

SVO alleges that Navigators breached the contract because it (1) withdrew from SVO's defense, (2) mismanaged the defense of the Underlying Action, and (3) required SVO to pay hundreds of thousands of dollars in fees and expenses which Navigators should have paid. *See* Dkt. No. 53 ¶¶ 32-27; *see also* Dkt. No. 106 at 28-32. The Court only reaches SVO's claim

United States District Court
Northern District of California

13

regarding Navigators' defense withdrawal, as it is dispositive. Navigators argues that SVO cannot show breach based on Navigators' defense withdrawal because Navigators continued to defend SVO through trial after SVO objected to its withdrawal. Dkt. No. 100 at 25. Indeed, on May 18, 2021, Navigators sent a letter to SVO stating that it would not withdraw from its defense of the litigation. Dkt. No. 100-8. In response, SVO points to a March 31, 2021 letter from Navigators informing SVO that it would withdraw from its defense on April 15, 2021. Dkt. No. 100-6 at 2. Navigators contends that, as a matter of law, it was "entitled to a reasonable period of time to analyze a situation requiring a coverage decision." Dkt. No. 100 at 26 (citing *Travelers Prop. Cas. Co. of Am. v. Kaufman & Broad Monterey Bay, Inc.*, No. 5:13-CV-04745-EJD, 2015 WL 581509, at *3 (N.D. Cal. Feb. 11, 2015)). But *Travelers Property* stands for a proposition different than the one cited. The *Travelers Property* court determined that "where an insured tenders an underlying action but fails to provide the insurer with necessary information relevant to a coverage determination, then the insurer need not defend the action upon tender." *Id.*, 2015 WL 581509, at *3. Here, there is no evidence that SVO failed to send Navigators necessary information. Thus, *Travelers Property* does not entitle Navigators to judgment as a matter of law. The Court therefore DENIES Navigators' motion for summary judgment on SVO's breach of contract claim.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

To establish a breach of the implied covenant of good faith and fair dealing in the insurance coverage context, SVO must show "(1) benefits due under the policy [were] withheld; and (2) the reason for withholding benefits [was] unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Assn. v. Associated Inter. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001). "[A]n honest mistake, bad judgment or negligence" is not sufficient to establish tort liability as bad faith requires "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and

14

disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.* at 346 (citation and quotations omitted).

Navigators moves for summary judgment on the basis that SVO "cannot establish that Navigators breached the implied covenant" because, after SVO challenged its refusal to continue coverage, Navigators agreed to defend the Underlying Action through trial. Dkt. No. 100 at 30. In response, SVO contends that "Navigators acted without proper cause in committing the numerous breaches of its obligations." Dkt. No. 106 at 32. SVO asserts, "[k]nowing that Navigators would bring this action for reimbursement, Navigators abrogated its obligation to keep abreast of and manage the Underlying Action, [which] resulted in overbilling by counsel, a lack of oversight related to expert witnesses, and ultimately terminating sanctions being imposed because of this lack of concern for the insured." Dkt. No. 106 at 32. SVO points to no evidence in support of its arguments. Because "mere allegation and speculation do not create a factual dispute for purposes of summary judgment[,]" *Nelson*, 83 F.3d at 1081-82, SVO has failed to carry its burden of establishing "specific facts, supported by admissible evidence" which support its claim, *Berndt v. California Dep't of Corr.*, No. C 03-3174 PJH, 2014 WL 4635211, at *2 (N.D. Cal. Sept. 16, 2014). Accordingly, the Court GRANTS Navigators' motion for summary judgment on SVO's breach of the implied covenant of good faith and fair dealing claim.

### 3. Violation of Business and Professions Code §§ 17200, et seq. and §§ 17500 et seq.

In its third counterclaim, SVO brings one claim under Section 17200 and one claim under Section 17500 of the Unfair Competition Law ("UCL"). First, Navigators argues that the Section 17200 claim fails as a matter of law because "SVO cannot establish that Navigators' conduct through the use of panel counsel was an unfair, unlawful, or fraudulent business practice to establish a violation of the UCL." Dkt. No. 100 at 31. But Navigators cites no authority for the proposition that the use of panel counsel cannot constitute an unfair, unlawful, or fraudulent business practice. Instead, the cases Navigators cites establish that the duty to defend obligates an insurer to "employ competent counsel to represent the assured." *See* Dkt. No. 100 at 27 (quoting *Merritt v. Rsrv. Ins. Co.*, 34 Cal. App. 3d 858, 882 (1973) and citing *Assurance Co. of Am. v.*

*Haven*, 32 Cal. App. 4th 78, 84 (1995)).  Navigators' continuing failure to cite authority establishing that it is entitled to prevail as a matter of law, combined with its failure to cite any uncontroverted record evidence, precludes summary judgment in its favor.  *See* Fed. R. Civ. Pro. 56(a).

Second, Navigators contends that the Section 17200 claim fails because SVO has an adequate remedy at law through its other causes of action.  Dkt. No. 100 at 30 (citing *Oxnard Manor* LP, 709 F. Supp. 3d at 991 (holding that, because UCL claims were duplicative of breach of contract claim, plaintiff had an adequate remedy at law)).  But "a plaintiff may seek equitable relief under FAL and UCL to the extent that his claims are premised on alleged future harm." *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1283 (C.D. Cal. 2022).  Because SVO seeks an injunction to prevent future conduct, *see* Dkt. No. 53 ¶ 50, its Section 17200 claim does not fail as a matter of law.  *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652 (N.D. Cal. 2021) (declining to dismiss UCL claim because "retrospective damages are not an adequate remedy for prospective harm" and "California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages.").  Thus, the Court DENIES Navigators' motion for summary judgment on SVO's Section 17200 claim.

Finally, while SVO's countercomplaint alleges a violation of Section 17500, Navigators states in its brief that "there is no authority for the proposition that the statute applies to an insurance case" and therefore this claim fails as a matter of law.  Dkt. No. 100 at 30.  SVO provides no authority for the proposition in its opposition brief.  Thus, the Court has no authority before it that Section 17500 applies in this case.  Accordingly, the Court GRANTS Navigators' motion for summary judgment on SVO's Section 17500 claim.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("a plaintiff has abandoned claims by not raising them in opposition to the defendant's motion for summary judgment").

### 4.  Declaratory Relief

Navigators argues that it is entitled to summary judgment on SVO's declaratory relief claim for the same reasons SVO cannot establish a breach of contract.  Dkt. No. 100 at 28.  Further, at the hearing, Navigators' counsel acknowledged that SVO's breach of contract and

United States District Court
Northern District of California

declaratory relief claims rise and fall together.  Because the Court concludes that summary judgment on SVO's breach of contract claim is improper and the claim survives, the same is true for SVO's declaratory relief claim.

### 5.  Punitive Damages

Finally, Navigators contends that it is entitled to summary judgment on SVO's claim for punitive damages because SVO has no evidence to support its request for punitive damages.  Dkt. No. 100 at 31-32.  SVO must prove by clear and convincing evidence that Navigators was guilty of malice, fraud, or oppression to establish its claim for punitive damages.  *See* Cal. Civ. Code § 3294.  In the insurance context, evidence of bad faith without more is insufficient to support a claim for punitive damages.  *Stewart v. Truck Ins. Exch.*, 17 Cal. App. 4th 468, 483 (1993) ("Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice . . . to justify an award of punitive damages. . . . In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by *clear and convincing evidence* that the insurer has acted maliciously") (emphasis in original).  SVO does not cite a single piece of evidence to support its claim.  *See* Dkt. No. 106 at 33.  Thus, SVO has failed to carry its burden of establishing "specific facts, supported by admissible evidence" which support its claim.  *Berndt*, 2014 WL 4635211, at \*2.  Navigators, accordingly, is entitled to summary judgment on SVO's request for punitive damages.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** SVO's motion for summary judgment. The Court **GRANTS** Navigators' motion for summary judgment as to SVO's breach of the implied covenant of good faith and fair dealing claim, its Business and Professions Code Section 17500 claim, and its request for punitive damages.  Navigators' motion is otherwise **DENIED**.  In sum, only SVO's claims for breach of contract, violation of Business and Professions Code Section 17200, and declaratory relief remain.

The Court believes the parties will benefit from a settlement conference with a magistrate judge.  The parties SHALL meet and confer and file a joint notice no later than May 7, 2026,

United States District Court
Northern District of California

stating whether there is a particular magistrate judge to whom they would like to be referred. Otherwise, the Court will refer this matter for random assignment to a magistrate judge for a settlement conference.  The Court will separately issue a pretrial order.  The Court may need to move the trial date in this matter to September 1, 2026.

**IT IS SO ORDERED.**

Dated: April 30, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California