David Simantob, SBN 155790
Email: David.Simantob@wilsonelser.com
Shannon L. Santos, SBN 260112
Email: Shannon.Santos@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: 213.443.5100
Facsimile: 213.443.5101

*Attorneys for Plaintiff/Counter-Defendant Navigators Specialty Insurance Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br>Plaintiff,<br>vs.<br>SVO BUILDING ONE, LLC,<br>Defendant. | Case No. 4:22-cv-07102-AMO<br>Hon. Araceli Martínez-Olguín<br>Courtroom 10<br><br>**NAVIGATORS SPECIALTY INSURANCE COMPANY'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT [DOC. 124]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Proposed Order]<br><br>Action Filed: November 14, 2022<br>Trial Date: September 1, 2026 |
| SVO BUILDING ONE, LLC,<br>Counterclaimant,<br>vs.<br>NAVIGATORS SPECIALTY INSURANCE COMPANY,<br>Counter-Defendant. | |

/ / /

/ / /

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......... 4

II. ARGUMENT .......... 5

A. The Court Has Authority to Grant Leave for a Motion for Reconsideration. .......... 5

B. The Court Did Not Consider the Facts Showing the Expert Applied the *Buss* Standard, Instead Imposing the Case-Dispositive Consequence of Excluding Both Navigators' Expert and Lay Witness Rather Than Striking Such Statements. .......... 6

C. The Court Did Not Consider Material Facts in the Discovery Responses Completely Independent from the Expert Analysis, Which Cannot Be Precluded by *Daubert* As Being Comprised Solely of Lay Witness Testimony. .......... 10

III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Binakonsky v. Ford Motor Co.*,
133 F.3d 281 (4th Cir. 1998) .......... 12

*Brown v. Ryan's Family Steak House Mgmt., Inc.*,
113 Fed Appx. 512 (4th Cir. Oct. 29, 2004) .......... 12

*Buss v. Super. Ct.*,
16 Cal. 4th 35 (1997) .......... 4, 6, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 5, 12

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) .......... 13

*Griffin v. Johnson*,
2017 U.S. Dist. LEXIS 146692 (E.D. Cal. Sept. 11, 2017) .......... 11

*LMC Vineyards, LLC v. Allied World Nat'l Assur. Co.*,
2025 U.S. Dist. LEXIS 255201 (N.D. Cal. Aug. 26, 2025) .......... 5

*Min Productions Pte., Ltd. v. FireForge, Inc.*,
2016 U.S. Dist. LEXIS 203739 (C.D. Cal. June 27, 2016) .......... 12

*Reed v. Lieurance*,
863 F.3d 1196 (9th Cir. 2017) .......... 9

*U.S. v. Krug*,
2013 U.S. Dist. LEXIS 200195 (C.D. Cal. Jan. 4, 2013) .......... 12

*U.S. v. Logsdon*,
2013 U.S. Dist. LEXIS 151967 (W.D. Ok. Oct. 23, 2013) .......... 11

*U.S. v. Rakestraw*,
2023 U.S. Dist. LEXIS 94015 (D. Az. May 30, 2023) .......... 11

**Statutes**

Fed. R. Civ. Proc. 54 .......... 4, 5

L.R. 7-9 .......... 4, 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Navigators Specialty Insurance Company ("Navigators") respectfully requests leave to file a Rule 54(b) to reconsider the Court's Order [Doc. 124] ("Order") based on material facts and dispositive legal arguments raised in the record that the Court did not consider. L.R. 7-9 (b)(3).

First, the Court did not consider extensive portions of André Jardini's 133-page deposition and 74-page expert report, wherein Jardini repeatedly explained that he applied the standard set forth in *Buss v. Super. Ct.*, 16 Cal. 4th 35, 39-40 (1997), *i.e.*, that, in a "mixed" action where some claims are covered by the insurance policy and some are not, the insurer must prove by a preponderance of the evidence that the amounts it seeks "can be allocated solely to claims that are not even potentially covered." [Doc. 105-2, Transcript from Jardini Deposition ("Depo."), 26:13-27:14, EX. A-8.] Indeed, this is the same standard reiterated by the Court in the Order. [Order, 6:1-3.] Yet, the Court struck the entirety of an experienced *Buss* expert's testimony based on two isolated quotes, resulting in wholesale dismissal of Navigators' *Buss* reimbursement claim. At a minimum, controlling case law dictates that the Court should consider simply excluding portions of the expert's testimony rather than striking the expert entirely.

Second, the Court did not consider material, non-expert based, admissible evidence in the record, such as certain verified interrogatory responses independent of the expert report and defense invoices, that demonstrated a triable issue of fact in connection with Navigators' *Buss* reimbursement claim.[1] [*See*, *i.e.*, Doc. 104-2, Response to No. 5, 15:4-9 ("All expert and consultant fees and costs identified in the spreadsheet are recoverable at 100% as no experts in the Underlying Action were involved in SVO's defense of the defamation allegations.").] The Court incorrectly found that Navigators relied solely on discovery responses derivative of and dependent on the excluded Jardini

---

[1] The record included various invoices evidencing entries solely allocable to uncovered claims [Doc. 101-1, Invoices, pp. 428-430] and lay witness testimony regarding allocation of certain expert costs not addressed in Jardini's expert report [Doc. 104-2, Responses, 15:4-9], both of which independently establish sums incurred for uncovered claims. While Navigators did not want to burden this Court with thousands of pages of invoices or a line-by-line allocation of approximately 10,000 time entries, Navigators is prepared to confirm the existence of such evidence by a declaration from the claims adjuster that attaches all the invoices or a line-by-line allocation of such invoices, even though such evidence is not required at the summary judgment stage, if it would aid the Court in assessing this Motion for Leave to File a Motion for Reconsideration.

report and, therefore, insufficient to create a triable issue of fact as to whether Navigators paid for SVO's defense of uncovered claims. [Order, 12:14-18.] Putting aside that such interrogatory response could equally be read as Navigators merely agreeing with, and thus adopting, the expert's conclusions, the Court did not consider the non-expert evidence Navigators submitted that demonstrated a triable issue on allocation. These responses and invoices preclude summary judgment in SVO's favor, because they establish the existence of lay witness testimony and documentary evidence that Navigators is entitled to rely upon to support its *Buss* allocation at trial. Furthermore, case law prohibits excluding lay witness testimony based on *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which was the sole reason given in the Order for not considering the discovery responses. [Order, 12:16-18.]

For the reasons explained below, Navigators requests the Court grant leave for Navigators to file its Rule 54(b) motion, because there were numerous material facts and dispositive legal arguments presented in the subject motions that the Court's ruling did not consider.

## II. ARGUMENT

### A. The Court Has Authority to Grant Leave for a Motion for Reconsideration.

Under Rule 54(b), "any order or other decision ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. Proc. 54(b). "A district court may reconsider non-final judgments pursuant to Rule 54(b) and based on the court's 'inherent power rooted firmly in the common law' to 'rescind an interlocutory order over which it has jurisdiction.'" *LMC Vineyards, LLC v. Allied World Nat'l Assur. Co.*, 2025 U.S. Dist. LEXIS 255201, *6 (N.D. Cal. Aug. 26, 2025) (citation omitted). Local Rule 7-9(b)(3) requires that a moving party show a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."

/ / /

/ / /

**B. The Court Did Not Consider the Facts Showing the Expert Applied the *Buss* Standard, Instead Imposing the Case-Dispositive Consequence of Excluding Both Navigators' Expert and Lay Witness Rather Than Striking Such Statements.**

The Court did not consider Jardini's[2] repeated and consistent statements throughout his report and deposition that applied the correct *Buss* standard, sometimes verbatim and sometimes merely stated in reverse, as articulated by this Court. [Order, 6:1-3 ("Pursuant to *Buss*, in a 'mixed action' where some claims are covered by the insurance policy and some are not,[] the insurer must prove by a preponderance of the evidence that the costs they seek 'can be allocated solely to the claims that are not even potentially covered.'").] Nonetheless, the Court excluded consideration of 207 pages of expert analysis and deposition testimony and all of Navigators' lay witness testimony based on two isolated quotations from Jardini ("more likely than not" and "overwhelming import in the case"), finding that these phrases demonstrated that Jardini did not apply the correct standard as enunciated in *Buss* and, therefore, his entire opinion was unhelpful and irrelevant, even though the expert was referring to the *Buss*-stated burden of proof standard of "preponderance of the evidence."[3] *Buss*, 16 Cal. 4th at 40. Importantly, these references did not deviate from the *Buss* standard; rather, they addressed the "preponderance of the evidence" burden of proof standard set forth in *Buss*.

For example, the Court did not consider the following relevant statements in the testimony, evidencing the expert's proper application of *Buss* when counsel directly quoted from the case:

Q. … "In a 'mixed' action, for what specific defense costs may the insurer obtain reimbursement from the insured?" And next paragraph reads: "The answer is: Defense costs that can be allocated solely to the claims that are not even potentially

---

[2] Jardini, who has practiced for 48 years, was the allocation expert in the original *Buss* case, has testified in more than 560 cases regarding reasonableness of fees and/or allocation of such fees, more than 100 of which specifically involved allocation of recoverable versus unrecoverable fees, and has never been excluded as an expert for any reason. [Doc. 102-1, Expert Report, ¶¶ 2, 17, 19, pp. 35, 37; Doc. 105-2, Depo., 9:17-10:13, 19:9-11, EX. A-3, 4, 6.]

[3] The Order states, "In making this analysis, [he] had in mind the overwhelming import in the case of the various trade secret claims as opposed to the defamation claim as shown by both [Vertiv] and SVO.' Jardini Report ¶ 58. At his deposition, he further explained his methodology, stating 'I'm looking at [attorney time entries regarding discovery] in the context of a case in which defamation was dismissed voluntarily; meaning, it's not an important part of the case; that it was only one of 18 claims, and that discovery, more likely than not, was related to things not defamation.' Jardini Dep., Dkt. No. 102-1 at 19-20." [Order, 6:12-19.]

covered." Is that what you understand to be the standard for the allocation of costs in a mixed action under *Buss*?

A. The general overview, and then, in making that determination, the burden is the preponderance of the evidence.

* * *

Q. … Now, the statement in this -- in the case that, "Defense costs that can be allocated solely for the claims that are not even potentially covered," is that a different standard than the one you applied in determining which fees related to defamation?

A. No.

* * *

Q. Okay. The second line of Paragraph 43 says: "Recovery is permitted by an insurer against the insured as to claims that are not even potentially covered by the insurance policy." And the next paragraph says: "The court discussed that an allocation need be made between those claims that are not even potentially covered and those that are potentially covered." Now in -- do those two sentences set forth the standard that you applied in determining what fees would be reimbursable to Navigators under the Buss case?

A. In a very general way, a *Buss* allocation is a practical application of what actually happened in a case, measured against the obligation of the insurer to put on evidence that creates a preponderance on the issue of uncovered claims having been litigated. It's just a general statement of *Buss* that you're separating out between covered and uncovered claims.

* * *

Q. So, when you are evaluating whether an expense is solely allocable to non-covered claims, you're applying a standard of whether it's more likely than not that it's not covered; is that right?

A. Right. There's the standard, and then, there's the burden of proving that standard. And the burden of proof is 51 percent, or 50.1 percent, as some people argue, or less

than that even.

[Doc. 105-2, Depo., 19:16-20:14; 26:13-27:5; 30:17-22; 65:11-18, EX. A-6, 8, 9, 17.] Similar colloquies occurred at several other points as SVO Building One, LLC ("SVO") repeatedly attempted to get Jardini to admit to using a different standard. However, Jardini stood his ground and confirmed that he applied the "allocated solely" standard in reaching his opinions. [Doc. 105-2, Depo., 65:11-18; 69:7-19; 82:25-83:19; 90:22-93:10, EX. A-17, 18, 22, 24.]

In addition, Jardini's expert report included several statements correctly identifying the *Buss* standard, which the Court did not consider:

> 43. Pursuant to the court's decision in *Buss v. Superior Court* …, the California Supreme Court determined that an insurer may seek reimbursement from an insured for defense cost. Recovery is permitted by an insurer against the insured as to claims that are not even potentially covered by the insurance policy.
>
> 44. The court discussed that an allocation need be made between those claims that are not even potentially covered and those that are potentially covered.
>
> 45. … Navigators is entitled to reimbursement for all services that were dedicated to 17 of the 18 claims which are not subject to potential coverage. My allocation analysis in this matter is designed to determine which services and in what amounts were incurred as to the potentially covered claim as opposed to the remaining 17 claims.

[Doc. 102-1, Jardini Expert Report ("Expert Report"), p. 41.] Likewise, the expert report shows application of the correct *Buss* standard to the evidence Jardini reviewed, which the Court also did not consider:

> 34. The underlying action proceeded to arbitration in two phases in 2021. There was no mention of defamation at the arbitration of the underlying action.
>
> * * *
>
> 55. I have reviewed the Tyson & Mendez invoices after the date of March 24, 2021. That review reveals that no time at all was spent in connection with any service related to a defamation claim. …
>
> * * *

> 61. Based on my analysis, less than 3% of the time spent by counsel defending SVO before the defamation claim was dismissed related even remotely to the defamation claim.
>
> 62. … No issue subject to expert testimony by these witnesses concerned defamation. Therefore, all funds paid to these experts by Navigators should be reimbursed by SVO.

[Doc. 102-1, Expert Report, pp. 40, 43.][4] The Court did not consider these statements, which unquestionably evidences that Jardini reviewed and analyzed the subject fees, excluding any entries ***even potentially*** related to the defamation claim, leaving only those attributable solely to uncovered claims in accordance with *Buss*. [Doc. 102-1, Expert Report, ¶¶ 56-59, p. 43.]

Nonetheless, the Order focuses on two instances in which Jardini referenced a "more likely than not" standard – simply another formulation of "preponderance of the evidence." Application of this standard is not a departure from *Buss* but, rather, reflects the very burden *Buss* imposes on a factfinder in determining whether a particular fee or cost is allocable solely to uncovered claims. *Buss*, 16 Cal. 4th at 39-40. That is all Jardini's phrase refers to; it does not change Jardini's application of the *Buss* standing and may have been the source of the Court's misunderstanding. [Doc. 105-2, Depo., 23:12-24; 30:23-31:5; 66:16-24; 81:14-82:6, EX. A-7, 9, 18, 21, 22.]

Finally, if the Court was concerned about the two isolated statements using the "more likely than not" standard, total exclusion of Jardini's testimony and report was an unnecessary and overly severe remedy under Ninth Circuit precedent considering Jardini's repeated application of the *Buss* rule. *Reed v. Lieurance*, 863 F.3d 1196, 1208-1209 (9th Cir. 2017) ("While the district court may have had a proper basis to exclude portions of the expert report in its discretion, we find multiple 'manifestly erroneous' misstatements of law and fact in the district court's order. ... [T]he district court abused its discretion in excluding the entirety of [the expert's] testimony"). Given the Court's acknowledgment that a District Court "should conduct this analysis 'with a 'liberal thrust' favoring

---

[4] After performing a line-by-line review of the invoices, to avoid burdening the jury with thousands of pages of invoices or a line-by-line allocation, which is not required under *Buss*, the expert aggregated the time entries into digestible batches to show where time entries were solely allocable to uncovered claims, drawing on his unique experience testifying as the allocation expert in the seminal *Buss* case as well as in 1,950 legal fee audits. [Doc. 102-1, Expert Report, ¶¶ 9, 48-51, pp. 36, 42.]

admission'" [Order, 5:7-9 (citation omitted)], the Court at most should have struck the language from the report and instructed Jardini not to mention those statements to the jury instead of barring his testimony completely.

Navigators requests the Court grant this Motion for Leave, so the Court may consider these material facts and dispositive legal principles in reconsideration of the Order.

**C. The Court Did Not Consider Material Facts in the Discovery Responses Completely Independent from the Expert Analysis, Which Cannot Be Precluded by *Daubert* As Being Comprised Solely of Lay Witness Testimony.**

The Court did not consider certain verified interrogatory responses by Navigators' claims adjuster, whom SVO did not depose, providing independent admissible evidence as to allocation of expert and consultant fees. Nor did the Court consider the invoices that were part of the record, which show defense fees incurred solely for uncovered claims. Either of these is sufficient to create a triable issue of fact as to whether Navigators paid any defense fees solely allocable to uncovered claims. Moreover, the Court did not consider the legal principles precluding application of *Daubert* to lay witness testimony, *i.e.*, to Navigators' claims adjuster's verified discovery responses.

It is indisputable that Navigators' claims adjuster made independent conclusions in the responses completely unrelated to the allocation analysis completed by the expert. For example, Navigators' claims adjuster stated:

> All expert and consultant fees and costs identified in the spreadsheet are recoverable at 100% as no experts in the Underlying Action were involved in SVO's defense of the defamation allegations.

[Doc. 104-2, Responses, 15:7-9.] Likewise, the response to Interrogatory No. 4 refers to a previous calculation of costs performed by Navigators prior to obtaining Jardini's expert testimony:

> After the defamation cause of action was dismissed, no other claim in the Underlying Action was potentially covered under the Policy, and the costs are subject to reimbursement at 100% for a total of $1,937,111.44.

[Doc. 104-2, Responses, 13:2-4.] Both statements were made based on personal knowledge as a lay witness, and neither relies on the expert report. In addition, the adjuster identified the specific time

entries that were allocated towards any potentially covered claim, concluding that "[e]ach and every other time entry" was "solely allocable to defense of a claim in the Underlying Action that did not come within the Policy's Insuring Agreement, was never potentially covered, and is recoverable by Navigators in this action." [Doc. 104-2, Responses, 6:3-21; 10:12-11:7.] That, too, does not rely on the expert opinion.

All of these statements were verified under penalty of perjury based on the adjuster's knowledge from reviewing all of Navigators' records, including the defense invoices paid as part of the claim. [Doc. 104-2, Responses, 16:6-10.] Such responses are equivalent to a declaration. *See Griffin v. Johnson*, 2017 U.S. Dist. LEXIS 146692, *6 (E.D. Cal. Sept. 11, 2017) ("Plaintiff's responses are verified, signed under penalty of perjury and based in part on his personal knowledge. … Accordingly, the Court will consider Plaintiff's discovery responses as a form of declaration, where the responses are based on his personal knowledge, for purposes of summary judgment."). Thus, the Court's determination that the adjuster's statements do not reflect independent knowledge because they "incorporate and rely on Jardini's report" is erroneous as it did not consider the verified responses made independent of that report. [Order, 12:16-18.]

Moreover, the Court did not consider case law that prohibits applying a *Daubert* analysis to a lay witness's independent testimony. As the court explained in *U.S. v. Rakestraw*, 2023 U.S. Dist. LEXIS 94015, *4 (D. Az. May 30, 2023), "[t]he key difference between expert and lay-opinion testimony is that lay-opinion testimony must be based on the witness's perceptions while expert testimony need not, but expert testimony is subject to reliability screening under *Daubert*, while lay-opinion testimony is not." Thus, where a party "offers testimony as either expert or lay-opinion, the *Daubert* reliability screening thus only applies to the proffered *expert* testimony. Testimony which fails to survive *Daubert's* reliability screening may still be admissible as lay-opinion, provided the [party] can adequately establish that such opinions are rationally based on the witness's perceptions." *Id.*; *see also*, *U.S. v. Logsdon*, 2013 U.S. Dist. LEXIS 151967, *5-6 (W.D. Ok. Oct. 23, 2013) ("Rule 702 and *Daubert* are applicable only to proposed expert opinions, … and the requirements do not apply to a lay witness testifying to facts derived from examining evidence. … Where the witness does not purport to express an expert opinion, but will testify only to facts of which he has personal

knowledge, the requirements of Rule 702 and *Daubert* do not apply."); *U.S. v. Krug*, 2013 U.S. Dist. LEXIS 200195, *4-5 (C.D. Cal. Jan. 4, 2013) (finding the "relaxation of the usual requirement of firsthand knowledge" under Fed. Evid. R. 702 for an expert to testify "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. … No one contends that Doucet is an expert witness. Granting the government's motion would preclude testimony by Doucet based on firsthand knowledge and observation."); *Min Productions Pte., Ltd. v. FireForge, Inc.*, 2016 U.S. Dist. LEXIS 203739, *5 (C.D. Cal. June 27, 2016), citing to *Daubert*, 509 U.S. at 595 ("Expert evidence can be 'both powerful and quite misleading,' so the Court exercises more control over expert witnesses than lay witnesses."); *Brown v. Ryan's Family Steak House Mgmt., Inc.*, 113 Fed Appx. 512, 515 (4th Cir. Oct. 29, 2004) ("The Fourth Circuit has held … that Daubert does not apply to fact witnesses, such as a medical examiner who examines the victim of an accident."); *Binakonsky v. Ford Motor Co.*, 133 F.3d 281, 290 (4th Cir. 1998) (holding *Daubert* "is inapplicable because it pertains to the scientific validity of an expert's methodology. Dr. Korella, however, was a fact witness. The plaintiffs neither engaged her as an expert nor paid her to testify. … Ford is essentially challenging the factual observations that she drew from her examination of Binakonsky's body. … This is a proper issue for cross-examination at trial, but in the summary judgment proceedings the plaintiffs are entitled to the benefit of the findings set forth in the postmortem report and the testimony of Dr. Korella.").

Here, the Order summarily dismisses the adjuster's responses without considering their content or that such lay witness statements were independently agreeing with the expert's analysis. Even so, at a minimum, as cited *supra*, the adjuster independently determined that the allocation of "[a]ll expert and consultant fees and costs" were for claims not even potentially covered, which Jardini did not address at all. [Doc. 104-2, Responses, 15:4-6.] That independent agreement and testimony cannot be excluded under *Daubert* even if the expert report can be. Simply put, such independent lay witness testimony establishes that at least some fees and costs were solely related to uncovered claims, creating a triable issue of fact as to whether Navigators paid any of SVO's fees and costs incurred in defense of claims that are not even potentially covered. The Court's indirect application of *Daubert* to a lay witness only further departs from the Court's role in ruling on a

*Daubert* motion and results in the harshest consequence, dismissal of Navigators' claim in its entirety despite presenting material, non-expert based, admissible evidence to support its *Buss* claim.

SVO already attached evidence of the defense invoices to the record, showing time entries that are solely allocable to uncovered claims. For example, the record reflects a time entry regarding preparation of a motion *in limine* on exclusion of experts. [Doc. 101-1, Invoices, p. 429 ("Final preparation after comments by client and partner of SVO opposition to Motion in Limine 7 regarding exclusion of cumulative and unsubstantiated expert testimony" (2.0 hours).] As discussed, no experts were retained in connection with the defamation allegations. Thus, this entry reflects time which is "allocated solely" to an uncovered claim. This alone created a triable issue of fact to defeat SVO's summary judgment motion.

The invoices and the discovery responses were a sufficient basis to allow Navigators' reimbursement claim to continue to trial, warranting reconsideration of the Order.

## III. CONCLUSION

As the Order acknowledges, the Ninth Circuit has admonished that courts should "not exclude opinions merely because they are impeachable." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). In light of the litany of examples above showing the expert applied the correct *Buss* standard coupled with the independent allocation determinations made by the Navigators representative, Navigators established that a triable issue of fact existed to proceed to trial on the reimbursement claim. As all deference should be made in favor of the party opposing summary judgment, Navigators respectfully requests the Court grant leave to file a Rule 54(b) motion so the Court may consider the material facts and dispositive legal arguments identified herein in reconsidering the Order denying Navigators' ability to utilize expert or lay witness testimony to establish the *Buss* allocation at trial.

/ / /

/ / /

In accordance with the Court's Standing Order, § H.4., counsel hereby certifies that "lead trial counsel has personally verified the content's accuracy" contained within this document.

Dated: May 26, 2026

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: *<u>/s/ Shannon L. Santos</u>*
David Simantob
Shannon L. Santos
*Attorneys for Plaintiff/Counter-Defendant Navigators Specialty Insurance Company*